**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
E-Mail: ptrinchero@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Peter A. Wald (admitted *pro hac vice*)**
**Gavin M. Masuda (admitted *pro hac vice*)**
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111

**Attorneys for Defendant Deloitte & Touche LLP**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,

Defendants.

Case No. 3:16-cv-00580-AC

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND SEPARATE MEMORANDUM OF LAW IN SUPPORT FILED BY DEFENDANT DELOITTE & TOUCHE LLP**

Pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6)

Oral Argument Requested

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

- A. Deloitte's Audits Of Certain Aequitas Entities ..... 3
- B. Aequitas' Private Placement Memoranda And Offering Documents ..... 6
- C. Plaintiffs' Purchases ..... 8

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

- A. The Complaint Fails To Plead Any Actionable Connection Between Deloitte And The Sales At Issue ..... 10
- B. The Complaint Fails To Allege Facts Sufficient To Establish Deloitte's Liability Under ORS 59.115(3) ..... 13

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. American Western Securities*,
265 Or. 514 (1973)....................14

*Ahern v. Gaussion*,
611 F. Supp. 1465 (D. Or. 1985)....................14, 15

*Anderson v. Carden*,
146 Or. App. 675 (1997)....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................9

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992)....................19

*Black v. Nova–Tech*,
333 F. Supp. 468 (D. Or. 1971)....................14

*Blakely v. Lisac*,
357 F. Supp. 255 (D. Or. 1972)....................14

*Collins v. Fitzwater*,
277 Or. 401 (1977)....................14

*Fakhrdai v. Mason*,
72 Or. App. 681 (Or. Ct. App. 1985)....................10

*Gonia v. Estep*,
251 Or. 431 (1968)....................14

*Green v. Jonhop, Inc.*,
358 F. Supp. 413 (D. Or. 1973)....................14

*Monroe v. Hughes*,
31 F.3d 772 (9th Cir. 1994)....................14, 15, 16

*Prince v. Brydon*,
307 Or. 146 (1988).................... *passim*

*Querub v. Hong Kong*,
No. 15-2100, 2016 WL 2942415 (2d Cir. May 20, 2016) ....................................................19

*Rembold v. Pacific First Federal Sav. Bank*,
1989 U.S. Dist. Lexis 3953 (D. Ore. Apr. 11, 1989) ...................................................14, 16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir 2001) (*opinion amended on denial of reh'g*, 275 F.3d 1187) ..........................................................................................................................6, 10

*State of Oregon v. Marsh & McClennan Cos., Inc.*,
292 P.3d 525 (Or. 2012) ......................................................................................................11

**STATUTES**

15 U.S.C. § 77(k) ................................................................................14, 15, 16, 17

15 U.S.C. § 77g(a)(1)..........................................................................................................16

15 U.S.C. § 78(j) ..................................................................................................................15

ORS 59.115........................................................................................................... *passim*

ORS 59.137..........................................................................................................................11

**RULES**

Fed. R. Civ. P. 8 ...........................................................................................................1, 9, 13

Fed. R. Civ. P. 9(b) ..........................................................................................................1, 9

Fed. R. Civ. P. 12(b)(6).......................................................................................................9

SEC Regulation S-X, Rules 3-01, 3-02 ..............................................................................16

**OTHER AUTHORITIES**

Gary M. Berne, Participant Liability under the Oregon Securities Law After
*Prince v. Brydon*, 68 Or. L. Rev. 885, 914 (1989).......................................................10, 17

## LR 7-1 CERTIFICATION

In compliance with this Rule, it is certified that the parties made a good faith effort through personal conferences to resolve the dispute and have been unable to do so.

## MOTION

Pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Stipulation and Order dated April 27, 2016, Defendant Deloitte & Touche LLP hereby moves to dismiss all claims brought against it under Or. Rev. Stat. ("ORS") § 59.115(3) for failure to state a claim upon which relief can be granted.

In support of its Motion to Dismiss the First Amended Complaint (the "Complaint" or "Compl."), Defendant Deloitte & Touche LLP ("Deloitte") relies upon the following memorandum of law, the Joint Motion to Dismiss the First Amended Complaint filed by Defendants Deloitte & Touche LLP, EisnerAmper LLP, Sidley Austin LLP, and Tonkon Torp LLP and Joint Memorandum of Law in Support ("Joint Motion to Dismiss"), the Declarations of Philip Van der Weele ("Van der Weele Decl.") and Gavin M. Masuda ("Masuda Decl."), and the record assembled in this case.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiffs are sophisticated investors who, for much of Aequitas'[1] existence, enjoyed enormous returns from what they knew to be risky investments. Now that those risks have materialized, Plaintiffs seek to "undo" their investment decisions by suing Deloitte. But Deloitte did nothing wrong—and Plaintiffs make no allegation to the contrary. Instead, Plaintiffs seek to

---

[1] As stated in Defendants' Joint Motion to Dismiss, the sellers of the securities at issue in this case were several distinct but related entities, none of which was "Aequitas" itself. The word "Aequitas" will be used herein as shorthand for the group of actual sellers.

hold Deloitte liable for Aequitas' alleged violations of Oregon Securities Laws. Plaintiffs' claims fail as a matter of law.

First, Plaintiffs fail to specify which securities they purchased, and which offering documents they—as opposed to "investors" generally—received and reviewed in connection with their purchases. This failure is fatal to their claims because the sales at issue were private transactions, each of which involved different securities and different offering documents, including private placement memoranda ("PPM"). Plaintiffs' threshold failure to plead the specifics of the securities transactions for which they seek recovery falls well short of Rule 8's requirement to provide Defendants fair notice of their claims.

Second, Plaintiffs allege no conduct by Deloitte that would have constituted "participation or material aid" in the securities transactions at issue. Oregon cases addressing the secondary liability of independent auditors hold that any such liability requires—at minimum—the inclusion of the auditor's report on the issuer's financial statements in the offering documents given to and reviewed by the investor, and the auditor's consent to such inclusion. Plaintiffs do not—and cannot—allege any such facts here. The PPMs Plaintiffs identify did not even contain the issuing entity's Deloitte-audited financial statements, let alone Deloitte's audit report on those financial statements; indeed, all but one of the PPMs identified in the Complaint were dated *before* Deloitte issued any relevant audit opinion. Thus, the only connection Plaintiffs plead between Deloitte and the challenged transactions is that Deloitte was identified as the "Auditor" in a corporate directory included in some (but not all) PPMs. This identification by Aequitas did not link Deloitte to any specific securities transaction at issue—and certainly, did not convey any professional judgment reached by Deloitte concerning such transaction. *See*

*Prince v. Brydon*, 307 Or. 146, 149 (1988) (holding that it is the "knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale").

If, on the facts alleged, this Court were to find that Plaintiffs have stated a claim against Deloitte, it would be finding that—regardless of any actual connection to the specific securities transactions at issue—an accountant may be held liable under Oregon law whenever its audit client engages in an unlawful securities transaction. That would be a dangerous precedent to set, and is not the law in Oregon.

## II. STATEMENT OF FACTS

### A. Deloitte's Audits Of Certain Aequitas Entities

As Defendants' Joint Motion explains, "Aequitas" was a group of related, but functionally and legally distinct entities. Joint Motion, Section II.A. Of the many Aequitas entities, only six are alleged to have issued securities that Plaintiffs purchased. *See* Compl. ¶¶ 27-28.[2] As set forth below, Deloitte audited most of these entities' financial statements for the years ended December 31, 2013 and December 31, 2014, issuing its audit opinions months after the end of each fiscal year:

---

[2] Notably, no Plaintiff claims to have purchased AEIF Interests, which are identified at paragraph 28 of the Complaint. *See* Compl. ¶¶ 64-70 (identifying purchases but failing to identify any purchase of AEIF Interests). Furthermore, though Plaintiffs do allege purchases of AMLF Notes, they make no allegations concerning any of the PPMs associated with those transactions. *See* Compl. ¶¶ 31-63 (identifying allegedly problematic PPMs but failing to address any AMLF PPMs).

**TABLE 1**

| Entity | 2013 Audit Opinion? | 2014 Audit Opinion? |
|---|---|---|
| Aequitas Commercial Finance, LLC ("ACF") | Yes, dated May 23, 2014 | Yes, dated May 29, 2015 |
| Aequitas Income Protection Fund, LLC ("AIPF") | Yes, dated April 30, 2014 | Yes, dated April 6, 2015 |
| Aequitas Income Opportunities Fund, LLC ("AIOF") | Yes, dated April 25, 2014 | Yes, dated March 31, 2015 |
| Aequitas Income Opportunities Fund II, LLC ("AIOF-II") | No | Yes, dated March 31, 2015 |
| Aequitas Capital Opportunities Fund ("ACOF") | Yes, dated April 30, 2014 | Yes, dated April 30, 2015 |
| Aequitas Enhanced Income Fund ("AEIF") | No | No |
| MotoLease Financial, LLC ("AMLF") | Yes, dated May 23, 2014 | No |

Deloitte's role as the independent auditor for these Aequitas entities was limited. Contrary to Plaintiffs' allegation that Deloitte "prepared audited financial statements for Aequitas" (Compl. ¶ 15), Generally Accepted Auditing Standards ("GAAS") recognize that financial statements are prepared by management, and that the accuracy of the financial statements is management's responsibility. *E.g.*, Declaration of Gavin M. Masuda in Support of Deloitte's Motion to Dismiss ("Masuda Decl."), Ex. 1 (AU-C 200.05 and A2). Deloitte issued opinions as to whether management's financial statements fairly presented, in all material respects, the entity's financial position, results of operations, and cash flows in conformity with Generally Accepted Accounting Principles ("GAAP"). *See* Masuda Decl. Ex. 1 (AU-C 200.12). "[T]he auditor's responsibility for the audited financial statements is confined to the expression of the auditor's opinion on them." *See* Masuda Decl. Ex. 1 (AU-C 200, A4). Deloitte's opinions did not—and could not—provide absolute assurance that the financial statements were free from misstatement. Rather, a GAAS-compliant audit provides only "reasonable" assurance that the financial statements are free from "material" misstatements. Masuda Decl. Ex. 1 (AU-C 200.06).

Deloitte's audit opinions made clear that, in accordance with GAAS, its role was limited. *See* Masuda Decl. Ex. 2 (AU-C 700.27) (stating that "[m]anagement is responsible for the

preparation and fair presentation of these consolidated financial statements" and that "[o]ur responsibility is to express an opinion on these consolidated financial statements."). As GAAS recognizes, Deloitte's audit opinions were the final, and only expression of its audit work. *E.g.* Masuda Decl. Ex. 2 (AU-C 700.10) ("The objectives of the auditor are to (a) form an opinion on the financial statements . . . and (b) express clearly that opinion on the financial statements through a written report that also describes the basis for that opinion.")

Deloitte's audit opinions also contained certain "Emphasis of Matters" paragraphs. Under GAAS, these are matters that, "although appropriately presented or disclosed . . . [are] of such importance that it is fundamental to users' understanding of the financial statements." Masuda Decl. Ex. 3 (AU-C 706.04). For example, Deloitte's opinion on ACF's year-end 2013 financial statements emphasizes the existence of "investments . . . whose fair values have been estimated by management in the absence of readily determinable fair values," and that "the Company engages in numerous transactions with entities . . . [that] could give rise to operating results or financial positions significantly different from those that would have resulted if the Company was autonomous." Masuda Decl. Ex. 16 (FY13 ACF Opinion). All of Deloitte's audit opinions for the various Aequitas-related entities emphasize the same or similar opinion. *See* Masuda Decl. Exs. 16-24.

Deloitte issued its audit opinions directly to the entity whose financial statements it audited. For example, ACF's consolidated financial statements for the year ended December 31, 2013 contained Deloitte's "Independent Auditors' Report," which was dated May 23, 2014 and addressed to "the Sole Member of Aequitas Commercial Finance, LLC." *See* Masuda Decl. Ex. 16 (FY13 ACF Opinion). Under the terms of their engagements with Deloitte, the entities to whom Deloitte issued its audit opinions were prohibited from reproducing those opinions in any

document—expressly including PPMs—or from making reference to Deloitte, without Deloitte's consent. *See* Masuda Decl. Exs. 11, 12 (engagement letters). Specifically, the engagement letters provided:

> If the Companies intend to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a period filing with a regulator, in a debt or equity offering circular, ***or in a private placement memorandum***), thereby associating D&T with such document, the Companies agree that management will provide D&T with a draft of the document to ***read and obtain our approval*** for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports.

Masuda Decl. Exs. 11, 12 (emphases added).

### B. Aequitas' Private Placement Memoranda And Offering Documents

As discussed in the Joint Motion, each of the Aequitas securities at issue in this case (the "Aequitas Securities") was issued through a PPM and certain offering documents. No two PPMs were the same, and even PPMs from a single Aequitas entity varied over time. Joint Motion, Section II.B.

One of the few things some of the PPMs have in common is that they include a "Directory," which provides corporate addresses and identifies the "Auditor" and "Legal Counsel." *E.g.*, Masuda Decl. Ex. 13, at 6 (Nov. 30, 2013 ACF PPM).[3] Although Plaintiffs allege that the PPMs identified Deloitte as the "auditor *in connection with* the offering" (see, e.g.,

---

[3]Deloitte obtained three of the PPMs cited in the Complaint, as a form of audit evidence, during the course of its normal audits of various Aequitas entities' financial statements. The PPMs Deloitte obtained are the: November 30, 2013 ACF PPM (*see* Compl. ¶ 32, Masuda Decl. Ex. 13), the October 1, 2014 AIOF-II PPM (*see* Compl. ¶ 51, Masuda Decl. Ex. 15), and the February 2014 ACOF PPM (*see* Compl. ¶ 57, Masuda Decl. Ex. 14).

Compl. ¶ 34), that allegation is demonstrably incorrect on the face of the document—even the PPMs that identify Deloitte as the "Auditor" do not say Deloitte had anything to do with the specific securities being offered.[4]

In truth, Deloitte *could not* have had anything to do with any of the securities offerings about which Plaintiffs complain, save one. As shown in Table 2, all but one of the PPMs identified in the Complaint were dated *before* Deloitte's first opinion as to the issuing entity:

**TABLE 2**

| Entity | Date of PPMs identified in Complaint | Date of Deloitte's first audit opinion on issuing entity |
|---|---|---|
| ACF | December 1, 2011 (¶ 32)<br>March 1, 2013 (¶ 32)<br>November 30, 2013 (¶ 32)<br>October 16, 2014 (¶ 32) | May 23, 2014 |
| AIPF | June 1, 2012 (¶ 39) | April 30, 2014 |
| AIOF | March 23, 2010 (¶ 45) | April 25, 2014 |
| AIOF-II | October 1, 2014 (¶ 51) | March 31, 2015 |
| ACOF | February 2014 (¶ 57) | April 30, 2014 |
| AEIF | January 26, 2015 (¶ 140) | Deloitte did not audit AEIF |

Finally, although Plaintiffs allege that "investors and potential investors received the audited annual financial statements" of the entities shown above, *none* of the PPMs cited in the Complaint contain financial statements audited by Deloitte or Deloitte's opinion on those financial statements. For example, the November 30, 2013 ACF PPM includes certain selected financial information, which ACF described as "audited." But that information—selectively excerpted and generated by the issuing entity—does not constitute an "audited financial statement," and does not include Deloitte's audit opinion. *See* Masuda Decl. Ex. 13, at 6 (Nov. 30, 2013 ACF PPM). In fact, this PPM only contains financial information from 2009-2012—

[4] Plaintiffs have incorporated these PPMs into the Complaint by reference. *See* Request for Judicial Notice in Support of Deloitte's Motion to Dismiss, at Section II.D.1. Accordingly, this Court may reject allegations that are contradicted by the PPMs themselves. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

years that Deloitte did not audit. *See* Compl. ¶ 33. None of the other PPMs identified in the Complaint even purport to contain audited financial information. *See* Masuda Decl. Exs. 14 (Feb. 2014 ACOF PPM), 15 (Oct. 1, 2014 AIOF-II PPM); Van der Weele Decl., Exs. 1 (Mar. 1, 2013 ACF PPM), 2 (Mar. 23, 2010 AIOF PPM), 3 (June 1, 2012 AIPF PPM).

**C. Plaintiffs' Purchases**

Plaintiffs purchased securities from six different Aequitas entities (ACF, AIPF, AIOF, AIOF-II, ACOF and AMLF) at various points in time between July 2012 and September 2015. *See* Compl. ¶¶ 64-70; *see also* Joint Motion, Section II.B (identifying specific purchases). As explained in Defendants' Joint Motion, the securities issued by these entities were all different, were not sold by Aequitas itself, and were sold pursuant to different offering documents, including different PPMs. *Id.* Plaintiffs never specify the documents or information they received in connection with their securities purchases.

**D. Plaintiffs' Claims**

Plaintiffs filed their original Class Action Complaint on April 4, 2016, and their Amended Class Action Complaint on May 19, 2016. Plaintiffs bring a single state law claim against Deloitte under ORS 59.115(3). *See* Compl. ¶ 190. ORS 59.115(3) is a secondary liability statute, which renders jointly and severally liable "every person who participates or materially aids in" a sale of securities that otherwise violates ORS 59.115. Plaintiffs allege that Deloitte: (i) "performed auditing and accounting services for Aequitas in connection with securities that are at issue in this litigation" (Compl. ¶ 15); (ii) "prepared audited financial statements for Aequitas for the years 2013 and 2014," which were allegedly "provided to prospective investors and existing investors" (Compl. ¶ 15); (iii) was "identified [] as the auditor" in offering documents for Aequitas Securities (Compl. ¶ 15); and (iv) was "integral to Aequitas' securities offerings." Compl. ¶ 30. But, as explained in Defendants' Joint Motion,

there was no "Aequitas." Joint Motion, Section II.A. Rather, "Aequitas" was comprised of separate legal entities, each of which issued different securities at different times through different PPMs. Although Plaintiffs' repeated references to "Aequitas" appear designed to obscure this fundamental point, the fact remains that Deloitte audited only some of the Aequitas-related entities—and the entities it audited differed between 2013 and 2014. *Supra*, Table 1. Even as to those Aequitas entities that Deloitte did audit, all but one of the PPMs identified in the Complaint were dated before Deloitte issued its first audit opinion as to that entity—and none of the PPMs contained the issuing entity's audited financial statements or Deloitte's audit report on those financial statements. *Supra*, Section II.B.

## III. LEGAL STANDARD

Rule 12(b)(6) requires a court to dismiss a complaint when it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As reflected in the Joint Motion to Dismiss, Plaintiffs' claims under ORS 59.115 and ORS 59.135 sound in fraud and must be pled with the particularity demanded by Rule 9(b) of the Federal Rules of Civil Procedure. Joint Motion, Section III. *Karsun v. Kelley*, 258 Or. 155, 167 (Or. 1971); *see also Riley v. Brazeau,* 612 F. Supp. 674 (D. Or. 1985) (applying Rule 9(b) to an action under ORS 59.115 and ORS 59.135). Under Rule 9(b), Plaintiffs' allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Even under Rule 8, a complaint must contain "enough [factual allegations] to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Indeed, "[w]here a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although this Court must accept factual allegations as true, it may reject conclusions unsupported by fact, *see id.*, as well as allegations that are contradicted by documents incorporated by reference into the complaint or facts subject to judicial notice. *Sprewell*, 266 F.3d at 988.

## IV. ARGUMENT

### A. The Complaint Fails To Plead Any Actionable Connection Between Deloitte And The Sales At Issue

ORS 59.115(3) is a secondary liability statute that renders jointly and severally liable with the seller any "person who participates or materially aids in the sale" of securities that violates Oregon law. *Id.* (emphasis added). Thus, as a threshold matter, a plaintiff seeking relief under ORS 59.115(3) must plead the defendant's actual connection to the securities "sale" at issue. *Id.*; *see also, e.g., Prince*, 307 Or. 146, 149 (1988) (holding that whether a defendant participated or materially aided in a securities transaction turns on the defendant's "personal contribution to the transaction"); *Fakhrdai v. Mason*, 72 Or. App. 681, 686 (Or. Ct. App. 1985) (holding that defendant could be secondarily liable where it prepared "the contract on which plaintiff allegedly relied"); *see also* Gary M. Berne, *Participant Liability under the Oregon Securities Law After Prince v. Brydon*, 68 Or. L. Rev. 885, 914 (1989) (discussing impact of *Prince v. Brydon* and observing that under Oregon law, the "key question is not the putative participant's professional title but what he or she actually did in the transaction.").

The Complaint fails to satisfy this threshold requirement. Plaintiffs allege that they purchased securities from six different Aequitas entities (ACF, AIPF, AIOF, AIOF-II, ACOF and AMLF) at various points in time between July 2012 and September 2015. *See* Compl. ¶¶

64-70;[5] *supra*, Section II.C; Joint Motion, Section II. B. Unlike the offering of a single security on a public stock exchange, this Court may not presume that Plaintiffs received information contained in the PPMs, "audited financial statements," or any other document identified in the Complaint. *See Oregon v. Marsh & McClennan Cos*., 292 P.3d 525 (Or. 2012) (holding that, unlike claims brought through ORS 59.137, where reliance may be presumed in efficient public market sales, ORS 59.115 applies only to direct, face-to-face transactions). Thus, which specific securities Plaintiffs purchased, when they purchased, from whom they purchased, and pursuant to which offering documents (if any) they purchased—are critical facts that must be pled in the Complaint, if Plaintiffs wish to pursue secondary liability claims against Deloitte under ORS 59.115(3). Plaintiffs purportedly received different documents in connection with their respective securities purchases, at different points in time; the Complaint fails to specify the documents that Plaintiffs actually received in connection with their purchases—making it impossible to determine whether Deloitte had any connection to their specific transactions.

First, despite identifying nine different PPMs through which "investors" purchased various Aequitas securities (Compl. ¶¶ 32, 39, 45, 51, 57, 61), Plaintiffs never specify which of these PPMs was associated with their actual purchases. This failure is particularly critical with respect to Plaintiffs' claims against Deloitte because—as demonstrated in Table 2 above—all but one of the PPMs identified in the Complaint were dated before Deloitte issued its first audit opinion as to that entity. Because Deloitte's audit opinions are the sole basis for any claim that it participated in or materially aided the unlawful sale of securities, *see* Masuda Decl. Ex. 2 (AU-C 700.10) ("The objectives of the auditor are to…express clearly [its] opinion…through a written

---

[5] As stated in Defendants' Joint Motion at Section IV.B.1, although the Amended Complaint identifies securities from the Aequitas Enhanced Income Fund as an Accused Security, no Plaintiff claims to have purchased AEIF Notes.

report…”), this defect is fatal. *Prince*, 307 Or. at 149 (holding that liability under ORS 59.115(3) requires a “personal contribution to the transaction” at issue).

Tellingly, the only PPM identified in the Complaint and dated after any of Deloitte’s relevant audit opinions is an October 16, 2014 PPM for ACF Notes. *Supra*, Table 2 (citing Compl. ¶ 32). However, no Plaintiff claims to have purchased through this PPM—nor is this PPM alleged to have contained the subject entity’s audited financial statements or Deloitte’s opinion on those financial statements; indeed, this PPM is not even alleged to have contained any false or misleading statements. *See* Compl. ¶ 32 (identifying the October 16, 2014 PPM as one of several ACF PPMs but failing to specify whether this PPM contained any of the above matters). Stripped of rhetoric, the Complaint effectively acknowledges that Deloitte played no role in the allegedly unlawful securities transactions at issue.

Second, while alleging that “investors and potential investors received the audited financial statements” for various Aequitas entities, Plaintiffs do not allege that they personally received audited financial statements in connection with their securities purchases—and certainly don’t allege that they received Deloitte’s report on those financial statements. *See*, *e.g.*, Compl. ¶ 3 (alleging that unidentified “books and [] financial statements [were] provided to investors”); ¶¶ 15-16 (alleging only that audited financial statements were “*made available* to investors”). Again, this phraseology appears designed to obscure the critical facts bearing on Plaintiffs’ claims against Deloitte. As noted, none of the PPMs identified in the Complaint contained Deloitte’s audit reports. *Supra*, Section II.B. And although the November 30, 2013 ACF PPM (a core focus of Plaintiffs’ Complaint) contained excerpted financial information that Aequitas claimed had been “audited,” that information pertained only to 2009 through 2012—years that Deloitte did not audit. *Supra*, Section II.B.

Finally, while alleging that "investors" received various other marketing materials or letters from Aequitas during the class period, Plaintiffs fail to plead what other information they received in connection with their purchases—much less whether Deloitte had anything to do with that information. *See*, *e.g.*, Compl. ¶ 159 (alleging that a June 23, 2014 letter sent "to investors" included false and misleading statements regarding Aequitas' student loan receivables); *see also*, *e.g.*, Compl. ¶ 3 (alleging that "Aequitas" made various claims about the safety of its investments and soundness of its business—without specifying where these statements were set forth, whether Plaintiffs received them in connection with their purchases, or whether Deloitte had any involvement with them).

Even under Rule 8, the Complaint fails to state a plausible claim for relief against Deloitte. At minimum, Plaintiffs must replead specifically to identify the documents and information they received in connection with their securities purchases, when they received such material, from whom, and what Deloitte's specific role was with respect to the challenged transactions.

### B. The Complaint Fails To Allege Facts Sufficient To Establish Deloitte's Liability Under ORS 59.115(3)

Even if Plaintiffs had connected Deloitte to any of their purchases (they did not), Plaintiffs fail to allege conduct by Deloitte that constitutes "participation" or "material aid" in Aequitas' allegedly illegal sales. The seminal Oregon case discussing the "participation or material aid" language of ORS 59.115(3) is *Prince v. Brydon*, 307 Or. at 150. In *Prince*—much like this case—plaintiff alleged securities laws violations arising from the sale of unregistered limited liability partnership units. *Id.* In its most comprehensive discussion of ORS 59.115(3) to date, the Oregon Supreme Court held that an attorney who, among other things, helped prepare

an offering memorandum and wrote a tax opinion letter contained in the memorandum, could have "materially aided" the sale under ORS 59.115(3). *Id.* at 150-51. The Court reasoned:

> Whether one's assistance in the sale is 'material' does not depend on one's knowledge of the facts that make it unlawful; it depends on the importance of one's personal contribution to the transaction. Typing, reproducing, and delivering sales documents may all be essential to a sale, but they could be performed by anyone; it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale.

*Id.* at 149.[6] The governing principle derived from *Prince*—that "it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale"—means that in order for an auditor to be held secondarily liable under ORS 59.115(3), at a minimum, the auditor's report on the issuer's financial statements (in other words, the auditor's work product) must be included in the offering documents given to and reviewed by the investor, and the auditor must consent to that inclusion.

Three cases where ORS 59.115(3) has been applied to auditors provide useful guidance. *See Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir. 1994); *Ahern v. Gaussioin*, 611 F. Supp. 1465 (D. Or. 1985); *Rembold v. Pac. First Fed. Sav. Bank*, No. 85-224-RD, 1989 U.S. Dist. Lexis 3953, at *7 (D. Or. Apr. 11, 1989). In each of these cases, the auditors met the standard articulated above, *and* took additional steps to associate themselves with the securities transactions at issue. In *Monroe v. Hughes*, plaintiffs alleged that the company's prospectus was false or misleading in violation of Section 11 of the Securities Act of 1933, codified at 15 U.S.C.

---

[6] Indeed, ORS 59.115(3) is typically applied in situations where an attorney or underwriter creates documents that are actually provided to investors, or was directly involved in the alleged unlawful sale by preparing and delivering the offering. *See, e.g.*, *Adams v. Am. W. Sec. Inc.*, 265 Or. 514 (1973) (attorney); *Collins v. Fitzwater*, 277 Or. 401 (1977) (attorney); *Gonia v. Estep*, 251 Or. 431 (1968) (attorney); *Anderson v. Carden*, 146 Or. App. 675, 683 (1997) (attorney); *Green v. Jonhop, Inc.*, 358 F. Supp. 413, 416-18 (D. Or. 1973) (underwriter); *Blakely v. Lisac*, 357 F. Supp. 255 (D. Or. 1972) (attorney); *Black & Co. v. Nova–Tech Inc.*, 333 F. Supp. 468 (D. Or. 1971) (attorney).

§ 77(k) ("Section 11"), Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78(j) ("Section 10(b)"), and ORS 59.115(3). 31 F.3d at 773. Plaintiffs alleged that the "prospectus for [the] sale included Deloitte's 1988 audit report as well as unaudited financial statements for the six-month period from June 30, 1988 through December 31, 1998," that "Deloitte had reviewed these statements," and that Deloitte "provided comfort letters to the underwriters in connection with the unaudited statements." *Id.* at 774. Notwithstanding such alleged conduct, this Court (Marsh, J.) granted summary judgment in Deloitte's favor, "holding that the complaint and supporting affidavits of plaintiffs do not establish any basis for recovery against the accounting firm under the securities laws." *Id.* at 773. The Ninth Circuit affirmed. *Id.* at 776.

In *Ahern*, plaintiffs alleged that the company's prospectus was false or misleading in violation of Section 11, Section 10(b), and various Oregon securities statutes including ORS 59.115(3). 611 F. Supp. at 1472. The accounting firm (Touche Ross) "audited [the company's] financial statement for the fiscal year ending August 31, 1982, *and certified the accuracy* of that statement in [the company's] March 29 and June 1 prospectuses." *Id.* (emphasis added). In addition, Touche Ross "conducted post-audit reviews of the financial statement in connection with both prospectuses." *Id.* This Court (Redden, J.) denied Touche Ross' motion for summary judgment on the federal and Oregon law claims. As to ORS 59.115(3), the Court found that "Plaintiffs have presented facts which if true would establish the performance of a number of services by defendant accountants *in connection with the registration and sale* of the notes." *Id.* at 1491 (emphasis added).

Finally, in *Rembold*, plaintiffs brought claims under Section 10(b) and ORS 59.115(3) against Price Waterhouse & Co. (and other non-accounting firm defendants) based on alleged

misrepresentations and omissions contained in the company's "Subscription Offering Circular." 1989 U.S. Dist. Lexis 3953, at *6-7. This Subscription Offering Circular was "prepared [by the company] *with the assistance of defendant Price Waterhouse*, which *certified* the audited financial statements and reviewed or read the unaudited financial statements *included in* the Subscription Offering Circular." *Id.* at *7 (emphases added). The Court granted Price Waterhouse's motion to dismiss the Section 10(b) claim for failure to plead Price Waterhouse's "fraudulent conduct," but denied the motion as to ORS 59.115(3). *Id.*

In each of these cases, the auditors "certified" the financial statements contained in the actual offering documents through which the sale occurred.[7] To be clear, "certifying" the financial statements through the issuance of an audit report is legally significant. Under Section 7 of the Securities Act and regulations promulgated thereunder, every securities registration statement must contain audited financial statements (*see* SEC Regulation S-X, Rules 3-01, 3-02), and the accountant must provide written consent to being identified as having "certified" the financial statements. *See* 15 U.S.C. § 77g(a)(1). As GAAS recognizes, the way an auditor "certifies" these financial statements is by, among other things, consenting to the inclusion of its audit report in the registration statement, and performing additional audit procedures specific to the securities offering. Masuda Decl. Ex. 4 (AU-C 925). Thus, when an auditor "certifies" the

---

[7] Although the court in *Monroe* did not explicitly state that Deloitte "certified" the financial statements provided to investors, Deloitte's audit report was included in a registration statement subject to the federal law requirement that the financial statements be "certified" by an independent account, and plaintiffs' Section 11 claim against Deloitte was based on its certification of the financial statements contained in the registration statement. *See Monroe*, 31 F.3d at 773.

financial statements contained in a registration statement, an auditor affirmatively acts to associate itself—and its audit opinion—with the securities transaction at issue.[8]

Plaintiffs do not—and cannot—allege that Aequitas's PPMs contained Deloitte's audit opinions, much less that Deloitte consented to the inclusion of its opinions (i.e., "certified the financial statements") in those PPMs. Unlike a public securities offering, where an investor's receipt of and reliance upon the registration statement is largely presumed, *see* 15 U.S.C. § 77k (requiring proof of reliance only where an earnings announcement covering at least 12 months intervenes between the date of the registration statement and plaintiffs' purchase), the securities transactions at issue in this case were private and accomplished exclusively through PPMs. *Supra*, Section II.B. Those PPMs did not contain Deloitte-audited financial statements, much less Deloitte's audit opinions. *Supra*, Section II.B. Indeed, as noted, all but one of the PPMs identified in the Complaint were dated before Deloitte issued its first audit opinion as to that entity, and Deloitte did not even audit all of the entities at issue. *Supra*, Tables 1-2. Thus, while Plaintiffs generally allege that "investors and potential investors received the audited financial statements" (*e.g.* Compl. ¶ 34), they simply do not (and cannot, consistent with Rule 11) allege that they *personally* received any audited financial statements containing Deloitte's audit reports in connection with the subject securities transactions.[9]

---

[8] Indeed, a commentator on secondary liability under ORS 59.115(3) (and named partner with Plaintiffs' Portland counsel in this case) has written that "accountability rules for professionals who have responsibility for limited portions of an offering circular or transaction might follow the guidelines of § 11 of the Securities Act of 1933." Gary M. Berne, *Participant Liability under the Oregon Securities Law After* Prince v. Brydon, 68 Or. L. Rev. at 917-18, n.161.

[9] Indeed, had Plaintiffs actually received Deloitte's audit opinions, they would have been made aware of the existence of many of the facts they now claim were "omitted." As discussed *supra*, Section II.A, each of Deloitte's audit opinions contained "Emphasis of Matters" paragraphs, cautioning financial statements readers that, among other things, the values of ACF's investments were "estimated by management in the absence of readily determinable fair values." Masuda Decl. Ex. 16 (FY13 ACF Opinion).

In fact, Deloitte's engagement letters prohibited Aequitas from including Deloitte's audit opinions in PPMs, without providing those PPMs to Deloitte and obtaining Deloitte's consent to the inclusion of its audit reports. Had Aequitas sought such consent, Deloitte would have performed additional audit procedures, specific to the securities offering, prior to granting consent. Masuda Decl. Ex. 4 (AU-C 925). Plaintiffs do not, because they cannot, allege that Deloitte did *anything* to associate itself with the PPMs or securities transactions at issue. At most, the PPMs identify Deloitte in a "Directory" as an "Auditor." *See*, *e.g.*, Masuda Decl. Ex. 13, at 6 (Nov. 30, 2013 ACF PPM); Ex. 14, at 7 (Feb. 2014 ACOF PPM). This bare mention of Deloitte conveys nothing about Deloitte's role in the audit of any specific financial statement of any Aequitas-related entities whose securities were being sold—let alone, the nature of any professional judgments that Deloitte might have rendered concerning those financial statements.

The rule articulated in *Monroe*, *Ahern*, and *Rembold* is in full accord with Oregon law, as well as the fundamental nature of the independent auditor's role. The rule is simply an application of the guidance provided by the Oregon Supreme Court in *Prince v. Brydon*—that under ORS 59.115(3), "it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale." *Prince*, 307 Or. at 149. By consenting to the inclusion of its audit opinion in offering documents, the auditor takes steps to associate its audit opinions—"drafted" by the auditor as the sole expression of its "knowledge, judgment, and assertions"—with the securities transaction at issue. Unless an auditor takes at least these steps to associate itself with a securities transaction, it cannot be liable under *Prince*. *Id.*

Furthermore, under GAAS, the auditor's opinion is the final, and only expression of its audit work. *E.g.* Masuda Decl. Ex. 2 (AU-C 700) ("The objectives of the auditor are to . . . express clearly [its] opinion . . . through a written report.")) The auditor's opinion does not

guarantee the accuracy of the financial statements; rather, as many courts have recognized, the "audit report is a professional opinion based on numerous and complex factors" and "[a]lthough ultimately expressed in shorthand form, the report is the final product of a complex process involving discretion and judgment on the part of the auditor at every stage." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 400 (1992) (observing that with "20-20 hindsight, few CPA audits would be immune from criticism"); *see also Querub v. Hong Kong*, No. 15-2100, 2016 WL 2942415, at *3 (2d Cir. May 20, 2016) (holding that "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion"). Thus, the *only way* an auditor can begin to associate its professional judgment with a particular securities transaction is by authorizing the inclusion of its audit opinion in the transaction offering documents.[10] Because Plaintiffs do not allege—and cannot show—that Deloitte's audit opinions were included in any of the PPMs at issue (*see* Masuda Decl. Exs. 13-15; Van der Weele Decl. Exs 1-3), their claims against Deloitte must fail.

[10] Inclusion of the auditor's opinion is crucial because, though summary in nature, the auditor's opinion can take many forms. It can be unqualified ("clean"), qualified, or (as here) contain "Emphasis of Matters" paragraphs bringing particular issues to the attention of financial statement readers. Masuda Decl. Ex. 2 (AU-C 700.01-.03 (identifying different types of opinions an auditor may issue)); *supra*, Section II.A (discussing the "Emphasis of Matters" paragraphs included in Deloitte's opinions).

## V. CONCLUSION

Deloitte had no involvement with the securities transactions at issue in this case, and there are no facts that Plaintiffs could plead to change that. Respectfully, the Complaint against Deloitte should be dismissed with prejudice.

Dated: June 16, 2016.

GARVEY SCHUBERT BARER

By s/ *Gary I. Grenley*
**Robert C. Weaver, Jr.**, OSB No. 801350
**Gary I. Grenley**, OSB No. 75138
**Paul H. Trinchero**, OSB No. 014397

121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Email: rweaver@gsblaw.com
ggrenley@gsblaw.com
ptrinchero@gsblaw.com

-And –

**Peter A. Wald**
**Gavin M. Masuda**
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Email: peter.wald@lw.com
gavin.masuda@lw.com

**Attorneys for Defendant Deloitte & Touche LLP**

GSB:7827844.1