**Milo Petranovich**, OSB No. 813376
petranovichm@lanepowell.com
**Peter D. Hawkes**, OSB No. 071986
hawkesp@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2114
Facsimile: 503.778.2200

Attorneys for Integrity Bank & Trust

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LAWRENCE B. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, et. al.,**

Plaintiffs,

v.

**DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,**

Defendants.

Case No. CV No. 3:16-cv-00580-AC

DEFENDANT INTEGRITY BANK & TRUST'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM

ORAL ARGUMENT REQUESTED

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for defendant Integrity Bank & Trust certify that they conferred in good faith by telephone conference on July 14, 2016 with counsel for the Plaintiffs, but that the parties were unable to resolve this dispute.

## MOTION

Defendant Integrity Bank & Trust ("Integrity"), pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), hereby moves to dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted. In support of this motion, Integrity relies on the Memorandum of Points and Authorities that follows, the First Amended Complaint ("FAC") (Doc. #57), the pleadings and filings on record in this case, and any further evidence and argument the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Integrity hereby incorporates by reference and joins in all arguments made in the Joint Motion to Dismiss filed on June 10, 2016 (Doc. #74).

This case concerns a cluster of entities which the FAC refers to collectively as "Aequitas" in a transparent effort to evade the pleading requirements imposed by the Federal Rules of Civil Procedure. The confusing pleadings seem calculated to conflate legally distinct offering entities, selling more than a half-dozen different notes pursuant to different offering memoranda, to construct a class of differently situated Plaintiffs whose commonality rests largely upon the weakness of their claims. In addition to woefully defective allegations that the Aequitas entities violated Oregon's securities laws, Plaintiffs also assert that Integrity is liable for participating in or aiding those violations. Plaintiffs make these claims on the basis of a small handful of vague allegations that do not, as a matter of law, state a claim for relief against Integrity.

Integrity is alleged to be liable in part because it served as a custodian for certain Aequitas fundraising entities, including several that are nowhere else discussed in the FAC or otherwise

relevant to the claims. But Oregon law is clear that such ministerial actions cannot support a claim for liability unless they are accompanied by allegations—which Plaintiffs do not make—that the defendant knew the facts underlying the primary liability or was grossly negligent in not knowing them. Plaintiffs also accuse Integrity of participating or materially aiding in the allegedly unlawful sales by soliciting the sale of two of the securities at issue in this case. As to one of those two notes, the FAC does not tie even a single Plaintiff in a single transaction to Integrity. As to the other, the allegations are so threadbare that they cannot withstand scrutiny under the heightened particularity standard applicable to fraud claims.

In light of those deficiencies, the Court must dismiss the claims against Integrity.

## II. STATEMENT OF FACTS

The facts alleged in the FAC are outlined at length in the Joint Motion, which Integrity incorporates by reference. *See* Joint Motion at 4–10. Only facts relevant to Integrity are summarized here.

The FAC alleges that seven Aequitas securities were sold in violation of Oregon law. FAC ¶¶ 21–25, 27–28. Those offerings were interests in Aequitas Commercial Finance, LLC ("ACF Notes"), Aequitas Income Protection Fund, LLC ("AIPF Interests"), Aequitas Income Opportunity Fund, LLC ("AIOF Notes"), Aequitas Income Opportunity Fund II, LLC ("AIOF-II Notes"), Aequitas MotoLease Financial, LLC ("AMLF Notes"), Aequitas Enhanced Income Fund, LLC ("AEIF Interests"), and Aequitas Capital Opportunities Fund, LP ("ACOF Interests").[1] *Id.* The FAC alleges that these sales were unlawful because none of the securities were registered under state or federal law. *Id.* ¶¶ 31, 38, 44, 50, 56, 60, 190(a). Also, the various Aequitas entities allegedly sold the securities through the use of false or misleading statements. *Id.* ¶ 190(b)–(c).

The FAC identifies Integrity as a Colorado commercial bank which served as the custodian for certain Aequitas fundraising entities. *Id.* ¶ 20. Plaintiffs allege that Integrity, alongside the

[1] There are no allegations that appear to connect AMLF Notes to Integrity in any way.

other Defendants, participated in or materially aided the allegedly unlawful sales, and also that Integrity solicited certain allegedly unlawful sales. *Id.* ¶¶ 1, 191–92.

First, Plaintiffs allege that Integrity participated or materially aided in the allegedly unlawful sales by "serv[ing] as the custodian for certain Aequitas fundraising vehicles, including ACF; AIOF; AIPF; ACOF; AEIF; [Aequitas ETC Founders Fund, LLC]; Aequitas Hybrid Fund, LLC; and Aequitas WRFF I, LLC." *Id.* ¶ 30(f). There are no allegations suggesting that any sales of the Aequitas ETC Founders Fund, Aequitas Hybrid Fund or Aequitas WRFF I securities were unlawful.

Second, the FAC alleges that Integrity solicited the sale of certain ACF Notes and certain AIOF-II Notes on behalf of the Aequitas entities. *Id.* ¶¶ 30(f), 36, 55. "Investors purchasing those ACF Notes completed subscription agreements and custody agreements, which were prepared by and returned to Integrity. Integrity served and continues to serve as custodian for those ACF Notes, and receives a fee for doing so." *Id.* ¶ 36. The same is allegedly true of the AIOF-II Notes. *Id.* ¶ 55. The FAC identifies ***no transactions*** linking Integrity to the sale of ACF Notes to any of the Plaintiffs at any time.

With respect to the AIOF-II Notes, Plaintiffs point to only two transactions. Plaintiffs allege that in September 2015, Plaintiffs Greg and Susan Warrick, "acting as co-trustees of the Warrick Family Trust, purchased from Aequitas an interest in an AIOF-II Note in the principal amount of $94,000, with interest at the annual rate of 10 percent." *Id.* ¶ 70(a). Plaintiffs also allege that in that same month, "Greg Warrick purchased from Aequitas an interest in an AIOF-II Note in the principal amount of $57,200, with interest at the annual rate of 10 percent." *Id.* ¶ 70(b). The FAC claims that Integrity solicited those sales on behalf of the Aequitas entities. *Id.* ¶ 70.

On the basis of those allegations alone, Plaintiffs contend that their putative class of investors shares the question of whether all the Defendants, including Integrity, "participated in or materially aided the unlawful sales of Aequitas Securities . . . [and] whether Defendant Integrity successfully solicited unlawful sales of Aequitas Securities." *Id.* ¶ 184(c)–(d).

Plaintiffs seek relief from Integrity, alleging that "Defendants . . . are liable pursuant to ORS 59.115(3) because they participated in and materially aided unlawful sales of securities." *Id.* ¶ 191. Plaintiffs also claim that "Defendant Integrity is liable pursuant to ORS 59.115(3) because it successfully solicited the unlawful sale of securities." *Id.* ¶ 192.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must plead facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required. *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Moreover, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

Claims that sound in fraud must be pled with the heightened particularity required by Federal Rule of Civil Procedure 9(b). To survive a motion to dismiss, a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, a plaintiff must plead each of the elements of a fraud claim with particularity, i.e., a plaintiff "must set forth ***more*** than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.

1994)) (emphasis in original). Rather, fraud claims "must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper*, 137 F.3d at 627).

## IV. ARGUMENT

Plaintiffs, in an apparent effort to evade the plausibility requirements of pleading in federal court generally, as well as the heightened pleading requirements for fraud claims, have alleged that a collection of separate entities, which they collectively call "Aequitas," sold eight different securities—only six of which are alleged to have been purchased by any of the named Plaintiffs—in violation of Oregon law. *See* FAC ¶¶ 27–28, 64–70. According to Plaintiffs, Integrity is liable, along with the rest of the Defendants, under ORS 59.115(3) because it participated in and materially aided those unlawful sales. *Id.* ¶ 191. Integrity is also allegedly "liable pursuant to ORS 59.115(3) [sic] because it successfully solicited the unlawful sale of securities." *Id.* ¶ 192.

Plaintiffs' claims are woefully deficient under even the most generous pleading standards. After stripping away allegations meant to demonstrate the Court's personal jurisdiction over Integrity and that a class action is an appropriate vehicle for these claims, the claims against Integrity can be reduced to three allegations: (1) Integrity served as the custodian for certain Aequitas fundraising vehicles; (2) Integrity solicited the sale of certain ACF Notes—though ***nowhere*** do Plaintiffs identify such a transaction; and (3) Integrity solicited the sale of certain AIOF-II Notes, including those sold to Greg Warrick and to Greg and Susan Warrick as trustees of the Warrick Family Trust in September 2015. *Id.* ¶¶ 30(f), 36, 55, 70. ***That is all***. There are no further allegations describing Integrity's conduct.

Merely serving as a custodian for what the FAC calls "Aequitas fundraising vehicles" fails as a matter of law to constitute "participat[ing] or materially aid[ing] in the sale" of unlawfully sold facilities. *See* ORS 59.115(3)-(4). As for the alleged solicitation of sales, there are zero allegations in the FAC concerning ***any*** sales of ACF Notes that Integrity solicited, and liability based on that claim fails even under Rule 8. And the allegation that Integrity solicited the sale of

AIOF-II Notes to the Warricks fails under Rule 9(b): the FAC fails to allege what, if any, materials the Warricks reviewed or relied on before purchasing the AIOF-II Notes, the form that Integrity's purported "solicit[ation]" took, or any other details that would "set forth ***more*** than the neutral facts necessary to identify the transaction." *Cooper*, 137 F.3d at 625 (quoting *In re GlenFed*, 42 F.3d at 1548).

**A. Liability premised solely on Integrity's serving as a custodian for Aequitas fundraising vehicles must, on the face of the FAC, be dismissed under ORS 59.115(4).**

Oregon law provides for primary liability for any person who sells or successfully solicits the sale of a security (1) with a device, scheme, or artifice to defraud; (2) by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) with any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. ORS 59.115(1)(b) (incorporating ORS 59.135(1) and (3)). As the Joint Motion describes in detail, and as discussed briefly below, Plaintiffs have failed to allege a primary violation of Oregon securities law against any of the Aequitas entities. *See* Joint Motion at 12–25. That necessarily means that any claim for secondary liability under ORS 59.115(3) must also fail. *See, e.g.*, *Anderson v. Carden*, 146 Or. App. 675, 683, 934 P.2d 562 (1997) ("[T]he liability of the nonseller participant under ORS 59.115(3) is predicated on the violation of the seller.").

Oregon law imposes secondary liability against "every person who participates or materially aids in the sale."[2] ORS 59.115(3). But the same statute provides that:

> Notwithstanding the provisions of subsection (3) of this section, a person whose sole function in connection with the sale of a security is to provide ministerial functions of escrow, ***custody*** or deposit services in accordance with applicable law is liable only if the person participates or materially aids in the sale ***and*** the purchaser sustains the burden of proof that the person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence.

[2] Secondary liability also attaches to anyone who controls a seller liable for a primary violation, and every partner, limited liability company manager, officer or director of the seller. ORS 59.115(3). But there is nothing in the FAC—and rightly so—to suggest this is a theory under which Plaintiffs claim Integrity is liable.

ORS 59.115(4) (emphasis added); *see also Houston v. Seward & Kissel, LLP*, 2008 WL 818745, at *8 (S.D.N.Y. Mar. 27, 2008) (ORS 59.115(4) places the burden on purchasers to show that a secondary actor performing ministerial functions had actual or constructive knowledge of the underlying fraudulent acts). Fatally for Plaintiffs, the FAC nowhere alleges that Integrity had knowledge of the existence of facts on which primary liability against the Aequitas entities is based or was reckless or grossly negligent in not possessing such knowledge. Under the plain language of the statute, liability cannot attach merely because a bank served as a custodian for Aequitas fundraising vehicles.

This conclusion coheres, moreover, with the commonsense understanding of what it means to participate or materially aid in some transaction. For example, in *Day v. Saunders*, 270 Or. 432, 437, 442, 528 P.2d 513 (1974), the court found that defendants participated in the sale of securities by engaging in a series of meetings and conferences with the plaintiff to discuss his potential investment and then entered into a written agreement with plaintiff to issue him 25,000 shares in exchange for $25,000. In *Prince v. Brydon*, 307 Or. 146, 148–49, 764 P.2d 1370 (1988), the court explained that "[w]hether one's assistance in the sale is 'material' . . . depends on the importance of one's personal contribution to the transaction." The court found that an attorney who had drafted the offering documents and gave a tax opinion on the transaction met this threshold. *Id.* In *Ainslie v. Spolyar*, 144 Or. App. 134, 144–45, 926 P.2d 822 (1996), an attorney was found to have "materially aided" in the securities sales by becoming "deeply involved" in the misuse of early investor funds to prevent a foreclosure "that would at the least have seriously impeded the offering" and continuing to provide legal services to the issuer thereafter. In *Metal Tech Corp. v. Metal Teckniques Co., Inc.*, 74 Or. App. 297, 308–09, 703 P.2d 237 (1985), the court explained that acting only as a "scrivener" was insufficient to constitute "material aid;" it stated that "'something more than the mere preparation and execution of documents is required to find liability for "participating" or "materially aided" under the statute.'" (quoting *Fakhrdai v. Mason*, 72 Or. App. 681, 684, 696 P.2d 1164 (1985)). Each of those cases implicate a level of involvement

far beyond the underlying facts alleged here—that Integrity served as a custodian for several Aequitas investments.

Plaintiffs' claims against Integrity under ORS 59.115(3) must therefore be dismissed to the extent they are based only on Integrity's having served as a custodian.

**B. Plaintiffs have alleged no facts to support the conclusory allegation that Integrity solicited the sale of ACF Notes, and no Plaintiff has standing to bring such a claim.**

Plaintiffs' allegation that Integrity actively solicited the sale of certain ACF Notes is inadequate and is contradicted by other allegations in the complaint, and any claim for liability based on it must be dismissed. Plaintiffs allege that "Integrity successfully solicited the sale of certain ACF Notes. Investors purchasing those ACF Notes completed subscription agreements and custody agreements, which were prepared by and returned to Integrity. Integrity served and continues to serve as custodian for those ACF Notes, and receives a fee for doing so." FAC ¶ 36. That is the sum total of Plaintiffs' pleadings on this subject. That is wholly inadequate to state a plausible claim even under the most forgiving reading of *Twombly* and *Iqbal*. It certainly must fail under Rule 9(b).

Plaintiffs do not identify any transaction—not one—in which Integrity solicited the sale of any ACF Notes. Not a single Plaintiff alleges that he or she purchased such a note through Integrity. Not a single Plaintiff, therefore, has standing to bring a claim against Integrity as to the ACF Notes. *See State v. Marsh & McLennan Cos.*, 241 Or. App. 107, 114, 250 P.3d 371 (2011) (ORS 59.115 "creates a cause of action for purchasers of stock who are damaged by misrepresentations in face-to-face securities transaction"), *rev'd on other grounds*, 353 Or. 1, 292 P.3d 525 (2012).

Even if the lack of standing did not doom Plaintiffs' claims premised on soliciting the sale of ACF Notes, the absence of particularized facts does. A claim for secondary liability under ORS 59.115(3) based on an alleged primary violation of ORS 59.115(1)(b) is a securities fraud

claim.[3] *See Paulsell v. Cohen*, 2002 WL 31496397, at *27 (D. Or. May 22, 2002) (referring to claim brought under ORS 59.115(3) as a "securities fraud claim"); *Jost v. Locke*, 65 Or. App. 704, 709 n.4, 673 P.2d 545 (1983) (explaining that nonseller defendants "may be held personally liable for securities fraud in spite of the fact that the sales were made by the corporation"). It follows that to allege secondary liability under ORS 59.115(3), Plaintiffs must allege sufficient facts to meet the "'who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627).

Plaintiffs' pleadings fall well short of that threshold, however. Not one transaction is even mentioned, much less described. Plaintiffs alleged that investors (but who?) completed subscription agreements and custody agreements, "which were prepared by and returned to Integrity." FAC ¶ 36. When? Which agreements? No matter how many times one reads the FAC, these questions are never answered. Moreover, the allegation that Integrity prepared the subscription agreement for the ACF Notes is contradicted by the earlier allegation that it was the lawyer defendants who prepared the subscription agreements. "On information and belief, Tonkon prepared or participated in the preparation or review of the form subscription agreement." FAC ¶ 32. One cannot draw, in *Iqbal's* words, a reasonable inference that the defendant is liable for the misconduct alleged," when the alleged misconduct of Integrity—in paragraph 36 of the amended complaint—is instead attributed to a law firm defendant—in paragraph 32 of the amended complaint.

Any claims against Integrity related to the ACF Notes fail as a matter of law and must be dismissed.

[3] To the extent Plaintiffs' secondary liability claims hinge on an alleged primary violation due to non-registration of the securities under ORS 59.115(1)(a), their claim fails as a matter of law. All of the securities were sold under SEC Regulation D, and therefore are "federal covered securit[ies]" that are exempt from Oregon's registration requirements, which would in any event be preempted by federal law. *See* Joint Motion at 12-14.

**C. Plaintiffs' claims related to the AIOF-II Notes similarly fail under Rule 9(b) and must be dismissed.**

Finally, even Plaintiffs' most detailed allegations against Integrity fail to state a claim under Rule 9(b)'s heightened pleading standards. Plaintiffs alleged that, in September 2015, the Warricks purchased AIOF-II Notes that Integrity had "solicited" on Aequitas' behalf. FAC ¶ 70. But again, Plaintiffs fail allege specific facts regarding the "'who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627). *Who* at Integrity allegedly "solicited" the Warricks? *What* form did that "solicitation" take? *When* did the "solicitation" occur—at the time of the transaction, or weeks or months earlier? *Where* did the "solicitation" occur? *How* did the "solicitation" lead to the Warricks' purchase of the securities? The FAC offers no answer to any of those questions.

The deficiencies of Plaintiffs' allegations do not end there. The Joint Motion has already explained why the FAC's allegations were deficient in their attributing false statements or actionable omissions to "Aequitas." Joint Motion at 15–24. Nor does the FAC identify any false statement or statement rendered false due to a material omission by *Integrity* in its alleged "solicitation." Plaintiffs allege that investors "completed subscription agreements and custody agreements, which were prepared by and returned to Integrity[,]" FAC ¶ 55, but Plaintiffs do not identify any false statements or actionable omissions in those subscription or custody agreements. Plaintiffs fail to identify *any* other documents or investment materials provided by Integrity (or anyone else) that the Warricks received or reviewed in connection with alleged the September 2015 transactions.

And again, just as with the contradictory allegations as to the preparation of the subscription agreement for the ACF Notes, the amended complaint contains contradictory allegations as to Integrity's responsibility for preparing the subscription agreements for the AIOF-II Notes. In paragraph 51, plaintiffs allege that "Tonkon Torp prepared or participated in the preparation or review of the form subscription agreement completed and submitted by purchasers of AIOF-II Notes . . ." A few paragraphs later, plaintiffs ask the court to infer the liability of

Integrity because "investors purchasing those AIOF-II Notes completed subscription agreements and custody agreements which were prepared by and returned to Integrity." FAC ¶ 55.

The Supreme Court has explained that absent allegations made on a defendant-by-defendant basis, it is doubtful that a complaint such as this one can give "the notice required by Rule 8." *See Twombly*, 550 U.S. at 564 n.10 ("[A] defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."). Here, no misrepresentations or material omissions are attributed to Integrity, and Plaintiffs have failed to explain in any detail at all how Integrity "solicited" the sale of any securities to the Warricks or anyone else. The allegations here do not even meet the *Twombly* standard; they certainly do not come close to alleging claims the particularity required for fraud claims. *See In re Galena Biopharma, Inc., Sec. Litig.*, 117 F. Supp. 3d 1145, 1164 n.15 (D. Or. 2015) (dismissing "impermissible allegations attributing something to all Defendants as a single unit" under Rule 9(b)).

## V. CONCLUSION

For the foregoing reasons, Integrity respectfully asks the Court to dismiss the First Amended Complaint as to Integrity.

DATED: July 15, 2016

LANE POWELL PC

By /s/ Milo Petranovich
Milo Petranovich, OSB No. 813376
503.778.2114
Peter D. Hawkes, OSB No. 071986
503.778.2165
Facsimile: 503.778.2200
Attorneys for Integrity Bank & Trust