**Bruce M. Bettigole** (admitted *pro hac vice*)
Email: bruce.bettigole@sutherland.com
**Nicholas T. Christakos** (admitted *pro hac vice*)
Email: nicholas.christakos@sutherland.com
**Gail L. Westover** (admitted *pro hac vice*)
Email: gail.westover@sutherland.com
**SUTHERLAND ASBILL & BRENNAN LLP**
700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593

**Matthew J. Kalmanson,** OSB 041280
Email: mjk@hartwagner.com
**Lindsay Howk Duncan,** OSB 120974
Email: lhd@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Attorneys For Defendant TD Ameritrade, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, et al.,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP, et al.,

Defendants.

Civil Action No. 3:16-cv-00580-AC

**DEFENDANT TD AMERITRADE, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

**Oral Argument Requested**

# TABLE OF CONTENTS


LOCAL RULE 7-1(A) CERTIFICATION....1

MOTIONS TO DISMISS....1

MEMORANDUM OF LAW....3

I. INTRODUCTION....3

II. FACTUAL ALLEGATIONS AGAINST TD AMERITRADE....4

III. APPLICABLE PLEADING STANDARDS....6

IV. ARGUMENT....7

A. Plaintiffs Do Not and Cannot State a Claim Against TD Ameritrade Because the Alleged Recommendation and Referral of Certain Investors to Financial Advisors Is Not Conduct That "Participates or Materially Aids in the Sale" of Aequitas Securities Under ORS 59.115(3)....9

*1. Secondary Liability Depends on the Importance of the Personal Contribution to the Sale of the Securities; the Contribution Must be Substantial, Not Attenuated or Inconsequential.*....10

*2. Recommending and Referring an Investor to a Financial Advisor Is Well Beyond the Outer Boundary of Conduct that "Participates or Materially Aids" in the Sale of Securities Under ORS 59.115(3).*....12

B. TD Ameritrade's Alleged Service as a Custodian Does Not, Without More, Provide a Basis for Secondary Liability Under ORS 59.115(3) or ORS 59.115(4).16

*1. The Custodian Allegations Do Not State a Claim.*....16

*2. The FAC Does Not Allege That TD Ameritrade, in Its Capacity as Custodian, Knew or Should Have Known of the Facts on Which Liability Is Based as Required by ORS 59.115(4).*....19

C. Plaintiffs Have Failed To Allege Sufficient Facts Under Rules 8, 9(b) and 12(b)(6) To State a Viable Claim....20

D. Plaintiffs Fail To State a Claim of a Primary Violation of Oregon's Securities Laws by Any Alleged Seller....24

V. CONCLUSION....24

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Aero Marine Engine, Inc. v. Transporter, Inc.*,
No. 05-1469, 2007 WL 3128500 (D. Or. Oct. 23, 2007)....................6

*Ainslie v. First Interstate Bank of Oregon, N.A.*,
148 Or. App. 162, 939 P.2d 125 (1997)....................17, 19

*In re Allstate Life Ins. Co. Litig.*,
971 F. Supp. 2d 930 (D. Ariz. 2013)....................11

*Anderson v. Carden*,
146 Or. App. 675, 934 P.2d 562 (1997)....................8, 14, 20, 24

*Arnett v. Bank of Am., N.A.*,
874 F. Supp. 2d 1021 (D. Or. 2012)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 21

*Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of So. Cal.*,
159 F.3d 1178 (9th Cir. 1998)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6, 21

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995)....................7

*Fakhrdai v. Mason*,
72 Or. App. 681, 696 P.2d 1164 (1985)....................10, 12, 13

*Galbraith v. MML Investor Services, Inc.*,
No. 09-437, 2009 WL 4955617 (D. Or. Dec. 11, 2009)....................14, 15

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015)....................7, 20, 23

*Grand v. Nacchio*,
222 Ariz. 498, 217 P.3d 1203 (Ct. App. 2009)....................15

*Green v. Jonhop, Inc.*,
358 F. Supp. 413 (D. Or. 1973) ....................13

*Houston v. Seward & Kissle, LLP*,
No. 07cv6305, 2008 WL 818745 (S.D.N.Y. Mar. 27, 2008) ....................16, 19

*Karsun v. Kelley*,
258 Or. 155, 482 P.2d 533 (1971) ....................6

*Newman v. Comprehensive Care Corp.*,
794 F. Supp. 1513 (D. Or. 1992) ....................7, 22, 23

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)....................18

*Prince v. Brydon*,
307 Or. 146, 764 P.2d 1370 (1988) ....................10, 13, 15, 18, 19

*Riley v. Brazeau*,
612 F. Supp. 674 (D. Or. 1985) ....................13, 23

*Roisland v. Flagstar Bank, FSB*,
989 F. Supp. 2d 1095 (D. Or. 2013) ....................6, 23

*Shasta View Irrigation Dist. v. Amoco Chem. Corp.*,
329 Or. 151, 986 P.2d 536 (1999) ....................10

*Sherter v. Ross Fialkow Capital Partners, LLP*,
31 Mass. L. Rptr. 98 (Sup. Ct. Suffolk Cnty. Jan. 4, 2013)....................11

**Statutes:**

ORS 59.115....................6, 15

ORS 59.115(3) .................... *passim*

ORS 59.115(4) .................... *passim*

ORS 59.135....................6

**Rules:**

Federal Rules of Civil Procedure

Rule 8 ........ *passim*
Rule 9(b) ........ *passim*
Rule 12(b)(6) ........ *passim*

**Miscellaneous:**

Gary Berne & Neil Bregenzer, "Participant Liability Under the Oregon Securities Law After *Prince v. Brydon*," 68 OR. L. REV. 885 (1989) ........ 13, 14, 15

Revised Uniform Securities Act of 2002, § 509(g)(4) ........ 19

Revised Uniform Securities Act of 2002, § 509 cmt. ........ 19

Webster's Third New Int'l Dictionary (unabridged ed. 2002) ........ 10, 11, 14

## LOCAL RULE 7-1(A) CERTIFICATION

Counsel for Defendant TD Ameritrade, Inc. has described its grounds for dismissal to counsel for Plaintiffs in writing, and has conferred with such counsel through telephone conference. Despite such good faith efforts to resolve the grounds for this Motion, the parties were unable to do so, necessitating the filing of this Motion.

## MOTIONS TO DISMISS

Defendant TD Ameritrade, Inc. ("TD Ameritrade") hereby moves to dismiss the First Amended Class Action Complaint ("FAC"), in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6), on the following grounds:

1. TD Ameritrade's alleged recommendation and referral of "certain investors to financial advisors for the purpose of purchasing Aequitas Securities" ("the referral allegations") is not, and cannot be, conduct that "participates or materially aids in the sale" of a security and thus does not provide a basis for secondary liability under ORS 59.115(3). Finding liability for such conduct would exceed the outer boundary of the law of secondary liability. To the extent that Plaintiffs' claim is premised on the referral allegations, the claim should be dismissed with prejudice.

2. TD Ameritrade's alleged service as "custodian for certain Aequitas Securities" ("the custodian allegations") does not provide a basis for secondary liability under ORS 59.115(3). Specifically, under ORS 59.115(4), a person who solely provides custodial services "is liable only if the person participates or materially aids in the sale ***and*** the purchaser sustains the burden of proof that the person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence." (Emphasis added.) Plaintiffs' attempt to couple the custodian

allegations with the referral allegations does not satisfy ORS 59.115(4) because the referral allegations do not satisfy the separate requirement of participation or material aid for the reasons set forth in Motion 1 above, and the custodian allegations, standing alone, do not state a claim. To the extent that Plaintiffs' claim is premised on the custodian allegations, either coupled with the legally deficient referral allegations or standing alone, the claim should be dismissed with prejudice. In addition, under ORS 59.115(4), the burden is on Plaintiffs to plead (and prove), in conjunction with the custodian allegations, that TD Ameritrade "knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence." Plaintiffs fail to do so. The custodian allegations thus fail to state a viable claim on the face of ORS 59.115(4) and under Rules 8, 9(b) and 12(b)(6) for this additional reason.

3. Apart from the failure of the referral allegations and the custodian allegations to state a cognizable claim, Plaintiffs fail to allege sufficient facts under Rules 8, 9(b) and 12(b)(6) to state a viable claim.

4. Plaintiffs fail to allege a primary violation of Oregon's securities laws by any alleged seller for all of the reasons set out in the Joint Motion To Dismiss the First Amended Complaint, Doc. No. 74 ("Joint Motion"), which is hereby adopted and incorporated herein by reference.

These grounds for dismissal are further amplified in the Memorandum of Law set out below.

## MEMORANDUM OF LAW

## I. INTRODUCTION

In their 52-page FAC, containing 194 paragraphs of allegations, Plaintiffs do not allege that TD Ameritrade marketed, offered, solicited or sold any Aequitas Securities to them. Plaintiffs make essentially two substantive allegations against TD Ameritrade, contained in a single sentence: that TD Ameritrade "served as custodian for certain Aequitas Securities," and "recommended and referred investors to financial advisors for the purpose of purchasing Aequitas Securities." FAC at ¶ 19; *see also id.* at ¶¶ 30(e), 37. Based on these conclusory allegations, Plaintiffs seek to impose secondary liability on TD Ameritrade for the alleged violation of Oregon securities laws by the actual "sellers" of the Aequitas Securities. Such a claim, predicated on these allegations, substantially exceeds the outer boundary of secondary liability and should be dismissed.

Under ORS 59.115(3) and ORS 59.115(4), the purely ministerial act of serving as custodian for the investments does not itself give rise to secondary liability for a securities law violation by a primary violator. Plaintiffs necessarily must rely on the allegation that a mere recommendation of, or referral to, a financial advisor gives rise to secondary liability. This is not the law in Oregon. The provisions of ORS 59.115(3), under which liability is sought against TD Ameritrade, afforded their ordinary and customary meaning, together with Oregon case law and cases from other jurisdictions having similar statutory language, make clear that Plaintiffs lack any cognizable theory of liability with respect to TD Ameritrade. Plaintiffs also fail to allege as to the custodian, TD Ameritrade, the existence of actual knowledge of the misrepresentations and omissions of material fact that are alleged to have been made by others, or that recklessness or gross negligence accounts for the lack of knowledge.

In addition to the failure of the referral allegations and the custodian allegations to state a cognizable claim, Plaintiffs have failed to meet the pleading requirements of Rules 8, 9(b) and 12(b)(6), as to both the alleged primary violations and the theory of secondary liability against TD Ameritrade. The allegations of wrongdoing in the FAC are both conclusory and imprecise. They fail to meet even the ordinary pleading standard for non-fraud, civil actions, much less the more rigorous pleading standard under Rule 9(b), which is applicable here because the allegations sound in fraud. Plaintiffs do not allege that TD Ameritrade played any role whatsoever in the *sale* of securities, and fail to indicate how, if at all, the conclusory allegations they make constitute participation in, or material aid to, a sale. They certainly do not allege sufficient facts to raise a right to relief above the speculative level under Rule 8, let alone the "who, what, when, where and how" required under Rule 9(b).

The claims against TD Ameritrade should be dismissed – with prejudice.

## II. FACTUAL ALLEGATIONS AGAINST TD AMERITRADE

The FAC alleges that Plaintiffs purchased certain securities, collectively referred to as the "Aequitas Securities," which allegedly were sold by Aequitas in violation of Oregon securities law. The FAC contains no allegations that TD Ameritrade marketed, offered or solicited the sale of Aequitas Securities.

As to TD Ameritrade, the FAC contains very few allegations, all of which are conclusory. TD Ameritrade is mentioned only in paragraphs 19, 30(e), 37, 184(c) and 191. Paragraph 184(c) is part of the "Class Action Allegations" and purports to identify as a common question of law or fact whether TD Ameritrade (and the other Defendants) "participated in or materially aided the unlawful sales of Aequitas Securities." FAC at ¶ 184(c). Paragraph 191 is part of the "Claim for Relief" and alleges in purely conclusory fashion that TD Ameritrade

"participated in and materially aided unlawful sales of securities." *Id.* at ¶ 191. The substantive allegations in support of the Claim for Relief, such as they are, may be found in paragraph 19, and are repeated almost verbatim in paragraphs 30(e) and 37. Plaintiffs allege that TD Ameritrade "served as custodian for certain Aequitas Securities," and "as part of its financial advisor referral program, recommended and referred investors to financial advisors for the purpose of purchasing Aequitas Securities." *Id.* at ¶ 19; *see id.* at ¶¶ 30(e), 37. Paragraph 37 adds, "on information and belief," that TD Ameritrade "provided its custodial services to Aequitas investors at a discounted rate." *Id.* at ¶ 37.

With respect to the custodian allegations, Plaintiffs initially assert that TD Ameritrade was the custodian for "certain Aequitas Securities" (*id.* at ¶¶ 19, 30(e)), and later in the FAC the custodian for "certain ACF Notes" (*id.* at ¶ 37). The ACF Notes were sold by Aequitas Commercial Finance, LLC, "directly to investors through the so-called Aequitas 'Private Note' program." *Id.* at ¶ 27. In describing their purchases, the named Plaintiffs concede that they purchased their ACF Notes from Aequitas (*i.e.*, not from TD Ameritrade). *See id.* at ¶¶ 64–70.

With respect to the referral allegations, Plaintiffs allege that TD Ameritrade's "recommend[ation] and refer[al] [of] certain investors to financial advisors for the purpose of purchasing ACF Notes" was done in its "capacity" as "custodian for certain ACF Notes." *Id.* at ¶ 37. The FAC does not identify the "certain investors" referred or the financial advisors in question. It also does not provide any detail regarding the substance of TD Ameritrade's alleged recommendation or referral, when TD Ameritrade allegedly made the recommendations or referrals to financial advisors, the circumstances under which the recommendations and referrals were made, or how the recommendations and referrals to financial advisors were "for the purpose of purchasing" Aequitas Securities or ACF Notes.

The allegations regarding TD Ameritrade constitute a fraction of the FAC. The remainder of the FAC concerns the Aequitas companies and the other Defendants.

## III. APPLICABLE PLEADING STANDARDS

Rule 8 requires that a complaint contain sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead a "plausible" claim for relief rather than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate under Rule 12(b)(6) where, as here, Plaintiffs fail to state a "cognizable legal theory" or fail to allege sufficient facts under such a theory to state a plausible claim. *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (citation omitted).

In order to defeat a motion to dismiss under Rule 12(b)(6), Plaintiffs must provide more than "labels," "conclusions," or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations" and "unwarranted inferences" are insufficient. *Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of So. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). "[N]aked assertion[s] devoid of further factual enhancement will not suffice." *Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1101 (D. Or. 2013) (internal quotation marks omitted).

In addition, the heightened pleading standard under Rule 9(b) applies in this case because claims arising under ORS 59.115(3) sound in fraud. *Karsun v. Kelley*, 258 Or. 155, 167, 482 P.2d 553, 539 (1971) ("[W]hile an action by the purchaser of stock under ORS 59.115 is not a common law action for fraud, the primary basis for such an action is fraud."); *Aero Marine Engine, Inc. v. Transporter, Inc.*, No. 05-1469, 2007 WL 3128500, at *3 n.2 (D. Or. Oct. 23, 2007) (providing that claims arising under both ORS 59.115 and 59.135 "create statutory 'fraud'

actions"). Under Rule 9(b), a complaint that alleges fraud is required to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Plaintiffs must identify "the who, what, when, where, and how of the misconduct charged." *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1163 (D. Or. 2015). And where there are multiple defendants, as here, Plaintiffs must "state the *role* of the individual defendants with particularity." *Newman v. Comprehensive Care Corp.*, 794 F. Supp. 1513, 1518 (D. Or. 1992) (emphasis in original).

Although courts often grant plaintiffs leave to amend, a court need not grant such leave if it determines that the pleading "could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks and citation omitted).

## IV. ARGUMENT

Plaintiffs' allegations against TD Ameritrade are made under ORS 59.115(3), the aider and abettor provision of Oregon's securities laws, but ORS 59.115(4) is also applicable. ORS 59.115(3) provides that "every person who participates or materially aids in the sale" is liable to the same extent as the seller of the securities. ORS 59.115(4) provides:

> Notwithstanding the provisions of subsection (3) of this section, a person whose sole function in connection with the sale of a security is to provide ministerial functions of escrow, custody or deposit services in accordance with applicable law is liable only if the person participates or materially aids in the sale and the purchaser sustains the burden of proof that the person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence.

The allegations in the FAC do not make out a legally cognizable claim against TD Ameritrade and fail to meet the exacting pleading standards under Rule 9(b), or even the pleading standards under Rule 8.

Liability under ORS 59.115(3) is "predicated on the violation of the seller." *Anderson v. Carden*, 146 Or. App. 675, 683, 934 P.2d 562, 566 (1997). Plaintiffs do not allege that TD Ameritrade was the seller of any Aequitas Securities. Plaintiffs therefore must have sufficiently alleged a primary violation by the seller (or sellers) of the securities in order to state a claim against TD Ameritrade. *Id.* Plaintiffs have failed to do so as detailed in the Joint Motion, which TD Ameritrade hereby adopts and incorporates by reference.

Alleging a primary violation is a necessary predicate to secondary liability, but the Plaintiffs' failure to do so is not the only reason that the claims against TD Ameritrade are fatally flawed. Plaintiffs must also allege sufficient facts demonstrating that TD Ameritrade participated in or materially aided the sale of Aequitas Securities under ORS 59.115(3). Plaintiffs fail to do so for several reasons.

First, as set out in Section A below, Plaintiffs' claims fail as a matter of law because the conduct alleged is patently insufficient to state a legally cognizable claim against TD Ameritrade. Merely referring an investor to a financial advisor does not and cannot constitute participation or material aid in a sale under ORS 59.115(3).

Second, as set out in Section B below, serving as a custodian does not constitute participation or material aid in a sale, as ORS 59.115(4) requires something more for custodians. Plaintiffs' attempt to satisfy the requirement of something more by coupling the referral allegations with the custodian allegations fails because the referral allegations are deficient. Further, the custodian allegations themselves are deficient because, contrary to the specific

requirements of ORS 59.115(4), Plaintiffs fail to allege facts showing that TD Ameritrade "knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence." ORS 59.115(4) clearly places the burden of making such allegations on Plaintiffs.

Third, as set out in Section C below, even if the Court determines that Plaintiffs could state a cognizable legal theory despite TD Ameritrade's lack of a connection to the sale, Plaintiffs fail to allege sufficient facts to state a plausible claim under such a theory. Plaintiffs do not allege sufficient facts to raise a right to relief above the speculative level under Rule 8, let alone the "who, what, when, where and how" required under Rule 9(b).

Plaintiffs' claims as to TD Ameritrade should be dismissed with prejudice.

### A. Plaintiffs Do Not and Cannot State a Claim Against TD Ameritrade Because the Alleged Recommendation and Referral of Certain Investors to Financial Advisors Is Not Conduct That "Participates or Materially Aids in the Sale" of Aequitas Securities Under ORS 59.115(3).

Plaintiffs' claim against TD Ameritrade fails as a matter of law because Plaintiffs do not, and cannot, make allegations sufficient to show that TD Ameritrade participated in or materially aided the unlawful sale of securities under ORS 59.115(3). Plaintiffs base their claim against TD Ameritrade primarily on the allegation that TD Ameritrade, through a financial advisor referral program, recommended and referred "certain investors to financial advisors for the purpose of purchasing Aequitas Securities." FAC at ¶ 37; *see also* ¶¶ 19, 30(e). These referral allegations cannot establish that TD Ameritrade participated or materially aided in the sale of Aequitas Securities under Oregon law. To the extent that Plaintiffs' claim is premised on these referral allegations, the claim should be dismissed with prejudice.

***1. Secondary Liability Depends on the Importance of the Personal Contribution to the Sale of the Securities; the Contribution Must be Substantial, Not Attenuated or Inconsequential.***

ORS 59.115(3) requires active conduct (*i.e.*, "participates or materially aids") that is connected to "the sale" of a security in a significant way. Courts interpreting ORS 59.115(3) have consistently held that liability for participating in or materially aiding a sale of securities "depends on the importance of one's personal contribution to the transaction," *Prince v. Brydon*, 307 Or. 146, 149, 764 P.2d 1370, 1371 (1988), and that "something more than the mere preparation and execution of documents is required," *Fakhrdai v. Mason*, 72 Or. App. 681, 686, 696 P.2d 1164, 1166 (1985). In *Prince*, the court held that "it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale." *Prince*, 307 Or. at 149, 764 P.2d at 1371. It is clear from the discussion in *Prince* that a substantive contribution based on specialized skill or training is required. *See id.* Similarly, the court in *Fakhrdai* held that because the sale to the plaintiff "could not have been 'completed or consummated' without the alleged activities of defendants in the preparation and execution of the contract on which plaintiff allegedly relied," the plaintiff had sufficiently alleged a claim against the defendant. 72 Or. App. at 686, 696 P.2d at 1167.

Where, as here, the legislature has not defined statutory terms, such as "participates" or "materially aids" in the sale of a security, courts routinely interpret such terms in accordance with their commonly understood meanings. *See Shasta View Irrigation Dist. v. Amoco Chem. Corp.*, 329 Or. 151, 156, 986 P.2d 536, 539 (1999) (stating that the starting point for a statutory analysis is "the text and context of the statute, giving words of common usage their plain, natural, and ordinary meaning"). Webster's defines "participate" as "to take part in something (as an enterprise or activity) usu. in common with others," and "material" as "being of real

importance or great consequence: SUBSTANTIAL." *Webster's Third New Int'l Dictionary* 1646, 1392 (unabridged ed. 2002) ("*Webster's*") (capital letters in original). Integrating these definitions into the statutory language of ORS 59.115(3), "participates in the sale" becomes "take part in [a sale] in common with others," and "materially aids in the sale" becomes providing aid that is "of real importance or great consequence [to the sale]" or "SUBSTANTIAL [to the sale]." The plain meanings of these terms thus do not encompass conduct that is either attenuated or abstract, but rather describe conduct that is directly connected to the relevant activity (here, the sale) in a concrete way or of sufficient import as to have a significant impact on the activity.

States with similarly worded securities laws also define participation and material aid to constitute more than collateral involvement. Courts in Massachusetts, for example, have defined "material aid" to mean that it "was significant in making the sale possible," *Sherter v. Ross Fialkow Capital Partners, LLP*, 31 Mass. L. Rptr. 98, at *12 (Sup. Ct. Suffolk Cnty. Jan. 4, 2013) (interpreting Massachusetts' secondary liability statute). "Participation" has been defined under Arizona securities law as "to take part in something . . . [usually] in common with others [or] to have a part or share in something." *In re Allstate Life Ins. Co. Litig.*, 971 F. Supp. 2d 930, 942 (D. Ariz. 2013) (stating that liability extends "only to persons who have more than some collateral involvement in a securities transaction") (internal quotation marks omitted).

As set out below, referring an investor to an independent advisor who may ultimately recommend a particular security is well beyond the outer boundary for secondary liability under (i) any reasonable interpretation of ORS 59.115(3), (ii) the plain and ordinary meaning of the terms "participate" or "materially aid," and (iii) the operation of similar securities laws in other jurisdictions. Because the conduct alleged against TD Ameritrade does not, and cannot,

constitute participation or material aid, Plaintiffs cannot state a cognizable legal theory and their claims must fail as a matter of law.

### *2. Recommending and Referring an Investor to a Financial Advisor Is Well Beyond the Outer Boundary of Conduct that "Participates or Materially Aids" in the Sale of Securities Under ORS 59.115(3).*

Plaintiffs cannot state a claim for participation or material aid as to TD Ameritrade for merely referring an investor to a financial advisor because such conduct is too far removed from the sale of securities, does not reflect the knowledge, judgment, or assertions of TD Ameritrade to Plaintiffs in connection with the sale of securities, and would be an undue expansion of secondary liability under ORS 59.115(3).

First, TD Ameritrade's conduct must be sufficiently connected to the actual *sale* of the Aequitas Securities. *See* ORS 59.115(3) (providing for liability for every party that "participates or materially aids *in the sale*") (emphasis added); *see also Fakhrdai*, 72 Or. App. at 686, 696 P.2d at 1167 (finding participation and material aid where the sale "could not have been completed or consummated" without the actions of the defendant). Referring an investor or potential investor to a financial advisor, as Plaintiffs have alleged here, does not constitute sufficient involvement in the actual sale of securities. A referral source is at least two steps, and potentially three steps, removed from the sale of securities. As a practical matter, a referral to a financial advisor does not involve any particular transaction, nor has one been alleged here. *See* FAC at ¶¶ 64–70 (describing Plaintiffs' purchase of Aequitas Securities "from Aequitas" with no mention of TD Ameritrade). Plaintiffs vaguely allege that TD Ameritrade referred investors to advisors "for the purpose of purchasing Aequitas Securities" (*id.* at ¶¶ 19, 30(e)), but these conclusory allegations create, at best, an insubstantial, tenuous connection between TD Ameritrade and the sale. Such an abstract allegation of the purported purpose of TD

Ameritrade's referral to advisors is insufficient to establish participation or material aid where, as here, there is no allegation that TD Ameritrade was connected to the actual sale of the Aequitas Securities purchased through an investment advisor.

Second, while courts have held that material aid does not depend on knowledge of the underlying fraud, the alleged conduct must reflect the importance of its contribution to the transaction. *Prince*, 307 Or. at 149, 764 P.2d at 1371; Gary Berne & Neil Bregenzer, "Participant Liability Under the Oregon Securities Law After *Prince v. Brydon*," 68 OR. L. REV. 885, 902 (1989) ("[T]he courts consistently have looked at whether the defendants used their 'knowledge and judgment' or made 'assertions' when assisting in the transactions and in determining what would be represented to investors."). Participation and material aid requires "more than the mere preparation and execution of documents." *Fakhrdai*, 72 Or. App. at 686, 696 P.2d at 1167. "[I]t is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale." *Prince*, 307 Or. at 149, 764 P.2d at 1371. For instance, one Oregon court found that a broker had not materially aided in the sale where his only information came from his employer and the company offering the security, and where his recommendations were based solely on reports issued by the underwriter. *Green v. Jonhop, Inc.*, 358 F. Supp. 413, 421 (D. Or. 1973). In contrast, another Oregon court did not dismiss a claim based on Rule 12(b)(6) where the defendant was alleged to have been directly involved in developing the investment program. *Riley v. Brazeau*, 612 F. Supp. 674, 680 (D. Or. 1985).[1] The more that a party's individual judgment is involved in preparing for or structuring the transaction, "the more likely the person will be held a participant or material aider under

---

[1] In *Riley*, however, the court did grant the motion to dismiss without prejudice under Rule 9(b), requiring the plaintiffs to amend the complaint and plead the allegations against defendants with particularity. *Id.* at 678-79.

ORS 59.115(3)." Berne & Bregenzer, *supra*, at 914. For example, "[t]here is no question that a person who prepares documentation in connection with a sale of securities is a person who 'participates or materially aids' in the sale under ORS 59.115(3)." *Anderson*, 46 Or. App. at 684, 934 P.2d at 566.

Plaintiffs have alleged that TD Ameritrade recommended and referred some customers to independent investment advisors. Simply referring an investor to an independent advisor, without more, does not involve TD Ameritrade's knowledge or judgment, or any specialized training or skill, with respect to any actual sale of securities, and, therefore, does not involve any participation or aid by TD Ameritrade in connection with any such sale. A party that merely provides a referral to a financial advisor is, by definition, not involved in the development of the investment program, the preparation of documents in connection with sale of investments, or the dissemination of information or opinions regarding the investments. Here, there are no allegations that TD Ameritrade went beyond the conduct of a referral source - conduct that does not reflect any recommendations or advice of TD Ameritrade in connection with the sale of any Aequitas Securities.

In the context of the commonly understood meaning of "participates" or "materially aids" in the sale of a security, there are no allegations that TD Ameritrade "took part in [a sale] in common with others," or provided aid that is "of real importance or great consequence [to the sale]" or "SUBSTANTIAL [to the sale]." *See Webster's, supra,* at 1646, 1392.

TD Ameritrade has not identified any case where allegations of the mere referral to an investment advisor have been found to state a claim for secondary liability under ORS 59.115(3). The single Oregon case found by TD Ameritrade concerning a referral relationship alleged far more substantial involvement in the sale. In *Galbraith v. MML Investor Services, Inc.*, No. 09-

437, 2009 WL 4955617 (D. Or. Dec. 11, 2009), the defendant was the employer of the broker who sold the securities, actively promoted the employment relationship, permitted the broker to use the defendant's letterhead for all communications with investors, and conceded that "it may have directly or indirectly controlled [the broker] within the meaning of ORS 59.115" while the broker worked as the defendant's registered representative. *Id.*, at *5 n.1. In addition, the investors alleged that they would not have purchased the securities if the broker had not been affiliated with the defendant. *Id.*, at *5. The relationship in *Galbraith* went far beyond that of a typical referral service and, unlike the allegations as to TD Ameritrade, was based on a special employer-employee relationship. In fact, the court held that after the employment relationship ended, the defendant could no longer have materially aided the broker and, therefore, any claims alleged against the defendant for sales after the employment relationship ended were dismissed. *Id.*

The Arizona securities statute has been described as "substantially the same as" the Oregon provisions "interpreted in *Prince*." Berne & Bregenzer, *supra*, at 919 & n.170. In *Grand v. Nacchio*, 222 Ariz. 498, 500-02, 217 P.3d 1203, 1205-07 (Ct. App. 2009), an Arizona court, interpreting "participation" under the Arizona statute, held that allegations of the mere referral to a broker were insufficient to constitute participation, even where the allegations included actions more directly connected to the sale. In that case, the defendants were alleged to have provided a referral, sent emails to plaintiffs that included misstatements, and controlled the flow of information. *Id.* Plaintiffs here merely allege that TD Ameritrade recommended and referred investors to financial advisors as part of its financial advisor referral program.

Plaintiffs' referral allegations do not state a claim for participation or material aid as to TD Ameritrade. To hold otherwise would exceed the outer boundary of secondary liability

under the Oregon securities laws. Moreover, it would have a significant adverse impact on the securities industry.

### B. TD Ameritrade's Alleged Service as a Custodian Does Not, Without More, Provide a Basis for Secondary Liability Under ORS 59.115(3) or ORS 59.115(4).

Acting as a custodian of securities cannot, without more, serve as a basis for secondary liability under ORS 59.115(3). Participation and material aid do not, and are not meant to, encompass purely ministerial actions such as custodianship. Plaintiffs cannot state a claim as to TD Ameritrade for the provision of custodial services because the very language of the statute requires more than allegations of merely ministerial conduct and because custodianship, by its nature, does not meet the requirements of participation or material aid under Oregon law. In addition, ORS 59.115(4) requires Plaintiffs to plead and prove that TD Ameritrade "knew of the existence of facts on which liability is based or that [TD Ameritrade's] failure to know of the existence of such facts was the result of [TD Ameritrade's] recklessness or gross negligence." Plaintiffs have failed to make such allegations.

#### *1. The Custodian Allegations Do Not State a Claim.*

Oregon securities law distinguishes between "secondary actors who perform more consequential functions" and those who perform merely ministerial functions. *Houston v. Seward & Kissel, LLP*, No. 07cv6305, 2008 WL 818745, at *8 (S.D.N.Y. Mar. 27, 2008). ORS 59.115(4) makes clear that purely ministerial actions such as custodianship are insufficient on their own to state a claim for participation and material aid. Specifically, ORS 59.115(4) provides that where the only connection with the sale of securities is to "provide ministerial functions of escrow, custody, or deposit services," a person "is liable only if the person participates or materially aids in the sale ***and*** the purchaser sustains the burden of proof that the

person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence." (Emphasis added.) Thus, TD Ameritrade cannot be secondarily liable for a securities law violation by virtue of its alleged custodial services unless Plaintiffs demonstrate ***both*** participation and material aid in the sale ***and*** knowledge, recklessness or gross negligence on the part of TD Ameritrade regarding the alleged true nature of the Aequitas Securities.

In the only case that TD Ameritrade identified in which a ministerial actor, such as an escrow agent, was found to have participated or materially aided in a sale, the escrow agent had been integrally involved in the sale of securities. *Ainslie v. First Interstate Bank of Oregon, N.A.*, 148 Or. App. 162, 939 P.2d 125 (1997). In *Ainslie*, it was alleged that the escrow agent unlawfully disbursed the escrowed funds before the escrow was funded to the required level per the agreement, and that this act was the cause of the plaintiffs' losses. *Id.* at 171-72, 939 P.2d at 130. The court found that the escrow agent had participated in or materially aided the sale of securities because it was found to have been integrally involved "in the use and misuse of investor funds" with respect to the sale of the securities at issue. *Id.* at 184-86, 939 P.2d at 137-38. While the court recognized that the escrow agent's role may have been passive at one point, it held that such status ceased once the escrow agent engaged in the alleged unlawful activity.[2] *Id.* Plaintiffs have not alleged any such unlawful conduct by TD Ameritrade in its role as custodian.

Plaintiffs instead attempt to couple the allegations that TD Ameritrade provided custodial services with the allegations that TD Ameritrade referred investors to financial advisors,

---

[2] It should be noted, as the court in *Ainslie* makes clear, that ORS 59.115(4) "was enacted after the relevant events occurred" in that case. *Id.* at 183 n.15, 939 P.2d at 136 n.15.

presumably as a way of satisfying the exacting requirements of ORS 59.115(4). *See* FAC at ¶¶ 19, 30(e), 37. As discussed above, however, the referral allegations do not, and cannot, state a claim for participation or material aid under ORS 59.115(3). *See supra*, pp. 10-16. Plaintiffs cannot state a claim by coupling alleged ministerial conduct that is insufficient on its own with alleged attenuated conduct that is legally insufficient.[3]

In addition, merely acting as a custodian does not rise to the level of participation or material aid under ORS 59.115(3). Courts interpreting ORS 59.115(3) have repeatedly held that the conduct must reflect the importance of the defendant's involvement, knowledge and judgment. *See supra,* pp. 10-12. Much like "[t]yping, reproducing, and delivering sales documents," custodianship may "be essential to the sale, but [it] could be performed by anyone." *Prince*, 307 Or. at 149, 764 P.2d at 1371. Clearing brokers generally perform "routine functions such as clearing trades, administrative tasks, and portfolio management." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 203 (S.D.N.Y. 2006). The custodianship of investments such as these is provided by a clearing firm that performs such ministerial tasks, as opposed to the kind of conduct typically deemed to constitute participation or material aid, such as drafting offering memoranda or other documentation used in the sale of securities.

[3] Plaintiffs also allege, "[o]n information and belief," that custodial services were provided to Aequitas investors at a discounted rate. *Id.* at ¶ 37. TD Ameritrade has not identified any case where the pricing of custodial services was alleged or found to add anything to the insignificance of such ministerial involvement.

The official comments to the secondary liability provision of the Revised Uniform Securities Act of 2002 ("RUSA"), as amended in 2005,[4] make clear that the performance of such routine functions by a clearing broker - "even though necessary to the processing of a transaction" - cannot without more "constitute material aid or result in liability." RUSA § 509 cmt. n.11 (referring to the secondary liability provision, § 509(g)(4)). Merely providing custody does not and cannot constitute participation or material aid.

Under the express language of Oregon's secondary liability provisions, and by its very nature, the administrative act of providing custody cannot, without more, constitute participation or material aid under ORS 59.115(3) and cannot give rise to secondary liability as to TD Ameritrade. As stated above, liability under ORS 59.115(3) as one who participates or materially aids in the sale of securities "depends on the extent and importance of the defendant's involvement." *Ainslie*, 148 Or. App. at 184-85, 939 P.2d at 137; *see also Prince*, 307 Or. at 150, 764 P.2d at 1371-72. To interpret ORS 59.115(3) to encompass the provision of custodial services without allegations of more significant conduct would exceed the outer boundary of ORS 59.115(3) and be contrary to the express provisions of ORS 59.115(4).

### *2. The FAC Does Not Allege That TD Ameritrade, in Its Capacity as Custodian, Knew or Should Have Known of the Facts on Which Liability Is Based as Required by ORS 59.115(4).*

Plaintiffs allege that TD Ameritrade's "recommend[ation] and refer[al] [of] certain investors to financial advisors for the purpose of purchasing ACF Notes" was done in its "capacity" as "custodian for certain ACF Notes." *Id.* at ¶ 37. Since the referral allegations do not state a claim, and the only remaining alleged connection with the sale is the provision of

[4] ORS 59.115(3) is based on the 1957 version of the Uniform Securities Act, and the same language is still used in the 2005 version of the RUSA. *See* RUSA § 509(g)(4); *see also Houston*, 2008 WL 818745, at *6 n.16.

"ministerial functions of escrow, *custody* or deposit services," Plaintiffs have the burden to plead allegations showing that TD Ameritrade "knew of the existence of facts on which liability is based." ORS 59.115(4) (emphasis added). Indeed, the statute deliberately shifts to plaintiffs the burden to establish knowledge, which the Oregon Supreme Court has described as a "substantial burden," *Anderson*, 146 Or. App. at 683, 934 P.2d at 566, and thereby expressly signals that merely ministerial actions are insufficient to create liability without allegations of more significant involvement in the sale of securities.

Plaintiffs have failed to meet this burden. They have alleged no facts demonstrating, or even supporting the inference, that TD Ameritrade had any knowledge of the facts underlying what Plaintiffs allege to have been the sale of Aequitas Securities in violation of Oregon law. They have not alleged that TD Ameritrade knew or should have known that the Aequitas Securities were allegedly required to be registered or that TD Ameritrade knew or should have known of any alleged misrepresentations or omissions by the seller(s). Without any allegation of TD Ameritrade's knowledge whatsoever, any claim against TD Ameritrade where TD Ameritrade merely served as a custodian for certain Aequitas Securities must fail as a matter of law.

### C. Plaintiffs Have Failed To Allege Sufficient Facts Under Rules 8, 9(b) and 12(b)(6) To State a Viable Claim.

Even if the Court were to determine that a party could be considered a participant or a person who materially aids in the sale by merely recommending a financial advisor and by serving as a custodian, Plaintiffs' scant allegations as to TD Ameritrade in the FAC do not satisfy basic pleading requirements. Not only do Plaintiffs fail to allege the "who, what, when, where, and how" required under Rule 9(b), *In re Galena Biopharma*, 117 F. Supp. 3d at 1163,

they fail even to allege sufficient facts to "raise a right to relief above the speculative level" under Rule 8, *Twombly*, 550 U.S. at 555. In fact, TD Ameritrade is only mentioned in five of the 194 paragraphs of the 52-page FAC.

First, Plaintiffs fail to sufficiently connect TD Ameritrade to any actual sale of Aequitas Securities. There are no allegations as to what was supposedly said to Plaintiffs or done by anyone at TD Ameritrade in connection with the sale of any Aequitas Securities. There are no allegations as to when, where, or how TD Ameritrade supposedly did anything having to do with any actual transactions involving Aequitas Securities. Without connecting TD Ameritrade to any actual sale of Aequitas Securities, Plaintiffs have failed to plead with particularity these claims against TD Ameritrade. *Iqbal*, 556 U.S. at 678.

Second, Plaintiffs fail to sufficiently allege that TD Ameritrade participated in or materially aided the sale of Aequitas Securities by referring investors to financial advisors. Plaintiffs allege that TD Ameritrade "recommended and referred certain investors to financial advisors for the purpose of purchasing Aequitas Securities" (FAC at ¶ 19) or "ACF Notes" (*id.* at ¶ 37). But Plaintiffs do not provide any facts or circumstances regarding the alleged recommendations and referrals, how they were made, by whom or when; do not identify the financial advisors to which they were referred; do not provide any facts and circumstances regarding Plaintiffs' discussions with the financial advisors concerning Aequitas Securities; and do not provide detail as to how the sales were conducted. Plaintiffs do not allege any facts showing that TD Ameritrade, by making referrals, participated in the sale or materially aided the sale. The allegations are therefore too conclusory and too far removed from the sale of the securities to state a claim against TD Ameritrade.

Although Plaintiffs allege that TD Ameritrade "referred and recommended" investors to financial advisors, this action is several steps short of participating in or materially aiding an actual sale of a security. This is particularly important since Plaintiffs fail to provide any detail as to how the transactions took place. The FAC provides, in general, that the ACF Notes were sold by an Aequitas entity "directly to investors through the so-called Aequitas 'Private Note' program." *Id.* at ¶ 27. Plaintiffs' allegations do not even describe the role played by the advisors, much less any purported role played by TD Ameritrade, in the sale of Aequitas Securities.

Plaintiffs' attempt to link TD Ameritrade's actions to the actual sale of securities, by alleging that the recommendation and referral was "for the purpose of purchasing Aequitas Securities" or "ACF Notes," is similarly vague and conclusory. *Id.* at ¶¶ 19, 37. This conclusory allegation, with no factual support, is insufficient. As noted above, Plaintiffs allege no information as to the substance of TD Ameritrade's recommendation or referral, and provide no information as to the circumstances under which the recommendation or referral was allegedly made. In fact, in the paragraphs describing the named Plaintiffs' purchases of the securities at issue, TD Ameritrade is not even mentioned.

Third, Plaintiffs fail to provide any detail regarding TD Ameritrade's role as custodian, or to distinguish TD Ameritrade from the other custodian Defendant. Since Plaintiffs allege that there were two defendants that served as the custodian, the lack of any allegations specifying TD Ameritrade's role as custodian makes Plaintiffs' FAC even more deficient. *See Newman*, 794 F. Supp. at 1518 (stating that where there are multiple defendants, plaintiffs must "state the *role* of the individual defendants with particularity.").

Plaintiffs also allege, "on information and belief," that such custodial services were provided to Aequitas investors at a discounted rate. FAC at ¶ 37. Making assertions on information and belief alone, however, is insufficient unless Plaintiffs state the basis for that belief. *Riley*, 612 F. Supp. at 677 ("To satisfy rule 9(b), plaintiffs should have alleged the source of their information and the reasons upon which their belief is founded."). Plaintiffs have not done so here. More importantly, the allegation regarding pricing for the ministerial function of custodianship is insufficient to show participation or material aid in the sale.

Outside of the conclusory allegations as to recommending and referring financial advisors and serving as custodian, Plaintiffs do not allege that TD Ameritrade took any other action in connection with the sale of Aequitas Securities. There is no allegation that TD Ameritrade drafted, or helped to draft, the private placement memoranda or any other documents relating to the sale of Aequitas Securities. There is no allegation that TD Ameritrade provided investment advice to the Plaintiffs in connection with the sale of Aequitas Securities. And there is no allegation as to why TD Ameritrade would have any reason to want its customers to purchase Aequitas Securities in preference to any of the many other securities available to them.

In essence, Plaintiffs' meager, conclusory allegations are insufficient to state a claim as to TD Ameritrade. Plaintiffs do not identify the "who, what, when, where, and how of the misconduct charged," *In re Galena Biopharma*, 117 F. Supp. 3d at1163, nor do they state TD Ameritrade's role with particularity, *Newman*, 794 F. Supp. at 1518. Plaintiffs provide nothing more than "naked assertion[s] devoid of further factual enhancement," *Roisland*, 989 F. Supp. 2d at 1101 (internal quotation marks omitted), and, therefore, all claims as to TD Ameritrade should be dismissed.

### D. Plaintiffs Fail To State a Claim for a Primary Violation of Oregon's Securities Laws by Any Alleged Seller.

Plaintiffs fail to allege a primary violation of Oregon's securities laws by any alleged seller for all of the reasons set out in the Joint Motion, which is hereby adopted and incorporated herein by reference. In the absence of a primary violation, there can be no secondary liability under ORS 59.115(3). *See Anderson*, 146 Or. App. at 683, 934 P.2d at 566. The claims against TD Ameritrade should be dismissed for this additional reason.

## V. CONCLUSION

For the foregoing reasons, and the reasons set out in the Joint Motion, the claims against TD Ameritrade should be dismissed with prejudice.

Dated: July 22, 2016

Respectfully submitted,

/s/Nicholas T. Christakos
**Bruce M. Bettigole** (admitted *pro hac vice*)
Email: bruce.bettigole@sutherland.com
**Nicholas T. Christakos** (admitted *pro hac vice*)
Email: nicholas.christakos@sutherland.com
**Gail L. Westover** (admitted *pro hac vice*)
Email: gail.westover@sutherland.com
**SUTHERLAND ASBILL & BRENNAN LLP**
700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593

/s/Matthew J. Kalmanson
**Matthew J. Kalmanson,** OSB 041280
Email: mjk@hartwagner.com
**Lindsay Howk Duncan,** OSB 120974
Email: lhd@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301
ATTORNEYS FOR DEFENDANT
TD AMERITRADE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on July 22, 2016, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the docket, and that paper copies will be sent by U.S. Mail, postage prepaid, to anyone indicated as non-registered participants.

/s/Matthew J. Kalmanson
Matthew J. Kalmanson, OSB 041280