**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
E-Mail: ptrinchero@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Peter A. Wald (admitted *pro hac vice*)**
E-Mail: peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
E-Mail: gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

**Attorneys for Defendant Deloitte & Touche LLP**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,

Defendants.

Case No. 3:16-cv-00580-AC

**DEFENDANT DELOITTE & TOUCHE LLP'S MOTION FOR PROTECTIVE ORDER**

Oral Argument Requested

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................1

II. PROCEDURAL HISTORY ....................................3

III. ARGUMENT ....................................4

A. The Requests Would Impose Substantial Burden And Expense On Deloitte ....................................5

B. The Discovery Plaintiffs Seek Is Neither Relevant Nor Proportional To The Needs Of This Case ....................................6

C. The Requested Order Will Promote The Just, Speedy, And Inexpensive Determination Of This Action ....................................8

IV. CONCLUSION ....................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6, 8

*Ministerio Roca Solida v. U.S. Dept. of Fish and Wildlife*,
288 F.R.D. 500 (D. Nev. Jan 14, 2013)....9

*O'Neal v. Or. DOJ, Div. of Child Support*,
2015 U.S. Dist. LEXIS 120378 (D. Or. Sept. 9, 2015)....6

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987)....6

*Wenger v. Monroe*,
282 F.3d 1068 (9th Cir. 2002)....6, 7

## STATUTES

ORS 59.055....3

ORS 59.115(1)(b)....3

ORS 59.115(3)....7, 9

ORS 59.135(2)....3

## RULES

Fed. R. Civ. P. 1....8, 9

Fed. R. Civ. P. 8....6, 7, 8

Fed. R. Civ. P. 12....6

Fed. R. Civ. P. 12(b)(6)....6

Fed. R. Civ. P. 26(b)(1)....6, 7, 8

Fed. R. Civ. P. 26(c)....4

Fed. R. Civ. P. 26(c)(1)....4

## LR 7-1 AND 7-2(b) CERTIFICATION

Undersigned counsel certifies that the parties made a good faith effort through personal conferences to resolve the dispute and have been unable to do so, and that the memorandum in support of this Motion complies with the LCR 26-3(b)(1) word limit.

## MOTION

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, Defendant Deloitte & Touche LLP ("Deloitte") hereby moves the Court for a protective order against Plaintiffs' First Set of Requests for Production.

## LEGAL MEMORANDUM

### I. INTRODUCTION

On August 26, 2016, Plaintiffs served Deloitte with 36 staggeringly broad discovery requests that cumulatively demand every document in Deloitte's possession related to "Aequitas"[1] (the "Requests"). Compliance with the Requests would require hundreds of hours, and hundreds of thousands of dollars, when it is far from clear that Plaintiffs' claim against Deloitte will be allowed to proceed. Good cause exists to protect Deloitte from these Requests until, at minimum, this Court rules on Deloitte's pending Motion to Dismiss ("Motion" or "Motion to Dismiss").[2]

---

[1] As explained in Defendants' Joint Motion to Dismiss, Plaintiffs refer to "Aequitas" rather than the individual entities that sold securities to them. But the First Amended Class Action Complaint (Dkt. 57) ("Complaint" or "Compl.") admits that each Aequitas entity and security is functionally and legally distinct. *See* Compl. ¶¶ 21-25 (describing the legally distinct "Aequitas Entities"); Compl. ¶¶ 31-63 (admitting that each "Aequitas Security" was sold by different entities through different offering documents).

[2] In the parties' Joint Report of Rule 26(f) Conference (Dkt. 94), Defendants proposed phased discovery that would involve meaningful productions from all parties on class certification issues while Defendants' Motions to Dismiss are pending. *See infra*, Section II. The order requested herein aligns with this proposal because it would defer "merits" discovery until this Court determines that Plaintiffs are entitled to proceed with their claims.

*First*, the Requests will unquestionably subject Deloitte to enormous burden and expense. The Requests seek, among other things, all documents related to any professional service Deloitte performed for any "Aequitas Company" (defined to include 88 entities, only six of which issued securities that are challenged in this case), as well as all Deloitte communications with Aequitas personnel, regulators, the Defendants, and any purchaser of "Aequitas" securities. It is likely that millions of pages of documents are responsive to the Requests; identifying, reviewing, and producing these documents will require massive efforts.

*Second*, the Complaint does not justify imposing this burden on Deloitte. As Deloitte's pending Motion to Dismiss explains, the Complaint fails—as a matter of law—to state a claim against Deloitte because it fails to allege any actionable connection between Deloitte and the securities transactions at issue. Moreover, even if the Complaint did state a claim, *at most* Plaintiffs allege that Deloitte "participated or materially aided" the transactions at issue by performing annual financial statement audits for six of the 88 identified "Aequitas Companies." The Requests—which seek documents relating to all 88 "Aequitas Companies"—are a clear fishing expedition by Plaintiffs.

*Third*, the requested order will promote the just, speedy, and inexpensive resolution of this action. In addition to saving Deloitte from the substantial expense of complying, the requested order will promote judicial economy because it will defer the Requests until this Court has provided clarity as to the sufficiency and scope of Plaintiffs' claim. No prejudice to Plaintiffs or delay of this matter would result; the Court is taking Deloitte's Motion under advisement in less than two weeks, and no discovery deadline been set. Indeed, Plaintiffs agree that no deadline should be set until after this Court rules on Defendants' Motions to Dismiss.

There is no reason to permit the unbounded and unjustified discovery that Plaintiffs seek to impose at this stage of the litigation.

## II. PROCEDURAL HISTORY

Plaintiffs are eleven sophisticated investors who purchased various securities from Aequitas entities over a six-year period. Plaintiffs allege that "Aequitas" committed primary violations of Oregon securities law by selling unregistered securities in violation of ORS 59.055, and by making false or misleading statements in connection with its sales of securities in violation of ORS 59.135(2) and ORS 59.115(1)(b). Compl. ¶ 190(a)-(c); *see also* Defs.' Joint Mot. to Dismiss (Dkt. 74), at 9-10. Deloitte is not alleged to have committed any primary violation of Oregon securities law. Rather, it is alleged to have "participated or materially aided" Aequitas' allegedly illegal sales by performing annual financial statement audits for six Aequitas entities that issued securities. *See* Compl. ¶¶ 15-18, 190; Deloitte's Mot. to Dismiss (Dkt. 85), at 4 (identifying six entities and dates of Deloitte's 2013 and 2014 audit opinions).

As shown in Defendants' Joint Motion to Dismiss and Deloitte's Individual Motion to Dismiss, the Complaint fails to state a claim against Deloitte. Plaintiffs have not alleged, and cannot allege that Deloitte had any actionable connection to the transactions in which Plaintiffs purchased their securities. *See, e.g.*, Deloitte's Mot. to Dismiss (Dkt. 85), at 10-20. As discussed more fully in Deloitte's Motion, Plaintiffs have not alleged that Deloitte's audit report on any Aequitas entity was included in the Private Placement Memoranda ("PPMs") through which these securities were sold—let alone, that Deloitte consented to the inclusion of its report in any such PPM. *Id.* at 13.

On June 30, 2016, the parties held a Rule 26(f) conference. The parties agreed that discovery should be phased, but could not agree on how it should be phased. Plaintiffs sought immediately to take substantive discovery regarding all "services Defendants provided to

Aequitas." *See* Joint Report of Rule 26(f) Conference (Dkt. 94), at 2-3. Deloitte rejected this proposal because it would subject Deloitte to enormous expense despite Plaintiffs' failure to state a claim against Deloitte. By way of compromise, Defendants proposed that the parties engage in phased discovery, beginning with a first phase directed towards class certification. *See id.* at 6-7. Each signing Defendant committed to produce meaningful categories of documents; Deloitte committed to produce all documents "pertaining to the named Plaintiffs' purchases" identified in the Complaint. *Id.*

Rather than await this Court's scheduling order, Plaintiffs proceeded to serve their First Set of Requests for Production of Documents on August 26, 2016. *See* Declaration of Gavin M. Masuda in Support of Deloitte's Mot. for Protective Order ("Masuda Decl.") Ex. 1. Deloitte requested that Plaintiffs defer Deloitte's response obligations until, at minimum, this Court issues a scheduling order. Masuda Decl. ¶ 4. Deloitte also suggested that instead of filing discovery motions, the parties should jointly file an updated Report of Rule 26(f) Conference regarding their proposals for phased discovery. Masuda Decl. ¶ 4. Plaintiffs refused, informing Deloitte that if it did not move the Court for a protective order, Plaintiffs would file a motion to compel. Masuda Decl. ¶ 4, Ex. 2.

## III. ARGUMENT

Under Rule 26(c) of the Federal Rules of Civil Procedure, this Court "may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" caused by disclosure or discovery. *See* Fed. R. Civ. P. 26(c)(1). Among other things, this Court may "forbid[ ] the disclosure or discovery" or "limit[ ] the scope of disclosure or discovery to certain matters." *Id.* Good cause exists to preclude the discovery Plaintiffs seek until (at minimum) this Court decides Deloitte's pending Motion to Dismiss.

**A. The Requests Would Impose Substantial Burden And Expense On Deloitte**

Propounded as 36 separate requests, the Requests cumulatively seek every document in Deloitte's possession, custody or control related to "any Aequitas Company," which is defined to include 88 separate legal entities.[3] *See* Requests, at 7-10. These Requests can be generalized into two categories. Requests 1-13 and 16-19 seek all work papers and documents related to any professional service Deloitte performed for "any Aequitas Company." Among other things, these Requests seek: (i) "all documents concerning" Deloitte's report on the 2013 and 2014 financial statements of "any Aequitas Company" (Request No. 6); (ii) "all work papers or other documents" related to any other audits or engagements performed for any other "Aequitas Company" (Request Nos. 6-13); and (iii) all documents related to any "investigation, audit procedures or other analysis performed" after May 29, 2015 (Request No. 19). Request Nos. 14-15, 20-30, 32, and 34 seek all communications between Deloitte and Aequitas, the other Defendants in this case, any state or federal regulator, and any purchaser of any "Aequitas Security." Most broadly, Request No. 26 seeks "[a]ll documents comprising, evidencing, or reflecting any communications between [Deloitte] and any Aequitas Company," its officers, employees or agents.[4]

There can be no reasonable dispute that these Requests would impose an enormous burden on Deloitte. Deloitte's work papers for its year-end 2013 and 2014 audits alone (*i.e.*, work papers related to the only conduct alleged to be actionable in this case) are comprised of

---

[3] Plaintiffs define "ACF Consolidated Audit Entities" to include 30 entities. *See* Requests, at 7. They define "Aequitas Companies" to include 58 companies plus "[e]ach of the ACF Consolidated Audit Entities." *See* Requests, at 7-9. As discussed in Deloitte's Motion to Dismiss, "[o]f the many Aequitas entities, only six are alleged to have issued securities that Plaintiffs purchased." Deloitte's Mot. to Dismiss (Dkt. 85), at 3.

[4] Request No. 34 is virtually identical to Request No. 26, seeking "[a]ll documents reflecting any communications between You and any employee or officer of any Aequitas Company."

thousands of work papers. Masuda Decl. ¶ 3. Even worse, the Requests—because they seek all "other documents" and communications—will require Deloitte to search the files of every Deloitte engagement team member. Outside counsel would need to interview dozens of Deloitte personnel, identify and collect potentially responsive documents and emails, and review those documents and emails for responsiveness and privilege. These efforts will require hundreds of hours of work, resulting in hundreds of thousands of dollars in legal and technical fees. Masuda Decl. ¶ 3.

**B. The Discovery Plaintiffs Seek Is Neither Relevant Nor Proportional To The Needs Of This Case**

Under amended Rule 26(b)(1), discovery must be "relevant to any party's claim or defense *and* proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Requests satisfy neither criteria; Plaintiffs have failed to state a claim against Deloitte, and even if they had, the Requests seek documents far beyond the claim alleged.

First, the Complaint fails—as a matter of law—to state a claim against Deloitte. As the United States Supreme Court has held, when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009). Accordingly, courts in the Ninth Circuit regularly stay or limit discovery while a Rule 12(b)(6) motion to dismiss is pending. *See Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming grant of protective order staying discovery pending resolution of motion to dismiss for failure to state a claim); *O'Neal v. Or. DOJ, Div. of Child Support*, 2015 U.S. Dist. LEXIS 120378, at *7 (D. Or. Sept. 9, 2015) (staying discovery "until . . . the court resolves in Plaintiff's favor any Rule 12 motion on any amended complaint"). Indeed, the Ninth Circuit has held that "the purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo*

*Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (holding that "it is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").

As Deloitte's Motion to Dismiss explains, the Complaint is deficient under Rule 8 because it fails adequately to allege that Deloitte "participated [in] or materially aided" the sales to Plaintiffs. *See* Deloitte's Mot. to Dismiss (Dkt. 85), at 10-20. Specifically, Plaintiffs do not allege that Deloitte's audit reports were included in the PPMs through which the Aequitas securities at issue in this case were sold to them, let alone that Deloitte consented to the inclusion of its reports in those PPMs. *See* Deloitte's Mot. to Dismiss (Dkt. 85), at 13. In fact, Plaintiffs concede that Deloitte had no connection to the sales at issue in this case—arguing (wrongly) that "Plaintiffs are not required to 'connect' their purchases to Deloitte." Pls.' Opp. to Deloitte's Mot. to Dismiss (Dkt. 122), at 15. Having failed to connect any professional service performed by Deloitte to the sales at issue in this case, Plaintiffs are not entitled to the burdensome discovery they seek. *See Wenger*, 282 F.3d at 1077.

Second, even if the Complaint were sufficient under Rule 8, the Requests seek documents that far exceeding the claim alleged. Plaintiffs allege that Deloitte is liable under ORS 59.115(3) because—and only because—it audited the 2013 and 2014 financial statements of six Aequitas entities that issued securities purchased by Plaintiffs, and was identified in certain PPMs as "Aequitas'" auditor. *See* Compl. ¶¶ 15-18, 190; Deloitte's Mot. to Dismiss (Dkt. 85), at 4. Yet, Plaintiffs inexplicably seek all documents and communications related to "any service" Deloitte performed for "any Aequitas Company." *Supra*, Section III.A. Even if Deloitte performed services other than the 2013 and 2014 audits referenced in the Complaint,[5] those services are of

---

[5] Deloitte would need to investigate whether any such services occurred.

no relevance to Plaintiff's claim, and discovery relating to those services would be severely disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

Similarly, Plaintiffs disclaim any need to establish that Deloitte's audits failed to comply with professional standards. *See* Pls.' Opp. to Deloitte's Mot. to Dismiss (Dkt. 122), at 6 ("[T]he sole element of plaintiffs' claim against Deloitte is that Deloitte participated or aided in Aequitas' unlawful sales."). But despite this disclaimer, the Requests seek documents that are relevant only to this issue. *E.g.*, Request Nos. 5 (documents related to training of auditors); 9-10 (all documents related to certain testing required under professional standards); 23-24 (documents and communications Deloitte sent to or received from regulators regarding any services performed for any Aequitas Company). These documents are clearly irrelevant to Plaintiffs' claim, even if that claim were to survive Deloitte's Motion.

If Plaintiffs wished to assert other theories for Deloitte's liability, they should have amended their Complaint long ago.[6] Having failed to state a claim against Deloitte, Plaintiffs' discovery should be disallowed. *See, e.g.*, *Iqbal*, 556 U.S. at 685-86 (when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise."). This Court should protect Deloitte from the Requests until its Motion to Dismiss has been decided, and it has been determined whether Plaintiffs will be allowed to proceed.

**C. The Requested Order Will Promote The Just, Speedy, And Inexpensive Determination Of This Action**

In addition to protecting Deloitte from unduly burdensome discovery, the requested order will promote the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1

[6] As certified in Deloitte's Motion to Dismiss, Deloitte conferred with Plaintiffs prior to filing its Motion and informed Plaintiffs of the Complaint's deficiencies. Plaintiffs elected not to amend their Complaint. *See* Deloitte's Mot. to Dismiss (Dkt. 85), at 5. Thus, the Complaint reflects Plaintiffs' "best" articulation of the basis on which Deloitte should be held liable.

(the Federal Rules should be "construed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Ministerio Roca Solida v. U.S. Dept. of Fish and Wildlife*, 288 F.R.D. 500, 504 (D. Nev. Jan 14, 2013) (collecting cases staying discovery pending dispositive motions and observing that Federal Rule 1 should govern the determination of whether to stay discovery). As discussed above, the requested order will save Deloitte from substantial (and undue) burden and expense. *Supra*, Section III.B. In addition, the requested order will promote judicial economy. As the briefing on Deloitte's Motion to Dismiss demonstrates, the parties have widely different views regarding the reach of participant liability under ORS 59.115(3). Plaintiffs' view is that Deloitte may be held liable even absent allegations of a "connection" between Deloitte's services and the securities transactions at issue. *See* Pls.' Opp. to Deloitte's Mot. to Dismiss (Dkt. 122), at 15. Deloitte disagrees with Plaintiffs' stated view and accordingly seeks protection from the Requests. Until the Court resolves this issue, disputes like this are sure to ensue.[7]

Meanwhile, the requested order will not prejudice Plaintiffs or delay the determination of this action. Plaintiffs waited more than two months after the parties' Rule 26(f) Conference to serve the Requests on Deloitte, two additional weeks to serve nearly identical requests on EisnerAmper, and nearly three months to serve similar requests on Tonkon and Sidley. *Supra*, Section II. No discovery deadlines have been set, and Plaintiffs agree that "it is not advisable to set a discovery cut-off until the pending motions to dismiss are resolved." *See* Joint Report of Rule 26(f) Conference (Dkt. 94), at 3. Indeed, even when the motions to dismiss are resolved, the parties may still be precluded from obtaining needed discovery from the SEC Receiver, who

---

[7] Since serving Deloitte with the Requests, Plaintiffs have served Defendants EisnerAmper LLP ("EisnerAmper"), Tonkon Torp LLP ("Tonkon"), and Sidley Austin LLP ("Sidley") with equally broad requests for the production of documents. These Defendants are likely to have objections that are identical or similar to Deloitte's.

has not indicated when such discovery will be available. *See id.* at 2 (stating parties' agreement that discovery from SEC Receiver is necessary). Once this Court resolves Defendants' Motions to Dismiss, Plaintiffs will have ample time to seek relevant and proportional discovery from Deloitte (and the other Defendants) if any claims remain.

## IV. CONCLUSION

For the foregoing reasons, Deloitte respectfully requests that this Court protect Deloitte from responding to the Requests until, at minimum, this Court rules on Deloitte's pending Motion to Dismiss.

Dated: September 29, 2016

LATHAM & WATKINS LLP

By: *　/s/ Peter A. Wald*

**Peter A. Wald (admitted *pro hac vice*)**
**Gavin M. Masuda (admitted *pro hac vice)***
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Email: peter.wald@lw.com
gavin.masuda@lw.com

–And–

**Robert C. Weaver, Jr.**, OSB No. 801350
**Gary I. Grenley**, OSB No. 751380
**Paul H. Trinchero**, OSB No. 014397
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Email: rweaver@gsblaw.com
ggrenley@gsblaw.com
ptrinchero@gsblaw.com

**Attorneys for Defendant Deloitte & Touche LLP**