UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated, | Case No. 3:16-cv-0580-AC  OPINION AND ORDER |

                Plaintiffs,

        v.

DELOITTE & TOUCHE LLP,
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; and INTEGRITY
BANK & TRUST,

                Defendants.

ACOSTA, Magistrate Judge:

Page 1 - OPINION AND ORDER

*Introduction*

Defendants Deloitte & Touche LLP ("Deloitte") and EisnerAmper LLP ("EisnerAmper") (collectively, "the Accounting Firms") both move (ECF Nos. 139 and 143) for protective orders against Plaintiffs' Requests for Production, staying discovery until the court rules on the motions to dismiss filed by Deloitte, EisnerAmper, and other defendants. For the reasons that follow, the court GRANTS IN PART and DENIES IN PART both motions.

*Background*

I.    The Lawsuit.

Plaintiffs filed this securities fraud lawsuit against an international accounting firm and an international law firm, a national accounting firm, an Oregon law firm, a national stock trading firm, and a bank, alleging that each of them participated in and aided the Aequitas group of companies ("Aequitas") sale of a group of securities (the "Disputed Securities") through material misrepresentations and omissions. (ECF No. 1 (Complaint), at ¶ 1; ECF No. 57 (First Amended Complaint), at ¶ 1.) Although Plaintiffs assert only a single claim for relief for violation of Oregon securities law (ECF No. 57, at ¶¶ 189-194), they present their claim in a 52-page complaint that contains lengthy and detailed factual allegations; asserts scores of alleged failures to disclose, misrepresentations, and omissions; and includes a request for class certification. Plaintiffs contend that Defendants' alleged misrepresentations were "extensive and pervasive" and that Defendants "are jointly and severally liable to return to all Aequitas investors the money they paid for the securities, plus interest at the rate stated in the security or 9 percent, whichever is greater." (ECF No. 57, at ¶¶ 1, 2.) Plaintiffs assert their damages from Defendants' alleged actions exceed 13 million dollars (ECF No. 57, at ¶¶ 8-14) and they seek class certification of their claims (ECF No. 57, at ¶¶ 181-188)

which, if granted, likely will increase the Defendants' potential liability many times greater than the named Plaintiffs' alleged damages.

Collectively, the Defendants have filed seven motions to dismiss (ECF Nos. 74, 78, 80, 81, 85, 95, and 113), asserting multiple reasons to support their contention that Plaintiffs have failed to state a claim against each of them. The motions to dismiss assert Plaintiffs' complaint should be dismissed for legal and factual deficiencies. If granted based on some of the claimed legal deficiencies, Plaintiffs' claims against one or more of the Defendants could be dismissed with prejudice, but Plaintiffs likely would be allowed to attempt to cure factual deficiencies through an amended complaint. The motions to dismiss are pending and fully briefed, will be heard on December 21, 2016, and will be taken under advisement on that date. II.    T h e   R e q u e s t e d   Discovery.

The parties disagree regarding the schedule for discovery prior to a ruling on the motions to dismiss. (Joint Report of Parties' F.R.C.P. 16(f) Conference, ECF No. 94, at 2-9.) Plaintiffs served requests for production on the Accounting Firms under Federal Rule of Civil Procedure ("Rule") 26. Plaintiffs served on each of the two Accounting Firms a request for production of almost 40 pages, each request setting out more than 35 numbered paragraphs describing a different category of documents which Plaintiffs contend are relevant to the merits of their claims. (Decl. of Gavin Masuda in Support of Deloitte & Touche LLP's Mot. for Protective Order ("Masuda Decl."), ECF No. 140, Ex. 2; Decl. of William P. Ferranti in Support of EisnerAmper LLP's Mot. for Protective Order ("Ferranti Decl."), ECF No. 144, Ex. B.) Representative paragraphs from those requests are:

\ \ \ \ \

**REQUEST FOR PRODUCTION NO. 5:**
All documents related to the technical training, educational background, professional experience and disciplinary history (if any) of all of the Deloitte personnel performing any services or audit functions for any Aequitas Company.

**REQUEST FOR PRODUCTION NO.7:**
All Workpapers and other documents relating to any review engagement, agreed-upon procedures engagement, or any other type of engagement or assessment of any annual (other than the 2013 or 2014 audits), or any quarterly or other interim financial statements of any Aequitas Company, including (a) all documents concerning the steps and procedures performed in the course of any such assessment or review; and (b) all documents created, received, reviewed, examined, or referenced in connection with any such assessment or review.

**REQUEST FOR PRODUCTION NO.9:**
All Workpapers or other documents related to any audit, performance of risk assessment procedures or other review of any Aequitas Company's systems of internal controls over financial reporting, as that term is described in AU-C 315.04. This request specifically includes all work done in connection with the audit of any Aequitas Company's 2013 and 2014 financial statements, as well as any assessment, audit or other reviews undertaken after the completion of the audit of any Aequitas Company' 2013 and 2014 financial statements.

**REQUEST FOR PRODUCTION NO. 12:**
All Workpapers or other documents documenting or describing all procedures performed by Deloitte with respect to identifying and assessing the risks of material misstatement of the reported financial statements (and Deloitte's responses to such risks), in connection with Deloitte's audit ofthe 2013 and 2014 financial statements of any Aequitas Company.

**REQUEST FOR PRODUCTION NO. 15:**
All communications with, and documents produced to the Securities and Exchange Commission (or any non-U.S. regulator) in connection with Deloitte's audits or other services performed for any Aequitas Company.

**REQUEST FOR PRODUCTION N0.17:**
All Workpapers or other documents relating to any engagements performed for any Aequitas Company, other than the 2013 and 2014 audits, including but not limited to any Agreed-Upon Procedures ("AUP") engagements.

**REQUEST FOR PRODUCTION NO. 22:**
All documents reflecting any communications between You and any predecessor or successor auditor of any Aequitas Company.

**REQUEST FOR PRODUCTION NO. 28:**
All documents comprising, evidencing, or reflecting any communications between You and any other Defendant relating to any of the Aequitas Companies.

(ECF No. 140-1 (Deloitte request); ECF No. 144-2 (EisnerAmper request).[1]

III.    The Parties' Positions.

The Accounting Firms contend that because Plaintiffs' requests for production encompass a large number of documents, the gathering, reviewing, and production of those documents would require substantial time and cost hundreds of thousands of dollars. They argue that the time and expense of full merits discovery is not warranted at this stage because their pending motions to dismiss, if granted, would render irrelevant some or all of that discovery. For the same reason, the Accounting Firms argue full merits discovery while motions to dismiss are pending is disproportionate to the needs of the case at this stage and thus improper under Rule 26(b)(1).

Plaintiffs oppose the motion for a protective order but do not seek immediate responses to all of their requests for production. Instead, Plaintiffs propose a compromise: the Accounting Firms would produce audit workpapers[2] for the years each firm acted as auditor to any Aequitas companies. Plaintiffs point out that even if the court granted the Accounting Firms' respective motions to dismiss in their entireties and the Accounting Firms no longer were parties to this lawsuit, these

---

[1] The excerpted paragraphs are taken from the Deloitte request, but each paragraph also appears in the EisnerAmper request verbatim, except for the defendant's name and changing the years EisnerAmper performed audit services.

[2] "Workpapers" is a term of art in accounting. As defined in the professional standards for accountants, workpapers are "the record of audit procedures performed, relevant audit evidence obtained, and conclusions the auditor reached." Am. Inst. of CPAs, *Clarified Statements on Auditing Standards, AU-C § 230: Audit Documentation* (2016), http://www.aicpa.org/research/standards/auditattest/downloadabledocuments/au-c-00230.pdf. Plaintiffs use this definition in their requests for production. *See* ECF No. 140-1, at 11 (Deloitte request); and ECF No. 144-2, at 11 (EisnerAmper request).

Page 5 - OPINION AND ORDER

workpapers still would be discoverable as third-party evidence. *See Fein v. Numex Corp.*, 92 F.R.D. 94, 96-97 (S.D.N.Y. 1981) (allowing as "plainly relevant" third-party discovery of audit workpapers in a case alleging material misrepresentations and omissions of a company's financial condition). Plaintiffs argue that a pending motion to dismiss does not constitute good cause for a protective order against discovery of the workpapers only. *See Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989)("[A] pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery.").

At oral argument, Deloitte and EisnerAmper each opposed Plaintiffs' compromise position. Deloitte proposed instead the production of all "transaction level" documents in its possession showing details of the named Plaintiffs' purchases of Aequitas-company securities. EisnerAmper opposed production of workpapers from audits of all Aequitas companies – 88 in number (ECF No. 139, at 5) – because not all of the Aequitas companies it audited issued Disputed Securities. The Accounting Firms contend and Plaintiffs do not dispute that EisnerAmper audited only six Aequitas entities and that only three of those entities issued Disputed Securities, nor do Plaintiffs dispute that Deloitte audited only twelve Aequitas entities of which only six issued Disputed Securities. There also is no dispute that Deloitte performed its audit services only in the two-year period 2013-14, and EisnerAmper performed its audit services only in the two-year period 2011-12.

EisnerAmper raises an additional argument relevant to both motions for protective order. Citing *Ministerie Roca Solida v. U.S. Dep't of Fish and Wildlife*, 288 F.R.D. 500 (D. Nev. 2013), EisnerAmper argues the court should consider under Rule 1 the expense and additional litigation that would come from allowing discovery to proceed while the motions to dismiss are pending. The *Ministerie Roca Solida* court examined cases from throughout the Ninth Circuit regarding stays of

Page 6 - OPINION AND ORDER

discovery pending resolution of a dispositive motion. The court concluded that Rule 1 requires the court to consider whether justice is best served by allowing discovery to proceed, or to delay or limit discovery to promote "the inexpensive determination of the case." *Id.* at 502-04. EisnerAmper submits that if discovery proceeds in this case a number of merits issues will arise in the context of discovery motions. At oral argument, EisnerAmper argued discovery motions will arise even if the discovery is limited to the workpapers of all Aequitas entities that EisnerAmper audited, because EisnerAmper also audited other Aequitas entities that did not issue the Disputed Securities.

### Legal Standard

Rule 26 governs discovery in federal civil cases, the scope of which includes "any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case." FED. R. CIV. P. 26(b)(1) (italics added). A court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. FED. R. CIV. P. 26(c)(1). The party seeking the protective order must establish "specific harm or prejudice will result if no protective order is granted." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)(citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Good cause is generally a "heavy burden." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Phillips*, 307 F.3d at 1211 (citing *Seattle Times Co. v. Rhinehardt*, 467 U.S. 20, 36 (1984)).

### Analysis

I.    Preliminary Matters.

Page 7 - OPINION AND ORDER

A.    *The Purpose of the Accounting Firms' Motions.*

These are not typical protective order motions.  Typically, a party seeks a protective order to prevent an opposing party from obtaining or disseminating documents and information that include privileged, confidential, propriety, or private subject matter, or to avoid producing documents and information not relevant to established claims or defenses.  Here, the Accounting Firms do not seek protection for any of those reasons.  Instead, they seek a stay of discovery (with one exception, discussed below) because, they contend, their pending motions to dismiss are potentially dispositive and if granted would make unnecessary much or all of the discovery Plaintiffs seek.  Because the Accounting Firms seek a stay of discovery, the court evaluates their motions against a standard different from the standard ordinarily applied to a motion for protective order.

B.    *Discovery Stay Standards.*

Well-established standards exist for determining whether a protective order is warranted, but "[t]he Federal Rules of Civil Procedure do not provide any standards to be utilized with respect to stays of discovery when a potentially dispositive motion is pending."  *Davis v. Nevada*, No. 3:13-CV-00559-MMD-WGC, 2014 WL 1308347 (D. Nev. March 31, 2014), citing *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-601 (C.D. Cal. 1995).  No Ninth Circuit case provides a clear standard either.  *Davis*, 2014 WL 1308347, at *1.  *See also DRK Photo v. McGraw-Hill Companies, Inc.*, No. CV12-8093-PCT-PRG, 2012 WL 5936681 (D. Ariz. Nov. 27, 2012)("The Ninth Circuit Court of Appeals has not announced a clear standard against which to evaluate a request or motion to stay discovery in the face of a pending, potentially dispositive motion.")(citation omitted).  District courts in this circuit have rejected the general proposition that a pending dispositive motion justifies a stay of discovery.  *See, e.g., Tradebay LLC v. eBay, Inc.*, 278 F.R.D.

597, 603 (D. Nev. 2011) ("The fact that a non-frivolous motion is pending is simply not enough to

warrant a blanket stay of all discovery."); *Mlejnecky v. Olympus Imaging America, Inc.*, No. 2:10-cv-

02630 JAM KJN, 2011 WL 489743, at \*5-6 (E. D. Cal. Feb.7, 2011) (federal rules do not provide

for discovery stay pending potentially dispositive motion); *Turner Broadcasting System, Inc. v.*

*Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997) ("[A] pending Motion to Dismiss is not

ordinarily a situation that in and of itself would warrant a stay of discovery.") (quoting *Twin City*

*Fire Ins. v. Employers Insurance of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989)); *Skellerup Indus.*

*Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated

that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would

contain a provision for that effect.").

Although the Ninth Circuit has not articulated a controlling standard, dicta from the court's

cases provides a measure of guidance. A discovery stay is appropriate if the district court is certain

the plaintiff will be unable to make out a viable claim for relief. *See, e.g., Little v. City of Seattle*,

863 F.2d, 681, 685 (9th Cir. 1988) ("Staying discovery when a court is convinced that the plaintiff

will be unable to state a claim for relief furthers the goal of efficiency for the court and the

litigants."); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (district court may "stay discovery

when it is convinced that the plaintiff will be unable to state a claim for relief"). A discovery stay

also may be appropriate if the pending dispositive motion does not raise fact issues. *See, e.g., Jarvis*

*v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (district court did not abuse discretion in denying

discovery when the complaint did not raise factual issues requiring discovery to resolve). If the

pending motion raises dispositive procedural issues, the district court may stay discovery. *See, e.g.*,

*Wood*, 644 F.2d at 801 (9th Cir. 1981) (acknowledging appropriateness of discovery stay where

dispositive motions raise issues of jurisdiction, venue, or immunity). Restricting discovery stays to these limited circumstances is consistent with the Ninth Circuit's dictate that "[a] party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (citation omitted). *See also DRK Photo*, 2012 WL 5936681, at *4 (denying discovery stay because plaintiff did not show an "immediate and clear possibility of success" on its motion for partial summary judgment, and therefore did not carry its " 'heavy burden of making a strong showing' that discovery should be stayed"), quoting *Tradebay*, 278 F.R.D. at 601.

Applying this guidance, district court decisions in this circuit have produced at least three different approaches for evaluating whether discovery should be stayed pending resolution of a potentially dispositive motion (*see, e.g., Tradebay, LLC*, 278 F.R.D. at 602-03 (identifying three different methods Ninth Circuit district courts have used to determine the appropriateness of a stay)). One of those three approaches is a case-specific inquiry framed by a set of relevant factors. In *Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598 (C.D. Cal. 1995), the court stated:

> "In considering whether a stay of all discovery pending the outcome of a dispositive motion is warranted, a case-by-case analysis is required . . . ." *Hachette Distribution, Inc. v. Hudson County News Company*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991). Factors the court should consider include: "[T]he type of motion and whether it is a challenge as a 'matter of law' or the 'sufficiency' of the allegations; the nature and complexity of the action; whether counterclaims and/or cross-claims have been interposed; whether some or all of the defendants join in the request for a stay; the posture or stage of the litigation; the expected extent of discovery in light of the number of parties and complexity of the issues in the case; and any other relevant circumstances." *Id.*

*Skellerup Indus. Ltd.*, 163 F.R.D. at 601. Other district courts in the Ninth Circuit have cited *Skellerup* when analyzing the propriety of a discovery stay pending a potentially dispositive motion.

Page 10 - OPINION AND ORDER

*See, e.g., Top Rank v. Haymon*, Case No. CV 15-4961-JFW(MRWx), 2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) (citing *Skellerup*, granting stay in anti-trust case pending defendants' motion to dismiss); *Raymond v. Sloan*, Civ. No. 1:13-423-WBS, 2014 WL 4215378 (D. Idaho Aug. 25, 2014) (citing *Skellerup*, denying stay); and *Vivendi, S.A. v. T-Mobile, USA, Inc.*, No. C06-1524JLR, 2007 WL 1168819 (W.D. Wa. April 18, 2007)(citing *Skellerup*, granting in part and denying in part discovery stay).

    *C.*    *Proportionality.*

    The 2015 amendment to the Federal Rules of Civil Procedure 26(b)(1)requiring that discovery now must be "proportionate to the needs of the case," necessarily affects the determination whether a discovery stay should be granted pending determination of a dispositive motion. The 2015 amendment calls for renewed consideration of the time and money litigants must expend on discovery, and for courts to impose " 'reasonable limits on discovery through the common-sense concept of proportionality.' " *Roberts v. Clark Cty Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016), quoting *Chief Justice's Year-End Report on the Federal Judiciary* (2015), at 6. *See also* FED. R. CIV. P. 26(b)(1) advisory's committee note to 2015 amendment ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery."). Now, "lawyers must size and shape their discovery requests to the requisites of a case." *Roberts*, 312 F.R.D. at 603 (D. Nev. 2016), quoting *Chief Justice's Year-End Report on the Federal Judiciary* (2015), at 7.

    For Rule 26(b)(1)'s proportionality mandate to be meaningful, it must apply from the onset of a case. Imposing proportionality only after motion practice establishes the viability of the parties' claims or defenses would thwart that purpose. That is particularly so if full discovery proceeds

where, as in this case, discovery likely would be extensive and voluminous because of the number

of institutional parties, the complaint contains a claim that is complex both legally and factually,

class certification is sought for a class potentially numbering well more than 1,000 members, the

named plaintiffs allege their damages are many millions of dollars, and the court's ruling on the

motions to dismiss could alter the facts and legal theory upon which the complaint is based.

Therefore, with amended Rule 26(b)(1) now in place, the court must consider proportionality when

determining whether a stay of discovery is appropriate pending resolution of a potentially dispositive

motion.

II.    The *Skellerup* Factors.

      A.    *The type of motion and whether it is a challenge as a 'matter of law' or the*
          *'sufficiency' of the allegations.*

The pending motions to dismiss challenge both the legal viability and the factual premises

of Plaintiffs' securities fraud claim. The alleged legal infirmities include the Disputed Securities

were federal covered securities, and thus excluded from the registration requirements of Oregon

securities law; federal law preempts Plaintiffs' claim; the conduct alleged does not constitute

"participation" in or "material aid" of the sale of the Disputed Securities, which is an essential

element of Plaintiffs' securities fraud claim; and the statute of limitations bars action on the sale of

at least some of the Disputed Securities. The alleged factual insufficiencies include the failure to

plead facts sufficient to establish causation between alleged misrepresentations and the purchase of

the Disputed Securities; an absence of allegations that the statements were false when made; the lack

of facts identifying actionable omissions, and the absence of factual allegations that any of the

Defendants possessed the requisite level of scienter under the Oregon statute.

Page 12 - OPINION AND ORDER

The pending motions to dismiss are potentially dispositive on Plaintiffs' claims against one or more of the Defendants or could result in Plaintiffs being required to amend their complaint to add facts to support their fraud claim, or their resolution could manifest as a combination of those two outcomes. Whatever the outcome, neither the motions to dismiss nor Plaintiffs' claim appear frivolous or without merit. In fact, both the Plaintiffs' complaint and the Accounting Firms' motions to dismiss raise significant legal and factual issues under Oregon law which issues, when resolved, likely will affect the allegations in the First Amended Complaint. That result could affect, perhaps significantly, the scope of discovery.

The court declines to follow the "preliminary peek" approach some courts have used to tie their stay decisions to the percentage likelihood a pending dispositive motion actually will succeed. *See, e.g., Davis*, 2014 WL 1308347, at *2 (court takes a "preliminary peek" at the underlying motion to evaluate the "probable likelihood of success"); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000) (court should "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted"). First, this approach requires the court to evaluate within the context of a discovery motion the merits of a potentially dispositive motion, at best an imperfect procedural mechanism for making such a substantive evaluation. This creates a risk the court will predetermine the merits of the motion to dismiss without having fully and deliberately considered the law and facts which bear on it. Second, a motion to dismiss ultimately could be dispositive of some or all of a party's claims or defenses even if on its face that outcome is not immediate and clear. The great majority of motions to dismiss raise legal or factual issues that must be thoughtfully considered, and many of those motions ultimately are granted at least in part. Thus, that granting dismissal is not clearly or

immediately appropriate from the face of a dispositive motion should not determine whether discovery is stayed or proceeds. Third, as the court discussed above, proportionality now bears on the decision whether to stay discovery while a potentially dispositive motion is pending; the "preliminary peek" approach does not account for this factor.

The better approach, consistent with this *Skellerup* factor, is to compare in the particular case the arguments contained in the dispositive motion to the claims contained in the complaint it challenges. Only if a motion to dismiss appears on its face to be frivolous or without any merit should the court deny out-of-hand a discovery stay request. Otherwise, the court should employ the comparison and apply its experience and common sense to determine whether and to what extent the issues raised warrant a stay of discovery. This form of review is not a novel notion, as the Supreme Court has recognized that trial judges must draw upon and apply their experience in these very situations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Here, the Accounting Firms' challenges to Plaintiffs' First Amended Complaint are credible ones. Their motions advance both legal and factual challenges which raise complex legal issues and identify alleged absences of critical facts directly relevant to the statute's requirements. The arguments contained in the motions to dismiss are reasoned and supported by pertinent authority, and the court must carefully analyze those arguments and the Plaintiffs' responses within the context of Rule 12(b)(6) standards. Comparing the motions and the First Amended Complaint, there is a reasonable possibility that the Accounting Firms' motions to dismiss will affect the content of Plaintiffs' First Amended Complaint.

Page 14 - OPINION AND ORDER

B.    *The nature and complexity of the action.*

This is a securities fraud case based on dozens of alleged discrete acts and omissions, often subtle in nature. The case is complex because of the number of parties involved, the allegations of the conduct claimed to constitute fraud, the legal issues raised by the Plaintiffs' complaint and the Defendants' motions to dismiss, the potential for class certification, and the possible scope of discovery. Motion practice pertaining to each of those aspects is likely, as is the complexity of the issues that those motions will present.

C.    *Whether counterclaims and/or cross-claims have been interposed.*

Because none of the Defendants have yet filed answers, no defenses, counterclaims or cross-claims have been asserted. However, the facts and legal theories alleged in the complaint and the arguments collectively raised by the Defendants' pending motions to dismiss make evident that the Defendants will assert defenses and affirmative defenses, and could assert cross-claims and counterclaims in their respective answers.

D.    *Whether some or all of the defendants join in the request for a stay.*

The Accounting Firms are in agreement a stay should enter, as evidenced by their respective motions in which each requests that relief. Since they filed their motions, two other of the Defendants, Sidley Austin and TD Ameritrade, each have filed motions for a protective order seeking a stay of discovery, asserting reasons similar to those argued by the Accounting Firms. (ECF No. 160 (Sidley Austin motion), ECF No. 171 (TD Ameritrade motion).) Thus, four of the six named Defendants are in accord that discovery should be stayed until the court rules on the pending motions to dismiss. Regarding the remaining two defendants, the court infers from the parties' Joint Report of Parties' F.R.C.P. 26(f) Conference (ECF No. 94) that, at least, neither oppose a discovery

Page 15 - OPINION AND ORDER

stay, as the Rule 26(f) Report contains no such indication.

      *E.*       *The posture or stage of the litigation.*

This case is still at an early stage and the time needed for its final resolution is best measured not in months but in yearly increments. Plaintiffs filed their lawsuit on April 4, 2016, against Deloitte, EisnerAmper, Sidley Austin, and Tonkon Torp, then filed their First Amended Complaint on May 19, 2016, to add two new defendants, Integrity Bank and TD Ameritrade. Five of the seven pending motions to dismiss had been filed by July 14, 2016, the date the parties filed their joint Rule 26(f) report. Until the court rules on those motions, the Plaintiffs' allegations are not yet finally established, and among the possible outcomes from those motions is another iteration of the Plaintiffs' complaint.

Once the complaint is settled and assuming at least some of Plaintiffs' case survives the Defendants' Rule 12(b)(6) challenges, class certification must be addressed. The Plaintiffs' anticipated motion for class certification must be briefed, argued, and decided. If a class is certified, then notice to potential class members must issue and additional time for potential class members to respond will be necessary.

Furthermore, discovery on class certification issues as well as on the merits of Plaintiffs' claim must be conducted and concluded. Given the number of parties and factual issues in the case, and the discussion contained in the parties' Rule 26(f) Report, motion practice regarding discovery is likely and will extend the case's time line further still.

Finally, the court anticipates one or more of the Plaintiffs or Defendants will file dispositive motions. Those motion must be briefed, argued, and decided.

In sum, this case will require considerable time to reach a resolution. A stay of or restriction

Page 16 - OPINION AND ORDER

on discovery at this early stage, in this context, will not add appreciably to the life span of this case.

F.    *The expected extent of discovery in light of the number of parties and complexity of the issues in the case.*

The preceding discussion makes clear that discovery in this case will be extensive and time-consuming. There are eleven plaintiffs and six defendants, and the factual allegations contained in the Plaintiffs' First Amended Complaint implicate documents pertaining to dozens of topics from dozens of sources, as well and scores of witnesses. Plaintiffs' production requests to the Accounting Firms confirm this assessment. Additionally, the Plaintiffs and Defendants consist of a half dozen parties on each side, located in different parts of the country. In turn, this means discovery will be conducted in multiple geographic locations.

The record also makes clear that document discovery will include a great volume of electronically stored information. Email and database searches undoubtably will be requested and conducted by all parties. These tasks will require the parties to first propose, negotiate, and agree upon search terms, search protocols, and the sources to be searched -- or seek the court's involvement to resolve their disputes over these topics.

Also apparent is that as discovery progresses the parties likely will find additional topics and witnesses of which they currently unaware. Learning of the existence of new witnesses and uncovering new subject areas during discovery occurs in almost every lawsuit. If it occurs here, as the court expects it will, then those additional discovery topics and witnesses likely will add to the time needed to conduct discovery and could compound the case's complexity.

Accordingly, clear from the current record is that discovery also will require considerable time to conduct. The amount of time needed is difficult to predict at this early stage, but the issues

raised in the First Amended Complaint and the pending motions to dismiss combine with the above-referenced factors to foretell a long discovery course.

       G.     *Any other relevant circumstances.*

Courts now must consider proportionality when determining the scope of discovery in a particular case, a consideration which falls within *Skellerup's* "other relevant other circumstances" factor. In a complex case where pending motions to dismiss raise credible legal and factual issues, "the needs of the case" have not yet been finally established. Delaying discovery or limiting its scope until those issues are decided is appropriate and implements the 2015 Amendment's mandate for a renewed consideration of the time and money litigants must expend on discovery.

Another relevant other circumstance is the risk that the merits of claims or defenses will be decided in the context of discovery motions, because the requests for production and motions to dismiss share common disputed issues. If full discovery proceeds now, the parties will dispute the relevancy of the discovery requests using as support for their respective positions the allegations in the complaint and the arguments raised in the pending motions. In fact this risk has been realized: Plaintiffs contended early on that full discovery should proceed because of "clear Oregon case-law precedent for Plaintiffs' claims" (Rule 26(f) Report (ECF No. 94), at 4), and the Accounting Firms responded "that discovery should not begin until after the pending motions to dismiss are resolved," because "the pending motions may significantly focus and impact the categories and scope of potentially discoverable information for any remaining claims." (ECF No. 139, at 7.) The court should avoid making merits rulings when deciding discovery motions, which can be avoided here by limiting discovery's scope until the pending motions are decided.

       H.     *Conclusion.*

Page 18 - OPINION AND ORDER

Applying the *Skellerup* factors to the Accounting Firms' protective order motions, the court concludes that Plaintiffs' requests for production are disproportionate to the needs of the case at this stage. Delaying discovery in the disputed areas will promote the efficient and "inexpensive determination" of this case by clarifying the appropriate scope of Plaintiffs' claims and, thus, establishing the appropriate scope of discovery. *See* FED. R. CIV. P. 1; *Ministerie Roca Solida*, 288 F.R.D. at 502-04 (applying Rule 1 in determining the propriety of a protective order). This result is consistent with Rule 26(b)(1)'s requirement that courts examine "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Roberts*, 312 F.R.D. at 603-04, quoting *Chief Justice's Year-End Report on the Federal Judiciary* (2015), at 6.

Staying all discovery is not appropriate, however, and allowing limited discovery while the motions to dismiss are pending maintains the intent and purpose of the 2015 amendment. Although the pending motions to dismiss raise credible challenges to Plaintiffs' First Amended Complaint, it is far from certain that a successful motion to dismiss would be dispositive and could well result in Plaintiffs filing another amended complaint. The Accounting Firms explicitly acknowledged these possibilities at oral argument, and implicitly acknowledged them previously when they proposed to provide to Plaintiffs some of the discovery they sought. (*See* Rule 26(f) Report (ECF No. 94), at 7-9.)

Accordingly, staying all discovery until the court resolves the pending motions to dismiss is not warranted. Limited, focused merits discovery will be allowed while the motions to dismiss are pending.

\ \ \ \ \

Page 19 - OPINION AND ORDER

III.    Ruling.

The Accounting Firms' motions for protective order are GRANTED IN PART and DENIED IN PART, and they are to provide to Plaintiffs the following discovery:

A.    By Deloitte:

1.    Audit workpapers for the twelve Aequitas entities for which Deloitte provided audit services, including the six Aequitas entities that issued the Disputed Securities, for the years 2013-14.

2.    Transaction-level documents relating to the named Plaintiffs in Deloitte's possession, custody, or control.

3.    Requests for information sent by Deloitte to each of the twelve Aequitas entities for which Deloitte provided audit services, in preparation for providing audit services.

4.    Information sent to Deloitte from each of the twelve Aequitas entities for which Deloitte provided audit services, in response to Deloitte's requests for information.

5.    The names, job titles, and designated primary office location of the auditors (to include CPAs and non-CPA accountants, if any) assigned to the audits of the twelve Aequitas entities for which Deloitte provided audit services. For any auditor no longer employed by Deloitte, also provide the title of the last job held and the designated primary office location at the time the auditor separated from the company.

\ \ \ \ \

Page 20 - OPINION AND ORDER

B.    By EisnerAmper:

1.    Audit workpapers for the six Aequitas entities for which EisnerAmper provided audit services, including the three Aequitas entities that issued the Disputed Securities, for the years 2013-14.

2.    Transaction-level documents relating to the named Plaintiffs in EisnerAmper's possession, custody, or control.

3.    Requests for information sent by EisnerAmper to each of the six Aequitas entities for which EisnerAmper provided audit services, in preparation for providing audit services.

4.    Information sent to EisnerAmper from each of the six Aequitas entities for which EisnerAmper provided audit services, in response to EisnerAmper's requests for information.

5.    The names, job titles, the designated primary office location of the auditors (to include CPAs and non-CPA accountants, if any) assigned to the audits of the six Aequitas entities for which EisnerAmper provided audit services. For any auditor no longer employed by EisnerAmper, also provide the title of the last job held and the designated primary office location at the time the auditor separated from the company.

Except as described above, Deloitte and EisnerAmper need not respond to remainder of Plaintiffs' requests for production pending the court's ruling on the Accounting Firms' motions to dismiss.

The information described above must be provided within forty-five (45) days of date of

Page 21 - OPINION AND ORDER

entry of this Order, or within such other time as the parties agree or the court further orders.

*Conclusion*

For the reasons described above, the Accounting Firms' motions (ECF Nos. 139 and 143) for protective order are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 28th day of November, 2016.

JOHN V. ACOSTA
United States Magistrate Judge