1              IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF OREGON

3                         PORTLAND DIVISION

4

5   LAWRENCE P. CIUFFITELLI, for     )
    himself and as Trustee of        )
6   CIUFFITELLI REVOCABLE TRUST,     )
    et al.,                          )
                                     )
7                    Plaintiffs,     )  Case No. 3:16-cv-00580-AC
                                     )
8              v.                    )
                                     )  November 4, 2016
9   DELOITTE & TOUCHE LLP;           )
    EISNERAMPER LLP; SIDLEY AUSTIN   )
10  LLP; TONKON TORP LLP; TD         )
    AMERITRADE, INC.; and            )
11  INTEGRITY BANK & TRUST,          )
                                     )
12                   Defendant.      )  Portland, Oregon
    _____)

13

14

15

16                       ORAL ARGUMENT

17                  TRANSCRIPT OF PROCEEDINGS

18            BEFORE THE HONORABLE JOHN V. ACOSTA

19       UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

20

21

22

23

24

25

1                              APPEARANCES

2    FOR THE PLAINTIFF(S):
                         TIMOTHY S. DEJONG
3                        Stoll Stoll Berne Lokting & Shlachter, PC
                         209 SW Oak Street
4                        Fifth Floor
                         Portland, OR 97204
5
     FOR THE PLAINTIFF(S):
6                        KEITH A. KETTERLING
                         Stoll Stoll Berne Lokting & Shlachter, PC
7                        209 SW Oak Street
                         Fifth Floor
8                        Portland, OR 97204

9    FOR THE PLAINTIFF(S):
                         KARL PHILLIPS BARTH
10                       Hagens Berman Sobol Shapiro, LLP
                         1918 8th Avenue
11                       Seattle, WA 98101

12   FOR DELOITTE & TOUCHE LLP:
                         GARY I. GRENLEY
13                       Garvey Schubert Barer
                         Eleventh Floor
14                       121 SW Morrison Street
                         Portland, OR 97204
15
     FOR DELOITTE & TOUCHE LLP:
16                       PETER A. WALD
                         Latham & Watkins LLP
17                       505 Montgomery Street
                         Suite 2000
18                       San Francisco CA 94111

19   FOR EISNERAMPER LLP:
                         WILLIAM P. FERRANTI
20                       The Ferranti Firm LLC
                         1819 SW 5th Avenue
21                       #403
                         Portland, OR 97201
22
     FOR EISNERAMPER LLP:
23                       LINDA T. COBERLY
                         Winston & Strawn LLP
24                       35 West Wacker Drive
                         Chicago, IL 60601
25

```
1
    FOR SIDLEY AUSTIN:
2                              BRUCE A. ABBOTT
                               Munger Tolles & Olson LLP
3                              355 South Grand Avenue
                               35th Floor
4                              Los Angeles, CA 90071

5   FOR TONKON TORP:
                               PHILIP S. VAN DER WEELE
6                              K&L Gates LLP
                               One SW Columbia Street
7                              Suite 1900
                               Portland, OR 97258
8

9

10                    Attorneys Also Present:

11
             David B. Markowitz, Sidley Austin LLP
12
           Matthew J. Kalmanson, TD Ameritrade, Inc.
13
          Nicholas T. Christakos, TD Ameritrade, Inc.
14
         Robert C. Weaver, Jr., Deloitte & Touche LLP
15
            Milo Petranovich, Integrity Bank & Trust
16
             Chad M. Colton, Sidley Austin LLP
17
           Zachary M. Briers, Sidley Austin LLP
18
           Gavin M. Masuda, Deloitte & Touche LLP
19
                   Nadia Dahab, Plaintiffs
20

21

22

23  COURT REPORTER:    Jill L. Jessup, CSR, RMR, RDR, CRR
                        United States District Courthouse
24                      1000 SW Third Avenue, Room 301
                        Portland, OR 97204
25                      (503)326-8191
```

                        TRANSCRIPT OF PROCEEDINGS

1             THE COURT:  All right.  We're here on two motions.

2   Motion for protective order, Docket No. 139, filed by Defendant

3   Deloitte and Touche, and motion for protective order, Docket

4   No. 143, filed by EisnerAmper.

5        All right.  For EisnerAmper, who will take the lead?

6             MR. FERRANTI:  Good afternoon, Your Honor.

7   Will Ferranti.  This is my co-counsel, Linda Coberly, who will

8   take the lead for us.

9             MS. COBERLY:  Thank you, Your Honor.

10            THE COURT:  For Deloitte and Touche?

11            MR. GRENLEY:  Gary Grenley, Garvey Schubert, and

12  presenting will be Peter Wald from Latham and Watkins.

13            MR. WALD:  Good afternoon, Your Honor.

14            THE COURT:  Okay.  All right.  We have two motions.

15  They are quite similar, and the oppositions are similar as

16  well.

17       For the plaintiffs, Mr. Ketterling, will it be you or,

18  Mr. DeJong, will it be you?

19            MR. DEJONG:  It will be me, Your Honor.  Tim DeJong.

20            THE COURT:  All right.  Thank you.

21       Let's start with basics, and I'll start with the

22  defendants.

23       Mr. Wald, since Deloitte is the first-named defendant,

24  I'll ask you this question first:  Knowing what you know about

1   the motions to dismiss that currently are pending, how likely

2   do you think it is that if I grant the motion I would also not

3   grant leave to the plaintiffs to amend?

4        I guess I'm asking in a roundabout way what is the

5   likelihood, in your view, that the motion to dismiss will take

6   Deloitte out of the case entirely?

7                MR. WALD:  Your Honor, consistent with at least my

8   experience in federal court, it certainly would not surprise

9   me, if the Court were persuaded by our arguments on the motion

10  to dismiss, that you give the plaintiffs an opportunity to

11  amend.

12       That said, the question is what would they do with that

13  opportunity and would the second pleading that they submit be

14  any more persuasive about their ability to stay in court, about

15  their ability to stay primary and secondary liability claims

16  than the first complaint?

17               THE COURT:  Which is an indirect way of saying,

18  "Judge, there's a pretty good chance we might file another

19  motion to dismiss"; correct?

20               MR. WALD:  I think, Your Honor, yes, if you dismiss

21  without prejudice.

22               THE COURT:  And leave to amend.

23               MR. WALD:  Correct.  We would fully expect --

24  obviously, I would need to see what the plaintiffs submit.  But

25  based on what we have seen so far, there has been no allegation

1    in our submission, Your Honor, of any evidence or claim that

2    can connect Deloitte to the securities transactions within the

3    meaning of the statute.

4            THE COURT:  Sure.  All right.  I understand that's

5    your argument, as it has been asserted both in the motions to

6    dismiss as well as in a more abbreviated form in the protective

7    order briefing.  But this isn't my first rodeo and this isn't

8    my first motion to dismiss.  And given the issues and the

9    potential exposure in play in this case, if I were to make an

10   educated guess, that guess would be I'm probably going to see a

11   second motion to dismiss from one or both of the defendants, if

12   not all the defendants.  And so the reason I raise that is

13   this:  While we are engaged in that procedural exchange, if I

14   accept the defendants' position, there will be no discovery

15   conducted.

16       It's quite possible -- let's just say one way this may

17   play out, Mr. Wald -- ultimately, the plaintiffs managed to

18   scrape together a complaint that passes muster.  We move

19   forward in the case, and we're looking at the end of the summer

20   before discovery begins.  That's one possible scenario.  That's

21   quite a long time.

22            MR. WALD:  May I address, Your Honor?

23            THE COURT:  Absolutely.

24            MR. WALD:  I guess I would answer your observation

25   with two observations.  The first is that, to be clear on the

```
 1    record, it is not the position of the defendants that all
 2    discovery should be stayed.  That's not our position at all.
 3              THE COURT:  So let me ask you about that.
 4              MR. WALD:  Okay.
 5              THE COURT:  I'll interrupt, because you haven't made
 6    your second observation, are you at least willing to provide
 7    the work papers for the two years during which, as I recall
 8    from your briefing, you acknowledged that was those are the two
 9    years that Deloitte performed work for the plaintiff?
10              MR. WALD:  Your Honor, for the reasons set forth in
11    the protective order, we don't believe that would be an
12    appropriate outcome in this case.  We are, of course, willing
13    to provide the transaction level documents that Deloitte
14    possesses on an electronic filing website.  These are documents
15    what came to Deloitte, in the course of doing its work, from
16    Aequitas.  Plaintiffs do not have these documents.  They are
17    important documents.  They are the documents that show all of
18    the things, Your Honor, that we say are missing from the
19    complaint.  And when I say "all," that's probably an
20    overstatement.  But they go to the question of which plaintiffs
21    bought what securities through what medium.  What -- what is in
22    our files that can help start to nail down the specifics of the
23    transactions that are at issue, who bought what, when, from
24    whom, on the basis of what statements, what documents, what
25    subscription agreements.  That is a level of detail that is
```

1   simply lacking from the current complaint.

2        Indeed, the plaintiffs, as a matter of pleading, are not

3   even able to say, under oath, that they themselves received

4   certain representations.   The most they say in their pleading

5   is that investors received certain representations.

6        And as we move from today's hearing to the December 21st

7   hearing, Your Honor, obviously those issues will be in full

8   relief.

9        So when I say that the defendants' position is not that

10  all discovery should be stayed but that it should be limited

11  and it should be directed to the categories of documents that

12  are -- could be relevant and should be relevant to the next

13  phase of the proceeding, which is Your Honor's consideration of

14  the motions to dismiss and the bases for the motions to

15  dismiss.

16       And the -- if I may just make one other observation, the

17  plaintiffs themselves have agreed what they would produce

18  documents in their possession fitting that description to the

19  defendants.

20            THE COURT:   All right.   Thank you.

21       Ms. Coberly, you've now had the advantage of hearing me

22  ask all the questions of Mr. Wald that I intend to ask you.

23       The first question I'll ask is how about those Cubs?

24            MS. COBERLY:   How about those Cubs?   But I'm here

25  instead, Your Honor, and I'm happy to be here instead, rather

1    than with 5 million people in the middle of Chicago.

2              THE COURT:  Yes.  So my questions to you are the same

3    as they were to Mr. Wald.  First, what is the likelihood, in

4    your view, that if I were to grant your motion I would also

5    grant leave to amend?

6              MS. COBERLY:  Well, I think it depends on which basis

7    the Court grants the motion to dismiss.  We've made several

8    different arguments.  A couple of the arguments are of a nature

9    where I would expect a Court would grant leave to amend.  That

10   is in the nature of a lack of specificity.  This is a fraud

11   case, and we have argued that the allegations aren't sufficient

12   to say what was false and when.  We've -- we've made those

13   kinds of allegations that one would expect.  You know, in my

14   experience, typically, those lead to -- leave to -- sorry,

15   those typically lead to leave to replead.  But we've also

16   argued that as a matter of law providing ordinary year-end

17   audit work does not constitute material aid to all the sales

18   that the entity made during that previous period or during the

19   next period, and that's a legal issue that we believe would

20   require dismissal with prejudice.  There's no way that that can

21   be pleaded around because it's undisputed that what our clients

22   did and all our clients did was do ordinary audit work at the

23   end of the year.

24             THE COURT:  So your answer to my question would be it

25   depends on which ground or grounds I would grant your motion?

1          MS. COBERLY:  Correct.  And --

2          THE COURT:  So, that said, in the holistic view of

3    the issues you've raised, how likely do you think -- let's put

4    it this way:  More likely than not, I'm going to give the

5    plaintiffs' leave to amend.

6          MS. COBERLY:  Well, I hesitate to handicap my own

7    arguments, but just given we've made a number of arguments

8    about lack of specificity, I would say, yes, it's probably more

9    likely than not that you're going to grant leave to amend.

10         THE COURT:  So while we wait for our hearing the week

11   before Christmas on the motions to dismiss and assuming that I

12   can issue a ruling within three to four weeks of the hearing,

13   if not sooner, if I grant your motion with leave to replead,

14   then we're still looking at settling the complaint and

15   potentially, as I asked Mr. Wald, another motion to dismiss.

16   That's a possibility; correct?

17         MS. COBERLY:  That's a possibility, though perhaps on

18   different grounds.

19         THE COURT:  Well, sure, because there would be

20   different allegations.

21      So during that time, should there be any discovery at all,

22   as far as you're concerned, on behalf of your client?

23         MS. COBERLY:  We have asked -- we, EisnerAmper,

24   because we're in a somewhat different position, vis á vis the

25   rest of the defendants --

1          THE COURT:  Yes.

2          MS. COBERLY:  -- we have asked for a stay of all

3    discovery pending resolution of the motion to dismiss that's

4    pending.

5        Now, would that necessarily entail a motion to -- a

6    protective order that would prevent discovery until the

7    resolution of the next motion to dismiss?  I'm not so sure.

8    And here is why I say that:  One of the disputes we have right

9    now between the parties about the scope of discovery has to do

10   with which entities.  So my client audited certain entities but

11   not others.

12         THE COURT:  You say -- I'm sorry to interrupt.  When

13   you say which entities, you mean which of the 88 Aequitas

14   entities?

15         MS. COBERLY:  Correct.

16         THE COURT:  Okay.  Go ahead.

17         MS. COBERLY:  So my clients performed audit work for

18   certain Aequitas entities for certain periods of time.  And we

19   have argued that the only claims that can be stated in this

20   case relate to entities that we audited and entities that the

21   plaintiffs purchased securities from.  That is an argument

22   we've made in our motion to dismiss, and it has been briefed

23   extensively.

24       The plaintiffs' response to that argument is once you've

25   edited one Aequitas entity, you are an auditor of the Aequitas

1   securities business kind of now and forever, and so your

2   liability extends to all purchasers of all securities from all

3   Aequitas entities going forward.

4        So we've argued about that very legal issue that's been

5   briefed extensively, and you'll hear more about it on the

6   21st of December.

7        The discovery requests you have before you ask for

8   discovery of work papers for all Aequitas entities.  Our

9   objection to that is that all Aequitas entities are not the

10  basis for claims against EisnerAmper.  The only Aequitas

11  entities that could yield, even conceivably, even granting the

12  rest of their arguments, that could yield claims against

13  EisnerAmper, are for securities that were issued by entities

14  that EisnerAmper audited and securities that the plaintiffs

15  themselves purchased.

16       So in order to resolve the scope of discovery, even

17  sitting here today, even with respect to just the work papers,

18  the Court would have to weigh in on that important legal issue.

19       Now, I would expect, I'm guessing, that the Court's ruling

20  on the first motion to dismiss will settle that issue, and the

21  Court will conclude one way or the other whether the plaintiffs

22  are required to plead claims only with respect -- whether

23  they're required to link their claims to specific securities

24  that were issued by entities we audited.

25       And if they're required to make that connection, then we

1    could limit our discovery to those entities, and we would be

2    done with it.

3         But for now what I'm saying, Your Honor, is that the Court

4    would have to resolve that very issue in order to deal with

5    these discovery requests.

6         So it would be much more sensible, from the perspective of

7    judicial economy, to wait until the Court's ruling on the first

8    motion to dismiss, where presumably some of those issues will

9    be ironed out, and then we'll see how much more guidance we

10   need to evaluate what the reasonable scope of discovery really

11   is.

12             THE COURT:  Thank you.  This is not directed at you,

13   Ms. Coberly, but I find myself smiling inwardly every time I

14   hear a justification of judicial economy which doesn't seem to

15   really come into play when I get motions to compel, so -- but

16   thank you.  I appreciate the sentiment.

17        Mr. DeJong, what exactly is it between now and the time I

18   decide the motions to dismiss that you think the plaintiffs

19   should be able to get from these two defendants?

20             MR. DEJONG:  Their audit work papers.

21             THE COURT:  You can stand if you wish.

22             MR. DEJONG:  I'm too tall for the microphone.

23             THE COURT:  You can stand if you wish, everyone, or

24   you can stay seated if you wish.  Thank you.

25             MR. DEJONG:  My apologies.

1        THE COURT:  It's better.  Go ahead.

2        MR. DEJONG:  The answer, Your Honor, is the audit

3  work papers.

4        THE COURT:  All right.  So far so good.  For which

5  years for which defendants?

6        MR. DEJONG:  For the years that they concede that

7  they were the auditors.  I believe there are two years for each

8  of them.  They're in our papers.  I think it's 2010 and '11 for

9  EisnerAmper and --

10        MS. COBERLY:  It's fiscal 2011 and 2012 for

11  EisnerAmper.

12        MR. DEJONG:  Correct.

13        MR. WALD:  And '13 and '14 for Deloitte.

14        THE COURT:  So two years for each of the two

15  defendants.

16    Anything else?

17        MR. DEJONG:  From these two defendants, our proposal

18  is that we get those now.  That's our request from Your Honor.

19        THE COURT:  So let's pursue a little bit more the

20  EisnerAmper work papers.

21    For which entities?

22        MR. DEJONG:  The entities that they audited.

23        THE COURT:  Just those?

24        MR. DEJONG:  That's correct.

25        THE COURT:  Not the 88, just the -- what is it?  Six?

1        MR. DEJONG:  If they didn't audit it -- if they

2   didn't audit an entity, there are no work papers, and we aren't

3   requesting them.  They're -- I believe there are six entities,

4   if that's what they represented.

5        MS. COBERLY:  Well, Your Honor, the -- sorry.

6   Forgive me.

7        THE COURT:  Go ahead.

8        MS. COBERLY:  Thank you.  There are three entities

9   that the plaintiffs purchased securities from that EisnerAmper

10  audited that are alleged in the complaint.  There may be other

11  entities that EisnerAmper audited that are not -- that did not

12  issue securities that are at issue in the complaint.  And

13  that's the very thing that we are arguing about in our motion

14  to dismiss, and that is illustrated.  And this is the -- this

15  is the very distinction that we're talking about.  The -- the

16  request from the plaintiffs goes beyond the entities from which

17  they purchased the securities.

18       MR. WALD:  Your Honor, if I may add to that for

19  Deloitte.

20       THE COURT:  Go ahead.

21       MR. WALD:  Our numbers are 12.  I believe it's 12

22  Aequitas entities that we audited; only six of which issued

23  securities that are at issue in the case.

24     And if I may, Your Honor, there's one other organizing

25  principal that may be of utility to the Court, and that is that

1    there is a single entity into which all of these sub-entities

2    consolidated up in its reporting, and that's an entity called

3    ACF.  So you have an audit of ACF and then you have audits of

4    other entities that consolidate up into ACF.  So when I say

5    that Deloitte audited 12 entities, six of which issued

6    securities, one of which was ACF, I would simply note that the

7    audit of ACF includes work papers that would be relevant to the

8    other issuing entities in the case, the work that Deloitte did

9    to allow those issuing entities to consolidate up to ACF.

10        I don't know if that's of help to the Court, but that's

11   the structure.

12            THE COURT:  Thank you.  So before we continue, what I

13   should have said at the beginning, because most of you in the

14   room haven't appeared before me previously for a motion

15   hearing, is typically I have questions.  I ask those questions,

16   and we go through all the questions.  And when I'm finished, if

17   there are things that you have to say that you didn't get a

18   chance to say in response to my questions, we'll do that before

19   we adjourn.

20        I prefer that you try not to interrupt so that everyone

21   feels they have had the chance to speak.

22        So I had been talking to Mr. DeJong about the particular

23   years for which and then we talked about particular entities.

24        So, Mr. DeJong, you have heard now, from Ms. Coberly and

25   Mr. Wald, their interpretation of the audited entities.  Any

1    thoughts about that?

2            MR. DEJONG:  Yes, Your Honor.  Discovery is -- the

3    limits of discovery are governed by relevance, and all of the

4    audit work papers are relevant to our claims.

5        We allege in the complaint that Aequitas, in the

6    securities business, used the audited financial statements

7    prepared by these fine attorneys' clients to solicit sales of

8    securities, and their clients were also listed in the sales

9    materials as the auditors lending an air of credibility to this

10   enterprise.

11       Furthermore, they can't -- Aequitas can't sell securities

12   without these audited financial statements.

13       The audited financial statements, whether or not they were

14   an audit of an issuing company or not, which it sounds like we

15   have concessions that 50 percent of them, or more, were, are

16   relevant to -- on each of the levels that we can -- we can

17   address here, they're relevant to Aequitas' primary liability

18   under the Oregon securities law for making false statements

19   about their financial condition.

20       Understand, Your Honor, that the basic -- the basic

21   manipulation, for lack of a better term, that Aequitas engaged

22   in was they have various assets, and they -- they use the

23   assets -- they shifted them around to these 88 entities, as

24   they saw fit, so they could access cash within those various

25   entities so that they would give the appearance of being a

1    going concern.

2        This is a giant -- really, a shell game of moving assets

3    around.  That's the basic fundamental nature of our complaint.

4        And so the audits of each of these entities is going to

5    shed light on many -- the truth or untruth of many of the

6    allegations that we say are false, including asset valuations,

7    which companies are holding the assets, perhaps the work papers

8    will show the consideration, if any given, for these

9    transactions.

10       Okay.  So we've got the issue of primary liability, which

11   the work papers are relevant to, and they're also -- they're

12   also relevant to the issue of our burden to establish

13   participation or material aid because the test in Oregon is not

14   a legal test.  It's a fact test.  It's a test of the scope and

15   importance of the parties' contribution to the business.

16       So how can we understand that without understanding the

17   full scope of the work that these auditors did for Aequitas?

18       The final way and I think the most indisputable way that

19   these work papers are relevant, regardless if they are an audit

20   of an issuing company, is that I assume each of the defendants

21   in this case is going to attempt to take advantage of the

22   affirmative defenses provided in ORS 59.115(3) which requires

23   them to prove that they did not know and could not reasonably

24   have known of the truth of the facts that were not truthfully

25   stated.

1    So we need to examine -- when they assert that defense,

2 they put in play for discovery and relevance all of their

3 knowledge, all of their activities.  What did they do; what did

4 they not do?  What did they know; what did they not know?  The

5 audit work papers are going to shed light on those facts

6 whether or not it's an issuing company that issued the

7 securities.

8    It's a -- from my perspective, Your Honor, the -- it's an

9 impossible task for us at this hearing today with what's in the

10 record before you, which doesn't contain any of these

11 arguments, by the way, to parse which financial statement,

12 which audit is going to be relevant in this case.

13    What is important is we have alleged that they all are.

14 We have alleged that this is -- all of the offerings are one

15 single consolidated series of offerings, and effectively that

16 the so-called corporate, you know, setup should be disregarded

17 because it's real -- Aequitas operated these 88 entities as one

18 company.

19         THE COURT:  Since we don't have any answers filed by

20 these defendants, we don't know what affirmative defenses, if

21 any, they will assert.  I suspect that your prediction probably

22 is right; but at least the issues raised by those affirmative

23 defenses and therefore the relevancy to discovery that they

24 would have, haven't yet come into the case.  They might later

25 on, but they're not yet.  But I understand your point.

1          Mr. Wald, further comments or observations?

2              MR. WALD:   Thank you, Your Honor.   I want to pick up

3     on the last point that Your Honor addressed, because, in our

4     view, it's the -- it's the most important point in your

5     consideration of how to proceed, and that is what we see this

6     as a timing issue.   We sit here today on November 4th.   There

7     will be significant oral argument and preparation for oral

8     argument on December 21st.   Not very far away.   You're

9     absolutely correct that the defense has not asserted

10    affirmative defenses.   That's correct.   So even on Mr. DeJong's

11    submission about what's relevant, that's certainly not relevant

12    yet.

13         But we don't see this right now, Your Honor, as a debate

14    about what is or might be relevant.   We think that the most

15    sensible and efficient way to proceed is for the Court to hear

16    argument on the 21st about whether these plaintiffs can survive

17    in federal court on these claims of secondary liability against

18    us.

19         Those are very substantial questions, and I submit that as

20    the Court dives into -- even more into the briefs in

21    preparation for it, the question of what will be relevant if

22    these claims survive and what will not be relevant if these

23    claims survive will come into much sharper belief.

24         And because we are not talking about a long time and

25    because there has been a lot of activity, even since the

1   briefing of the motions for protective order, as I know

2   Your Honor is aware, Sidley Austin has filed a motion for

3   protective order.  The individual defendants in the SEC

4   receiver proceeding have filed a motion for protective order

5   having to do with privileged documents.  The receiver has not

6   yet filed his report saying when discovery will be available as

7   against the Aequitas entities.

8       So from a prejudice point of view, it's difficult, I would

9   submit, to make a strong argument of prejudice because there is

10  going to be a lot that is going to have to be decided over the

11  next couple of months in any event.  It's not like we're going

12  to produce these documents and everything is going to -- going

13  to go forward.  That is just not going to happen.

14      Conversely, if the Court waits to decide what the

15  appropriate scope of discovery is, as Ms. Coberly argued, at

16  the moment in time when you're fully seized of the legal

17  arguments that have been put forward on the motion to dismiss,

18  I suspect, Your Honor, that the guidance that you can give the

19  parties about what is appropriate going forward will be

20  precise, and we won't have further discovery disputes, if,

21  indeed -- if indeed, the plaintiffs are actually able to stay

22  in court on these issues.

23      And, obviously, Your Honor, we all acknowledge we

24  certainly -- Deloitte certainly acknowledges that this is

25  committed to the sound discretion of this Court, this dispute,

1   and how to proceed and how to sequence it.

2       I would observe, as the Ninth Circuit observed in the

3   *Ruttman* case that we have cited to you, that it is the better

4   practice to see whether the plaintiffs are going to be able to

5   stay in Court on their claims before subjecting the parties to

6   burdensome and potentially discovery that doesn't need to take

7   place.

8           THE COURT:  So let me follow up on that particular

9   point because I notice that in your papers and the citation to

10  the case there's a difference between the case, seeming from

11  the face of the complaint, to be unlikely to survive a motion

12  to dismiss and a case on the face of the complaint which seems

13  that with leave to amend it probably can go forward.

14      So my question is this:  Is the point you just made that

15  the Deloitte defendant shouldn't have to give any information

16  up because of the possibility that the Deloitte defendant will

17  be dismissed from the case perhaps finally and with prejudice?

18          MR. WALD:  It's probably a variant of that,

19  Your Honor.  It is that we submit, as we say in the briefs and

20  in the Rule 16 conference statement, that Deloitte should give

21  up the transaction-oriented documents, which are significant

22  documents in this case, which is in its possession, which comes

23  from Aequitas, which the plaintiffs cannot get currently

24  because of the receivership stay, and that that is an important

25  corpus of documents.  It should be -- and the law firm

1    defendants are willing to produce those documents as well, and

2    the plaintiffs have acknowledge that they are willing to

3    produce their investment-related transaction documents to us.

4        What I'm really saying to my timing point, Your Honor, is

5    that that ought to define the discovery that the parties

6    exchange with each other until December 21st.  Again, not very

7    long from now.  That discovery will keep the case moving

8    forward, in an appropriate way, until the Court really is in a

9    position to say yea or nay on the motion.  And if yea, what

10   does that mean and what does what mean for the next phase?

11       And I second Ms. Coberly's suggestion that we proceed in

12   that way until December 21st.  Obviously, without prejudice to

13   the Court to decide after the December 21st whether that should

14   be the same rule going forward or whether that should be

15   amended.

16           THE COURT:  All right.  Thank you.

17       Ms. Coberly, anything to add to that?

18           MS. COBERLY:  Yes.  If I heard Mr. DeJong correctly,

19   I think he said it was impossible to parse based on the

20   arguments before the Court today exactly what is and isn't

21   going to go relevant to some of these claims.  That's -- did

22   I -- I may have misheard, but I thought --

23           THE COURT:  That's accurate.  Go ahead.

24           MS. COBERLY:  And so if that's -- I totally agree

25   with that.  It is impossible to parse, and we've argued that

1    point in detail in our motion to dismiss.  And the Court's

2    ruling on that initial motion to dismiss will give the parties

3    tremendous guidance on that issue.

4        So we have other entities from which the plaintiffs didn't

5    purchase securities.  Do we have to produce those now or not?

6    We're not really in a position to argue today.  We've argued

7    no; the plaintiffs are arguing yes.  And that's the very issue

8    this Court is going to have to decide on the motion to dismiss

9    about the relevance of one to another.

10       There's a legal argument the plaintiffs are making which

11   is that once you argued a -- once you did an audit for an

12   Aequitas entity, you're in, and everything is relevant, and we

13   say that's not true.

14       Now, there's another issue for EisnerAmper which is a

15   timing issue.  It's a different kind of timing issue.  My

16   client is being sued here based on audits of fiscal 2011 and

17   2012 relating to entities that encountered financial

18   difficulties in 2014 and collapsed in 2015.

19       One of the arguments we've made in our motion to dismiss

20   is that there are not sufficient allegations in this complaint

21   that trace any false statements, any shifting of assets, any

22   mingling of entities, all the way back to the period where our

23   client was on the scene.  And in order to state a claim,

24   they're going to have to do that.

25       Now, it may be, if this Court grants leave to amend on

1    that ground, the plaintiffs will decide they can't do it; but

2    we still think that's required.  They may decide they can't

3    meet that burden and they may just not pursue it against our

4    clients, or they may decide they have enough and they may try;

5    in which case, we can deal with those arguments at that time.

6         But it does distinguish, I think, the timing issue for --

7    for my clients, in particular.  It's just another reason why

8    some of the guidance this Court is going to give in connection

9    with this initial motion to dismiss will be so helpful in

10   helping the parties to define the scope of relevant and

11   appropriate discovery.

12           THE COURT:  All right.  Thank you.

13        Mr. DeJong, any final comments on these issues?

14           MR. DEAN:  Yes.  Your Honor, I think I heard Mr. Wald

15   suggest that it was my burden to prove a prejudice here.

16   That's not how this works at all.  It's his burden to prove a

17   prejudice, and nobody has proved a prejudice.

18        Today happens to be the seven-month anniversary of the

19   filing of this lawsuit.  Seven months.  We don't have a

20   document produced.  We even have defense counsel suggesting

21   that there's documents that they don't object to producing, but

22   they haven't even produced those.  They haven't served us with

23   any document requests yet.

24        This is all about delay.  We have a hearing on

25   December 21st.  Your Honor has suggested you may be able to get

1    an opinion out within a few weeks.  That's very helpful.  It's

2    very likely, and I think we could expect, since there are no

3    consents to magistrate, that the aggrieved party, or one or

4    more in this, may appeal your findings, which would add more

5    delay.  And, as you say, we are into the late summer or fall or

6    even winter next year if we have a stay pending the settling of

7    the pleadings.  And I think we probably could speculate with

8    pretty good confidence that the plaintiffs will never plead

9    sufficient facts to satisfy all of the defendants.

10        To clarify something that was used against me from my

11   prior argument, Your Honor, if I -- if I said it that way,

12   that's not what I meant.  What I meant was we can't parse out

13   which financial statements, which audits are not relevant.  We

14   have alleged they are all relevant.  We have alleged claims

15   based upon all of those audits.  So what I'm saying is we

16   can't, at this stage before Your Honor -- I don't think you're

17   prepared to make a ruling to dismiss our claims based upon the

18   50 percent of the audits what they don't want to produce.

19        I think that's what I had to say, Your Honor.  Thank you.

20             THE COURT:  All right.  I don't mean to prevent

21   anyone else who's here attending the hearing to make any

22   comments that they came to make or perhaps your position is to

23   just stay out of the way on this one since you're not involved.

24        I'm finished with the questions I had.  So here is the

25   opportunity for you to add any additional points you think I

1   need to be mindful of before I make a decision on these issues.

2   Keeping in mind I've read everything, you don't need to restate

3   what's in the brief.  You don't need to restate what you have

4   argued already.

5         Mr. Wald, I'll start with you because you're the

6   first-named defendant, even though you filed your motion after

7   Ms. Coberly did.  So go ahead.

8         Wait.  No.  Ms. Coberly, you filed yours first.

9              MS. COBERLY:  I think Mr. Wald filed his first.

10             MR. WALD:  As luck would have it, Your Honor.

11             THE COURT:  Go ahead.  Anything else you would like

12  to say?

13             MR. WALD:  Only that there's been a lot of discussion

14  today about what is relevant, what could be relevant, and what

15  might be relevant, and to us that underscores the utility of

16  deciding the issues on the motion to dismiss.  If we are right

17  in our submission, Your Honor, then they have not only not

18  stated a claim, but, to Ms. Coberly's point, they will have a

19  tall task.  Let me put it that way.

20             THE COURT:  So let me ask you this question.  I don't

21  mean this to be glib or facetious --

22             MR. WALD:  Sure.

23             THE COURT:  -- but it's not as if we're looking at a

24  complaint for securities fraud that actually pleads products

25  liability.  I mean, we know securities fraud are the claims

1   here.  Correct?

2            MR. WALD:  Correct.

3            THE COURT:  Something has to be relevant.  Would you

4   agree with that?

5            MR. WALD:  Correct.

6            THE COURT:  All right.  So I'll give you the

7   opportunity to respond to this observation.  As I sit here now,

8   it seems clear to me there are some things that are relevant,

9   regardless of how the motions to dismiss come out, that could

10  be the subject of discovery now.  Why am I wrong about that?

11      Now, I know you've already acknowledged, "Hey, there's

12  certain things, Judge, we're happy to give over or exchange

13  with the plaintiffs."  So it seems to me that there are some

14  things what can be exchanged; right?

15           MR. WALD:  That's absolutely correct, Your Honor.  I

16  think at page 6 of the joint statement we list what those

17  things are.

18           THE COURT:  It's just the scope and the timing.

19           MR. WALD:  That's right.  That's exactly right,

20  Your Honor.  That captures our position.

21      This is the secondary liability claim against the

22  defendants in this courtroom today.

23           THE COURT:  Yes.

24           MR. WALD:  The plaintiffs need to connect each one of

25  us to the specific sales transactions.

1          THE COURT:  Yes.

2          MR. WALD:  The complaint does not do that.  It does

3    not give us fair notice of that.

4      The documents I'm suggesting that we exchange may well go

5    to that question, particularly when we get documents also from

6    the plaintiffs, because, in our view, their complaint is

7    cleverly worded at the point.  So this is not make-way

8    discovery, but this is actually core discovery, given where

9    this complaint is right now.

10     With respect to the work papers, Your Honor, I would make

11   this observation:  There is no question that Ms. Coberly's

12   client and my client audited certain Aequitas entities.  Okay.

13   There's no doubt about that.  We have produced the audited

14   financial statements and our reports on those statements.

15     Nothing in the work papers at this stage of the litigation

16   is going to bear on the legal issues that we have ripened

17   through the motion to dismiss.

18     There is no -- there's no doubt that we did the audit

19   work.  Indeed, the plaintiffs don't challenge the adequacy of

20   the audit work, and they say they don't have to.

21     So I'm not saying that depending on what Your Honor

22   decides, these documents might not be relevant down the road.

23   I'm not saying that, Your Honor.

24     What I am saying is that in our submission the best, most

25   efficient and most precise way to proceed is to exchange the

1    corpus of documents that is reflected on page 6 of the joint

2    statement, get to the hearing on December 21st, take the

3    Court's measure as to the legal arguments that are advanced and

4    decided on that day, and then regroup and ask ourselves does

5    that affect the view of whether further discovery should be

6    had.

7                    THE COURT:  Thank you.

8          Ms. Coberly, final thoughts?

9                    MS. COBERLY:  Yes.  Just to address the fact that the

10    case has been pending for seven months.  Last summer we had a

11    meet-and-confer.  We had a conference, and we filed our joint

12    conference statement, and we couldn't come to an agreement.

13                    THE COURT:  Right.

14                    MS. COBERLY:  We hoped to, but we couldn't come to an

15    agreement, and the defendants collectively made a proposal for

16    phased discovery that included actually producing certain

17    things.  And the plaintiffs rejected that proposal and didn't

18    press the issue, and it wasn't until however long before now,

19    in the fall, that we received these incredibly broad discovery

20    requests where we were asked for everything.  It went well

21    beyond what the plaintiffs said they wanted over the summer in

22    their 26(f) proposal.

23          And then we needed -- because we had no choice and we had

24    a deadline facing us, we needed to file this motion to protect

25    ourselves because we were -- because we were objecting to the

1    scope of those requests.

2        But that's why we're here today and that's why it's taken

3    so longer.  We made a proposal.  The defendants collectively

4    made a proposal that would have started the discovery process

5    last summer, and the plaintiffs didn't accept it.  And that's

6    why it's been seven months and there's been no discovery.

7              THE COURT:  All right.  Mr. DeJong.

8              MR. DEJONG:  Very quickly, Your Honor.  We didn't

9    have any discovery because the defendants have refused to give

10   us any meaningful discovery and would not give us even the most

11   miniscule discovery unless we agreed to forego all the merits

12   discovery.

13       The delay was, respectfully, caused by the defendants.

14   What happened was the defendants wouldn't agree to have a

15   Rule 26(f) discovery planning conference for several months

16   because it was going to -- in their minds, the discovery issues

17   were going to be so complicated.  That's what they told us.

18       When we finally had our discovery conference in July,

19   after the case had been filed in April, and to be told you can

20   have, effectively, the records of your own investments, which,

21   frankly, we think, by and large, we already have.

22       So the rule -- the federal rules allow -- provide for us

23   to have full discovery at this point.  There's been

24   a seven-month reprieve from any discovery.

25       We have made a very substantial compromise with respect to

these two defendants.  We have agreed to limit it to work

papers that can be easily produced, basically with a push of a

button, and to forego the more burdensome things, such as

emails.  And that's a very substantial compromise that we

offered, Your Honor, and what we -- we think that's more than

adequate, and we should be allowed to proceed like they have.

I mean, we -- it's pretty certain that defense counsel had

already reviewed these documents and are well versed in them.

We're way behind.

THE COURT:  All right.  Thank you.

Before I hear from others, just an observation:  This

case, by its very nature, is complicated.  The number of

lawyers in the room proves the fact that there are a lot of

parties and a lot of moving parties, both legally and

factually.  Lawyers are going to disagree on discovery issues.

So far the disagreements have been well articulated and made

reasonably and rationally.

I am not interested in figuring out who started it.  We're

seven months from filing.  It kind of makes sense to me, given

the nature of this case.  So right now I'm not concerned about

the delay, but I am mindful of the absence of discovery and the

proposed absence of discovery, or most discovery, until the

motion or motions to dismiss, if there would be a second round,

are finally decided.  So I'm sensitive to the plaintiffs'

concerns on that.  I'm not going to decide these issues based

1    on who I think started it.

2         Now, anyone else who is here who had anything to say about

3    the pending two protective orders, this is your opportunity to

4    weigh in if you would like to.  You don't have to; but if

5    there's something you think you need to say, this is the time,

6    before we move on to the next issue.

7         All right.  Probably wise.

8         There was a mention in the briefing papers about ESI.  I

9    know it's not directly in play yet, but it will be.  So I had a

10   thought about that, and, as long as I have you all here, we

11   might as well talk about it.

12        My experience with electronically stored information is

13   that the parties often disagree on how it will be gathered, who

14   will do it, whose expert gets to look at what things, access --

15   direct access to systems or legacy systems, things being

16   produced in the native format, in the original format, all of

17   those good things, but also the protocols, right, the key

18   search terms, all those things.  There will be a lot of those

19   in this case.

20        My thought is this:  It makes sense to me now that

21   everyone start thinking about search terms so that when the

22   time comes for discovery of electronically stored information

23   you have something of a head start about what you want from

24   everyone else and what you think every else gets from you.  But

25   I would prefer to avoid -- well, actually, there are two

1    things.

2        I would prefer to avoid an unnecessary delay because the

3    parties can't agree on search terms.  Second, I would prefer to

4    avoid being put in a position of having to decide for you what

5    the search terms will be.  You all know this case better than I

6    do.  You will be involved in discovery.  Hopefully I won't be.

7    You are in the best position to determine search terms.  Start

8    thinking about that now with the idea in mind that the next

9    probably three or four months we might actually be here or on

10   the phone talking about setting up ESI protocols.

11       So that is my advice to all of you.

12       The only other thing on my list of things to cover before

13   we adjourn or hear anything else that has to do with scheduling

14   is this:  Typically, I conduct a Rule 16 conference in a case

15   as soon as all the parties have appeared.  When there are

16   motions to dismiss pending, it delays a Rule 16 conference

17   because, as in this case, there sometimes is a dispute or even

18   an agreement over whether discovery should go forward.  So I'm

19   going to ask you this one thing that I usually cover in a Rule

20   16 conference.  I'm going to do it now.  And Mr. DeJong touched

21   on it a little while ago.  Consent to jurisdiction by

22   magistrate judge.

23       You are not required to consent, as you all know, and

24   there are no consequences if you do not consent, but I would

25   ask that between now and ten days from now you advise the Court

1    whether you will consent to jurisdiction by magistrate judge.

2    If you choose not to, that's fine, and it doesn't preclude you

3    from later consenting.  That happens quite a bit.  I have a

4    couple of trials scheduled because of consents that came in

5    after summary judgment rulings.  But it would help me manage my

6    docket and it would help me know exactly what to start

7    predicting for scheduling into the early part of next year.

8        If you do consent, we have a form on the court's website

9    that you can use and must be filed in hard copy.  You can't

10   electronically file it; so if you choose to consent, you must

11   do it that way.

12       As I said, if you don't, that's fine.  You don't have to,

13   and there aren't any consequences if you don't.

14       All right.  Before we adjourn, are there any other issues

15   we should take up before going off the record?

16       I'll start with the plaintiffs.  Mr. DeJong?

17           MR. DEJONG:  Your Honor, how would you like us --

18   assuming that there are parties who do not consent, how would

19   you like us to inform you of that fact?

20           THE COURT:  If you choose to consent, you can file

21   the form.  If you choose to not consent for now or ever, just

22   send Mr. Gale an email.  That way we won't be bugging you to

23   find out will you or won't you.  Then I'll know, and I'll know

24   how to proceed.

25           Thank you.

 1          MR. DEJONG:  The second thing I wanted to discuss

 2     briefly, if you have time, Your Honor, is the motion to

 3     intervene that was filed.

 4          THE COURT:  Yes.

 5          MR. DEJONG:  It would be helpful, in my view, to

 6     resolving some potential issues with discovery from the law

 7     firm defendants if we can get those issues resolved sooner

 8     rather than later.  So the motion to intervene was filed.  It

 9     is not opposed by any of the parties in the case.  There --

10     each party either took no position or stated that they didn't

11     oppose it.

12          THE COURT:  Right.  But the motion raises two issues.

13     Whether they should be allowed to intervene, that seems pretty

14     easy to sort out.

15          MR. DEJONG:  Yes.

16          THE COURT:  But then the substantive issue they've

17     raised; right?

18          MR. DEJONG:  Yes.

19          THE COURT:  I haven't heard from anybody else on that

20     yet because the motion is so recent.

21          MR. DEJONG:  They have told us that they are going to

22     file a motion for protective order, which I think they're

23     waiting for Your Honor to grant them permission to intervene so

24     that they can file it.  That's what I was going to encourage

25     Your Honor to address, was the pending motion to intervene, so

1   we don't have that holding up their filing of the protective

2   order.

3              THE COURT:  So since everyone is here, is there

4   anyone who opposes the motion to intervene?

5        All right.  Which is consistent so far with the

6   representations in the motion.  So I will grant that by minute

7   order.  Then the intervening parties can go ahead and file

8   their motion, and we can get that moving forward.

9              MR. DEJONG:  Thank you.

10             THE COURT:  Anything else?

11             MR. DEJONG:  No, Your Honor.

12             THE COURT:  Mr. Wald, anything else?

13             MR. WALD:  No, Your Honor.  Thank you.

14             THE COURT:  Ms. Coberly?

15             MS. COBERLY:  No, Your Honor.  Thank you.

16             THE COURT:  Anyone else have anything to raise before

17  we adjourn?

18       All right.  Seeing no one step forward, we are adjourned.

19  Thank you.

20             DEPUTY COURTROOM CLERK:  Court is adjourned.

21                   (Hearing concluded.)

22

23

24

25

C E R T I F I C A T E


Lawrence P. Ciuffitelli v. Deloitte & Touche LLP

3:16-cv-00580-AC

ORAL ARGUMENT

November 4, 2016


I certify, by signing below, that the foregoing is a

true and correct transcript of the record, taken by

stenographic means, of the proceedings in the above-entitled

cause.  A transcript without an original signature, conformed

signature, or digitally signed signature is not certified.


/s/Jill L. Jessup, CSR, RMR, RDR, CRR
_____

Official Court Reporter       Signature Date: 11/21/16
Oregon CSR No. 98-0346        CSR Expiration Date:  3/31/17