UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>DELOITTE & TOUCHE LLP, EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,<br><br>　　　　　　　　Defendants. | Case No. 3:16-cv-0580-AC<br><br>OPINION AND ORDER |

ACOSTA, Magistrate Judge:

Page 1 - OPINION AND ORDER

*Introduction*

Intervening parties Robert Jesenik, Brian Oliver, and Scott Gillis (collectively, "Intervenors") move for a protective order requiring defendant law firms Sidley Austin LLP ("Sidley") and Tonkon Torp LLP ("Tonkon") (collectively, "the law firm defendants") to allow Intervenors to review documents in each of the law firm defendants' possession. Intevenors seek review of these documents so that they may determine if any of those documents are protected by the attorney-client privilege. Intervenors wish to conduct this review before Sidley and Tonkon produced any documents in this case, and they propose both protocols and a time line for their document review.[1]

Because Intervenors, and each of them, have failed to demonstrate the existence of a attorney-client relationship with either of the law firm defendants, the court denies Intervenors' motion.

*Background*

I.   The Lawsuits.

Plaintiffs filed this securities fraud lawsuit against an international accounting firm, an international law firm, a national accounting firm, an Oregon law firm, a national stock trading firm, and a bank, alleging that each of them participated in and aided the Aequitas group of companies' ("Aequitas companies") sale of securities through material misrepresentations and omissions. (ECF No. 1 (Complaint), at ¶ 1; ECF No. 57 (First Amended Complaint), at ¶ 1.) Plaintiffs served on each of the defendants in this lawsuit extensive requests for production all of which have been the subject of motions for protective orders. The court already has ruled on those motions. (*See* ECF No. 174

---

[1] Intervenors' motion for protective order is ECF No. 196. The court previously granted (ECF No. 164) Intervenors' motion (ECF No. 157) to intervene for the purpose of moving for a protective order.

Page 2 - OPINION AND ORDER

(granting in part and denying part motions for protective order filed by defendants Deloitte & Touche LLP, and EisnerAmper LLP); ECF No. 213 (granting in part and denying in part motions for protective order filed by defendants Sidley; TD Ameritrade, Inc.; and Integrity Bank & Trust).)

Intervenors are former executives of one or more Aequitas companies and defendants in a separate lawsuit, *Securities and Exchange Commission, et al. v. Aequitas Management, LLC, et al.*, Case No. 3:16-cv-00438-PK, filed in this district on March 10, 2016 ("*SEC* lawsuit"). Specifically, Jesenik formerly served as Chief Executive Officer, Chief Investment Officer, and President of certain Aequitas companies; Oliver formerly served as Executive Vice President of "at least one" Aequitas company; and Gillis formerly served as Executive Vice President, Chief Operating Officer, and Chief Financial Officer of certain Aequitas companies. Jesenik and Oliver also are part owners in Aequitas Management, LLC, the lead defendant in the *SEC* lawsuit. All three Intervenors are alleged to have engaged in a "scheme to defraud and misuse client assets in connection with investments offered through the Aequitas group of companies[.]" (*SEC* lawsuit, ECF No. 1, at 1.)

II.     The Intervenors' Requested Protective Order.

Based on a claim of individual attorney-client privilege, Intervener ask the court in this case to enter a protective order requiring both Sidley and Tonkon to:

> (a) identify among any documents that are responsive to Plaintiffs' discovery requests certain e-mail communications and other electronically searchable documents using the e-mail addresses and search terms set forth in the Proposed Protective Order attached hereto as Exhibit 1; (b) withhold the documents identified using these e-mail addresses and search terms from production to Plaintiffs (the "Provisionally Withheld Documents"); and © allow the Individuals 45 days to review the Provisionally Withheld Documents to identify those that are subject to personal claims of privilege, and 15 additional days to produce a privilege log to Sidley and/or Tonkon and to Plaintiffs. After this 60-day review and log period has passed, Sidley and Tonkon would be permitted to produce to Plaintiffs any of the Provisionally Withheld Documents not contained on the log of any Individual. Sidley and Tonkon could

Page 3 - OPINION AND ORDER

produce any other documents to the Plaintiffs without prior review by the Individuals (the "Directly Produced Documents"), subject to claw-back by the Individuals following another 60-day review and log period to determine whether any personal claims of privilege may exist over those documents.

(ECF No. 196, at 3-4.)

III. The Parties' Positions.

Intervener assert that a protective order is necessary so that they may review documents from Sidley's and Tonkon's respective files to determine whether any of those documents are subject to "personal claims of privilege by one or more" of them. (ECF No. 196, at 2-3.) Intervenors observe that Sidley represented certain Aequitas companies in the SEC's investigation and claim that Tonkon represented certain Aequitas companies "in connection with other matters involving one or more of the [Intervenors], including litigation in which one or more of the [Intervener] was named as a defendant and/or received advice from Tonkon in connection with the litigation." (ECF No. 196, at 4-5.) Intervenors also assert that "[o]ne or more of the [Intervenors] sought, and received, confidential legal advice concerning his personal rights and potential liability from in-house and outside counsel for the Receivership Entities, including from Tonkon and Sidley lawyers, among others." (ECF No. 196, at 5.)

Plaintiffs oppose the Intervenors' motion because, they argue, "Intervenors have not satisfied their burden to establish that any individual privilege exists as to either law firm[.]" (ECF No. 204, at 1.) Plaintiffs observe that Intervenors have provided no evidence to support the existence of the attorney-client privilege between any of them and Sidley or Tonkon. (ECF No. 204, at 2.) Even Jesenik's offering of a declaration from his attorney, Plaintiffs note, is unaccompanied by any documents, such as a joint-defense agreement, containing or describing privileged communications

Page 4 - OPINION AND ORDER

between Jesenik and any Sidley or Tonkon attorney. (ECF No. 204, at 4.) Intervenors' failure to show an attorney-client relationship exists, Plaintiffs contend, results in an absence of good cause to support entry of the protective order Intervenors seek. (ECF No. 204, at 2.)

Sidley also opposes Intervenors' motion. It firsts notes the "significant burden" Intervenors' request would impose, because the overbroad proposed search terms implicate "more than 150,000 pages of documents," a number still expanding as Sidley continues to collect documents relevant to the issues in this case. (ECF No. 205, at 2, 6, 7.) Sidley next challenges that an attorney-client privilege exists at all, first noting that Intervenors' motion only "presupposes that such a privilege exists." (ECF No. 205, at 7.) Sidley observes that at least two of the Intervenors, Oliver and Gillis, "do not even claim that they had an individual attorney-client relationship with Sidley," or even have set forth the nature and scope of the claimed privilege. (ECF No. 205, at 2-3, 6, 7.) Sidley also observes that none of the Intervenors have provided supporting documents, such as an engagement letter – which, Sidley states, it never entered into with any of the Intervenors – or have identified even a single subject on which any of them sought or received legal advice. (ECF No. 205, at 3, 8.) Sidley lastly observes that none of the Intervenors have offered any argument or facts to support the legal test articulated in *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010) – which Intervenors cite as the controlling test to determine the existence of an attorney-client relationship in these circumstances. (ECF No. 205, at 8.)

Tonkon did not file a response to Intervenors' motion. Intervenors represented that Tonkon does not oppose their motion and takes no position whether any document Intervenors claim is privileged is, in fact, privileged. (ECF No. 196, at 1.) In October 2016, however, Tonkon's lawyers informed Intervenors' lawyers that Tonkon "believes it never entered into an attorney client

Page 5 - OPINION AND ORDER

relationship with any of the [Intervenors], and your August 30 [2016] letter does not contain any information that leads Tonkon to question its belief." (ECF No. 198-6, Page ID No. 2.)

*Legal Standard*

I.  Protective Orders.

A court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. FED. R. CIV. P. 26(c)(1). The party seeking the protective order must establish "specific harm or prejudice will result if no protective order is granted." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)(citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Good cause is generally a "heavy burden." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Phillips*, 307 F.3d at 1211 (citing *Seattle Times Co. v. Rhinehardt*, 467 U.S. 20, 36 (1984)).

II. Attorney-Client Privilege.

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)). Corporate officers or employees claiming the existence of a personal claim of attorney-client privilege over communications with the corporation's attorney must demonstrate that each of five factors is satisfied:

> First, they must show they approached counsel for the purpose of seeking legal advice. Second, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in

Page 6 - OPINION AND ORDER

their representative capacities. Third, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with counsel were confidential. And fifth, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*United States v. Graf*, 610 F.3d 1148, 1159-60 (9th Cir. 2010) (quoting *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir. 1986); adopting "the *Bevill* test" and noting that the First, Second, and Tenth Circuits also have adopted the test). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 132 F.3d at 507 (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

*Analysis*

Intervenors correctly cite the *Graf* test as controlling their privilege claims, but they offer no facts or analysis to meet their burden under *Graf* and demonstrate that they each have an attorney-client relationship with Sidley or Tonkon. The litigants do not dispute that Sidley represented certain Aequitas companies during the SEC's investigation, but that fact is irrelevant under *Graf* to whether an individual attorney-client privilege exists. In fact, none of the Intervenors asserts he asked Sidley to represent him personally regarding the events at issue in this lawsuit. This failure, by itself, is sufficient to find Intervenors do not satisfy *Graf's* requirements. *See Graf*, 610 F.3d at 1162 ("Graf's admission at the pre-trial motion hearing that he never requested that the Alexander Firm represent him personally causes him to fail the second and third *Bevill* factors.").

Furthermore, none of the Intervenors makes any attempt to show through their own or a Sidley lawyer's declaration, an engagement letter or retainer agreement (which, as relevant evidence, *see Graf*, 610 F.3d at 1162), a confirming email, or a billing entry (which, as relevant evidence, *see*

Page 7 - OPINION AND ORDER

*Graf*, 610 F.3d at 1161, 1162), that any Sidley lawyer explicitly agreed to and did give them legal advice in their individual capacities, knowing and despite the clear conflict of interest a Sidley lawyer could create for the firm in doing so. No Intervenor claims he paid for personal legal advice from Sidley, another factual indicator the *Graf* court considered in determining whether an attorney-client relationship existed. *Graf*, 610 F.3d at 1162. And none of the Intervenors provides any description or summary of the conversations – or even the general subject matter of the conversations – they claim to have had with any Sidley lawyer to show, under *Graf*, that their conversations were confidential and not merely about matters "within the company or the general affairs of the company."

Only Jesenik attempts to establish facts to support his claim of privilege regarding conversations with Sidley, but those facts are sparse and conclusory, and are not offered by Jesenik at all, but instead presented in summary fashion by his attorney. In his declaration (ECF No. 197) offered in support of the motion for protective order, Jesenik's attorney makes two assertions regarding Sidley: that at various times "during his tenure with the Aequitas companies," Jesenik "sought, and received, confidential legal advice concerning his personal rights and potential liability" from Sidley lawyers, and that a "joint defense and/or common interest agreement" existed between Sidley and Jesenik's former personal counsel, in connection with the SEC investigation. (ECF No. 197, at 4.) These conclusory assertions are not sufficient to support Jesenik's burden under *Graf* or overcome Sidley's clear denial that it ever represented any of the Intervenors and only underscore Jesenik's failure to produce evidence. The alleged joint defense agreements were not submitted for *in camera* review or otherwise, so the court cannot evaluate whether they support the attorney-client relationship Jesenik claims and entitles him to assert possible privilege as to the documents at issue.

Page 8 - OPINION AND ORDER

Furthermore, Jesenik's vague reference to conversations "during his tenure" with the Aequitas companies provides no basis for connecting those conversations to the *SEC* lawsuit or this lawsuit, or to distinguish those conversations from "matters within the company or the general affairs of the company" to which, as *Graf* instructs, a personal attorney-client privilege does not apply. And no information is provided that explains why the detail necessary under *Graf* could not have been provided here, either by Jesenik or his attorney, to demonstrate that *Graf's* requirements are met.

For the same reasons, Intervenors fail to support *Graf's* application to any communications they had with Tonkon. Again, only Jesenik attempts to support his position and, again, his attempt falls short of the line *Graf* draws. Jesenik's attorney, both in his declaration and at oral argument on Intervenors' motion, referred to two prior litigation matters in which Tonkon apparently represented Jesenik personally, as support for Jesenik's assertion that an attorney-client relationship exists with Tonkon and warrants application of the privilege to documents produced in this lawsuit. The first flaw in Jesenik's position is the absence of information about these lawsuits – case names, case numbers, the court or courts in which the lawsuits were filed, the subject matter of the lawsuit, or any other information – information that would allow the court and Plaintiffs to evaluate whether and to what extent the attorney-client relationship was created and, thus, determine whether the privilege applies to the documents at issue in this lawsuit.

The second flaw in Jesenik's position is its implicit premise that Tonkon's previous representation is enough to satisfy *Graf* or some part of it, but this a premise the *Graf* court rejected. There, Graf claimed the law firm represented him in two previous matters. The Ninth Circuit, assuming for purposes of its decision that the law firm did previously represent Graf personally, still found these facts insufficient because Graf had failed to "rebut [the law firm's] hearing testimony

Page 9 - OPINION AND ORDER

that the subject matter of the two representations was different and that they were separated by several years." *Graf*, 610 F.2d at 1162. Here, Jesenik offers no information about the two previous litigation matters that would allow the court to evaluate whether Tonkon's representation in either or both of those two previous matters support his claim of privilege regarding the documents in this lawsuit.

Finally, none of the Intervenors offers evidence to refute, contradict, or in any way call into question Sidley's and Tonkon's statements that they never entered into an attorney-client relationship with any of them. *Graf* provides instruction on this point. That case involved claims of financial fraud through the marketing and selling of health care insurance plans by a company and its affiliates that Graf founded and in effect operated. 610 F.3d at 1153-54. The United States indicted Graf on criminal charges and the U.S. Department of Labor filed a civil suit against him. *Id.* at 1152, 1153, 1154. A jury convicted Graf on the criminal charges and he appealed, claiming as one error the trial judge's ruling that he had no individual attorney-client relationship with the company's attorneys and, thus, they could testify at his criminal trial, which they did and unfavorably so. *Id.* at 1152, 1156. On appeal, the Ninth Circuit adopted the *Bevill* test and applied it to find Graf had no individual attorney-client privilege. As relevant supporting facts the court relied in part on the company's lawyers' statements that Graf never sought personal legal advice from them and never was their or their firm's client. *Id.* at 1161.

Intervenors here unsuccessfully labor against a similar disclaimer from Sidley and Tonkon, the attorneys they seek to call their own. They present no evidence to refute Tonkon's October 2016 denial that it ever entered into an attorney-client relationship with any of the Invenors. Similarly absent is evidence that refutes Sidley's representations, both in its response brief and at oral

Page 10 - OPINION AND ORDER

argument, that it never had an attorney-client relationship with any of the Intervenors. Thus, Intervenors clearly fail to support their burden under *Graf* on this point as well.

Intervenors have not met their heavy burden of showing good cause for the protective order they seek. They have not satisfied the requirements of the *Graf* test, which test they acknowledge controls the court's determination of their motion. Consequently, Intervenors have not demonstrated that an attorney-client privilege exists and warrants requiring the law firm defendants to shoulder the burden of time and expense their protective order would impose.

*Conclusion*

For the reasons explained above, the Intervenors' Motion (ECF No. 196) for Protective Order is DENIED.

IT IS SO ORDERED.

DATED this ___1st___ day of March, 2017.

_____
JOHN V. ACOSTA
United States Magistrate Judge