1  **David B. Markowitz, OSB No. 742046**
   DavidMarkowitz@MarkowitzHerbold.com
2  **Chad M. Colton, OSB No. 065774**
   ChadColton@MarkowitzHerbold.com
3  **Jeffrey M. Edelson, OSB No. 880407**
   JeffEdelson@MarkowitzHerbold.com
4  MARKOWITZ HERBOLD PC
   1211 SW Fifth Avenue, Suite 3000
5  Portland, OR  97204-3730
   Telephone: (503) 295-3085
6  Fax:  (503) 323-9105

7  **Brad D. Brian (*admitted pro hac vice*)**
   brad.brian@mto.com
8  **Bruce A. Abbott (*admitted pro hac vice*)**
   bruce.abbott@mto.com
9  **Zachary M. Briers (*admitted pro hac vice*)**
   zachary.briers@mto.com
10 **Kevin L. Brady (*admitted pro hac vice*)**
   kevin.brady@mto.com
11 MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue
12 Fiftieth Floor
   Los Angeles, CA  90071-3426
13 Telephone:    (213) 683-9100
   Fax:          (213) 687-3702
14
   Attorneys for Defendant Sidley Austin LLP
15

16                    UNITED STATES DISTRICT COURT

17                      DISTRICT OF OREGON,

18                       PORTLAND DIVISION

19

20  LAWRENCE P. CIUFFITELLI, for himself          Case No. 3:16-cv-00-580-AC
    and as Trustee of CUIFFITELLI
21  REVOCABLE TRUST, *et al.*,                    **STIPULATED ESI PROTOCOL**

22              Plaintiffs,

23        vs.

24  DELOITTE & TOUCHE LLP, *et al.*,

25              Defendants.

26

27

28

---

STIPULATED ESI PROTOCOL

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") and production of documents in this matter:

1.      This Stipulation supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.      This Stipulation may be modified for good cause.

3.      A party's meaningful compliance with this Stipulation and efforts to promote efficiency and reduce costs will be considered in any cost-shifting determinations. Likewise, a party's nonresponsive or dilatory discovery tactics will be considered in such cost-shifting determinations.

4.      After receiving a request for document production and agreeing or being ordered to produce such documents, the producing party shall conduct a reasonable and good faith search for responsive documents and ESI.

5.      With respect to ESI that the parties agree or are required to produce in this matter, including any further ESI required by the Court's February 21, 2017 order (Dkt. No. 213), each producing party shall timely propose and attempt to reach agreement with the requesting party on the following search parameters:

        a.      Sources and time frame. The sources of documents and files to be collected, searched and reviewed, as well as the time frame for any such documents and files.

        b.      Custodians. The custodians from whom collection will occur, identified by name and title.

        c.      Non-custodial data sources. A list of the non-custodial data sources, if any, containing non-duplicative discoverable information that will also be collected.

        d.      Search terms. The search terms, if any, to be used to identify potentially relevant documents and files for review.

6.      In the absence of agreement on the search parameters in Paragraph 5, the producing party shall disclose, at the requesting party's request, the parameters used for its search at or near the time of production.

-1-
STIPULATED ESI PROTOCOL

1    7.    Any agreement on search parameters under Paragraph 5 shall not (1) affect a

2 producing party's obligation (in responding to discovery requests) to produce ESI of which it is

3 aware; (2) affect a requesting party's right to seek discoverable ESI based on later discovery of

4 additional facts indicating that agreed-upon search parameters were not sufficient to capture

5 relevant ESI that is proportional to the needs of the case; and/or (3) limit a requesting party's right

6 to request that a producing party undertake targeted pulls for specific ESI that are proportional to

7 the needs of the case.  Notwithstanding the foregoing, the producing party reserves its right to

8 object to any such additional requests.

9    8.    Nothing in this Stipulation shall modify the procedures for contesting a claim of

10 privilege or work-product protection established in the Stipulated Protective Order in this matter

11 (Dkt. No. 156).

12    9.    Pursuant to Federal Rule of Evidence 502(d) and the Stipulated Protective Order

13 in this matter (Dkt. No. 156), the inadvertent production of a privileged or work product

14 protected ESI is not a waiver in the pending case or in any other federal, state, or arbitration

15 proceeding.

16    10.    The mere production of ESI in a litigation as part of a mass production shall

17 not itself constitute a waiver for any purpose.

18    11.    The parties acknowledge that they have a common-law obligation to take

19 reasonable and proportional steps to preserve discoverable information in the party's possession,

20 custody or control.

21    12.    Absent a showing of good cause by the requesting party, the parties shall not be

22 required to modify the procedures used by them in the ordinary course of business to back-up and

23 archive data; provided, however, that the parties shall preserve all discoverable ESI in their

24 possession, custody or control.

25    13.    Absent a showing of good cause by the requesting party, the following categories

26 of ESI need not be preserved or, if preserved, searched for purposes of production:

27        a.    Deleted, slack, fragmented, or other data only accessible by forensics.

28        b.    Random access memory (RAM), temporary files, or other ephemeral data

1    that are difficult to preserve without disabling the operating system.

2          c.      On-line access data such as temporary internet files, history, cache,

3    cookies, and the like.

4          d.      Data in metadata fields that are frequently updated automatically, such as

5    last-opened dates.

6          e.      Back-up and archival data that are substantially duplicative of data that are

7    more accessible elsewhere.

8          f.      Server, system or network logs.

9          g.      Data remaining from systems no longer in use that is unintelligible on the

10    systems in use.

11          h.      Logs of calls made from mobile devices.

12          i.      Server, system, or network logs.

13      14.      Absent a showing of good cause by the requesting party, the following categories

14    of ESI need not be searched for purposes of production:[1]

15          a.      Electronic data (e.g., email, calendars, contact data, and notes) sent to or

16    from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices).

17          b.      Text messages, instant messages, and voice messages.

18          c.      Any ESI created after April 4, 2016.

19      15.      The parties need not preserve or produce drafts of expert reports (partial or

20    complete), notes, and other evidence of communications with experts on the subject of the expert's

21    actual or potential testimony.

22      16.      The parties need not produce communications between counsel and expert

23    witnesses, communications between an expert and others, including staff members, who work at

24    the direction of the expert to support the expert, or drafts of expert reports.

25      17.      The parties agree to confer regarding the nature and scope of privilege logs for the

26    case, including whether categories of information may be excluded from any logging requirements

27

28    _____

[1] Nothing in this Stipulation shall modify the applicable law governing the preservation of the ESI categories identified in Paragraph 14.

STIPULATED ESI PROTOCOL

1    and whether alternatives to document-by-document logs can be exchanged, including whether

2    metadata and/or category logs would be appropriate.

3        18.    With respect to privileged or work-product information generated after the filing of

4    the complaint, the parties are not required to preserve or produce such information, and are not

5    required to include any such information in privilege logs.  In addition, privileged or work-product

6    information created by or on behalf of outside counsel and communications with litigation

7    counsel, regardless of their date, do not need to be included on any privilege log.

8        19.    Absent special circumstances, the parties will prepare their production of

9    documents in accordance with the agreed-upon specifications set forth in this Stipulation.  If

10    special circumstances require a party to materially deviate from the specifications set forth in this

11    Stipulation, that party shall provide notice of the deviation at or promptly after the time of

12    production.[2]

13        20.    Documents in paper format that exist only in hard copy format and are therefore

14    unavailable electronically should be produced as kept in the usual course of business (including

15    any original folders, binders, covers or containers) with the following specifications:

16        a.    TIFFs.  Hard copy documents should be produced in the form of single-

17    page, Group IV TIFFs at 300 dpi.  Insofar as practicable, original documents containing color can

18    be produced as single page, 300 dpi JPG images with JPG compression and a high quality setting

19    as to not degrade the original image.  Each TIFF or JPG image should be named as its

20    corresponding Bates number.  Original document orientation should be maintained (i.e., portrait to

21    portrait and landscape to landscape).  TIFF and JPG image files should be provided in a self-

22    identified "Images" folder.

23        b.    OCR Text Files.  Optical Character Recognition ("OCR") text files shall

24    be provided as a single text file for each document, not one text file per page.  Each file should be

25    named with the beginning Bates number that is assigned to its corresponding document, followed

26    by ".txt".  OCR text files should be provided in a self-identified "Text" directory.  To the extent a

27    

28    [2] The parties reserve their rights to discuss additional technical issues relating to the form of
production with the requesting party before making any such production.

-4-

STIPULATED ESI PROTOCOL

1   document is redacted, OCR text files for such a document shall not contain text for redacted

2   portions.  The OCR software shall maximize text quality over process speed.  For example, if

3   available, settings such as "auto-skewing" and "auto-rotation" should be turned on during the

4   OCR process.

5              c.        Database Load Files / Cross-Reference Files.  Unless otherwise agreed to

6   by the parties, documents should be provided with Concordance-compatible image and data load

7   files (i.e., .OPT and DAT files) using standard Concordance delimiters.  Concordance-compatible

8   image and data load files (i.e., .OPT and DAT files) should be provided in a self-identified "Data"

9   folder.

10             d.        Coding Fields.  Absent special circumstances, documents should be

11  produced with at least the following searchable information in accompanying delimited data files:

12  BegBates; EndBates; BegAttach; EndAttach; Custodian; Confidentiality; Page Count; and

13  TextLink.  Entity/Departmental custodians should be identified with a description of the entity or

14  department from which the data originated (e.g., Acme_SharedDrive).  A producing party shall

15  use a uniform description of a particular custodian across productions.  Multiple custodians in the

16  "Custodian" field shall be separated by a semicolon.

17             e.        Production Numbering.  Each TIFF image should be assigned a production

18  number that:  (1) is unique across the entire document production; (2) maintains a constant length

19  across the entire production (i.e., padded to the same number of characters); (3) contains no

20  special characters or embedded spaces; and (4) is sequential within a given document.  If a

21  production number or set of productions numbers is skipped in a production, the producing party

22  will so note in a cover letter or production log accompanying the production.

23             f.        Parent-Child Relationships.  Absent special circumstances (e.g., claims of

24  privilege or work product) or undue burden, Parent-child relationships (i.e., the association

25  between an attachment and its parent document) should be preserved.  For example, if a party

26  produces a printout of an email with its attachments, such attachments should be produced behind

27  the email in the order in which they were attached and identified as child documents to the parent

28  email.

STIPULATED ESI PROTOCOL

1          g.          Folders.  If a folder with documents is produced, the label of that folder

2  should be scanned and produced along with the documents in the folder.

3          h.          Unitization of Documents.  In general, the producing party shall make best

4  efforts to ensure that scanned, hard copy documents are logically unitized.  If the documents are

5  not logically unitized, documents should be unitized based on physical boundaries (staples, clips

6  etc.).

7      21.      Documents in electronic format should be produced with the following

8  specifications:

9          a.          TIFFs.  Documents should be produced in the form of single-page, Group

10  IV TIFFs at 300 dpi.  Each TIFF or JPG image should be named as its corresponding Bates

11  number.  Absent special circumstances or undue burden, original document orientation should be

12  maintained (i.e., portrait to portrait and landscape to landscape).  To the extent technically feasible

13  without undue burden, TIFFS or JPGS will show all text and images which would be visible to the

14  reader using the native software that created the document.  For example, TIFFS of email

15  messages should include the BCC line.  PowerPoint documents shall be processed with hidden

16  slides and all speaker notes unhidden, and shall be processed to show both the slide and the

17  speaker's notes on the image, and Word documents shall be processed to show tracked changes.

18  TIFF and JPG image files should be provided in a self-identified "Images" folder.

19          b.          System/Program Files.  Common system and program files as defined by

20  the NIST library (which is commonly used by e-discovery vendors to exclude system and program

21  files from document review and production) need not be processed, reviewed or produced.

22  Common date file types (e.g., pdf's, text and Word/Excel/PPT files and form email messages in

23  program file paths on devices such as PC's) also need not be processed, reviewed, or produced

24  unless there is evidence that such files are user-created.

25          c.          De-Duplication.  A party is only required to produce a single copy of a

26  responsive document, and a producing party will de-duplicate responsive ESI across custodians

27  using commercially acceptable e-Discovery software that utilizes either MD5 or SHA1

28  cryptographic hash values to de-duplicate ESI (at the document (i.e., parent) level).  Additionally,

1   (1) attachments to emails shall not be eliminated from their parent emails, (2) attachments to

2   emails shall not be eliminated as duplicates of responsive non-email ESI, and (3) hard copy

3   documents shall not be eliminated as duplicates of responsive ESI.  Removal of near-duplicate

4   documents is not acceptable.  However, the parties may de-duplicate emails in such a way as to

5   eliminate earlier or incomplete chains of emails and therefore produce only the most complete

6   iteration of an email chain ("email thread suppression").  If a producing party utilizes such email

7   thread suppression for its productions, it shall notify the receiving party of such use.  The identity

8   of the primary custodian must be listed in the "Custodian" field.  Entity/Departmental custodians

9   should be identified with a description of the entity or department from which the data originated

10  (e.g., Acme_SharedDrive).  A producing party shall use a uniform description of a particular

11  custodian across productions.  Multiple custodians in the "Custodian" field shall be separated by a

12  semicolon.  If de-duplicated copies are removed from a production because they are exact

13  duplicates of previously produced documents, a metadata overlay DAT file updating any

14  Custodian field values for the already produced document should be provided at reasonable

15  intervals.

16          d.      Parent-Child Relationships.  Absent special circumstances (e.g., claims of

17  privilege or work product) or undue burden, parent-child relationships (i.e., the association

18  between an attachment and its parent document) should be preserved.

19          e.      Metadata Fields and Processing.  Absent special circumstances, each of the

20  metadata and coding fields set forth in Appendix 1 that can be extracted from a document shall be

21  produced for that document, to the extent already in existence and reasonably accessible.  To the

22  extent that metadata does not exist, is not reasonably accessible, or would present an undue burden

23  to produce, nothing in this ESI Protocol shall require any party to extract, capture, collect or

24  produce such data.  Nor shall any party have an affirmative obligation to research or track down

25  any alleged issues in connection with the metadata fields in Appendix 1, absent a clear and

26  convincing showing of relevance of the underlying data.  The parties are not obligated to populate

27  manually any of the fields in Appendix l if such fields cannot be extracted from a document, with

28  the exception of the following fields (which may be populated by the party or the party's vendor):

1   (l) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) Custodian; (6) Confidentiality; (7)

2   TextLink; and (8) NativeLink (if applicable).

3              f.         Extracted Text Files.  For each document, an extracted text file should be

4   provided along with its corresponding TIFF image file(s) and metadata.  The file name of each

5   extracted text file should be identical to that of the first image page of its corresponding document,

6   followed by ".txt".  File names should not contain any special characters or embedded spaces.

7   The text of native files should be extracted directly from the native file.  However, if a document

8   has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

9              g.         Database Load Files / Cross-Reference Files.  Unless otherwise agreed to

10  by the parties, documents should be provided with Concordance-compatible image and data load

11  files (i.e., .OPT and DAT files) using standard Concordance delimiters.  Concordance-compatible

12  image and data load files (i.e., .OPT and DAT files) should be provided in a self-identified "Data"

13  folder.

14             h.         Native Files.  Absent special circumstances, Excel files and/or .csv files

15  should be produced in native format ("Native Files").  Native Files should be provided in a self-

16  identified "Native" directory.  Each Native File should be produced with a corresponding single-

17  page TIFF placeholder image, which will contain language indicating that the document is being

18  produced as a Native File and will include the assigned bates number and confidentiality

19  designation, if any.  Native Files should be named with the beginning Bates number that is

20  assigned to that specific record in the production.  A "NativeLink" entry for each Native File

21  should be included in the DAT load file indicating the relative file path to each Native File on the

22  production media.  Native Files should be produced with extracted text and applicable metadata

23  fields as set forth in Appendix 1.  For documents that require redactions, the parties may apply the

24  redactions directly on the native file itself, but shall also produce TIFF image files with burned in

25  redactions.  If a Native File is used at a deposition or hearing in this Action, or attached to a

26  motion or other filing, it shall be accompanied by its production number-stamped placeholder

27  TIFF image in order to facilitate tracking and authentication thereof.

28             i.         Structured Data.  To the extent responding to a discovery request requires

STIPULATED ESI PROTOCOL

1    production of ESI contained in a database, the producing party may query the database for

2    discoverable information and generate and produce a report in a reasonably usable and exportable

3    electronic format (e.g., in Excel or .csv format).  The first line of each such file will, to the extent

4    possible, show the column headers for each field of data included.  The parties shall meet and

5    confer to finalize the appropriate data extraction and production format for specific information

6    contained in a database.

7              j.          Audio and Video Files.  Audio and video files, to the extent their contents

8    can be determined to be responsive, will be produced in a reasonably usable form as may be

9    agreed upon by the parties along with a slip-sheet TIFF placeholder image to the extent the file

10   gets produced in native form.

11             k.          Requests for Other Native Files.  Other than as specifically set forth above,

12   a producing party need not produce documents in native format.  If good cause exists for the

13   receiving party to request production of certain documents in native format, the receiving party

14   may request production in native format by providing:  (1) a list of the Bates numbers of

15   documents it requests to be produced in native format; and (2) an explanation of the need for

16   reviewing such documents in native format.  The producing party shall not unreasonably deny

17   such requests.  Each document produced in response to such requests shall be produced with a

18   "NativeLink" entry in the DAT load file indicating the relative file path to each Native File on the

19   production media and all extracted text and applicable metadata fields set forth in Appendix 1.

20             l.          Confidentiality Designations.  If a receiving party reduces to hard copy

21   form Native Files or other ESI designated "Confidential," it shall mark the hard copy with the

22   appropriate designation and so indicate in a "Confidential" metadata field.

23             m.          Color.  Documents containing color need not be produced in color in the

24   first instance.  However, if good cause exists for the receiving party to request production of

25   specific documents in color, the receiving party may request production of such documents in

26   color by providing (1) a list of the Bates numbers of documents it requests to be produced in color

27   format; and (2) an explanation of the need for production in color format.  The producing party

28   shall not unreasonably deny such requests.

1          n.          Encryption.  To maximize the security of information in transit, any media

2    on which documents are produced may be encrypted by the producing party.  In such cases, the

3    producing party shall transmit the encryption key or password to the requesting party, under

4    separate cover, contemporaneously with sending the encrypted media.

5          o.          Password Protected Files.  The producing party shall make best efforts

6    either to (1) produce to the receiving party passwords or any other security protection for locked

7    ESI documents, or (2) remove security protections from the ESI documents and produce a copy

8    without the security protections.  For good cause, a receiving party reserves the right to discover

9    information regarding the security protection as to any ESI documents that are produced.

10          22.     A party that issues a non-party subpoena shall include a copy of this Stipulation

11    with the subpoena and request that the non-party produce documents in accordance with the

12    specifications set forth herein.  If a party issued a non-party subpoena prior to the execution of this

13    Stipulation, and the non-party has not yet finished producing documents in response to the

14    Subpoena, that party shall promptly forward a copy of this Stipulation to the non-party and request

15    that the non-party produce documents in accordance with the specifications set forth herein.

16          23.     The issuing party is responsible for producing any documents obtained pursuant to

17    a subpoena to all other parties.  To the extent practical given the data volume, productions by a

18    non-party shall be produced by the issuing party to all other parties within 14 days of the non-

19    party's production to the issuing party.  Reproductions or productions acquired from third parties

20    may be produced in the electronic format that they were originally produced or received from the

21    third party, and need not otherwise be produced in accordance with the terms of this Stipulation.

22    If a third party produced documents without production numbers, then the party who sought

23    discovery from the third party shall produce the reproduction or production with a unique

24    production number.

25          24.     Nothing in this Stipulation is intended to or should be interpreted as narrowing,

26    expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

27          25.     Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant

28    information or relevant information protected by the attorney-client privilege, work product

1   doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections

2   as to the production, discoverability, admissibility, or confidentiality of documents and ESI.  All

3   productions are subject to the Stipulated Protective Order entered by the Court in this action

4   (Dkt.No. 156).

5        26.     Nothing in this Stipulation shall be construed to affect the discoverability or

6   admissibility of any document (including ESI).

7        27.     The parties shall make good-faith efforts to comply with and resolve any

8   differences concerning compliance with this Stipulation.  If a producing party, notwithstanding its

9   good-faith efforts, cannot substantially comply with any material aspect of this Stipulation or if

10  compliance with such material aspect would be unreasonable, such party shall inform the

11  receiving party in writing as to why compliance with the Stipulation is impossible or unreasonable

12  as soon as reasonably practicable.  No party may seek relief from the Court concerning a dispute

13  over compliance with the Stipulation unless it has conferred with the other parties to the litigation

14  that are directly involved in such dispute.

15       28.     Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the parties agree to service by email instead

16  of personal service or service by U.S. Mail.

17       29.     Nothing in this Stipulation shall affect, in any way, a producing party's right to

18  seek reimbursement for costs associated with collection, review, and/or production of documents

19  or ESI.

20       30.     Nothing in this Stipulation shall preclude the parties from meeting and conferring

21  regarding applicable search terms, date ranges, custodians, and other parameters or methods to be

22  used to cull data for review and production, including the use of technological solutions such as

23  intelligent review or predictive coding.

24

25

26

27

28

STIPULATED ESI PROTOCOL

1  SO STIPULATED AND SUBMITTED BY:

2  GARVEY SCHUBERT BARER                    STOLL STOLL BERNE LOKTING &
                                            SHLACHTER P.C.
3

4                                           By:          s/ Timothy S. DeJong
   Robert C. Weaver, Jr., OSB No. 801350          Keith A. Ketterling, OSB No. 913368
5  Gary I. Grenley, OSB No. 751380                Timothy S. DeJong, OSB No. 940662

6  121 SW Morrison St., 11th Fl.            209 SW Oak St., Suite 500
   Portland, OR 97204                       Portland, OR 97204
7  Tel.:  (503) 228-3939                    Tel:    (503) 227-1600
   Email: rweaver@gsblaw.com                Email: kketterling@stollberne.com
8         ggrenley@gsblaw.com                       tdejong@stollberne.com
          ptrinchero@gsblaw.com
9                                           -And-

10 -And-

11 LATHAM & WATKINS                         HAGENS BERMAN SOBOL & SHAPIRO LLP

12 By:      s/ Gavin M. Masuda
13 Peter A. Wald, pro hac vice                   Steve W. Berman, pro hac vice
   Gavin M. Masuda, pro hac vice                 Karl P. Barth, pro hac vice
14
   505 Montgomery Street, Suite 2000       1918 Eighth Avenue, Suite 3300
15 San Francisco, CA 94111-6538            Seattle, WA 98101
16 Tel:    (415) 391-0600                  Tel:    (206) 623-7292
   Email: peter.wald@lw.com                Email: steve@hbsslaw.com
17        gavin.masuda@lw.com                     karlb@hbsslaw.com

18 **Attorneys for Defendant Deloitte & Touche** -And-
19 **LLP**

20 K & L GATES LLP                          SAMUELS YOELIN KANTOR LLP

21 By:     s/ Philip S. Van Der Weele
22 Philip S. Van Der Weele, OSB No. 863650        Robert S. Banks, Jr., OSB No. 821862
   B. John Casey, OSB No. 120025                  Darlene D. Pasieczny, OSB No. 124172
23
   One SW Columbia St., Suite 1900         111 SW 5th Ave., Suite 3800
24 Portland, OR 97258                       Portland, Oregon 97204-3642
   Tel:    (503) 228-3200                   Tel.:   (503) 226-2966
25 Email: phil.vanderweele@klgates.com      Fax:    (503) 222-2937
          John.casey@klgates.com            Email: bbanks@samuelslaw.com
26                                                  darlenep@samuelslaw.com

27 **Attorneys for Tonkon Torp LLP**
                                            **Attorneys for Plaintiffs**
28

                                   -12-

| | |
|---|---|
| THE FERRANTI FIRM LLC | MARKOWITZ HERBOLD PC |

By:    **s/ William P. Ferranti**

William P. Ferranti, OSB No. 160069

David B. Markowitz, OSB No. 742046
Jeffrey M. Edelson, OSB No. 880407

1819 SW 5th Avenue, Suite 403
Portland, OR 97201
Tel:    (503) 877-9220
Email: wpf@ferrantiappeals.com

3000 Pacwest Center
1121 SW Fifth Avenue
Portland, OR  97204
Tel:    (503) 295-3085
Email: davidemarkowitz@markowitzherbold.com
           jeffedelson@markowitzherbold.com

-And-

-And-

WINSTON & STRAWN LLP

MUNGER, TOLLES & OLSON LLP

By:          **s/ Kevin L. Brady**

Linda T. Coberly, pro hac vice
Catherine W. Joyce, pro hac vice
Joanna Rubin Travalini, pro hac vice

Bruce A. Abbott, pro hac vice
Brad D. Brian, pro hac vice
Zachary M. Briers, pro hac vice
Kevin L. Brady, pro hac vice

35 West Wacker Drive
Chicago, IL 60601
Tel:    (312) 558-5600
Email: lcoberly@winston.com
           cjoyce@winston.com
           jtravalina@winston.com

350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel:    (213) 683-9100
Email: bruce.abbott@mto.com
           brad.brian@mto.com
           zachary.briers@mto.com
           kevin.brady@mto.com

**Attorneys for Defendant Eisner Amper LLP**

**Attorneys for Defendant Sidley Austin LLP**

LANE POWELL PC

HART WAGNER LLP

By:    **s/ Peter D. Hawkes**

Milo Petranovich, OSB No. 813376
Peter D. Hawkes, OSB No. 071986
Sree Vamshi C. Reddy, OSB No. 140560

Matthew J. Kalmanson, OSB No. 041280
Lindsay H. Duncan, OSB No. 120974

601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Tel:    (503) 778-2114
Email: petranovichm@lanepowell.com
           hawkesp@lanepowell.com
           reddyv@lanepowell.com

1000 SW Broadway, Suite 2000
Portland, OR 97205
Tel:    (503) 222-4499
Email: mjk@hartwagner.com
           lhd@hartwagner.com

-And-

**Attorneys for Integrity Bank & Trust**

-13-

STIPULATED ESI PROTOCOL

1   HARRANG LONG GARY RUDNICK    SUTHERLAND ASBILL & BRENNAN LLP
    P.C.
2

3   By:      **s/ Sharon A. Rudnick**          By:     **s/ Nicholas T. Christakos**
    Sharon A. Rudnick, OSB No. 830835          Bruce M. Bettigole, pro hac vice
4                                              Gail L. Westover, pro hac vice
    360 E. 10th Avenue, Suite 300              Nicholas T. Christakos, pro hac vice
5   Eugene, OR 97401-3273
    Tel:     (541) 485-0220                    700 Sixth St., Suite 700
6   Email: sharon.rudnick@harrang.com          Washington, DC 20001
                                               Tel:     (202) 383-0100
7                                              Email: bruce.bettigole@sutherland.com
                                                       gail.westover@sutherland.com
8                                                      nicholaschristakos@sutherland.com

9   **Attorneys for Duff & Phelps, LLC**
                                        **Attorneys for TD Ameritrade, Inc.**
10

11

12          Dated:          September 19, 2017

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

**APPENDIX 1**

**ESI Metadata and Coding Fields**

| Field | Description |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| End Attach | Ending document number of family unit |
| Custodian | All individuals from whom the document or a duplicate |
| AttachmentCount | Number of attached documents (not including parent) |
| Author | Author field extracted from the metadata of the native file |
| To | All recipients who were included on the "To" line of the e-mail |
| From | Sender of the e-mail |
| CC | All recipients who were included on the "CC" line of the e-mail |
| BCC | All recipients who were included on the "BCC" line of the e- |
| Email Subject | Email subject field extracted from the metadata of the native |
| SentDate/Time | Date and time the email was sent |
| ReceivedDate/Time | Date and time the email was received |
| DateLastModified | Date document was last edited |
| FileType | "Mail" or "attachment" or "individual file" |
| FileExtension | File extension of the document |
| FileName | Name of the original file extracted from the metadata of the |
| FileSize | File size in kilobytes (MB, KB, GB) |
| Title | Any value populated in the "Title" field of the document |
| TextLink | Relative file path to the text file for each document |
| NativeLink | Relative file path to each native file on the production media |
| Hash Value | MD5 or SHA-1 Hash Value, unique document identifier |
| Confidentiality | The designated level of confidentiality pursuant to the |

STIPULATED ESI PROTOCOL