**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jacob S. Gill**, OSB No. 033238
Email: jgill@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Steve W. Berman** (*pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (*pro hac vice*)
Email: karlb@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone:     (206) 623-7292
Facsimile:     (206) 623-0594

**Attorneys For Plaintiffs**
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the | Case No. 3:16-cv-00580-AC<br><br>**JOINT REPORT ON ESI DISCOVERY ISSUES** |

ANDREW NOWAK REVOCABLE LIVING
TRUST U/A 2/20/2002; WILLIAM
RAMSTEIN; and GREG WARRICK, for
himself and, with SUSAN WARRICK, as Co-
Trustees of the WARRICK FAMILY TRUST,
individually and on behalf of all others
similarly situated,

          Plaintiffs,

  v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; DUFF & PHELPS, LLC,

          Defendants.

In accordance with the Court's instructions at the July 25, 2017, telephone hearing, the parties have conferred regarding ESI discovery issues and present the following Joint Report to address outstanding issues between the parties at this time.

## I.     General ESI Protocol

All parties, including new defendant Duff & Phelps, LLC, have reached agreement on the terms of a Stipulated ESI Protocol. The Stipulated ESI Protocol will be filed separately.

The Stipulated ESI Protocol establishes a process for selecting search parameters but requires the parties to meet and confer separately about the specific search parameters for a particular defendant's specific document search (sources and time frame, custodians, non-custodial data sources, and search terms). The status of the parties' conferrals, including two disputes that require Court involvement, are discussed below.

## II.     Disputes as to Party-Specific ESI Discovery

Plaintiffs reached agreements with defendants Tonkon Torp LLP, EisnerAmper LLP, Deloitte & Touche LLP and Integrity Bank & Trust, as to the parameters for an initial ESI

search, with all parties reserving their rights with respect to potential subsequent searches. Plaintiffs and defendants Sidley Austin LLP and TD Ameritrade, Inc. were unable to reach agreement. The parties' respective positions as to those disputes are set forth below.

A.    **Sidley Austin LLP**

1.  **Plaintiffs' Position**

Plaintiffs and Sidley disagree as to both (1) Sidley's search obligations and (2) the scope of Sidley's production obligations. Whereas other defendants agreed to perform comprehensive ESI searches (Tonkon, Deloitte, EisnerAmper and Integrity), or at least to address now the parameters of a comprehensive ESI search to be performed later (Ameritrade), Sidley did neither. Sidley insists that ESI discovery must be limited to items 1-8 of the Court's February 2017 Order. Plaintiffs provided proposed comprehensive search terms, and also identified flaws in Sidley's limited search proposal. *See* Exhibit A. However, Sidley declined to discuss a broader set of search terms, even after the Second Amended Complaint was filed.

Plaintiffs believe that Sidley should be required to make a comprehensive production of documents, including ESI, relevant to the allegations of the Second Amended Complaint. Plaintiffs' comprehensive search terms should be adopted regardless whether Sidley is required to make a full production at this time. In the alternative, the protocol proposed by Sidley is insufficient even to comply with the Court's February 2017 Order and should be enhanced.

**Search Obligations**

Sidley has resisted discovery in this case for more than a year. Plaintiffs served discovery requests in September 2016, and Sidley was ordered to produce documents in February 2017. Per the February 2017 Order, emails were due for production in March 2017, when the attorney-client privilege issues were resolved. *See* Dkt. No. 215. Yet Sidley has

PAGE 2 **- JOINT REPORT ON ESI DISCOVERY ISSUES**

produced only a few documents (139 documents in total, which includes insurance policies and duplicate documents) and still has not produced any ESI pertaining to its own Aequitas-related services  The "1.5 million pages of documents" Sidley refers to below are of a subset of *Aequitas'* documents re-produced to plaintiffs that Sidley collected from *Aequitas'* files and produced to the SEC on behalf of its client, Aequitas, which documents include Aequitas emails, but not emails between Aequitas and Sidley.

Now, Sidley is the only defendant to decline to discuss comprehensive search terms. Sidley contends that a comprehensive set of search terms is premature until the pleadings are set and that the Court made this clear in the July 2017 telephone conference.  Plaintiffs have a different understanding.  The Court appeared to direct the parties to formulate a comprehensive set of search terms:  "So it seems to me, Mr. Brady, that you and the defendants can move forward to finalizing a set of ESI protocols that the defendants agree should be used to look for documents that are relevant to the claims asserted in the complaint. …  And those can be modified, it seems to me, as necessary based on additional allegations that appear in the second amended complaint when that is filed in September."  Tr. at 23:22-24:4.

Sidley made no effort to formulate such search terms.  Because plaintiffs have proposed comprehensive search terms that the majority of defendants agreed to (*see, e.g.*, Exhibit B), plaintiffs' search terms should be adopted (to be supplemented by Sidley, as necessary, to comply with its obligations to make full production).

## **Scope of Production**

The Court also provided guidance as to defendants' production obligations at this stage. The transcript of the July 2017 discovery conference reflects that the Court posed the question

"whether to move forward with discovery" (Tr. at 18:20-23), which suggests that the Court has

not ruled that the February 2017 Order continues to define the scope of discovery as to Sidley.

It is plaintiffs' understanding that the Court has not decided the appropriate scope of

discovery at this stage.  The Court suggested that the scope of production of ESI at this stage

might be broader than what was ordered before the motions to dismiss were resolved,

recognizing that "there is [not] much dispute about … what documents are or potentially are

implicated in the case" (Tr. at 23:17-21) and "even a dismissed party in this case, if there is to be

any, will have evidence that will bear on the claims and defenses that have been asserted or

argued" (Tr. 30:12-14).  Moreover, the Court's February 2017 Order was directed to the time

period before the motions to dismiss were resolved.  Those motions have now been resolved, and

plaintiffs have filed a 160-page Second Amended Complaint providing the additional detail

required by the Court.  With this amount of detail, there is even less dispute as to what

documents are implicated or potentially implicated in the case.

There is no reason to postpone discovery from Sidley at this point, or to limit discovery

to the items specified in the Court's February 2017 Order.  In ruling on Sidley's motion to

dismiss, the Court required that plaintiffs allege the specific misleading statements by ACOF and

allege facts connecting other services provided by Sidley to sales of securities other than ACOF.

Plaintiffs have done so.  The Second Amended Complaint identifies the misleading statements

by ACOF in paragraphs 153-157, and ties Sidley to all sales of securities by any Aequitas entity

on and after April 5, 2013, when Sidley issued a legal opinion required by Aequitas' auditor,

thereby enabling Aequitas to continue to sell securities.  SAC ¶192(d).  Plaintiffs also tie Sidley

to sales of AIOF-II securities (and roll over of AIPF investments into AIOF-II), Aequitas' "Note

Manufacturing" program (including sales of AMLF Notes in 2015), and other activities.  *See*

SAC ¶192(f)-(h); *see also* SAC ¶63 (discussing AMLF Notes and "Note Manufacturing"

Program).  Plaintiffs have pleaded broad claims against Sidley, and postponing discovery will

only cause unnecessary delay.

Sidley's discovery position is based upon the flawed premise that discovery from Sidley

is limited to the specific allegations that the Court upholds as sufficient to state an independent

claim.  Even with the 2015 changes to the discovery standard, the scope of discovery "is

construed broadly to encompass any matter that bears on, or that reasonably could lead to other

matters that could bear on, any issue that is or may be in the case."  *Wilson v. Decibels of Or.,*

*Inc.*, 2017 WL 393602 (Jan. 26, 2017) (Clarke, J.); *see also Oppenheimer Fund, Inc. v. Sanders*,

437 U.S. 340, 351 & n.12 (1978).  In *Oppenheimer Fund* (which was decided under an early

version of Rule 26 but is still cited today for the Rule 26 standard), the Supreme Court went on

to explain that "[c]onsistently with the notice-pleading system established by the Rules,

discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help

define and clarify the issues."  437 U.S. at 351 (citing *Hickman v. Taylor*, 329 U.S. 495, 500-01

(1947)).  The Advisory Committee's Notes to the 2015 amendments to Rule 26 explain that:

> The distinction between matter relevant to a claim or defense and matter relevant
> to the subject matter was introduced in 2000.  The 2000 Note offered three
> examples of information that, suitably focused, would be relevant to the parties'
> claims or defenses.  The examples were "other incidents of the same type, or
> involving the same product"; "information about organizational arrangements or
> filing systems"; and "information that could be used to impeach a likely witness."
> **Such discovery is not foreclosed by the [2015] amendments.  Discovery that is**
> **relevant to the parties' claims or defenses may also support amendment of**
> **the pleadings to add a new claim or defense that affects the scope of**
> **discovery**."

Fed R. Civ. P. 26 advisory committee's note to 2015 amendment (emphasis added.)

Plaintiffs' claim is that Sidley participated and aided in Aequitas' sales of securities.

Plaintiffs are entitled to discovery concerning both the acts of participation and aid that they

know of, which are pleaded in the Second Amended Complaint, and acts of participation and aid

that are presently unknown to plaintiffs.

## Compliance With February 2017 Order

Sidley's proposed search terms are inadequate even to identify the ESI responsive to the

Court's February 2017 Order. Sidley has not produced documents, including ESI, responsive to

topics **1** ("All transaction documents for the ACOF offering, including offering memoranda,

subscription agreements, articles of incorporation, bylaws, and LLC agreements."), **2** ("All

documents relevant to whether the ACOF offering was or was not exempt from registration."); **4**

("All documents Sidley sent to and received from any Aequitas company pertaining to the ACOF

offering."); **5** ("All documents Sidley sent to and received from the General Partner of the ACOF

fund, including documents regarding the preparation of the ACOF PPM."), **6** ("All documents

Sidley sent to and received from the Investment Advisor to the ACOF fund, including documents

regarding the preparation of the ACOF PPM."), **7** ("All documents Sidley sent to and received

from the Securities and Exchange Commission … relating to any inquiry or investigation of any

Aequitas company."), and **8** ("All documents Sidley sent to and received from any purchaser or

prospective purchaser of the ACOF securities.").

Sidley's proposed custodians are insufficient.  For items 1, 2, 4, 5, 6, and 8 of the

February 2017 Order, Sidley would limit its search to 6 custodians "who performed 10+ hours of

work relating to ACOF."  Exhibit C (Sidley initial list identifies custodians who performed 10+

hours of work relating to ACOF; same custodians as revised list).  The February 2017 Order

contains no such limitation.  Furthermore, item 5 extends to "all documents Sidley sent to and

received from the General Partner" and is not limited to ACOF documents.  Sidley proposes no

custodians to address the unlimited scope of that item.  With respect to item 6, Sidley proposes

five more custodians, but has not explained how those custodians were determined.

       With respect to item 2 of the February 2017 Order, the search terms proposed by Sidley

are not directed to registration or exemptions.  For example, none of the search terms includes

"exemption," "registration," or forms thereof, or any other term that would identify "all

documents relevant to whether the ACOF offering was or was not exempt from registration.  It is

Sidley's obligation, armed with its knowledge of and access to its own ESI, to implement search

terms that will ensure compliance with the Order, and to explain why its search terms will

identify those documents, not plaintiffs.

       Sidley acknowledges that item 6 of the February 2017 Order is not limited to ACOF-

related documents.  However, the additional search terms Sidley proposes for item 6 are

insufficient.  Sidley is obligated to produce all communications between Sidley and the

Investment Advisor, Aequitas Investment Management ("AIM").  AIM did not have its own

email domain; its employees used the general "@aequitascapital.com" email domain for emails.

Furthermore, Sidley proposes to search the names of only four individuals, but those four

individuals are not the only employees of AIM.  AIM was the manager and investment advisor

for both AIPF and AIOF-II, but those search terms are not included in Sidley's proposal.  Sidley

should be required to search all emails sent to or from the "@aequitascapital.com" email domain

and identify and produce all communications that are responsive to item 6.  That is the only way

to ensure compliance with the February 2017 Order.  Additionally, Sidley maintained a separate

billing matter for services provided to AIM.  *See* Exhibit D (title of the billing matter, "AIM –

1940 Act Compliance"); SAC ¶192(d) (alleging that Sidley participated and aided sales of all

securities by issuing a legal opinion regarding Aequitas' compliance with the 1940 Act). Sidley should produce all documents associated with that billing number that are responsive to item 6.

Item 5 of the February 2017 Order also is not limited to ACOF-related materials. Sidley is obligated to produce all communications between Sidley and the General Partner, which is Aequitas Capital Opportunities GP, LLC. The General Partner also has no unique email domain and its employees used the general "@aequitascapital.com" email domain for emails. Thus, as with item 6, the only way for Sidley to ensure compliance with the Order is to review all emails to or from the "@aequitascapital.com" email domain and identify responsive documents.

## 2. Sidley Austin LLP's Position

In discussions with Plaintiffs, Sidley has set forth its understanding that its current discovery obligations are governed by the Court's February 21 protective order. (*See* Opinion and Order, Feb. 21, 2017 [Dkt. No. 213].) This order granted in part Sidley's motion for a protective order, requiring Sidley to produce nine categories of documents that relate to the ACOF offering, as well as communications with employees of AIM or with various government agencies about any Aequitas company. (*See id.* at 8–10.) Sidley has already produced more than 1.5 million pages of documents in response to this order. Also, in accordance with Sidley's understanding of its discovery obligations, Sidley has proposed to Plaintiffs additional searches—including 18 custodians and 26 search terms—to identify any further ESI that is responsive to the order.

## Search Obligations and Scope of Production

The nine categories of documents that Sidley must produce under the February 21 protective order are, in Sidley's view, consistent with the Court's later ruling on its motion to dismiss. In that motion, Sidley requested a dismissal of the Plaintiffs' First Amended Complaint,

primarily on the grounds that, aside from ACOF, the complaint failed to allege that Sidley had participated or materially aided in the sale of any Aequitas securities. (*See* Sidley's Motion to Dismiss, June 10, 2016 [Dkt. No. 81].)

The Court generally agreed with Sidley's position, concluding that "the allegations of secondary liability against Sidley are factually insufficient." (Amended F&R, April 10, 2017 [Dkt. No. 242], at 69; *see also* Opinion and Order, July 5, 2017 [Dkt. No. 250] (adopting the F&R).) The complaint did not "specify how Sidley's legal services constituted participation or material aid in any transaction or group of transactions, and thus are insufficient to show participation or material aid in any transaction or group of transactions." (Dkt. No. 242, at 68–69.) Nor did the complaint "identify with any detail the majority of Sidley's alleged interactions with the Aequitas Entities." (*Id.* at 69.) As a result, the complaint did not adequately allege Sidley's participation or material aid in the sale of any non-ACOF securities. (*See id.* at 68–69.)

Despite the Court's February 21 protective order and later ruling on Sidley's motion to dismiss—both of which generally limited Sidley's obligations and potential liability to ACOF—Plaintiffs now request that Sidley engage in wide-ranging discovery relating to its work for any Aequitas company. In Plaintiffs' view, the Court's July 25 minute order [Dkt. No. 245] expanded Sidley's discovery obligations. Sidley, however, understood the minute order and related hearing more narrowly as requiring the parties to negotiate an ESI protocol to govern all future document productions—including in response to the Court's February 21 protective order. (*See* Minute Order, July 25, 2017 [Dkt. No. 245] (setting a schedule for filing and responding to Plaintiffs' amended complaint and requiring the parties to confer regarding an ESI protocol).) The parties have done exactly that and are submitting the stipulated ESI protocol along with this joint status report. Although other Defendants apparently have had broader discussions with

Plaintiffs about discovery issues, it is worth noting that Sidley is the only Defendant whose potential secondary liability was limited to a single offering after the motions to dismiss.  (*See generally* Dkt. No. 242, at 59–71.)

We are still analyzing Plaintiffs' recently filed (and lengthy) Second Amended Complaint to assess whether it affects Sidley's discovery obligations.  (*See* Sec. Am. Compl. ("SAC"), Sept. 8, 2017 [Dkt. No. 257].)  At first blush, many of the Sidley-specific allegations simply repeat the allegations that were deemed insufficient in Plaintiff's prior complaint.  For example, Plaintiffs continue to allege that Sidley provided unspecified legal services to AIM and that Sidley provided a legal opinion to a bank that "promoted the illusion of success and legitimacy." (*Compare* SAC ¶¶ 192(b), (i), (j); *with* Dkt. No. 242, at 68–69 (rejecting similar allegations as legally insufficient.)  More broadly, according to the amended complaint, Sidley's alleged legal services constituted participation or material aid in *all* Aequitas securities offerings.  (*See, e.g.*, SAC ¶¶ 192(a), (b), (j).)  Sidley currently intends to challenge the legal basis for that claim, which it believes is fundamentally inconsistent with Oregon law—just as it was the last time.  In any event, to the extent that the amended complaint alleges other discrete areas in which Sidley performed services related to a securities offering (*e.g.*, SAC ¶ 192(f)), the custodian list that Sidley has already proposed to Plaintiffs includes the key personnel who assisted with those services.  Sidley is willing to continue its discussions with Plaintiffs about appropriate search terms relating to any such discrete services.

Of course, if the Court disagrees with Sidley's understanding of its current obligations, we will meet and confer with Plaintiffs about the appropriate searches for any non-ACOF discovery.  In the meantime, we will note that Plaintiffs' initial proposal is overly broad and

unworkable for multiple reasons—including by requesting a date range that begins more than two years *before* Sidley was engaged by any Aequitas company.

### Sidley's Compliance With February 2017 Order

Finally, contrary to Plaintiffs' suggestion above, Sidley has complied with the Court's February 21 protective order for (a) non-emails documents in its own files and for (b) documents, including emails, that it previously sent to the SEC on behalf of various Aequitas companies. As discussed at the July 25 status conference, the purpose of the further search proposals that Sidley has sent to Plaintiffs is to identify emails in its own files that also are responsive to the order. The broad search proposals that Sidley has sent to Plaintiffs reflect a good-faith effort to identify all such emails.

As for custodians, Sidley has made a reasonable effort to identify custodians who possess responsive and non-duplicative emails. Sidley's proposed custodian list is based on a number of factors, including the custodian's seniority, closeness to the relevant issue, and hours billed. Although Plaintiffs complain about Sidley's selection of custodians, they have not yet identified other custodians that they would like Sidley to add—or explained why any such additional custodians would potentially have any non-duplicative emails. *See Enslin v. Coca-Cola Co.*, 2016 WL 7013508, at *1 n.2 (E.D. Pa. May 13, 2016) ("If the requesting party seeks to have the responding party search the information of additional custodians, the requesting party should be able to articulate a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced.").

In addition, Sidley has proposed search terms that are meant to capture emails with the general partner of ACOF (Item 5 in the Court's February 21 order) or AIM (Item 6). These

terms include the names of key personnel at various Aequitas companies who were affiliated

with either the general partner of ACOF or AIM.  Plaintiffs have not suggested other specific

terms that Sidley might use to find responsive emails.  Instead, they have requested that Sidley

search every email with anyone at any Aequitas company—regardless of the identity of such

individuals or the nature of their connection to AIM.  Similarly, with respect to Item 2, Plaintiffs

propose (for the first time in this joint report) that Sidley use the terms "exemption" and

"registration" to find emails relating to ACOF's registration requirements.  Although Sidley is

willing to consider this new proposal provided that Plaintiffs explain their rationale, Plaintiffs

fail to explain why Sidley's other ACOF-related terms would not capture the same emails.

### B.    TD Ameritrade, Inc.

#### 1.  Plaintiffs' Position

Plaintiffs and Ameritrade disagree as to whether discovery at this stage is limited to the

items specified in the February 2017 Order. In general terms, Ameritrade proposes to produce,

over the next several months, ESI relating to communications between Ameritrade and the

outside world regarding Aequitas, but to hold all internal Ameritrade communications until the

pleadings are set.  For the reasons discussed above with respect to Sidley, plaintiffs do not

believe discovery should be limited to the February 2017 Order.

Plaintiffs and Ameritrade have agreed to the parameters and timing of a search for

documents responsive to the February 2017 Order.  However, discovery at this stage should not

be so limited.  The February 2017 Order was intended to provide limited discovery pending a

ruling on the motions to dismiss, in recognition of the possibility that Ameritrade might prevail

in part.  The Court has now denied Ameritrade's motion to dismiss as to the allegations of

participation and aid.  Plaintiffs allege additional facts regarding Ameritrade's participation in

paragraph 193 of the Second Amended Complaint. Plaintiffs have also supplied extensive

additional allegations specifying the false statements and omissions regarding each Aequitas

security. Thus, in plaintiffs' view, there is no longer any reason to delay discovery as to

Ameritrade. Ameritrade's proposed compromise, to produce internal emails that mention a

specific Ameritrade customer by name, adds inefficiency and is arbitrary. Plaintiffs are anxious

to understand, for example, the reasons that Ameritrade initially approved Aequitas investments

for sale, put a hold on further Aequitas investments in January 2015, and removed Aequitas from

its platform entirely in October 2015. *See* SAC ¶193(e). Plaintiffs proposed a compromise that

would require Ameritrade to produce those documents before the pleadings are set, but

Ameritrade rejected the compromise.

Plaintiffs request that the Court clarify whether the scope of discovery as to Ameritrade is

limited to the items specified in the February 2017 Order, or whether Ameritrade is required to

produce all relevant documents responsive to plaintiffs' document requests. If the Court agrees

with plaintiffs, plaintiffs are confident that an agreement can be reached with Ameritrade as to

comprehensive search protocols. In fact, the parties have already agreed on the comprehensive

search terms, but have not finalized other parameters, such as custodians.

### 2. Ameritrade's Position

As noted by Plaintiffs above, Plaintiffs and TD Ameritrade have reached agreement on

the parameters and timing for completion of TD Ameritrade's production of documents

responsive to the Court's February 2017 discovery order, following the Court's denial, on July

24, of TD Ameritrade's motion for reconsideration of the discovery order as to the documents

called for by paragraphs 2 and 3 of the order. Plaintiffs, however, take the position that the order

has outlived its usefulness and that TD Ameritrade must now respond to each and every request

remaining in Plaintiffs' document requests (as to which, it should also be noted, TD Ameritrade asserted a variety of targeted objections). TD Ameritrade has a different view of the continuing vitality of the Court's discovery order in February 2017.

As counsel for TD Ameritrade stated at the status conference on July 25, 2017, TD Ameritrade interpreted the Court's February order as requiring the level of discovery deemed appropriate by the Court during the time it may take to resolve all issues raised as to the sufficiency of the pleadings. Hence, as to TD Ameritrade, the Court ordered a substantial volume of documents relating not only to the named Plaintiffs but also as to all putative class members, numbering in the hundreds as to TD Ameritrade, among other things. TD Ameritrade believed then, and continues to believe following the July 25 status conference, that the Court intended such a broad initial production to suffice during the time it took to resolve all pleading issues and determine whether the case would proceed. Although, as Plaintiffs correctly point out, TD Ameritrade's motion to dismiss the secondary liability claims against it was denied, the joint motion to dismiss, which included TD Ameritrade, was granted because Plaintiffs failed to adequately plead the required element of primary liability. If they are unable to do so, the case will not proceed against any Defendant. TD Ameritrade does not believe that the most recent amended complaint has cured the pleading deficiencies found by the Court with the prior version, and is entitled, along with the other Defendants, to challenge again those pleading deficiencies. As a result, the February discovery order should continue to govern the scope of discovery at this preliminary stage of the case, until the pleadings are set.

Counsel for Plaintiffs and TD Ameritrade have exchanged proposals regarding search terms and reached agreement on such terms. Counsel discussed a detailed proposal by TD Ameritrade for production of ESI in two phases, with Phase 1 consisting of the completion of TD

Ameritrade's ESI responses to paragraphs 2 and 3 of the Court's order (as to which agreement was reached), and Phase 2 covering custodians and a specific proposal for completing discovery following disposition of all preliminary motions regarding sufficiency of the pleadings (as to which agreement has not been reached).

As to what TD Ameritrade views as Phase 2 discovery, TD Ameritrade proposed a compromise that would address Plaintiffs' desire to conduct discovery beyond the scope of the Court's February order, by offering a portion of Phase 2 discovery prior to disposition by the Court of the next round of anticipated motions to dismiss.   Without waving its position that additional discovery (i.e., the anticipated Phase 2 discovery) has not yet been ordered by the Court, TD Ameritrade proposed the following approach that would provide a significant amount of potentially relevant additional email communications to Plaintiffs sooner rather than later, and also ensure that, when the pleadings are set, TD Ameritrade would move quickly with another significant portion of Phase II discovery.  Specifically, TD Ameritrade proposed, after the Phase I discovery is complete, as follows:

1.      Using the database of all internal emails derived from searching all TD Ameritrade email accounts with the agreed search terms, TD Ameritrade would search for and produce all such internal email communications that mention any specific TD Ameritrade customers who purchased Aequitas (i.e., the hundreds of putative class members).  This will take some time and TD Ameritrade would want to focus initially on completing the Phase 1 process, but would agree to produce this additional category of emails by February 1 regardless of whether the next round of motions to dismiss have been ruled on by that time.

2.      In addition, TD Ameritrade would continue to develop and discuss with Plaintiffs the specific custodians and systems to be searched for all ESI (the remaining internal email and

other electronic files) and any physical files in the possession of any custodian for production after the motions to dismiss are decided and the pleadings are set, and agree to gather this additional set of documents (much of which would be the remaining internal emails responsive to the agreed search terms) after completing the foregoing tasks and producing this additional set within two weeks of filing its answer in the case, assuming Plaintiffs eventually succeed in stating a primary violation of the securities laws.

There likely would remain some categories of documents from Plaintiffs' original document requests at that point, subject to other objections TD Ameritrade has asserted, but the forgoing process will yield a significant number of potentially relevant documents well before any further motions are decided, and assure Plaintiffs of another significant batch of documents within two weeks after the pleadings are finally set. The parties would then work through any remaining requests/issues in due course

Plaintiffs rejected this proposal but TD Ameritrade urges the Court to adopt the foregoing protocol, and proposed time frames for completing each step, as a reasonable path to further effectuate the Court's goal of keeping the case moving at a reasonable pace while continuing to evaluate the sufficiency of the pleadings.

Pursuant to LR 11-1(d)(2), counsel signing below consent to their signatures on this submission.

DATED this 19th day of September, 2017.

STOLL STOLL BERNE LOKTING                      MARKOWITZ HERBOLD PC
& SHLACHTER P.C.

By: s/Timothy S. DeJong                          By: s/ David B. Markowitz
    **Keith A. Ketterling**, OSB No. 913368        **David B. Markowitz,** OSB No. 742046
    **Timothy S. DeJong**, OSB No. 940662        **Chad M. Colton,** OSB No. 065774
    **Jacob S. Gill**, OSB No. 033238            **Stanton Gallegos,** OSB No. 160091
    **Nadia H. Dahab,** OSB No. 125630           **Jeffrey M. Edelson,** OSB No. 880407

PAGE 16 - **JOINT REPORT ON ESI DISCOVERY ISSUES**

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:   (503) 227-6840
Email: kketterling@stollberne.com
         tdejong@stollberne.com
         jgill@stollberne.com
         ndahab@stollberne.com

-And-

**Steve W. Berman,** *pro hac vice*
**Karl P. Barth,** *pro hac vice*
**Catherine Y.N. Gannon,** *pro hac vice*
**Dawn Cornelius,** *pro hac vice*
HAGENS BERMAN SOBOL
& SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
         karlb@hbsslaw.com
         catherineg@hbsslaw.com
         dawn@hbsslaw.com

-And-

**Robert S. Banks, Jr.**, OSB No. 821862
**Darlene D. Pasieczny,** OSB No. 124172
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone: (503) 226-2966
Facsimile:  (503) 222-2937
Email: bbanks@SamuelsLaw.com
         darlenep@SamuelsLaw.com

**Attorneys For Plaintiffs**

1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: 503-295-3085
Email: DavidMarkowitz@MHGM.com
         ChadColton@MHGM.com
         stantongallegos@markowitzherbold.com
         JeffEdelson@MarkowitzHerbold.com

-And-

**Michael R. Doyen,** *pro hac vice*
**Zachary M. Briers,** *pro hac vice*
**Bruce A. Abbott,** *pro hac vice*
**Brad D. Brian,** *pro hac vice*
**Trevor Templeton,** *pro hac vice*
**Kevin L. Brady,** *pro hac vice*
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone: 213-683-9100
Email: michael.doyen@mto.com;
         zachary.briers@mto.com;
         bruce.abbott@mto.com;
         brad.brian@mto.com;
         trevor.templeton@mto.com;
         Kevin.brady@mto.com;

**Attorneys For Sidley Austin LLP**

EVERSHEDS SUTHERLAND (US) LLP

By: s/ *Nicholas T. Christakos*
         **Bruce M. Bettigole,** *pro hac vice*
         **Nicholas T. Christakos**, *pro hac vice*
         **Gail L. Westover**, *pro hac vice*

700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Email: nicholaschristakos@ eversheds-
sutherland.com
brucebettigole@eversheds-sutherland.com
gailwestover@ eversheds-sutherland.com

-And-

GARVEY SCHUBERT BARER

By: s/*Robert C. Weaver , Jr.*
    **Robert C. Weaver , Jr.,** OSB #801350
    **Gary I. Grenley,** OSB # 751380
    **Paul H. Trinchero,** OSB # 014397

121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: 503-228-3939
Email: rweaver@gsblaw.com
      ggrenley@gsblaw.com
      ptrinchero@gsblaw.com

-And-

**Gavin M. Masuda,** *pro hac vice*
**Peter A. Wald,** *pro hac vice*
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Email: gavin.masuda@lw.com
      peter.wald@lw.com

**Attorneys For DeLoitte & Touche, LLP**

HARRANG LONG GARY RUDNICK P.C.

By: s/Sharon A. Rudnick
    **Sharon A. Rudnick**, OSB No. 830835

360 E. 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:(541) 485-0220
Email: sharon.rudnick@harrang.com

**Attorneys for Duff & Phelps LLC**

**Matthew J. Kalmanson**, OSB No. 041280
**Lindsay H. Duncan**, OSB No. 120974
HART WAGNER LLP
1000 SW Broadway, Twentieth Floor
Portland, OR 97205
Telephone: (503) 222-4499
Email: mjk@hartwagner.com
      lhd@hartwagner.com

**Attorneys For TD Ameritrade, Inc.**

LANE POWELL PC

By: s/*Milo Petranovich*
    **Milo Petranovich**, OSB No. 813376
    **Peter D. Hawkes**, OSB No. 071986
    **SreeVamshi C. Reddy**, OSB No. 140560

601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158
Telephone:  (503) 778-2114
Email: petranovichm@lanepowell.com
      hawkesp@lanepowell.com
      reddyv@lanepowell.com

**Attorneys For Integrity Bank & Trust**

THE FERRANTI FIRM LLC

By: s/ William P Ferranti
    **William P Ferranti**, OSB No. 160069
    1819 SW 5th Ave., No 403
    Portland, OR  97201
    Telephone:  503 877-9220
    Email:  wpf@ferrantiappeals.com

-And-

**Linda T. Coberly,** *pro hac vice*
**Catherine W. Joyce,** *pro hac vice*
**Joanna Rubin Travalini,** *pro hac vice*
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Email: cjoyce@winston.com;
      jtravalini@winston.com;
      lcoberly@winston.com;

**Attorneys For EisnerAmper LLP**