**William F. Gary, OSB #770325**
**william.f.gary@harrang.com**
**Sharon A. Rudnick, OSB #830835**
**sharon.rudnick@harrang.com**
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone: 541-485-0220
Facsimile: 541-686-6564
Of Attorneys for Defendant Duff & Phelps, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated,**

Plaintiffs,

vs.

**DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; INTEGRITY BANK & TRUST; DUFF & PHELPS, LLC,**

Defendants,

Case No. 3:16-cv-00580-AC

**DEFENDANT DUFF & PHELPS, LLC'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

**Request for Oral Argument**

and

**N. SCOTT GILLIS; ROBERT J. JESENIK; BRIAN A. OLIVER,**

Intervenors.

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ..... 1

MOTIONS ..... 1

MEMORANDUM ..... 2

I. LEGAL STANDARDS ..... 2

II. BACKGROUND FACTS ..... 2

III. ARGUMENT ..... 4

A. The Court lacks personal jurisdiction over Duff & Phelps. ..... 4

1. The law of personal jurisdiction ..... 5

2. This Court lacks general jurisdiction over Duff & Phelps. ..... 6

3. This Court lacks specific jurisdiction over Duff & Phelps. ..... 7

a. Duff & Phelps lacks minimum contacts with Oregon. ..... 7

b. Plaintiffs' claims do not arise from Duff & Phelps's activities. ..... 12

c. The exercise of jurisdiction over Duff & Phelps would be unreasonable. ..... 13

4. At a minimum, the Court should dismiss the claims of the non-Oregon Plaintiffs for lack of personal jurisdiction. ..... 16

B. Application of ORS 59.115(3) to Duff & Phelps's conduct is unconstitutional. ..... 17

C. Oregon choice-of-law rules require dismissal of Plaintiffs' claims. ..... 21

1. The non-Oregon Plaintiffs' claims are governed by California law. ..... 21

2. The claims of Plaintiffs domiciled in Oregon are governed by California or New York law. ..... 22

D. The Court should dismiss all claims based on the sale of securities prior to February 2014. ..... 23

E. The Court should dismiss all claims except those based on a sale of an ACOF interest. ..... 24

F. In the alternative, the Court should dismiss all claims based on the sale of any security other than ACOF or ACF. ..... 26

CONCLUSION....27

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
169 F.Supp.3d 1079 (D. Or. 2016) ....................13

*Ainslie v. First Interstate Bank of Oregon*,
148 Or. App. 162, 939 P.2d 125(1997)....................25

*Ainslie v. Spolyar*,
144 Or. App. 134, 926 P.2d 822 (1996)....................26

*Amba Marketing Systems, Inc. v. Jobar Intern., Inc.*,
551 F.2d 784 (9th Cir. 1977) ....................2

*Anderson v. Carden*,
146 Or. App. 675, 934 P.2d 562 (1997)....................26

*AREI II Cases*, 216 Cal. App.4th 1004 (Cal. App. 2013) ....................19, 20, 22

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)....................2

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)....................2

*BMW of N. Am. v. Gore*,
517 U.S. 559, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996)....................19

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
-- U.S. --, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017)....................1, 16, 17

*Brown-Forman Distillers Corp. v. NY State Liquor Auth.*,
476 U.S. 573, 106 S. Ct. 2080, 90 L.Ed.2d 552 (1986)....................18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 1274, 85 L.Ed.2d 528 (1985)....................6, 7, 11, 14

*State ex rel. Circus Circus Reno, Inc. v. Pope*,
317 Or. 151, 854 P.2d 461 (1993) ....................13

*Ciuffitelli v. Deloitte & Touche LLP*,
Case No. 3:16-cv-580-AC (D. Or. 2017), Amended Findings and
Recommendations at 30-31 (April 10, 2017) ....................25, 26

*Coneff v.AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) ....................21

*Daimler AG v. Bauman*,
-- U.S. --, 134 S. Ct. 746, 187 L.Ed.2d 624 (2014)....................6

*In re: Dental Supplies Antitrust Litig.*,
2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ....................17

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ....................13

*Edgar v. MITE Corp.*,
457 U.S. 624, 102 S. Ct. 2629, 73 L.Ed.2d 269 (1982)....................18

*Entm't Radio Network, LLC v. Time*,
2016 WL 4697367 (D. Or. May 18, 2016) ....................15

*Friedman v. Boucher*,
580 F.3d 847 (9th Cir. 2009) ....................19, 20

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir.1984), cert. denied, 471 U.S. 1066, 105 S. Ct. 2143,
85 L.Ed.2d 500 (1985)....................11

*Gray Co. v. Firstenberg Machinery Co., Inc.*,
913 F.2d 758 (9th Cir. 1990) ....................5

*Gullette v. Lancaster & Chester Co., Inc.*,
2014 WL 3695515 (D. Or. July 23, 2014)....................15

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ....................5, 15

*Harry & David v. J&P Acquisition*,
2009 WL 4892296 (D. Or. Dec. 17, 2009) ....................14

*Healy v. Beer Inst. Inc.*,
491 U.S. 324, 109 S. Ct. 2491, 105 L.Ed.2d 275 (1989)....................17, 18

*Houston v. Seward & Kissel, LLP*,
2008 WL 818745 (S.D.N.Y. Mar. 27, 2008) ....................14

*Huntington v. Attrill*,
146 U.S. 657, 13 S. Ct. 224, 36 L.Ed. 1123 (1892)....................19

*James River Ins. Co. v. Cell Technology Int'l, Inc.*,
2011 WL 1883826 (D. Or. May 17, 2011) ....................12

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) ....................7

*Lanham v. Pilot Travel Ctrs., LLC*,
2015 WL 5167268 (D. Or. Sept. 2, 2015) ....................6

*Lesavoy v. Lane*,
304 F.Supp.2d 520 (S.D.N.Y. 2004), *aff'd in part and vacated in part on other grounds, Lesavoy v. Gallullo-Wilson*, 170 Fed. Appx. 721 (2nd Cir. 2006) ....................20, 22

*Martinez v. Areo Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ....................6

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ....................11

*Miller v. McCloud*,
2014 WL 722503 (W.D. Wash. Feb. 24, 2014) ....................7, 18

*Munson v. Valley Energy Inv. Fund, U.S., LP*,
264 Or. App. 679, 333 P.3d 1102 (2014) ....................14

*Nat'l Collegiate Athletic Assoc. v. Miller*,
10 F.3d 633 (9th Cir. 1993) ....................18

*Paragon Bioteck, Inc. v. Altaire Pharmaceuticals, Inc.*,
2015 WL 4253996 (D. Or. July 10, 2015) ....................11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ....................9, 10, 11

*Pommier v. Deloitte & Touche, LLP.*,
Case No. 16CV36439, Opinion & Order Re: Duff & Phelps' Motion to Dismiss for Lack of Personal Jurisdiction (May 2, 2017) ....................9

*Prince v. Brydon*,
307 Or. 146, 764 P.2d 1370 (1988) ....................25

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................5

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................4, 6

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ....................2

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408, 123 S. Ct. 1513, 155 L.Ed.2d 585 (2003)....................................1, 19, 20

*Swift & Co. v. Peterson*,
192 Or. 97, 233 P.2d 216 (1951) ....................................................................17

*Tesseraction Games Inc. v. GMX Media*,
2005 WL 2808441 (D. Or. Oct. 26, 2005)....................................................10, 14

*Veenendaal v. Dept. of Revenue*,
2015 WL 2398231 (Or. Tax. Ct., May 18, 2105) ...............................................22

*Walden v. Fiore*,
-- U.S. --, 134 S. Ct. 1115, 188 L.Ed.2d 12 (2014)..................................5, 9, 10, 12

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*,
704 F.3d 668 (9th Cir. 2012) ........................................................................7, 8

*Woodward v. Robinson*,
2003 WL 21087583 (D. Or. Mar. 26, 2003)......................................................13

*World-Wide Volkswagen v. Woodson*,
444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980).........................................15

*Wurster v. Deloitte & Touche, LLP.*,
Case No. 16CV25920, Opinion & Order re: Duff & Phelps' Motion to
Dismiss for Lack of Personal Jurisdiction, (May 2, 2017) .....................................9

**Statutes**

ORS 15.300 to 15.460.........................................................................................21

ORS 15.400 to 15.460.........................................................................................21

ORS 15.405.......................................................................................................21

ORS 15.415(2) ...................................................................................................22

ORS 15.440(3)(a)...........................................................................................21, 22

ORS 15.440(3)(c)...............................................................................................23

ORS 59.115...................................................................................................17, 18

ORS 59.115(3) ..........................................................................2, 18, 19, 21, 25, 26

## LR 7-1 CERTIFICATION

In compliance with LR 7-1, counsel for Duff & Phelps, LLC and counsel for Plaintiffs have made a good faith effort through personal or telephone conferences to resolve these motions and have been unable to do so.

## MOTIONS

Defendant Duff & Phelps, LLC moves the Court for an order dismissing Plaintiffs' claims of secondary liability under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, on the following grounds:

1. This Court lacks personal jurisdiction over Duff & Phelps because Duff & Phelps lacks the required suit-related minimum contacts with Oregon to satisfy due process.

2. At a minimum, the Supreme Court's recent decision in *Bristol-Myers Squibb* requires that this Court dismiss, for lack of personal jurisdiction, the claims of any "plaintiffs [who] are not [Oregon] residents and [who] do not claim to have suffered harm in that State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, -- U.S. --, 137 S.Ct. 1773, 1782, 198 L.Ed.2d 395 (2017).

3. Further, Plaintiffs have failed to allege that they were injured by Duff & Phelps in Oregon or that Duff & Phelps engaged in any conduct related to this case in Oregon. As such, applying the Oregon securities laws extraterritorially—effectively allowing Oregon to regulate conduct in other states—would violate the dormant Commerce Clause and the well-established principle that Oregon cannot constitutionally punish Duff & Phelps's conduct that "may have been lawful where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421, 123 S. Ct. 1513, 155 L.Ed.2d 585 (2003) (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 572, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996)). Plaintiffs' claims, therefore, should be dismissed.

4. The Court should dismiss all claims based on the sale of a security before February 2014, the first time Aequitas allegedly communicated with investors in the Aequitas Capital Opportunities Fund ("ACOF") Private Placement Memorandum ("PPM") concerning Duff & Phelps's work.

5. The Court should dismiss all claims based on the sale of securities from any fund other than ACOF, because Plaintiffs have failed to state a plausible claim that Duff & Phelps "participate[d] or materially aid[ed] in the sale" of those other securities. ORS 59.115(3).

Duff & Phelps relies on the memorandum below and the records and files in this matter.

**MEMORANDUM**

Duff & Phelps is new to this matter. Plaintiffs joined Duff & Phelps as a defendant with the filing of the Second Amended Complaint. The Court should dismiss Plaintiffs' claims against Duff & Phelps for the reasons described below.

## I. LEGAL STANDARDS

Under Rule 8, a complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiffs must plead a "plausible" claim for relief rather than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that jurisdiction is appropriate *(Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990)), and cannot rest on the bare allegations of the complaint. *Amba Marketing Systems, Inc. v. Jobar Intern., Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

## II. BACKGROUND FACTS

Duff & Phelps is a Delaware corporation with its principal place of business in New York. Declaration of Jonathan L. Jacobs ("Jacobs Decl.") ¶3. The company is a financial

services firm that specializes, among other things, in valuing commercial assets. *Id.* ¶4. Duff & Phelps has no office in Oregon; nor does it lease or own any property in Oregon. *Id.* ¶5. It has no address, bank account, or phone number in Oregon. *Id.*

In 2013, William Ruh of Aequitas contacted Jack Clemens of Duff & Phelps. Declaration of Jack Clemens ("Clemens Decl.") ¶5. Ruh was either in Oregon or California; Clemens was in Georgia. *Id.* Ruh asked that Duff & Phelps value certain investments in ACOF. *Id.* ¶¶6, 9. Duff & Phelps ultimately agreed. The parties' contract specified that New York law governed and that disputes would be resolved "exclusively" in "the courts of the state of New York." *Id.*, Ex. A (Engagement Letter) at 10; *see also* Jacobs Decl. ¶8; Clemens Decl. ¶7.

Duff & Phelps completed its valuation of the three portfolio companies in ACOF in December 2013, July 2014, and February-March 2015. Clemens Decl. ¶9. Aequitas first disclosed the valuations and referenced Duff & Phelps in ACOF's February 2014 PPM. Second Am. Comp. ¶195(c). In connection with the valuations, no Duff & Phelps employees traveled to Oregon. Clemens Decl. ¶10. All communications occurred by telephone or email (*id.* ¶¶10-15), and the final valuation reports were sent by email. *Id.* The expense report shows that all of Duff & Phelps's related expenses were incurred in California and New York. *Id.* ¶15; *see also* Jacobs Decl. ¶¶10-17 (same). All of the work that Duff & Phelps performed for Aequitas related only to valuing ACOF assets. Duff & Phelps did no more work for any Aequitas company and did not solicit sales or sell any Aequitas securities in Oregon or anywhere else. *Id.* ¶18; Clemens Decl. ¶16.

Duff & Phelps's contacts with Oregon unrelated to this litigation were minimal. Since September 2015, Duff & Phelps has been registered in Oregon as a foreign limited liability company. Declaration of Rebecca Macfie ("Macfie Decl"). ¶¶6-9. Through the years, Duff &

Phelps has handled an average of fewer than 20 miscellaneous projects per year (appraisals, opinion letters, and the like) for companies located in Oregon. *Id.* ¶10. This places Oregon in the lower half of states with companies that have hired Duff & Phelps. *Id.* None of that work related to Duff & Phelps's work for Aequitas. *Id.* In 2016, Duff & Phelps acquired a small Oregon legal management consulting company, Tregin Solutions, Inc., with 13 employees. *Id.* ¶¶11, 13-14. As a subsidiary of Duff & Phelps, Tregin maintains its corporate distinctness, although its 13 employees now formally work for Duff & Phelps. *Id.* ¶13. Only three employees work in Oregon, all from home. *Id.* ¶5, 14, 17. Tregin had no connection to Duff & Phelps's work for Aequitas. *Id.* ¶¶11, 16. Tregin contributes less than 1% of Duff & Phelps's total revenue. *Id.* ¶15.

## III. ARGUMENT

### A. The Court lacks personal jurisdiction over Duff & Phelps.

As noted, Plaintiffs have the burden to allege and prove facts sufficient to establish personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Here, Plaintiffs allege only that "[t]he activities of…Duff & Phelps, LLC in Oregon and the services [it] provided to persons in Oregon form the basis of the claims asserted against [it] in this complaint." Second Am. Comp. ¶8. Yet the Second Amended Complaint alleges no activity performed by Duff & Phelps in Oregon. The only services it performed for "persons in Oregon" were the valuations of three of portfolio companies in ACOF, at the request of Aequitas—work that was completed without any Duff & Phelps employee setting foot in Oregon. Performing work outside of Oregon for an Oregon corporation does not come close to the minimum contacts required to establish personal jurisdiction. All of the other allegations in the Second Amended Complaint referencing Duff & Phelps's valuations describe actions *by Aequitas vis a vis* its investors. But, as discussed below, Aequitas's contacts with Oregon residents cannot be imputed

to Duff & Phelps. It is Duff & Phelps's contacts with Oregon, and only those contacts, that matter. The Court should dismiss Plaintiffs' claims against Duff & Phelps for lack of personal jurisdiction.

**1. The law of personal jurisdiction**

To establish personal jurisdiction in this Court, Plaintiffs must show that: (1) Oregon's long-arm statute confers jurisdiction over Duff & Phelps; and (2) the exercise of jurisdiction does not violate federal due process. *Gray Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). Because Oregon's long-arm statute is co-extensive with federal due process, this Court need only consider whether its exercise of personal jurisdiction would offend constitutional due process requirements. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process requires that a non-resident defendant "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks omitted). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Id.* "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, -- U.S. --, 134 S. Ct. 1115, 1121 n.6, 188 L.Ed.2d 12 (2014). "This is in contrast to 'general' or 'all[-]purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." *Id.*

Here, Plaintiffs allege no facts showing that Duff & Phelps had enough contacts with Oregon to confer either general or specific jurisdiction, which by itself is grounds for dismissal.

As we show, the evidence amply confirms that conclusion.

Because Plaintiffs have failed to establish the minimum contacts needed to satisfy due process, the Court need not reach the question whether haling Duff & Phelps into court in Oregon would be reasonable. *See Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004) ("If the plaintiff fails to satisfy either of these [first two] prongs, personal jurisdiction is not established in the forum state."). But in any case, the exercise of personal jurisdiction over Duff & Phelps would not comport with the traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 1274, 85 L.Ed.2d 528 (1985).

**2. This Court lacks general jurisdiction over Duff & Phelps.**

Oregon courts, and thus this Court, lacks general jurisdiction over Duff & Phelps. As the Supreme Court has emphasized, the "paradigm forum" for exercising general jurisdiction over a corporation is its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, -- U.S. --, 134 S. Ct. 746, 760, 187 L.Ed.2d 624 (2014) (collecting cases). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Areo Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler,* 134 S. Ct. at 761 n.19).

As noted, Duff & Phelps is formed under the laws of Delaware and has its principal place of business in New York. The only remaining question, then, is whether this is an "exceptional case." It is not. To reach "exceptional" status, a corporation's affiliation with a state must be "so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (internal citation and quotation marks omitted.). That is an "exacting standard." *Lanham v. Pilot Travel Ctrs., LLC*, 2015 WL 5167268, at *2 (D. Or. Sept. 2, 2015). It is not enough for a corporation to engage in "continuous activity" in the state. *Id.* at *3 (citing *Daimler*, 134 S. Ct. at 757). Rather, to create general jurisdiction, the Constitution "requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters,*

*Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Duff & Phelps's connections to Oregon do not "approximate physical presence," nor can it be described as "at home" in Oregon. In fact, as it was when this lawsuit was filed, Duff & Phelps is registered in Oregon as a foreign limited liability company (Macfie Decl. ¶¶7-8), which is the polar opposite of being "at home" in Oregon. There is no general jurisdiction here.

**3. This Court lacks specific jurisdiction over Duff & Phelps.**

Nor is Duff & Phelps subject to the Court's specific personal jurisdiction, which requires (1) minimum contacts with the forum state; (2) that the controversy arise out of those contacts; and (3) that exercising jurisdiction is reasonable. *Burger King,* 471 U.S. at 472-474; *see also Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (same).

**a. Duff & Phelps lacks minimum contacts with Oregon.**

To demonstrate "minimum contacts," Plaintiffs must establish either that Duff & Phelps "purposely availed" itself of the privilege of conducting activities in Oregon, or "purposefully directed" its activities to Oregon. Although the "purposeful availment" test is generally applied in suits sounding in contract, while the "purposeful direction" test is used in tort actions, both tests necessarily yield the same result, as they should, since both measure the same thing—whether a court's exercise of personal jurisdiction over the defendant violates due process. *See Miller v. McCloud,* 2014 WL 722503, at *4 (W.D. Wash. Feb. 24, 2014) (analyzing both tests in investor lawsuit). Here, the application of either test demonstrates that Duff & Phelps lacks sufficient minimum contacts to allow this Court to exercise personal jurisdiction over it.

**(1) No "purposeful direction"**

"[S]pecific jurisdiction exists when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). To

establish specific personal jurisdiction through "purposeful direction," Plaintiffs must show that Duff & Phelps: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 673. The "expressly aimed" and causation prongs demand "something more" than "a foreign act with foreseeable effects in the forum state." *Id.* at 675 (collecting cases). They require "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

Plaintiffs do not and cannot allege that Duff & Phelps targeted Oregon residents. Plaintiffs allege that "[t]he activities of … Duff & Phelps, LLC in Oregon and the services … provided to persons in Oregon form the basis of the claims asserted against them in this complaint." Second Am. Comp. ¶8. But, as we have shown, Duff & Phelps engaged in no activities in Oregon. The "appraisal reports" to which Plaintiffs refer were prepared at the behest of Aequitas, and were completed entirely outside of Oregon. Plaintiffs do not even attempt to allege that Duff & Phelps itself targeted any plaintiff from any state, never mind a plaintiff from Oregon. Rather, Plaintiffs allege only that Duff & Phelps valued three portfolio companies in ACOF, *id.* ¶195(c), that Duff & Phelps consented to the use of its name and a description of its services in the ACOF PPM, *id.* ¶195(a), and that Duff & Phelps prepared "appraisal reports" that it agreed could be given to potential investors by Aequitas. *Id.* ¶195(b).

The fact that Duff & Phelps valued companies in ACOF—securities that Aequitas marketed nationally—does not support an inference that Duff & Phelps "targeted" its conduct at a plaintiff-investor who happened to be "a resident of [Oregon]." *Washington Shoe Co.*, 704 F.3d at 675. If anyone targeted Oregon investors, it was Aequitas, not Duff & Phelps. In fact, it is far from clear that even Aequitas targeted Oregon residents. As the Second Amended Complaint makes plain, the securities sold by Aequitas were not sold only, or even primarily, to

Oregon investors. Here, of the 13 named plaintiffs, only two—Plaintiff Andrew Nowak individually, and as trustee of the Andrew Nowak Living Revocable Trust—are Oregon residents.

Plaintiffs cannot meet their burden of pleading that *Duff & Phelps* intentionally targeted Oregon plaintiffs by alleging that *Aequitas* sold securities to Oregon residents. If that were enough, Duff & Phelps would be subject to the personal jurisdiction of the courts of every state in which Aequitas sold securities. That cannot be (and it is not) the law. Personal jurisdiction must rest on the purposeful conduct of Duff & Phelps, not its "relationship with a * * * third party" (here, Aequitas), which, in turn, directed *its* conduct to Oregon. *Walden*, 134 S. Ct. at 1123; *see also Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("The proper analysis … [is to] look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). Even if the parties' engagement letter had put Duff & Phelps on notice that Aequitas would market ACOF securities to Oregon residents (it did not), that would not be enough: As the Ninth Circuit has explained, "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id.* at 1213.

The only "intentional act" attributable to Duff & Phelps that allegedly caused harm was its valuation of three portfolio companies in ACOF. That is insufficient to show "purposeful direction." [1]

[1] The Multnomah County Circuit Court held that it had personal jurisdiction over Duff & Phelps in two cases alleging similar claims as those alleged here. *Wurster v. Deloitte & Touche, LLP.*, Case No. 16CV25920, Opinion & Order re: Duff & Phelps' Motion to Dismiss for Lack of Personal Jurisdiction, (May 2, 2017); *Pommier v. Deloitte & Touche, LLP.*, Case No. 16CV36439, Opinion & Order Re: Duff & Phelps' Motion to Dismiss for Lack of Personal Jurisdiction (May 2, 2017). In so holding, Judge Dailey reasoned that Duff & Phelps had sufficient contacts with Oregon by *imputing* Aequitas's unilateral contacts with Oregon plaintiffs

**(2) No "purposeful availment"**

Nor did Duff & Phelps "purposely avail" itself of the privilege of conducting activities in Oregon. To satisfy that standard, "the defendant's *suit-related conduct* must create a substantial connection with the forum state." *Walden,* 134 S. Ct. at 1121-22 (emphasis added).

Here, Duff & Phelps's "suit-related" actions have created no "substantial connection" to Oregon. For starters, its interactions with Aequitas were prompted by the unilateral request of Aequitas. Clemens Decl. ¶5; Jacobs Decl. ¶6. Duff & Phelps did not "reach[] out beyond [its] State and into another" (*Walden*, 134 S. Ct. at 1122); Aequitas did. And although Aequitas formed a contract with Duff & Phelps, "a contract with an out-of-state party alone does not create contacts sufficient for a court to exercise personal jurisdiction." *Tesseraction Games Inc. v. GMX Media*, 2005 WL 2808441, at *4 (D. Or. Oct. 26, 2005) (citations omitted); *see also Walden*, 134 S. Ct. at 1122-23 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient contacts in the other party's home forum, we believe the answer clearly is that it cannot.") Rather, a court should look to whether a defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212.

Duff & Phelps engaged in no such "affirmative conduct." Its only involvement with Aequitas was to value three portfolio companies in ACOF at Aequitas's request—work that was done entirely outside of Oregon. Clemens Decl. ¶10; Jacobs Decl. ¶ 11. The parties did correspond via email and telephone, but "telephone and electronic mail … contacts are not sufficient for [a] court to find purposeful availment." *Tesseration Games,* 2005 WL 2808441, at

---

to Duff & Phelps, and that the minimum contacts requirement could be met so long as Duff & Phelps could foresee that Aequitas would sell securities in Oregon. As we have just shown, the record and binding Ninth Circuit precedent foreclose both of those rationales.

*4 (relying on *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988)). This case is therefore similar to *Paragon Bioteck, Inc. v. Altaire Pharmaceuticals, Inc.*, 2015 WL 4253996 (D. Or. July 10, 2015). There, "Defendants perform[ed] their duties under the contract entirely in New York. They sen[t] documents and ma[d]e telephone calls to Oregon, but ha[d] never entered the state, not even transitorily." *Id.* at *2. "Under the circumstances," the court held, it was "bound by circuit precedent" to dismiss. *Id.* After all, the Ninth Circuit recently had held that there was no jurisdiction in California even where "[t]he contract was entered into in Michigan and the Michigander performed his duties almost entirely in Michigan, but he corresponded regularly with his Californian counterpart and twice visited California to further their common enterprise." *Id.* (describing *Picot*, 780 F.3d at 1212-13).

This case is easier than *Picot*, because no one from Duff & Phelps ever visited Oregon. It is also easier than *Paragon*, as the engagement letter here shows that Duff & Phelps rejected Oregon and chose New York law as governing and New York courts as the exclusive forum for disputes. Jacobs Decl., Ex. A (Engagement Letter) at 10, ¶26. As to the choice-of-law clause, the Ninth Circuit has found that making the forum state's law the governing law under a contract is a further indicator of purposeful availment. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.1984), cert. denied, 471 U.S. 1066, 105 S. Ct. 2143, 85 L.Ed.2d 500 (1985). "Although such a provision standing alone would be insufficient to confer jurisdiction," the U.S. Supreme Court has explained, a choice-of-law clause "reinforce[s] [a defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 482. The opposite is also true—rejecting the application of Oregon law indicates that Duff & Phelps deliberately *did not* affiliate itself with Oregon and should not have "reasonabl[y] foresee[n]" litigation there.

Also significant is the exclusive forum-selection clause, which closely tracks the clause signed in *James River Ins. Co. v. Cell Technology Int'l, Inc.*, 2011 WL 1883826 (D. Or. May 17, 2011). There, an insurance company filed suit against its insured, Cell Tech, seeking a declaration that it had no duty to defend Cell Tech against a breach-of-lease action by a company called Tetra. The insurance company also sued Tetra, which moved to dismiss for lack of personal jurisdiction. The court found that it had no jurisdiction over Tetra because its lease with Cell Tech contained a mandatory forum-selection clause:

> Here, the lease with Cell Tech is Tetra's primary contact with Oregon. The lease required application of Utah law and restricted jurisdiction to courts in Utah, so Tetra had no reason to anticipate that it would be hauled into an Oregon court because of a dispute over the lease. Tetra's other contacts with Oregon are minimal, and Tetra has no connection to the plaintiff or to the insurance policy issued by plaintiff. Plaintiff has not shown that Tetra purposefully availed itself of the privilege of doing business in Oregon.

*Id.* at *3.

Like Tetra in *James River*, Duff & Phelps's primary contact with Oregon was its engagement letter with Aequitas (a third party to this lawsuit); it has no direct connection to Plaintiffs. And for the reasons explained above, Plaintiffs cannot create minimum contacts for Duff & Phelps by attempting to impute to it Aequitas's contacts with Oregon or its residents. Personal jurisdiction must rest on the conduct of Duff & Phelps, not its "relationship with a … third party" (here, Aequitas), which, in turn, directed *its* conduct to Oregon. *Walden,* 134 S. Ct. at 1123.

In short, Duff & Phelps's "suit-related" contacts with Oregon are far too attenuated to form a "substantial connection" with Oregon. For this reason alone, the Court should dismiss.

**b. Plaintiffs' claims do not arise from Duff & Phelps's activities.**

Duff & Phelps's activities in Oregon did not give rise to this action. For specific

jurisdiction to exist, a defendant's activity must be a "but-for" cause of the litigation, and the nature and quality of the activity must be such that the litigation is reasonably foreseeable by the defendant. *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F.Supp.3d 1079, 1092 n.6 (D. Or. 2016). Those standards are not satisfied here.

According to Plaintiffs, Duff & Phelps performed valuations of ACOF portfolio companies, which "created the illusion that Aequitas was as a stable investment with valuable assets." Second Am. Comp. ¶195(e). Absent from the complaint, however, are any allegations that "but for" those valuations, Plaintiffs never would have purchased any particular securities. *See Doe v. Unocal Corp.*, 248 F.3d 915, 924-25 (9th Cir. 2001) (company was not a "but-for" cause of injuries because it was "not necessary" to the project that led to the plaintiff's injuries).

Nor could Duff & Phelps have foreseen that it would be sued in Oregon by Aequitas investors. As discussed above, the Second Amended Complaint itself demonstrates that Aequitas's offerings were not limited to Oregon. Second Am. Comp. ¶¶9-12, 14-15. And Duff & Phelps and Aequitas agreed to the exclusive jurisdiction of New York. It was not reasonably foreseeable that Duff & Phelps would be subject to this lawsuit in Oregon, given its contract with Aequitas and Aequitas's nationwide offering. As such, the Court should dismiss.

**c. The exercise of jurisdiction over Duff & Phelps would be unreasonable.**

The Court's analysis can end here, with the conclusion that Duff & Phelps lacks minimum "suit-related" contacts with Oregon. But even if the Court concludes that Duff & Phelps had sufficient minimum contacts with Oregon giving rise to Plaintiffs' claims, the Court must then consider whether exercising jurisdiction is reasonable. *See Woodward v. Robinson*, 2003 WL 21087583, at *4 (D. Or. Mar. 26, 2003) (the exercise of jurisdiction must be reasonable); *State ex rel. Circus Circus Reno, Inc. v. Pope*, 317 Or. 151, 159-60, 854 P.2d 461

(1993) (same). It is not.

Jurisdiction is unreasonable if it does not comport with the traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476. In making that determination, Oregon courts balance various factors, including:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty with [sic] the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and efficient relief; and (7) the existence of an alternative forum.

*Munson v. Valley Energy Inv. Fund, U.S., LP*, 264 Or. App. 679, 700, 333 P.3d 1102 (2014) (internal citation and quotation marks omitted) (noting that "no single factor is dispositive").

Those factors favor Duff & Phelps, which, again, did not purposefully interject itself into Oregon. Aequitas initiated the contact. Duff & Phelps is registered as a foreign limited liability company in Oregon, but has no office, mailing address, bank accounts, or phone numbers here. It has performed fewer than 20 projects per year for entities in Oregon, and none related to the Aequitas engagement other than the valuations described in the Second Amended Complaint.

Further, as noted, Duff & Phelps's engagement letter with Aequitas provided that "any claims arising out of [its] contract" would be litigated in New York—Duff & Phelps's principal place of business. Thus, exercising jurisdiction over Duff & Phelps would conflict with the sovereignty and interests of New York (*see Tesseraction Games, Inc.*, 2005 WL 2808441, at *6), which exists as an alternative forum (*Houston v. Seward & Kissel*, *LLP*, 2008 WL 818745 (S.D.N.Y. Mar. 27, 2008), at *1). And it would be unreasonable given that Duff & Phelps contracted to litigate only in New York. *See Harry & David v. J&P Acquisition*, 2009 WL 4892296 (D. Or. Dec. 17, 2009), at *6-7 (considering the "totality of circumstances" and

concluding that a purchase agreement, which was "consummated in Oregon" but provided that "any lawsuit would be brought in Delaware," was evidence that jurisdiction over defendants "would be unreasonable").

Still further, even if the convenience and effectiveness of relief favored Plaintiffs, that factor is "not of paramount importance." *Harris Rutsky & Co.,* 328 F.3d at 1133; *see also Entm't Radio Network, LLC v. Time*, 2016 WL 4697367, at *8 (D. Or. May 18, 2016) ("[T]he Ninth Circuit does not give much weight to the plaintiff's inconvenience."). Rather, the burden on the defendant is "always a primary concern." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980).

Likewise, efficiency is "not given heavy consideration" (*Gullette v. Lancaster & Chester Co., Inc.*, 2014 WL 3695515 (D. Or. July 23, 2014), at *8), especially where, as here, the burden of litigating in Oregon would be heavy for Duff & Phelps, which would incur significant cost in defending itself across the continent, in a state where it has no offices and where none of its witnesses resides. *See id.* (finding it "burdensome for defendants to litigate in Oregon" because of the financial cost of "having to send thirteen of their employees [from South Carolina] to Oregon to attend trial"); Jacobs Decl. ¶ 19 ("It would cause a substantial hardship for Duff & Phelps, which is headquartered in New York, to defend itself in Multnomah County, Oregon."); Clemens Decl. ¶ 17 (same).

Plaintiffs cannot satisfy either of the first two requirements for specific jurisdiction. But given Duff & Phelps's limited contacts with Oregon—and its contract to litigate only in New York—haling it into court here also would be unreasonable.

**4. At a minimum, the Court should dismiss the claims of the non-Oregon Plaintiffs for lack of personal jurisdiction.**

The Supreme Court's recent decision in *Bristol-Myers* requires that this Court dismiss the claims of any "plaintiffs [who] are not [Oregon] residents and [who] do not claim to have suffered harm in that State." 137 S. Ct. at 1782. In that case, the Supreme Court reversed the California Supreme Court's holding that it had specific jurisdiction to entertain non-residents' pharmaceutical products liability claims against defendant Bristol-Myers Squibb ("BMS"). As the Court noted, specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State," and reaffirmed that "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781 (alterations omitted) (quoting, in part, *Walden*, 134 S. Ct. at 1123). Because BMS engaged in all relevant "activities in either New York or New Jersey," and because the "nonresidents were not prescribed [the drug] in California, did not purchase [the drug] in California, did not ingest [the drug] in California, and were not injured by [the drug] in California," the California courts lacked jurisdiction over BMS. *Id.* at 1778, 1781.

Similarly, here, Duff & Phelps's alleged relevant conduct is preparing valuations entirely outside of Oregon. Moreover, Duff & Phelps had no relationship with any Plaintiff (or any investor). Plaintiffs were not customers or clients of Duff & Phelps, and Duff & Phelps did not solicit the sale of any security to any Plaintiff (or any investor). As to Plaintiffs who are not Oregon residents, and who do not claim to have suffered harm here, "all conduct giving rise to [their] claims occurred elsewhere." *Id.* at 1782. It is of no moment that Duff & Phelps contracted with Aequitas, a third party to this litigation. As *Bristol-Myers* instructs, "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781 (quoting *Walden*, 134 S. Ct. at 1122-23).

Further, dismissal is even more warranted where the relationship with the third party is defined by a contract exclusively selecting a different state in which to resolve any disputes. *See In re: Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *5 (E.D.N.Y. Sept. 20, 2017) (holding it insufficient under *Bristol-Myers* that the defendant's third-party distributor transacted business in New York; that conduct "cannot be imputed" to defendant, especially because the distribution contract "specified" "the state of Washington" "in the choice-of-law and forum-selection clauses"). That is the case here, where the engagement letter between Duff & Phelps and Aequitas specified that the "courts of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract." Jacobs Decl., Ex. A (Engagement Letter) at ¶10. Thus, under *Bristol-Myers*, Oregon courts cannot exercise specific jurisdiction over any of the named Plaintiffs except for Plaintiffs Andrew Nowak individually and as the trustee of the Andrew Nowak Revocable Living Trust, the only Oregon residents among the 13 named Plaintiffs. Second Am. Comp. ¶¶9-15. The Court should dismiss the claims of all non-Oregon Plaintiffs.

**B. Application of ORS 59.115(3) to Duff & Phelps's conduct is unconstitutional.**

In the alternative, the claims by non-Oregon Plaintiffs should be dismissed on the ground that it would be unconstitutional to apply ORS 59.115 extraterritorially—that is, to regulate conduct that did not occur in Oregon. That is so for two reasons.

*First*, Oregon courts have long recognized a presumption against the extraterritorial application of state law. *See Swift & Co. v. Peterson*, 192 Or. 97, 121, 233 P.2d 216 (1951) ("No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed."). Likewise, the Supreme Court has held that an extraterritorial application of a state law is a violation of the dormant Commerce Clause. *See Healy v. Beer Inst. Inc.*, 491 U.S. 324, 335-36, 109 S. Ct. 2491,

105 L.Ed.2d 275 (1989); *Brown-Forman Distillers Corp. v. NY State Liquor Auth.*, 476 U.S. 573, 578-79, 106 S. Ct. 2080, 90 L.Ed.2d 552 (1986); *Edgar v. MITE Corp.*, 457 U.S. 624, 643, 102 S. Ct. 2629, 73 L.Ed.2d 269 (1982). In *Healy*, the Court explained that "the critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." 491 U.S. at 336 (citing *Brown-Forman*, 476 U.S. at 579). "Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state's regulatory regime into the jurisdiction of another State." *Id.* at 336-37; *see also Nat'l Collegiate Athletic Assoc. v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (same).

In *Miller,* the Ninth Circuit considered a Nevada statute that required the NCAA to provide Nevada entities and individuals accused of rule infractions with due process protections during enforcement proceedings. *Miller,* 10 F.3d at 637. The court held that the statute violated the Commerce Clause because it regulated the NCAA's conduct occurring wholly outside of Nevada. *Id.* at 639. In doing so, the court noted that the statute's extraterritorial reach created the potential for conflict with similar statutes in other jurisdictions. Because Nevada was not the only state that had enacted legislation establishing procedural rules for NCAA enforcement proceedings, the NCAA could be subject to conflicting requirements, in violation of the Commerce Clause. *Id.* at 639-40. The only Oregon statute at issue here, ORS 59.115(3), is similarly constrained.

Applying ORS 59.115 to the non-Oregon Plaintiffs here would violate the dormant Commerce Clause. As discussed above, Duff & Phelps is not incorporated in Oregon and its principal place of business is not Oregon. Duff & Phelps's work for Aequitas was done entirely outside of Oregon. In other words, Plaintiffs plead no allegedly unlawful conduct by Duff & Phelps that occurred in Oregon. Further, there are 13 named Plaintiffs, but only two—Andrew

Nowak individually and as trustee—are Oregon residents. Second Am. Comp. ¶¶9-15. Any injury suffered by a non-resident Plaintiff as a result of Duff & Phelps's alleged conduct would have occurred in the non-resident's home state, not Oregon. There is simply no basis to infer otherwise. The dormant Commerce Clause prohibits imposing Oregon law on persons engaged in conduct or transactions in another state, particularly where, as here, the law is significantly different in the other state. For example, ORS 59.115(3) requires only that a plaintiff plead and prove that a defendant participated or materially aided in the sale of a security in violation of the Oregon securities laws. The secondary liability law of California, where most of these Plaintiffs reside, is far more stringent. Under California law, a plaintiff must plead and prove that an aider or abettor acted with "intent to deceive or defraud" in providing "material assistance in the actual violation." *AREI II Cases*, 216 Cal. App.4th 1004, 1016 (Cal. App. 2013). As such, all claims by non-Oregon Plaintiffs should be dismissed.

*Second*, even apart from the dormant Commerce Clause, it is axiomatic that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm,* 538 U.S. at 421-22. After all, "[n]o State can legislate except with reference to its own jurisdiction." *BMW*, 517 U.S. at 572. And "[l]aws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states." *Huntington v. Attrill,* 146 U.S. 657, 669, 13 S. Ct. 224, 36 L.Ed. 1123 (1892).

Applying this fundamental principle, the Ninth Circuit refused to allow "Nevada state officials [to] take action which would otherwise be prohibited in Nevada … simply by relying on a Montana statute." *Friedman v. Boucher*, 580 F.3d 847, 854 (9th Cir. 2009). As the court explained, such a possibility "was rejected almost a century ago by the United States Supreme Court, when it considered 'the power of the State of Missouri to extend the operation of its

statutes beyond its borders into the jurisdiction of other States, so as in such other States to destroy or impair the right of persons not citizens of Missouri to contract.'" *Id*. (quoting *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 160, 34 S. Ct. 879, 58 L.Ed. 1259 (1914)). "Holding that a state does not possess such power, the Court explained: 'Such question, we think, admits of but one answer since it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State … without throwing down the constitutional barriers by which all the States are restricted. ... *This is so obviously the necessary result of the Constitution that it has rarely been called in question* and hence authorities directly dealing with it do not abound." *Id.* at 854 (quoting *Head*, 234 U.S. at 161) (emphasis in original).

So too here. Oregon may not constitutionally punish the conduct of Duff & Phelps in California and New York, which "may have been lawful where it occurred." *State Farm*, 538 U.S. at 421. Indeed, the securities laws of California and New York are far more permissive than those in Oregon. As discussed above, under California law, a plaintiff must plead and prove that an aider or abettor acted with "intent to deceive or defraud" in providing "material assistance in the actual violation." *AREI II Cases,* 216 Cal. App.4th at 1013. New York law requires that a plaintiff plead and prove "(1) the existence of a violation committed by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in achievement of the violation." *Lesavoy v. Lane,* 304 F.Supp.2d 520, 526 (S.D.N.Y. 2004), *aff'd in part and vacated in part on other grounds, Lesavoy v. Gallullo-Wilson*, 170 Fed. Appx. 721 (2nd Cir. 2006) (internal citation omitted). As such, Oregon has no "legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *State Farm*, 538 U.S. at 421. Accordingly, this Court should dismiss Plaintiffs' extraterritorial claims.

### C. Oregon choice-of-law rules require dismissal of Plaintiffs' claims.

Plaintiffs' claims should be dismissed for another reason: the application of Oregon's choice-of-law statutes demonstrates that Oregon law does not apply here.

"When sitting in diversity, [federal courts] apply the choice-of-law rules of the forum state." *Coneff v.AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). In 2010, Oregon codified its choice of law rules in ORS 15.300 to 15.460. Non-contractual claims are governed by ORS 15.400 to 15.460 "when a choice between or among the laws of more than one state is at issue." ORS 15.405. With respect to a claim for secondary liability under ORS 59.115(3), the first question is whether another Oregon statute specifically governs choice-of-law, because the statutes "do not supersede the provisions of other Oregon statutes that expressly designate the law governing a particular noncontractual claim." *Id.* Here, there is no express choice-of-law provision in the Oregon securities laws governing claims for secondary liability. The next step, then, is to apply the pertinent choice-of-law statutes.

#### 1. The non-Oregon Plaintiffs' claims are governed by California law.

The secondary liability claims of Plaintiffs domiciled in California should be dismissed because, under Oregon's choice-of-law statutes, California law applies. And under California law, those Plaintiffs have failed to allege the elements of a secondary liability claim.

ORS 15.440(3)(a) applies to the California Plaintiffs' claims. That statute states:

> (3) If the injured person and the person whose conduct caused the injury were domiciled in different states and the laws of those states on the disputed issues would produce a different outcome, the law of the state designated in this subsection governs.
>
>> (a) If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state.

Here, all Plaintiffs except Plaintiff Nowak are domiciled in California, and there is no basis in the Second Amended Complaint to infer that their injuries resulting from Aequitas's alleged securities fraud occurred elsewhere. Second Am. Comp. ¶¶9-15. Duff & Phelps is a Delaware corporation with its principal place of business in New York. Clemens Decl. ¶3. Its conduct at issue here—the valuations of ACOF companies—occurred in New York and California. *Id.* ¶¶10-15. Thus, for the purposes of ORS 15.440(3)(a):

- "[T]he injured person" (Plaintiffs) and "the person whose conduct [allegedly] caused the injury" (Duff & Phelps)[2] are domiciled in different states—Plaintiffs in California and Duff & Phelps in New York.[3]
- The law of those states "on the disputed issue[] would produce a different outcome." As explained above, California law requires proof of "intent," (*AREI II Cases,* 216 Cal. App.4th 1004), while New York law requires only proof of "knowledge" (*Lesavoy,* 304 F.Supp.2d at 526).
- The injurious conduct (in part) and the resulting injury both occurred in California.
- Therefore, California law governs because "the injured person … was domiciled in that state."

**2. The claims of Plaintiffs domiciled in Oregon are governed by California or New York law.**

Similarly, the secondary liability claims of Plaintiff Nowak, who is domiciled in Oregon, should be dismissed. Under Oregon's choice-of-law statutes, California or New York law

[2] ORS 15.415(2) provides that, for the purposes of the choice-of-law statutes, "[i]f a person is liable for the conduct of another person, both persons are considered to have caused the injury."

[3] "Domicile" is a person's physical "home" at which the person intends to remain indefinitely. *Veenendaal v. Dept. of Revenue*, 2015 WL 2398231, at *4-5 (Or. Tax. Ct., May 18, 2105).

applies; Plaintiff Nowak has failed to allege the elements of a secondary liability claim under New York law.

Plaintiff Nowak is domiciled in Oregon, and there is no basis to infer that his injury resulting from Aequitas's alleged securities fraud occurred elsewhere. Second Am. Comp. ¶13. With regard to his claims, ORS 15.440(3)(c) applies. Subsection (c) states:

> (c) If the injurious conduct occurred in one state and the resulting injury in another state, the law of the state of conduct governs. However, the law of the state of injury governs if:
>
> > (A) The activities of the person whose conduct caused the injury were such as to make foreseeable the occurrence of injury in that state; and
> >
> > (B) The injured person formally requests the application of that state's law by a pleading or amended pleading. The request shall be deemed to encompass all claims and issues against that defendant.

For purposes of ORS 15.440(3)(c):

- The allegedly injurious conduct occurred in California or New York, and the resulting injury occurred in Oregon.
- As discussed above, it was not foreseeable to Duff & Phelps that its conduct in California and New York would cause injury in Oregon.
- Thus, the law of California or New York applies to Plaintiff Nowak's claims.

**D. The Court should dismiss all claims based on the sale of securities prior to February 2014.**

Plaintiffs allege that "Duff & Phelps participated and materially aided in the sales of Aequitas securities during and after 2014." Second Am. Comp. ¶195. Plaintiffs add that "[t]he valuations provided by Duff & Phelps were disclosed and explicitly referenced in ACOF's February 2014 PPM." *Id.* ¶195(c). Thus, as a matter of law, Duff & Phelps could not have "participate[d] or materially aid[ed] in the sale" of any Aequitas security before February 2014,

when Aequitas first allegedly communicated Duff & Phelps's valuation work to investors in the ACOF PPM. Accordingly, all claims based on the sale of Aequitas securities before February 2014 should be dismissed for failure to state a claim against Duff & Phelps.

**E. The Court should dismiss all claims except those based on a sale of an ACOF interest.**

In their Second Amended Complaint, Plaintiffs allege that Duff & Phelps "participated and materially aided in the sales of Aequitas securities during and after 2014," (Second Am. Comp. ¶195), by taking the following actions:

- "Duff & Phelps' December 4, 2013 engagement letter with AIM acknowledged and consented to the use of Duff & Phelps' name, the services provided by it and a description of its business in PPMs and other marketing materials to be provided to investors." *Id.* ¶195(a).
- "Duff & Phelps provided analyses of the value of ACOF's investments, including Carepayment, EDPlus and ETC…. The valuations provided by Duff & Phelps were disclosed and explicitly referenced in ACOF's February 2014 PPM." *Id.* ¶195(c). Duff & Phelps "agreed that [its appraisal reports] could be provided to potential investors and were, in fact, given to potential investors." *Id.* ¶195(b).

As alleged, all of the work performed by Duff & Phelps related only to ACOF. Yet, Plaintiffs seek to hold Duff & Phelps liable for investments in ACF—a wholly different security—while failing to allege any facts that show that Duff & Phelps "participate[d] or materially aid[ed] in" the sale of ACF notes. Rather, Plaintiffs allege:

> Duff & Phelps's valuations [of ACOF portfolio companies] were *also used by Aequitas* to support the asserted value of ACF and to present ACF as a low-risk investment. The ACOF assets valued by Duff & Phelps were included [by Aequitas] on ACF's consolidated financial statements and in summaries given to

> investors to encourage them to invest in ACF and ACOF. … Duff & Phelps' valuations of ACOF enabled ACF to market its multi-million dollar interest in ACOF as a significant asset backing the Private Notes ACF was selling.

*Id*. ¶195(d) (emphasis added).

As the Oregon Supreme Court has made clear, under ORS 59.115(3), "[w]hether one's assistance in the sale is 'material'…depends on the importance of one's personal contribution *to the transaction*. … [I]t is a drafter's knowledge, judgment, and assertions *reflected in the contents of the documents* that are 'material' to the sale." *Prince v. Brydon*, 307 Or. 146, 149, 764 P.2d 1370 (1988) (emphasis added); *see also Ainslie v. First Interstate Bank of Oregon*, 148 Or. App. 162, 184, 939 P.2d 125(1997) ("[L]iability as a participant or a provider of material aid depends on the extent and importance of the defendant's involvement."). Here, Judge Mossman affirmed this Court's rejection of Plaintiffs' "integrated offering" theory, which urged the Court to "disregard[] the separateness of the securities when determining whether the securities were sold in violation of the Oregon Securities law." *Ciuffitelli v. Deloitte & Touche LLP*, Case No. 3:16-cv-580-AC (D. Or. 2017), Amended Findings and Recommendations at 30-31 (April 10, 2017). Rather, to give defendants sufficient notice of their alleged secondary liability, Plaintiffs had to allege the varying relationships each defendant had to different Aequitas entities and their respective securities offerings. *Id.* at 31. That means that Plaintiffs cannot bootstrap Duff & Phelps's valuations of three ACOF companies into a finding of secondary liability for Aequitas's sale of ACF securities. Rather, Plaintiffs must allege facts that, if proved, show that Duff & Phelps directly "participate[d]" or "materially aid[ed] in the sale" of ACF Notes. That Plaintiffs fail to do.

Nowhere do Plaintiffs allege that Duff & Phelps's valuations were disclosed, or even referenced in the ACF balance sheet, or that Duff & Phelps's name was disclosed in the ACF

marketing materials. Rather, Plaintiffs allege only that "[f]or example, June 2014 marketing materials for ACF stated that ACF's total assets had a book value of more than $482 million and were secured by collateral valued at more than $646 million, which included the purported value of ACOF and reflected Duff & Phelps' valuation." Second Am. Comp. ¶195(d). In other words, ACF, as the owner of ACOF, listed the cumulative value of ACOF, one of ACF's assets, on the ACF balance sheet. That is not enough. Oregon courts require a much closer connection to the sale of the securities at issue than Plaintiffs have alleged here. *See, e.g., Anderson v. Carden*, 146 Or. App. 675, 678, 934 P.2d 562 (1997) (plaintiff stated claim under ORS 59.115(3) based on allegations that defendants prepared "the offering memorandum and supporting documentation"); *Ainslie v. Spolyar,* 144 Or. App. 134, 138, 926 P.2d 822 (1996) (defendant's conduct constituted participating in or materially aiding sales where he "provide[d] legal services" "for the offering," including "preparing the final version of the offering memorandum"); *see also Ciuffitelli,* Amended Findings and Recommendations, at 65 ("Accordingly, the court should grant EisnerAmper's motion to dismiss as to the claim for non-seller liability for sales of securities beyond those made by means of promotional materials highlighting EisnerAmper or financial documents audited by EisnerAmper.").

Plaintiffs have not pleaded, and cannot plead facts showing that Duff & Phelps "participate[d]" or "materially aid[ed] in the sale" of ACF securities. Accordingly, all claims based on the sale of any security other than ACOF should be dismissed.

**F. In the alternative, the Court should dismiss all claims based on the sale of any security other than ACOF or ACF.**

If the Court concludes that Plaintiffs have stated claims against Duff & Phelps based on the sales of either ACOF or ACF interests, the Court nevertheless should dismiss all claims based on the sales of securities *other than* ACOF or ACF. Those claims fail because Plaintiffs

do not even attempt to alleged that Duff & Phelps "participate[d] or materially aid[ed] in the sale" of Aequitas securities other than ACOF and ACF.

## CONCLUSION

For all of those reasons, the Court should dismiss Plaintiffs' claims against Duff & Phelps.

DATED this 23rd day of October, 2017.

HARRANG LONG GARY RUDNICK P.C.

By: s/Sharon A. Rudnick
William F. Gary, OSB #770325
Sharon A. Rudnick, OSB #830835

Of Attorneys for Defendant Duff & Phelps, LLC

## CERTIFICATE OF SERVICE

I certify that on October 23, 2017, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT DUFF & PHELPS, LLC'S MOTIONS TO DISMISS** on the party or parties listed below as follows:

- ☑ Via CM / ECF Filing
- ☐ Via First Class Mail, Postage Prepaid
- ☐ Via Email
- ☐ Via Personal Delivery

Keith A. Ketterling, OSB #913368
kketterling@stollberne.com
Timothy S. DeJong, OSB #940662
tdejong@stollberne.com
Jacob S. Gill, OSB #033238
jgill@stollberne.com
Nadia H. Dahab, OSB #125630
ndahab@stollberne.com
Stoll Stoll Berne Lokting & Shlachter P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600

Attorneys For Plaintiffs

Robert S. Banks, Jr., OSB #821862
bbanks@SamuelsLaw.com
Darlene D. Pasieczny, OSB #124172
darlenep@SamuelsLaw.com
Samuels Yoelin Kantor LLP
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone: (503) 226-2966

Attorneys For Plaintiffs

Steve W. Berman, *Pro Hac Vice*
steve@hbsslaw.com
Karl P. Barth, *Pro Hac Vice*
karlb@hbsslaw.com
Catherine Y.N. Gannon, *Pro Hac Vice*
catherineg@hbsslaw.com
Dawn Cornelius, *Pro Hac Vice*
dawn@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292

Attorneys For Plaintiffs

Gary I. Grenely, OSB #751380
ggrenley@gsblaw.com
Paul H. Trinchero, OSB #014397
ptrinchero@gsblaw.com
Robert C. Waver, Jr., OSB # 801350
rwaver@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939

Attorneys for Defendant Deloitte & Touche LLP

Peter A. Wald, *Pro Hac Vice*
peter.wald@lw.com
Gavin M. Masuda, *Pro Hac Vice*
gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8006

Attorneys for Defendant Deloitte & Touche LLP

William Ferranti, OSB #160069
wpf@ferrantiappeals.com
The Ferranti Firm LLC
1819 SW 5th Avenue, #403
Portland, OR 97201
Telephone: (503) 877-9220

Attorneys for Defendant EisnerAmper LLP

Catherine W. Joyce, *Pro Hac Vice*
cjoyce@winston.com
Joanna R. Travalini, *Pro Hac Vice*
jtravalini@winston.com
Linda T. Coberly, *Pro Hac Vice*
lcoberly@winston.com
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-8768

Attorneys for Defendant EisnerAmper LLP

David Markowitz, OSB #742046
davidmarkowitz@markowitzherbold.com
Chad Colton, OSB #065774
chadcolton@markowitzherbold.com
Jeffrey M. Edelson, OSB #880407
jeffedelson@markowitzherbold.com
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: (503) 295-3085

Attorneys for Defendant Sidley Austin, LLP

Brad Brian, *Pro Hac Vice*
brad.brian@mto.com
Bruce A. Abbott, *Pro Hac Vice*
bruce.abbott@mto.com
Kevin L. Brady, *Pro Hac Vice*
kevin.brady@mto.com
Trevor Templeton, *Pro Hac Vice*
trevor.templeton@mto.com
Zachary M. Briers, *Pro Hac Vice*
zachary.briers@mto.com
Michael R. Doyen, *Pro Hac Vice*
michael.doyen@mto.com
Munger Tolles & Olson LLP
355 South grand Avenue, 35th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

Attorneys for Defendant Sidley Austin, LLP

Philip S. Van Der Weele. OSB #863650
phil.vanderweele@klgates.com
K&L Gates LLP
One SW Columbia St., Suite 1900
Portland, OR 97258
Telephone: (503) 226-2727

Attorneys for Defendant Tonkon Torp, LLP

Matthew Kalmanson, OSB #041280
mjk@hartwagner.com
Lindsay H. Duncan, OSB #120974
lhd@hartwagner.com
Hart Wagner, LLP
1000 SW Broadway, Suite 2000
Portland, OR 97205
Telephone: (503) 222-4499

Attorneys for Defendant TD Ameritrade, Inc.

Nicholas Christakos, *Pro Hac Vice*
nicholas.christakos@sutherland.com
Bruce Bettigole, *Pro Hac Vice*
bruce.bettigole@sutherland.com
Gail L Westover, *Pro Hac Vice*
gail.westover@sutherland.com
Eversheds Sutherland LLP
700 Sixth Street NW, Suite 700
Washington, DC 20001-3980
Telephone: (202) 383-0100

Attorneys for Defendant TD Ameritrade, Inc.

Milo Petranovich, OSB #813376
petranovichm@lanepowell.com
Peter Hawkes, OSB #071986
hawkesp@lanepowell.com
SreeVamshi Reddy, OSB #140560
reddyv@lanepowell.com
Lane Powell
601 SW Second Avenue, Suite 2100
Portland, OR 97204
Telephone: (503) 778-2114

Attorneys for Defendant Integrity Bank & Trust

B. Scott Whipple, OSB #983750
scott@whipplelawoffice.com
Whipple Law Office, LLC
1675 SW Marlow Avenue, Suite 201
Portland, OR 97225
Telephone: (503) 222-6004

Attorneys for Intervenor N. Scott Gillis

Ashley M. Simonsen, *Pro Hac Vice*
asimonsen@cov.com
Tammy Albarran, *Pro Hac Vice*
talbarran@cov.com
William Douglas Sprague, *Pro Hac Vice*
dsprague@cov.com
Covington & Burling LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-7057

Attorneys for Intervenor N. Scott Gillis

Jennifer L. Jonak, OSB #115802
jenny@jonak.com
Jonak Law Group, P.C.
85100 Cloverdale Road
Creswell, OR 97426
Telephone: (510) 501-6276

Attorneys for Intervenor Robert J. Jesenik

Jeffrey F. Robertson, *Pro Hac Vice*
Jeffrey.robertson@srz.com
Peter H. White, *Pro Hac Vice*
peter.white@srz.com
Schulte Roth & Zabel LLP
1152 15th Street NW, Suite 850
Washington, DC 20005
Telephone: (202) 729-7470

Attorneys for Intervenor Robert J. Jesenik

Eleanor Dolev, OSB #153324
edolev@mahlergroup.com
Mahler Law Group PLLC
14029 NW Harbor Lane
Portland, OR 97229
Telephone: (971) 220-5386

Attorneys for Intervenor Robert J. Jesenik

Michael B. Merchant, OSB #882680
mbm@bhlaw.com
Black Helterline, LLP
1900 Fox Tower
805 SW Broadway
Portland, OR 97205-3359
Telephone: (503) 224-5560

Attorneys for Intervenor Brian A. Oliver

Jahan P. Raissi, *Pro Hac Vice*
jraissi@sflaw.com
Larisa A. Meisenheimer, *Pro Hac Vice*
lmeisenheimer@sflaw.com
Shartsis Friese LLP
One Maritime Plaza
18th Floor
San Francisco, CA 94111
Telephone: (415) 421-6500

Attorneys for Intervenor Brian A. Oliver

HARRANG LONG GARY RUDNICK P.C.

By: s/Sharon A. Rudnick
William F. Gary, OSB #770325
Sharon A. Rudnick, OSB #830835

Of Attorneys for Defendant Duff & Phelps, LLC

00959043.v6