Case 3:16-cv-00580-AC    Document 272    Filed 10/23/17    Page 1 of 19

**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Jeffrey M. Edelson, OSB #880407**
JeffEdelson@MarkowitzHerbold.com
**Chad M. Colton, OSB #065774**
ChadColton@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax: (503) 323-9105

**Brad D. Brian** (*admitted pro hac vice*)
brad.brian@mto.com
**Bruce A. Abbott** (*admitted pro hac vice*)
bruce.abbott@mto.com
**Kevin L. Brady** (*admitted pro hac vice*)
kevin.brady@mto.com
**Trevor N. Templeton** (*admitted pro hac vice*)
trevor.templeton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, CA  90071-3426
Telephone:     (213) 683-9100

Attorneys for Defendant Sidley Austin LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CUIFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with | CV No. 3:16-cv-00580-AC<br><br>**DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**<br><br>**Oral Argument Requested** |

**DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

| | |
|---|---|
| SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,<br><br>         Defendants. | |

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for defendant Sidley Austin, LLP certify that they conferred in good faith by telephone conference on October 20, 2017, with counsel for the Plaintiffs, but that the parties were unable to resolve this dispute.

## MOTION

Defendant Sidley Austin LLP, pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6), hereby moves to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted. In support of this motion, Defendant Sidley Austin LLP relies on the Memorandum of Points and Authorities that follows, and any further evidence and argument the Court may permit.

**DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

## TABLE OF CONTENTS

**Page No.**

Memorandum of Points and Authorities ................................................................................... 1

I.  Introduction ..................................................................................................................... 1

II. Statement of Facts .......................................................................................................... 3

    A. The Securities at Issue in the SAC ..................................................................... 3

    B. Sidley's Non-Involvement with Five of the Six Offering Entities .................. 3

    C. Dismissal of the First Amended Complaint ...................................................... 6

III. Legal Standards ............................................................................................................. 7

IV. Argument ....................................................................................................................... 8

    A. Plaintiffs Still Have Not Adequately Alleged Sidley's Participation or Material Aid in the Sale of any Securities Other than ACOF ........................................ 8

    B. Plaintiffs Cannot Recover Based on Securities They Did Not Purchase ....... 14

V. Conclusion ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Ainslie v. Spolyar*,
    144 Or. App. 134 (1996) .................................................................................... 8, 9

*Anderson v. Carden*,
    146 Or. App. 675 (1997) ....................................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 7

*Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.*,
    No. 3:16-cv-580-AC (D. Or. Apr. 10, 2017) ................................................. passim

*Cox v. Holcomb Family Ltd. P'ship*,
    No. 1308-12201 (Or Cir. Ct. Cnty. of Multnomah Dec. 14, 2015) ................... 11

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .............................................................................. 7

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) ............................................................. 14

*Prince v. Brydon*,
    307 Or. 146 (1988) .............................................................................................. 10

*State v. Marsh & McLennan Companies, Inc.*,
    353 Or. 1 (2012) .................................................................................................. 14

**Statutory Authorities**

ORS 59.115 .............................................................................................................. passim

**Rules and Regulations**

Fed. R. Civ. P. 8 ............................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

Defendant Sidley Austin LLP ("Sidley") hereby incorporates and joins in all arguments made in the Joint Motion filed concurrently with this brief.

In response to Sidley's previous motion to dismiss the First Amended Complaint ("FAC"), the Court dismissed all claims against Sidley with leave to amend.  *See Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.*, No. 3:16-cv-580-AC, Dkt. No. 242 (the "Amended F&R") (D. Or. Apr. 10, 2017), *report and recommendation adopted*, Dkt. No. 250 (D. Or. July 5, 2017). Plaintiffs responded by filing an amended complaint that is more than triple the original's length. (Second Amended Class Action Complaint ("SAC"), Dkt. No. 257.)  Despite its length, however, the SAC has not—and cannot—fix the basic problems that led the Court to dismiss the prior complaint with respect to Sidley.  Indeed, of the more than 100 pages added to the SAC, only about three pages have anything to do with Sidley, and most of those concern allegations previously made (and rejected) in the earlier round of briefing.

First, although Plaintiffs assert that Sidley should be secondarily liable for their investments in six distinct Aequitas entities, the SAC (like its predecessor) alleges that Sidley drafted and reviewed offering documents for only *one* of those entities: Aequitas Capital Opportunities Fund ("ACOF").  With respect to the remaining five entities, the SAC fails to identify any legal services that Sidley allegedly provided to Aequitas Income Opportunity Fund, LLC ("AIOF"), Aequitas Income Protection Fund, LLC ("AIPF"), or Aequitas MotoLease Financial, LLC ("AMLF").  Instead, the SAC vaguely alleges—once again—that Sidley "prepared legal papers" for unidentified Aequitas entities and provided unspecified "legal services" to AIM—an investment manager that offered no securities for sale.  (SAC ¶ 192(b), (i).)  As this Court has previously held, such allegations are insufficient to establish that Sidley "participated" or "materially aided" in any offering made by AIOF, AIPF, AMLF, or any other entity, as ORS 59.115(3) requires.  *See* Amended F&R, at *67–*68 (dismissing Plaintiffs'

allegations of secondary liability based on the provision of unspecified legal services as "little more than a legal conclusion").

Second, with respect to the remaining entities—Aequitas Commercial Finance, LLC ("ACF") and Aequitas Income Opportunity Fund II, LLC ("AIOF-II")—Plaintiffs again largely repeat allegations that the Court has already deemed insufficient. In particular, despite the Court's previous ruling that "Plaintiffs must specify when Sidley enabled this transaction, which security or securities the transaction related to, and which sales the transaction enabled," the SAC's allegations regarding ACF and AIOF-II fail to identify what securities sales—if any—were caused by Sidley's legal services and when those sales occurred. *See* Amended F&R, at *69.

More fundamentally, the ACF-related services referenced in the SAC—providing legal opinions to two banks in connection with loans unrelated to any securities offering and drafting a memorandum for an auditor on a regulatory compliance issue—are too remote from any sale of securities to constitute participation or material aid under Oregon law. At most, Sidley provided opinions and a memorandum to other non-sellers; those non-sellers, in turn, extended credit or issued audit opinions that allegedly created an "illusion of success and legitimacy"; and that "illusion" allegedly allowed unidentified Aequitas entities to induce investors to buy securities. In other words, Sidley is (even allegedly) far removed from any securities transaction and separated from the offerings at issue by multiple independent actors. No Oregon case supports a finding of secondary liability based on alleged legal services this remote from a sale of securities.

Third, and finally, Plaintiffs cannot establish the privity necessary to pursue claims based on securities they did not purchase. Plaintiffs' claims should therefore be dismissed to the extent they are based on securities sold in connection with ASFG, CP Lending I, or the alleged "Note Manufacturing Program."

## II. Statement of Facts

### A. The Securities at Issue in the SAC

Defendants' Joint Motion to Dismiss ("Joint Motion") provides an overview of the SAC's allegations. Sidley incorporates the Joint Motion's Statement of Facts by this reference, and summarizes here only the specific allegations against Sidley.

The SAC alleges that six distinct Aequitas entities sold securities to Plaintiffs in violation of Oregon law. (SAC ¶¶ 33–67, 68–166, 181–82.) The securities sold by these entities include promissory notes and interests issued by ACF, AIPF, AIOF, AIOF-II, AMLF, and ACOF. (*Id.*) The SAC also references a "Note Manufacturing Program," but provides no detail on what the Program was, how it operated, or what Aequitas entities sold securities under that Program, other than perhaps AMLF. (*See id.* ¶ 63 (alleging generally that the AMLF offering was "part of the Aequitas 'Note Manufacturing Program'"); *id.* ¶ 192(h) (alleging that Sidley advised unspecified Aequitas entities on compliance issues in connection with the "Note Manufacturing Program").)

Notably, no Plaintiff claims to have purchased at least two additional securities identified in the SAC: interests issued by Aequitas Enhanced Income Fund, LLC ("AEIF") or notes issued by Aequitas Private Client Fund, LLC ("APCF"). (*Compare id.* ¶¶ 58–62, 163–65 (alleging non-registration and material misstatements and omissions in offering documents for the AEIF Interests), *and id.* ¶¶ 166 (alleging material misstatements and omissions in offering documents for the APCF Notes); *with id.* ¶¶ 196–202 (identifying Plaintiffs' securities purchases and failing to list either security).) Moreover, no Plaintiff claims to have purchased securities through, or suffered any harm in connection with, the alleged "Note Manufacturing Program." (*Id.* ¶¶ 196–202 (failing to reference the Program in connection with any of Plaintiffs' securities purchases).)

### B. Sidley's Non-Involvement with Five of the Six Offering Entities

The SAC alleges that Sidley drafted offering documents and other materials necessary for the sale of securities by a single Aequitas entity: ACOF. Specifically, the SAC alleges that Sidley drafted ACOF's PPMs and PPM supplements, subscription documents, administration

Page 5 -  DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S
         SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM

agreement, marketing materials, term sheet, fact sheet, and limited partnership agreement. (SAC ¶ 192(c).) It further alleges that Sidley "revis[ed] the pitch book" for the ACOF offering. (*Id.*)

Unlike securities issued by the other five offering entities, the ACOF Interests were shares in an investment vehicle that consisted of private equity interests in various portfolio companies. While the debt-based offerings provided for specified rates of return and fixed maturity dates (*see, e.g.*, ACF PPM, Nov. 30, 2013, at 1; AIOF-II PPM, Oct. 1, 2014, at 3–4), the ACOF Interests offered no set rate of return (*see* ACOF PPM, Feb. 2014, at 42).[1] Thus, the SAC's allegation that Aequitas falsely told investors that it had "enjoyed consistent quarterly interest payments with no loss of principal since 2003," and "that their securities were liquid, meaning that investors could cash out of their investments if they chose to do so" (SAC ¶¶ 3), cannot apply to ACOF, which did not offer regular interest payments, and which specifically disclosed that its investments were *illiquid*. (ACOF PPM at ii.) Many of Plaintiffs' other allegations are also inapplicable to ACOF, such as the allegation that Aequitas failed to disclose that Corinthian Colleges was the source of its student loan receivables. (*Compare* SAC ¶¶ 148(f) (alleging that the AIOF PPM was misleading because it failed to disclose Corinthian); *with* ACOF PPM, Feb. 2014, at 12 (disclosing that an ACOF portfolio company "has only financed loans for the for-profit, post-secondary educational institutions of Corinthian Colleges, Inc. [] and to Corinthian students.").)

In marked contrast to its ACOF allegations, the SAC does not identify any legal services that Sidley provided to three of the six Aequitas entities that allegedly sold securities to Plaintiffs: AIOF, AIPF, and AMLF.[2] In the paragraphs that describe these entities' securities offerings, Sidley is not mentioned. (*See* SAC ¶¶ 25, 27, 31–32, 38–47, 63–67, 147–49, 158–62, 181–82.) Instead, the SAC alleges that a different law firm, Defendant Tonkon Torp LLP, was

---

[1] The PPMs for these accused offerings, as well as the ACOF PPM, are attached to the Declaration of Gavin Masuda filed concurrently with Deloitte's Joint Motion to Dismiss the First Amended Complaint, Dkt. Nos. 79, 86. *See* Amended F&R, at *35–*36 (taking judicial notice of PPMs referenced in Plaintiffs' Complaint).

Page 6 -  DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S
         SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM

specifically identified as "legal counsel" to AIOF and AIPF and drafted the documents for both entities' securities offerings. (*See id.* ¶ 147, 158 (alleging that each entity's PPM identified Tonkon as the entity's legal counsel for the offering); *id.* ¶ 191(c) (alleging that Tonkon drafted every PPM that listed Tonkon as legal counsel).) It further alleges that Tonkon "prepared legal papers necessary for" AMLF's securities offering. (*Id.* ¶ 191(a).)

Similarly, the SAC does not allege any facts indicating that Sidley drafted offering materials or was otherwise involved in securities offerings by the remaining two Aequitas entities at issue: ACF and AIOF-II. Although the SAC devotes 21 paragraphs and 37 pages of text to discussing the ACF Notes and AIOF-II Notes, Sidley is not mentioned in any of those allegations. (*See id.* ¶¶ 33–36, 53–57, 136–46, 150–52.) Rather, a different law firm (Tonkon) is again alleged to have provided legal services in connection with the ACF Notes and AIOF-II Notes offerings, including drafting PPMs and "prepar[ing] legal papers necessary for" each fund to complete the sale of securities. (*See id.* ¶¶ 136, 150 (alleging that the ACF Notes and AIOF-II Notes PPMs listed Tonkon as legal counsel); *id.* ¶ 191(a) (alleging that Tonkon prepared legal papers necessary for securities sales by, among other entities AIOF-II and AMLF).)

In an apparent effort to save their claims involving these non-ACOF entities and cure the deficiencies identified in this Court's previous Order, the SAC makes additional, vague allegations about legal services provided by Sidley that are unrelated to any securities offering. Many of these allegations repeat allegations from the FAC, which this Court has already rejected. For instance, the SAC repeats verbatim the FAC's allegation that "Sidley provided legal services to [Aequitas Investment Management] in connection with AIM's role as an SEC-registered investment adviser and the manager of numerous Aequitas investment vehicles." (*Compare* FAC, Dkt. No. 57 ¶ 30(d); *with* SAC ¶ 192(i).) Like the FAC, however, the SAC neither identifies any legal services that Sidley provided to AIM, nor explains how Sidley's work for AIM—which is not alleged to have sold any securities—was connected to Plaintiffs'

---

[2] The SAC does allege in passing that Sidley "represented . . . AMLF" but does not specify the timing and nature of the representation or how Sidley's provision of legal services—if any—related to AMLF's sale of securities. (SAC ¶ 192(g).)

Page 7 -   DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S
            SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM

securities purchases.  (SAC ¶ 192(i).)  The SAC also rehashes the allegation that Sidley provided "other legal services to Aequitas, including legal opinions and other legal services" in support of Aequitas's application for loans from Wells Fargo and Bank of America.  (*Compare* FAC ¶ 30(d); *with* SAC ¶ 192(j).)  Yet the SAC—like the FAC—does not specify how Sidley's services enabled any of the accused offerings, or if the actual Aequitas entity that received the services or bank loans even *issued* securities.  (*Id.*)

Similarly, other allegations reference legal services that were not mentioned in the FAC but provide no facts connecting these services to any seller or securities offering.  To take one example, the SAC alleges that Sidley was "engaged by ASFG" and "represented CP Lending I . . . [and] AMLF" without specifying what services Sidley performed for those entities or how those services facilitated any of the challenged offerings.  (*Id.* ¶ 192(g).)  Similarly, with respect to AIOF-II, the SAC alleges that Sidley "worked with Aequitas to create a structure" for Defendant Integrity Bank & Trust to purchase securities from Aequitas entities.  (*Id.* ¶ 192(f).)  Yet it fails to explain what that "structure" was, whether it was ever implemented by AIOF-II, or how it was material to Integrity's securities purchases.  (*Id.*)  Finally, the SAC alleges that Sidley advised ACF on matters relating to the Investment Company Act of 1940 ("1940 Act") and issued opinions and a memorandum regarding ACF's compliance with the Act's requirements.  (*See id.* ¶¶ 192(d), 192(e), 192(j).)  Those documents were allegedly issued, however, not to Plaintiffs or prospective investors in any Aequitas entity, but to auditors and a commercial bank.  (*Id.*)  Simply put, for all its length, the SAC does not identify any individual Aequitas entity whose securities sales were enabled by Sidley's legal opinions or compliance advice.  (*Id.*)

C.     **Dismissal of First Amended Complaint**

Plaintiffs previously asserted secondary liability claims against Sidley and other Defendants in an FAC filed on May 19, 2016.  Sidley moved to dismiss the FAC for failure to plausibly allege Sidley's participation in any offering other than ACOF's, and this Court granted Sidley's motion in its entirety finding Plaintiffs' allegations "factually insufficient."  *See Ciuffitelli*, Amended F&R, at *70.  As an initial matter, this Court rejected all allegations that

**Page 8 -   DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S
              SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

referenced Defendants' interactions with "Aequitas" rather than a specific Aequitas entity. *See id.* at \*27–\*32. The Court explained that allegations that Defendants participated or materially aided in securities sales by "Aequitas" do not provide adequate notice to Defendants and cannot state a plausible claim for secondary liability. *See id.* at \*29–\*30 (dismissing claims against Defendants based on allegations that "improperly refer to a defendant's interactions with 'Aequitas.'"). Relatedly, the Court held that Plaintiffs' "integrated offering" theory was unsupported by Oregon law and could not excuse Plaintiffs' failure to distinguish between securities sold by different Aequitas entities. *See id.* at \*32.

With respect to Sidley, the Court rejected the theory that merely alleging that a law firm served "as legal counsel" or provided "unspecified legal services" to an Aequitas entity is enough to state a claim under ORS 59.115(3). *Id.* at \*69. Instead, the allegations must "identify[] the services provided and how they related to the Aequitas entities' sale of securities." *Id.*; *see also id.* at \*67–\*68 (holding that Plaintiffs' allegations of unspecified legal services by another law firm are "little more than a legal conclusion, and thus do not render their legal-services-based theory plausible"). Because the FAC provided insufficient detail about Sidley's interactions with any Aequitas entity other than ACOF, the Court dismissed Plaintiffs' claims with leave to amend. *Id.* at \*69–\*70.

### III.  Legal Standards

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Federal Rule of Civil Procedure 8, a complaint must contain "enough [factual allegations] to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must assume the truth of facts alleged in the complaint, but need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV. Argument

As stated previously, Sidley joins and incorporates by reference each of the arguments made in the Joint Motion. The following arguments identify additional deficiencies in the SAC with respect to allegations against Sidley, which fail to identify any connection between Sidley and any entity other than ACOF capable of supporting a secondary liability claim.

### A. Plaintiffs Still Have Not Adequately Alleged Sidley's Participation or Material Aid in the Sale of any Securities Other than ACOF.

Oregon courts have carefully defined the scope of liability for lawyers under ORS 59.115(3). Lawyers who themselves did not sell securities are potentially liable only when they have substantial, direct involvement in the securities sales at issue. *See, e.g.*, *Anderson v. Carden*, 146 Or. App. 675, 678 (1997) (concluding that lawyers could be liable under ORS 59.115(3) when they "prepar[ed], among other things, the offering memorandum and supporting documentation, a tax opinion letter, projections and appraisals"); *Ainslie v. Spolyar*, 144 Or. App. 134, 137–38, 144–45 (1996) (affirming judgment where the lawyer "prepar[ed] the final version of the offering memorandum and a number of related documents, including the application to register the units with the Oregon Corporation Division," "conferr[ed] with others involved in preparing the offering," and "continued to be involved with the offering thereafter, including assisting at least one subscriber in financing his subscription").

The Court has distilled from these Oregon decisions a two-part test for determining liability for "participation or material aid." *Ciuffitelli*, Amended F&R, at *53–*54. "First, the non-seller's interactions with the seller must have a causal relationship with the transaction. . . . Second, the non-seller's conduct must reflect some 'knowledge, judgment' or other specialized skills particular to the non-seller." *Id.* As explained below, Plaintiffs cannot satisfy this test against Sidley with respect to any of the Aequitas securities at issue other than ACOF.

1. **Plaintiffs Still Fail to Allege that Sidley Provided any Specific Services to Half of the Offering Entities at Issue—AIOF, AIPF, and AMLF—and Repeat Allegations Regarding AIM that this Court has Already Rejected.**

Plaintiffs allegedly purchased securities from six distinct Aequitas entities: AMLF, AIOF, AIPF, ACF, AIOF-II, and ACOF. Yet the SAC fails to identify *any* legal services that Sidley provided with respect to AIOF, AIPF, or AMLF—much less services that had a causal, material connection to the entities' securities offerings. *See Ciuffitelli*, Amended F&R, at *54. Plaintiffs' claims against Sidley should be dismissed to the extent they are based on alleged purchases from any of those entities. Plaintiffs' claims based on Sidley's alleged services for AIM should also be dismissed. Plaintiffs' AIM allegations remain unchanged from the FAC, where they were dismissed for failure to state a secondary liability claim.

**AIOF and AIPF**. With respect to AIOF and AIPF, the SAC does not allege that Sidley performed any legal services whatsoever. In the paragraphs that describe these entities, Sidley is not mentioned. (*See id.* ¶¶ 25, 27, 31–32, 38–47, 147–49, 158–62.)

**AMLF**. As for AMLF, the SAC blandly asserts that Sidley "represented" AMLF in connection with an unspecified matter. (SAC ¶ 192(g).) But it neither explains the nature of Sidley's representation nor identifies any legal services that Sidley provided, let alone connects those services to a sale of securities by AMLF or any other Aequitas entity.[3]

The SAC not only fails to allege that Sidley participated or materially aided in the sale of securities by AIOF, AIPF, and AMLF; it affirmatively alleges that another law firm (Tonkon) served as "legal counsel" for AIOF and AIPF and drafted legal papers necessary for AIOF, AIPF, and AMLF to sell securities. (*See id.* ¶ 147, 158 (alleging that AIOF and AIPF's PPMs identified Tonkon as the entities' legal counsel); *id.* ¶ 191(a) (alleging that Tonkon "prepared legal papers necessary for" the AIOF, AIPF, and AMLF securities offerings).) Thus, a law firm

---

[3] The SAC does suggest a possible connection between certain securities sold by AMLF and the alleged "Note Manufacturing Program," for which Sidley allegedly provided legal advice. (SAC ¶ 192(h).) But it does not explain the nature of this connection, how Sidley's services for the Program related to AMLF (if at all), or whether any Plaintiff bought AMLF Notes pursuant to the Program. (*Id.*)

Page 11 - DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM

was involved in these sales—but it was not Sidley.  Given Sidley's nonexistent role, it is unsurprising that the SAC fails to allege any facts connecting Sidley to any of these entities' securities offerings.

**AIM**.  Rather than identifying services that Sidley provided to AIOF, AIPF, or AMLF, the SAC generally alleges that Sidley "prepared legal papers" for unidentified Aequitas entities to sell securities and provided unspecified "legal services" to AIM—an entity that is not alleged to have sold any securities at all.  (SAC ¶ 192(b), (i).)  Plaintiffs relied on these same allegations in the FAC, and the Court rejected them as legally insufficient.  *See Ciuffitelli*, Amended F&R, at *69 ("[T]he FAC does not identify what legal services Sidley provided for AIM, which is Sidley's primary alleged connection to the Disputed Securities other than the ACOF Interests.").  Their reappearance in the SAC requires the same result.

> 2. **With Regards to the Remaining Entities—ACF and AIOF-II— Plaintiffs Again Largely Repeat or Rephrase Allegations that the Court has Already Deemed Insufficient.**

Although the SAC does allege that Sidley provided legal services to the remaining three entities—ACF, AIOF-II, and ACOF—Plaintiffs do not adequately allege Sidley's secondary liability for any entity other than ACOF.[4]  As a result, all claims based on purchases from ACF or AIOF-II should be dismissed.

> a. **The Legal Services that Sidley Allegedly Provided to ACF Fail to Establish that Sidley Participated or Materially Aided in its Sale of Challenged Securities.**

Unlike in other cases where attorneys have been held secondarily liable for a securities offering, the SAC does not allege that Sidley actually drafted offering documents or provided other legal services in connection with the sale of ACF Notes.  *See, e.g.*, *Prince v. Brydon*, 307 Or. 146, 148–50 (1988) (holding non-seller attorney could be liable under ORS 59.115(3) when he drafted a limited partnership agreement and major portions of the partnership's offering circular and gave an opinion on the partnership's tax status, which was provided to prospective

---

[4] Sidley concedes that Plaintiffs have adequately alleged Sidley's participation or material aid in the sale of ACOF securities, but their ACOF claims should still be dismissed for the reasons stated in the Joint Motion.

**Page 12 - DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

investors); *Anderson*, 146 Or. App. at 678 (holding non-seller attorneys could be secondarily liable for a securities offering when they prepared "the offering memorandum and supporting documentation, a tax opinion letter, projections and appraisals").  Indeed, Plaintiffs specifically allege that a different law firm drafted the ACF PPM and prepared other documents necessary for ACF's securities sales.  (*See* SAC ¶ 136 (alleging that ACF's PPM identified Tonkon as the entity's legal counsel for the ACF Notes offering); *id*. ¶ 191(c) (alleging that Tonkon drafted every PPM that listed Tonkon as legal counsel).)  Rather than alleging Sidley's involvement in the ACF Notes offering, Plaintiffs base their ACF-related claims on three alleged interactions that are unrelated to any sale of securities—let alone a specific securities offering at issue in this case.

First, Plaintiffs allege that Sidley helped unspecified Aequitas entities secure "loan facilities with Bank of America and Wells Fargo Bank" by providing a legal opinion regarding ACF's status under the 1940 Act.  (SAC ¶ 192(j).)  This allegation repeats an allegation that the Court has already rejected.  *See Ciuffitelli*, Amended F&R, at *69 ("Plaintiffs additionally allege the bank loan enabled further securities sales by promoting an image of financial success. . . . [T]he lack of details regarding the specific seller and timing of this transaction is fatal.  Plaintiffs must specify when Sidley enabled this transaction, which security or securities the transaction related to, and which sales the transaction enabled.").

Although the SAC now identifies an additional lender and an opinion that Sidley prepared for Wells Fargo, the allegation is otherwise unchanged from the FAC.  The SAC—like the FAC—fails to identify any specific securities sales that Sidley's services enabled or the timing of the relevant transactions.[5]  Instead, the SAC continues to rely on the vague assertion

---

[5] Among other defects, Plaintiffs do not allege that the Aequitas entity that received the bank loans offered any securities for sale or used the loans in furtherance of a securities offering. Nor can Plaintiffs make any such allegations because the bank loans were made to an operating company, CarePayment LLC.  This case is therefore unlike *Cox v. Holcomb Family Ltd. P'ship*, No. 1308-12201(Or Cir. Ct. Cnty. of Multnomah Dec. 14, 2015), where the bank loan was actually used to fund redemption payments to investors.  Here, by contrast, Plaintiffs do not allege any facts connecting the Wells Fargo and Bank of America loans to the sale or redemption of securities; nor can they.

that "Aequitas" relied on the loan facilities to sell securities—an allegation which the Court has found insufficient to state a secondary liability claim. *Ciuffitelli*, Amended F&R, at *29–*30 (dismissing allegations that "improperly refer to a defendant's interactions with 'Aequitas'"). This defect alone requires dismissal of all claims against Sidley based on the alleged Wells Fargo and Bank of America loans.

More generally, Plaintiffs' theory of liability is simply untenable, as there is no causal link between Sidley's legal opinions in connection with a loan and any of the sales at issue. The SAC alleges that Sidley issued opinions to two banks. These opinions, in turn, assisted the banks in extending credit to an unidentified Aequitas entity, which "promoted the illusion of success and legitimacy" that ultimately induced investors to buy securities, which Plaintiffs have been unable to identify. (SAC ¶ 192(j).) In short, Sidley is at least three steps removed from any sale and separated from the transactions by banks, their legal counsel, and other actors. No Oregon case supports a finding of secondary liability based on conduct this far removed from a securities sale. *Cf. Ainslie*, 144 Or. App. at 145 (holding that attorney participated in an offering when he prepared the offering memorandum and registration application, implemented a transaction designed to avoid a foreclosure, and "continued to provide legal services . . . for the offering from then until after its completion"); *Cox v. Holcomb Family Ltd. P'ship*, No. 1308-12201, at *7–*8 (Or. Cir. Ct. Cnty. of Multnomah Dec. 14, 2015) (finding that a bank that loaned funds to a seller could be considered a participant in the offerings when the seller used the funds to make redemption payments to investors).

Second, Plaintiffs allege that Sidley "advised Aequitas on how to regain compliance" with the 1940 Act. (SAC ¶ 192(e).) Even assuming the truth of this allegation, it establishes only that Sidley counseled an Aequitas entity on how to follow a particular SEC rule. That allegation does not so much as mention a securities offering or explain how Sidley's counsel affected any Aequitas entity's securities business. The allegation therefore fails to establish any connection—much less a causal, material connection—between Sidley's alleged advice and any of the specific securities sales at issue.

Third, Plaintiffs allege that Sidley drafted a memorandum for EisnerAmper (another non-seller) regarding ACF's status under the 1940 Act.  (SAC ¶ 192(d).)  This allegation, too, fails to identify any particular securities sale, despite this Court's earlier ruling expressly requiring that information.  *See Ciuffitelli*, Amended F&R, at *69 ("[T]he lack of details regarding the specific seller and timing of this transaction is fatal.")

Moreover, as with the bank loans, Sidley's drafting of a memorandum for EisnerAmper is far too distant from any securities sale to support a finding of secondary liability.  Even under Plaintiffs' theory, Sidley merely provided a memorandum to EisnerAmper, which, in turn, assisted EisnerAmper in conducting its audit of the Aequitas entities.  (SAC ¶ 192(d).)  Plaintiffs' apparent claim that conduct this far removed from any offering rises to the level of "participating" or "materially aiding" in a specific securities offering is both unprecedented and dangerous.  At this level of generality, virtually any professional that provided services to any Aequitas entity "materially aided" in the sale of specific securities.  That is not the law.

    **b.** **While Plaintiffs Have Provided Additional Allegations Relating to AIOF-II, the Legal Services Sidley Allegedly Provided Also Fail to Establish Actionable Involvement in AIOF-II's Offerings.**

As for AIOF-II, Plaintiffs ground their claims against Sidley in the allegation that "Sidley worked with Aequitas to create a structure that would allow Integrity to do what was originally intended—that is, to act as an aggregator of individual investments—via AIOF-II."  (SAC ¶ 192(f).)  Even if this allegation is true (it is not), it fails to identify any specific services that Sidley provided to AIOF-II or explain how those services related to any individual securities offering.  The SAC does not, for instance, identify the nature of the "structure" that Sidley allegedly worked to develop; it does not explain whether the structure was actually used by AIOF-II or any other Aequitas entity; and it fails to allege—even conclusorily—whether the structure was material to Integrity's purchase or sale of AIOF-II Notes to investors.

The SAC *does* make clear that none of the alleged problems with the AIOF-II Notes had anything to do with the "structure" with which Sidley was supposedly involved.  (*See* SAC ¶¶ 53–57, 150–52 (alleging various securities law violations in connection with the AIOF-II Notes

offering but failing to allege any violation relating to the alleged "structure").)  The SAC also establishes that a different law firm (Tonkon) prepared the offering documents for AIOF-II's offering.  (*See* SAC ¶ 150 (alleging that AIOF-II's PPM identified Tonkon as the entity's legal counsel for the AIOF-II Notes offering); *id.* ¶ 191(c) (alleging that Tonkon drafted every PPM that listed Tonkon as legal counsel).)  Again, while a law firm may have participated or materially aided in the sale of AIOF-II Notes, it was not Sidley.

For all these reasons, the SAC fails to state a plausible claim against Sidley with respect to the AIPF Interests, AIOF Notes, AMLF Notes, ACF Notes, or AIOF-II Notes.  The claims against Sidley relating to Plaintiffs' purchase of those five securities should be dismissed.

### B.  Plaintiffs Cannot Recover Based on Securities They Did Not Purchase.

In a final effort to support Plaintiffs' secondary liability claims as to Sidley, the SAC also mentions legal services that Sidley supposedly provided to other Aequitas entities beyond the six entities that sold Plaintiffs the challenged securities.  Plaintiffs, however, did not purchase any securities from these entities.  To the extent Plaintiffs' claims are based on any securities that they did not purchase, they should also be dismissed because Plaintiffs cannot establish the privity necessary to state an ORS 59.115 claim.

In particular, the SAC alleges that Sidley "was engaged by ASFG, LLC" and also "represented . . . CP Lending I, LLC."  (SAC ¶ 192(g).)  Likewise, the SAC alleges that Sidley provided legal advice regarding a "Note Manufacturing Program."  (SAC ¶ 192(h).)  Importantly, however, no Plaintiff is alleged to have purchased any securities from any of these entities or programs.  Because Plaintiffs did not purchase any securities from ASFG, CP Lending I, or the Note Manufacturing Program, they cannot satisfy the privity requirement necessary to state a claim relating to these securities.[6]  *See State v. Marsh & McLennan Companies, Inc.*, 353

---

[6] The privity requirement also means that Plaintiffs lack standing to assert claims in connection with securities they did not purchase.  *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010) ("Under Article III, Plaintiffs lack standing because they have no personal stake in the outcome and have suffered no injury from offerings which they did not purchase.").  This Court has previously decided to "defer any ruling on standing until its ruling on class certification."  Amended F&R at *73.

Or. 1, 12 (2012) (explaining that ORS 59.115 "established a cause of action only for purchasers of stocks damaged by misrepresentations made in direct, face-to-face securities transactions").

## V. Conclusion

For all these reasons, as well as those stated in the Joint Motion, the SAC fails to state a claim against Sidley under ORS 59.115(3) and should be dismissed with prejudice.

DATED this 23rd day of October, 2017.

                            MARKOWITZ HERBOLD PC

                            By: *s/ Jeffrey M. Edelson*
                                David B. Markowitz, OSB #742046
                                Jeffrey M. Edelson, OSB #880407
                                Chad M. Colton, OSB #065774
                                (503) 295-3085

                                Brad D. Brian
                                Brad.brian@mto.com
                                Bruce A. Abbott
                                Bruce.abbott@mto.com
                                Kevin L. Brady
                                Kevin.brady@mto.com
                                Trevor N. Templeton
                                Trevor.templeton@mto.com
                                MUNGER, TOLLES & OLSON LLP
                                Admitted Pro Hac Vice

                                Of Attorneys for Defendant Sidley Austin LLP

CIUFDE\667760