**Bruce M. Bettigole** (*pro hac vice*)
Email: brucebettigole@eversheds-sutherland.com
**Nicholas T. Christakos** (*pro hac vice*)
Email: nicholaschristakos@eversheds-sutherland.com
**Gail L. Westover** (*pro hac vice*)
Email: gailwestover@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593

**Matthew J. Kalmanson**
Email: mjk@hartwagner.com
**Lindsay Howk Duncan**
Email: lhd@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Attorneys for Defendant TD Ameritrade, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, et al.,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP, et al.,

Defendants.

Civil Action No. 3:16-cv-00580-AC

**DEFENDANT TD AMERITRADE, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM**

**Oral Argument Requested**

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................3

II. FACTUAL ALLEGATIONS AGAINST TD AMERITRADE ........................................3

III. APPLICABLE PLEADING STANDARDS ....................................................................6

IV. ARGUMENT ....................................................................................................7

A. This Court Does Not Have Personal Jurisdiction Over TD Ameritrade With Respect to the Claims by Non-Oregon Plaintiffs ....................................................9

1. General Jurisdiction Is Lacking ................................................................10

2. Specific Jurisdiction Is Lacking ................................................................12

B. Application of ORS 59.115 to TD Ameritrade Conduct That Is Allegedly Directed to Non-Oregon Customers Would Violate the Dormant Commerce Clause and the Due Process Clause ....................................................................................15

C. Oregon Choice of Law Rules Point to California Law with Respect to the Customer Plaintiffs' Claims but Plaintiffs Fail to Allege the Elements of Their Claims Under California Law ....................................................................20

V. CONCLUSION ....................................................................................................28

# TABLE OF AUTHORITIES

**Cases**: **Page(s)**


*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ......................6

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) ..........................................17

*Arei II Cases*, 157 Cal. Rptr. 3d 368, 216 Cal. App. 4th 1004 (App. 1 Dist. 2013) ..........19, 23, 25

*Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021 (D. Or. 2012) .................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5-6

*Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of So. Cal.*, 159 F.3d 1178 (9th Cir. 1998) ......................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................5

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ...........................................................................19

*BMW of North Am. v. Gore*, 517 U.S. 559 (1996) ..............................................................19

*BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (May 30, 2017) ...............................................9, 10, 11

*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (June 19, 2017) ........................................................... 7, 12, 14-15

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573 (1986) ........15

*Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) ..........................................................21

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 834 F. Supp. 2d 949 (C.D. Cal. 2012) ......................................................................................................26

*D. Brutke's Victory Hills, LLC v. Tutera*, No. 3:12-cv-01951-SI, 2013 WL 3818146 (July 22, 2013) ..........................................................................................................6

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ..................................................9, 10, 12

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ................................................................6

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) .........................................................................15

*Fakhrdai v. Mason*, 72 Or. App. 681, 696 P.2d 1164 (1985) ...............................................25

*Frezza v. Google Inc.*, No. 5:12–cv–00237–RMW, 2013 WL 1736788 (N.D. Cal. April 22, 2013) ........ 27

*Friese v. Superior Court*, 134 Cal. App. 4th 693 (2005), *as modified on denial of reh'g* (Dec. 29, 2005), *as modified* (Jan. 24, 2006) ........ 23, 26

*Frosty v. Textron, Inc.*, 891 F. Supp. 551 (D. Or. 1995) ........ 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ........ 9, 10

*Gordon & Co. v. Ross*, 63 F. Supp. 2d 405 (S.D.N.Y. 1999) ........ 26

*Granfield v. NVIDIA Corp.*, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ........ 28

*Healy v. Beer Inst. Inc.*, 491 U.S. 324 (1989) ........ 15, 16, 19

*Huntington v. Attrill*, 146 U.S. 657 (1892) ........ 19

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........ 9-10

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ........ 26, 27-28

*Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) ........ 17

*Morley-Murphy Co. v. Zenith Elec. Corp.*, 142 F.3d 373 (7th Cir. 1998) ........ 17

*National Collegiate Athletic Assoc. v. Miller*, 10 F.3d 633 (9th Cir. 1993) ........ 16-17, 19

*New York Life Ins. Co. v. Head*, 234 U.S. 149 (1914) ........ 19

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987) ........ 9

*In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017) ........ 21

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) ........ 10, 11

*Prince v. Brydon*, 307 Or. 146, 764 P.2d 1370 (1988) ........ 25

*Rice v. United Parcel Serv. Gen. Servs. Co.*, 43 F. Supp. 2d 1134 (D. Or. 1999) ........ 26, 27

*Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095 (D. Or. 2013) ........ 6

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ........ 6

*State v. Meyer*, 183 Or. App. 536, 53 P.3d 940 (2002) ........ 15

*State ex rel. Juvenile Dep't of Washington Cty. v. Casteel*,
18 Or. App. 70, 523 P.2d 1039 (1974).....15

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).....19, 26

*Swift & Co. v. Peterson*, 192 Or. 97, 233 P.2d 216 (1951).....15

*Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152 (D. Or. 2015).....24

*Walden v. Fiore*, 134 S. Ct. 1115 (2014).....12, 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).....9

**Statutes:**

Cal. Corp. Code § 25504.1.....23, 25

Neb. Rev. Stat. § 8-1118(3).....22

ORS 15.400 to 15.460.....21

ORS 15.405.....21

ORS 15.420.....22

ORS 15.430.....21

ORS 15.435.....21

ORS 15.440.....21-22, 26

ORS 15.440(3).....22, 23, 27

ORS 15.445.....21

ORS 15.455.....21

ORS 59.115.....15, 17, 18, 20

ORS 59.115(3).....8, 17, 19, 24, 25

ORS 59.335(a).....20

**Rules:**

Federal Rules of Civil Procedure

Rule 4(k)(1)(A) ..........9

Rule 8 ..........1

Rule 12(b)(2) ..........1

Rule 12(b)(6) ..........1

Oregon Rules of Civil Procedure

Rule 4J(2) ..........9

Rule 4L ..........9

**Miscellaneous:**

*Restatement (Second) of Conflicts* § 6 (1971) ..........24

*Restatement (Second) of Conflicts* § 145(2) (1971) ..........24, 26

## LOCAL RULE 7-1(A) CERTIFICATION

Counsel for Defendant TD Ameritrade, Inc. has described its grounds for dismissal to counsel for Plaintiffs in writing, and has conferred with such counsel. Despite such good faith efforts to resolve the grounds for this Motion, the parties were unable to do so, necessitating the filing of this Motion.

## MOTIONS TO DISMISS

Defendant TD Ameritrade, Inc. ("TD Ameritrade") has concurrently moved, with other Defendants, to dismiss the Second Amended Class Action Complaint ("SAC") in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), for failure to properly plead a primary violation of the Oregon securities laws, which is a pre-requisite to alleging claims of secondary liability. In the instant motion, TD Ameritrade moves to dismiss the claims of secondary liability against it, under Federal Rules of Civil Procedure 8, 12(b)(2) and 12(b)(6), on the following additional grounds:

1. TD Ameritrade is alleged to be a New York corporation registered to do business in Oregon, but is not alleged to have its principal place of business in Oregon (and it does not). Only one Plaintiff is an Oregon resident, and TD Ameritrade did not serve as custodian for his Aequitas investment. The remaining Plaintiffs are California residents. Those California Plaintiffs fail to allege that TD Ameritrade engaged in any conduct in Oregon constituting participation or material aid in the sale of a security to any of them.

2. Under the new Due Process standard for personal jurisdiction recently established by the United States Supreme Court, the California customer Plaintiffs fail to properly allege personal jurisdiction over TD Ameritrade because Oregon is not TD Ameritrade's home, the

California Plaintiffs are not residents of Oregon, and the TD Ameritrade conduct allegedly directed to Plaintiffs did not occur in Oregon.

3. There is a strong presumption against the extraterritorial application of Oregon law where, as here, Plaintiffs have failed to allege that they were injured by TD Ameritrade in Oregon or that any TD Ameritrade conduct alleged to constitute participation or material aid in the sale of a security to any Plaintiff occurred in Oregon. In these circumstances, the extraterritorial application of Oregon law in a manner that would effectively allow Oregon to regulate conduct occurring in other states would be unconstitutional under the dormant Commerce Clause and the Due Process Clause. Oregon thus cannot provide to the California customer Plaintiffs a claim for secondary liability under the Oregon securities laws. The California customer Plaintiffs' claims should be dismissed for failure to plead the elements of secondary liability under California law.

4. Under Oregon choice of law rules, the law applicable to the California customer Plaintiffs is California law. Applying California law to their claims, as the court should do, would avoid any constitutional issues. Those Plaintiffs purport to plead secondary liability claims solely under Oregon law. They do not even attempt to allege their claims for secondary liability against TD Ameritrade under California law. Their claims should be dismissed for failure to plead a claim under California law.

These grounds for dismissal are further amplified in the Memorandum of Law set out below.

**MEMORANDUM OF LAW**

## I. INTRODUCTION

There are significant impediments to claims against TD Ameritrade by any Plaintiff who is not a resident of Oregon and who fails to allege either conduct in Oregon by TD Ameritrade directed to him/her or injury in Oregon. Because TD Ameritrade is not incorporated in Oregon, does not maintain its principal place of business in Oregon, and no TD Ameritrade conduct is alleged to have been directed to the California Plaintiffs in Oregon, there is no personal jurisdiction over TD Ameritrade with respect to the claims by the non-resident Plaintiffs. In addition, the non-resident Plaintiffs cannot avail themselves of Oregon law where, as here, there would result an unconstitutional extraterritorial application of Oregon law. Finally, the Court should follow Oregon choice of law rules and conclude that Oregon law cannot be applied to the claims of the California-based Plaintiffs, who have failed to allege their claims under California law. The claims by the non-Oregon customer Plaintiffs against TD Ameritrade should be dismissed for each of these reasons.

## II. FACTUAL ALLEGATIONS AGAINST TD AMERITRADE

The SAC alleges that Plaintiffs purchased certain securities, collectively referred to as the "Aequitas Securities," which allegedly were sold by Aequitas in violation of Oregon securities law. The SAC contains no allegations that TD Ameritrade marketed, offered or solicited the sale of Aequitas Securities. While Plaintiffs allege that "[t]he services that TD Ameritrade, Inc. . . . provided to persons in Oregon form the basis of the claims asserted against them in this complaint," (SAC ¶ 8), only one of the named Plaintiffs is from Oregon (SAC ¶¶ 9-15) and TD Ameritrade did not custody his Aequitas investment. *See* Declaration of Pauletta Chabal ("Chabal Decl.") ¶ 5. The remaining named Plaintiffs are all California residents (SAC ¶¶ 9-15).

Greg and Susan Warrick, as co-trustees of the Warrick Family Trust, and Greg Warrick individually allege in the SAC that they were solicited by Integrity and do not allege that TD Ameritrade served as custodian for their Aequitas investment. SAC ¶ 202; Chabal Decl. ¶ 6.

As to TD Ameritrade, the SAC contains relatively few allegations, all of which are conclusory and necessarily are directed to conduct outside of Oregon. TD Ameritrade is mentioned only in paragraphs 8, 20, 193 and 206. Paragraphs 203-10 are part of the "Class Action Allegations" and purport to identify as a common question of law or fact whether the Defendants "participated in or materially aided the sales of securities." SAC ¶ 206(c).

Plaintiffs assert that "[TD] Ameritrade, as part of its 'Advisor Direct' financial advisor referral program, recommended and referred investors to financial advisors for the purpose of purchasing Aequitas securities" and that TD Ameritrade "also served as custodian for certain Aequitas securities." SAC ¶ 20. The ACF Notes were sold by Aequitas Commercial Finance, LLC, "directly to investors through the so-called Aequitas 'Private Note' program." *Id.* ¶ 30. In describing their purchases, Plaintiffs concede that they purchased their ACF Notes from Aequitas (*i.e.*, not from TD Ameritrade) and make no mention of TD Ameritrade. *See id.* ¶¶ 196-202.

The alleged conduct that forms the basis of Plaintiffs' allegation that TD Ameritrade "participated in and materially aided unlawful sales of securities" is TD Ameritrade's alleged conduct directed to its own customers. Because all but one of the Plaintiffs are residents of California, and TD Ameritrade did not serve as custodian for the one Oregon Plaintiff's Aequitas investments, all of the allegations against TD Ameritrade necessarily relate to conduct outside of Oregon. Plaintiffs fail to allege that any conduct directed to the California customer Plaintiffs occurred in Oregon.

Plaintiffs assert that (1) as part of its "Advisor Direct" financial advisor referral program, TD Ameritrade recommended and referred investors to financial advisors for the purpose of purchasing Aequitas securities; (2) TD Ameritrade representatives attended meetings in TD Ameritrade offices between customers of TD Ameritrade and representatives of Strategic Capital advisors, at which Aequitas securities were sold to TD Ameritrade customers; (3) TD Ameritrade had Aequitas offering documents and promotional materials in its offices; (4) TD Ameritrade allowed its customers to hold their Aequitas securities in their TD Ameritrade accounts; and (5) TD Ameritrade failed to disclose any concerns to its customers about Aequitas. SAC ¶ 193. There is no allegation that California customers traveled to Oregon to meet with TD Ameritrade, and it is not reasonable or logical to infer that they did. The only specific reference to any individual Plaintiff and his/her contact with TD Ameritrade appears in Paragraph 193(a). Plaintiff Ciuffitelli alleges that he was referred to a financial advisor by his TD Ameritrade account representative and that his TD Ameritrade representative promoted Aequitas as a great investment. SAC ¶ 193(a). Plaintiff Ciuffitelli is a resident of California, and he does not allege that any such referral, or any meeting resulting from the referral, occurred in Oregon. SAC ¶¶ 9, 193(a).

Apart from Plaintiff Ciuffitelli, the SAC does not identify the "certain investors" referred or the financial advisors in question and does not provide any detail regarding the alleged recommendation or referral by TD Ameritrade. Most importantly for the purposes of this motion, the SAC does not indicate where the alleged recommendations or referrals to financial advisors were made. The remainder of the SAC concerns the Aequitas companies and the other Defendants.

## III. APPLICABLE PLEADING STANDARDS

Rule 8 requires that a complaint contain sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead a "plausible" claim for relief rather than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate under Rule 12(b)(6) where, as here, Plaintiffs fail to state a "cognizable legal theory" or fail to allege sufficient facts under such a theory to state a plausible claim. *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012) (internal quotation marks omitted).

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of proving that jurisdiction is appropriate. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *D. Brutke's Victory Hills, LLC v. Tutera*, No. 3:12-cv-01951-SI, 2013 WL 3818146, at *3 (July 22, 2013). Plaintiffs cannot rest on the bare allegations of the complaint. *See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

In order to defeat a motion to dismiss under Rule 12(b)(6), Plaintiffs must provide more than "labels," "conclusions," or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations" and "unwarranted inferences" are insufficient. *Associated Gen. Contractors of Am. v. Metropolitan Water Dist. of So. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998). "[N]aked assertion[s] devoid of further factual enhancement will not suffice." *Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1101 (D. Or. 2013) (internal quotation marks omitted). Although courts often grant plaintiffs leave to amend, a court need not grant such leave if it determines that the pleading "could not possibly be cured by the

allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks and citation omitted).

## IV. ARGUMENT

The only Oregon Plaintiff, Andrew Nowak (individually and as trustee of a family trust), did not custody his Aequitas investments with TD Ameritrade. *See* Chabal Decl. ¶ 5. All of the remaining Plaintiffs are California residents. Based solely on the allegations of the California resident customers, Plaintiffs purport to assert a nationwide class action against TD Ameritrade under Oregon state law. They cannot do so because none of the conduct allegedly directed to them by TD Ameritrade occurred in Oregon, and they suffered no injury in Oregon. In these circumstances, there are three distinct legal impediments to Plaintiffs' secondary liability claims against TD Ameritrade under Oregon law.

First, the United States Supreme Court, in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (June 19, 2017), recently established a new standard for personal jurisdiction that Plaintiffs fail to satisfy. Under *Bristol-Myers*, plaintiffs must now allege a more significant connection between the forum jurisdiction and the underlying controversy. In particular, the Supreme Court made clear that a defendant's relationship with a third party in the forum jurisdiction, standing alone, is insufficient to establish personal jurisdiction there. The California Plaintiffs fail to allege either that TD Ameritrade's alleged acts constituting participation or material aid in the sale of a security occurred in Oregon or that any of them suffered injury in Oregon. Plaintiffs' reliance on allegations of conduct directed to Oregon resident investors, and/or on a relationship between TD Ameritrade and Aequitas, is insufficient under *Bristol-Myers* to establish a basis for personal jurisdiction in Oregon as to the claims of the non-resident customer Plaintiffs. Under fundamental principles of due process, the Oregon

secondary liability claims against TD Ameritrade must be dismissed for lack of personal jurisdiction.

Second, there is a strong presumption against the urged extraterritorial application of a state's law to conduct allegedly occurring in a different state. Where it is clear on the face of a statute that it is intended to apply outside of the state's borders, cases routinely hold that attempts to use one state's law to regulate conduct occurring in another state would be unconstitutional under the dormant Commerce Clause and the Due Process Clause. This Court should not entertain the application of the Oregon securities laws to TD Ameritrade's alleged conduct outside of Oregon as doing so would be unconstitutional. Plaintiffs' claims should be dismissed for failure to plead the elements of secondary liability under California law, which are markedly different from the elements for a secondary liability claim under Oregon law in that California requires an allegation of scienter and a concrete role in the underlying scheme to defraud, and Oregon does not under ORS 59.115(3).

Finally, the Court can and should avoid any constitutional issues because there is no indication that the secondary liability sections of the Oregon securities laws were intended to apply to claims by non-Oregon residents in the circumstances here alleged. Because the California customer Plaintiffs are located in California and failed to allege that any conduct directed to them by TD Ameritrade occurred in Oregon, their purported claims of secondary liability against TD Ameritrade should arise under California law, rather than Oregon law. Oregon choice of law rules point to California law with respect to Plaintiffs' claims against TD Ameritrade. Again, Plaintiffs fail to allege the elements of a secondary liability claim under California law, and their claims against TD Ameritrade should therefore be dismissed for that fundamental pleading deficiency.

### A. This Court Does Not Have Personal Jurisdiction Over TD Ameritrade With Respect to the Claims by Non-Oregon Plaintiffs

The exercise of personal jurisdiction over TD Ameritrade by this Court with respect to the claims of non-resident Plaintiffs does not comport with Due Process as guaranteed by the U.S. Constitution because those claims do not arise out of TD Ameritrade's contacts with Oregon.

Federal Rule of Civil Procedure 4(k)(1)(A) provides that service of summons is effective to establish jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R. Civ. P. 4(k)(1)(A). As a result, for personal jurisdiction to lie, Oregon's long-arm statute must give this Court authority to exercise jurisdiction over TD Ameritrade. *See id.*; *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (citing predecessor rule). Oregon's long-arm statute purports to confer jurisdiction to its courts over "[a]ny person, a resident or nonresident of this state, who has engaged in conduct prohibited or made actionable under the Oregon Securities Law," Ore. R. Civ. P. 4J(2), or "in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Ore. R. Civ. P. 4L.

But this power is not unlimited. The Supreme Court recently explained that the Fourteenth Amendment limits the personal jurisdiction of state courts. *See, e.g., BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554 (May 30, 2017) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power," it is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011),

which "limits the power of a state court to render a valid personal judgment against a nonresident defendant," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "[D]ue process requires . . . that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Courts analyze that question through two different jurisdictional prisms: "general" and "specific" jurisdiction. Plaintiffs cannot demonstrate that either type of jurisdiction lies in this Court for their claims as alleged.

**1. General Jurisdiction Is Lacking**

A court may exercise general, or all-purpose, jurisdiction over a defendant corporation only where it "is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business. *BNSF Ry. Co.*, 137 S. Ct. at 1558 (citing *Daimler*, 134 S. Ct. at 760). *Daimler* effectively replaced the "doing business" test, which analyzed whether and to what extent a corporation conducts business within a state as the basis for conferring general jurisdiction, with the foregoing determination of where the corporation is "at home." The Court further noted that it would be "an exceptional case" where a defendant's contacts were "so substantial and of such a nature as to render the corporation at home" in a state outside of its place of incorporation or principal place of business.[1] *Daimler*, 134 S. Ct. at 761 n.19.

[1] The Court has repeatedly cited only one example as an "exceptional case": *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). In that case, a corporation temporarily relocated

This Court cannot exercise general personal jurisdiction over TD Ameritrade because TD Ameritrade is not fairly characterized as "at home" in Oregon. As the SAC alleges, TD Ameritrade is incorporated in New York (SAC ¶ 20); its principal place of business is located in Omaha, Nebraska. *See* Chabal Decl. ¶ 2. While TD Ameritrade is registered as a broker-dealer and has operations in Oregon (SAC ¶ 20), such contacts are insufficient under *Daimler* to confer general jurisdiction in Oregon courts.

Moreover, this case does not provide the rare exceptional circumstances described by the Supreme Court that would confer general personal jurisdiction. A recent Supreme Court case supports this proposition. In *BNSF Railway Co.*, two non-resident plaintiffs sued in Montana state court, claiming they sustained various injuries while working for BNSF, though neither was injured in Montana. 137 S. Ct. at 1553. While BNSF operated railroad lines in 28 states, including Montana, it was incorporated in Delaware and had its principal place of business in Texas. *Id.* at 1554. The Montana state court found that it could exercise general personal jurisdiction over BNSF. *Id.* at 1553. But the Supreme Court disagreed, finding that the *Daimler* standard applies broadly to general jurisdiction over corporate defendants regardless of the claim being brought. *Id.* at 1558-59. Therefore, the Court held that BNSF was not subject to general personal jurisdiction in Montana merely because it had extensive tracks throughout the state. *Id.* at 1559. In doing so, the Court effectively reaffirmed its holding in *Daimler* that a corporate defendant is subject to general personal jurisdiction in its place of incorporation and its principal

---

its principal place of business from the Philippines to Ohio to escape potential calamities because of World War II. *Id.* at 447-48. The Court found that, because of the defendant's temporary relocation, Ohio courts could exercise general jurisdiction over it. *Id.* at 448. The fact that the Court has repeatedly cited *Perkins* as an "exceptional case" demonstrates the rare circumstances in which general jurisdiction would be conferred on a state other than where a defendant is incorporated or headquartered.

place of business.[2] *Id.* Similarly, while TD Ameritrade has offices in Oregon and conducts business there, under *Daimler* and *BNSF Railway Co.*, this is not sufficient to confer general personal jurisdiction over it in Oregon courts.

**2. Specific Jurisdiction Is Lacking**

Since this Court cannot properly exercise general personal jurisdiction over TD Ameritrade, the non-resident plaintiffs' claims must subject TD Ameritrade to specific personal jurisdiction—i.e., their claims must "aris[e] out of or relat[e] to [TD Ameritrade's] contacts with the forum." *Daimler*, 134 S. Ct. at 754 (citation omitted). They do not. Thus, this Court does not have specific jurisdiction over the claims of non-resident plaintiffs.

In a very recent case, the Supreme Court effected a significant change in the manner in which specific jurisdiction is determined. In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (June 19, 2017), the Court reversed the California Supreme Court's holding that it had specific jurisdiction to entertain non-residents' pharmaceutical products liability claims against defendant Bristol-Myers Squibb Co. ("BMS"). The Court noted that specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State," and held that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781 (quoting, in part, *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014)). Because BMS engaged in all relevant "activities in either New York or New Jersey," and because the "nonresidents were not prescribed [the drug] in California, did not purchase [the drug] in California, did not ingest [the drug] in California, and were not injured by [the drug] in

[2] The Court reiterated that only in an "exceptional case" would general jurisdiction be appropriately conferred on an out-of-state defendant, referencing *Perkins*. *BNSF Ry. Co.*, 137 S. Ct. at 1558.

California," the Court held that California courts lacked specific jurisdiction. *Id.* at 1778, 1781. The Supreme Court made clear that the nonresidents' claims must be dismissed. *Id.* at 1777.

Here, the California Plaintiffs have failed to allege ***any*** specific contacts between them and TD Ameritrade in Oregon that would justify conferring specific jurisdiction in this Court over their claims. All but one of the Plaintiffs are residents of California. *See* SAC ¶¶ 9-15. TD Ameritrade was not the custodian for the Aequitas investments purchased by the Oregon Plaintiff. *See* Chabal Decl. ¶ 5. The SAC alleges that "[TD] Ameritrade, as part of its 'Advisor Direct' financial advisor referral program, recommended and referred investors to financial advisors for the purpose of purchasing Aequitas securities." SAC ¶ 193. But the SAC does not allege that this activity took place as to these customer Plaintiffs in Oregon. The SAC further alleges that "[TD] Ameritrade also served the critical role of providing custodial services for its customers to hold Aequitas securities in their accounts." *Id.* But the SAC does not allege that TD Ameritrade provided Plaintiffs with such custodian services in Oregon. The SAC also alleges TD Ameritrade had "meetings" with Strategic Capital Group, LLC advisors (who sold Aequitas securities to its clients) that "frequently occurred in [its] offices." *Id.* ¶ 193(a). The precise location of such meetings is not alleged, and most importantly, there is no allegation of a California-based customer Plaintiff attending any such meeting in Oregon. Finally, the SAC alleges that TD Ameritrade "had Aequitas offering documents and promotional materials in its offices." *Id.* But the SAC fails to allege whether any such documents or promotional materials were in any Oregon offices, and most importantly, whether any California-based customer Plaintiff received such materials from TD Ameritrade in an Oregon office.

Accordingly, the SAC fails to allege the necessary connection to Oregon required to permit this Court to exercise specific personal jurisdiction over TD Ameritrade within the

strictures of due process. As the Supreme Court made clear in *Bristol-Myers*, it is not enough that TD Ameritrade allegedly performed these same functions as to any other customers in Oregon, or had a contractual relationship that allowed TD Ameritrade to hold as custodian Aequitas securities purchased by customers.

Further, the non-resident Plaintiffs' own jurisdictional allegations demonstrate that specific personal jurisdiction is lacking for their claims. The SAC states: "The services that TD Ameritrade, Inc. . . . *provided to persons in Oregon* form the basis of the claims asserted against them in this complaint." SAC ¶ 8 (emphasis added). But the non-resident Plaintiffs are, by definition, not "persons in Oregon." Rather, they are residents of their home state of California, and the only logical inference is that TD Ameritrade directed any alleged conduct toward them where they reside, in California.

That the Aequitas group was located in Oregon, issued securities from Oregon, and allegedly orchestrated a Ponzi scheme in Oregon is not relevant to this Court's jurisdictional analysis as to TD Ameritrade's contacts with Oregon. *See Walden*, 134 S. Ct. at 1122 ("Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.") (emphasis added). Thus, any purported relationship between TD Ameritrade and third-party Aequitas is insufficient to confer specific personal jurisdiction over TD Ameritrade in this Court. *See Bristol-Myers*, 137 S. Ct. at 1781. There simply is no connection to Oregon sufficient to confer specific personal jurisdiction over TD Ameritrade for the non-resident plaintiffs' claims for alleged conduct that TD Ameritrade directed to them occurring wholly outside Oregon. Under *Bristol-Myers*, this Court must

dismiss, for lack of specific personal jurisdiction, any "plaintiffs [who] are not [Oregon] residents and [who] do not claim to have suffered harm in th[is] State."[3] 137 S. Ct. at 1782.

**B. Application of ORS 59.115 to TD Ameritrade Conduct That Is Allegedly Directed to Non-Oregon Customers Would Violate the Dormant Commerce Clause and the Due Process Clause**

The claims should be dismissed in the alternative on the grounds that the extraterritorial application of ORS 59.115 to regulate conduct in California would be an unconstitutional violation of the dormant Commerce Clause and the Due Process Clause.

Oregon courts have long recognized a presumption against the extraterritorial application of state law. *Swift & Co. v. Peterson*, 192 Or. 97, 121, 233 P.2d 216, 228 (1951) ("No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed."); *State v. Meyer*, 183 Or. App. 536, 544, 53 P.3d 940, 944 (2002) ("[L]egislative acts of a state ordinarily are not operative outside the territorial boundaries of the enacting state."); *State ex rel. Juvenile Dep't of Washington Cty. v. Casteel*, 18 Or. App. 70, 75, 523 P.2d 1039, 1041 (1974) ("It is axiomatic that the laws of a state have no extraterritorial effect. . . . The authority of every state tribunal is necessarily restricted by the territorial limits of the state in which it is established, and any attempt to exercise authority beyond those limits is an illegitimate assumption of power." (citations omitted)). The U.S. Supreme Court has held that an extraterritorial application of a state law is a violation of the dormant Commerce Clause. *Healy v. Beer Inst. Inc.*, 491 U.S. 324, 335-36 (1989); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578-79 (1986); *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982).

[3] TD Ameritrade does not deny that it is subject to specific personal jurisdiction for claims of Oregon-based customers for conduct allegedly directed to such customers in Oregon. None of the Plaintiffs has alleged such conduct against him or her in Oregon.

In *Healy*, the Court held that "the critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State. *Healy*, 491 U.S. at 336 (citing *Brown-Forman*, 476 U.S. at 579). "Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state's regulatory regime into the jurisdiction of another State." *Id.* at 336-37; *National Collegiate Athletic Assoc. v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993). In *Miller*, the Nevada statute at issue required any national collegiate athletic association to provide a Nevada institution, employee, student-athlete, or booster who is accused of a rules infraction with certain procedural due process protections during an enforcement proceeding in which sanctions may be imposed. *Miller*, 10 F.3d at 637. The Ninth Circuit held that the statute was a per se violation of the Commerce Clause for two reasons. *Id.* at 638.

First, the court held that the statute was directed at interstate commerce by regulating the NCAA's conduct outside of Nevada. *Id.* In quoting *Healy*, the court held that "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* at 639 (quoting *Healy*, 491 U.S. at 336). By requiring the NCAA to comply with the Nevada statute, the court found that the practical effect would be that the NCAA would have to use the requirements in the Nevada statute in every state. *Id.* Thus, the Nevada statute would be a per se violation of the Commerce Clause because Nevada would be controlling the regulation of a product in interstate commerce that occurs wholly outside its borders. *Id.*

Second, the court held that the statute's extraterritorial reach violated the Commerce Clause because of its potential interaction or conflict with similar statutes in other jurisdictions.

*Id.* at 639. Because Nevada was not the only state that had enacted legislation establishing procedural rules for NCAA enforcement proceedings, the NCAA could be subject to conflicting requirements. *Id.* The example provided by the court was: "suppose that state X required proof of an infraction beyond a reasonable doubt, while state Y only required clear and convincing evidence, and state Z required infractions to be proven by a preponderance of the evidence." *Id.* The risk of inconsistent obligations also demonstrates why the statute would be a per se violation of the Commerce Clause. *Id.* at 640. This same reasoning has been applied in other cases as well. *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 110-11 (2d Cir. 2012) (dismissal of state law claims on ground that plaintiff failed to allege that it was injured in state or that defendant committed relevant conduct in that state); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 668-69 (7th Cir. 2010) (extraterritorial application of law was unconstitutional as applied to out of state defendant for transaction in other state); *Morley-Murphy Co. v. Zenith Elec. Corp.*, 142 F.3d 373, 380 (7th Cir. 1998) (plaintiff could not assert a claim under state statute for lost profits arising out of termination of its out of state dealerships).

ORS 59.115, the Oregon statute at issue, similarly is constrained by the dormant Commerce Clause to the extent it is the basis for secondary liability claims against TD Ameritrade by non-Oregon Plaintiffs. Plaintiffs allege a nationwide class action solely under the Oregon law pertaining to secondary liability for an illegal sale of securities, ORS 59.115(3). There are seven named Plaintiffs (counting a married couple as one and persons simultaneously acting as trustees of a trust and for their own account as one) and only one is a resident of Oregon. SAC ¶¶ 9-15. As discussed above, TD Ameritrade is not incorporated in Oregon and its principal place of business is not in Oregon. For jurisdiction purposes, Plaintiffs allege that

the allegations that form the basis of the claims asserted against TD Ameritrade are the "services that TD Ameritrade . . . provided ***to persons in Oregon***." SAC ¶ 8 (emphasis added).

But the services through which Plaintiffs allege that TD Ameritrade "participated or materially aided in the sale" were necessarily performed in the state of each Plaintiff's residence or otherwise outside of Oregon. The Plaintiffs allege that TD Ameritrade "recommended and referred investors to financial advisors," provided custodial services for its customers to hold Aequitas securities in their accounts, "performed extensive due diligence on the advisors" to whom customers were referred, marketed Aequitas securities to Aequitas customers, and "participated and aided in Aequitas' sales of securities, including agreements by investors to purchase," by "failing to disclose its concerns about Aequitas." SAC ¶ 193. All of these allegations relate to TD Ameritrade's purported acts and/or omissions directed to its customers, and only if the customer was in Oregon could any of this conduct have occurred in Oregon. Similarly, any injury suffered by a non-resident Plaintiff as a result of TD Ameritrade's alleged conduct would be in the non-resident's home state, not Oregon. There is simply no basis in the SAC to infer that any such conduct or injury could have occurred in Oregon as to the non-resident customer Plaintiffs.

Because the alleged injury suffered by non-Oregon residents was allegedly caused by conduct outside of Oregon's borders by TD Ameritrade, whose principal place of business is not in Oregon, applying ORS 59.115 to non-Oregon plaintiffs would be an impermissible extraterritorial application of Oregon law, in violation of the dormant Commerce Clause. Oregon law cannot be imposed on persons engaged in conduct or transactions in another state, particularly where, as here, the law is significantly different in the other state. All but one of the

Plaintiffs reside in California. The law of secondary liability in California is materially different from the law in Oregon.

Under Oregon law, Plaintiffs must plead and prove that TD Ameritrade participated or materially aided in the illegal sale of a security as provided in ORS 59.115(3). There is no requirement under ORS 59.115(3) to plead intent to deceive or defraud, or material assistance in the underlying violation by the seller, to allege a secondary liability claim. But in California, by contrast, the parallel claim for secondary liability requires "that an aider and abettor must have acted with "*intent to deceive or defraud*" in providing "material assistance in the actual violation." *Arei II Cases*, 157 Cal. Rptr. 3d 368, 377, 216 Cal. App. 4th 1004, 1015-16 (App. 1 Dist. 2013) (emphasis added) (citing Cal. Corp. Code § 25504.1). Oregon's statute violates the dormant Commerce Clause because it materially conflicts with California's statute with respect to secondary liability. *Miller*, 10 F.3d at 639 (citing *Healy*, 491 U.S. at 336-37).

Furthermore, the extraterritorial application of the Oregon statute to conduct in California would violate due process. It has long been held that a "State cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) (citing *BMW of North Am. v. Gore*, 517 U.S. 559, 572 (1996); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892)). Oregon and California have different standards and therefore look at the same conduct differently. As set forth above, in California, in order to be liable for secondary liability, one must have acted with the intent to deceive or defraud and must provide material assistance in the actual violation, which is a different standard than under the Oregon statute. If TD Ameritrade did not act with the intent to deceive or defraud, and did not materially assist the actual violation of the securities law by

anyone else (and Plaintiffs have not alleged that TD Ameritrade did either of these things), the conduct alleged by Plaintiffs may not be subject to a claim in California, and Plaintiffs' attempt to hold TD Ameritrade accountable under Oregon law for its conduct in California would violate Due Process.

All claims by non-Oregon Plaintiffs against TD Ameritrade should be dismissed because applying the Oregon statute to TD Ameritrade in these circumstances would constitute a per se violation of the dormant Commerce Clause and the Due Process Clause. Assuming *arguendo* that the Court has personal jurisdiction over TD Ameritrade as to any of the existing non-Oregon customer Plaintiff claims, which it does not, the claims should be dismissed for failure to plead the elements of an aiding and abetting claim under California law.

### C. Oregon Choice of Law Rules Point to California Law with Respect to the Customer Plaintiffs' Claims but Plaintiffs Fail to Allege the Elements of Their Claims Under California Law

The non-Oregon Plaintiffs' claims should be dismissed in the alternative because, under Oregon choice of law rules, California law, rather than Oregon law, applies to their secondary liability claims, and yet they fail to allege the elements of an aiding and abetting claim under California law.

As a threshold matter, there is no indication on the face of the Oregon statute that the legislature intended the secondary liability provisions to apply outside Oregon. ORS 59.335(1) governs the application of ORS 59.115, and expressly provides that 59.115 applies "to persons who sell or offer to sell" when an offer to sell is made in Oregon or an offer to buy is made and accepted in Oregon. ORS 59.335(1). Sellers and those who offer to sell, where the described Oregon nexus exists, are thus subject to the application of ORS 59.115, but there is no indication of what nexus with Oregon is required for application of the statute to persons who allegedly

participate or materially aid in a sale. In the absence of such direction from the statute, and where both the purchaser and the alleged conduct are in another state, the Court should look to the choice of law rules in Oregon, the forum state, to determine whether Oregon law, or the other state's law, pertaining to secondary liability should be applied. [4]

"When sitting in diversity, [federal courts] apply the choice-of-law rules of the forum state." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). Effective January 1, 2010, Oregon codified its choice of law rules for noncontractual claims in ORS §§ 15.400 to 15.460. Noncontractual claims are governed by the statute "when a choice between or among the laws of more than one state is at issue." ORS 15.405. With respect to a claim for secondary liability under ORS 59.115, the first question is whether another Oregon statute specifically governs choice of law, because the rules "do not supersede the provisions of other Oregon statutes that expressly designate the law governing a particular noncontractual claim." *Id.* As noted above, there is no express choice of law provision in the Oregon securities laws governing claims for secondary liability. The next step is to apply the pertinent choice of law rules.

The codified choice of law rules set out specific outcomes for certain claims. *See* ORS 15.430, 15.435, 15.440 and 15.455. Where the cause of action is not among those specifically listed, the general catch-all standard set out in ORS 15.445 applies. Here, it is clear that ORS 15.440 applies. The relevant provisions are as follows:

> (1) Noncontractual claims between an injured person and the person whose conduct caused the injury are governed by the law of the state designated in this section.

---

[4] A court may undertake a choice-of-law analysis at the motion to dismiss stage as long as it has sufficient information to thoroughly analyze the choice-of-law issue and discovery will not likely affect the analysis. *See In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1065-66 (S.D. Cal. 2017) (internal citations omitted).

* * * *

> (3) If the injured person and the person whose conduct caused the injury were domiciled in different states and the laws of those states on the disputed issues would produce a different outcome, the law of the state designated in this subsection governs.
>
> (a) If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state.

ORS 15.440. Applying these rules here, California law is the clear choice.

All but one of the Plaintiffs are domiciled in California, as alleged in the SAC. *See* SAC ¶¶ 9-15. TD Ameritrade has its principal place of business in Omaha, Nebraska. Chabal Decl. ¶ 2. TD Ameritrade's principal place of business is its domicile for purposes of the statute. ORS 15.420 ("The domicile of a person other than a natural person is located in the state in which the person maintains its principal place of business."). As a result, the non-Oregon Plaintiffs and TD Ameritrade are domiciled in different states, which satisfies the first element of ORS 15.440(2).

In addition, the law is different as between Nebraska and California regarding a secondary liability claim under each state's securities laws. Under Nebraska law, "every broker-dealer, issuer-dealer, agent, investment adviser, or investment adviser representative who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Neb. Rev. Stat. § 8-1118(3). By contrast, California's Corporate Securities Law regarding secondary liability for the purchase or sale of a security requires "that an aider and abettor must have acted with '***intent to deceive or defraud***'" in providing "***material assistance in the actual violation***." *Arei II Cases*, 157 Cal. Rptr. 3d 368,

377, 216 Cal. App. 4th 1004, 1015-16 (App. 1 Dist. 2013) (emphasis added) (citing Cal. Corp. Code § 25504.1). The requirement of a scienter element coupled with material assistance in the actual violation distinguish California law from Nebraska. Hence, the next element of ORS 15.440(3) is satisfied, which leads to subsection (a) of section (3).

Finally, as required by subsection (a), the place of the alleged injurious conduct, as well as the alleged injury itself, was in California, where those Plaintiffs reside. All of the conduct allegedly directed by TD Ameritrade to the California customer Plaintiffs necessarily occurred in California; there is no basis to infer from the SAC that any such conduct occurred in Oregon. Since the allegedly injured persons are domiciled in California, where the alleged injurious conduct and resulting alleged injury occurred, California law governs. *See* ORS 15.440(2)(a).

Such a result makes logical sense, since California has a clear interest in protecting the rights of its citizens, encouraging responsible conduct, and discouraging injurious conduct, toward its citizens, and providing remedies to its citizens, *see Friese v. Superior Court*, 134 Cal. App. 4th 693, 698 (2005), *as modified on denial of reh'g* (Dec. 29, 2005), *as modified* (Jan. 24, 2006) ("California's corporate securities laws are designed to protect participants in California's securities marketplace and deter unlawful conduct *which takes place [in California]*.") (emphasis added); by contrast, Oregon has no clear interest in achieving any of those goals with respect to California citizens.

Notwithstanding the foregoing statutory standard, some Oregon cases continue to apply the common law choice rules, which are similar to the codified rules and lead to the same outcome here. For the sake of completeness, Oregon common law is also addressed. Under Oregon common law,

> the court must determine whether there is an actual conflict of law on the disputed issue; if not, Oregon law applies. Next, the court must determine whether both states have substantial interests in having their laws applied. If not, there is no choice of law issue, and the court applies the law of the one state with substantial interests. If both states have substantial interests, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) Conflicts of Law.

*Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1163 (D. Or. 2015) (citing *Frosty v. Textron, Inc.*, 891 F. Supp. 551, 556 (D. Or. 1995)). Section 6 of the *Restatement (Second) of Conflicts* describes the "most significant relationship" test and provides, in part:

> (2) the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflicts* § 6 (1971). Section 145(2) identifies the contacts to be taken into account when applying the principles listed in section 6:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

The threshold issue in the common law analysis is whether Oregon's securities law conflicts with another jurisdiction that may have a substantial interest in this case—for example, California. Plaintiffs allege TD Ameritrade bears secondary liability for participating or materially aiding in the Aequitas group's unlawful sales of securities under ORS 59.115(3).

ORS 59.115(3) requires active conduct (*i.e.*, "participates or materially aids") that is connected to "the sale" of a security in a significant way. Courts interpreting ORS 59.115(3) have consistently held that liability for participating in or materially aiding a sale of securities "depends on the importance of one's personal contribution to the transaction," *Prince v. Brydon*, 307 Or. 146, 149 (1988), and that "something more than the mere preparation and execution of documents is required," *Fakhrdai v. Mason*, 72 Or. App. 681, 684, 696 P.2d 1164, 1166 (1985). ORS 59.115(3) does not require an intent to deceive or defraud or knowledge of the primary violation.[5]

But, as noted above, California's Corporate Securities Law regarding secondary liability for the purchase or sale of a security requires "that an aider and abettor must have acted with '*intent to deceive or defraud*'" in providing "material assistance in the actual violation." *Arei II Cases*, 157 Cal. Rptr. 3d at 377, 216 Cal. App. 4th at 1015-16 (emphasis added) (citing Cal. Corp. Code § 25504.1).[6] In addition, "[i]t is not enough to violate the material assistance provision of the [California] Corporate Securities Law that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws." *Id.* at 376. Because California's Corporate Securities Law requires both scienter and a concrete role in the underlying scheme to defraud (not just the sale) for plaintiffs to prevail on a claim of secondary liability in California, there is a material conflict with Oregon's securities law, which has no such requirements.

[5] ORS 59.115(3) does, however, provide a defendant with an affirmative defense that he "did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the [primary] liability is based."

[6] Section 25504.1 states: "Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401. . . *with intent to deceive or defraud*, is jointly and severally liable with any other person liable under this chapter for such violation" (emphasis added).

The next step in the common law analysis is to determine whether "both states have substantial interests in having their laws applied. If not, there is no choice of law issue, and the court applies the law of the one state with substantial interests." *Rice v. United Parcel Serv. Gen. Servs. Co.*, 43 F. Supp. 2d 1134, 1141 (D. Or. 1999). Both Oregon and California generally have an interest in having their laws applied for conduct occurring within their jurisdictions. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) ("each foreign state has an interest in applying its law to transactions within its borders"); *Friese*, 134 Cal. App. 4th at 698 ("California's corporate securities laws are designed to protect participants in California's securities marketplace and deter unlawful conduct *which takes place [in California]*.") (emphasis added). This is consistent with the "principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Mazza*, 666 F.3d at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. at 422).

But here, all of the relevant activity—and all of the contacts under ORS 15.440 and Section 145(2) of the *Restatement (Second) of Conflicts* with respect to non-Oregon Plaintiffs—occurred in California. All of the non-Oregon Plaintiffs are residents of California. *See* SAC ¶¶ 9-15. All of the alleged conduct underlying the non-resident Plaintiffs' claims against TD Ameritrade and the alleged resulting injuries occurred in California, not Oregon.[7] Indeed, the non-Oregon Plaintiffs do not make a single specific factual allegation that any of the conduct underlying their claims or their injuries occurred in Oregon. What Plaintiffs allege and what

---

[7] *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 834 F. Supp. 2d 949, 958 (C.D. Cal. 2012) ("When an injury is purely economic, the place of injury . . . is where the economic impact of defendant's conduct is felt, which is usually the plaintiff's place of residence.") (citing *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999)).

they do not allege provide a sufficient basis to conclude that California has the most significant relationship to non-resident plaintiffs' claims. *See, e.g.*, *Rice*, 43 F. Supp. 2d at 1141 (finding that Oregon had neither a substantial interest in having its laws applied, nor did it have the most significant relationship to the occurrence and the parties because none of the plaintiffs were residents of Oregon and there was no allegation that the plaintiffs were injured in Oregon).[8] That the Aequitas group was located in Oregon, issued securities in Oregon, and allegedly orchestrated a Ponzi scheme in Oregon is not relevant to this Court's choice-of-law analysis with respect to the claims against TD Ameritrade. Rather, it is the contacts between the Plaintiffs and TD Ameritrade that is relevant to the choice-of-law determination. Accordingly, California's Corporate Securities Law, not Oregon's securities law, should apply to the California Plaintiffs.

Finally, Ninth Circuit precedent supports the conclusion that California's Corporate Securities Laws should apply in the instant class action to the named Plaintiffs' claims. In *Mazza*, the plaintiffs had successfully sought certification of a nationwide class in California, but the Ninth Circuit concluded that applying California law to non-residents who purchased their products outside of California was unwarranted.[9] 666 F.3d at 591-94. Further, although the defendant in *Mazza* was headquartered in California and the allegedly fraudulent misrepresentations emanated from California, the ***transactions*** (car purchases or leases) that directly caused the injuries occurred out of state with respect to the majority of the class

---

[8] This is especially true in a class action because "if [Oregon] law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce." *Mazza*, 666 F.3d at 593.

[9] While *Mazza* involved a motion for class certification, not a motion to dismiss, "the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss." *Frezza v. Google Inc.*, No. 5:12–cv–00237–RMW, 2013 WL 1736788, at *6 (N.D. Cal. April 22, 2013) (citing *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012).

members. *Id.* at 590. The Ninth Circuit held that "each class member's consumer protection claim should be governed by the consumer protection laws of the *jurisdiction in which the transaction took place*." *Id.* at 594 (emphasis added). Likewise, here, the conduct underlying the non-resident Plaintiffs' claims against TD Ameritrade, such as allegedly referring customers, to advisers and serving as custodian, and the alleged resulting injuries, occurred wherever the non-resident Plaintiffs are domiciled. The law of those states should govern any such claims.

Regardless of whether the codified or the common law choice of law rules are applied, Oregon does not have the most significant relationship to the underlying occurrences and parties. Since the non-resident Plaintiffs cannot state claims under the Oregon securities law, their claims for secondary liability must be dismissed for failure to state a claim for which relief can be granted under California law.

## V. CONCLUSION

For the reasons set out in the Joint Motion, the claims against TD Ameritrade should be dismissed with prejudice. If all claims against TD Ameritrade are not dismissed with prejudice pursuant to the Joint Motion, the claims by non-Oregon Plaintiffs against TD Ameritrade should be dismissed with prejudice for the reasons set forth above.

Dated: October 23, 2017

Respectfully submitted,

/s/Nicholas T. Christakos
**Bruce M. Bettigole** (*pro hac vice*)
Email: brucebettigole@eversheds-sutherland.com
**Nicholas T. Christakos** (*pro hac vice*)
Email: nicholas.christakos@eversheds-sutherland.com
**Gail L. Westover** (*pro hac vice*)
Email: gail.westover@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593

**Matthew J. Kalmanson**
Email: mjk@hartwagner.com
**Lindsay Howk Duncan**
Email: lhd@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

ATTORNEYS FOR DEFENDANT
TD AMERITRADE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 23, 2017, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the docket, and that paper copies will be sent by U.S. Mail, postage prepaid, to anyone indicated as non-registered participants.

/s/Nicholas T. Christakos
Nicholas T. Christakos