**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
E-Mail: ptrinchero@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Peter A. Wald (admitted *pro hac vice*)**
E-mail: peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
E-mail: gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

**Attorneys for Defendant Deloitte & Touche LLP**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST; DUFF & PHELPS, LLC

Defendants.

Case No. 3:16-cv-00580-AC

**DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

(SECONDARY LIABILITY ISSUES)

Pursuant to Fed. R. Civ. P. 8 and 12(b)(6)

Oral Argument Requested

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................2

II. STATEMENT OF FACTS .......................................................................................3

A. Deloitte's Audits For Certain Aequitas Entities ......................................................3

B. Plaintiffs And Their Securities Purchases...............................................................5

C. Plaintiffs' Claims ....................................................................................................9

III. LEGAL STANDARD...............................................................................................9

IV. ARGUMENT ..........................................................................................................10

A. Plaintiffs Fail To Allege That Sales Made To Them Were Accomplished By Means Of Documents Identifying Deloitte .....................................................10

B. Plaintiffs' New Allegations Fail To Establish A Causal Connection Between Deloitte And The Sales Made To Them .................................................14

V. CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ainslie v. Spolyar*,
144 Or. App. 134 (1996)....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*In re Medicis Pharm. Corp. Sec. Litig.*,
689 F. Supp. 2d 1192 (D. Ariz. 2009) ....................3

*Prince v. Brydon*,
307 Or. 146 (1988)....................9, 10, 11, 14

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ....................10

*SEC v. Aequitas Mgmt., LLC, et al.*,
No. 3:16-cv-00438-PK (D. Or. Mar. 16, 2016) ....................3

*Sprewell v. Golden State Warriors*,
266 F.3d 979, 988 (9th Cir. 2001),
*amended on denial of reh'g* 275 F.3d 1187 ....................8

*Updike v. Clackamas County*,
No. 3:15-cv-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ....................10

## STATUTES

ORS 59.115(3) .................... *passim*

## RULES

Fed. R. Civ. P. 8....................8, 12

Fed. R. Civ. P. 12(b)(6)....................8

## REGULATIONS

CFR § 275.206(4)-2(b)(4)....................13

## LR 7-1 CERTIFICATION

In compliance with this Rule, it is certified that the parties made a good faith effort through telephonic conferences to resolve the dispute and have been unable to do so.

## MOTION

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, the Order Granting Unopposed Motion Regarding Joint and Individual Motions and Briefing (Dkt. 70), and the Scheduling Order (Dkt. 254), Defendant Deloitte & Touche LLP ("Deloitte") hereby moves to dismiss claims brought by Plaintiffs under Or. Rev. Stat. ("ORS") § 59.115(3), for failure to state a claim against Deloitte upon which relief can be granted ("Motion").

In support of its Motion, Deloitte relies upon the following memorandum of law, the Motion to Dismiss Allegations of Primary Liability filed by Defendants Deloitte, EisnerAmper LLP, Sidley Austin LLP, Tonkon Torp LLP, TD Ameritrade, Inc., Integrity Bank & Trust, and Duff & Phelps, LLC and Memorandum of Law in Support (the "Primary Liability Motion" or "Primary Liability Mot."), the Declaration of Gavin M. Masuda ("Masuda Decl."), the Second Amended Complaint (the "Complaint" or "Compl."), and the record assembled in this case.

## MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiffs are purchasers of different securities that were issued by different Aequitas-related entities over a five-year period. They purport to represent a class of persons who purchased any security issued by any Aequitas entity over that period. Plaintiffs claim that these securities were sold to them in violation of the Oregon Securities Laws, and that Deloitte—which served as the external auditor for certain Aequitas entities during two fiscal years (ended December 31, 2013 and December 31, 2014)—is liable for "participat[ing] or materially aid[ing] in" those allegedly illegal sales. Compl. ¶ 2.

In its Amended Findings & Recommendation ("F&R"), Dkt. 242, adopted and entered, Dkt. 250, this Court first found that Plaintiffs had "plausibly allege[d]" Deloitte's "participation and material aid in *at least some* securities transactions"—specifically, those transactions "conducted by means of PPMs and promotional materials identifying Deloitte as auditor, and use of Deloitte-audited financial statements as promotional materials." F&R at 61, 63-64 (emphasis added).[1] However, this Court then "defer[red] a determination of the sufficiency of Deloitte's alleged acts of participation or material aid to an amended complaint" because Plaintiffs had failed to satisfy a second requirement—that Plaintiffs plead facts plausibly establishing that the sales to them were made "by means of" these documents. *See* F&R at 54, 61. Despite taking months to re-plead, Plaintiffs still have not satisfied this requirement.

*First*, none of the named Plaintiffs has identified the PPMs, promotional materials, or other documents "by means of" which the challenged sales were made to her, him, or it. *See*

---

[1] Deloitte believes these allegations are insufficient, as a matter of law, to allege its "participation or material aid" in the securities sales at issue. *See* Deloitte's Objections to F&R (Dkt. 246), at 10-12. Deloitte does not ask this Court to revisit that finding here.

Primary Liability Mot. at Section II.B. Thus—by definition—Plaintiffs have failed plausibly to allege that *any* of the challenged sales were "conducted by means of PPMs and promotional materials identifying Deloitte as auditor," and/or by the "use of Deloitte-audited financial statements as promotional materials." *See* F&R at 64. Deloitte is entitled to fair notice of which Plaintiffs (if any) were sold securities "by means of" PPMs identifying Deloitte as the external auditor, or containing Deloitte-audited financial statements. The Complaint does not provide this basic information.

*Second*, Plaintiffs' new allegations—for example, that Deloitte's "audited financial statements were excerpted and referenced in offering documents," and that "Deloitte was identified in the . . . Form ADV filed by Aequitas Investment Management, LLC ('AIM') as the auditor for all the Aequitas funds," Compl. ¶ 16—do not cure this defect. While these allegations may be relevant to the question of whether Deloitte "participated or materially aided in" *some* securities sales, *see* F&R at 61, they fail to establish a "causal relationship" between Deloitte and the particular offering documents "by means of" which securities were sold to Plaintiffs. *See* F&R at 54 ("ORS 59.115(3) first requires interactions with a seller that have a causal relationship to an unlawful sale of securities"). Plaintiffs' claims against Deloitte should be dismissed.

## II. STATEMENT OF FACTS

### A. Deloitte's Audits For Certain Aequitas Entities

"Aequitas" was a group of related, but functionally and legally distinct entities. *See* Primary Liability Mot., Section II.A. Of the "approximately 75" Aequitas entities, Compl. ¶ 23, six are alleged to have issued securities that were sold to the named Plaintiffs. These entities were: (i) Aequitas Commercial Finance ("ACF"); (ii) Aequitas Capital Opportunities Fund ("ACOF"); (iii) MotoLease Financial, LLC ("AMLF"); (iv) Aequitas Income Opportunity Fund

("AIOF"); (v) Aequitas Income Protection Fund ("AIPF"); and (vi) Aequitas Income Opportunity Fund II, LLC ("AIOF-II"). *See* Compl. ¶¶ 196-202.[2] Deloitte was first engaged to audit the year-end financial statements of certain Aequitas entities on or around September 12, 2013. *See* Compl. ¶ 16. In 2014, Deloitte issued audit opinions as to the year-end 2013 financial statements of ACF, ACOF, AMLF, AIPF, and AIOF. In 2015, Deloitte issued audit opinions as to the year-end 2014 financial statements of ACF, ACOF, AIPF, AIOF, and AIOF-II. These audit opinions and the dates thereof are summarized as follows:

**TABLE 1**

| Aequitas Entity | FY13 Opinion, Date | FY14 Opinion, Date |
|---|---|---|
| **ACF** | Yes, dated May 23, 2014 | Yes, dated May 29, 2015 |
| **ACOF** | Yes, dated April 30, 2014 | Yes, dated April 30, 2015 |
| **AMLF** | Yes, dated May 23, 2014 | No |
| **AIPF** | Yes, dated April 30, 2014 | Yes, dated April 6, 2015 |
| **AIOF** | Yes, dated April 25, 2014 | Yes, dated Mar. 31, 2015 |
| **AIOF-II** | No | Yes, dated Mar. 31, 2015 |

In March 2016, "Aequitas" was placed into receivership. *See SEC v. Aequitas Mgmt., LLC, et al.*, No. 3:16-cv-00438-PK (D. Or. Mar. 16, 2016) (stipulated interim order appointing receiver). As a result, Deloitte never issued an audit opinion on the financial statements of any Aequitas entity for year-end 2015.

Deloitte's audit opinions were addressed exclusively to the management of these various Aequitas entities and made clear that, in accordance with Generally Accepted Auditing Standards ("GAAS"), Deloitte's role as independent auditor was limited to the expression of an opinion on the entity's financial statements. *See* Masuda Decl. Ex. 1 (AU-C 700.27 and .30)[3]

---

[2] Plaintiffs also mention a number of other funds, including Aequitas ETC Founders Fund, LLC ("AETC"), Aequitas Enhanced Income Fund ("AEIF") (*see* Compl. ¶ 25), and Aequitas Private Client Fund, LLC ("APCF") (*see* Compl. ¶ 27)—but no Plaintiff claims to have purchased securities issued by those funds. *See* Compl. ¶¶ 196-202 (summarizing Plaintiffs' purchases of Aequitas securities and failing to list any securities issued by AETC, AEIF, or APCF).

[3] The Court has previously acknowledged that the Generally Accepted Auditing Standards identified in this Motion are subject to judicial notice. *See* F&R at 33-34 (citing *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1202 n.6 (D. Ariz. 2009) ("In the context of securities litigation, courts frequently take judicial notice of [similar accounting standards].")).

(stating that "[m]anagement is responsible for the preparation and fair presentation of the financial statements," while "the responsibility of the auditor is to express an opinion on the financial statements"). As GAAS recognizes, Deloitte's audit opinions were the final—and only—expression of its audit work. *See* Masuda Decl. Ex. 1 (AU-C 700.10) ("The objectives of the auditor are to (a) form an opinion on the financial statements . . . and (b) express clearly that opinion on the financial statements through a written report that also describes the basis for that opinion."); *see also* Masuda Decl. Ex. 2 (AU-C 200.A1) ("The auditor's opinion . . . does not assure, for example, the future viability of the entity nor the efficiency or effectiveness with which management has conducted the affairs of the entity.") Plaintiffs do not allege that Deloitte's audit opinion was ever included in any PPM "by means of" which Aequitas securities were sold to them.

**B. Plaintiffs And Their Securities Purchases**

Each of the seven named Plaintiffs is a high net worth, accredited investor. Collectively, Plaintiffs claim to have purchased securities from the six Aequitas entities identified above. *See* Compl. ¶¶ 196-202; *supra* Section II.A.; *infra* Table 2. As the Primary Liability Motion explains, each of the securities sold to Plaintiffs was different. Even securities issued by the same entity differed markedly from each other, because they were issued at different face values and interest rates. *See* Primary Liability Mot., Section II.A.; *infra* Table 2. Moreover, each security was sold "by means of" different offering documents, including PPMs, which themselves varied over time. *See* Primary Liability Mot., Section II.A. Each sale was also accompanied by other information, conveyed both orally and in writing by Aequitas employees and/or Plaintiffs' personal Registered Investment Advisors. *See id.* Despite this, no Plaintiff identifies the PPM, promotional material, other document, or other communication by means of which securities sales were made to her, him, or it. *See* Primary Liability Mot., Section II.B.; Compl. ¶¶ 196-202 (listing purchase dates, principal amounts, interest rates, and maturity dates

of Plaintiffs' "Purchases" but failing to specify the PPMs or other offering documents/communications pursuant to which these sales were made); *see also infra*, Table 2.

To be sure, the Complaint purports to identify many PPMs and other documents relating to *some* Aequitas securities. Plaintiffs identify 21 PPMs, several PPM "Supplements," and myriad other "offering documents" or "investment documentation" as containing allegedly false or misleading statements. Compl. ¶¶ 136-182 (identifying PPMs, PPM Supplements, and other offering materials issued by various Aequitas entities, including ACF, ACOF, AIOF, AIPF, AIOF-II, AEIF, APCF, and AMLF); *see also* Primary Liability Mot., Section II.B. Over half of the PPMs identified in the Complaint pre-date Deloitte's September 12, 2013 engagement as Aequitas's auditor—and Deloitte, unsurprisingly, is nowhere named in these documents. *Compare* Compl. ¶ 16 (identifying date of Deloitte's first engagement), *with* Compl. ¶¶ 136-38, 147-49, 150, 158-162 (identifying three ACF PPMs, three AIOF PPMs, one AIOF-II PPM,[4] and five AIPF PPMs issued before September 12, 2013). Indeed, the first PPM to identify Deloitte as the auditor was issued by ACF on November 30, 2013. *See id.* ¶ 140; Masuda Decl. Ex. 3 (Nov. 30, 2013 ACF PPM).

Of the 21 PPMs Plaintiffs identify, just five (three from ACF, one from ACOF, and one from AIOF-II) are alleged to have identified Deloitte as the auditor.[5] *See* Compl. ¶¶ 140, 144, 146, 151, 153 (alleging that the November 30, 2013 ACF PPM, the September 8, 2015 ACF PPM, the October 27, 2015 ACF PPM, the October 31, 2014 AIOF-II PPM, and the February 2014 ACOF PPM identified Deloitte as the issuing entity's auditor). None of these PPMs contained the issuing entity's audited financial statements—let alone Deloitte's opinion on those

---

[4] This "AIOF-II" entity is different than the AIOF-II entity that Deloitte audited. *See* Compl. ¶ 192(f) (alleging that another AIOF-II entity was established "[d]uring 2014").

[5] Plaintiffs also allege that three AEIF PPMs and one APCF PPM identified Deloitte as the "auditor." *See* Compl. ¶¶ 163-66 (alleging that the October 1, 2014, January 1, 2015, and December 14, 2015 AEIF PPMs, and the July 31, 2015 APCF PPM identified Deloitte). However, no Plaintiff claims to have purchased a security issued by AEIF or APCF. *See supra*, Section II.A., n.2.

financial statements. *See* Compl. ¶¶ 136-182 (describing PPMs without alleging that any of them contained audited financial statements or Deloitte's audit opinions thereupon); *see also* Masuda Decl. Exs. 3 (November 30, 2013 ACF PPM); 5 (October 2015 ACF PPM); 7 (February 2014 ACOF PPM); 6 (October 31, 2014 AIOF-II PPM); 4 (September 2015 ACF PPM). Although Plaintiffs allege that "prospective investors" were provided with Deloitte-audited financial statements, none of them alleges that they themselves were sold securities "by means of" Deloitte-audited financial statements. *See, e.g.*, Compl. ¶ 190.

Notably, Plaintiffs have not identified a single PPM issued by AIOF, AIPF, or AMLF that names Deloitte as the auditor. *See* Compl. ¶¶ 136-182. Yet certain Plaintiffs attempt to claim against Deloitte on the basis of securities issued by these entities. *See* Compl. ¶¶ 197-199 (alleging that in 2012, July 2012, and March 2013, respectively, Plaintiffs the Juliens, the MacDonalds, and RFMC purchased AIOF notes); *id.* ¶ 200 (alleging that in February 2013, Plaintiff Nowak purchased AIPF securities); *id.* ¶¶ 196(c), 198(d), 199(c) (alleging that in September 2015, Plaintiffs Ciuffitelli, RFMC, and the MacDonalds each purchased AMLF securities). Table 2 identifies each security allegedly sold to Plaintiffs (24 sales in total), the properties of each security (*e.g.*, type of security, principal amount, interest rates), and the dates of the alleged sales. However, no Plaintiff identifies the PPM "by means of" which these sales were made.

**Table 2** (*See* Compl. ¶¶ 136-182, 192-199)

| **Plaintiff** | **Security Sold To Plaintiff** | **Principal Amount; Interest Rate** | **Date Of Alleged Sale** | **PPM "By Means Of" Which Security Sold Identified?** |
|---|---|---|---|---|
| Lawrence Ciuffitelli | ACF Notes (three sales) | $750,000; 11% (all three) | May 2013 | No |
| | ACOF Interests | Not alleged; N/A | Feb. 2015 | No |
| | AMLF Note | $1,000,000; N/A | Sep. 2015 | No |
| Greg and Angela Julien | AIOF Note | $375,000; N/A | 2012 | No |
| | ACF Note | $375,000; 11% | Oct. 2015 | No |
| James and Susan MacDonald | ACF Notes (two sales) | $1,000,000; 9.5% and 11% (respectively) | Apr. 2015 | No |
| | AIOF Note | $500,000; 10% | July 2012 | No |
| | AMLF Note | $500,000; 13% | Sep. 2015 | No |
| R.F. MacDonald Co. | AIOF Note | $300,000; 10% | Mar. 2013 | No |
| | ACF Note | $3,134,781.18; 10% | Feb. 2015 | No |
| | ACF Note | $300,000; 10% | Apr. 2015 | No |
| | AMLF Note | $1,000,000 | Sep. 2015 | No |
| Andrew Nowak | AIPF Interest | $500,000; N/A | Feb. 2013 | No |
| | ACF Note | $1,600,000; 10% | May 2014 | No |
| | ACF Note | $500,000; N/A | May 2015 | No |
| William Ramstein | ACF Note | $400,000; 10% | July 2012 | No |
| | ACF Note | $520,000; 11% | Aug. 2013 | No |
| | ACF Note | $400,000; 10% | Mar. 2014 | No |
| | ACF Note | $625,000; 5% | Sep. 2015 | No |
| Greg and Susan Warrick | AIOF-II Note | $94,000; 10% | Sep. 2015 | No |
| | AIOF-II Note | $57,200; 10% | Sep. 2015 | No |

### C. Plaintiffs' Claims

Plaintiffs bring one state law claim against Deloitte under ORS 59.115(3), for allegedly participating or materially aiding in the Aequitas entities' unlawful securities sales. *See* Compl. ¶ 216. As the Court has recognized, this claim is based primarily on the allegation that certain sales transactions were "conducted by means of PPMs and promotional materials identifying Deloitte as auditor, and use of Deloitte-audited financial statements as promotional materials." *See* F&R at 64. In addition, the Complaint now alleges that (i) Deloitte was identified in a Form ADV filed by Aequitas Investment Management, LLC as the auditor for all Aequitas funds (Compl. ¶ 16); (ii) Deloitte-audited financial statements were excerpted and referenced in offering documents (*id.*); (iii) an "ACOF Fund Summary" identified Deloitte as the provider of tax and accounting services to ACOF (*id.* ¶ 157); (iv) Aequitas needed audited financial statements to comply with exceptions to custody requirements of the Investment Advisers Act of 1940 (*id.* ¶ 190(b)); and (v) Deloitte approved of Aequitas forwarding its contact details to potential investors conducting due diligence (*id.* ¶ 190(h)).

## III. LEGAL STANDARD

Rule 12(b)(6) requires a court to dismiss a complaint when it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At minimum, Plaintiffs must plead Deloitte's secondary liability under Federal Rule of Civil Procedure 8 ("Rule 8"). *See* F&R at 25. Under Rule 8, a complaint must contain "enough [factual allegations] to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Indeed, "[w]here a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops' short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although this Court must accept factual allegations as true, it may reject conclusions unsupported by fact, *see id.*, as well as allegations that are contradicted by documents incorporated by reference into the complaint or facts subject to judicial notice. *Sprewell v.*

*Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187; *see* F&R at 25.

## IV. ARGUMENT

To plead their ORS 59.115(3) claim, Plaintiffs were required plausibly to allege that Deloitte's "interactions with the seller [had] a causal relationship with the transaction[s]" at issue. *See* F&R at 54; *see also Prince v. Brydon*, 307 Or. 146, 149 (1988) (holding that liability under ORS 59.115(3) depends on non-seller's "personal contribution to the transaction" and "it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale."). Plaintiffs attempt to meet this requirement in two ways. First, as before, Plaintiffs allege that Deloitte was identified in some (but not all) Aequitas PPMs as the auditor, and that Deloitte-audited financial statements were provided to some (but not all) prospective investors. *Compare* F&R at 62-63 (reciting former allegations), *with* Compl. ¶ 16. Second, Plaintiffs add new allegations concerning Aequitas's generalized use of Deloitte's name, or information excerpted from Deloitte-audited financial statements. *See supra*, Section II.C. None of these allegations are sufficient to establish the requisite causal connection between Deloitte and the challenged transactions.

### A. Plaintiffs Fail To Allege That Sales Made To Them Were Accomplished By Means Of Documents Identifying Deloitte

In the F&R, this Court found that Plaintiffs had plausibly alleged Deloitte's participation or material aid in "at least some [of Aequitas's] securities transactions," because Deloitte was (i) identified as the auditor in some (but not all) Aequitas PPMs; and (ii) Deloitte-audited financial statements were provided to some (but not all) prospective investors. *See* F&R at 60-61. However, this Court deferred determination of the issue given Plaintiffs' other pleading failures, and made clear that Deloitte's liability on these grounds was limited to transactions "*conducted by means of* PPMs and promotional materials identifying Deloitte as the auditor, and use of

Deloitte-audited financial statements as promotional materials." *Id.* at 62 (emphasis added); *see also* Primary Liability Mot., Section II.B.

Plaintiffs have failed to remedy their deficient pleading allegations as required by the F&R. The Complaint identifies 21 PPMs (and myriad other offering documents) issued by various Aequitas entities at various points in time. *See supra*, Section II.B. To be sure, some of these PPMs identify Deloitte. *Id.* But never once does any Plaintiff identify the PPM, promotional material, or other document "by means of" which the challenged sales were made to *her, him or it*. *See* Primary Liability Mot., Section II.B.; Compl. ¶¶ 196-202 (listing purchase dates, principal amounts, interest rates, and maturity dates of Plaintiffs' "Purchases" but failing to specify which PPMs or other offering documents were part of Plaintiffs' purchase transactions). Thus, these Plaintiffs have not established the causal element—that Deloitte materially aided the transactions in which securities were sold *to them*. Their claims should be dismissed. *See* F&R at 54 ("A non-seller's liability depends on the importance of their conduct . . . *to the sale*"); *Prince*, 307 Or. at 149.[6]

Plaintiffs may argue that Deloitte improperly reads the F&R to impose a "reliance" requirement under ORS 59.115(3). Not so. As this Court correctly recognized, Plaintiffs'

---

[6] Plaintiffs must adequately plead their own claims before they can purport to represent the class. *See Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015) (requiring lead plaintiffs to plead all elements of stated claims on its own behalf). In other words, they cannot—as they attempt to do—simply recite false or misleading statements in PPMs by means of which *some* Aequitas securities were sold. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphasis in original).

Recognizing this deficiency in their pleadings, Plaintiffs assert that the securities at issue were "integrated," such that all "Aequitas" securities were sold "by means of" every misstatement alleged in the Complaint—or, as applied here, that Deloitte provided "clout" to all of "Aequitas's" securities sales because Deloitte was identified in the PPMs for some of them, at different points in time. *See* Primary Liability Mot., Section IV.B.1.; (citing Compl. ¶ 16). As this Court has held, this "integrated offering" theory fails under Oregon law, and on the facts alleged. *See* F&R at 31-32; *see also* Primary Liability Mot., Section IV.B.1.

central theory for Deloitte's liability—*i.e.*, that Deloitte lent "clout" to Aequitas's sales—requires an actionable sale to be "conducted by means of" documents identifying Deloitte or the use of Deloitte-audited financial statements." *See* F&R at 62. This is not a question of "reliance;" rather, it is a question of causation, and whether Plaintiffs can plead facts sufficient to support their own theory of secondary liability. *See id.* at 57 ("[I]nteractions with a seller may create secondary liability for material aid, subject to the *causation and materiality requirements*.") (emphasis added) (citing *Prince*, 307 Or. at 149-150). They have not done so—likely, for several reasons:

- More than half (12 of 21) of the PPMs identified in the Complaint were issued before Deloitte was engaged as Aequitas's auditor on September 12, 2013. *See supra*, Section II.B. Plaintiffs effectively concede that Deloitte cannot be liable for sales before the date of its engagement. *See* Compl. ¶ 190 ("Deloitte participated and materially aided in the sales of securities by Aequitas *beginning no later than September 13, 2013*.") (emphasis added). Yet, they are unable to say whether they purchased securities by means of these 12 PPMs, which did not (because they could not) identify Deloitte.[7]
- The PPMs that do identify Deloitte are from only three entities at issue (ACF, ACOF, and AIOF-II). *Supra*, Section II.B. Plaintiffs have not identified a single PPM issued by AIOF, AIPF, or AMLF that names Deloitte as the auditor or contains Deloitte-audited financial information (*see* Compl. ¶¶ 136-182); yet, certain Plaintiffs attempt to claim against Deloitte on the basis of securities issued by these entities. *See id.* ¶¶ 197, 198(a), 199(b) (alleging that in 2012, July 2012, and March 2013—prior to Deloitte's engagement—Plaintiffs the Juliens, the MacDonalds, and RFMC, respectively, purchased AIOF notes); *id.* ¶ 200(a) (alleging that in February 2013—

[7] Plaintiffs cannot plead facts sufficient to show that Deloitte had a "causal relationship" to such sales; any claims based on purchases that occurred prior to September 12, 2013 must be dismissed with prejudice against Deloitte. *See* F&R at 54.

prior to Deloitte's engagement—Plaintiff Nowak purchased AIPF securities); *id.* ¶¶ 196(c), 198(d), 199(c) (alleging that in September 2015, Plaintiffs Ciuffitelli, RFMC, and the MacDonalds each purchased AMLF securities).[8]

- Deloitte did not issue any opinion as to any Aequitas entity's financial statements until April 2014—seven months after it was engaged. *Supra*, Section II.A.; Table 1. Sales taking place before the issuance of Deloitte's audit opinions could not have been "conducted by means of" Deloitte-audited financial statements. *Compare* Compl. ¶ 201(c) (alleging that Plaintiff Ramstein purchased an ACF Note in March 2014), *with* Table 1 (showing that Deloitte first issued an audit opinion in April 2014, and did not issue an audit opinion as to ACF until May 23, 2014).
- Even as to sales occurring after Deloitte issued its first audit opinion, no Plaintiff claims to have been sold its security "by means of" Deloitte-audited financial statements. *See* Compl. ¶ 190 (alleging that "prospective investors" received Deloitte-audited financial statements but failing to specify whether the sales to Plaintiffs were by means of Deloitte-audited financial statements).

This Court instructed Plaintiffs to plead the "connection" between the PPMs they challenge and Deloitte, because Deloitte is entitled to fair notice of which Plaintiffs (if any) were sold securities "by means of" PPMs identifying Deloitte, or containing Deloitte-audited financial statements. *See* F&R at 61; *Iqbal*, 556 U.S. at 678 (holding under Rule 8 that a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully"). They have failed to do so.

---

[8] Plaintiffs concede that AMLF Notes were sold under a certain "Note Manufacturing Program," pursuant to which no PPMs or offering documents were provided to investors or prospective investors. *See* Compl. ¶ 192(h); *see also* Compl. ¶¶ 181-182 (loosely describing "investment documentation" as the only offering materials issued by AMLF).

### B. Plaintiffs' New Allegations Fail To Establish A Causal Connection Between Deloitte And The Sales Made To Them

Because Plaintiffs are unable to allege that sales made to them were "conducted by means of" PPMs identifying Deloitte and/or containing Deloitte-audited financial information, their claims should be dismissed. While plaintiffs add several new allegations that may be relevant to the question of whether Deloitte "participated or materially aided" in *some* securities sales, those allegations do not address the "by means of" requirement discussed above—and therefore, do not cure this deficiency in Plaintiffs' pleading. *Supra*, Section IV.B. Among other things, Plaintiffs now allege that (i) Deloitte was identified in certain forms that Aequitas filed with the SEC (Compl. ¶ 16); (ii) Deloitte-audited financial statements were excerpted and referenced in offering documents (*id.*); (iii) an "ACOF Fund Summary" identified Deloitte as the provider of tax and accounting services to ACOF (*id.* ¶ 157); (iv) Aequitas needed audited financial statements to provide a "stamp of legitimacy . . . to attract, secure, and retain investors" and to comply with exceptions to custody requirements of the Investment Advisers Act of 1940, which required it to provide audited financial statements to persons already invested in certain Aequitas Funds[9] (*id.* ¶ 190(b)-(d)); and (v) Deloitte allowed Aequitas to forward its contact details to potential investors conducting due diligence (*id.* ¶ 190(h)).

While these allegations may be relevant to the question of Deloitte's "participation or material aid" in *some* securities sales, they fail to establish that any of Deloitte's "interactions with the seller [had] a causal relationship with the transaction[s]" in which *they* were sold securities. *See* F&R at 54. For example, although Plaintiffs now allege that Deloitte-audited

---

[9] Plaintiffs' allegation that certain Aequitas Funds were required by the Investment Advisers Act of 1940 to provide audited financial statements to *prospective* investors is simply false. To satisfy exceptions to the Act's custody requirements, Aequitas was required only to provide audited financial statements to persons *already invested* in certain Aequitas Funds. *See* Compl. ¶ 190(d) ("Each year, each of our Funds delivers to *its investors* the previous year's audited financial statements."); *see also* CFR § 275.206(4)-2(b)(4). Plaintiffs thus have not alleged facts showing that audited financial statements provided to persons who already had invested had any "causal relationship" to transactions in which investors were being sold securities. *See* F&R at 54.

financial statements were excerpted and referenced in offering documents—the Complaint does not say which documents contained such excerpts, much less whether the sales made to any of these Plaintiffs were "conducted by means of" such documents. *See* Compl. ¶ 16 (alleging only that such excerpts were "provided to prospective investors and existing investors deciding whether to invest or re-invest"); *cf.* F&R at 62. Similarly, to the extent Deloitte was identified as Aequitas's "auditor" in SEC filings—the Complaint is silent as to how that fact causally impacted *any* security sale, much less the sale of a particular security to a particular Plaintiff. *See* Compl. ¶ 16 (alleging that "[o]n and after March 24, 2014, Deloitte was identified [in the Form ADV]," but failing to explain how that identification impacted any specific sale). In short, Plaintiffs are unable plausibly to allege how these new facts demonstrate a "causal relationship" between Deloitte and the specific sales made to them; they do not address the "by means of" element of Plaintiffs' claim and therefore cannot save Plaintiffs' Complaint.[10] *See* F&R at 54; *Prince*, 307 Or. at 149.

## V. CONCLUSION

For the foregoing reasons, Deloitte respectfully requests that the Court dismiss Plaintiffs' ORS 59.115(3) claim against Deloitte with prejudice.

---

[10] To the extent that all these allegations are intended to support a *different* theory that Deloitte "enabled" the Aequitas entities to "continue [their] securities business," *see* F&R at 55, the Complaint fails to specify which of the new allegations are intended to support that theory; much less how each of them does so. *See* Compl. ¶ 190(b) (alleging that Deloitte's auditing services enabled the Aequitas group to continue" but continuing to recite all facts identified above without explaining whether such facts were pled in support of such "enabling" theory or how such fact "enabled" each Aequitas entity to sell the securities at issue). In any event, none of the new allegations are sufficient to plead that Deloitte "enabled" each and every sale by each and every Aequitas entity. *Cf. Ainslie v. Spolyar*, 144 Or. App. 134, 145 (1996) (finding that attorney materially aided sale of partnership units in Christmas tree business by directing and authorizing an improper distribution of investor funds for the specific purpose of allowing continued sales of partnership units to occur).

October 23, 2017

LATHAM & WATKINS LLP

By: /s/ Peter A. Wald

**Peter A. Wald**
**Gavin M. Masuda**
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Email: peter.wald@lw.com
gavin.masuda@lw.com

-And –

**Robert C. Weaver, Jr.**, OSB No. 801350
**Gary I. Grenley**, OSB No. 75138
**Paul H. Trinchero**, OSB No. 014397

121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939
Email: rweaver@gsblaw.com
ggrenley@gsblaw.com
ptrinchero@gsblaw.com

**Attorneys for Defendant Deloitte & Touche LLP**