**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
E-Mail: ptrinchero@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Peter A. Wald (admitted *pro hac vice*)**
E-Mail:  peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
E-Mail: gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

**Attorneys for Defendant Deloitte & Touche LLP**
*Additional Counsel of Record Listed on Signature Page*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; INTEGRITY BANK & TRUST; and DUFF & PHELPS LLC,<br><br>                    Defendants. | Case No. 3:16-cv-00580-AC<br><br>**JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM FILED BY DEFENDANTS DELOITTE & TOUCHE LLP, EISNERAMPER LLP, SIDLEY AUSTIN LLP, TONKON TORP LLP, TD AMERITRADE, INC., INTEGRITY BANK & TRUST, AND DUFF & PHELPS, LLC**<br><br>Pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6)<br><br>[Primary Liability Issues]<br><br>Oral Argument Requested |

**DEFENDANTS' JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................2

II.  STATEMENT OF FACTS ...................................................................................4

     A.   The Aequitas Entities And Their Varied Securities.................................4

     B.   Plaintiffs And Their Securities Purchases..............................................7

     C.   Defendants Deloitte & Touche LLP, EisnerAmper LLP, Sidley Austin
          LLP, Tonkon Torp LLP, TD Ameritrade, Inc., Integrity Bank & Trust,
          And Duff & Phelps, LLC.........................................................................9

     D.   Plaintiffs' Claims And Theories Of Primary Liability .........................10

III. LEGAL STANDARD.........................................................................................11

IV.  ARGUMENT .....................................................................................................12

     A.   Plaintiffs' Theory Of Primary Liability Based On The Sale Of
          Unregistered Securities Should Be Dismissed......................................12

     B.   Plaintiffs' Theory Of Primary Liability Based On The Sale Of Securities
          By Means Of False Or Misleading Statements Should Be Dismissed .................14

     C.   Plaintiffs' Claims Based On Sales Made Before April 4, 2013 Are Barred
          By ORS 59.115(6)'s Three-Year Statute Of Limitations .....................21

V.   CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aero Marine Engine, Inc. v. Transporter, Inc.*,
No. 05-1469, 2007 WL 3128500 (D. Or. Oct. 23, 2007)........................................................11

*Anderson v. Carden*,
146 Or. App. 675 (1997)........................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................11

*Brown et al. v. Price, et al.*,
No. 3:17-cv-00869-HZ (D. Or. 2016)......................................................................................7

*Frohs v. Greene*,
253 Or. 1 (1969)......................................................................................................................22

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ......................................................................................11

*Houston v. Seward & Kissel, LLP*,
No. 07cv6305, 2008 WL 818745 (S.D.N.Y. Mar. 27, 2008) .................................................14

*Karsun v. Kelley*,
258 Or. 155 (1971)..................................................................................................................11

*Loewen v. Galligan*,
No. A9005-02822, 1992 WL 12582753 (Or. Cir. Ct. Aug. 19, 1992), *aff'd* 130
Or. App. 222 (1994)................................................................................................................18

*State v. Marsh & McLennan Cos.*,
353 Or. 1 (2012)................................................................................................................19, 20

*Mitchell v. Greenough*,
100 F.2d 184 (9th Cir. 1938) .................................................................................................22

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) .............................................................................................18

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .....................................................................................11, 13, 18

*Riley v. Brazeau,*
    612 F. Supp. 674 (D. Or. 1985) ........................................................................14

*Sanders v. John Nuveen & Co.,*
    463 F.2d 1075 (7th Cir. 1972) ........................................................................16

*Sanders v. John Nuveen & Co.,*
    619 F.2d 1222 (7th Cir. 1980) ..................................................................16, 17

*TRM Corp. v. Paulsell,*
    No. CV-02-215, 2002 WL 31549112 (D. Or. June 4, 2002) .......................22, 23

*Updike v. Clackamas County,*
    No. 3:15-cv-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ...............17, 20

## STATUTES

15 U.S.C. § 77d(a)(2)...........................................................................................13

15 U.S.C. § 77r(b)................................................................................................13

15 U.S.C. § 77r(b)(4)(F).......................................................................................13

ORS 59.055 ...........................................................................................10, 12, 21

ORS 59.115 ................................................................................................ *passim*

ORS 59.115(1)(b) ....................................................................................... *passim*

ORS 59.115(3) ...............................................................................1, 2, 3, 10

ORS 59.115(6) .................................................................................1, 3, 21

ORS 59.135(2) ............................................................................................ *passim*

## RULES

Federal Rules of Civil Procedure Rules 8..............................................................1

Federal Rules of Civil Procedure Rule 9(b)................................................. *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................1

## REGULATIONS

17 C.F.R. § 230.501(a)..........................................................................................13

17 C.F.R. § 230.501(e)(1)(iv) ...............................................................................13

17 C.F.R. § 230.506 .................................................................................................13

17 C.F.R. § 230.506(a) .............................................................................................13

17 C.F.R. § 230.506(b) .............................................................................................13

## LR 7-1 CERTIFICATION

In compliance with this Rule, it is certified that the parties made a good faith effort through telephonic conferences to resolve the dispute and have been unable to do so.

## JOINT MOTION

Pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, the Order Granting Unopposed Motion Regarding Joint and Individual Motions and Briefing (Dkt. 70), and the Scheduling Order (Dkt. 254), Defendants Deloitte & Touche LLP, EisnerAmper LLP, Sidley Austin LLP, Tonkon Torp LLP, TD Ameritrade, Inc., Integrity Bank & Trust, and Duff & Phelps, LLC (collectively, "Defendants") jointly move to dismiss the claims brought by Plaintiffs under ORS 59.115(3), as follows:

1. Plaintiffs fail to state a claim under ORS 59.115(3) based on the sale of unregistered securities in violation of ORS 59.055 and 59.115(1)(a).

2. Plaintiffs fail to state a claim under ORS 59.115(3) based on the sale of securities "by means of" or "in connection with" false or misleading statements in violation of ORS 59.115(1)(b) and 59.135(2).

3. Plaintiffs' claims under ORS 59.115(3) are barred by the three-year statute of limitations set forth in ORS 59.115(6) as to securities sold before April 4, 2013.

In support of this Joint Motion, Defendants rely on the Joint Memorandum of Law that follows, the Declaration of Gavin M. Masuda ("Masuda Decl."), the Second Amended Complaint (the "Complaint" or "Compl."), and the record assembled in this case.

## JOINT MEMORANDUM OF LAW

### I.    INTRODUCTION

This Court is familiar with these Plaintiffs and their claims under the Oregon Securities Law.  They are purchasers of different securities that were issued by different Aequitas-related entities over a five-year period.  Plaintiffs seek to represent a class of persons who purchased any security issued by any Aequitas entity at any time during that period.  In its detailed Amended Findings & Recommendation ("F&R"), Dkt. 242, adopted and entered, Dkt. 250, this Court gave Plaintiffs specific instructions on how they would need to re-plead their claims in accordance with the Federal Rules of Civil Procedure and Oregon law.  But even with the benefit of the Court's instructions—and several months' time—Plaintiffs have failed to plead a viable theory of Aequitas's "primary" liability, which necessarily means that they have failed to state a claim under ORS 59.115(3).

*First*, this Court required Plaintiffs to plead facts supporting their claim that Aequitas's various securities were not "federal covered securities" (and, therefore, were required to be registered with the State of Oregon).  *See* F&R at 41 ("Plaintiffs must plead facts showing the Disputed Securities were not federal covered securities.").  Moreover, because Plaintiffs allege that "Aequitas" misled investors as to the federal covered status of its securities, this Court required them to plead particularized facts—sufficient under Rule 9(b) of the Federal Rules of Civil Procedure—to support such claims.  *See id.*  The Complaint does not meet this pleading burden.  Instead of pleading particularized facts showing why each security at issue was *not* a federal covered security, Plaintiffs offer blanket assertions purporting to address all securities issued during the entire class period.  These allegations are clearly insufficient under the F&R.

*Second*, this Court required Plaintiffs to "differentiate between the securities sold by Aequitas entities" (F&R at 32), and to "plead actionable misrepresentations and omissions

Page 2 –   **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

connected to a sale or group of sales of a security." *Id.* at 48. The requisite "connection," as this Court explained, is established where "the seller made a misleading statement *in the offering documents or other promotional materials for a security.*" *Id.* at 46 (emphasis added). The Complaint fails to meet this threshold requirement. While alleging that "Aequitas" made materially false or misleading statements in various PPMs issued throughout the class period, Plaintiffs fail to identify which (if any) of the sales made to them were accomplished "by means of" specific PPMs containing (identified) false or misleading statements, as required by ORS 59.115(1)(b) and, equivalently, by ORS 59.135(2). Instead, defying this Court's unequivocal rejection of their "integrated offering theory" as a matter of law (F&R at 25-32), Plaintiffs once again assert that all "Aequitas securities sales" across the alleged five-year class period were accomplished "by means of" every allegedly misstated PPM or other document identified in the Complaint. That is, Plaintiffs simply note the dates on which they purchased securities, but they do not identify the offending PPM "by means of" which those securities were sold to them. This pleading stratagem, if allowed to stand, would enable Plaintiffs to avoid this Court's clear mandate, and prevent Defendants from understanding—and defending against—the precise charges brought against them.[1] *See id.* at 46.

*Third*, Plaintiffs' claims under ORS 59.115(3) are barred by the three-year statute of limitations set forth in ORS 59.115(6) as securities sold before April 4, 2013. Plaintiffs invoke

---

[1] Indeed, this pleading defect exists not only with respect to Plaintiffs' "primary liability" theories, but with respect to their "secondary liability" claims, too. For example, Plaintiffs allege that certain Defendants "participated" or "materially aided" in the transactions through which securities were sold to them, because those Defendants were identified in PPMs or other offering documents. *See, e.g.*, Compl. ¶ 189(d)-(e). However, no Plaintiff identifies the specific document "by means of" which securities were sold to them—making it impossible for those Defendants to discern the basis (if any) on which it is alleged to have "materially aided" the challenged sale. *See* Defendant Deloitte & Touche LLP's Mot. To Dismiss Plaintiffs' Second Am. Compl. And Supporting Mem. Of Law, at Section IV.

Page 3 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

the discovery rule in an attempt to save those earlier sales, Compl. ¶¶ 214-15, but they have not

pled facts excusing their delay in bringing suit.  The Court should dismiss their claims as to any

pre-April 4, 2013 sales because the untimeliness of such claims is apparent on the Complaint's

face.

## II.     STATEMENT OF FACTS

### A.     The Aequitas Entities And Their Varied Securities

"Aequitas" refers to a group of related entities including Aequitas Capital Management,

LLC, Aequitas Holdings, LLC, and their affiliates.  Compl. ¶ 24; F&R at 4.  Each of the

Aequitas entities served a distinct purpose.  For example, Aequitas Capital Management, Inc.

was a management company that oversaw the operations of various Aequitas entities (Compl. ¶

26), while Aequitas Investment Management, LLC was an SEC-registered investment advisor

that oversaw the investment decisions of various Aequitas funds.  Compl. ¶ 27; F&R at 9

(describing Aequitas Investment Management, LLC's "capacity as investment advisor and

manager of multiple Aequitas entities").  The business of the Aequitas entities was diverse.

Some made non-traditional investments, including in healthcare, student loan, and consumer

credit receivables.  Compl. ¶ 3; F&R at 6 ("The Aequitas group engaged in diverse business

activities, including purchasing consumer debt from multiple industries.").  Some sold securities.

Compl. ¶ 28.

Plaintiffs stress the related nature of these businesses and allege both that the entities

themselves were "integrated" (*id.* ¶ 23), and that "[t]he offerings of the Aequitas securities were

a single integrated offering for purposes of the securities registration requirements[.]"  *Id.* ¶ 32.

However, notwithstanding the alleged integration of operations, only certain entities sold

securities—and, as this Court has ruled, Plaintiffs' allegations of "integration" fail as a matter of

law.  *See* F&R at 7; *id.* at 32 ("Plaintiffs' integrated offering theory is unsupported by the Oregon

Page 4 –   **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Securities Law and does not allow consideration of all the 'Aequitas Securities' as a single securities offering."); *id.* ("Because this theory is not legally viable, all allegations regarding 'Aequitas' or 'Aequitas securities' are insufficiently pleaded.").  As alleged here, the six issuing entities were: (i) Aequitas Commercial Finance ("ACF"); (ii) Aequitas Capital Opportunities Fund ("ACOF"); (iii) MotoLease Financial, LLC ("AMLF"); and (iv) Aequitas Income Opportunity Fund ("AIOF"); (v) Aequitas Income Protection Fund ("AIPF"); (vi) Aequitas Income Opportunity Fund II, LLC ("AIOF-II") (collectively, the "Funds").  *See* Compl. ¶¶ 196-202.[2]

The various securities at issue differed markedly from one another.  Plaintiffs concede that the challenged sales were accomplished by means of different offering documents, which varied in form and content from one security to the next, and changed over time.  *See, e.g.*, Compl. ¶¶ 136-46; F&R at 7 ("The Funds sold the Securities using Private Placement Memoranda, where the seller described to potential investors its business operations, assets, and risks.").  Moreover, the securities offered different terms and repayment schedules for investors. For example, while many of the securities at issue were debt-based offerings, the ACOF Interests were shares in a private investment vehicle consisting of equity interests in various portfolio companies.  While the debt-based offerings provided for specified rates of return and fixed maturity dates, the ACOF Interests offered no set rate of return at all.  *Compare* Masuda Decl. Ex. 3 (November 30, 2013 ACF PPM), *with id.* Ex. 7 (February 2014 ACOF PPM).

---

[2] Plaintiffs also mention a number of other funds, including Aequitas ETC Founders Fund, LLC ("AETC"), Aequitas Enhanced Income Fund ("AEIF") (*see* Compl. ¶ 25), and Aequitas Private Client Fund, LLC ("APCF") (*id.* ¶ 27)—but no Plaintiff claims to have purchased securities issued by those funds.  *See id.* ¶¶ 196-202 (summarizing Plaintiffs' purchases and failing to list any securities issued by AETC, AEIF, or APCF).  Similarly, no Plaintiff claims to have bought securities through the alleged "Note Manufacturing Program."  *See id.* ¶ 63.

Furthermore, the securities issued by a particular entity varied according to the purchaser and the timing of sale. ACF, for instance, issued private notes, but each was a unique security. They were issued at different face values and carried different interest rates. Even those issued close in time were priced differently, depending on the investor. *Compare* Compl. ¶ 200(b) (alleging that Plaintiff Nowak purchased an ACF Note in May 2014 "in the principal amount of $1.6 million, with interest at the annual rate of 11 percent and a May 2018 maturity date"), *with id.* ¶ 201(c) (alleging that Plaintiff Ramstein purchased an ACF note in March 2014 "with a principal amount of $400,000, with interest at the annual rate of 10 percent and a March 2018 maturity date").

Significantly, Plaintiffs concede that the various securities sales were accomplished by means of different offering documents, including individualized PPMs. *See, e.g.*, Compl. ¶¶ 136-46; F&R at 7 ("The Funds sold the Securities using Private Placement Memoranda, where the seller described to potential investors its business operations, assets, and risks."). For example, AIOF issued PPMs that were materially different than those issued by ACF. *Compare* Compl. ¶ 136 (a)-(b) (alleging that the ACF PPM dated June 9, 2010 contained statements regarding the "Payment Terms" and "Use of Proceeds" applicable to the ACF Notes), *with id.* ¶ 147 (alleging that the AIOF PPM dated July 1, 2011 contained statements regarding such things as the "Sources of Repayment" and "collateral," but not the payment terms or use of proceeds applicable to AIOF investments). Furthermore, Plaintiffs allege that the representations in the PPMs varied over time and by entity. *Compare* Compl. ¶ 148 (alleging that the March 1, 2012 AIOF PPM was false and misleading because it failed to disclose the identity of Corinthian) *with* Masuda Decl. Ex. 8 (ACF PPM Supplement dated October 16, 2014) (identifying Corinthian by name).

Beyond the PPMs, Plaintiffs acknowledge generally that they received other information, both in writing and orally from Aequitas personnel and/or Plaintiffs' own Registered Investment Advisors. *See* Compl. ¶¶ 36, 41, 46, 51, 56, 61, 66 (alleging that the issuers of all securities sold to Plaintiffs "engaged in roadshows promoting the [security] to prospective investors and/or their investment advisors" and that the issuers "widely disseminated promotion, marketing, offering, and sales materials . . . to prospective investors and/or investment advisors").[3]  Here too, however, Plaintiffs make no effort to link any particular information with any particular sale or offering made over the five-year period.

Perhaps the only common feature of these securities is that none was publicly traded; instead, each was sold in a private placement transaction to individuals who represented themselves to be sophisticated, high net-worth, accredited investors.  Those investors were warned—and explicitly acknowledged—that the securities were "speculative, illiquid and involve[d] a high degree of risk," and as such "should be purchased only by persons who [could] afford to lose their entire investment."  Masuda Decl. Ex. 3 (November 30, 2013 ACF PPM).

### B.    Plaintiffs And Their Securities Purchases

Collectively, Plaintiffs claim to have purchased securities from the six Aequitas entities identified above. *See* Compl. ¶¶ 196-202.  However, while Plaintiffs identify the securities they allegedly purchased and the dates of those purchases, none identifies the specific PPMs, offering documents, or other written and/or oral representations "by means of" which the challenged securities were sold to them. *See id.*  Instead, the Complaint identifies certain PPMs and other

---

[3] Indeed, other investors in related lawsuits have asserted claims against the registered investment advisers who were directly involved in the securities transactions. *See* Am. Compl. at ¶ 31, *Brown v. Price, et al.*, No. 3:17-cv-00869 (D. Or. filed Jun. 2, 2017), Dkt. 59 (Jul. 26, 2017) (alleging that investment advisers "solicited and sold Aequitas Investments . . . not because those were good investment choices for Plaintiffs, but because of the conflicted relationship between Aequitas and" the investment advisers.").

Page 7 –  **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

documents issued by different Aequitas entities over time, without connecting those materials to their particular securities transactions.  These documents and their identifying dates are:

|   | Aequitas Entity | Allegedly Misleading Documents |
|---|---|---|
| 1. | ACF | • ACF PPM dated June 9, 2010 (Compl. ¶ 136).<br>• ACF PPM dated December 1, 2011 (Compl. ¶ 137).<br>• ACF PPM dated November 30, 2012 (Compl. ¶ 138).<br>• ACF PPM Supplement dated March 1, 2013 (Compl. ¶ 139).<br>• ACF PPM dated November 30, 2013 (Compl. ¶ 140).<br>• ACF PPM Supplement dated October 16, 2014 (Compl. ¶ 141).<br>• ACF "Consolidated Financial Statements" for 2014 and 2013, "disseminated" after May 9, 2015 (Compl. ¶ 142).<br>• ACF "Aequitas Capital Investor Update" dated May 11, 2015 (Compl. ¶ 143).<br>• ACF PPM dated September 9, 2015 (Compl. ¶ 144).<br>• ACF "Performance Summary" for the quarter ended September 30, 2015 (Compl. ¶ 145).<br>• ACF PPM dated October 27, 2015 (Compl. ¶ 146). |
| 2. | AIOF | • AIOF PPM dated July 1, 2011 (Compl. ¶ 147).<br>• AIOF PPM dated March 1, 2012 (Compl. ¶ 148).<br>• AIOF PPM dated December 21, 2012 (Compl. ¶ 149). |
| 3. | AIOF II | • AIOF II PPM dated February 12, 2012 (Compl. ¶ 150).<br>• AIOF II PPM dated October 31, 2014 (Compl. ¶ 151). |
| 4. | ACOF | • ACOF PPM dated February 2014 (Compl. ¶ 153).<br>• ACOF PPM Supplement dated August 2014 (Compl. ¶ 154).<br>• ACOF PPM Supplement dated November 2014 (Compl. ¶ 155).<br>• ACOF PPM Supplement dated February 2015 (Compl. ¶ 156).<br>• "Aequitas Capital Opportunities Fund, LP Confidential Fund Summary" dated March 9, 2014 (Compl. ¶ 157). |
| 5. | AIPF | • AIPF PPM dated September 30, 2011 (Compl. ¶ 158).<br>• AIPF PPM dated December 14, 2011 (Compl. ¶ 159).<br>• AIPF PPM dated February 15, 2012 (Compl. ¶ 160).<br>• AIPF PPM dated June 1, 2012 (Compl. ¶ 161).<br>• AIPF PPM dated December 31, 2012 (Compl. ¶ 162). |
| 6. | AEIF | • AEIF PPM dated October 1, 2014 (Compl. ¶ 163).<br>• AEIF PPM dated January 1, 2015 (Compl. ¶ 164).<br>• AEIF PPM dated December 14, 2015 (Compl. ¶ 165). |
| 7. | APCF | • APCF PPM dated July 31, 2015 (Coml. ¶ 166). |
| 8. | AMLF | • AMLF "investment documentation" (Comp. ¶ 181-82). |

Plaintiffs allege generally that these materials were misleading because they failed to disclose details regarding Aequitas's Corinthian investment, the "interrelated" nature of the Aequitas entities, the potential uses of investor funds, and the Aequitas entities' histories. However, because the PPMs varied over time and by entity, each is alleged to have been false or misleading for different—and even inconsistent—reasons. *Compare* Compl. ¶ 148(f) (alleging that statements in AIOF's March 1, 2012 PPM were misleading because, while "the PPM describes its student loan receivables portfolio [it] omits and fails to disclose that the 'publicly-held educational institution' was the for-profit Corinthian Colleges"), *with id.* ¶ 153(c) (admitting that the February 2014 ACOF PPM identified Corinthian by name).  In short, it is a threshold pleading requirement to allege—for purposes of establishing primary liability under ORS 59.115—not only what specifically was "false or misleading" about these documents, but also the specific PPM, offering document, and/or other written or oral representations "by means of" which each security was sold.  F&R at 46.  Plaintiffs have once again failed to meet this fundamental requirement.

### C. Defendants Deloitte & Touche LLP, EisnerAmper LLP, Sidley Austin LLP, Tonkon Torp LLP, TD Ameritrade, Inc., Integrity Bank & Trust, And Duff & Phelps, LLC

Defendants Deloitte & Touche LLP, EisenerAmper LLP, Sidley Austin LLP, Tonkon Torp LLP, Integrity Bank & Trust, and Duff & Phelps, LLC were providers of various professional services to one or more of the Aequitas entities, at different points in time.  TD Ameritrade, Inc. provided custodian services for the Aequitas securities to its customers, typically on behalf of the RIAs on the AdvisorDirect platform.  None of them is alleged to have sold Aequitas securities.  Instead, Defendants are alleged to have "participated in and materially aided unlawful sales of securities."  Compl. ¶ 216.

D.    **Plaintiffs' Claims And Theories Of Primary Liability**

Plaintiffs brought suit on April 4, 2016, and filed their Second Amended Class Action

Complaint on September 8, 2017.  Plaintiffs assert a single state law claim against these

Defendants under ORS 59.115(3).  *See* Compl. ¶ 216.  ORS 59.115(3) is a secondary liability

statute that renders jointly and severally liable "every person who participates or materially aids

in [a] sale" of securities that otherwise violates ORS 59.115.  Accordingly, in order to state a

claim against Defendants for secondary liability, Plaintiffs must as a threshold matter allege a

primary violation of ORS 59.115 by a seller of securities.  F&R at 52 (holding that Plaintiffs'

failure to adequately plead primary liability "eliminates Defendants' secondary liability, for

purposes of the FAC"); *Anderson v. Carden*, 146 Or. App. 675, 683 (1997) ("[T]he liability of

the non-seller participant under ORS 59.115(3) is predicated on the violation of the seller.").[4]

Plaintiffs assert two theories of primary liability.  First, Plaintiffs allege that "Aequitas"

sold unregistered securities in violation of ORS 59.055 (made actionable by ORS 59.115(1)(a)).

Compl. ¶ 213.  Second, Plaintiffs allege that "Aequitas" sold them securities "by means of" false

or misleading statements.  *Id.* ¶¶ 214-15.  This second theory of primary liability has two

branches because, according to Plaintiffs, Aequitas's alleged false and misleading statements

violated two different statutes.  The first is ORS 59.135(2), which prohibits a seller from

"mak[ing] an untrue statement of a material fact or [ ] omit[ting] to state a material fact

necessary in order to make the statements made. . . not misleading."  Compl. ¶ 214.  The second

is ORS 59.115(1)(b), which prohibits the sale of securities "by means of an untrue statement of

---

[4] Individual motions filed by several Defendants address their individual defenses to Plaintiffs'
claims of secondary liability under ORS 59.115(3).  In addition, as noted above, because
different Defendants are allegedly connected in different ways to different offering materials,
Plaintiffs' failure to identify which sales Aequitas made "by means of" which offering materials
renders their secondary liability claims fatally uncertain.

Page 10 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED**
        **COMPLAINT**

material fact or an omission to state a material fact necessary in order to make the statements

made. . . not misleading."  Compl. ¶ 215.

## III.    LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a complaint lacks sufficient facts to "state a claim

to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs'

only claim against Defendants is under ORS 59.115.  Oregon courts have long recognized that

"the primary basis for such an action is fraud."  *Karsun v. Kelley*, 258 Or. 155, 167 (1971); *see*

*also Aero Marine Engine, Inc. v. Transporter, Inc.*, No. 05-1469, 2007 WL 3128500, at *3 n.2

(D. Or. Oct. 23, 2007) ("Both of the Oregon securities statutes in issue [ORS 59.115 and

59.135] create statutory 'fraud' actions.").  Accordingly, the Complaint must satisfy both the

requirements of Rule 8 and the heightened pleading standards of Rule 9(b).  *E.g.*, F&R at 23

("Plaintiffs' claims alleging Aequitas committed primary violations of the Oregon Securities

Law through misrepresentation and omission sound in fraud, and must be pleaded with

particularity.").

Under Rule 8, a complaint must contain "enough [factual allegations] to raise a right to

relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and a

plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*,

556 U.S. at 678.  Where a complaint alleges fraud, however, Rule 9(b) additionally requires that

the circumstances constituting fraud or mistake be stated with particularity.  *See* Fed. R. Civ. P.

9(b).  That is, the complaint must "identify the who, what, when, where, and how of the

misconduct charged, as well as what is false or misleading about the purportedly fraudulent

statement, and why it is false."  *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145,

1163 (D. Or. 2015) (quotation, alteration, and citation omitted); *see also In re Rigel Pharm., Inc.*

*Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (a complaint must "set[] forth what is false or

misleading about the statement and why the statements were false or misleading at the time they were made"); *see also* F&R at 23.

Although Rule 9(b) provides that a defendant's state of mind may be generally alleged, those allegations must still satisfy *Iqbal/Twombly* to avoid being impermissibly speculative. Indeed, in *Iqbal*, the United States Supreme Court made clear that the ability to allege state of mind generally "does not give [a plaintiff] license to evade the less rigid—though still operative—strictures of" Rule 8. *Iqbal*, 556 U.S. at 686-687. Thus, even as to state of mind, a plaintiff may not merely "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687.

## IV.    ARGUMENT

### A.    Plaintiffs' Theory Of Primary Liability Based On The Sale Of Unregistered Securities Should Be Dismissed

Plaintiffs' first theory of primary liability is that the Aequitas securities were sold without proper registration under ORS 59.055. *See* Compl. ¶ 213.

This Court previously dismissed Plaintiffs' claim based on this theory of primary liability, holding that "Plaintiffs must plead facts showing that the Disputed Securities were not federal covered securities." F&R at 41. Under Oregon law a "federal covered security" is defined to include, among other things, securities that are sold under an SEC Regulation D exemption.[5] A security qualifies for a Regulation D exemption when it is sold only to accredited

---

[5] Oregon law defines "federal covered security" by reference to 15 U.S.C. § 77r(b). *See* ORS 59.015(5). 15 U.S.C. § 77r(b) defines "covered security" as, among other things, an offering exempt from registration under SEC "rules or regulations issued under section 77d(2)." 15 U.S.C. § 77r(b)(4)(F). Section 77d(2) exempts from registration "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2). Securities sold pursuant to 17 C.F.R. § 230.506 are "deemed to be transactions not involving any public offering." 17 C.F.R. § 230.506(a). A security is sold pursuant to Section 230.506 (Rule 506 of Regulation D) when sold only to accredited investors and up to 35 other purchasers who the issuer reasonably

investors—*e.g.*, investors whose net worth exceeds $1 million or with income greater than $200,000[6]—and up to 35 other purchasers who the issuer reasonably believes are able to evaluate the investment.  17 C.F.R. § 230.506(b); 17 C.F.R. § 230.501(e)(1)(iv).  Plaintiffs have failed to plead facts showing that the securities in question were not sold under a Regulation D exemption at the time any Aequitas entity asserted that they were.

As a threshold matter, in evaluating whether the Complaint has pled such facts, this Court must apply Rule 9(b).  As before, Plaintiffs have alleged that "Aequitas entities violated ORS 59.115(1)(b) and 59.135(2) by failing to disclose that the Disputed Securities were required to be registered."  F&R at 41.  Thus, under Rule 9(b), Plaintiffs were required to plead particularized facts showing that statements regarding registration were false when made—in other words, that Aequitas represented a security was exempt from registration, when in fact it was not. *See In re Rigel Pharm.*, 697 F.3d at 876 (A complaint must "set[] forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made.") (citations omitted).

Plaintiffs come nowhere close to meeting this pleading burden.  Instead, they make conclusory allegations that all Aequitas securities failed federal exemptions because certain securities:  (i) were sold by general solicitations (Compl. ¶¶ 36, 41, 46, 51, 56); (ii) were neither "federal covered securities under the Oregon Securities Law, [n]or were [they] covered securities under Section 18 of the Securities Act" (*id.* ¶¶ 37, 42, 47, 52, 57); or (iii) were not actually exempt under Rule 506 of Regulation D because they were sold to "unaccredited investors" (*e.g.*,

---

believes are able to evaluate the investment. 17 C.F.R. § 230.506(b); 17 C.F.R. § 230.501(e)(1)(iv).

[6] *See* 17 C.F.R. § 230.501(a) (defining "accredited investor").

Page 13 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*id.* ¶ 37(c)).[7]    These blanket assertions lack the specificity required by Rule 9(b), because they fail to particularize the "nature of the alleged fraudulent activit[y]." *Houston v. Seward & Kissel, LLP*, No. 07cv6305, 2008 WL 818745, at *3 (S.D.N.Y. Mar. 27, 2008) (citing *Riley v. Brazeau*, 612 F. Supp. 674, 677 (D. Or. 1985)).    With respect to the allegation that securities were sold via general solicitations:  When did these solicitations occur?  With respect to which securities?  To whom were the solicitations made?  By whom?  Similarly, with respect to the allegation that securities were sold to unaccredited investors:  When were such sales made?  Of which security?  To how many unaccredited investors?  Who were those investors and what is the basis for Plaintiffs' assertion that they were unaccredited?  Tellingly, Plaintiffs do not allege that any of them were unqualified to purchase their respective securities.  Nor does the Complaint provide any facts from which the Court reasonably could infer that the Aequitas entities improperly sold securities to unqualified investors, in numbers rendering the Regulation D exemption inapplicable.  Without this information, Defendants are left to guess at the factual underpinnings of Plaintiffs' non-registration claims, leaving them unable to understand those claims or prepare a defense.

**B.    Plaintiffs' Theory Of Primary Liability Based On The Sale Of Securities By Means Of False Or Misleading Statements Should Be Dismissed**

Plaintiffs' second theory of primary liability is that Aequitas violated ORS 59.135(2) and ORS 59.115(1)(b), both of which prohibit the making of false or misleading statements in connection with the sale of securities.  ORS 59.135(2); ORS 59.115(1)(b); *see also* Compl. ¶¶ 214-15 (asserting Aequitas's violation of these statutes).  Although ORS 59.135(2) and ORS 59.115(1)(b) are not identical, Plaintiffs' attempts to plead violations of these statutes suffer from

---

[7] In addition, as to AETC and APCF, Plaintiffs do not make even these overbroad, boilerplate allegations.  Accordingly, at a minimum, non-registration claims related to those entities must be dismissed.  *See* Compl. ¶¶ 136-66.

a common defect: the failure to plead that any false or misleading statements were made "in connection with" a specific sale (ORS 59.135(2))[8], or equivalently, that any specific sale was made "by means of" false or misleading statements (ORS 59.115(1)(b)).[9]

To adequately plead their claims under ORS 59.115(1)(b) and ORS 59.135(2), Plaintiffs must allege facts establishing that each security was sold "by means of" the false or misleading statements alleged in the Complaint. *See* ORS 59.115(1)(b); ORS 59.135(2). The "by means of" requirement is significant under Oregon law because ORS 59.115 requires Plaintiffs to "plead actionable misrepresentations and omissions *connected to* a sale or group of sales of a security." F&R at 48 (emphasis added). To establish the requisite connection, each Plaintiff is required—at minimum—to allege that "the seller made a misleading statement in the offering documents or other promotional materials *for a security*" that he, she, or it purchased. *See* F&R, at 46 (emphasis added).[10]

---

[8] Defendants believe that Plaintiffs have failed adequately to allege the scienter of the specific Aequitas entities involved in the challenged transactions, a necessary element of their claim under ORS 59.135(2). This Court previously ruled that Plaintiffs had adequately pled scienter (F&R at 51-52), and Defendants do not here ask the Court to reconsider its prior ruling. However, Defendants note that, the Complaint's allegations of "knowledge" are all directed at "Aequitas" rather than the issuing entity from which Plaintiffs purchased their securities. *See, e.g.*, Compl. ¶¶ 103-07 (describing a letter from "the General Counsel of Aequitas"); *Id.* ¶ 157 (alleging that "Aequitas knew that those obligations were not likely to be performed.").

[9] ORS 59.115(1)(b) prohibits securities sales "by means of" material false or misleading statements, while ORS 59.135(2) prohibits the making of materially false or misleading statements "in connection with" the sale of securities. As this Court has recognized, the "by means of" and "in connection with" requirements are similar under Oregon law. *See* F&R at 47 ("The connecting language between the misleading communication and sale is similar [under ORS 59.115(1)(b) and ORS 59.135(2)].""). Accordingly, Defendants use "by means of" throughout this brief in reference to both the "by means of" and "in connection with" requirements under these statutes.

[10] Under the F&R, Plaintiffs are not required to allege that they "relied upon" or actually received any false or misleading statements. F&R at 47-48.

Page 15 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

In the F&R, this Court contemplated that Plaintiffs could—in theory—satisfy this requirement by identifying "group[s] of sales the Funds effected through the allegedly misleading PPMs and other communications." *Id.* at 47. This was based on an assumption that the Aequitas Funds actually sold "groups" of securities by means of the same PPM or communications. *See* F&R at 44 (citing *Sanders v. John Nuveen & Co.*, 619 F.2d 1222, 1226-27 (7th Cir. 1980)). Indeed, in *Sanders*, the defendant issuer publicly offered the same security (commercial paper with a nine-month maturity) to many investors, by means of the same misleading prospectus. *See Sanders v. John Nuveen & Co.*, 463 F.2d 1075, 1076 (7th Cir. 1972). Given those facts, the Seventh Circuit found it appropriate to assume that in a public issuance the "dissemination of information to some buyers or sellers can have an impact upon the market price and thus affect transactions by people who never saw the documents." *Sanders*, 619 F.2d at 1226.

However, under *Sanders*, even if Plaintiffs were excused from pleading that they personally received any given misstatement, they were *not* excused from identifying the specific document(s) "by means of which" securities were sold to them. Plaintiffs have not met this requirement; instead they ask this Court to assume that all sales of all securities—no matter when sold, by a specific issuing entity, and pursuant to a specific PPM—were made "by means of" all alleged misstatements contained in all identified PPMs. But that assumption plainly cannot be made here—where each sale was accomplished in a private placement offering, and each investor was sold a different security pursuant to a different PPM. For example (and as discussed above), even though ACF sold "Private Notes," each Note was different: they had different face values, maturities, and risk-based rates of return. *See, e.g.*, Compl. ¶¶ 200(b), 201(c). Moreover, each unique security was sold by means of different information: each Fund

used a different PPM, and each Fund's PPMs changed over time through the issuance of new PPMs and/or PPM Supplements.  In addition, beyond the PPMs, the Funds used other marketing materials (a few of which Plaintiffs identify in the Complaint) (*see, e.g.*, Compl. ¶ 145), and oral representations (*see*, *e.g.*, *id.* ¶ 36) to sell their securities.[11]  These PPMs and other materials are alleged to have been false or misleading for different—and even inconsistent—reasons.  *Supra*, Section II.B.  Accordingly, this Court must evaluate the Complaint on a security-by-security basis to determine whether Plaintiffs have pled the requisite connection between the misstatements alleged and the securities sold to them.  F&R at 48; *see also Sanders*, 619 F.2d at 1227 n.8.

Plaintiffs have failed to meet this burden.  To be sure, Plaintiffs allege that "Aequitas" made a variety of misstatements in various PPMs and other "offering documents" throughout the relevant period.  *See supra*, Section II.B. (summarizing misstatements and omissions alleged).  But Plaintiffs fail to "connect" these alleged misstatements to any particular sale at issue in the Complaint.  *See* F&R at 48.  That is, although Plaintiffs purport to identify the securities sold to them and the dates of those sales, no Plaintiff identifies the actual PPM (or other communication) "by means of" which those sales were effectuated.  *See* Compl. ¶¶ 196-202.  Thus, none of the seven named Plaintiffs has stated a claim.  F&R at 48 ("ORS 59.115(1)(b) requires Plaintiffs to plead actionable misrepresentations and omissions connected to a sale or group of sales of a security.").[12]

---

[11] The *Sanders* court explicitly limited its holding to written statements included in a prospectus. *Sanders*, 619 F.2d at 1227 n.8. As to "oral communication[s] by means of a which a security is sold," the court explained that then-Section 12(2) likely required proof of "a statement made to the individual buyer of the security" because "[s]poken words lack continuing vitality and are unlikely to affect the general market price of a security."  *Id.*

[12] Plaintiffs must adequately plead their own claims before they can purport to represent the class.  *See Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *11 (D.

Plaintiffs Ciuffitelli, RFMC, and the MacDonalds, for example, allege that they purchased securities from AMLF. *See* Compl. ¶¶ 196(c); 198(d); 199(c). But the Complaint alleges only that AMLF "investment documentation" contained false and misleading statements; it does not identify the specific "investment documentation" by means of which the sales to these Plaintiffs were effectuated, or the portions of those documents that contained false or misleading statements. *See* Comp. ¶¶ 181-82. These allegations fail to satisfy this Court's earlier holding that "Plaintiffs must plead facts sufficient to show that allegedly misleading communications preceded Plaintiffs' purchases of the Disputed Securities." F&R at 48 (citing *Loewen v. Galligan,* No. A9005-02822, 1992 WL 12582753, at *8-9 (Or. Cir. Ct. Aug. 19, 1992), *aff'd* 130 Or. App. 222 (1994)). Moreover, vague allegations as to paraphrased material purportedly set forth in "investment documentation" clearly fail Rule 9(b)'s requirement to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Galena*, 117 F. Supp. 3d at 1163. Finally, as Plaintiffs have not identified when this "investment documentation" was provided (Compl. ¶¶ 181-82), they have also failed Rule 9(b)'s requirement that they plead facts showing that the alleged misstatements were false *when made*. *In re Rigel Pharm.*, 697 F.3d at 876.

Similarly, the Juliens allege that they purchased an AIOF Note "[i]n 2012." Compl. ¶ 197. But they too fail to identify the AIOF PPM or other communication "by means of" which

---

Or. Nov. 30, 2015) (collecting Ninth Circuit cases requiring lead plaintiffs to plead all elements of stated claims on their own behalf). In other words, they cannot—as they attempt to do—simply recite false or misleading statements in PPMs by means of which *some* Aequitas securities were sold to *some person or entity*. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.").

Page 18 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

their security was sold to them.  Was it the July 2011 AIOF PPM (*id.* ¶ 147)?  Or the March 2012 AIOF PPM (*id.* ¶148)?  Or the December 2012 AIOF PPM (*id.* ¶ 149)?  Or how about the 2012 Q2 "Aequitas Capital // Quarterly Update Performance Summary" (*id.* ¶168)?  Or all four, and other documents besides?  The Complaint does not say.  Accordingly, this Court cannot even begin to ascertain whether the Juliens themselves can state a claim—or what the basis of any such claim might be.  *See* F&R at 48.  Given their failure to identify the particular offering document(s) "by means of" which their security was sold to them, the Juliens have failed to meet their pleading obligation; Rule 9(b) requires far more.  *In re Galena*, 117 F. Supp. 3d at 1163.

Plaintiff Ramstein claims to have purchased ACF Notes in July 2012, August 2013, March 2014, and September 2015.  Compl. ¶ 201.  However, he too fails to identify which of these sales, if any, were made "by means of" an allegedly misleading PPM.  This pleading defect is fatal because the ACF PPMs changed over time.  Plaintiffs collectively allege that statements in ACF's November 30, 2013 PPM were false and misleading because, *inter alia*, "Aequitas was insolvent and unable to make investments."  *Id.* ¶ 140(a).  By contrast, Plaintiffs allege that ACF's September 9, 2015 PPM was misleading because it mischaracterized the investments that Aequitas actually *did* make.  *Compare* Compl. ¶ 140(a), *with id.* ¶ 144(a).

Finally, the Complaint alleges misstatements in PPMs for securities that no Plaintiff purchased.  Plaintiffs allege that PPMs issued by AEIF (Compl. ¶¶ 163-65) and APCF (*id.* ¶ 166) contained false and misleading statements.  But no Plaintiff claims to have purchased  securities issued by AEIF or APCF.  *See id.* ¶¶ 196-202.  Thus, no Plaintiff can state a claim based on alleged misstatements in those PPMs.  *See State v. Marsh & McLennan Cos.*, 353 Or.1, 12

(2012) (holding that ORS 59.115 requires direct privity between seller and purchaser).[13]  In any event, the Complaint also fails to identify which securities offered by AEIF or APCF were sold "by means of" specific PPMs or other offering documents containing false or misleading statements.

In short, the Complaint is pled as if every sale identified—no matter when that sale occurred, no matter the Aequitas entity by which it was made, no matter the specific PPM pursuant to which it was accomplished, and no matter the specific statements alleged to have been false or misleading—was effectuated "by means of" every misstatement alleged in the Complaint.  That approach is not consonant with Oregon law, and contradicts other facts alleged. Each Plaintiff must identify the specific PPM or other communication on which his, her, or its claim is based, and the specific language alleged to have been false or misleading.  *See* F&R 46-48; *see also Updike*, 2015 WL 7722410, at *11.  Plaintiffs who cannot make this identification simply are not entitled to pursue damage claims against the Defendants.

Unable or unwilling to make this identification, Plaintiffs reassert that the securities at issue were "integrated"—apparently hoping to avoid the pleading requirement described above. *See* Compl. ¶ 32 ("The offerings of the Aequitas securities were a single integrated offering for purposes of the securities registration requirements under state and federal law.").  But as this Court has previously found, the "integrated offering" theory fails as a matter of Oregon law.

---

[13] This privity requirement means that claims based on these alleged misstatements must be dismissed because no Plaintiff has standing to assert them.  *See Marsh*, 353 Or. at 12 ("ORS 59.115 [ ] established a cause of action only for purchasers of stocks damaged by misrepresentations made in direct, face-to-face securities transactions.").  It also underscores the importance of the requirement that Plaintiffs allege a particular PPM and associated set of misstatements/omissions "by means of" which particular securities were sold to them; failing this, the Court cannot even determine whether Plaintiffs have standing to assert their claims. This Court previously determined to "defer any ruling on standing until its ruling on class certification."  F&R at 73.

F&R at 32 ("Plaintiffs' integrated offering theory is unsupported by the Oregon Securities Law, and does not allow consideration of all the 'Aequitas Securities' as a single securities offering."). It also fails as a matter of fact, because—as the Complaint itself acknowledges (*see, e.g.*, Compl. ¶¶ 136, 147)—each security at issue was different, and different sales were effectuated "by means of" different offering documents containing different, and even conflicting, language. *Supra*, Section II.B.[14]

### C.    Plaintiffs' Claims Based On Sales Made Before April 4, 2013 Are Barred By ORS 59.115(6)'s Three-Year Statute Of Limitations

The default statute of limitations applicable to any theory of primary liability arising under ORS 59.115 is three years.  ORS 59.115(6).  Plaintiffs appear to concede that ORS 59.115(6) limits their primary liability claims based on ORS 59.055 (sales of unregistered securities) to sales occurring after April 4, 2013.  *See* Compl. ¶ 213 (alleging only that "[w]ithin three years before this action was commenced, Aequitas sold unregistered securities in violation of ORS 59.055 and 59.115(1)(a)").

Yet Plaintiffs attempt to assert their "false or misleading statements" theories of primary liability based on sales dating back to June 9, 2010.  *See* Compl. ¶¶ 214-15.  Sales occurring between June 9, 2010 through April 3, 2013 fall outside ORS 59.115's three-year statute of limitations, and claims based on such sales are therefore barred.  ORS 59.115(6).  Nor can Plaintiffs avail themselves of ORS 59.115(6)'s "discovery rule," which allows an action under 59.115(1)(b) to be commenced within "two years after the person bringing the action discovered or should have discovered the facts on which the action is based."  ORS 59.115(6).  To trigger

---

[14] Moreover, as this Court has already recognized, the claims against these particular Defendants are "contingent upon transactions they participated in or materially aided through working relationships with ACF and the Funds.  Defendants did not work with 'Aequitas'—Defendants worked with individual Aequitas entities."  F&R at 29 (internal citation omitted).

Page 21 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

this discovery rule Plaintiffs are required to plead facts justifying their delayed discovery. *TRM Corp. v. Paulsell*, No. CV-02-215, 2002 WL 31549112, at *2 (D. Or. June 4, 2002) (finding that where "[t]he face of the Complaint does not reveal why [plaintiff] delayed filing its claims beyond the [] statute of limitations . . . [plaintiff] must allege facts justifying that delay" to avoid dismissal); *see also Mitchell v. Greenough*, 100 F.2d 184, 186 (9th Cir. 1938) (holding that invocation of the discovery rule must be "fortified by a statement of facts which justifies the claim of ignorance, and this requires a statement of the circumstances under which the discovery was made as well as the reasons for prior ignorance."). Indeed, "Oregon law also requires a plaintiff to plead facts showing the date of discovery." F&R at 72 (citing *Frohs v. Greene*, 253 Or. 1, 7 (1969)). Plaintiffs have done neither.

Plaintiffs assert that they "did not know of the untruths or omissions and, in the exercise of reasonable care, could not have known"—but the Complaint pleads no facts supporting this assertion. *See* Compl. ¶ 214. Indeed, the Complaint admits that many of the facts Plaintiffs claim to have been "omitted" were, in fact, disclosed. For example, Plaintiffs cite Aequitas's supposed failure to disclose Corinthian's regulatory difficulties as an actionable misstatement (*e.g.*, *id.* ¶138(j))—but also allege that by June of 2013 there "was widespread criticism of Corinthian's business practices," and that "[b]y late 2013, the writing was on the wall that federal regulators were going to stop Corinthian's ability to obtain federal student loan financing for its students." *Id.* ¶ 95. Given this—and other inconsistencies in Plaintiffs' allegations regarding what each of them knew, and when—Plaintiffs' claim that they "only discovered that Aequitas had potentially committed securities law violations when they received a February 2, 2016 letter that ACF sent to investors," *id.* ¶ 184, rings hollow; more to the point, it fails to

Page 22 – **DEFENDANT'S JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

provide the factual predicate necessary for invocation of the discovery rule.[15]  To the extent any

claim is based on securities sales made before April 4, 2013, that claim must be dismissed as

time-barred.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Complaint with prejudice.

October 23, 2017.

THE FERRANTI FIRM LLC                    LATHAM & WATKINS LLP


By/s/ William P. Ferranti               By: /s/Peter A. Wald
**William P. Ferranti,** OSB No. 160069   **Peter A. Wald**
1819 SW 5th Avenue, Suite 403           **Gavin M. Masuda**
Portland, OR 97201                      LATHAM & WATKINS LLP
Telephone: (503) 877-9220               505 Montgomery Street, Suite 2000
Email:  wpf@ferrantiappeals.com         San Francisco, CA 94111-6538
                                        Telephone: (415) 391-0600
-And –                                  Email: peter.wald@lw.com
                                                gavin.masuda@lw.com

**Linda T. Coberly**
**Catherine W. Joyce**                  -And-
**Joanna Rubin Travalini**
WINSTON & STRAWN LLP                    **Robert C. Weaver, Jr.,** OSB No. 801350
35 West Wacker Drive                    **Gary I. Grenley,** OSB No. 75138
Chicago, IL 60601                       **Paul H. Trinchero**, OSB No. 014397
Telephone:(312) 558-5600                GARVEY SCHUBERT BARER
Email: lcoberly@winston.com             121 SW Morrison Street, 11th Floor
        cjoyce@winston.com              Portland, OR 97204
        jtravalini@winston.com          Telephone: (503) 228-3939
                                        Email: rweaver@gsblaw.com
**Attorneys for Defendant EisnerAmper LLP**      ggrenley@gsblaw.com
                                                ptrinchero@gsblaw.com


                                        **Attorneys for Defendant Deloitte & Touche**
                                        **LLP**

---

[15] Furthermore, this conclusory assertion—which is insufficient to meet Plaintiffs' burden of alleging why they were unable to discover their claims earlier, *see TRM Corp.*, 2002 WL 31549112, at *2—only addresses the alleged timing of "discovery" by purchasers of ACF Notes, and says nothing about the other challenged transaction.

HARRANG LONG GARY RUDNICK P.C.

HART WAGNER, LLP

By: /s/William F. Gary

**William F. Gary,** OSB No. 770325
william.f.gary@harrang.com
Sharon A. Rudnick, OSB No. 830835
sharon.rudnick@harrang.com
360 E. 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:(541) 485-0220

-And –

Michael S. Pullos, *Pro Hac Vice*
mpullos@winston.com
Stephen V. D'Amore, *Pro Hac Vice*
sdamore@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:  (312) 558-6468

**Attorneys for Defendant Duff & Phelps,
LLC**

By: /s/ Matthew J. Klamanson

**Matthew J. Kalmanson,** OSB No. 041280
mjk@hartwagner.com
Lindsay Howk Duncan, OSB No. 120974
lhd@hartwagner.com
1000 SW Broadway, Twentieth Floor
Portland, OR 97205
Telephone: (503) 222-4499
-And –

Bruce M. Bettigole, Pro Hac Vice
brucebettigole@eversheds-sutherland.com
Nicholas Christakos, Pro Hac Vice
nicholaschristakos@eversheds-
sutherland.com
EVERSHEDS SUTHERLAND (US), LLP
700 Sixth Street NW, Suite 700
Washington, D.C. 20001-3980
Telephone:  (202) 383-0100
Facsimile:  (202) 637-3593

**Attorneys for Defendant TD Ameritrade,
Inc.**

MARKOWITZ HERBOLD PC

By: /s/ David B. Markowitz
**David. B Markowitz,** OSB No.742046
DavidMarkowitz@MarkowitzHerbold.com
Jeffrey M. Edelson, OSB No. 880407
JeffEdelson@MarkowitzHerbold.com
Chad M. Colton, OSB No. 065774
ChadColton@MarkowitzHerbold.com
1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204
Telephone: 503-295-3085


-And –

Brad D. Brain, *Pro Hac Vice*
Brad.brian@mto.com
Bruce A. Abbott, *Pro Hac Vice*
Bruce.abbott@mto.com
Kevin L. Brady
Kevin.Brady@mto.com
Trevor N. Templeton
Trevor.templeton@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los  Angeles, CA 90071
Telephone: 213-683-9100

**Attorneys for Defendant Sidley Austin LLP**

LANE POWELL PC


By:/s/ Milo Petranovich
Milo Petranovich, OSB No. 813376
Peter D. Hawkes, OSN No. 071986
SreeVamshi C. Reddy, OSB No. 140560
Telephone: 503.778.2100

**Attorneys for Defendant Integrity Bank &
Trust**

K&L GATES LLP

By: /s/ Philip S. Van Der Wheele
**Philip S. Van Der Wheele,** OSB No. 863650
phil.vanderweele@klgates.com
1 SW Columbia Street
Suite 1900 Portland, OR 97258
Phone: 503-228-3200

**Attorneys for Defendant Tonkon Torp
LLP**