**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jacob S. Gill,** OSB No. 033238
Email: jgill@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Catherine Y.N. Gannon** (admitted *pro hac vice*)
Email: catherineg@hbsslaw.com
**Dawn Cornelius** (admitted *pro hac vice*)
Email: dawn@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

**Attorneys For Plaintiffs**
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and | Case No. 3:16-cv-00580-AC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated,

        Plaintiffs,

    v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; and INTEGRITY
BANK & TRUST,

        Defendants.

## I.    INTRODUCTION

Sidley's second motion to dismiss [ECF No. 272] seeks to dismiss only part of plaintiffs'

claims.  Sidley contends that plaintiffs have not adequately alleged Sidley's participation or

material aid in the sale of any securities other than ACOF Interests.  Sidley also contends that

plaintiffs cannot recover based on securities they did not purchase.  Sidley's motion should be

denied.

Plaintiffs do, in fact, allege Sidley's participation and material aid in the sale of securities

other than ACOF Interests.  Sidley is able to make this argument only by disregarding the

specific allegations of paragraph 192 of the Second Amended Complaint.  Therein, plaintiffs

allege that Sidley prepared a legal opinion dated April 5, 2013, confirming ACF's compliance

with the Investment Company Act of 1940.  Plaintiffs allege that this legal opinion was required

by Aequitas' auditors and that Aequitas would not have been able to sell **any** securities without

**PAGE 1 -  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN
         LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
         COMPLAINT**

Sidley's legal opinion.  *See* SAC ¶192(d).  These allegations are sufficient to allege Sidley's

participation and material aid in all sales of the various securities after April 5, 2013.

The Court previously deferred ruling on defendants' arguments that plaintiffs cannot

recover based on securities they did not purchase for class certification.  No plaintiff seeks

personally to recover based on securities not purchased by that plaintiff.  To the extent no

plaintiff purchased a particular security, plaintiffs assert claims in a representative capacity on

behalf of those purchasers.  Sidley identifies no basis for this Court to reconsider its prior

decision to postpone ruling on this issue, and this motion should be denied.

## II.    LEGAL STANDARDS FOR NON-SELLER LIABILITY

The Oregon Securities Law is to be "liberally construed to afford the greatest possible

protection to the public."  *Adamson v. Lang*, 236 Or. 511, 516 (1964) (en banc).  This Court

previously set forth the standards for non-seller liability at pages 53–59 of its Amended Findings

& Recommendations [Dkt. No. 242] ("F&R").  "A non-seller's liability depends on the

importance of their conduct – whether participation or aid – to the sale."  F&R at 53.  In order for

such liability to arise, the non-seller's conduct "must have a causal relationship with the

transaction," and "must reflect some 'knowledge, judgment' or other specialized skills particular

to the non-seller."  *Id*. (citations omitted).  A "causal relationship" [1] arises where the non-seller

engages in conduct which "contribute[s] to the completion and consummation of the transaction"

or "enable[es] a seller to continue its securities business."  F&R at 54–55 (citations and quotation

marks omitted).  "The causal relationship may exist even if the interaction is a routine part of a

professional's work with sellers of securities.  The interaction must enable an unlawful securities

---

[1] As used by plaintiffs, the phrase "causal relationship" has the meaning set forth herein.

PAGE 2 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN
LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT**

transaction, that it may be attenuated from the transaction is not determinative." *Id*. at 58–59

(citations omitted).

III.    **PLAINTIFFS ALLEGE SIDLEY'S PARTICIPATION AND MATERIAL AID**

    A.    **Sidley Does Not Contest Plaintiffs' Allegations of Sidley's Secondary Liability for ACOF's Sales of Securities**

Sidley does not challenge plaintiffs' claim that Sidley participated and materially aided in

sales of ACOF securities. *See also* F&R at 68 (on prior motion, "Sidley does not contest the

possibility of participation or material aid in a sale through preparing offering documents for

ACOF."). The Court previously found that plaintiffs had not adequately alleged the untrue and

misleading statements as to ACOF. *Id*. Plaintiffs have amended those allegations, and Sidley

does not challenge plaintiffs' amended allegations of untrue and misleading statements as to

ACOF (or any other security). Thus, at a minimum, plaintiffs have stated a claim as to Sidley's

participation and material aid in sales of ACOF securities.

    B.    **A Legal Opinion Authored By Sidley Enabled Aequitas to Continue to Sell Securities After April 5, 2013**

Before filing the Second Amended Complaint, plaintiffs obtained a copy of an April 5,

2013, legal opinion that Sidley provided on behalf of the Aequitas companies audited by

EisnerAmper and, later, Deloitte. Plaintiffs allege that, by providing this legal opinion, Sidley

participated and materially aided in all sales of Aequitas securities after the date of the opinion.

Sidley dismisses plaintiffs' claim based upon the legal opinion as "far too distant from

any securities sale to support a finding of secondary liability." Sidley Motion at 15. The Court

previously noted that the fact that a non-seller's interactions with the seller "may be attenuated

from the transaction is not determinative." F&R at 59. Here, plaintiffs' allegations satisfy the

PAGE 3 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

two-part test set forth by the Court for determining liability for participation and material aid. The Sidley legal opinion has both a causal connection to subsequent sales of securities and reflects Sidley's knowledge, judgment, and specialized skills.

Plaintiffs allege Aequitas could not continue to sell securities without annual audits or without distributing annual audited financial statements to investors, and that the auditors required the Sidley legal opinion in order to issue clean audit opinions.  SAC ¶¶189, 190, 192. Aequitas needed the stamp of legitimacy provided by a clean audit opinion from an established and reputable firm in order to attract, secure, and retain investors and their funds.  SAC ¶¶189(b), 190(b).  Aequitas needed annual audits in order to comply with the Investment Advisers Act of 1940, which allowed Aequitas to sell securities free of outside scrutiny.  SAC ¶¶189(b), (f).  The auditors' working papers acknowledge that SEC rules required the distribution of audited financials and that the audited financials would be used by potential and current investors.  SAC ¶¶189(c), 190(e).  Each year, each Aequitas fund delivered to its investors, who were deciding whether to invest or re-invest, the previous year's audited financial statements.  SAC ¶189(d).

Aequitas engaged Sidley to advise its captive SEC-registered investment advisor, Aequitas Investment Management ("AIM"), which existed for the sole purpose of acting as manager of and investment advisor to various Aequitas fundraising vehicles, including the Aequitas funds.  SAC ¶¶27, 192(i).  Sidley advised AIM with respect to its management and provision of investment advisory services to the Aequitas funds, including AIPF, AIOF, AIOF-II, ACOF, AETC, and AEIF.  SAC ¶192(i).  SEC rules under the Investment Advisers Act required AIM to ensure (i) the annual audit of each of these Aequitas funds by an independent PCAOB-inspected accounting firm, and (ii) the annual distribution to investors of the audited

PAGE 4 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

financial statements of each of these Aequitas funds.  SAC ¶¶189(b), (f); *see also* 17 C.F.R. §

275.206(4)–2(b)(4).  Indeed, the promise of audited financial statements featured prominently in

AIM's marketing and disclosure materials related to the Aequitas funds.  For example, AIM's

Form ADV, Part 2A,[2] emphasized, "Each year, each of our Funds delivers to its investors the

previous year's audited financial statements … An independent accounting firm that is registered

with and subject to inspection by the [PCAOB] audits our Funds' annual financial statements."

SAC ¶190(d).

　　　　In addition to complying with the Investment Advisers Act, compliance with the

Investment Company Act of 1940 was a material issue for Aequitas.  SAC ¶192(d).  As a result,

the auditors required Aequitas to obtain legal opinions confirming Aequitas' compliance with the

Investment Company Act.  *Id*.  In response to a request from EisnerAmper, by Memorandum

dated April 5, 2013, Sidley provided a written opinion and analysis confirming ACF's

compliance.  *Id*.  Without the legal opinion, EisnerAmper would not have issued a clean audit

opinion and Aequitas would not have been able to sell securities.  *Id*.  Similarly, in 2014, Sidley

provided legal advice regarding compliance with the Investment Company Act that enabled

Aequitas to obtain a clean audit opinion from Deloitte.  SAC ¶192(e).  These facts both

demonstrate a causal connection to subsequent sales of securities and reflect the employment of

---

[2] The Form ADV, Part 2A, was part of the offering materials made available to prospective
investors in the Aequitas funds.  *See*, *e.g.*, ECF No. 86-4 at 10 ("The Form ADV Part 2A and
Part 2B of the Investment Advisor is available … upon request.") (ACOF PPM).

PAGE 5 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN
　　　　　　LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
　　　　　　COMPLAINT**

Sidley's knowledge, judgment, and specialized skills. *See* F&R at 54–59 (summarizing analogous precedent).[3]

The significance and materiality of Sidley's legal opinion and advice extended beyond ACF to all of the Aequitas funds. The audited financial statements of ACF were done on a consolidated basis and encompassed ACF as well as ACOF, AIPF, AIOF, AIOF-II, AEIF, and AMLF. SAC ¶32. More significant is the fact that the financial status of each of the Aequitas funds was inextricably linked to the financial status of ACF. SAC ¶¶32, 38(d), 43(d), 48(d), 53(d), 58(d), 63(d). Consequently, any event materially impacting the financials of ACF—*e.g.*, the requirement that ACF register as an investment company under the Investment Company Act—would necessarily have materially impacted each of the Aequitas funds. For example, registration under the Investment Company Act would have materially affected ACF's ability to (i) continue financing and providing the sole source of revenue for certain ACOF portfolio companies, (ii) repay its substantial indebtedness to AIPF, AIOF-II, AIOF, and AEIF, and (iii) make good on its guaranty of the obligations of AMLF. SAC ¶32. Such an event would also have impaired the ability of AIM to secure a clean audit of each of the Aequitas funds as required under SEC rules.

### C.    Plaintiffs Allege Other Acts of Participation and Material Aid by Sidley

---

[3] *See also Adams v. Am. W. Secs., Inc.*, 265 Or. 514, 529 (1973) (transaction "would and could not have been completed or consummated without" lawyer's services); *Prince v. Brydon*, 307 Or. 146, 148 (1988) (sale could not have occurred without lawyer's services); *Ainslie v. Spolyar (Ainslie I)*, 144 Or. App. 134, 145 (1996) (interactions enabling a seller to continue its securities business constitutes material aid for any subsequent transactions); *Cox v. Holcomb Family Ltd. P'Ship*, No. 1308-12201, slip op. at 6-9 (Or. Cir. Ct. Dec. 14, 2010) (banks' loans gave seller credibility and created illusion of financial strength).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Plaintiffs allege that Sidley participated and materially aided in the sales of AIOF-II securities in additional ways.  SAC ¶192(f).  Sidley's legal advice enabled Aequitas to rely on an exemption from the Investment Company Act for sales to a maximum 99 investors.  Aequitas employed a structure using Integrity as a "pass through" to many investors in connection with the sales of AIPF securities.  However, Aequitas and Sidley learned that this structure did not, in fact, comply, and Aequitas reported its non-compliance to the SEC in July 2014 and proceeded to liquidate AIPF.  During 2014, Sidley advised Aequitas how to create a structure that would allow Integrity to act as an aggregator of individual investors so that Aequitas could comply with the exemption, by employing Integrity Bank & Trust ("IBAT"), a general partnership, as nominee.  AIOF-II was set up specifically for the purpose of retaining AIPF investor money in order to avoid a liquidity crisis, by having the investments in AIPF transfer over to AIOF-II. These allegations also satisfy the two-part test for non-seller liability.  Aequitas could not have sold the AIOF-II securities, both by selling to new investors and by rolling the AIPF investments into new AIOF-II securities, without Sidley's specialized skills in structuring the transaction.

Sidley also provided legal advice to AMLF that enabled AMLF to sell securities through what Aequitas called the "Note Manufacturing Process."  SAC ¶192(g), (h).  Plaintiffs allege that Sidley advised Aequitas that the notes were not securities and that Aequitas was not required to comply with the securities laws as to these notes.  Based upon Sidley's legal advice, Aequitas did not provide a PPM or other disclosures in connection with the sales of the notes.  Sidley's activities satisfy the two-part test, because Aequitas relied on Sidley's specialized knowledge and advice in structuring the sales and to make the sales without risk disclosures.  These services to AMLF provide an additional basis for Sidley's liability.

**PAGE 7 -  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

In summary, plaintiffs have stated actionable claims against Sidley for all sales of

Aequitas securities after April 5, 2013, including all sales after that date of ACF Notes, AIPF

Interests, ACOF Interests, AIOF-II Notes, AEIF Interests, and AMLF Notes.  *See* SAC ¶¶33-67

(alleging date ranges of sales of each class of securities).

## IV.    Sidley's Standing Arguments Should Be Postponed for Class Certification

Sidley argues that plaintiffs lack standing to pursue, on behalf of other investors, claims

for securities sold by ASFG, CP Lending I, or the Note Manufacturing Program, because

plaintiffs did not purchase securities from those sellers.  This Court previously "defer[red] any

ruling on standing until its ruling on class certification."  F&R at 73.

Furthermore, Sidley is not correct that no plaintiff alleges a purchase of securities in the

Note Manufacturing Program.  Sidley notes that plaintiffs allege "that the AMLF offering was

'part of the Aequitas "Note Manufacturing Program."'"  Sidley Motion at 5 (citing SAC ¶63).

Plaintiffs Ciuffitelli, RFMC, and the MacDonalds allege purchases of AMLF securities.  SAC

¶¶196(c), 198(d),  199(c).

## CONCLUSION

Sidley's second motion to dismiss should be denied.  Plaintiffs have alleged substantial

and plausible claims for Sidley's liability as a participant and material aider.

DATED this 22nd day of November, 2017.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Timothy S. DeJong
    **Keith A. Ketterling**, OSB No. 913368
    **Timothy S. DeJong**, OSB No. 940662
    **Jacob S. Gill**, OSB No. 033238
    **Nadia H. Dahab,** OSB No. 125630


PAGE 8 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN
LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT**

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email:      kketterling@stollberne.com
            tdejong@stollberne.com
            jgill@stollberne.com
            ndahab@stollberne.com

-And-

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Catherine Y.N. Gannon** (admitted *pro hac vice*)
Email: catherineg@hbsslaw.com
**Dawn Cornelius** (admitted *pro hac vice*)
Email: dawn@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

-And-

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bbanks@SamuelsLaw.com
**Darlene D. Pasieczny,** OSB No. 124172
Email: darlenep@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone: (503) 226-2966
Facsimile:  (503) 222-2937

**Attorneys For Plaintiffs**

PAGE 9 -  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SIDLEY AUSTIN
          LLP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
          COMPLAINT**