Keith A. Ketterling, OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jacob S. Gill**, OSB No. 033238
Email: jgill@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Steve W. Berman** (*pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (*pro hac vice*)
Email: karlb@hbsslaw.com
**Dawn D. Cornelius** (*pro hac vice*)
Email: dawn@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys For Plaintiffs*
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the

Case No. 3:16-cv-00580-AC

**PLAINTIFFS' OPPOSITION TO DEFENDANT TD AMERITRADE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

ORAL ARGUMENT REQUESTED

ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,

Defendants.

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................1

II. BACKGROUND ........................................................................................2

A. Ameritrade's Role in the Aequitas Scandal ..........................................2

B. Procedural Background .......................................................................3

III. ARGUMENT ............................................................................................5

A. Ameritrade's Motion to Dismiss for Lack of Personal Jurisdiction Should be Denied ...............................................................................5

1. Ameritrade Waived Any Rule 12(b)(2) Personal Jurisdiction Defense ..........................................................................................5

a. Ameritrade Waived any Personal Jurisdiction Defense Pursuant to Rules 12(g)(2) and Rule 12(h) ..................................6

(1) A personal jurisdiction defense was available at the time Ameritrade filed its first motion to dismiss ...........6

(2) Amendment of plaintiffs' complaint does not revive Ameritrade's waived Rule 12(b)(2) defenses .........13

b. Ameritrade Waived its Rule 12(b)(2) Personal Jurisdiction Defense by Actively Participating in this Litigation for the Past Seventeen Months ...............................................................14

2. Ameritrade Consented to the Jurisdiction of this Court............................15

B. Alternatively, the Court Should Allow Discovery on Jurisdictional Issues ..........17

C. Ameritrade's Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied ..................................................................................................20

IV. CONCLUSION..........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
227 F.3d 1104 (9th Cir. 2000) ....................6

*Bennett v. City of Holyoke*,
362 F.3d 1 (1st Cir. 2004) ....................13

*Black & Co. v. Nova-Tech, Inc.*,
333 F. Supp. 468 (1971) ....................12

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ....................17, 18

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) .................... *passim*

*Broomfield v. Craft Brew All., Inc.*,
2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ....................11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
27 F. Supp. 3d 1002 (N.D. Cal. 2014) ....................6

*City of S. Pasadena v. Mineta*,
284 F.3d 1154 (9th Cir. 2002) ....................14

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
2017 WL 3877858 (D. Or. Sept. 5, 2017) ....................14, 15

*Continental Bank, N.A. v. Meyer*,
10 F.3d 1293 (7th Cir. 1993) ....................15

*Cortina v. Bristol-Myers Squibb Co.*,
2017 WL 2793808 (N.D. Cal. June 27, 2017) ....................12

*Dubose v. Bristol-Myers Squibb Co.*,
2017 WL 2775034 (N.D. Cal. June 27, 2017) ....................12

*Elston v. Toma*,
2004 WL 1048132 (D. Or. Apr. 15, 2004) ....................18

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sept. 22, 2017) ....................11

*Estate of Fox v. Johnson & Johnson*,
2017 WL 4629383 (Mo. Ct. App. Oct. 17, 2017)....................10

*Hawes v. Kabani & Co., Inc.*,
182 F. Supp. 3d 1134 (W.D. Wash. 2016)....................12

*Infogation Corp. v. HTC Corp.*,
2017 WL 2869717 (S.D. Cal. July 5, 2017)....................15

*Infusion Partners v. Otono Networks, Inc.*,
2017 WL 1959225 (D. Or. Apr. 12, 2017)....................18

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
346 F.3d 1190 (9th Cir. 2003)....................5

*Koninklijke Philips N.V. v. ASUSTek Computer Inc.*,
2017 WL 3055517 (D. Del. July 19, 2017)....................15

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003)....................18

*Lindsley v. Am. Honda Motor Co.*,
2017 U.S. Dist. LEXIS 118557 (E.D. Pa. July 28, 2017)....................9

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007)....................18

*Nat'l Feeds, Inc. v. United Pet Foods, Inc.*,
118 F. Supp. 3d 972 (N.D. Ohio 2015)....................15

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1071 (C.D. Cal. 2003)....................15

*Peterson v. Highland Music, Inc.*,
140 F.3d 1313 (9th Cir. 1998)....................14

*R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*,
2017 WL 4409463 (D. Ariz. Oct. 4, 2017)....................10

*Reebok Int'l Ltd. v. TRB Acquisitions LLC*,
2017 WL 3016034 (D. Or. July 14, 2017)....................6, 7

*Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*,
2010 WL 4366370 (D. Or. Oct. 28, 2010)....................14

*Spratley v. FCA US LLC*,
2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)....................10

*Tarver v. Ford Motor Co.*,
2017 WL 3527710 (W.D. Okla. Aug. 16, 2017) ....................9, 11

*Thomas v. Kellogg Co.*,
2017 WL 5256634 (W.D. Wash. Oct. 17, 2017) ....................9, 11

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir. 1977) ....................18

*Wright v. Interbank Capital, Inc.*,
1999 WL 354516 (N.D. Cal. May 19, 1999) ....................13

**OTHER AUTHORITIES**

17 C.F.R. § 249.501 ....................16

Fed. R. Civ. P. 12 .................... *passim*

NASD Conduct Rule 3040(c) ....................2

Or. Admin. R. 441-175-0080(1)(a) ....................15

Or. Admin. R. 441-175-0010(9) ....................15, 17

## I. INTRODUCTION

Defendant TD Ameritrade, Inc. ("Ameritrade") has willingly and actively participated in this litigation since filing its appearance on June 2, 2016, including seeking affirmative relief from the Court in the forms of a motion for a protective order to prevent any discovery against it; a motion to dismiss pursuant to Rule 12(b)(6); and motions for reconsideration or objections to the rulings on both motions. Now, apparently unhappy with this Court's rulings on its motions, Ameritrade seeks to avoid them by belatedly claiming that this Court never had personal jurisdiction over it.

The Federal Rules of Civil Procedure preclude Ameritrade's motion. Rule 12(g)(2) required Ameritrade to assert any "available" personal jurisdiction defense in its *first* motion to dismiss. Ameritrade's failure to do so resulted in the waiver, pursuant to Rule 12(h)(1)(a), of any personal jurisdiction defense it might have had. Ameritrade attempts to excuse its delay by incorrectly claiming that the defense was "not available" at the time it filed its initial motion to dismiss, and only became available following the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*"). But *Bristol-Myers* did not change the applicable legal standard, and by its own terms was decided based upon "settled principles regarding specific jurisdiction." *Id*. at 1871. Because Ameritrade eschewed the personal jurisdiction defense to instead attempt to obtain a merits-based dismissal from this Court, it has waived any defense it may have had under Rule 12(b)(2). *See, infra,* Section III(A)(1).

Not only did Ameritrade waive its jurisdictional arguments pursuant to Rules 12(g)(2) and 12(h), its conduct of substantial participation in this litigation over the past seventeen months



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

also acts as a waiver of its jurisdictional defense under Rule 12(b)(2). *See, infra,* Section III(A)(2).

Alternatively, plaintiffs request an opportunity for discovery regarding jurisdictional issues prior to the resolution of this motion. Although plaintiffs identify certain contacts between Ameritrade and Oregon, the majority of relevant evidence is in the possession of Ameritrade. In such circumstances, the Ninth Circuit provides that "discovery should ordinarily be granted." *See, infra,* Section III(B).

## II. BACKGROUND

### A. Ameritrade's Role in the Aequitas Scandal

Ameritrade, a New York corporation registered to do business in Oregon (SAC ¶ 20), is a broker-dealer registered and licensed with the SEC and in Oregon. Beginning in 2010, Ameritrade recommended and referred investors to financial advisors for the purpose of purchasing Aequitas securities. SAC ¶ 193. Ameritrade received payments as a result of their customers' decisions to purchase and hold Aequitas securities.[1] SAC ¶ 193(a). Accordingly, it is unsurprising that Ameritrade representatives attended the meetings—frequently conducted at Ameritrade offices—at which Ameritrade customers were pitched Aequitas securities. SAC ¶ 193(a). Nor is it surprising that Ameritrade directly participated and aided Aequitas's efforts to market the Aequitas securities to Ameritrade customers and to encourage Ameritrade customers to "roll over" their Aequitas investments rather than redeem on maturity. SAC ¶¶ 193(b), (e).

[1] FINRA rules required Ameritrade to make an institutional decision to approve these referrals and to conduct the same due diligence, supervision, and record-keeping as if the Aequitas securities were being sold directly through Ameritrade. *See* NASD Conduct Rule 3040(c) (superseded as of September 20, 2015, by FINRA Rule 3280, which imposes the same requirement).



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

Ameritrade's participation and aid was critical to Aequitas' success in selling securities. SAC ¶ 193(d).[2] Indeed, Ameritrade customers purchased and held in their Ameritrade accounts approximately $140 million in Aequitas securities between 2010 and 2015. SAC ¶ 193(d). What is surprising, however, is that Ameritrade, despite its integral involvement, did not share its growing concerns about Aequitas with its customers, thereby forestalling Aequitas' demise and enabling Aequitas to continue to sell securities. SAC ¶ 193(e). In fact, Ameritrade did not disclose its concerns even as it declined to custody additional Aequitas securities and subsequently removed Aequitas from its custody platform entirely in October 2015. *Id*.

**B. Procedural Background**

Plaintiffs filed their First Amended Class Action Complaint on May 19, 2016, naming Ameritrade as a defendant. ECF No. 57. Ameritrade filed a Notice of Appearance in this case on June 2, 2016. ECF No. 62. Shortly thereafter, Ameritrade moved for *pro hac vice* admission of its non-Oregon lawyers. ECF Nos. 99-101. On July 22, 2016, Ameritrade filed its Rule 7.1 Disclosure Statement. ECF No. 112. That same day, Ameritrade filed its motion to dismiss the First Amended Complaint. ECF No. 113. Plaintiffs responded on August 22, 2016 (ECF No. 126), and Ameritrade filed its reply on September 21, 2016 (ECF No. 138). Ameritrade appeared and participated in oral arguments on the motions to dismiss on December 21, 2016. ECF No. 189.

---

[2] In conjunction with its recommendation, referral, and marketing of Aequitas securities, Ameritrade also made the decision to allow its customers to hold Aequitas securities in their accounts. SAC ¶ 193. The combination was critical to Aequitas' ability to sell securities because Aequitas investors otherwise would not have been allowed to hold the recommended Aequitas securities—"nonconventional" investments without a market—in their Ameritrade accounts. *Id*. Internal Aequitas documents detail the material impact of Ameritrade's willingness to provide custodial services on Aequitas' securities business. *Id*.



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

On September 30, 2016, plaintiffs served their First Set of Requests for Production on Ameritrade. *See* ECF No. 171-1. On November 2, 2016, the parties submitted a Joint Report of Parties' F.R.C.P. 26(f) Conference. ECF No. 163. After obtaining an extension from plaintiffs, on November 22, 2016, Ameritrade served its objections and responses to these requests. *See* ECF No. 171-1. However, instead of producing any documents, on that same date Ameritrade moved for a protective order seeking to prevent plaintiffs from obtaining any discovery against it. ECF No. 171.

On February 21, 2017, the Court issued its Opinion and Order granting in part, and denying in part, Ameritrade's requested protective order. ECF No. 213. On March 7, 2017, Ameritrade simultaneously: 1) moved for reconsideration of the Court's Order denying in part the protective order (ECF No. 221); and 2) filed objections to the Court's Order (Dkt. No. 223). On April 5, 2017, it filed a reply to its motion for reconsideration. ECF. No. 239.

On April 10, 2017, the Court issued its Amended Findings and Recommendation, denying in part Ameritrade's motion to dismiss. ECF No. 242. On April 24, 2017, Ameritrade filed Objections to the Court's Amended Findings and Recommendation regarding its motion to dismiss. ECF No. 245.

On July 7, 2017, Judge Mosman issued an Opinion and Order adopting this Court's Amended Findings and Recommendation regarding Ameritrade's motion to dismiss. ECF No. 250. On July 27, 2017, the Court denied Ameritrade's motion for reconsideration of the Court's order on Ameritrade's discovery motion. ECF No. 252.

Ameritrade participated with all other parties in a court telephone conference on July 25, 2017, to address e-discovery issues. ECF No. No. 255. The parties filed a Stipulated ESI



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

Protocol on September 19, 2017. ECF No. 261. On October 10, 2017, this Court issued an Order on ESI Discovery Issues, resolving disputes between plaintiffs and Ameritrade. ECF No. 265.

***Nowhere during the course of any of these proceedings did Ameritrade contest or even mention personal jurisdiction***.

On October 23, 2017, Ameritrade filed its second motion to dismiss, for the first time challenging personal jurisdiction, the constitutionality of the Oregon Securities Law, and the choice of Oregon law. ECF No. 275 ("Ameritrade Motion"). On November 6, 2017, Ameritrade filed its Supplemental Authority in Support of Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, belatedly attempting to excuse its previous failures to assert these defenses. ECF No. 286 ("Ameritrade Supp. Auth.").

## III. ARGUMENT

### A. Ameritrade's Motion to Dismiss for Lack of Personal Jurisdiction Should be Denied

#### 1. Ameritrade Waived Any Rule 12(b)(2) Personal Jurisdiction Defense

The defense of lack of personal jurisdiction over the party may be waived. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). A defendant may waive the personal jurisdiction defense by operation of Federal Rule 12(h), or by its conduct, including actively participating in the lawsuit at issue. Here, Ameritrade waived its personal jurisdiction defense pursuant to Federal Rule 12(h) because it failed to contest personal jurisdiction in its first motion to dismiss, and also because it has actively participated in this lawsuit over the past seventeen months.



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

**a. Ameritrade Waived any Personal Jurisdiction Defense Pursuant to Rules 12(g)(2) and Rule 12(h)**

Rule 12(g)(2)'s "consolidation requirement" demanded that Ameritrade raise any Rule 12(b)(2) personal jurisdiction defense that was *then available* to it in its initial response to the complaint. By failing to do so in its motion to dismiss filed on July 22, 2016, Ameritrade permanently waived its unasserted Rule 12(b)(2) personal jurisdiction defense. Fed. R. Civ. P. 12(h)(1); *see Reebok Int'l Ltd. v. TRB Acquisitions LLC*, 2017 WL 3016034, at *2 (D. Or. July 14, 2017) (noting that defenses set forth in Rule 12(b)(2)-(5) are waived if not raised in the party's first defensive move, whether that be a Rule 12 motion or a responsive pleading); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) ("As a general rule, if a party files a responsive pleading or makes a Rule 12 motion but does not raise personal jurisdiction as a defense, the party waives the right to raise personal jurisdiction later."). The Ninth Circuit has construed these provisions strictly, observing that "[a] fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed.R.Civ.P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000).

**(1) A personal jurisdiction defense was available at the time Ameritrade filed its first motion to dismiss**

Rule 12(g)(2) required Ameritrade to assert any Rule 12(b)(2) personal jurisdiction defense that was "then available" in its initial motion to dismiss that was filed on July 22, 2016. But its initial motion to dismiss was made only pursuant to Rule 12(b)(6) for failure to state a claim. When filing the current motion, Ameritrade did not address Rules 12(g)(2) or 12(h)(1). *See* Ameritrade Motion. After plaintiffs pointed out this defect, instead of withdrawing its



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

motion, Ameritrade filed an unauthorized second legal memorandum contending that a personal jurisdiction defense was "not available" to it when it filed its first motion to dismiss because the Supreme Court recently "established a new standard for personal jurisdiction" in *Bristol-Myers*. Ameritrade Supp. Auth. at 2.

However, a defense is considered unavailable for the purposes of creating an exception to the Rule 12(g) consolidation requirement only "if its legal basis did not exist at the time of the answer or pre-answer motion, so that it was 'for all practical purposes ***impossible for the defendants to interpose their ... defense***." *Reebok Int'l Ltd.*, 2017 WL 3016034, at *3 (emphasis added and quoting *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 9, 13 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016)). Ameritrade makes no such showing. Ameritrade does not explain why it would have been ***impossible*** to file a motion to dismiss for lack of personal jurisdiction under the standard in effect on July 22, 2016, or even identify the relevant legal standard or explain how it was different than the current legal standard. Ameritrade Supp. Auth. at 1-3. Perhaps the reason for this oversight is that, by its own terms, *Bristol-Myers* did not alter the existing legal standards for assessing specific jurisdiction, instead finding that "***[o]ur settled principles regarding specific jurisdiction control this case***." *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added).

In its current motion, Ameritrade identified and quoted the legal standard for assessing specific jurisdiction, as set forth in *Bristol-Myers*. Although Ameritrade now contends that *Bristol-Myers* established a "new standard" that "was not available to it when it filed its first motion to dismiss" (Ameritrade Supp. Auth. at 2), its original filing in this motion to dismiss itself establishes that *Bristol-Myers* merely quoted existing precedent in describing the standard:



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

> The Court noted that specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State," and that "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1781 (quoting, in part, *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014).

Ameritrade Motion at 12. Ameritrade provides no explanation of how this standard, admittedly quoted from *Walden*, a 2014 case, could possibly constitute an intervening change in the law three years later. Indeed, Ameritrade's argument regarding personal jurisdiction alternately cites to *Bristol-Myers* and *Walden*, seemingly interchangeably. Ameritrade Motion at 13-14.

Ameritrade concludes its personal jurisdiction argument by citing *Bristol-Myers* for the proposition that this Court lacks specific personal jurisdiction if the plaintiffs are not Oregon residents and have not been harmed in Oregon:

> any plaintiffs [who] are not [Oregon] residents and [who] do not claim to have suffered harm in th[is] State. *Bristol-Myers*, 137 S. Ct. at 1782.

Ameritrade Motion at 14-15.

But when viewed in the context of the portion of the *Bristol-Myers* opinion from which this snippet was taken, it is simply a reiteration and application of established legal principles previously set forth by the Supreme Court in *Walden* and *World-Wide Volkswagen* rather than "an intervening change in the law" by *Bristol-Myers*, a point that the *Bristol-Myers* Court made clear:

> Our decision in [*Walden v. Fiore*, 134 S. Ct. 1115 (2014)], illustrates this requirement. In that case, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. We held that the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada." *Id*., at ——, 134 S. Ct., at 1124. Because the "relevant conduct occurred entirely in Georgi[a] ... the mere fact that [this] conduct affected plaintiffs with connections to the forum State d



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

> [id] not suffice to authorize jurisdiction." *Id*., at ——, 134 S. Ct., at 1126 (emphasis added)
>
> In today's case, the connection between the nonresidents' claims and the forum is even weaker. The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, as in *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction. *See* [*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)].

*Bristol-Myers*, 137 S. Ct. at 1781-82.

*Bristol-Myers* did not create a new legal standard that breathed life into a previously ***impossible*** motion to dismiss, but merely reiterated and applied existing precedent extending *at least* as far back as the Supreme Court's decisions in *Walden* and *World-Wide Volkswagen*. For this reason, the *Bristol-Myers* opinion itself declared that "***[o]ur settled principles regarding specific jurisdiction control this case***." *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added).

Accordingly, it is unsurprising that recent authorities have rejected similar arguments by other defendants seeking to revive waived jurisdictional arguments. For example, in *Thomas v. Kellogg Co.*, 2017 WL 5256634, at *3-4 (W.D. Wash. Oct. 17, 2017), the Court held that because "*Bristol Myers* repeatedly claims it involves only the 'straightforward application' of 'settled principles' of specific personal jurisdiction," it was not the '"game changing' 'transformative' opinion [defendant] claims it is" and thus could not support defendants' requested exception to the Rule 12(h)(1) waiver. Similarly, *Tarver v. Ford Motor Co.*, 2017 WL 3527710, at *3 (W.D. Okla. Aug. 16, 2017) and *Lindsley v. Am. Honda Motor Co*., 2017 U.S. Dist. LEXIS 118557, at *4-5 (E.D. Pa. July 28, 2017), each rejected the defendants' contention that *Bristol-Myers* constituted an "intervening change in controlling law," finding that the Supreme Court made its decision through a "straightforward application" of "settled principles of



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

personal jurisdiction." *See also R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp*., 2017 WL 4409463, at *2 (D. Ariz. Oct. 4, 2017) (In reaching the *Bristol-Myers* decision, "the Supreme Court simply conducted a "straightforward application in this case of settled principles of personal jurisdiction [.]"). The authorities identified in Ameritrade's Supplemental Authority do not support Ameritrade's position, as neither *Spratley v. FCA US LLC*, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017), nor the majority opinion in *Estate of Fox v. Johnson & Johnson*, 2017 WL 4629383, at *3 (Mo. Ct. App. Oct. 17, 2017), address whether *Bristol-Myers* significantly changed the existing law. However, the concurrence in *Estate of Fox* directly contradicted Ameritrade's position, observing that the holding of *Bristol-Myers* did not change the legal standard for assessing personal jurisdiction:

> The impact of *Bristol-Myers Squibb* on the issue of personal jurisdiction for the trial court was not the result of a new rule of law, but a reaffirmation of the traditional rules of personal jurisdiction discussed long ago by the Supreme Court in *International Shoe*, and more recently reaffirmed in *Daimler*.

*Estate of Fox*, 2017 WL 4629383, at *4 (Odenwald, J., concurring) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)).

Further, it is entirely uncertain whether *Bristol-Myers* has any applicability in this class action filed in federal court, because the Supreme Court expressly limited its holding to the exercise of specific jurisdiction by a state court, leaving open the questions of whether the same standard would apply to either actions filed in federal court or class action lawsuits. *Bristol-Myers*, 137 S. Ct. at 1783-84 ("we leave open the question" whether this standard applies to cases in federal court) and 1789, n.4 (Sotomayor, dissenting) (opinion does not apply to class



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

actions). *See also Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1 ("not at all clear that *Bristol Myers* even applies to this case, filed in federal district court"); *Tarver v. Ford Motor Co.*, 2017 WL 3527710, at * 3 n.3 (the *Bristol-Myers* decision "le[ft] open the question of whether the Fifth Amendment imposes the same restrictions on ... a federal court"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sept. 22, 2017) (the defendant "has not presented the Court with persuasive argument—much less binding law—compelling the extension of *Bristol-Myers* to class actions"); *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *15 (N.D. Cal. Sept. 1, 2017) (applicability of *Bristol-Myers* to class actions "was expressly left open by the Supreme Court and has yet to be considered by lower federal courts").

Further, *Bristol-Myers* is readily distinguishable on its facts. *Bristol-Myers* concerned defective drug claims where the defendant had no ties to the forum, and its forum-related activities had no relationship to the plaintiffs' product defect claims. *Bristol-Myers*, 137 S. Ct. at 1778. Specifically, the Supreme Court found that the nonresident defendant did not develop or manufacture the product, did not create a marketing strategy for, and did not label or package or work on regulatory approval for the product in California. *Id*. at 1775. Further, the nonresident plaintiffs did not allege that they received the product from a source in California. *Id*. The Supreme Court held that jurisdiction in California was improper as to plaintiffs that: a) were not prescribed the drug in California; b) did not purchase the drug in California; c) did not ingest the drug in California; and d) were not injured in California had no connection to California, and thus the California state courts had no affiliation with the underlying controversy. *Id*. at 1775.



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

Conversely, Aequitas *did* develop and create the securities at issue in this case in Oregon. All nonresident plaintiffs obtained their securities from Aequitas in Oregon, and the various Aequitas entities issuing the securities were all based in Oregon. Unlike *Bristol-Myers*, this created a connection between the nonresident plaintiffs and the claims. *See, e.g., Dubose v. Bristol-Myers Squibb Co*., 2017 WL 2775034, at *4 (N.D. Cal. June 27, 2017) (clinical trials for drug in California was sufficient linkage between the state and defective drug claims by nonresidents); *Cortina v. Bristol-Myers Squibb Co*., 2017 WL 2793808, at *4 (N.D. Cal. June 27, 2017) (development and marketing of the defective product took place in California, providing sufficient "adequate link between the State and the nonresidents' claims"); *Hawes v. Kabani & Co., Inc*., 182 F. Supp. 3d 1134, 1141 (W.D. Wash. 2016) (all of the plaintiffs' injuries as investors were "intrinsically related" to the company's failure, and thus to the jurisdiction in which the company was headquartered); *Black & Co. v. Nova-Tech, Inc*., 333 F. Supp. 468, 472 (1971) ("[f]or jurisdictional purposes, a defective security should be no different from a defective product."). Despite its assertions to the contrary, personal jurisdiction over Ameritrade is based not upon its relationship with plaintiffs, or on its relationship with Aequitas (Aequitas Motion at 12-14), but on its *own* contacts with Oregon.

Ameritrade does not identify a different legal standard existing on July 22, 2016 that would have made its current motion to dismiss for lack of personal jurisdiction ***impossible*** because the standard it relies upon in its current motion is the same legal standard set forth in *Walden* and a long line of Supreme Court authority extending back to *International Shoe* in 1945. The *Bristol-Myers* opinion itself noted that it did not change the legal standard for personal jurisdiction, but merely relied upon ***"settled principles regarding specific jurisdiction"***



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

to prevent the California state courts from employing a novel standard that was contrary to existing and established precedent. The impact of *Bristol-Myers*, if any, was certainly not so dramatic as to render it "impossible" for Ameritrade to have asserted this defense previously. Ameritrade could have easily filed its motion to dismiss for lack of personal jurisdiction with its initial motion to dismiss, but simply chose not to, perhaps hoping for a favorable result on its Rule 12(b)(6) motion. Accordingly, *Bristol-Myers* cannot excuse Ameritrade's previous failure to file a motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004) (upholding waiver of defense where party failed to demonstrate it would have been futile to raise if timely asserted where defense was "fairly available"; absence of precedent directly on point does not excuse a party's failure to assert an available defense").

**(2) Amendment of plaintiffs' complaint does not revive Ameritrade's waived Rule 12(b)(2) defenses**

Ameritrade states that "Rule 12(g)(2) does not prohibit a defendant from raising new arguments in response to an amended complaint." Ameritrade Supp. Auth. at 3-6. Although it is unclear whether Ameritrade is arguing that it is allowed to raise new arguments for dismissal under Rule 12(b)(2) or only under Rule 12(b)(6), all of the supporting authorities cited by Ameritrade are inapplicable because they concern successive motions under Rule 12(b)(6) (which are not waived if not asserted in a motion to dismiss). Further, although Ameritrade argues that the SAC contained additional allegations regarding Ameritrade's conduct, it fails to explain how these *additional* allegations could possibly have made a previously "impossible" legal theory now available to it. Defendant cites no authority for reviving a permanently waived Rule 12(b)(2) defense because an amended complaint was filed.



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

**b. Ameritrade Waived its Rule 12(b)(2) Personal Jurisdiction Defense by Actively Participating in this Litigation for the Past Seventeen Months**

Even if it did not waive any personal jurisdiction defense pursuant to Rules 12(g) and 12(h) by failing to assert it in the first motion to dismiss, Ameritrade waived the defense by actively participating in this litigation. "[M]ost jurisdictional objections—such as defects in personal jurisdiction, venue or service of process—are waived unless asserted early in the litigation." *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1156 (9th Cir. 2002). A Rule 12(b)(2) defense "may be waived as a result of the course of conduct pursued by a party during litigation." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 2017 WL 3877858, at *5 (D. Or. Sept. 5, 2017). For example, a defendant may waive such defenses by actively litigating the lawsuit. *Id.* (citing *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997)); *Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, 2010 WL 4366370, at *3 (D. Or. Oct. 28, 2010) (defendant waived personal jurisdiction defense where it "actively participated" in litigation); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) (the Ninth Circuit has cautioned that it "would not hesitate to find that the defendant had waived any right to pursue" a personal jurisdiction defense where the defendant sought a dismissal based on the merits of the case, only seriously seeking to pursue a personal jurisdiction defense on appeal after it was "unhappy with the district court's ultimate decision" on its merits-based dismissal motion).

Here, there is no dispute that Ameritrade has actively participated in this litigation during the past seventeen months, participating in every aspect of this litigation and seeking relief from the Court on a number of occasions. ***While actively litigating this case for the past seventeen***



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

***months and seeking a merits-based dismissal, Ameritrade never sought to raise a personal jurisdiction issue until filing its second motion to dismiss on October 23, 2017.*** Other courts have found similar or lesser conduct to be "active participation" in a lawsuit sufficient to trigger waiver of personal jurisdiction defenses.[3] Because Ameritrade's conduct in this litigation evidences its "active participation," its Rule 12(b)(2) defenses have been waived.

**2. Ameritrade Consented to the Jurisdiction of this Court**

Ameritrade is subject to personal jurisdiction in Oregon regardless of whether it waived the defense. To become registered and licensed as a broker-dealer in Oregon, a national broker-dealer like Ameritrade must submit a completed "Form BD" to the Central Registration Depository ("CRD") maintained by the Financial Industry Regulatory Association ("FINRA").[4]

---

[3] *See, e.g.*, *Wright v. Interbank Capital, Inc.*, 1999 WL 354516, at *2 (N.D. Cal. May 19, 1999) (waiver of personal jurisdiction defense by filing various motions with the court); *Koninklijke Philips N.V. v. ASUSTek Computer Inc.*, 2017 WL 3055517, at *3 (D. Del. July 19, 2017) (participating in a scheduling conference; conducting discovery; entering a protective order; and moving the court to allow their out of state counsel to appear *pro hac vice*); *Infogation Corp. v. HTC Corp.*, 2017 WL 2869717, at *3 (S.D. Cal. July 5, 2017) (serving invalidity contentions, two motions to stay, a motion for judgment on the pleadings and participating in claims construction); *Nat'l Feeds, Inc. v. United Pet Foods, Inc.*, 118 F. Supp. 3d 972, 973 (N.D. Ohio 2015) (active participation in "extensive discovery and considerable motion practice"); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1074 (C.D. Cal. 2003) (participating in oral argument, and announcing an intention to file a motion to dismiss); *Columbia Sportswear*, 2017 WL 3877858, at *5; *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1295 (7th Cir. 1993) (affirming that "defendants' active participation in the litigation for two-and-a-half years constituted a waiver of the personal jurisdiction defense").

[4] Or. Admin. R. 441-175-0080(1)(a) (an applicant for licensing as a FINRA broker-dealer must, among other things, submit a completed Form BD to the FINRA CRD). "Form BD means the application for registration as a broker-dealer under the Securities Exchange Act of 1934, 17 U.S.C. § 78a et seq., as prescribed by 17 C.F.R. § 249.501, and available at http://www.sec.gov/about/forms/formbd.pdf." Or. Admin. R. 441-175-0010(9). The FINRA CRD is the "central licensing and registration system for the U.S. securities industry and its

Form BD is the form "used for application for registration as a broker-dealer under the Securities Exchange Act of 1934, or to amend such application." 17 C.F.R. § 249.501. Among other things, the Form BD requires a broker-dealer to designate all states in which the broker-dealer is registered or registering.

Ameritrade is licensed and registered as a broker-dealer with the State of Oregon.[5] Accordingly, Ameritrade necessarily executed and submitted to FINRA CRD a completed Form BD requesting registration in Oregon. By executing Form BD, and expressly designating Oregon on its Form BD, Ameritrade expressly agreed to jurisdiction in Oregon for any "action or proceeding" against it "arising out of or in connection with the offer or sale of securities … or out of the violation or alleged violation of [Oregon law]." Form BD, Item 1 (*available at* https://www.sec.gov/files/formbd.pdf). Specifically, on the first page—the execution page—Form BD requires broker-dealers to agree to the following:

> For the purposes of complying with the laws of the State(s) designated in Item 2 [*i.e.*, Oregon] … ***in any action or proceeding*** against the *applicant* [*i.e.*, Ameritrade] ***arising out of or in connection with the offer or sale of securities*** or commodities, or out of the violation ***or alleged violation of the laws of those State(s)*** … the ***applicant hereby consents*** that any such action or *proceeding* against the applicant may be commenced in ***any court of competent jurisdiction and proper venue within said State(s)*** … ***with the same effect as if applicant were a resident in said State(s)***.

---

regulators." FINRA, Central Registration Depository (Web CRD), available at http://www.finra.org/industry/crd.

[5] *See* Barth Decl., Ex. A (Excerpted report from FINRA's "BrokerCheck" website identifying Ameritrade as being licensed in Oregon). The Oregon Division of Financial Regulation refers inquiries regarding Oregon licensing of particular broker-dealers to FINRA's "BrokerCheck" website (www.brokercheck.finra.org). *See* State of Oregon, Division of Financial Regulation: Check a License (*available at* http://dfr.oregon.gov/gethelp/Pages/check-license.aspx).



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

Form BD, Item 1 (emphasis added).[6]

By agreeing to this extremely broad forum selection clause, Ameritrade consented to the jurisdiction of this Court—as a resident of Oregon—for "any action or *proceeding* against [TD Ameritrade] arising out of or in connection with the offer or sale of securities … or out of the violation or alleged violation of [Oregon law]." *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("the personal jurisdiction requirement is a waivable right") (citation and quotation marks omitted). Because the current case "arises out of or in connection with the offer or sale of securities," and also because it "arises out of an alleged violation of Oregon law" ***Ameritrade has consented to the jurisdiction of this Court***.

## B. Alternatively, the Court Should Allow Discovery on Jurisdictional Issues

In the event that the Court finds that Ameritrade has not permanently waived its personal jurisdiction defense or consented to jurisdiction, plaintiffs respectfully request that the Court grant to allow plaintiffs the opportunity to determine whether Ameritrade has the requisite minimum contacts with Oregon.

To demonstrate that this Court has specific jurisdiction over Ameritrade, plaintiffs must demonstrate that: 1) Ameritrade "purposefully directed" its activities to the forum or "purposefully availed" itself of the privilege of doing business in the forum; 2) plaintiffs' claim against Ameritrade arises out of or is related Ameritrade's forum-related activities; and 3) the exercise of jurisdiction over Ameritrade would be reasonable. *Brayton Purcell LLP v. Recordon*

[6] Although Ameritrade's Form BD is not publicly available, a copy of the form as obtained by clicking the link in Oregon Administrative Rule 441-175-0010(9) is attached as Exhibit B to the Barth Decl.



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

*& Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Infusion Partners v. Otono Networks, Inc.*, 2017 WL 1959225, at *5 (D. Or. Apr. 12, 2017).

Demonstrating that Ameritrade "purposely availed" itself of the privilege of conducting activities in Oregon or "purposefully directed" its activities to the forum requires evidence that is in the exclusive possession of Ameritrade. Recognizing that such evidence is typically in the exclusive control of defendants (as it is here), the Ninth Circuit has observed that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (holding that district court abused its discretion in refusing to grant discovery on jurisdictional issue).

Here, there are strong indications that Ameritrade had significant contacts with Oregon related to selling Aequitas securities. Plaintiffs have not sought jurisdictional discovery in this case because Ameritrade never contested jurisdiction in the past seventeen months it has been actively litigating this case. Plaintiffs have only started to review Ameritrade's initial production related to merits issues, but have already uncovered evidence obtained from other parties of a meeting in July 2014 between Ameritrade's Director of Institutional Sales and National Sales Manager and top Aequitas executives to discuss marketing strategy for Aequitas securities. This contact alone could be considered sufficient to confer jurisdiction over Ameritrade. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) ("A single forum state contact can support jurisdiction . . . ."); *Elston v. Toma*, 2004 WL 1048132, at *6 (D. Or. Apr. 15, 2004) (evidence that a nonresident defendant attended *a single meeting in Oregon* at which the IPO of an Oregon



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

company was discussed with a plaintiff was sufficient to establish personal jurisdiction over that nonresident with respect to similar claims brought under O.R.S. § 59.115(3)). But this is likely not the extent of Ameritrade's contacts with Oregon. Plaintiffs have also uncovered an Aequitas "Investor Management" report identifying the possibility of future "investor events" with Ameritrade in Portland. Additional facts in Ameritrade's possession would bear directly on the issues regarding whether Ameritrade "purposely availed" itself of, or "purposely directed" its activities into the Oregon forum.

In its motion, Ameritrade avoids discussing the full extent of its contacts with Oregon. Its evidence consists of the Declaration of Pauletta J. Chabal files in support of its motion (the "Chabal Decl."). But the Chabal Decl. does not foreclose the possibility of Ameritrade having significant contacts with Oregon, merely stating that Ameritrade did not provide custody services for plaintiffs Nowak or Warrick. It is entirely silent on the June 2014 meeting with Aequitas executives, investor events in Portland or other possible contacts. Plaintiffs should have the opportunity for discovery to uncover the facts on these points.

Neither does the recent *Bristol-Myers* decision foreclose this Court's personal jurisdiction over Ameritrade. Ameritrade Motion at 12-15. First, *Bristol-Myers* does not control this case because the Supreme Court expressly limited this opinion to the exercise of specific jurisdiction by a state court, leaving open the questions of whether the same standard would apply to either actions filed in federal court or class action lawsuits. *Bristol-Myers*, 137 S. Ct. at 1783-84 ("we leave open the question" whether this standard applies to cases in federal court) and *Bristol-Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, dissenting) (opinion does not apply to class actions). *See* additional authorities construing *Bristol-Myers* as inapplicable to class actions or lawsuits in



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594

federal court in Section III(A)(1)(a)(i), *supra* at 9-10. Further, *Bristol-Myers* is readily distinguishable on its facts, as also detailed in Section III(A)(1)(a)(i), *supra* at 10.

Because plaintiffs have not yet had the opportunity for jurisdiction-related discovery, have demonstrated that discovery could develop important and relevant facts, and neither the facts submitted by Ameritrade nor controlling precedent foreclose the possibility that jurisdiction may be asserted over Ameritrade, plaintiffs respectfully request an opportunity for discovery into these jurisdictional issues prior to the Court's decision on this motion.

### C. Ameritrade's Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied

Because Ameritrade's "choice of laws" and constitutional arguments overlap with arguments made by co-defendant Duff & Phelps, plaintiffs incorporate by this reference their opposition to Duff & Phelps' motion to dismiss.

## IV. CONCLUSION

For the reasons stated above, Ameritrade's motion to dismiss should be DENIED.

DATED this 22nd day of November, 2017.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Steve W. Berman*
**Steve W. Berman** (admitted *pro hac vice*)
**Karl P. Barth** (admitted *pro hac vice*)
**Catherine Y.N. Gannon** (admitted *pro hac vice*)
**Dawn Cornelius** (admitted *pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
karlb@hbsslaw.com
catherineg@hbsslaw.com
dawn@hbsslaw.com

-And-

**Keith A. Ketterling**, OSB No. 913368
kketterling@stollberne.com
**Timothy S. DeJong**, OSB No. 940662
tdejong@stollberne.com
**Jacob S. Gill**, OSB No. 033238
jgill@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
ndahab@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

-And-

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bbanks@SamuelsLaw.com
**Darlene D. Pasieczny,** OSB No. 124172
Email: darlenep@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone: (503) 226-2966
Facsimile: (503) 222-2937

**Attorneys For Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 22, 2017, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the docket, and that paper copies will be sent by U.S. mail, postage prepaid, to anyone indicated as non-registered participants.

*/s/ Steve W. Berman*
Steve W. Berman



HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292 FAX (206) 623-0594