**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Jeffrey M. Edelson, OSB #880407**
JeffEdelson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax: (503) 323-9105

**Brad D. Brian** (*admitted pro hac vice*)
brad.brian@mto.com
**Bruce A. Abbott** (*admitted pro hac vice*)
bruce.abbott@mto.com
**Trevor N. Templeton** (*admitted pro hac vice*)
trevor.templeton@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendant Sidley Austin LLP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CUIFFITELLI REVOCABLE TRUST, *et al.*,<br><br>                Plaintiffs,<br><br>        vs.<br><br>DELOITTE & TOUCHE LLP, *et al.*,<br><br>                Defendants. | Case No. 3:16-cv-00-580-AC<br><br>**DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

**DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................3

    A. Plaintiffs Have Abandoned Their Allegations of Secondary Liability Based on Bank Loan-Related Work and Sidley's Provision of Unspecified Legal Services. ...................................................................................................3

        1. Wells Fargo and Bank of America Credit Facility Allegations .....................4

        2. Unspecified Legal Services............................................................................5

    B. The Court Should Also Dismiss Without Leave to Amend Plaintiffs' Remaining Allegations, Which Fail to Plausibly Allege Sidley's "Participation" or "Material Aid" in Any Identifiable Securities Offering. ..............6

        1. 1940 Act Compliance Work ..........................................................................6

            (a) Failure to Identify Any Securities Sale Materially Aided by Securities 1940 Act Services ............................................................7

            (b) Inability to Plausibly Allege a Causal Relationship ..........................8

        2. The Unspecified AIOF-II Structure .............................................................12

        3. Unspecified Services to AMLF ...................................................................14

III. CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bojorquez v. Wells Fargo Bank, NA*,
  No. 6:12-CV-02077-AA, 2013 WL 6055258 (D. Or. Nov. 7, 2013) ........................................5

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017) .........................................................................................3, 15

*Schneider v. California Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ..............................................................................................13

**STATE CASES**

*Adams v. Am. W. Sec., Inc.*,
  265 Or. 514 (1973) ..................................................................................................................9

*Ainslie v. First Interstate Bank of Oregon, N.A.*,
  148 Or. App. 162 (1997) .......................................................................................................12

*Ainslie v. Spolyar*,
  144 Or. App. 134 (1996) .......................................................................................................10

*Cox v. Holcomb Family Ltd. P'ship*,
  No. 1308-12201, slip op. (Multnomah Cty. Cir. Ct., Dec. 14, 2009) ....................................10

*Prince v. Brydon*,
  307 Or. 146 (1988) .....................................................................................................9, 11, 12

**FEDERAL STATUTES**

15 U.S.C. § 80a-3(a)(1)(C) ............................................................................................................11

**STATE STATUTES**

ORS 59.115(3) ................................................................................................................................9

**FEDERAL RULES**

Rule 12(b)(6) .................................................................................................................................13

## I. INTRODUCTION

Plaintiffs have now filed three complaints in this action, most recently with the benefit of this Court's Order on Defendants' motions to dismiss the First Amended Complaint ("FAC"). (*See* Amended Findings & Recommendation ("F&Rs"), Dkt. No. 242, *report and recommendation adopted*, Dkt. No. 250 (D. Or. July 5, 2017).) In detailing the FAC's deficiencies, the Court's Order gave Plaintiffs a detailed roadmap for pleading a secondary liability claim under the Oregon securities statutes. Despite this Court's guidance, and the addition of more than 100 pages of allegations to the Second Amended Complaint ("SAC"), Plaintiffs still cannot plausibly allege that Sidley materially aided sales by any entity other than ACOF. Because the fundamental defects in Plaintiffs' non-ACOF claims remain, the SAC should be dismissed without leave to amend.[1]

Plaintiffs' Opposition does not try to defend several purported bases of secondary liability against Sidley in the SAC, effectively conceding that they have now abandoned these theories. Specifically, Plaintiffs do not defend their claims that Sidley's representation of an Aequitas operating company that did not sell securities (CarePayment LLC) in connection with credit facilities from Bank of America and Wells Fargo somehow constitutes "participation" or "material aid" in securities offerings by other Aequitas entities. Nor do they connect that credit facility work to any specific securities sales by any Aequitas entity. Plaintiffs also fail to defend their various allegations of unspecified legal services provided by Sidley as a basis for secondary liability or connect that unspecified work to an actual securities transaction.

In defending their non-ACOF claims against Sidley, Plaintiffs point to three sets of allegations that likewise fail to constitute "participation" or "material aid" in securities offerings: (1) Sidley advised ACF on the requirements of the Investment Company Act of 1940 ("1940 Act") and drafted an April 5, 2013 memorandum regarding ACF's compliance at the request of

---

[1] Sidley incorporates and joins all arguments made in the reply brief in support of the Joint Motion. This separate reply addresses the arguments made by Plaintiffs in response to Sidley's separate motion to dismiss, which identifies additional reasons why Plaintiffs' claims are particularly deficient as to Sidley.

**Page 1 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

its auditor, EisnerAmper; (2) Sidley advised AIOF-II on how to structure its sales of securities to Integrity Bank & Trust ("Integrity") in a manner consistent with AIOF-II's claimed exemption from 1940 Act registration; and (3) Sidley served as counsel for AMLF and advised unspecified Aequitas entities in connection with a so-called "Note Manufacturing Program." None of these allegations suffices to state a secondary liability claim against Sidley.

First, with respect to Sidley's 1940 Act compliance work, Plaintiffs fail to identify any specific securities sales that Sidley's April 5, 2013 memorandum enabled, despite this Court's previous ruling requiring such allegations. (*See, e.g.*, F&Rs at *69 ("[A] plausible claim of participation or material aid requires identifying the services provided and how they related to the Aequitas entities' sale of securities.")). Instead, the Opposition argues that Sidley's April 5, 2013 memorandum was somehow used by EisnerAmper and (without specific allegations in the SAC supporting reliance) Deloitte in performing financial statement audits which, in turn, generally facilitated unspecified securities sales. But Plaintiffs do not cite a single Oregon case supporting a finding that a memorandum addressing the 1940 Act, which (at most) was reviewed by auditors performing a year-end audit of a seller's financial statements, constitutes "material aid" in all securities sales by that entity. No such case exists, and for good reason. Under Plaintiffs' theory, any work product provided by a law firm to a client that, in turn, provides that work product to another professional could give rise to secondary liability claims against the law firm. That claim is simply a variant on Plaintiffs' (now discarded) theory that professional services in connection with a credit facility that provides funds to an operating company (which does not sell securities) somehow results in secondary liability for (still) unspecified securities sales. Predicating secondary liability on such a claim is particularly inappropriate where the SAC alleges that another law firm, not Sidley, handled the legal work in connection with the PPMs for those offerings.

Second, as for Sidley's alleged work on the AIOF-II "structure," the SAC fails to identify any specific services Sidley provided to AIOF-II or explain how such services related to a securities transaction. In their Opposition, Plaintiffs *assert* that they *do* allege that Sidley's

**Page 2 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

"structure" work enabled sales by AIOF-II because "Aequitas could not have sold the AIOF-II securities . . . without Sidley's specialized skills in structuring the transaction." (*See* Opp. to Sidley's Mot. to Dismiss the SAC ("Opp."), Dkt. No. 288, at 8.)  But no such allegations actually appear in the SAC.  Moreover, even this (fourth) effort to state a claim is insufficient, as Plaintiffs' theory rests on a but-for standard of causation that finds no support in this Court's Order or Oregon case law.  It also ignores the separately alleged fact that the AIOF-II PPM was handled by Tonkon Torp, not Sidley.

Third, and finally, Plaintiffs' AMLF allegations fare no better.  The SAC's bare allegation that Sidley "represented AMLF" ignores the Court's ruling requiring Plaintiffs to identify the particular legal services Sidley provided and how those services related to an identifiable securities sale.  The Opposition's attempt to connect Sidley's work on the alleged "Note Manufacturing Program" to any AMLF securities sales fails because the SAC does not allege that Sidley advised *AMLF*, as opposed to another Aequitas entity, in connection with the Program.

In sum, Plaintiffs' inability to state a claim of secondary liability unrelated to ACOF justifies dismissal of all claims against Sidley relating to any other Aequitas entity.  As shown by Plaintiffs' continuing inability to address the deficiencies already identified by the Court (as well as their continuing "discovery" of new, equally generalized and unsupportable allegations), granting leave to amend here would be futile.  *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (holding that granting leave to amend was futile after the amended complaint failed to remedy problems identified by the court).

## II.    ARGUMENT

### A.    Plaintiffs Have Abandoned Their Allegations of Secondary Liability Based on Bank Loan-Related Work and Sidley's Provision of Unspecified Legal Services.

Despite ample opportunity to do so, Plaintiffs' Opposition fails to respond to Sidley's argument regarding its alleged work on two alleged credit facilities or its unspecified work for other entities.  This failure to respond amounts to a concession that these allegations are

**Page 3 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

insufficient—a concession that is well taken given this Court's prior rulings and Plaintiffs' many chances to correct these defects in their claims.

1. **Wells Fargo and Bank of America Credit Facility Allegations**

In the SAC, Plaintiffs allege that Sidley materially aided unspecified sales by unspecified Aequitas entities by providing a legal opinion and other services that facilitated an Aequitas operating company's (CarePayment LLC) obtaining of separate credit facilities from Wells Fargo and Bank of America. (SAC ¶ 192(j).) This allegation merely rehashes allegations from the FAC, which this Court previously held were insufficient to support a secondary liability claim. (*Compare* FAC ¶ 30(d), *with* SAC ¶ 192(j).) When these allegations were last before the Court, the Court rejected them, reasoning that "the lack of details regarding the specific . . . timing of this transaction is fatal." (F&Rs at *69.) The Court directed Plaintiffs to "specify [in an amended complaint] when Sidley enabled this transaction, which security or securities the transaction related to, and which sales the transaction enabled." *Id.*

As explained in Sidley's Motion, the SAC does not contain the specifics that the Court's Order requires. While the SAC identifies an additional lender (Bank of America) and an opinion that Sidley prepared for Wells Fargo, the SAC (like the FAC) neither connects Sidley's work on the credit facilities to any particular securities offering, nor explains how Sidley's services had the requisite causal, material connection to an actual securities transaction.[2] (*See* Sidley Mot. to Dismiss the SAC, Dkt. No. 272, at 13–14.) Plaintiffs' Opposition does not even mention the credit facility allegations, much less defend them against Sidley's Motion or suggest additional facts that could salvage their credit facility-related theory of liability. Accordingly, Plaintiffs now effectively concede that Sidley's alleged work on the Wells Fargo and Bank of America loans is insufficient to establish material aid in the sale of securities by any Aequitas entity. *See*

---

[2] The SAC also fails to allege that the Aequitas entity that received the credit facilities offered any securities for sale or used the funds in furtherance of a securities offering. (SAC ¶ 192(j).) Nor could it. The credit facilities were issued not to a fund that sold securities, but to an operating company (CarePayment LLC), whose business involved purchasing patient receivables from partner hospitals.

**Page 4 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*Bojorquez v. Wells Fargo Bank, NA*, No. 6:12-CV-02077-AA, 2013 WL 6055258, at *5 (D. Or. Nov. 7, 2013) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded." (citation and brackets omitted)).

### 2. Unspecified Legal Services

Like the FAC, the SAC makes vague allegations about Sidley's provision of unspecified legal services without specifying an identifiable connection to any securities offering. In particular, Plaintiffs allege that Sidley "provided legal services to AIM in connection with AIM's role as an SEC-registered investment advisor and the manager of numerous investment vehicles. . . ."—an allegation which is unchanged from the previous complaint. (*Compare* FAC ¶ 30(d), *with* SAC ¶ 192(i).) Similarly, Plaintiffs allege that Sidley "was engaged by ASFG LLC" and "represented CP Lending I, LLC, and its affiliates" (SAC ¶ 192(g)), without any further description of the work or connection to a specific securities transaction. Other allegations in the SAC are equally non-descriptive. (*See id.* ¶ 192(a) (alleging Sidley "provided legal services to ACF and other Aequitas entities in connection with the sale of securities"); *id.* ¶ 192(b) (alleging Sidley "provided legal papers necessary for Aequitas to complete the sale of its securities").)

None of these allegations identifies the nature of Sidley's representation or the services that Sidley provided, and Plaintiffs likewise fail to connect those services to any particular sale of securities in either the SAC or their Opposition. This Court has previously rejected similar allegations as insufficient to state a plausible claim. (*See* F&Rs at *69 ("While providing legal services can have a material, causal relationship with the sale of securities, a plausible claim of participation or material aid requires identifying the services provided and how they related to the Aequitas entities' sale of securities.").) As with the credit facility allegations, the Opposition does not attempt to defend these allegations or argue that Plaintiffs have pled a secondary liability claim based on them. Accordingly, these allegations cannot sustain Plaintiffs' claims.

### B. The Court Should Also Dismiss Without Leave to Amend Plaintiffs' Remaining Allegations, Which Fail to Plausibly Allege Sidley's "Participation" or "Material Aid" in Any Identifiable Securities Offering.

Plaintiffs' Opposition now argues that three sets of allegations suffice to state a claim against Sidley for securities sales by entities other than ACOF: (1) Sidley advised ACF on compliance with the 1940 Act and drafted a legal opinion[3] regarding ACF's compliance at the request of its auditor, EisnerAmper; (2) Sidley advised AIOF-II on how to structure its sales of securities to Integrity consistently with AIOF-II's claimed exemption from 1940 Act registration; and (3) Sidley represented AMLF and advised unspecified Aequitas entities in connection with the alleged "Note Manufacturing Program." (*See* Opp. at 3–9.) None of these allegations is sufficient to state a secondary liability claim regarding the sale of securities.

#### 1. 1940 Act Compliance Work

Plaintiffs' first set of allegations concerns services that Sidley allegedly provided to ACF regarding that entity's compliance with the registration requirements of the 1940 Act. Plaintiffs do not allege that Sidley drafted PPMs or had any other involvement in any of ACF's securities offerings. Indeed, the SAC confirms that the ACF offerings were handled by Tonkon Torp, not Sidley. (SAC ¶¶ 136, 137, 138, 140, 144.)

Instead, Plaintiffs allege that Sidley drafted a memorandum dated April 5, 2013, not addressed to EisnerAmper, "confirming ACF's [1940 Act] compliance." (SAC ¶ 192(d).) They further allege that Sidley advised ACF on how to regain compliance with the 1940 Act after a period of noncompliance and that "Deloitte relied on this fact in proceeding with its audit engagement." (SAC ¶ 192(e).) As such, Plaintiffs allege that Sidley's legal advice was received in the course of financial statement audits performed by EisnerAmper (and, Plaintiffs argue but

---

[3] In their Opposition and SAC, Plaintiffs characterize Sidley's April 5, 2013 memorandum as a "legal opinion" (*see* Opp. at 3), misleadingly suggesting it was equivalent to the formal 1940 Act opinion that Sidley allegedly provided to Wells Fargo in connection with the CarePayment LLC credit facility. (*See* SAC ¶ 192(j).) That is incorrect. As the SAC itself makes clear, Sidley provided its analysis of 1940 Act issues through a "Memorandum," not a formal opinion of the firm based on, *inter alia*, a sworn statement from an Aequitas officer attesting to the accuracy of the underlying financial data. (SAC ¶ 192(d).) The April 5, 2013 memorandum cannot constitute "material aid" in a securities offering for the reasons discussed below.

**Page 6 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAIN**

do not allege, Deloitte), whose fiscal year-end audits, in turn, facilitated the sale of securities by unspecified Aequitas entities.[4]  These latest allegations fail for two independent reasons.

> (a)    *Failure to Identify Any Securities Sale Materially Aided by Securities 1940 Act Services*

Simply stated, the SAC does not identify a single specific securities sale that was materially aided by Sidley's April 5, 2013 memorandum and other unspecified 1940 Act services.  The SAC instead alleges that Sidley's memorandum was used in EisnerAmper's year-end audit of ACF's financial statements, which itself facilitated unspecified securities sales by "Aequitas" as a whole—even though (as noted above) Sidley's "memorandum" regarding the 1940 Act was not a formal "legal opinion," and there is no allegation that it was.  (*See* SAC ¶ 192(d) ("Without this legal opinion, EisnerAmper would not have issued a clean audit opinion and *Aequitas* would not have been able to sell securities." (emphasis added)).)  The Opposition doubles down on this lack of specificity, arguing that Sidley's April 5, 2013 memorandum on the 1940 Act enabled "all [post-April 5, 2013] sales of Aequitas securities" for "*all of the Aequitas funds*."  (Opp. at 3, 6 (emphasis added).)

Plaintiffs' continued reference to securities sales by "Aequitas," rather than specific Aequitas entities, runs afoul of this Court's previous rulings.  In its Order, the Court dismissed the FAC's allegations against Sidley for failure to identify "which security or securities the transaction related to, and which sales the transaction enabled."  (F&Rs at *69.)  Relatedly, the Court held that Plaintiffs could not rely on the so-called integrated offering theory to assert claims against Defendants based on references to "Aequitas" as an undifferentiated entity.  The Court reasoned that "Defendants have varying relationships to different Aequitas entities and their securities offerings, and thus lack sufficient notice of the claims against them where

---

[4] While Plaintiffs claim this issue was somehow important to the year-end financial statement audits of Aequitas entities, there is no allegation that Deloitte ever requested any information from Sidley relating to any Aequitas entity's 1940 Act status in connection with its audits.  Nor does the SAC allege that Deloitte ever received or relied on the April 5, 2013 memorandum or any other information provided by Sidley.  The SAC also does not allege that Sidley ever provided a formal opinion or other specific advice regarding 1940 Act compliance to any Aequitas entity or to EisnerAmper or Deloitte.

Plaintiffs use 'Aequitas Securities.'" (F&Rs at *30–31; *see also id.* at *29 (rejecting the FAC's general references to "Aequitas" because "Defendants did not work with 'Aequitas'—Defendants worked with individual Aequitas entities").)

Despite these rulings, the SAC does not identify any specific securities sales enabled by Sidley's April 5, 2013 memorandum or any other alleged advice provided by Sidley. (*See* SAC ¶¶ 192(d), (e).) And despite the Court rejecting their integrated offering theory, Plaintiffs' Opposition shows that they are still attempting to allege Sidley's services enabled "all" Aequitas securities sales, without distinction. (*See* Opp. at 2, 3, 6.) This pleading approach impermissibly groups legally and functionally distinct entities, depriving Sidley of notice and the opportunity to defend Plaintiffs' secondary liability allegations.

      (b)  Inability to Plausibly Allege a Causal Relationship

Plaintiffs' 1940 Act allegations fail for the independent reason that Plaintiffs cannot establish the requisite causal relationship between Sidley's alleged services and any specific sale of securities. Plaintiffs' Opposition does not resolve that defect but instead demonstrates how far Plaintiffs must stretch the Oregon statute and case law to assert their claims against Sidley.

Regarding the April 5, 2013 memorandum that Sidley allegedly prepared for an Aequitas entity at EisnerAmper's request, Plaintiffs posit a tortured chain of inferences necessary to move from Sidley's work to any securities sale. (See Opp. at 5–7; SAC ¶ 192(d).) The alleged causal relationship runs as follows:

- Sidley provided the April 5, 2013 memorandum to an unspecified Aequitas entity—not EisnerAmper—regarding the 1940 Act status of a single Aequitas fund (ACF) (SAC ¶ 192(d));

- EisnerAmper used the April 5, 2013 memorandum in the course of its year-end audit of ACF's financial statements (*id.* ¶¶ 192(d), 189(b));

- After completing its year-end audit, EisnerAmper, in turn, provided a clean audit opinion for ACF (*id.*);

- That year-end audit opinion provided a "stamp of legitimacy" for unspecified Aequitas funds (*id.*);

- The audit opinion also enabled Aequitas to qualify for an exception from certain oversight requirements of the Investment Advisors Act of 1940 (*id.*); and

**Page 8 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAIN**

- Some combination of the legitimacy conferred by the audit opinion and the lack of regulatory oversight enabled unspecified Aequitas funds to continue selling unspecified securities (*id.*).

Plaintiffs trace an equally circuitous path from Sidley's alleged advice to "Aequitas" on how to regain 1940 Act compliance, to the financial statement audits performed by Deloitte, to the securities transactions at issue in this lawsuit. Although the Opposition includes even less detail on Sidley's alleged connection (if any) to Deloitte's audits, the SAC alleges the supposed causal chain as follows:

- Sidley provided legal advice to "Aequitas" on how to regain 1940 Act compliance after a period of noncompliance (SAC ¶ 192(e));

- Deloitte relied on the fact that Sidley was advising "Aequitas" on 1940 Act compliance issues in proceeding with its audit engagement (*id.*);

- After conducting its audit of ACF's financial, Deloitte issued a clean year-end audit opinion (*id.* ¶¶ 190(a), (b));

- Deloitte's opinion secured for unspecified Aequitas entities the "stamp of legitimacy" and freedom to operate free of regulatory oversight (*id.* ¶ 190(b)); and

- Those Aequitas entities used the legitimacy and freedom from oversight to sell unspecified securities to investors (*id.*).

In short, Sidley's April 5, 2013 memorandum and other unspecified 1940 Act compliance work is—even as alleged—several steps removed from any (as yet unspecified) securities transaction and separated from those (as yet unspecified) securities transactions by multiple independent actors, including EisnerAmper and Deloitte. But Oregon courts have held only that *specified* legal services provided directly to an entity offering *identified* securities constitute material aid in the sale of *those* securities. *See, e.g.*, *Prince v. Brydon*, 307 Or. 146, 148 (1988) (attorney may be liable under ORS 59.115(3) where he "drafted the limited partnership agreement and major portions of the offering circular," and "gave an opinion on the tax status of the partnership, which the partnership included in the information that it provided prospective investors" (brackets omitted)); *Adams v. Am. W. Sec., Inc.*, 265 Or. 514, 529 (1973) (attorney may be liable under ORS 59.115(3) where he "prepares, attends to the execution of, and personally delivers and files documents required for the registration of a security").

Plaintiffs have not cited a single Oregon case that supports imposing secondary liability based on legal services this far removed from particular securities sales. Even *Ainslie I* and *Cox*—the two cases that define "material aid" most broadly—are clearly distinguishable. In *Ainslie I*, secondary liability was extended to an attorney who stopped a foreclosure that would have prevented *a specific offering* from going forward and also helped at least one investor finance his securities purchase *in that same offering*. *Ainslie v. Spolyar ("Ainslie I")*, 144 Or. App. 134, 139 (1996). While the legal work necessary to avoid the foreclosure was further removed from the offering process than, for example, filing documents necessary to register the securities, the attorney's actions were nonetheless related to, and intended to facilitate, a *specific, identifiable* securities offering by a particular fund.

Similarly, in *Cox*, an Oregon trial court held that a bank that provided loans to a company that sold securities could be secondarily liable for some (but not all) of the company's securities sales. *Cox v. Holcomb Family Ltd. P'ship*, No. 1308-12201, slip op. at 6–9 (Multnomah Cty. Cir. Ct., Dec. 14, 2009). Significantly, while the court permitted certain investor claims to proceed against the bank, it ordered the investors to file an amended complaint specifying which *particular securities transactions* were materially aided by the bank loans. *See id.* at 8 (granting bank's motion for more definite statement and ordering plaintiffs to provide details regarding "[w]hat underlying sales will be specifically presented to the jury in support of plaintiffs' claims against [the bank]").[5]

Here, by contrast, Plaintiffs do not allege any comparable connection between Sidley's April 5, 2013 memorandum and any securities sale. There are no allegations, for instance, that

---

[5] Further, the loans at issue in *Cox* were not alleged to have been general purpose loans unrelated to the borrower's securities business. They were directly connected to particular securities offerings because they were used to fund redemption payments to investors. *See id.* at 6–7 (noting that the loans "provided a credit line to [the offering entity] that it used to pay investors when investors 'withdrew money' on demand" in connection with the offering). Moreover, the *Cox* investors alleged numerous facts reflecting the bank's deep understanding of the offering company's Ponzi-like behavior—allegations which are nowhere to be found in the SAC. *See id.* at n. 2 (noting that bank officials allegedly referred to the borrower's securities sales as "risky," "worrisome," and "a big (by Eugene standards) Ponzi scheme").

**Page 10 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAIN**

Sidley's work was related to a particular securities offering. Nor do Plaintiffs allege that the April 5, 2013 memorandum or its contents were disclosed to investors or included in any offering documents. Indeed, no such allegations are possible, as none of the ACF PPMs referenced in the SAC even mentions Sidley, much less Sidley's alleged April 5, 2013 memorandum or other unspecified services relating to ACF's claimed exemption from 1940 Act registration. (*See, e.g.*, Declaration of Gavin Masuda, Ex. 3 at 39 (November 30, 2013 ACF PPM) (referencing ACF's claimed exemption from registration under the 1940 Act without mentioning Sidley).) With respect to Deloitte's financial statement audit of ACF, the SAC does not even allege that Deloitte received or relied on Sidley's April 5, 2013 memorandum or other unspecified legal services in performing its fiscal year-end audits.[6] Rather, the totality of Sidley's alleged connection to Deloitte's audit is that Deloitte relied on the fact that Sidley was representing "Aequitas" on compliance matters in proceeding with its audit engagement. (*See* SAC ¶¶ 192(d), (e).) However one slices it, the April 5, 2013 memorandum and other unspecified work by Sidley are alleged (or, in Deloitte's case, merely argued) to have (at most) been used in the performance of year-end financial audits by EisnerAmper and Deloitte—a standard business function that has no direct connection to identifiable securities sales.[7]

---

[6] The breadth of this position also defies common sense. The SAC does not allege, and the Opposition does not explain, how an auditor could rely on an April 5, 2013 memorandum to reach the conclusions necessary to issue an audit opinion on the financial statements for any fiscal year—2013 or otherwise—given the nature of the analysis relevant to 1940 Act issues. Whether a company qualifies for the 1940 Act exemption claimed by ACF as of a particular point of time depends on the specific assets held by the company at that date. *See* 15 U.S.C. § 80a-3(a)(1)(C) (defining "investment company" as an issuer that "is engaged or proposes to engage in the business of investing . . . in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of such issuer's total assets"). A company's eligibility for an exemption from registration at one point, based on the composition of its assets at that date, does not guarantee the exemption will continue to apply when future transactions change its asset composition.

[7] In their Opposition, Plaintiffs point to the Court's ruling that whether conduct is "attenuated from the transaction is not determinative." (Opp. at 3 (quoting F&Rs at *59).) The Court did not rule, however, that the distance between a non-seller's services and a securities transaction is *irrelevant* to the liability analysis—only that attenuation alone does not determine the issue. This is consistent with *Prince* and *Ainslie II*, which require courts to examine all non-seller

Yet another defect in Plaintiffs' Opposition is its reliance on a but-for standard of causation—a position that finds no support in this Court's Order or any other Oregon case. Under this theory, any service affecting the chain of events that culminates in a sale of securities "materially aided" the eventual sale, regardless of how far removed or how important the service was to the eventual securities transaction. That is not the law. Indeed, the foundational Oregon cases confirm that liability requires a substantial connection between the non-seller and the challenged securities offering. In *Prince*, the Oregon Supreme Court explained that material aid "depends on the importance of one's personal contribution *to the transaction*." *Prince*, 307 Or. at 149 (emphasis added). Similarly, in *Ainslie II* the Court of Appeals cited *Prince* and *Ainslie I* for the proposition "that liability as a participant or a provider of material aid depends on the extent and importance of the defendant's involvement." *Ainslie v. First Interstate Bank of Oregon, N.A. ("Ainslie II")*, 148 Or. App. 162, 184 (1997). Thus, a non-seller does not "materially aid" a securities offering merely because his or her professional services contributed in some way to the seller's general business operations. Rather, to give rise to a secondary liability claim, the non-seller must have made an "important" and "personal" contribution to a specific securities transaction. *Prince*, 307 Or. at 149; *Ainslie II*, 148 Or. App. at 184.

In addition, although the Court has recognized that these cases require some "causal relationship" between the non-seller and an identifiable securities sale (F&Rs at *54), the Court's Order never stated that the requirement is merely but-for causation. If it were, secondary liability would extend not only to law firms, like Sidley, who advise a business on matters unrelated to the sale of securities, but also a host of other professionals who provide services to the seller using their knowledge, skills, and experience. That is not Oregon law.

### 2. The Unspecified AIOF-II Structure

As with their 1940 Act allegations, Plaintiffs' allegations concerning AIOF-II also fail to heed the Court's rulings requiring more specificity in an amended complaint. Notably, the SAC

---

conduct, even if attenuated, to determine whether it qualifies as an important contribution to an identified securities sale. Here, the combination of attenuation *and* the lack of a direct, important contribution to a sale should be determinative.

does not allege that Sidley drafted the offering documents necessary for AIOF-II to sell securities. Nor could it. Tonkon is alleged to have drafted the PPM for AIOF-II. (SAC ¶¶ 150, 151, 152.) Instead, the SAC alleges that "Sidley worked with Aequitas to create a structure that would allow Integrity to do what was originally intended—that is, to act as an aggregator of individual investments—via AIOF-II." (SAC ¶ 192(f).)

In response to Sidley's argument that this allegation still misses the mark, Plaintiffs offer a new theory in their Opposition, arguing that they *did* allege Sidley's "structure" work enabled sales by AIOF-II because "Aequitas could not have sold the AIOF-II securities . . . without Sidley's specialized skills in structuring the transaction." (Opp. at 7.) Not so. The SAC never alleges whether—much less how—Sidley's alleged work for AIOF-II enabled any securities sales. (*See* SAC ¶ 192(f).) Plaintiffs cannot, of course, introduce new allegations into a complaint through their Opposition. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the . . . opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)). This "allegation" is also inconsistent with Plaintiffs' actual allegation in the SAC that the AIOF-II offering was handled by Tonkon Torp, not Sidley.[8]

In any event, this new theory is not enough to state a claim against Sidley with respect to the AIOF-II offering. Plaintiffs' argument that Aequitas "could not have" sold securities relies on a but-for causation standard, which, as discussed above, is not supported by Oregon case law or this Court's Order.

---

[8] Sidley had no involvement in the AIOF-II offering. Sidley did assist a *different fund*, AIPF, in self-reporting a regulatory violation to the SEC in July 2014, four months before AIOF-II began selling securities. (*See* SAC ¶ 53 (alleging that the AIOF-II offering began in November 2014); *id.* ¶ 192(f) (alleging that Aequitas informed the SEC of a compliance issue involving AIPF in July 2014).) Indeed, AIPF made that self-disclosure *on the advice of Sidley*. Plaintiffs have not explained how counseling an entity on how to *comply* with securities statutes by disclosing a regulatory violation to the SEC can possibly constitute "participation" or "material aid" in securities sales by *other Aequitas entities* handled by a different law firm.

**Page 13 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAIN**

3. **Unspecified Services to AMLF**

The allegations concerning services that Sidley provided to AMLF fare no better. While the SAC alleges that Sidley "represented" AMLF, it neither identifies any legal services that Sidley provided to AMLF, nor connects those services to any securities sales involving AMLF. (SAC ¶ 192(g).)  In their Opposition, Plaintiffs argue that their claim relating to AMLF is nonetheless viable because "Sidley provided legal advice to AMLF that enabled AMLF to sell securities" through the "Note Manufacturing Program." (Opp. at 7.)  As before, however, Plaintiffs read allegations into the SAC that are not there.  Although the SAC alleges Sidley advised unspecified "Aequitas" entities under that Program (SAC ¶ 192(h)), it does not allege that Sidley provided any legal advice to *AMLF* regarding that Program, nor does it allege any other connection between Sidley's supposed Program work and any sale of securities by AMLF. When it comes to identifying specific allegations to support this Plaintiffs' theory of secondary liability, the SAC is silent.

**Page 14 - DEFENDANT SIDLEY AUSTIN LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAIN**

### III.  CONCLUSION

The Court should either dismiss all claims against Sidley for failure to show a primary violation or dismiss all claims unrelated to ACOF for failure to show a secondary violation. Sidley's potential secondary liability—if any—should not extend past its work for ACOF.  Given Plaintiffs' inability to state a claim of secondary liability against Sidley after more than tripling the length of their original complaint and following an extensive roadmap provided by the Court, granting leave to amend would be futile.  The Court should thus dismiss the claims without leave to amend.  *See Curry*, 875 F.3d at 1228.

DATED this 20th day of December, 2017.

        MARKOWITZ HERBOLD PC

By:  *s/ Jeffrey M. Edelson*
     David B. Markowitz, OSB #742046
     Jeffrey M. Edelson, OSB #880407
     (503) 295-3085

     Brad D. Brian
     Brad.brian@mto.com
     Bruce A. Abbott
     Bruce.abbott@mto.com
     Trevor N. Templeton
     Trevor.templeton@mto.com
     MUNGER, TOLLES & OLSON LLP
     Admitted Pro Hac Vice

     Of Attorneys for Defendant Sidley Austin LLP