**Robert C. Weaver, Jr.**, OSB #801350
Email: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
Email: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
Email: ptrinchero@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Peter A. Wald (admitted *pro hac vice*)**
Email: peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
Email:  gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

**Attorneys for Defendant Deloitte & Touche LLP**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>                  Plaintiffs,<br><br>    v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST; DUFF & PHELPS, LLC<br><br>                Defendants. | Case No. 3:16-cv-00580-AC<br><br>**DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Oral Argument Requested |

## LR 7-1 AND 26-3 CERTIFICATION

Pursuant to LR 7-1, counsel for Defendant Deloitte & Touche LLP ("Deloitte") certifies that the parties made a good faith effort to resolve the dispute and have been unable to do so, and that the memorandum in support of this Motion complies with the LR 26-3(b)(1) word limit, excluding the caption, signature block, exhibits, and this certification.

## MOTION

Pursuant to Federal Rules of Civil Procedure 26 and 37, and LR 37-1, Deloitte respectfully moves the Court for an Order compelling Plaintiffs to produce all non-privileged documents responsive to Deloitte's Request for Production No. 13 ("RFP 13") in Deloitte's First Set of Requests for Production of Documents[1] ("Requested Documents"), which sought:

> Documents sufficient to show Your financial condition at the time of all of Your Transactions of any Aequitas Security or any other Transaction with any Aequitas Entity, including without limitation Your federal income tax returns from the two years prior to such Transaction, Your investment, bank or other account statements showing Your income, assets, or liabilities, or any other documentation sufficient to show Your income, assets, or liabilities.

## I.    INTRODUCTION

This Motion seeks to compel the production of documents evidencing Plaintiffs' financial condition at the time they purchased the securities upon which they base their claims. These documents are highly relevant to the claims and defenses at issue in this action, as well as Plaintiffs' ability to represent the putative class of purportedly sophisticated, high net worth individuals who purchased securities from the Aequitas entities. Plaintiffs' refusal to produce these documents—indisputably within their possession, custody or control—is improper.

*First*, Plaintiffs' financial condition is relevant to whether each was an "accredited" investor at the time they purchased their securities—as they represented to Aequitas. That status

---

[1] *See* Declaration of Gavin M. Masuda ("Masuda Decl.") Ex. 1.

is directly relevant to Plaintiffs' claim that the Aequitas entities sold unregistered securities in violation of ORS 59.055. Indeed, the *exact documents* Deloitte seeks (*e.g.,* tax returns, account statements) are explicitly referenced in Regulation D, the federal regulation that exempted the Aequitas securities from registration.

Whether Plaintiffs were "accredited" investors also bears on their claims that they were sold securities "by means of" false or misleading statements. If discovery confirms that Plaintiffs were actually accredited, they will be presumed to possess a certain level of financial sophistication—sophistication that must be considered in determining whether Aequitas's alleged misstatements or omissions were misleading, whether Plaintiffs understood the risks of their investments, and whether Deloitte "provided clout" to the sales at issue. But if discovery reveals that Plaintiffs were not actually "accredited"—meaning, they misrepresented their accredited status when purchasing Aequitas securities—their claims are subject to affirmative defenses, including assumption of risk, unclean hands, and Defendants' reasonable lack of knowledge under ORS 59.115(3) of any primary violation of ORS 59.055. These individualized defenses would, in turn, impact the typicality of Plaintiffs' claims and their ability adequately to represent the putative class. The Requested Documents are relevant and discoverable for all of these reasons.

*Second*, Plaintiffs offer no valid justification for their refusal to produce them. Plaintiffs' claim that federal tax returns are subject to a "quasi-privilege" against production does not apply here. Nor do Plaintiffs' confidentiality concerns justify their refusal to produce financial documents. The parties stipulated to a protective order to address this very situation. The Court should reject Plaintiffs' claims of privilege and confidentiality, and order production of the Requested Documents immediately.

## II.    BACKGROUND

### A.    Claims At Issue

This Court is familiar with the claims and defenses in this action, but Deloitte summarizes them as relevant to its Motion.  Plaintiffs' Second Amended Complaint ("Complaint" or "SAC") asserts a single state law claim under ORS 59.115(3), alleging that Deloitte "participated and materially aided" in the illegal sale of securities by Aequitas entities. *See* SAC ¶ 190.  This claim requires Plaintiffs to plead and prove a "primary" violation of ORS 59.115.  First, Plaintiffs allege that "Aequitas sold unregistered securities in violation of ORS 59.055." *Id.* ¶ 213.  As this Court found in previously dismissing this claim, "Plaintiffs must plead facts showing that the Disputed Securities were not federal covered securities."  Findings & Recommendation ("F&R"), Dkt. 242, at 41.  Plaintiffs generally plead that the sales at issue did not qualify for any exemptions under Rule 506 of Regulation D.  *See* SAC ¶¶ 37-57.  Second, Plaintiffs allege that Aequitas sold securities "by means of" false or misleading statements in violation of ORS 59.115(1)(b) and 59.135(2).  *Id.* ¶¶ 214-25.  Regarding Deloitte's "secondary" liability as to these theories of primary liability, Plaintiffs allege that Deloitte provided "clout" to Aequitas's sales of securities, through offering documents that identified Deloitte as Aequitas's auditor, or included financial information audited by Deloitte.  *Id.* ¶¶ 16, 190(c).

Plaintiffs seek to represent a class of persons who purchased different securities over a five-year period, in different private placement transactions, by means of different private placement memoranda that were addressed only to that Plaintiff.  *See*, *e.g.*, *id.* ¶¶ 136-46, 203. Though discovery is ongoing, it appears that in making their purchases, each Plaintiff was required to sign a subscription agreement.  Each subscription agreement contained detailed representations, including that the purchaser was an "accredited investor," could withstand the

loss of her entire investment, and was "solely responsible for [her] own due diligence of the Company."  *See, e.g.,* Masuda Decl. Ex. 4, at -416-18, -427.

These representations were critical in assuring that Aequitas's offerings qualified for certain exemptions under Rule 506 of Regulation D—and therefore, are central to Plaintiffs' nonregistration claims.  By certifying that they were accredited, Plaintiffs represented that their financial condition satisfied certain requirements of Regulation D.  For example, an individual may qualify as an "accredited investor" if her net worth exceeds $1 million, or if she had income in excess of $200,000 in each of the two most recent years.  *See* 17 C.F.R. § 230.501.  Notwithstanding these representations, Plaintiffs allege that the securities did not satisfy exemptions under Rule 506, *see* SAC ¶¶ 37(c)-67(c), thereby putting these representations at issue.

     **B.**      **Deloitte's Request For Production**

On August 10, 2017, Deloitte served its First Request for Production of Documents on Plaintiffs.  On September 11, 2017, Plaintiffs objected to RFP 13 on grounds that it "seeks confidential, personal financial information that is not relevant to the claims or defenses in this action."  Masuda Decl. Ex. 2, at 11.

After conferring with Plaintiffs, and without prejudice to its right to demand full compliance with RFP 13 as propounded, Deloitte offered to limit the universe of Requested Documents to the following categories:

- Federal Income Tax Returns:  "Federal Income Tax Returns from the year beginning with your first purchase any Aequitas investment(s)."

- Annual Bank Account Statements:  "Annual bank account statements from your primary bank for the years during which you made each of your Aequitas investment(s)."

- <u>Annual Brokerage Account Statements</u>:  "Annual brokerage account or investment adviser account statements for the years during which you made each of your Aequitas investment(s)."

- <u>Annual Trust or Retirement Account Statements</u>:  "Annual Trust Account Statements or other Retirement Account Statements for the years during which you made each of your Aequitas investment(s)."

- <u>Records of Ownership Interests</u>:  "Records sufficient to reflect your ownership interest in any private company or partnership at or around the time you made each of your Aequitas investment(s)."

*See* Masuda Decl. Ex. 3, at 6-7.

Notwithstanding Deloitte's efforts, on December 21, 2017, Plaintiffs stated their continued objections on grounds of relevance, and argued that even if relevant, "federal income tax returns are subject to a quasi-privilege against production."  *See* Masuda Decl. Ex. 3, at 5. Instead, Plaintiffs offered to stipulate that they would "not dispute in this action their status as accredited investors."  *Id.*  This Motion, which seeks full compliance with RFP 13, followed.

## III.    ARGUMENT

### A.    Plaintiffs' Financial Documents Are Relevant And Discoverable

The scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Here, the Requested Documents are discoverable because they bear directly on whether Plaintiffs accurately represented their status as "accredited investors" who were qualified to purchase Aequitas securities.  That issue is critical for the following reasons.

#### 1.    Non-Registration Claims

As this Court has found, Plaintiffs' nonregistration claims require them to prove that the securities they purchased failed *federal* exemptions from registration.  *See* F&R at 41.  As other courts have found, documents evidencing a plaintiff's accredited status are relevant to such

claims. *See Burket v. Hyman Lippitt, P.C.*, 2007 WL 2214302, at *3 (E.D. Mich. July 27, 2007).

In *Burket*, the court noted that because plaintiffs had represented in subscription agreements they

were accredited investors, they had placed their incomes directly at issue. *See id.* Moreover,

because plaintiffs asserted their investments did not meet certain federal exemptions to

registration requirements—which are based on the purchasers' incomes—the court held that

plaintiffs had "put their standing as accredited investors at issue" and that financial documents

demonstrating plaintiffs' incomes were discoverable. *Id.*

Here, as in *Burket*, Plaintiffs have put their "standing as accredited investors at issue"

because they seek to prove that the securities they purchased failed federal exemptions from

registration. Specifically, they claim that the securities did not satisfy exemptions under Rule

506 of Regulation D, *see* SAC ¶¶ 37(c)-67(c), therefore placing their financial documents at

issue. *See Burket*, 2007 WL 2214302, at *3 (Regulation D exemptions are "based in part on the

income or net worth of the purchaser"). Indeed, Regulation D expressly contemplates that

documents like "W-2s, tax returns, bank and brokerage statements, credit reports and the like"

are relevant to the determination of whether an investor is accredited.[2] These are precisely the

documents that Deloitte seeks.

### 2.    Claims Based On False Or Misleading Statements

Plaintiffs also claim that Aequitas entities sold securities by means of materially false or

misleading statements. As other courts have recognized, whether an investor is "accredited" is

highly relevant to such claims. *E.g.*, *King v. E.F. Hutton & Co.,* 117 F.R.D. 2, 6 (D.D.C. 1987).

In *King*, for example, the court reasoned that plaintiffs' financial sophistication is "highly

relevant" to "what misrepresentations, if any were made by the [defendants], what did the

---

[2] *See* Rule 506 of Regulation D, *available at* https://www.sec.gov/fast-answers/answers-rule506htm.html.

plaintiff-investors know and when did they know it, and the credibility of the plaintiffs." *Id.*; *see also City of Alameda, Cal. v. Nuveen Mun. High Income Opportunity Fund*, 2010 WL 4955605, at *1 (N.D. Cal. Dec. 1, 2010) (compelling discovery of transaction history as relevant to investor's status as a "sophisticated investor" and whether investor understood risks of purchasing high-risk notes). This is because accredited investors are "deemed to have knowledge of certain investments and their attendant risks, whether in fact they do or not and irrespective of whether material information was actually disclosed." *See* C. Edward Fletcher, III, *Sophisticated Investors Under the Federal Securities Laws*, 1988 Duke L.J. 1081, 1146-47 (1988); *see also In re Med. Capital Sec. Litig.*, 2013 WL 12139370, at *1 (C.D. Cal. Apr. 2, 2013) (noting that Regulation D's accreditation requirement serves to "bar[] inexperienced investors" and may serve as a "prox[y] for investor sophistication").

Whether Plaintiffs were accredited investors is highly relevant to whether Plaintiffs' securities were sold "by means of" misleading statements or omissions, and whether Plaintiffs can sustain their burden to show that they did not know about the misstatements upon which their claims are based. *See* ORS 59.115(1)(b). For example, Plaintiffs repeatedly claim they were misled about the riskiness of their investments. *See* SAC ¶¶ 3-4, 193(a). But if Plaintiffs actually were accredited investors, that status undermines their claims because they are deemed to be sophisticated and to understand certain risks. *See* Fletcher, *supra* at 7. Indeed, each of these Plaintiffs—in addition to representing themselves to be "accredited"—also represented that they fully understood the risks, and were solely responsible for performing due diligence of their investments. *Supra* at 4.

Conversely, if Plaintiffs were *not* actually "accredited"—meaning they misrepresented their status to Aequitas in order to purchase these securities—that fact would subject their

primary liability claims to affirmative defenses under the Oregon Securities Law.[3]  *See, e.g.,*

*Ahern v. Gaussoin*, 611 F. Supp. 1465, 1484 n.9 (D. Or. 1985) (acknowledging *in pari delicto* as

affirmative defense under analogous federal securities law).[4]  Deloitte is entitled to discover

whether Plaintiffs accurately represented their accredited status.

### 3.    Secondary Liability Claims

The Requested Documents are also relevant to Plaintiffs' secondary liability claims,

which require them to prove that Deloitte "participate[d] or materially aid[ed]" in the sales at

issue.  ORS 59.115(3).  As the Court knows, Plaintiffs' chosen theory is that Deloitte provided

"clout" to each sale at issue simply because it was identified in certain documents as the

"auditor" of "Aequitas" or because certain financial information allegedly audited by Deloitte

was provided to investors.  *See* SAC ¶¶ 16, 190(b)-(c).  Even assuming this theory is legally

viable, which Deloitte disputes, it depends on the impact that these acts had on each individual

Plaintiff's decision to purchase its security.  *See* F&R at 60-61.  If Plaintiffs were accredited,

their sophistication is relevant to evaluate how they assessed Aequitas's use of Deloitte's name,

or the financial information they allegedly were given.

And if Plaintiffs were not actually accredited but represented that they were—in order to

purchase their securities—those misrepresentations would subject them to affirmative defenses

---

[3] Deloitte has not yet answered the Complaint and cannot fairly evaluate the defenses available because the Complaint fails adequately to identify the specific documents by means of which any Plaintiff was sold any Aequitas security, and fails adequately to allege Deloitte's connection to any actionable sale.  *See* Joint MTD, Dkt. 278, at 14-21; Deloitte MTD, Dkt. 277, at 10-15.  If and when Plaintiffs are able adequately to plead their claims, Deloitte intends to use the Requested Documents to evaluate its affirmative defenses.

[4] Plaintiffs may argue that equitable defenses are unavailable under ORS 59.115, citing *Hall v. Johnston*, 758 F.2d 421, 423 (9th Cir. 1985).  However, that case specifically discussed defenses in the context of nonregistration claims.  Oregon courts have found that equitable defenses are available to other claims arising under the securities laws, including those alleged here.  *See Go v. Sasquatch Capital LLC*, 2005 WL 5872405 (Or. Cir. Ct. Jan. 10, 2005) (holding that claims under ORS 59.135 are subject to equitable affirmative defenses).

that defeat their claims.  *Supra* at 8; ORS 59.115(3) (stating "due diligence" defense).  Again, Deloitte is entitled to discovery on these issues.

### 4.    Class Certification And Damages

In order to represent the putative class, Plaintiffs must establish (among others) that their claims are typical of the class and they can adequately represent the class.  *See* Fed. R. Civ. P. 23(a).  Addressing "typicality," courts have recognized that a class representative's accredited status, financial sophistication, and knowledge of risks are highly relevant to whether her claims are "typical" of the class she seeks to represent.[5]  *See, e.g., Feldman v. Motorola, Inc.*, 1992 WL 137163, at *2-3 (N.D. Ill. June 10, 1992) (ordering production of account statements as relevant to determining typicality); *Goldman v. Alhadeff*, 1990 WL 86882, at *2 (W.D. Wash. Feb. 1, 1990) (same).  Addressing "adequacy," courts find class representatives inadequate when they lack credibility or are susceptible to unique affirmative defenses.  *See, e.g., Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. 2010) (credibility of class representative is relevant to adequacy inquiry).  Here, if Plaintiffs misrepresented their accredited status, they are subject to affirmative defenses and challenges to their credibility.  The Requested Documents are relevant to Plaintiffs' adequacy as class representatives, and therefore, the susceptibility of any class-wide determinations to collateral attack.

Finally, financial documents supporting Plaintiffs' accredited status are necessary to verify Plaintiffs' claimed damages under ORS 59.115(2).  *See Da Realty Holdings, LLC v. Tennessee Land Consultants, LLC*, 2015 WL 11017945, at *2 (N.D. Ga. Jan. 5, 2015) (defendants are entitled to computation of damages and any "documentary support"); *Singh v.*

---

[5] While Plaintiffs may argue such relevance is limited to the issue of reliance under the federal securities laws, *see* Masuda Decl. Ex. 3, at 5, courts have expressly recognized that even where reliance is not an issue, plaintiffs' financial documents "could reveal unusual typicality defenses."  *Feldman*, 1992 WL 137163, at *2.

*Hancock Nat. Res. Grp., Inc.*, 2017 WL 710571, at *4 (E.D. Cal. Feb. 22, 2017) (sanctioning party for failure to produce "financial documents supporting their damages calculation").

### B.      Plaintiffs Offer No Persuasive Grounds For Their Refusal To Produce

Plaintiffs do not claim any undue burden in producing the Requested Documents. Instead, they argue that the Requested Documents are "confidential" and, as to their federal tax returns, such documents are subject to a quasi-privilege against production. *See* Masuda Decl. Ex. 3, at 5.  Neither position has merit.

First, Plaintiffs' confidentiality objection is meritless given the Protective Order entered in this case. *See* Dkt. 151.  Courts have long held that confidentiality concerns are not a proper basis to withhold documents when a protective order is in place. *See In re Heritage Bond Litig.*, 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004).

Second, there is no privilege against production of federal tax returns. *See Stokwitz v. United States*, 831 F.2d 893, 896 (9th Cir. 1987) (holding that tax returns are not subject to any greater degree of protection).  The lone case upon which Plaintiffs rely—*Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975)—does not help their position.  In that case—involving a third-party subpoena for tax returns—the Ninth Circuit discussed a general policy against unnecessary disclosure of tax returns. *Id.*  That policy does not prevail here, where Plaintiffs claim millions in damages from Deloitte.

Finally, Plaintiffs' offer to stipulate that they will not dispute their accredited status does not relieve them of their obligation to produce the Requested Documents. *See* Masuda Decl. Ex. 3, at 1.  For all the reasons stated above, Deloitte has a right to test the veracity of Plaintiffs' representations about their financial condition.  Plaintiffs' "promise" not to dispute this issue at trial misses the point entirely—*Deloitte* may wish to dispute their status as accredited investors

or argue inferences based on their claimed status—and falls woefully short of meeting their

discovery obligations.

## IV.    CONCLUSION

For these reasons, Deloitte respectfully requests that the Court grant its Motion and order

Plaintiffs to produce the Requested Documents.


Dated:  February 6, 2018                        LATHAM & WATKINS, LLP

By:  _s/ Peter A. Wald_____
      **Peter A. Wald (admitted *pro hac vice*)**
      **Gavin M. Masuda (admitted *pro hac vice*)**
      505 Montgomery Street, Suite 2000
      San Francisco, CA 94111-6538
      Telephone:        (415) 391-0600
      Email:             peter.wald@lw.com
                            gavin.masuda@lw.com

      – And –

      **Robert C. Weaver, Jr.**, OSB No. 801350
      **Gary I. Grenley**, OSB No. 751380
      **Paul H. Trinchero**, OSB No. 014397
      Garvey Schubert Barer
      121 SW Morrison Street, 11th Floor
      Portland, OR 97204
      Telephone:        (503) 228-3939
      Facsimile:         (503) 226-0259
      Email:             rweaver@gsblaw.com
                            ggrenley@gsblaw.com
                            ptrinchero@gsblaw.com

      **Attorneys for Defendant Deloitte & Touche LLP**