IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAWRENCE P. CIUFFITELLI, for himself
and as Trustee of CIUFFITELLI
REVOCABLE TRUST; GREG and
ANGELA JULIEN; JAMES and SUSAN
MACDONALD, as Co-Trustees of the
MACDONALD FAMILY TRUST; R.F.
MACDONALD CO.; ANDREW NOWAK,
for himself and as Trustee of the ANDREW
NOWAK REVOCABLE LIVING TRUST
U/A 2/20/2002; WILLIAM RAMSTEIN; and
GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

      v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK
& TRUST; and DUFF & PHELPS, LLC;

                 Defendants;

      v.

N. SCOTT GILLIS; ROBERT J. JESENIK;
and BRIAN A. OLIVER;

               Intervenors.

Case No. 3:16-cv-00580-AC

FINDINGS AND RECOMMENDATION
ON DEFENDANTS'
MOTIONS TO DISMISS

1 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

ACOSTA, Magistrate Judge

Plaintiffs Lawrence P. Ciuffitelli and others (collectively, "Plaintiffs") bring this putative class action against Defendants Deloitte & Touche LLP ("Deloitte"); EisnerAmper LLP ("EisnerAmper"); Sidley Austin LLP ("Sidley"); Tonkon Torp LLP ("Tonkon"); TD Ameritrade, Inc. ("Ameritrade"); Integrity Bank & Trust ("Integrity"); and Duff & Phelps, LLC ("Duff") (collectively "Defendants"). Plaintiffs allege multiple violations of Oregon Securities Law stemming from the sale of securities issued by "Aequitas," a group of related investment and private equity entities.[1]  Plaintiffs seek to hold Defendants liable under Oregon Revised Statutes ("ORS") § 59.115(3), which imposes joint and several liability for persons who participate or materially aid in the sale of securities sold in violation of Oregon Securities Law.

In order to state a claim, Plaintiffs must first establish that the securities were sold in violation of Oregon Securities law; that is, primary liability. Then, Plaintiffs must establish that each Defendant participated or materially aided in the sale. Here, Plaintiffs allege that Aequitas sold them various securities and notes (the "Disputed Securities")[2] without proper registration and made untrue

_____

[1] The Aequitas group of companies, which are not a party to this action, entered receivership in early 2016. A civil enforcement action, *Securities and Exchange Commission et al. v. Aequitas Management, LLC et al.*, Case No. 3:16-cv-0438-PK ("SEC Lawsuit"), is currently pending in the District of Oregon before the Honorable Paul Papak. The individual defendants in the SEC Lawsuit are intervenors in this action. Minutes Proceedings, ECF No. 164 (granting motion to intervene). Additionally, two cases involving claims similar to those alleged in the instant case are currently pending in Multnomah County Circuit Court against some of the same Defendants. *Wurster, et al. v. Deloitte & Touche, LLP, et al.*, Case No. 16CV25920 ("Wurster Lawsuit"); *Pommier, et al. v. Deloitte & Touche, LLP, et al.*, Case No. 16CV36436 ("Pommier Lawsuit").

[2] The Disputed Securities are described in greater detail in the April 10, 2017 Amended Findings and Recommendation ("April F&R") at 7, ECF No. 242 (also available at *Ciuffitelli for himself an as Trustee of Ciuffitelli Revocable Trust, et al. v. Deloitte & Touche, LLP, et al.*, Case No. 3:16-cv-00580-AC, 2017 WL 2927481, at *3 (D. Or. April 10, 2017), and in the Second

2 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

statements of material fact or material omissions in violation of Oregon Securities Law.  Next, Plaintiffs allege that Defendants are jointly and severally liable for Aequitas's violations because they participated or materially aided in those sales.

Defendants previously filed a Joint Motion to Dismiss the First Amended Complaint ("FAC"), and several Defendants individually moved to dismiss.  *See* ECF Nos. 74, 78, 81, 85, 95, 113.  On April 10, 2017, in an Amended Findings and Recommendation ("April F&R"), the court granted in part and denied in part those earlier motions.  ECF No. 242.  The Honorable Michael W. Mosman adopted the April F&R *in toto*.  ECF No. 250.  Plaintiffs were permitted to replead and on September 8, 2017, filed a Second Amended Complaint ("SAC").  ECF No. 257.

Presently before the court are a Joint Motion to Dismiss the SAC filed by all Defendants (ECF No. 278), and several individual motions to dismiss filed by Duff (ECF No. 269), Sidley (ECF No. 272), Ameritrade (ECF No. 275), and Deloitte (ECF No. 277).  Ameritrade also filed a "Supplemental Authority" in support of its individual motion in which it asserts this court lacks personal jurisdiction (ECF No. 286).  Deloitte requests that the Court take judicial notice of certain documents (ECF No. 280).  Plaintiffs have filed Responses to the various motions (ECF Nos. 287, 288, 289, 290, 291), a Notice of New Facts (ECF No. 309), and a Notice of Supplemental Authority (ECF No. 322).  Defendants have filed Replies (ECF Nos. 296, 297, 299, 300, 301).  Following the completion of briefing, the court conducted oral argument on June 1, 2018.  The issues are now sufficiently developed.  For the reasons stated below, the motions should be granted in part and denied in part.

---

Amended Complaint ("SAC") ¶¶ 28-32, ECF No. 257.

The court does not repeat the factual background set forth in the April F&R, except to note that Plaintiffs have added Duff as a defendant.[3]  ECF Nos. 257, 259.  Duff is a financial services corporation that specializes in valuing commercial assets.  Duff's Mot. Dismiss at 3, ECF No. 269.  Duff valued three portfolio companies of Aequitas Capital Opportunities Fund, LP ("ACOF") in December 2013, July 2014, and February-March 2015.  SAC ¶ 195(c); Duff's Mot. Dismiss at 3.  Plaintiffs allege that Duff's valuations were included in ACOF's February 2014 Private Placement Memorandum ("PPM") and in Aequitas Commercial Finance, LLC's ("ACF") consolidated financial statements.  SAC ¶¶ 195(c), (d).

For ease of analysis, the court discusses each motion separately.

*Discussion*

I.    Standards for Motions to Dismiss

Federal Rule of Civil Procedure ("Rule") 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  Rule 8 is designed to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b); *Davidson v. Kimberly-Clark Corp.*,  889 F.3d 956, 964 (9th Cir. 2018)*; Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  To satisfy Rule 9(b), a pleading must identify "the who, what,

---

[3] For the full factual background, *see* April F&R at 4-14.

when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citations omitted); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid*, 616 F.3d at 998). In a claim based on fraudulent conduct and non-fraudulent conduct, Rule 9(b) applies only to the allegations of fraudulent conduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)); *Davidson*, 889 F.3d at 965. While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss under Rule 12(b)(6), the court may consider only the pleadings themselves, exhibits that are physically attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (*per curium*); *e.g., Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) (court may consider materials incorporated into complaint, matters of public record, or documents whose contents are alleged in the complaint and "whose authenticity no party questions"). On a motion to

dismiss, the court must "'accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party.'" *Northstar*, 779 F.3d at 1042 (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

II.    Deloitte's Request for Judicial Notice (ECF No. 280)

As an initial matter, Defendants request that the court take judicial notice of the documents attached to the Declaration of Gavin M. Masuda  ("Masuda Declaration") in Support of Deloitte's Motion to Dismiss the Second Amended Complaint.  Masuda Decl., ECF No. 279.  Exhibits 1 and 2 to the Masuda Declaration are Generally Accepted Auditing Standards ("GAAS") published by the American Institute of Certified Public Accountants.  The court previously took judicial notice of the GAAS standards in the April F&R.  *See* April F&R at 33-34.  Plaintiff does not oppose this request.  Consistent with the April F&R, the court finds it appropriate to take judicial notice of the existence of the GAAS standards in Exhibits 1 and 2.

Defendants also request that the court incorporate by reference Exhibits 3 through 8 attached to the Masuda Declaration. Exhibits 3 through 8 are Private Placement Memoranda ("PPMs") and a PPM Supplement identified in the SAC.   The court previously incorporated these documents by reference  in the April F&R.  *See* April F&R at 35.  Plaintiff does not oppose this request.  Because Plaintiffs refer to the PPMs extensively in the SAC, and neither party contests the authenticity of the PPMs, Exhibits 3 through 8 are incorporated by reference. *See* FED. R. CIV. P. 10(c); FED. R. EVID. 201; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (finding documents not attached to a complaint but extensively referred to by plaintiff may be incorporated by reference).

Deloitte's Request for Judicial Notice (ECF No. 280) is GRANTED.

III.    Joint Motion (ECF No. 278), Plaintiffs' Response (ECF No. 287), Defendants' Reply (ECF No. 300)

In the Joint Motion, Defendants make three principal arguments: (1) Plaintiffs have failed to plead facts sufficient to establish Aequitas's primary liability for non-registration under Oregon Revised Statutes ("ORS") §§ 59.055 and 59.115(1)(a); (2) Plaintiffs allegations of primary liability under ORS § 59.115(1)(b) fail to adequately identify the specific PPM "by means of" which securities were sold to them; and (3) Plaintiffs have failed to plead facts sufficient to invoke the discovery rule, such that the statute of limitations bars claims for securities sold before April 4, 2013.

A.    *Plaintiffs' Allegations of Primary Liability for Non-registration Satisfy Rule 8*

Defendants argue that Plaintiffs' have failed to plead sufficient facts for their non-registration claims of primary liability. Defendants argue that "under Rule 9(b), Plaintiffs were required to plead particularized facts showing that the statements regarding registration were false when made – in other words, that Aequitas represented a security was exempt from registration, when it fact it was not." Defs.' Joint Mot. Dismiss at 13. Defendants also contend that Plaintiffs have failed to plead facts showing that the securities in question were not "federal covered securities" sold under a Regulation D exemption, specifically Rule 506(b).

Plaintiffs respond that their non-registration claims need be alleged only pursuant to Rule 8. Plaintiffs underscore that in the SAC, they allege primary violations by Aequitas for non-registration under ORS §§ 59.055 and 59.115(1)(a). Plaintiffs contend that ORS § 59.055 is a strict liability statute, and because they no longer solely allege that Aequitas made false or misleading statements regarding non-registration status, they need not comply with the particularity requirements of Rule 9(b). Plaintiffs also assert that they are not required to plead facts establishing

that the securities were exempt from regulation because under ORS § 59.275, Defendants have the burden of proving a Rule 506(b) exemption.  In their Reply, Defendants argue that Plaintiffs continue to assert that Aequitas misled investors about the Disputed Securities' registration status, and therefore they must plead all such allegations under Rule 9(b).

In the SAC, Plaintiffs clearly allege two distinct theories of primary liability.  First, Plaintiffs allege Aequitas failed to register the Disputed Securities as required under ORS §§ 59.055 and 59.115(1)(a).  SAC ¶¶ 33-67.  Second, Plaintiffs allege Aequitas sold securities by making untrue statements of material facts or omissions under ORS §§ 59.115(1)(a) and (b) and 59.135(2).  SAC ¶¶ 68 to 180.  As the court noted in the April F&R, a claim of failing to properly register securities under ORS § 59.055 is one of strict liability under the statute, and therefore requires no allegations of fraud, misleading statements, or intentional wrongdoing.  April F&R at 23.  Thus, the court determined Rule 8 applies to Plaintiffs' non-registration claims of primary liability.  *Id.* Additionally, in the April F&R the court concluded that Plaintiffs' allegations of primary liability under ORS §§ 59.115(1)(b) and 59.135(2) for untrue statements and omissions sound in fraud, and thus must be pleaded in accordance with Rule 9(b).  April F&R at 23-24.

In the Joint Motion, Defendants conflate the court's earlier rulings.  Defendants insist that because Plaintiffs have alleged Aequitas made misleading disclosures about the registration status of some of the Disputed Securities under their second theory of primary liability, *all* of the allegations concerning non-registration under their first theory of primary liability must comport with Rule 9(b).  The court rejected this contention in the April F&R.  Notably, the court specifically indicated that "[c]laims for non-registration which do not allege fraud are not made subject to Rule 9(b) by the presence of separate claims alleging fraud."  April F&R at 24.  The court adheres to its

8 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

previous rationale. Therefore, Plaintiffs' allegations of Aequitas's primary liability for failing to properly register the Disputed Securities under ORS §§ 59.055 and 59.115(1)(a) must comport with Rule 8.[4]

Next, the court must resolve which party bears the burden of pleading and proving that the Disputed Securities were, or were not, "federal covered securities" under ORS § 59.055. Under that statute, it is unlawful to offer or sell any security in the state of Oregon unless:

> (1) The security is registered and the offer or sale is not in violation of any rule . . .
> (2) The security is exempt under ORS 59.025 or the sale is exempt under ORS 59.035; or
> (3) The security is a federal covered security for which a notice has been filed and fees have been paid under ORS 59.049.

ORS § 59.055. Oregon Revised Statute § 59.115(1)(a) establishes civil liability for violations of the registration requirements. *See Houston v. Seward & Kissel, LLP*, Case No. 07-cv-6305(HB), 2008 WL 818745, *9 (S.D.N.Y. Mar. 27, 2008). Thus, to avoid liability under the statute, a security must be registered, be exempt under Oregon law, or be a "federal covered security." Defendants here do not dispute that the securities at issue were not registered and they do not assert that the securities were exempt under state law.

A "federal covered security" is defined as any security that is covered by under Section 18 of the Federal Securities Act of 1933. ORS § 59.015(5) (referring to 15 U.S.C. § 77r(b)). Under 15 U.S.C. § 77r(b)(4)(F), a "covered security" may be one that is exempt from registration under

---

[4] Defendants' suggestion that the court dismiss allegations against Aequitas for failing to register AETC and APCF because they do not comport with Rule 8 should be rejected as moot. Plaintiffs do not allege non-registration claims concerning AETC and APCF as a theory of primary liability against Aequitas. *See* SAC ¶¶ 33-67.

§ 77d(2).  Section 77d(2) exempts from registration "transactions by an issuer not involving any public offering."  15 U.S.C. § 77d(a)(2); *see also* 17 C.F.R. § 230.506 (exempting transactions not involving public offerings).  A security is sold pursuant to 17 C.F.R. § 230.506 when it is offered for sale to a small number of sophisticated, accredited investors, and is often referred to as the "private offering exemption" or "Rule 506" exemption.  *See, e.g., S.E.C. v. Murphy*, 626 F.2d 633, 640-41 (9th Cir. 1980) (describing private offering exemptions); *S.E.C. v. Schooler*, 106 F. Supp. 3d 1157, 1162 (S.D. Cal. 2015), *appeal filed* (9th Cir. Feb. 2, 2016) (noting that there are four exemptions under federal law for selling an unregistered security: Rule 504, Rule 505, Rule 506(b), and Rule 506(c), and discussing requirements of the private offering exemption under Rule 506(b)).

Defendants argue that Plaintiffs have failed to sustain their burden under Rule 8 of pleading that the Disputed Securities in question were not sold under a Rule 506(b) exemption at the time any Aequitas entity asserted that they were necessary to set forth a violation of ORS § 59.055.  Defs' Joint Mot. Dismiss SAC at 13, ECF No. 278.  Plaintiffs contend that they have satisfied Rule 8 and that it is Defendants who bear the burden of pleading and proving a Rule 506(b) exemption pursuant to ORS § 59.275.  Plaintiffs maintain that the court erred as a matter of law when it determined in the April F&R that ORS § 59.275 is not a substantive pleading rule.  April F&R at 41.  Plaintiffs are correct.

In the April F&R, the court concluded "[u]nder ORS § 59.055, that a security is not a federal covered security or statutorily exempt from registration are elements of a violation, *not affirmative defenses to a violation*."  April F&R at 42 (emphasis added).

Oregon Revised Statute § 59.275 provides:

> It is not necessary to negative any of the exemptions or classifications in the Oregon
> Securities Law in a complaint . . . brought under the Oregon Securities Law; and the
> burden of proof of an exemption or classification shall be upon the party claiming the
> benefit of such exemption or classification.

In the April F&R, the court intended to require Plaintiffs to plead sufficient facts showing a violation of ORS § 59.055 pursuant to Rule 8. However, the court erred in further stating that whether a security is exempt from registration is not an affirmative defense. *See State v. Crooks*, 84 Or. App. 440, 445-46 (1987) ("In view of the plain language of ORS § 59.275, the existence of an exemption is not an element of the offense of selling an unregistered security. Rather, it is equivalent to an affirmative defense. Whether a security falls within the class of exempt securities is a fact peculiarly within the personal knowledge of the seller. It is not unreasonable to require the seller to present proof of the exemption.") (footnote omitted); *Lewelling v. First California Corp.*, 564 F.2d 1277, 1281 (9th Cir. 1977) (stating that under ORS § 59.275, burden is on defendants to show sales exempt from registration in defending claim for violating ORS § 59.055); *Aero Marine Engine, Inc. v. Transporter, Inc.,* Case No. 05-cv-01469-AS, 2007 WL 3128500, at *9 n.4 (D. Or. Oct. 23, 2007) (discussing that the private offering exemption is an affirmative defense citing ORS § 59.275); *accord S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 124-26 (1953) (holding that imposing burden of proof on party claiming exemption supports remedial purpose of federal securities legislation).

"State rules that define the elements of a cause of action, affirmative defenses, presumptions, burdens of proof, and rules that create or preclude liability are so obviously substantive that their application in diversity actions is required." *Computer Economics, Inc., v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999) (citing *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446-47 (1959)). "Rules governing presumptions and burdens of proof are generally regarded as substantive

for purposes of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)." *Johnston v. Pierce Packing Co.*, 550 F.2d 474, 476 n.1 (9th Cir. 1977). Thus, the court concludes that it erred in determining that ORS § 59.275 was not substantive and was not akin to an affirmative defense.

Therefore, it is incorrect to require Plaintiffs not only to *plead* but also *prove* that the Aequitas securities were exempt from registration under Rule 506(b), and thus qualified as a federal covered security as this case proceeds. Under ORS § 59.275, "[i]t is not necessary to negative any of the exemptions . . . in a complaint" and "the burden of proof of an exemption or classification *shall be upon the party claiming the benefit of the exemption or classification."* (emphasis added). If Aequitas were a party to this litigation, clearly Aequitas would bear the burden of pleading and proving an exemption. Here, "the part[ies] claiming the benefit of the exemption" are Defendants who seek to void an assertion of Aequitas's primary liability. ORS § 59.275; *see Ainslie v. First Interstate Bank of Oregon, N.A.,* 148 Or. App. 162, 175-76 (1997) (noting that under ORS § 59.115(3), derivative liability of nonseller for participation or material aid can be established if the seller committed a violation); *Anderson v. Carden*, 146 Or. App. 675, 683 (1997) (noting liability of a nonseller participant is predicated on the violation of the seller). Thus, it is clear that Defendants have the burden of pleading and proving the Disputed Securities were "federal covered securities" and thus exempt from registration under Rule 506(b). *Accord S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1085-86 (9th Cir. 2010) (after evidence of registration violation is introduced, defendant has burden of proof in showing entitlement to exemption); *Murphy*, 626 F.2d at 641 (same); *S.E.C. v. Alternate Energy Holdings, Inc.*, Case No. 1:10-cv-00621-EJL-REB, 2014 WL 2515710, at *5 (D. Id. May 13, 2014) (determining under federal parallel Section 5 that

where defendants alleged offers were not public and no registration violation occurred, defendants had burden of showing entitlement to private offering exemption).

In the SAC, Plaintiffs allege that Defendants do not qualify for a Regulation D exemption because all offers and sales of the Disputed Securities during the class period should be integrated and because Aequitas engaged in general solicitations and advertising. 17 C.F.R. § 230.502(a) (providing that to satisfy Regulation D exemption, the court considers whether all offers and sales should be integrated); 17 C.F.R. § 230.502(c) (providing that to satisfy Regulation D exemption, issuers may not engage in general solicitation or advertising); 17 C.F.R. § 230.506(b) (providing that to satisfy private offering exemption, offers and sales must satisfy the general conditions of Rule 502, and specific conditions in Rule 506); *Schooler*, 106 F.3d at 1163 ("The first issue under Rule 506(b) is to determine the number of offerings."). As the parties acknowledge, the court employs a multi-factor test to determine whether discrete offerings should be integrated for purposes of evaluating compliance with the registration requirements. Defs.' Reply Supp. Joint Mot. at 7, ECF No. 300; Pls.' Mem. Opp'n Joint Mot. at 8, ECF No. 287; *see Murphy*, 626 F.2d at 644-45 (examining test for private offering exemption, including the number of offerees, their sophistication, the size and manner of the offering, and the relationship of the offerees to the issuer); *Alternate Energy Holdings*, 2014 WL 2515710, at *5 (same). Those factors include: "(a) Whether the sales are part of a single plan of financing; (b) Whether the sales involve issuance of the same class of securities; (c) Whether the sales have been made at or about the same time; (d) Whether the same type of consideration is being received; and (e) Whether the sales are made for the same general purpose." 17 C.F.R. § 230.502(a).

Defendants argue that the court should reject Plaintiffs' attempts to plead an "integrated offering" for two reasons: (1) the court rejected it as a matter of law in the April F&R; and (2) Plaintiffs have not pleaded sufficient facts to show integration under Rule 8. The court disagrees.

In the April F&R, the court rejected Plaintiffs' integrated offering theory as means of determining secondary liability. April F&R at 30-31. However, the court's ruling did not foreclose Plaintiffs from alleging that the assorted Aequitas offerings be integrated to assess whether they satisfy an exemption to determine Aequitas's primary liability for failing to properly register the Disputed Securities. Thus, the court rejects Defendants' first argument.

Turning to Defendants' second argument, the court concludes Plaintiffs have plausibly alleged sufficient facts to set forth non-registration violations of ORS § 59.055. Plaintiffs' pleadings satisfy Rule 8 and amply put Defendants on notice of their contention that the offerings should be integrated and that Defendants engaged in solicitations and advertising in evaluating whether the disputed securities were private offerings exempt from the registration requirements.

Contrary to Defendants' arguments, Plaintiffs have alleged facts that go beyond mere recitation of the elements that the Disputed Securities were not registered under federal or Oregon law, including alleging particularized facts for each Aequitas security. In the SAC, Plaintiffs allege that ACF owned all or part of equity interests in AIOF, AIOF-II, AEIF, and AMLF, and that AIPF and ACF expressly guaranteed all of the AMLF notes. SAC ¶ 32. Additionally, Plaintiffs allege that Aequitas created ACOF with the express purpose of swapping funds for ownership interests in various entities. *Id.* Plaintiffs allege that the ACF Notes were sold as part of a single plan of financing and the same class of securities and for the purposes of funding ACF, AIM, Holdings and other Aequitas entities. SAC ¶¶ 33(a). Plaintiff's contend that ACF and other affiliated companies

14 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

relied on investor funding, and senior secured institutional credit to finance their operations, and shifted funds around through inter-company loans and asset transfers. SAC ¶ 33(b). Plaintiffs assert the sales of ACF Notes occurred on or about the same time as the sales of other securities, and that they were substantially the same class of securities. SAC ¶¶ 33(b)-(c). Plaintiffs allege that the securities came in different forms, such as promissory notes and limited liability company and partnership interests, they all were reliant on ACF for repayment, and all were subordinate to the senior secured institutional lenders. SAC ¶ 33(d). And, Plaintiffs assert that the ACF Note purchasers all received substantially the same type of consideration. SAC ¶ 33(e). Plaintiffs have made similarly specific allegations for each security about which a non-registration violation is asserted. SAC ¶¶ 38, 43, 48, 53, 58, 63 (making similar allegations for AIOF Notes, AIPF Interests, ACOF Interests, AIOF-II Notes, AEIF Interests, and AMLF Notes). Thus, the non-registration violation allegations in the SAC more than adequately give Defendants fair notice of the non-registration claims asserted and allege specific facts concerning the integration of the various Aequitas offerings.

Likewise, Plaintiffs allege that the Disputed Securities do not qualify for a Regulation D exemption because the issuers of Aequitas securities engaged in general solicitations or advertising. Plaintiffs assert that issuers of ACF Notes, including Defendant Integrity, engaged in general solicitations and general advertising, promoted ACF Notes to prospective investors or their advisors *via* road shows. SAC ¶¶ 36 (a)-(c). Plaintiffs allege that issuers of ACF Notes widely disseminated promotional and marketing materials to investors with whom they did not have a preexisting relationship. SAC ¶¶ 36 (a)-(c). Plaintiffs allege that ACF Notes were marketed and sold between January 2006 and December 2015, to persons with whom the issuer did not have a preexisting

15 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

relationship. SAC ¶¶ 33, 36(a)-(b). Plaintiffs allege the issuer of ACF Notes and persons acting on its behalf engaged in roadshows and widely disseminated promotional, marketing, offering and sales materials to investors or investment advisors with whom the issuers did not have a substantial prior existing relationship. SAC ¶¶ 36(b)-(c). Plaintiffs make similarly specific allegations for each security about which a non-registration violation is asserted. *See* SAC ¶¶ 41, 46, 51, 56, 61, 66 (making similar allegations for AIOF Notes, AIPF Interests, ACOF Interests, AIOF-II Notes, AEIF Interests, and AMLF Notes). Defendants' contention that they are unable to understand the factual underpinnings of Plaintiffs' non-registration claims to sufficiently prepare a defense is flatly rejected.

To summarize, the court concludes after reviewing the non-registration allegations in paragraphs 33 to 67 of the SAC, Plaintiffs plausibly allege violations of ORS §§ 59.055 and 59.115(1)(a). Defendants may include as an affirmative defense allegations as to whether any of the Disputed Securities are federal covered securities and thus exempt from registration should they choose to do so in their Answers. Defendants' motion to dismiss on this basis should be denied.

B.     *Allegations of Aequitas's Primary Liability for Untrue Statements of Material Fact or Omissions under ORS §§ 59.115(1)(b) and 59.135(2) Comport with Rule 9(b)*

In their second theory of primary liability, Plaintiffs contend Aequitas successfully solicited or sold securities "by means of" untrue statements of material fact or omissions, and "directly or indirectly, in connection with the purchase or sale of any security" made untrue statements of material fact or omissions violating ORS §§ 59.115(1)(b) and 59.135(2). In the April F&R, the court determined that Plaintiffs must plead these claims with particularity under Rule 9(b) because such allegations sound in fraud. April F&R at 24. Additionally, the court determined that Plaintiffs are required to "allege actions by specific Aequitas entities and differentiate between the securities sold

by Aequitas entities." April F&R at 32. The court also stated that under ORS § 59.115(1)(b), Plaintiffs must plead actionable misrepresentations or omissions connected to a sale or group of sales of a security, and need not plead individual receipt of or reliance upon the misleading communication. April F&R at 48. The court dismissed numerous allegations from the FAC, and instructed Plaintiffs that to comport with Rule 9(b) they must allege "which Aequitas entity made a misrepresentation or material omission, when and where the statement was made, and what was misleading about the statement when made" and that the alleged misleading statement must "precede the sale." April F&R at 48-49.

In the instant Joint Motion, Defendants contend that Plaintiffs' allegations of misleading statements and omissions fail to connect any PPM with any particular sales transaction, and fail to connect a specific PPM to Plaintiffs' specific purchases. Defs.' Joint Mot. Dismiss at 15. Defendants argue that although the court determined that Plaintiffs do not need to plead they personally received or relied upon any given misstatement, they are required to identify "the specific document 'by means of which' securities were sold to them." Defs. Joint Mot. Dismiss at 16. According to Defendants, Plaintiffs in effect have alleged all of them have been misled by all of the misstatements in all of the PPMs.

Plaintiffs respond that they have identified the specific misstatements, untrue statements, or material omissions in each PPM and investment documentation, and have identified which Disputed Security each Plaintiff purchased, and when their purchases were made. According to Plaintiffs, requiring them to provide additional detail linking a specific PPM to their purchases imposes a reliance requirement, contrary to controlling law.

17 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

As the court discussed in the April F&R, a primary violation of ORS § 59.115(1)(b) does not require reliance on a misrepresentation or omission.  April F&R at 44; *Everts v. Holtmann*, 64 Or. App. 145, 152 (1983) ("ORS 59.115(1)(b) imposes liability without regard to whether the buyer relies on the omission or misrepresentation.); *Sanders v. John Neuveen & Co.,* 619 F.2d 1222, 1226-27 (7th Cir. 1980) (cited with approval in *Everts*) ("To require a plaintiff to have received a commercial paper report before purchasing, as defendants would have us do, would tend toward erroneously imposing a reliance requirement").  The corresponding federal statute, 15 U.S.C. § 77l, also does not require a plaintiff to plead reliance.  *Sanders*, 619 F.2d at 1226 (finding that under the federal corollary section 12(2) "its terms do not require that the particular sale to an individual plaintiff be directly by means of the prospectus alleged to be misleading"); *Everts*, 64 Or. App. at 152.  Adopting Defendants' interpretation of the "by means of" language in ORS § 59.115(1)(b) would improperly insert a reliance element into the statute.

Defendants' reliance on *In re Galena Biopharma, Inc. Sec. Litigation*, 117 F. Supp. 3d 1145 (D. Or. 2015), is misplaced.  There, the court was examining securities fraud violations under section 10(b), codified at 15 U.S.C. § 78j.  *Galena*, 117 F. Supp. 3d at 1163.  Section 10(b) claims must be pleaded under the heightened requirements of the Private Securities Litigation Reform Act and must contain elements of reliance, loss, and causation.  *Id.*  In contrast, here Plaintiffs allege misrepresentations under ORS §§ 59.115(b) and ORS 59.135(2), and their relevant parallel federal statute, section 12(2), codified at 15 U.S.C. § 77l, does not require Plaintiffs to plead the type of reliance or causation as those claims arising under section 10(b).  *See Casella v. Webb*, 883 F.2d 805 (9th Cir. 1989) (distinguishing between causes of action under sections 12(2) and 10(b)); *Hudson*

*v. Sherwood Sec. Corp.*, Case No. C-86-20344 WHI, 1993 WL 165645, at *6 (N.D. Cal. May 14, 1993) (same, citing *Sanders* with approval).[5]

Yet, the "by means of" language in ORS § 59.115(1)(b) implies some nexus between the untrue statement of material fact or omission and the subsequent sale or solicitation. Thus, Plaintiffs must allege some connection, less than receipt or reliance, between their purchases and the specific statements or omissions. Therefore, as the court determined in the April F&R, to properly plead their claims under ORS § 59.115(1)(b) in this case, Plaintiffs must plead facts sufficient to show (1) which Aequitas entity made a misrepresentation or material omission, when and where the statement was made, and what was misleading about the statement when made, and (2) the allegedly misleading communication preceded their purchases from particular Aequitas entities. April F&R at 48-49; *see also Wurster et al v. Deloitte & Touche, LLP*, Case No. 16CV25920 (Mult. Co. Circuit Court Mar. 1, 2018), Op. & Order re: Mot. Dismiss at 3 ("Wurster Op. & Order") ("Thus, the Court holds that for Plaintiffs to adequately plead that securities are sold 'by means of' a false or misleading statement, each Plaintiff in this case must allege (1) which fund they purchased from, and (2) that a false or misleading statement relating to that fund existed at the time of each Plaintiff's purchase.").

_____

[5] Defendants appear to move to strike allegations that there are false and misleading statements in PPMs issued by AEIF and APCF because no Plaintiff is alleged to have purchased any AEIF or APCF security. Defs' Joint Mot. Dismiss at 19-20. The court concludes that Plaintiffs have sufficiently alleged that AEIF and APCF are connected to ACF, AIM, and Holdings to avoid dismissal of these allegations at this stage. SAC ¶¶ 31, 58-62. Additionally, the allegations are relevant to Plaintiffs' assertion that the offerings should be integrated. Defendants' motion to dismiss or strike the allegations against AEIF and APCF should be denied.

In the SAC, Plaintiffs have identified various PPMs and investment documentation that are alleged to contain numerous untrue statements of material fact and/or omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading. Broadly speaking, Plaintiffs allege the various Aequitas securities were marketed as stable, secure, and liquid investments that had strong asset coverage, and were backed by guarantees and recourse agreements, when in reality assets were overstated, underlying collateral was worthless, and new investments were used to satisfy existing obligations to other Aequitas entities. The SAC identifies ACF PPMs dated June 9, 2010; December 1, 2011; November 30, 2012; November 30, 2013; September 9, 2015; and October 27, 2015; as well as ACF Supplements dated March 1, 2013; and October 16, 2015. SAC ¶¶ 136-141, 144, 146. The SAC identifies AIOF PPMs dated July 1, 2011; March 1, 2012; December 31, 2012; and February 12, 2012. SAC ¶¶ 147-150. The SAC identifies an AIOF-II PPM dated October 31, 2014. SAC ¶¶ 151-152. The SAC identifies an ACOF PPM dated February 2014, and ACOF Supplements dated August 2014; November 2014; and February 2015. SAC ¶¶ 153-156. The SAC identifies AIPF PPMs dated September 30, 2011; December 14, 2011; February 15, 2012; June 1, 2012; and December 31, 2012. SAC ¶¶ 158-162. The SAC identifies AEIF PPMs dated October 1, 2014; January 1, 2015; and December 14, 2015. SAC ¶¶ 163-165. The SAC identifies AMLF Note investment documentation and marketing materials beginning in April 2015. SAC ¶ 63. For each of the ACF, AIOF, AIOF-II, ACOF, AIPF, AEIF PPMs and their relevant Supplements, and the AMLF Note investment documentation, Plaintiffs allege either specific affirmative untrue statements that were false when included in the PPMs or investment documentation, or materially omitted information that because such facts were

not included in the PPMs or investment documentation, the PPMs and investment documentation were misleading.

Moreover, Plaintiffs have each identified a specific Aequitas security they purchased, and the dates of the sales. SAC ¶¶ 196-202. Plaintiffs' allegations satisfy the "by means of" language in the statute because the alleged untrue statements or material omissions in the PPMs and investment documentation preceded Plaintiffs' purchases from those particular funds.

In summary, the court has examined Plaintiffs' allegations under ORS §§ 59.115(1)(b) and 59.135(2) and, construing the facts and all reasonable inferences in Plaintiffs' favor, concludes that Defendants' Joint Motion to Dismiss on this basis should be denied.[6]

C.    *Plaintiffs' Allegations Adequately Invoke the Discovery Rule*

1.    Standards

The statute of limitations for Plaintiffs' non-registration claims under ORS §§ 59.055 and 59.115(1)(a) is three years. *See* ORS § 59.115(6). Additionally, the statute of limitations for Plaintiffs' allegations under ORS §§ 59.115(1)(b) and 59.135 is three years from the date of the sale, or two years from the date the action should have been discovered, whichever date is later. *See* ORS § 59.115(6). "Failure to commence an action on a timely basis is an affirmative defense." ORS § 59.115(6).

---

[6] In their Joint Motion, Defendants additionally contend that Plaintiffs have failed to adequately allege scienter on the part of each particular Aequitas entity involved in the challenged transactions. Defs.' Joint Mot. Dismiss at 15 n.8. In the April F&R, the court concluded that Plaintiffs had alleged facts supporting a plausible inference of scienter. April F&R at 24. Having carefully reviewed the allegations in the SAC, the court concludes that the SAC also generally alleges facts supporting a plausible inference of scienter.

21 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute of limitations is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *Stewart v. Rock Tenn CP, LLC*, Case No. 3:13-cv-02147-AC, 2015 WL 1883910, at *3 (D. Or. Apr. 24, 2015).  "To dismiss a claim as untimely on a motion to dismiss, it must be clear from the complaint and any adjudicative facts properly before the court on judicial notice that a plaintiff's claims are untimely." *Port of Portland v. Monsanto Co.*, Case No. 3:17-cv-00015-PK, 2017 WL 4236561, at *4 (D. Or. Sept. 22, 2017) (denying motion to dismiss on statute of limitations grounds); *accord Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (a "complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim").

The parties agree that Oregon law sets forth the appropriate statute of limitations period. Defendants contend, however, that Plaintiffs have failed to sufficiently plead facts to invoke the two-year discovery rule of ORS § 59.115(6).  *Loewen v. Galligan*, 130 Or. App. 222, 115 (1994) (discussing statute of limitations for securities fraud under ORS § 59.115(1)(b)); *TRM Corp v. Paulsell*, Case No. CV-02-215-ST, 2002 WL 31549112, at *2 (D. Or. June 4, 2002) (noting generally that fraud and deceit claims are governed by a two year statute of limitations, and that plaintiffs must plead facts justifying their delayed discovery); *see also Kastle v. Salem Hospital, et al.*, 284 Or. App. 342, 353 (2017) (holding that to withstand a motion to dismiss, "it is enough if [the] complaint does not show itself to be untimely").  The court must accept as true all well pleaded

allegations of fact and infer all reasonable inferences in Plaintiffs' favor. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

        2.     Analysis

In their Joint Motion, Defendants argue that Plaintiffs' non-registration claims are time-barred for sales occurring before April 4, 2013. Plaintiffs do not assert non-registration claims under ORS §§ 59.055 and 59.115(1)(a) occurring before April 4, 2013. SAC ¶ 213. Thus, the court addresses Defendants' arguments only as they pertain to allegations of untrue statements of material fact and omissions. Defendants argue that the fraud claims for sales occurring between June 9, 2010, and April 3, 2013, are barred by the three-year statute of limitations and that Plaintiffs' allegations are insufficient to invoke the two-year discovery rule under ORS § 59.115(6) because Plaintiffs have failed to plead sufficient facts demonstrating that they could not have discovered the alleged violations earlier. Defendants maintain that Plaintiffs should have been on notice of their claims by June 2013 when there was widespread criticism of Corinthian's business practices, and that by late 2013, federal regulators were going to stop Corinthian's ability to obtain federal student loan financing as alleged in SAC paragraphs 95 and 138(j). The court disagrees.

In the SAC, Plaintiffs allege that they discovered the potential securities law violations on or about February 2, 2016, when they received a letter from ACF informing them that ACF had been unable to satisfy redemption requests since November 2015. SAC ¶ 184. Plaintiffs argue that their delay in discovering the alleged securities violation was not their lack of diligence, but rather the complex web of companies created by Aequitas that manufactured an appearance of financial strength and their manipulation of the asset values carried on their books that hid Aequitas's true financial picture. Plaintiffs contend that the bulk of their misrepresentations and omissions

allegations set out undisclosed facts about Aequitas's business failures (SAC ¶¶ 68-69), use of investor funds to repay other investors (SAC ¶¶ 70-77), dependence upon renewals (SAC ¶¶ 78-79), and overstated asset valuations (SAC ¶¶ 80-135).

For example, with respect to Corinthian, Plaintiffs allege that in June 2011, ACF entered into a Student Loan Program Agreement ("SLPA") with Corinthian whereby ACF purchased private student loans that bore no risk of loss, and ACF retained the right to require Corinthian to repurchase any loans that were more than 90 days past due.  SAC ¶ 93.  Additionally, Plaintiffs allege that a wholly owned subsidiary of ACF bought $561 million in face value of Corinthian student loan debt between 2011 and 2014.  SAC ¶ 64.  And, Plaintiffs further allege that ACF overstated the value of its student loan receivables and admitted as much in later 2013-2014 financial statements.  SAC ¶ 97.  Furthermore, Plaintiffs allege that had the true value of the student loan receivables been reported in 2012, ACF would have been rendered insolvent.  SAC ¶¶ 97-98.  Indeed, Plaintiffs allege that ACF continued to improperly overstate the value of the Corithian loans well into 2014.  SAC ¶¶ 100-106.  Contrary to Defendants' contention, Plaintiffs allege that due to ACF's asset value manipulation and ACF's complex inter-connectedness of its subsidiaries, the potential securities fraud violations related to Corithian were not discoverable in late 2013.  Based on these allegations, the court cannot conclude that only one interpretation reasonably can be drawn and/or that it is clear on the face of the complaint that Plaintiffs' claims are untimely.  Therefore, the court concludes that Plaintiffs have alleged facts that, if true, would establish the timeliness of their claims. *Supermail*, 68 F.3d at 1207; *Port of Portland v. Monsanto*, 2017 WL 4236561, at *4 (recognizing that where there is a question of fact about when a claim accrued, dismissal on statute of limitations grounds

is improper).  Accordingly, Defendants' motion to dismiss Plaintiffs' claims as untimely should be denied.

In summary, Defendants' Joint Motion to Dismiss the Second Amended Complaint (ECF No. 278) should be DENIED.

IV.    Deloitte's Mot. Dismiss (ECF No. 277), Plaintiffs' Response (ECF No. 289), Deloitte's Reply (ECF No. 299)

Deloitte was the external auditor for certain Aequitas entities for fiscal years ending December 31, 2013, and December 31, 2014.  In the April F&R, the Court denied Deloitte's earlier motion to dismiss, finding that Plaintiffs had plausibly alleged Deloitte's "participation and material aid in at least some securities transactions by ACF, AIOF, AIOF-II, ACOF, and Motolease."  April F&R at 61, 63-64.  Additionally, the court indicated Plaintiffs plausibly alleged Deloitte's "participation and material aid in securities transactions conducted by means of PPMs and promotional materials identifying Deloitte as auditor, and use of Deloitte-audited financial statements as promotional materials."  April F&R at 63-64.  However, the court concluded that the FAC "insufficiently differentiates between the Aequitas entities, the securities they sold, and the groups of securities sold by means of misleading securities, and therefore "deferred determination of the sufficiency of Deloitte's alleged acts of participation and material aid to an amended complaint."  April F&R at 61.  Deloitte now moves under Rules 8 and 12(b)(6) to dismiss the secondary liability claims against it asserted by Plaintiffs under ORS § 59.115(3).

In its current motion, Deloitte makes two arguments: (1) Plaintiffs have failed to specifically identify which PPMs and promotional materials identified Deloitte as auditor "by means of" which

they purchased their investments; and (2) Plaintiffs have failed to allege a causal relationship between it and the sales of securities to Plaintiffs. Deloitte Mot. Dismiss at 2-3.

Plaintiffs respond that in the April F&R, they were given leave to amend their allegations of primary liability against the various Aequitas entities, and that they have now done so. Plaintiffs argue they were not required to identify a causal relationship between Deloitte and Plaintiffs' particular purchases and that Deloitte's argument otherwise misconstrues the Court's April F&R.

The court detailed the legal standards for non-seller liability in the April F&R and repeats those standards here only as relevant to this discussion. *See* April F&R at 53-59. As the court observed, "a non-seller's liability depends upon the importance of their conduct – participation or aid – to the sale." April F&R at 54. Thus, when considering secondary liability for participation and material aid under ORS § 59.115(3), the court examines whether (1) the non-seller's conduct reflected some knowledge, judgment or specialized skill that materially aided the transaction, and (2) whether the non-seller's interactions with a seller have a causal relationship with an unlawful securities transaction. April F&R at 58; *Prince v. Brydon*, 307 Or. 146, 149, 151 (1988); *Adams v. American Western Secs.*, 265 Or. 514, 529-30 (1973). *Accord* Wurster Op. & Order at 6, ECF No. 322-2 (explaining that to state a claim for relief for secondary liability under ORS § 59.115(3) plaintiff must plead: (1) each Defendant aided the sale in that the extent and importance was material; and (2) an allegation of causality – that each Defendant aided the sale).

Deloitte's first argument – that Plaintiffs have failed to allege that any of the sales were conducted "by means of" PPMs and promotional materials identifying Deloitte as auditor – is not well-taken. Deloitte's Mot. Dismiss at 10-11. To begin, the language "by means of" does not appear in ORS § 59. 115(3). The "by means of" language appears in the section of the statute setting out

26 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

primary liability; secondary liability is premised on the non-seller's participation and material aid. Next, as discussed above, the court has rejected Deloitte's narrow construction of the "by means of" language. *See infra* at 15-18.   Contrary to Deloitte's contention, Plaintiffs are not required to plead reliance and receipt of its work product to state a proper claim under ORS § 59.115(3).   Plaintiffs may plead a sufficient causal nexus by alleging that Deloitte audited the financial information of an Aequitas entity or that Deloitte's name appeared in promotional materials prior to the sales. *See infra* at 15-18; April F&R at 58; Wurster Op. & Order at 11.

In the SAC, Plaintiffs identify numerous PPMs and promotional materials identifying Deloitte as auditor, beginning on November 30, 2013. *See* SAC ¶¶ 140, 144, 146, 151, 152, 153, 157, 163, 164, 165, 166.   Plaintiffs distinguish among the various Aequitas entities and they separately identify those entities and investment vehicles for which Deloitte provided auditing.   SAC ¶ 190(a).   Furthermore, Plaintiffs allege that Deloitte's auditing permitted Aequitas to undertake transfers with other Aequitas entities outside of the Deloitte-audited fundraising group that allowed Aequitas as whole to appear financially healthy.   SAC ¶ 190(b).   Plaintiffs allege that Deloitte's "clean audits" enabled Aequitas to attract new investors and retain current investors, and comply with the Investment Advisors Act of 1940.   SAC ¶ 190(b).   Plaintiffs also allege that SEC rules require the distribution of audited financials, and that Deloitte knew it was identified as the auditor for Aequitas funds in public disclosures filed with the SEC, including AIM's Form ADVs (Part 1A) dated March 24, 2014.   SAC ¶¶ 190(d)-(f).   Moreover, Plaintiffs allege that by permitting Aequitas entities to use Deloitte's name in marketing and promotional materials, Deloitte gave Aequitas entities clout with prospective and existing investors.   SAC ¶ 190(c).   Considering these allegations in the light most favorable to Plaintiffs, the court concludes that Plaintiffs plausibly allege that

Deloitte provided professional services to Aequitas as a whole that reflected Deloitte's particular skill and judgment that materially aided unlawful securities transactions.

Deloitte's second argument – that Plaintiffs have failed to plead a "causal connection" – similarly fails. Plaintiffs allege Deloitte's participation and material aid began September 13, 2013. In its briefing, Deloitte acknowledges that it issued 2013 year-end financial audit opinions for ACF, ACOF, AMLF, AIPF, and AIOF, but contends it did not do so until April and May of 2014. Deloitte's Mot. Dismiss SAC at 4. Additionally, Deloitte acknowledges that it issued 2014 year-end financial audit opinions for ACF, ACOF, AIPF, AOIF, and AIOF-II, but completed that work in March, April, and May of 2015. *Id.* Although Deloitte signed an engagement letter with Aequitas on September 13, 2013, Deloitte's name is not alleged to appear in any promotional or marketing materials until November 30, 2013, when its name appeared as auditor in an ACF PPM. SAC ¶¶ 140, 190(a); Masuda Decl. Ex. 3 at 7, ECF No. 279-3. Based on these detailed allegations, the court determines that Plaintiffs plausibly allege a causal connection between Deloitte and all sales occurring after November 30, 2013. Therefore, Plaintiffs' claims based on sales before November 30, 2013 should be dismissed as alleged against Defendant Deloitte.

In short, Plaintiffs plausibly allege Deloitte's participation and material aide in the sale of securities after November 30, 2013 under ORS § 59.115(3). Deloitte's Motion to Dismiss the SAC (ECF No. 277) should be GRANTED IN PART as to sales occurring before November 30, 2013, specifically: SAC ¶¶ 196(a), 197 (first sentence only), 198(a), 199(b), 200(a), and 201(a)&(b). Deloitte's Motion should be DENIED on all other grounds.

V.    Sidley's Motion to Dismiss (ECF No. 272), Plaintiffs' Response (ECF No. 288), Sidley's Reply (ECF No. 296)

Defendant Sidley is alleged to have participated and materially aided the sale of securities beginning no later than April 5, 2013. SAC ¶ 192. Plaintiffs generally allege Sidley provided legal services to ACF and other Aequitas entities in connection with the sale of securities, including preparing a PPM for the sale of securities in ACOF in February 2014. SAC ¶¶ 153, 192(a)-(c).

In the April F&R, the court dismissed claims against Sidley with leave to amend because Plaintiffs' allegations of Aequitas's primary liability were insufficient, thereby rendering the secondary liability allegations against it also insufficiently alleged. April F&R at 68. In the FAC, the sole allegation of a misleading statement by ACOF was an alleged omission in a 2014 PPM, and the court concluded that the statement failed to identify an affirmative statement made false by the omission. April F&R at 69. The court also dismissed the secondary liability claim against Sidley for participation and material aid under ORS § 59.115(3) because the allegations that it provided unspecified legal services to AIM failed to set forth with particularity how its services related to the sale of Aequitas entities' sale of securities. April F&R at 69. Finally, the court determined that Plaintiffs provided some detail about Sidley's actions promoting an image of success by alleging that Sidley provided legal services to an unspecified Aequitas entity that enabled it to isolate its healthcare receivables from investors and pledge those assets as collateral to receive a bank loan to aid further securities sales. April F&R at 69. However, the court instructed Plaintiffs to specify when Sidley enabled the transaction, which security(ies) the transaction related to, and which sales the transaction enabled. April F&R at 69.

29 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

In its current motion, Sidley argues that other than allegations concerning ACOF, Plaintiffs have failed to correct any of the deficiencies identified by the court. Pursuant to Rules 8 and 12(b)(6), Sidley moves to dismiss all allegations against it, except those concerning ACOF. As discussed above, the court has determined that Plaintiffs have alleged plausible claims of primary liability. And, as Sidley acknowledges, Plaintiffs' allegations against it concerning ACOF readily sets out a plausible claim of participation and material aid under ORS § 59.115(3) for all sales after February 2014. SAC ¶ 192(c).

With respect to Sidley's argument that Plaintiffs have failed to plead a causal connection between it and various non-ACOF entities' securities offerings to establish secondary liability, the court concludes Plaintiffs have plausibly set forth a claim for relief for Sidley's participation and material aid for sales occurring after April 5, 2013. The court concludes that Plaintiffs: (1) plausibly allege that Sidley's material aid or participation reflected its knowledge, judgment, or specialized skill that enabled the non-ACOF securities transactions; and (2) plausibly allege that Sidley's interactions with Aequitas have a causal connection to their securities transactions occurring after April 5, 2013.

In SAC paragraph 192(d), Plaintiffs allege that Sidley prepared a legal opinion confirming that Aequitas, and ACF specifically, was in compliance with the Investment Company Act. *See also* SAC ¶ 191 (alleging failure to comply with an exemption to the Investment Company Act prohibits further business). Plaintiffs allege that Sidley prepared the legal opinion confirming ACF's compliance on April 5, 2013, at the request of EisnerAmper, and that absent the opinion, EisenerAmper could not have issued a clean audit, and Aequitas could not have continued selling *any* securities. SAC ¶ 192(d). Plaintiffs allege that on June 21, 2011, Defendant Tonkon provided

a legal opinion about ACF's apparent compliance with an exemption to the Investment Company Act, and advising ACF to seek additional guidance from the SEC. SAC ¶ 191(b). Additionally, Plaintiffs allege that Sidley knew at the end of 2014 that ACF was no longer in compliance with the Investment Company Act, that Sidley advised Aequitas how to regain compliance, and that Deloitte relied upon Sidley's repeated assurances in an SEC investigation into the matter. SAC ¶ 192(e). Plaintiffs have plausibly alleged that Sidley's conduct reflected its knowledge, judgment, and skill that materially aided or participated in the sales of securities with respect to ACF and Aequitas as a whole. Thus, contrary to Sidley's contention, Plaintiffs have plausibly alleged specific actions – providing legal advice and opinions to ACF regarding compliance – that causally connects Sidley to ACF and Aequitas as a whole to all securities offerings occurring after April 5, 2013.

Plaintiffs have set forth specific allegations of Sidley's conduct with respect to AIPF, AIOF, AIOF-II, and AMLF to state a claim of material aid and participation. In SAC paragraph 192(f), Plaintiffs allege that Sidley learned of Integrity's interpretation of an exemption to the Investment Company Act was incorrect, and therefore AIPF was not in compliance. Plaintiffs allege in July 2014, Aequitas liquidated AIPF. SAC ¶ 192(f). Plaintiffs also allege that Sidley then assisted Aequitas to create a structure that would permit Integrity to act as an aggregator of individual investments (the intent behind AIPF) *via* AIOF-II. SAC ¶ 192(f). Plaintiffs allege that AIOF-II was set up to retain AIPF investor money to avoid a liquidity crisis. SAC ¶ 192(f). Again, the court concludes that Plaintiffs plausibly allege that Sidley's conduct required its knowledge, judgment, and skill that materially aided the sale of securities in AIPF and AIOF-II and that are causally connected to sales occurring after July 2014.

Regarding AMLF, Plaintiffs allege that Sidley advised Aequitas that the notes it sold pursuant to its "Note Manufacturing Program" were not securities, and thus sold the notes without PPMs or other risk disclosures.  SAC ¶ 192(h).  Plaintiffs allege that Aequitas acted as its own investment advisor through Aequitas Investment Management ("AIM").  SAC ¶ 189(f).  Plaintiffs allege that to do so, Aequitas needed to comply with the Investment Advisors Act, which required it to obtain an annual audit for each of the Aequitas funds and distribute the annual audited statements to investors.  SAC ¶ 189(f).  Plaintiffs further allege that Sidley advised AIM with respect to its management of various funds, including AIPF, AIOF, AIOF-II, ACOF, AETC, and AEIF.  SAC ¶ 192(i).  Plaintiffs allege that the promise of annually audited financial statements featured prominently in AIM's marketing and disclosure materials, including Form ADV, Part 2A.  SAC ¶ 190(d).  Plaintiffs allege that Sidley's actions with respect to Aequitas's compliance with the Investment Advisors Act and the Investment Company Act were material to the ability of Aequitas to sell any securities after April 5, 2013.  SAC ¶ 192(d).  And, Plaintiffs allege that Sidley's written opinions in 2013 and 2014 enabled Aequitas to obtain clean audits from EisnerAmper and Deloitte.  SAC ¶¶ 192(d)-(e).  Accepting these factual allegations as true and in the light most favorable to Plaintiffs, the court concludes Plaintiffs have plausibly alleged Sidley's actions reflected its knowledge, judge, and particularized skill that materially aided the transactions with respect to various AIM entities, including but not limited to ACF, ACOF, AMLF, AIPF, AIOF, and AIOF-II, that causally connect Sidley to sales of all AIM securities after April 5, 2013.

The court rejects Sidley's contention that simply because law firm Tonkon is identified as legal counsel in the PPMs for AIPF and AIOF, Plaintiffs have failed to allege Sidley played any role in the offering of securities.  A lawyer's participation and material aid is not limited to the drafting

of offering documents, and a causal relationship may exist even if the interaction is a routine part of the professional's work with the sellers of securities. *See* April F&R at 58-59; *Prince*, 307 Or. at 149; *Adams*, 265 Or. at 528. Assuming the veracity of all allegations in the complaint, as the court must at this stage, the court concludes that Plaintiffs have plausibly pleaded Sidley provided material aid to Aequitas, ACF, AIPF, AIOF, AMLF, and AIM by issuing opinions and structuring entities that lent stability and crediblity, reflecting Sidley's knowledge and judgment for all sales of securities after April 5, 2013.

Furthermore, Plaintiffs have plausibly alleged a causal connection between Sidley's alleged material aid and participation and the sales of securities after April 5, 2013. To be sure, Plaintiffs have alleged that Sidley was instrumental in confirming ACF's compliance with the Investment Company Act on April 5, 2013, without which ACF and Aequitas could not have continued selling any securities. SAC ¶ 192(d). Plaintiffs also allege that in July 2014, Sidley assisted in creating a structure by which Integrity could act as an aggregator for AIOF-II investments to avoid a liquidity crisis. Accordingly, Plaintiffs have plausibly alleged a causal connection necessary to set forth a claim of participation and material aid under ORS § 59.115(3) for sales after April 5, 2013. Thus, Sidley's motion to dismiss Plaintiff's claims based on sales occurring before April 5, 2013 should be granted.

Likewise, the court is not persuaded by Sidley's arguments concerning Plaintiffs' allegations involving Wells Fargo and Bank of America. SAC ¶ 192(j). As noted above, the court dismissed this claim in the April F&R with leave to amend to include additional detail. April F&R at 69. Plaintiffs have done so. Plaintiffs have alleged that Sidley provided a legal opinion in 2015 about ACF's status under the Investment Company Act that enabled Aequitas to isolate its health care

receivable assets from investors and pledge them as assets. SAC ¶ 192(j). Plaintiffs assert Sidley's advice enabled Aequitas to pledge those assets as collateral for loans with Wells Fargo and Bank of America, which promoted the illusion of success and legitimacy to perpetuate continued sales of securities. SAC ¶ 192(j). These allegations are sufficient to establish a causal connection between Sidley and the sale of securities to survive a motion to dismiss. Again, accepting such allegations as true, the court concludes Plaintiffs plausibly allege Sidley's participation and material aid that is causally connected to securities sales after April 5, 2013, under ORS § 59.115(3). Sidley's motion to dismiss on this basis should be denied.

Finally, Sidley contends that Plaintiffs do not have standing to assert any claim against it involving an Aequitas security they did not purchase. Sidley Mot. Dismiss at 16. The allegations concerning AEIF are relevant to Plaintiffs' non-registration violations and the AEIF and APCF allegations may be relevant to Plaintiffs' assertion that the various securities offerings be integrated. Therefore, Sidley's motion on this basis should be denied.

In summary, Sidley's Motion to Dismiss the SAC (ECF No. 272) should be GRANTED IN PART as against Sidley for sales occurring before April 5, 2013; specifically, SAC ¶¶ 197 (first sentence only), 198(a), 199(b), 200(a), and 201(a). Sidley's Motion should be DENIED on all other grounds.

VI. <u>Duff's Motion to Dimiss (ECF No. 269), Plaintiffs' Response (ECF No. 291), Duff's Reply (ECF No. 297)</u>

Duff moves to dismiss under Rules 12(b)(2) and 12(b)(6) on the following bases: (1) the court lacks personal jurisdiction because Duff lacks minimum contacts with Oregon; (2) under *Bristol-Myers Squibb v. Superior Court California*, 137 S. Ct. 1773 (2017), the court lacks personal

jurisdiction over claims asserted by non-Oregon residents; (3) applying Oregon securities law extra-territorially violates the dormant Commerce Clause; (4) applying Oregon choice of law principles requires dismissal of Plaintiffs' claims; (5) other than ACOF, Plaintiffs have failed to state a plausible claim that Duff participated or materially aided the sale of other securities; and (6) the court should dismiss all claims based on the sale of any securities before February 2014, the first time Aequitas communicated with investors in the ACOF PPM concerning Duff's work.

In response, Plaintiffs concede that the SAC alleges Duff's joint and several liability commences February 2014, but contend that the motion should be denied on all other grounds.

### A.    The Court Has Specific Personal Jurisdiction

#### 1.    Legal Standards

A party opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) bears the burden of establishing that jurisdiction exists. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).   When the defendant's motion is based on written materials rather than an evidentiary hearing, plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand a motion to dismiss. *Id.*  A plaintiff may not rest on the bare allegations in the complaint, but uncontroverted allegations may be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).   The court may not assume the truth of allegations that are controverted, but resolves factual disputes contained in affidavits in a plaintiff's favor.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Schwarzenegger*, 374 F.3d at 800.

2.     Jurisdictional Facts

Duff is a Delaware company with its headquarters and principal place of business in New York. Decl. Rebecca Macfie Supp. Duff's Mot. Dismiss ("Macfie Decl.") ¶ 3, ECF No. 270. Duff is a financial services company specializing in valuing commercial assets. *Id.* at ¶ 4. Duff does not maintain an office in Oregon, and does not own or lease property in Oregon. *Id.* at ¶ 5. Duff is registered in the State of Oregon as a foreign limited liability company with an agent in Oregon for receiving service of process. *Id.* at ¶ 9.

In September 2013, William Ruh of AIM called Jack Clemens of Duff to discuss Duff providing certain valuation services. Decl. Johnathan L. Jacobs Supp. Duff's Mot. Dismiss ("Jacobs Decl.") ¶ 6, ECF No. 271. Clemens was then a Managing Director in Duff's Atlanta, Georgia office. Decl. Jack Clemens Supp. Duff's Mot. Dismiss ("Clemens Decl.") ¶ 2, ECF No. 273; Jacobs Decl. ¶ 9. In December 2013, Duff sent an engagement letter to Craig Froude of AIM in Lake Oswego, Oregon, in which it agreed to provide estimates of the fair value of three portfolio companies to be held by ACOF, namely CarePayment/CPTI ("CPTI"), EDPlus Holdings /Unigo ("EDPlus"), and ETC Global Holdings LLC ("ETC"). Jacobs Decl. ¶ 7. In the letter, Duff acknowledged that the valuations were required for certain financial reporting requirements. Clemens Decl. Ex. A at 1. In the letter, Duff also agreed that its name and the nature of its services could be used in the ACOF offering documentation, SEC filings, and investor conference calls. *Id.* at 8. Duff provided valuations for CPTI, EDPlus, and ETC on three occasions: December 2013, July 2014, and February-March 2015. SAC ¶ 195(c); Jacobs Decl. ¶ 10; Clemens Decl. ¶ 9. CPTI and EDPlus are Oregon companies. SAC ¶ 135. Aequitas first disclosed the valuations and referenced Duff in ACOF's February 2014 PPM. Duff's Mot. Dismiss at 3; SAC ¶ 195(c). In conducting the

36 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

valuations, no Duff employee traveled to Oregon, but instead communicated with various Aequitas individuals *via* email and telephone.   Jacobs Decl. ¶¶ 11-15; Clemens Decl. ¶¶ 10-15.   The completed valuations were sent to Aequitas by email.  Clemens Decl. ¶ 14.

In 2016, Duff acquired Tregin Solutions, a legal management consulting company, which is domesticated in Oregon.  Macfie Decl. at ¶ 11.   Tregin's former thirteen employees now are employed by Duff.  *Id.* at ¶ 13.  In 2017, Duff hired two new employees that reside and work from their homes in Oregon.  *Id.* ¶ 17.

Plaintiffs are investors who purchased Disputed Securities from Aequitas, including ACF Notes, ACOF Interests, AMLF Notes, AIOF Notes, AIPF Interests, and AIOF-II Notes.  SAC ¶¶ 196-202.  Plaintiffs purport to represent a class of more than 1,500 Oregon and non-Oregon investors who lost more than $600 million by purchasing assorted Aequitas securities.  SAC ¶ 1; Pls.' Mem. Opp'n Duff's Mot. Dismiss at 2, ECF No. 291.  Of the thirteen named Plaintiffs, two are Oregon residents and eleven are California residents.  SAC ¶¶ 9-15.

3.      Analysis – Specific Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 124 (2014); *Axiom Foods, Inc., v. Acerchem International, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).  Oregon Rule of Civil Procedure ("ORCP") 4J(2) extends personal jurisdiction to "[a]ny person, a resident or nonresident of this state, who has engaged in conduct prohibited or made actionable under the Oregon Securities Law."  Additionally, Oregon's long-arm provision, ORCP 4L, confers personal jurisdiction to the fullest extent permitted by the federal Constitution.  Therefore, Oregon's personal jurisdiction is co-extensive with federal due process, and the court proceeds directly to the federal due process analysis.  *Boschetto v.*

37 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

*Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Helicopter Transp. Servs., LLC v. Sikorsy Aircraft Corp.*, 253 F. Supp. 3d 1115, 1123 (D. Or. 2017).

"Due process 'constrains a State's authority to bind a nonresident defendant to a judgment of its courts.'" *Axiom*, 874 F.3d at 1068 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotations omitted)). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The fundamental issue is whether a "defendant's conduct and connection with the forum [S]tate are such that he should reasonably anticipate being haled into court there." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Plaintiffs do not assert general jurisdiction over Duff, therefore the court confines its analysis to specific personal jurisdiction. In conducting this analysis, the Ninth Circuit has articulated a three-part test to determine whether a nonresident defendant is subject to specific jurisdiction:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail[ ] himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Axiom*, 874 F.3d at 1068-69 (quotations omitted and alterations in original). It is Plaintiffs' burden to establish the first two prongs. *Schwarzenegger*, 374 F.3d at 802. If Plaintiffs establish the first two prongs, the burden shifts to Duff to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 476-78 (1985)). The specific

jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (quotations and citations omitted).

a.    *purposeful direction*

The first prong encompasses two concepts: "purposeful direction" and "purposeful availment." *Axiom*, 874 F.3d at 1068; *Helicopter Transp. Servs.*, 253 F. Supp. 3d at 1124; *Adidas America, Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1087 (D. Or. 2016). Purposeful availment is often used to analyze suits sounding in contract, and purposeful direction is most often used for actions sounding in tort. *Axiom*, 874 F.3d at 1069; *Picot*, 780 F.3d at 1212. Duff is alleged to have materially aided and participated in the fraudulent securities activities of Aequitas. Some cases have noted minimum contacts in securities fraud cases may be established under either purposeful direction or purposeful availment. *See, e.g., S.E.C. v. Ficeto*, Case No. CV 11-1637-GHK(RZx), 2013 WL 1196356, at *4 (S.D. Cal. Feb. 7, 2013) ("The fraud aspects of a securities case may establish purposeful direction, as in a tort case, while the transactional aspects of a securities case may establish purposeful availment."). In their briefing, and at oral argument, the parties focused on purposeful direction. *Nike, Inc. v. Lombardi*, 732 F. Supp. 2d 1146, 1153 (D. Or. 2010) (utilizing purposeful direction test to examine jurisdiction in case where defendant alleged to have made misleading statements false representations in licensing agreement); *Chassin Holdings Corp. v. Formula VC Ltd.*, Case No. 15-cv-02294-MEJ, 2016 WL 1569986, at *5 (N.D. Cal. April 19, 2016) (examining both purposeful direction and purposeful availment in securities fraud action).

The evidence required to establish purposeful direction usually centers on a defendant's actions outside the forum state that are directed at the forum state "such that personal jurisdiction could be exercised even without physical contacts with the forum." *Lazar v. Kroncke*, 862 F.3d

39 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

1186, 1202 (9th Cir. 2017); *Schwarzenegger*, 374 F.3d at 803.  Under purposeful direction, sometimes referred to as the "effects test," is satisfied when a defendant: (1) commits an intentional act; (2) expressly aimed at the forum state; (3) which causes harm that the defendant knew was likely to be suffered in the forum state. *Axiom*, 874 F.3d at 1069 (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984)); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

The "intentional act" requirement refers to an intent to perform an actual, physical act, instead of an intention to accomplish that act. *Schwarzennegger*, 374 F.3d at 806.  In the SAC, Plaintiffs allege Duff committed numerous intentional acts.  In December 2013, Duff entered into an engagement letter with an Oregon company (AIM) and consented to the use of its name and its valuations in marketing and promotional materials used to sell securities to its investors.  SAC ¶ 195(a); Jacobs Decl. ¶ 7.  Duff provided estimations of the fair market value of CPTI, EDPlus, and ETC on three separate occasions, December 2013, July 2014, and February-March 2015.  SAC ¶ 195(c).  Thus, there is no question that Duff committed intentional acts when it valued the portfolio companies, a point Duff concedes.  Duff's Mot. Dismiss at 9.  *See Axiom*, 874 F.3d at 1069 (finding intentional act where unauthorized use of logos included in newsletter sent to mailing list recipients); *Schwarzenegger*, 374 F.3d at 806 (finding intentional act when unauthorized advertisement was placed in newspaper).  The first prong is statisfied.

To satisfy the second prong, the court examines whether the defendant's intentional conduct was "expressly aimed" at the forum state. *Axiom*, 874 F.3d at 1069; *Picot*, 780 F.3d at 1214; *Dole Food*, 303 F.3d at 1111-12 (finding the defendants expressly aimed their wrongful conduct at the forum state because they knew Dole's principle place of business was in California, Dole's decision makers were in California, and they communicated with those California decision makers).  The

court is mindful that its personal jurisdiction analysis must focus on Duff's contacts with Oregon, "not the defendant's contacts with persons who reside there." *Picot*, 780 F.3d at 1214. To determine whether the defendant expressly aims at the forum state, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. The court's analysis depends upon the type of tort alleged. *Picot,* 780 F.3d at 1214. Here, Plaintiffs allege that Duff materially aided and participated in the fraudulent sale of securities. SAC ¶ 195. Thus, the court must inquire whether Duff expressly aimed its alleged material aid and participation in the sale of securities at Oregon. *Id.*

Plaintiffs contend that this requirement is met because Duff knew, and agreed, that its name, clout and valuations would be used in Oregon offering documents, by an Oregon seller, to sell securities from Oregon, to Oregon purchasers. Pls.' Mem. Opp'n at 8, ECF No. 291. Duff argues that it did not expressly aim its conduct at Oregon because it did not "target" any Oregon investors. Duff argues that of the thirteen Plaintiffs, only two are Oregon residents. Duff's Mot. Dismiss at 9. Additionally, Duff contends that it has had no contact with Oregon because it never traveled to Oregon, and instead completed its valuations in New York and sent them *via* email. Duff also contends that its connection to a third party – Aequitas – cannot form the basis of its jurisdictional contacts.

Here, Plaintiffs allege conduct by Duff that meaningfully connects it to Oregon, not simply the particular Oregon Plaintiffs. In the SAC, Plaintiffs allege that the two most significant vehicles used by Aequitas to create and inflate asset value were CPTI and EDPlus, the two Oregon companies valued by Duff. SAC ¶¶ 135, 195(c). Plaintiffs allege that Duff agreed that its name and valuations

could be used in the ACOF 2014 PPM, which lent credibility the values accorded to ACOF's existing portfolio investments, and that those values were critical because they were ACOF's only assets. SAC ¶ 195(c). Plaintiffs allege that Duff's valuations also were used in ACF's consolidated financial statements to give investors confidence in ACF and ACOF and encourage continued investments. SAC ¶¶ 195. Although Duff conducted its appraisal reports outside of Oregon and did not travel to Oregon, "physical entry is not a prerequisite to jurisdiction." *Walden*, 571 U.S. at 285 (noting that contact with the forum state through "goods, mail, or some other means, is a relevant contact"). Duff directly communicated *via* email and telephone with various Aequitas decision makers about its valuations of the portfolio companies, and sent draft and final versions of its valuations to Aequitas's Oregon headquarters. Clemens Decl. ¶ 10. Furthermore, Duff's contact with Oregon was not on a single occasion, but instead Duff provided services to Oregon entities over an 18-month relationship during which it provided the fair value estimate of CPTI, EDPlus, and ETC three times. Thus, Duff's connection to the forum is based on its own affiliation, and its "conduct connects [it] to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

Thus, Duff's actions here are readily distinguishable from those in *Walden*. In *Walden*, Nevada plaintiffs sued a Georgia police officer whom they alleged unlawfully seized their cash as they awaited a plane bound for Nevada from Atlanta, Georgia. *Walden*, 571 U.S. at 288-89. The *Walden* court concluded that a Nevada court could not exercise specific personal jurisdiction over the Georgia police officer because he "never traveled to, conducted any activities within, contacted anyone in, or sent anything to or anyone to Nevada." *Id*. In this case, Duff's connection to Oregon is not the "random, fortuitous, or attenuated" contact that was found to be insufficient in *Walden*. Unlike *Walden*, Duff's jurisdictionally relevant contacts with Oregon have been formed by its own

actions, not simply Plaintiffs' residence or Aequita's presence in Oregon.  Rather, Plaintiffs have

sufficiently alleged that Duff materially aided or participated in the sale of securities by means of

untrue statements of fact or omissions of material fact concerning its inflated valuations of CPTI and

EDPlus – Oregon companies.  Plaintiffs assert that Duff necessarily communicated with Aequitas

decision makers in Oregon on multiple occasions about those valuations over a period of 18 months,

and Duff knew that Aequitas was headquartered in Oregon.  Contrary to Duff's suggestion, it

reached out beyond its home state into Oregon by agreeing to permit Aequitas to use its name in the

ACOF offering documents and other marketing materials.  Thus, Plaintiffs have sufficiently alleged

that Duff's actions were "expressly aimed" at Oregon to satisfy this prong.  *Dole*, 303 F.3d at 1112.

To establish the third prong of the effects test, a defendant's actions must cause harm that

the defendant knows is likely to be suffered in Oregon.  *Axiom*, 874 F.3d at 1069; *Mavrix*, 647 F.3d

at 1228.  This element is satisfied if a "jurisdictionally sufficient amount of harm is suffered in the

forum state."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207

(9th Cir. 2006).  "The 'brunt' of the harm need not be suffered in the forum state," and this element

may be established even if "the bulk of the harm" occurs outside the forum.  *Id.*

As alleged by Plaintiffs, it was not only foreseeable, but entirely predictable, that by

overstating the value of Oregon entities for an Oregon seller of securities that economic harm was

likely to result in Oregon.  *See Hawes v. Kabani & Co.*, 182 F. Supp. 3d 1134, 1141 (W.D. Wash

2016) (finding that "economic harm is likely to result from a factually incorrect audit, especially

where that audit overstates a company's financial health.").  A similar fact pattern was presented in

*Hawes*.  There, the plaintiffs were Florida investors in a Washington-based company, L&L.  *Id.* at

1138.  Plaintiffs brought claims of negligent misrepresentation and Washington securities law

43 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

violations against defendants Hamid Kabani and Kabani & Co., California residents who conducted the allegedly overstated audit of L&L. *Id.* Defendants moved to dismiss the complaint, contending the Washington court did not have specific personal jurisdiction because the defendants conducted most of their work from California and traveled to Washington only on a few occasions. *Id.* at 1141. The *Hawes* court concluded that the defendants expressly aimed their actions at Washington. *Id.* Moreover, the court concluded that the defendants' actions caused harm likely to be suffered in Washington:

> Although L&L, not plaintiffs, is the injured corporation, plaintiffs' injuries as shareholders are intrinsically related to L&L's failure. Plaintiffs allege that, but for defendants' improper audit, L&L and its stock could have avoided a precipitous decline in value.

*Id.* The *Hawes* court determined that "an accounting firm that knowingly or negligently produces an incorrect audit should anticipate financial implications for the company and its shareholders." *Id.* And, the *Hawes* court concluded that the defendants, auditing a Washington company, should have foreseen that it would be haled into court in Washington, not Florida. Thus, "[i]f defendants are subject to specific jurisdiction anywhere, that place is Washington." *Id.*

The same rationale should be applied here. As alleged by Plaintiffs, by providing a company headquartered in Oregon with overstated values of two Oregon companies, CPTI and EDPlus, it is foreseeable that Duff would be held accountable in Oregon by investors for any harm resulting from its alleged actions. Additionally, by permitting its name to be included in offering documents and promotional materials generated by and emanating from an Oregon seller of securities, it was also likely that economic harm would be suffered in Oregon. Therefore, the court concludes that the third prong is of purposeful direction is satisfied.

    b.  *"arising out of"*

Under the second part of the specific personal jurisdiction test, a plaintiff must show that the claim asserted in the litigation "arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007); *Adidas America*, 169 F Supp. 3d at 1092. The Ninth Circuit relies "on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Thus, the relevant question for the court is whether, "but for" Duff's contacts with Oregon, would Plaintiffs' claims against Duff have arisen. *Id.*; *RHUB Communications, Inc. v. Karon*, Case No. 16-cv-06669-BLF, 2017 WL 3382339, at *7 (N.D. Cal. Aug. 7, 2017).

Plaintiffs argue that but for Duff's forum related activities, their claims against Duff would not have arisen. Plaintiffs allege that Duff's valuations were used to continue to promote the sale of securities by Aequitas and give the illusion that Aequitas was a stable investment with valuable assets. SAC ¶¶ 195(c)-(e). And, Plaintiffs assert that Duff agreed to the use of its name in offering documents and marketing materials that lent credibility and clout to Aequitas's financial representations. Indeed, each Plaintiff is alleged to have purchased at least one Disputed Security after Duff's name first appeared in ACOF's February 2014 PPM. Thus, the court concludes Plaintiffs have satisfied the "arising out of" requirement of specific personal jurisdiction. *Hawes*, 182 F. Supp. 3d at 1142 (finding that allegations that company misrepresented financial health of company that was endorsed by defendants' inaccurate audit of company sufficiently demonstrated "arising out of" prong of specific personal jurisdiction); *RHUB Communications*, 2017 WL 8832339

at *8 (finding RHUB's fraud claim would not have arisen but for the defendant's contacts with the forum state).

Duff contends that Plaintiffs improperly impute Aequitas's contacts with Oregon to Duff, citing *In Re Countrywide Fin. Servs.*, Case Nos. 2:11-ML-02265-MRP (MANx), 2:11-cv-10414-MRP (MANx), 2012 WL 1322884, at *7 (C.D. Cal. Apr. 16, 2012). The court finds *Countrywide* distinguishable. In that case, individual defendants, who were officers of Countrywide Securities Corporation ("CSC"), were challenging personal jurisdiction over them as individuals. *Id.* Plaintiff MassMutual alleged that because the individual defendants controlled the actions of CSC, it had demonstrated that the individual defendants specifically targeted the forum state. The court rejected that argument, noting that control liability should not be conflated with minimum contacts to establish personal jurisdiction. Thus, because the complaint did not set out specific allegations connecting the individual defendants with the forum, MassMutual failed to establish personal jurisdiction over the individual defendants. *Id.* at *9.

Here, unlike *Countrywide*, there are no allegations of agency between Duff and Aequitas in this action. Duff cannot avoid its contacts with the forum by using Aequitas as a shield against personal jurisdiction. As detailed above, Plaintiffs have not conflated control liability with minimum contacts to establish jurisdiction. Rather, it is Duff's own actions that connect it to Oregon that drives this court's analysis. Thus, the court concludes that Plaintiffs have established the first two prongs of specific personal jurisdiction.

> c.    *jurisdiction is reasonable*

The burden now shifts to Duff to present a "compelling case" that exercising personal jurisdiction is unreasonable. *Schwarzenegger*, 374 F.3d at 802. Jurisdiction is unreasonable if it

46 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

does not comport with the notion of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The Ninth Circuit has identified seven specific factors to consider in making the reasonableness determination:

> "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (quoting *Dole Food*, 303 F.3d at 1114). The court examines these factors below.

The first factor favors jurisdiction. If a court determines that a defendant has purposefully directed its actions at the forum state, as discussed above, then the purposeful interjection factor favors plaintiff. *See CollegeSource*, 653 F.3d at 1080 ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection.").

The second factor looks at the cost of litigation. Duff argues that the burden of litigating in Oregon would be heavy because it has no offices in Oregon, its witnesses reside in New York, and it would incur significant cost. The court is unpersuaded that defending this lawsuit will impose a "substantial hardship" on Duff. "'[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past.'" *CollegeSource*, 653 F.3d at 1080 (quoting *Menken*, 503 F.3d at 1060). As important a consideration is that Duff is a large, multi-national company with 70 offices in 20 countries around the world. Not only must Duff have anticipated defending lawsuits in other parts of the country, it currently is engaged in defending similar lawsuits

47 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

within Oregon. Moreover, now that Duff has acquired Tregin Solutions and its employees formally work for Duff, it must have considered the possibility of defending lawsuits in Oregon. Macfie Decl. ¶ 14. Thus, this factor favors finding jurisdiction.

The third factor concerns the extent of any risk that the court's exercise of jurisdiction in Oregon might conflict with Duff's home state, New York. Duff contends that exercising jurisdiction will conflict with the sovereignty of New York, its principal place of business. Duff argues that its engagement letter with Aequitas provided that any claims arising out of its contract would be litigated in New York. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), *overruled on other grounds by Yahoo!,* 433 F.3d at 1207. Plaintiffs's claims do not arise out of Duff's contractual agreement with Aequitas, but instead are separate state law claims, thus, the risk of a conflict with New York is minimal. This factor weighs in favor of jurisdiction.

The fourth factor examines the state's interest in adjudicating its own laws. The Ninth Circuit assumes that a forum state "'maintains a strong interest in providing an effective means of redress for its residents tortuously injured.'" *Id.* (quoting *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir.1996)). Oregon has a substantial interest in ensuring its securities laws are properly adjudicated. Accordingly, this factor favors jurisdiction.

The fifth factor considers efficiency of litigation. This factor focuses on the location of the evidence and witnesses. *Id.* As with the factor considering the burden on the defendant, this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id.*; *accord CollegeSource*, 653 F.3d at 1080. As Plaintiffs correctly highlight, the bulk of the evidence and witnesses surrounding Aequitas's alleged primary securities liability are located in Oregon. Although not weighing as heavily as other factors, this factor tilts in favor of jurisdiction.

48 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

Duff concedes that the sixth factor – Plaintiffs' interest in convenient and effective relief – favors jurisdiction. However, as the parties acknowledge, the Ninth Circuit does not give much weight to this factor. *CollegeSource*, 653 F.3d at 1080. Thus, this factor is neutral.

The seventh factor looks at the existence of an alternative forum. This factor is relevant only "when the [original] forum state is shown to be unreasonable." *Id.* Duff has not established that Oregon is an unreasonable forum.

Weighing these seven considerations favors finding of personal jurisdiction in this District. Duff has failed to present a "compelling case" that the exercise of jurisdiction would be unreasonable. Thus, the Court has specific personal jurisdiction over Duff. Accordingly, the Court should deny Duff's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

### B.    *Bristol-Myers Is Inapplicable*

Duff contends that if the court finds specific jurisdiction, the court should dismiss all claims against it alleged by the non-Oregon Plaintiffs. In the present action, eleven Plaintiffs are California residents and two are Oregon residents. Duff argues that under *Bristol-Myers*, the court can assert specific jurisdiction only over the Oregon Plaintiffs and that "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol-Myers*, 137 S. Ct. at 1782; Duff's Mot. Dismiss SAC at 16. According to Duff, because the non-Oregon residents did not experience their harm within Oregon, the nonresidents' relationship with third-party Aequitas cannot give rise to specific jurisdiction over Duff. *Bristol-Myers*, 137 S. Ct. at 1781 ("a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction").

On the facts alleged here, the court is not convinced that *Bristol-Myers* prevents the court's exercise of specific jurisdiction over Duff. *Bristol-Myers* did not involve a class action; it was a

49 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

mass tort action. *Id.* at 1778. The *Bristol-Myers* court reasoned that because the non-residents were not prescribed, did not purchase, did not injest, and were not injured by Plavix in California, there was no connection between the non-resident defendant and the non-resident plaintiffs to California. As the *Bristol-Myers* court itself acknowledged, "we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. Numerous other courts have determined that *Bristol-Myers* does not extend to class actions in federal court. *See In Re Morning Song Bird Food Litig.*, Lead Case No. 12cv01592JAH-AGS, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) (finding *Bristol-Myers* did not deprive court of jurisdiction over non-resident plaintiffs in class action); *Thomas v. Kellogg Co.*, Case No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (same). *See also Sobol v. Imprimis Pharm.*, Civ. Action No. 16-14339, 2018 WL 2424009, at *2 (E.D. Mich. May 29, 2018) (collecting cases discussing application of *Bristol-Myers* to federal cases and class action cases).

Duff in essence asserts that its relationship with Aequitas plays no role in this action and contends it is "of no moment" that it contracted with Aequitas. The court disagrees. Duff contracted with Aequitas, a company headquartered in Oregon, to provide valuation services for two Oregon entities. Duff further agreed with the Oregon company that the Oregon company could use its name in marketing Oregon products (securities). Moreover, all Plaintiffs, resident and non-resident, purchased securities from that Oregon company and the securities purchased were investments in Oregon entities. Thus, Duff's contacts and on-going relationship that it created with an Oregon company have created a meaningful relationship with Oregon, and its forum-related activities give rise to the litigation at issue. Thus, the court concludes that on the facts alleged, *Bristol-Myers* does

50 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

not deprive the court of specific personal jurisdiction over Duff with respect to the non-Oregon Plaintiffs. The non-Oregon Plaintiffs have sufficiently linked Duff's forum-related activities to their injuries necessary to satisfy specific personal jurisdiction. *Cortina v. Bristol-Myers Squibb Co.*, Case No. 17-cv-00247-JST, 2017 WL 2793808, at *4 (N.D. Cal. June 27, 2017) (finding defendant's contacts with California were part of the causal chain leading to New York plaintiff's injury sufficient to establish specific personal jurisdiction in California). Accordingly, Duff's motion should be denied.

C.    *ORS § 59.115(3) and Dormant Commerce Clause*

Duff argues that applying ORS § 59.115(3) extra-territorially to its conduct violates the dormant Commerce Clause. Duff contends that the dormant Commerce Clause prohibits imposing Oregon law on persons engaged in conduct wholly occurring in other states. Thus, Duff maintains that all claims by non-Oregon residents must be dismissed. Duff's Mot. Dismiss SAC at 17-20.

Duff appears to contend that ORS § 59.115(3) violates the extra-territoriality principle first articulated by the plurality in *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (stating that this principle "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State."). In its Motion and Reply, Duff suggests that ORS § 59.115(3) directly regulates interstate commerce and *per se* violates the Commerce Clause, citing *NCAA v. Miller*, 10 F.3d 633, 638-39 (9th Cir. 1993), and *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-24 (9th Cir. 2015). Duff's Mot. Dismiss SAC at 17-18; Duff's Reply at 16-17.

In the Ninth Circuit, whether a state's statute discriminates or unduly burdens interstate commerce is analyzed using the Supreme Court's two-tiered approach. *Pharm. Research Mfrs. v.*

51 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

*County of Alameda*, 768 F.3d 1037, 1041 (9th Cir. 2014) (citing *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)).  First, the court examines whether the statute discriminates against or directly regulates interstate commerce.  *Id.*  If the statute does either, "'it violates the Commerce Clause *per se*, and we must strike it down without further inquiry.'"  *Id.* (quoting *NCAA v. Miller*, 10 F.3d at 638); *accord Brown-Forman*, 476 U.S. at 579.  Second, if a statute has indirect effects on interstate commerce but regulates evenhandedly, the court examines whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.  *Brown-Forman*, 476 U.S. at 579; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (employing balancing test to assess state's interest and burden on commerce).

"A statute violates the dormant Commerce Clause *per se* when it directly regulates interstate commerce."  *Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 949 (9th Cir. 2013).  Direct regulation occurs when a state law directly affects transactions that take place across state lines or entirely outside of the state's borders.  *S.D. Myers, Inc. v. City and Cnty. San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (internal quotation marks omitted).  Broadly speaking, states may not regulate transactions that occur "wholly outside" the boundaries of the state.  *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 336 (1989).  "The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State."  *Id.*  However, a statute is not invalid because it "affects in some way the flow of commerce between the States."  *Assoc. des Eleveurs*, 729 F.3d at 948-49 (internal quotes omitted).

Duff argues that ORS § 59.115(3) is *per se* invalid because it directly regulates conduct occurring outside of Oregon.  Duff argues that Plaintiffs have not alleged that any sale of Aequitas

securities took place within the borders of Oregon, and it argues that all of its conduct also occurred outside of Oregon.

Plaintiffs respond that the State of Oregon has legitimate interests in regulating the sale of securities. According to Plaintiffs, ORS § 59.115(3) does not violate the dormant Commerce Clause because it applies only to non-sellers when they participate or materially aid in the sale of a security originating in Oregon. Plaintiffs contend that Duff engaged in such conduct, and therefore Duff's conduct did not occur wholly outside of Oregon.

The court should reject Duff's motion premised on the dormant Commerce Clause. Under ORS § 59.055, it is unlawful to "offer or sell any security" and under ORS § 59.115(1), a person is liable to a purchaser if the person "sells or successfully solicits the sale of a security." Under ORS § 59.115(3), "every person who participates or materially aids in the sale" is jointly and severally liable with the seller. In the SAC, Plaintiffs each allege that they purchased their security or investment "from Aequitas." SAC ¶¶ 9-15, 196-202. It is undisputed that Aequitas Investment Management, LLC, Aquitas Commercial Finance, LLC, and Aequitas Holdings, LLC, were Oregon companies, and that Aequitas was headquartered in Oregon. *See, e.g.,* Masuda Decl. Ex. 3, at 3. In its Motion, Duff insists that the California residents purchased their Aequitas securities outside of Oregon and that all of its activities occurred outside of Oregon. Duff Reply at 20. Duff asks the court to presume the California residents purchased their securities in California because they are domiciled there. Duff's Mot. Dismiss SAC at 22 ("all Plaintiffs except Nowak are domiciled in California, and there is no basis in the [SAC] to infer that their injuries resulting from Aequitas's securities fraud occurred elsewhere").

53 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

The facts as alleged here belie this contention.  On a motion to dismiss, the court must presume the veracity of all pleaded allegations.  Thus, as alleged, Plaintiffs purchased their securities "from Aequitas," an Oregon company.  *See Houston*, 2008 WL 818745, at *5 (rejecting dormant Commerce Clause challenge to ORS § 59.115(3) because evidence established that the plaintiff received the offering materials at his home in Oregon and purchased there); *see also In re Nat'l Century Fin. Enters. Inc.*, 755 F. Supp. 2d 857, 880-83 (S.D. Ohio 2010) (discussing dormant Commerce Clause challenge to non-seller liability and differentiating between offer, sale, purchase, and issuance of security).  The only allegations before the court are that all the Plaintiffs purchased their securities from an Oregon company; thus, Duff has failed to establish that ORS § 59.115(3) is directly regulating conduct that occurred "wholly outside" of Oregon.  Accordingly, Duff's motion should be denied on these grounds.[7]

   D.    *Choice of Law*

Duff contends that the court should apply California law to the secondary liability claims asserted by the California Plaintiffs.  Duff Mot. Dismiss SAC at 21.  Duff argues that the court must infer that the named California Plaintiffs purchased their Aequitas securities in California, and that under the Oregon choice of law principles, California law applies.

As discussed above, the only allegations before this court are that all of the Plaintiffs purchased their securities from an Oregon company – Aequitas.  SAC ¶¶ 9-15, 196-202.  Simply because some Plaintiffs are California residents does not mean that the court must presume the offer, sale, issue, or purchase of their securities occurred in California.  Rather, on a motion to dismiss, the

---

[7] The court likewise rejects Duff's extra-territoriality Due Process arguments premised on the same basis.

54 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS

court must presume the truth of all factual allegations and construe them in the light most favorable to Plaintiffs as the non-moving party. *Northstar*, 779 F.3d at 1042. Duff has not sufficiently demonstrated that a conflict exists. In short, Duff's motion on this basis should be denied.

       E.    *ACOF and ACF Are Allegations Sufficiently Pleaded*

Duff argues that the court should dismiss all non-ACOF allegations, or in the alternative, non-ACF allegations, against it for material aid and participation because its valuation services related only to ACOF. According to Duff, Plaintiffs have failed to plead facts connecting it to ACF, ACF Notes, or any other ACF entities. Plaintiffs respond that they have plausibly pleaded numerous facts connecting Duff's valuations to numerous Aequitas entities in the SAC and that Duff's motion should be denied.

The court concludes Plaintiffs plausibly allege Duff's material aid and participation in the sale of ACF and ACOF securities. Plaintiffs allege that Duff's valuations were included in ACF's consolidated financial statements in order to support ACF's value and present ACF as a low-risk investment. SAC ¶ 195(d). Plaintiffs allege that ACOF's assets were included in ACF's consolidated financial statements, and that Duff's valuations were critical because the entities valued by Duff were ACOF's only assets. SAC ¶ 195(c)-(d). Plaintiffs assert that Duff's values of the ACOF assets were included in ACF's June 2014 marketing materials and financial summaries given to ACF and ACOF investors in order to encourage investors to invest in ACF and ACOF. SAC ¶ 195. These allegations sufficiently allege that Duff provided professional services to ACF and ACOF that enabled unlawful securities transactions reflecting Duff's particular skills and judgment. Moreover, Plaintiffs have plausibly alleged the Duff's actions are causally connected to the sale of ACF and ACOF securities after Duff's name appeared in the February 2014 ACOF PPM. Plaintiffs

have plausibly alleged that Duff's valuations gave ACF and ACOF the illusion of solvency and prosperity in order to continue its operations for the sale of ACF and ACOF securities occurring after February 2014. SAC ¶ 195(d).

However, Plaintiffs have not plausibly pleaded how Duff materially aided or participated in the unlawful sale of securities other than ACF and ACOF. Plaintiffs contend that ACF owned all or part of AIPF, AIOF, AIOF-II, ACOF, AETC, AEIF and AMLF, and that all of the entities looked to or relied upon ACF for financial support. *See* SAC ¶¶ 25, 33, 38, 43, 53, 58, 63. Plaintiffs assert that Aequitas used receivables (including CPTI and EDPlus) as assets as collateral for loans, which it then used to fund all Aequitas operations. SAC ¶ 135. Yet, Plaintiff's allegations do not specifically provide how Duff's valuations materially aided the sale of those non-ACF and non-ACOF securities to plausibly set out a claim under ORS § 59.115(3). Thus, the court should grant Duff's motion to dismiss as to sales of securities other than ACF and ACOF, with leave to re-plead.

In summary, Duff's Motion to Dismiss the SAC (ECF No. 269) should be GRANTED IN PART as to sales of securities occurring prior to February 2014; specifically SAC ¶¶ 196(a), 197 (first sentence only), 198(a), 199(b), 200(a), and 201(a)&(b). Duff's Motion also should be GRANTED IN PART as to sales of securities other than ACOF and ACF; specifically SAC ¶¶ 196(c), 198(d), 199(c) and 202(a)&(b). Plaintiffs should be given leave to re-plead their non-ACOF and non-ACF claims. Duff's Motion should be DENIED on all other grounds.

VII.  Ameritrade's Motion to Dismiss (ECF No. 275), Plaintiffs' Response (ECF No. 290), Ameritrade's Reply (ECF No. 301), Ameritrade's Supplemental Authority (ECF No. 286)

Defendant Ameritrade moves to dismiss the SAC in its entirety with prejudice pursuant to Rules 8, 12(b)(2) and 12(b)(6). Ameritrade's Mot. Dismiss SAC at 1-2, ECF No. 275. Ameritrade

makes three primary arguments: (1) the court lacks personal jurisdiction under a new standard announced in *Bristol-Myers*; (2) extraterritorial application of ORS § 59.115(3) to it violates the dormant Commerce Clause; and (3) applying choice-of-law principals requires the application of California law to the claims asserted by non-Oregon Plaintiffs. *Id.* at 7-8.  In its Notice of Supplemental Authority, Ameritrade reiterates that Rule 12(g) does not preclude it from asserting the defense of lack of personal jurisdiction because that defense was previously unavailable and *Bristol-Myers* represented an intervening change in the law.  Ameritrade Supp. Auth. at 1-3, ECF No. 286.

Plaintiffs respond that Ameritrade has waived its argument to contest personal jurisdiction because it failed to contest personal jurisdiction in its initial motion to dismiss.  Plaintiffs argue that Ameritrade's remaining arguments mirror those asserted by Duff and should be denied on the same basis.  Pls.' Opp. at 5, ECF No. 290.

Ameritrade's contention that the court lacks personal jurisdiction over it is summarily rejected.  "A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under [Rule] 12 must be raised at the first available opportunity or, if they are not, they are forever waived." *American Ass'n Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000) (holding defense of lack of personal jurisdiction waived because it was not asserted in party's prior motion to dismiss); FED. R. CIV. P. 12(g), (h).  Rule 12(h) provides that a party waives the defense of lack of personal jurisdiction by failing to assert it in a motion or responsive pleading.  Rule 12(g) provides that if a party files a motion under Rule 12, the party may not make "another motion under this rule raising a defense or objection that was available to the party and omitted from its earlier motion."  Courts interpret these provisions strictly.  "Thus, under Rule 12, if a party does not raise

the defense of lack of personal jurisdiction in its first response before the court, the party loses its chance to raise the defense later." *MTEC, LLC v. Nash*, Case No. CV-08-563-AC, 2008 WL 4723483, at *2-3 (D. Or. Oct. 20, 2008); *American Ass'n*, 227 F.3d at 1106.

Here, Ameritrade filed a motion to dismiss on July 22, 2016. Ameritrade's Mot. Dismiss FAC, ECF No. 113. It did not assert the lack of personal jurisdiction as a defense in that motion. Because Ameritrade failed to raise a defense of lack of personal jurisdiction in its first defensive move, it has waived the opportunity to do so now. *American Ass'n*, 227 F.3d at 1107.

Ameritrade insists that it has not waived the defense because the Supreme Court established a new standard for personal jurisdiction in *Bristol-Myers*. Ameritrade contends that its personal jurisdiction defense was not available at the time of its earlier motion, and that *Bristol-Myers* requires dismissal of all claims against it. Alternatively, Ameritrade contends that *Bristol-Myers* is an intervening change in the law that requires an exception to waiver. Ameritrade's arguments are without merit.

A defense is considered "available" for Rule 12 purposes unless its legal basis did not exist at the time of the answer or earlier pre-answer motion. *Tinn v. EMM Labs, Inc.,* Case No. 07-cv-00963-AC, 2008 WL 3861889, at *3 (D. Or. Aug. 19, 2008) (noting exception to Rule 12(h) applies only to defenses available at the time of defendants first defensive move); *accord Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) (rejecting argument that personal jurisdiction defense was unavailable until decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). Even assuming *arguendo* that *Bristol-Myers* applies to federal cases and class actions, Ameritrade has not demonstrated that its personal jurisdiction defense was unavailable prior to that decision on June 19, 2017.

As other courts have recognized, *Bristol-Myers* did not alter the landscape of personal jurisdiction, or represent an intervening change in the law, such that a personal jurisdiction defense was unavailable under Rule 12, consequently excusing the waiver of that defense. Instead, in deciding *Bristol-Myers*, the Supreme Court conducted a "straightforward application in this case of settled principles of personal jurisdiction[.]" *Bristol-Myers*, 137 S. Ct. at 1783. *See Sloan, et al., v. General Motors LLC,* 287 F. Supp. 3d 840, 854 (N.D. Cal. 2018) (holding *Bristol-Myers* did not excuse defendant's failure to raise lack of personal jurisdiction defense in initial motion to dismiss); *Sobol*, 2018 WL 2424009, at *2-3 (finding *Bristol-Meyers* was not intervening change in law to excuse failure to raise lack of personal jurisdiction defense in earlier motion); *In Re Morning Song,* 2018 WL 1382746, at *2 (rejecting argument that *Bristol-Myers* was an intervening change in the law); *Alvarez v. NBTY, Inc.,* Case No. 17-cv-00567-BAS-BGS, 2017 WL 6059159, at *3-6 (S.D. Cal. Dec. 6, 2017) (rejecting argument that defense of lack of personal jurisdiction asserted for the first time in a reply to a motion to dismiss was excused under *Bristol-Myers*); *Thomas,* 2017 WL 5256634, at *1 (rejecting argument that *Bristol-Myers* was "transformative" and warranted revisiting specific personal jurisdiction in ongoing litigation under Rule 12); *R. Prasad Indus. v. Flat Irons Evntl. Solutions Corp.*, Case No. CV-12-08261-PCT-JAT, 2017 WL 4409463, at *2 (D. Ariz. Oct. 4, 2017) (rejecting argument that *Bristol-Myers* provided basis for challenging personal jurisdiction well into litigation).

Moreover, as indicated in *Alvarez,* a lack of personal jurisdiction has been available to Ameritrade "because it is well settled law that a defendant can challenge personal jurisdiction relating to each named plaintiff in a class action." *Alvarez*, 2017 WL 6059159, at *4 (citing *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. Sept. 18, 2001). Ameritrade's

arguments to the contrary are rejected.  To the extent Ameritrade's Supplemental Authority (ECF No. 286) could be construed as a motion, it should be denied.

Ameritrade's remaining arguments concerning the dormant Commerce Clause, Due Process, and application of choice of law principles to non-Oregon-resident Plaintiffs echo those asserted by Duff.  For the reasons discussed above, the court likewise rejects those arguments as asserted by Ameritrade.  In short, Ameritrade's Motion to Dismiss the SAC (ECF No. 275), should be DENIED.

*Conclusion*

Based on the foregoing the court resolves these Motions as follows:

1.    Deloitte's Request for Judicial Notice (ECF No. 280) is GRANTED;

2.    Defendants' Joint Motion to Dismiss the SAC (ECF No. 278) should be DENIED;

3.    Deloitte's Motion to Dismiss the SAC (ECF No. 277) should be GRANTED IN PART as to claims against Deloitte for sales occurring before November 30, 2013, specifically SAC ¶¶ 196(a), 197 (first sentence only), 198(a), 199(b), and 200(a), and 201(a)&(b);  Deloitte's Motion should be DENIED on all other grounds;

4.    Sidley's Motion to Dismiss the SAC (ECF No. 272) should be GRANTED IN PART as to claims against Sidley for sales occurring before April 5, 2013, specifically SAC ¶¶ 197 (first sentence only), 198(a), 199(b), 200(a), and 201(a); Sidley's Motion should be DENIED on all other grounds;

5.    Duff's Motion to Dismiss the SAC (ECF No. 269) should be GRANTED IN PART as to claims against Duff for sales occurring prior to February 2014, specifically SAC ¶¶ 196(a), 197(first sentence only), 198(a), 199(b), 200(a), and 201(a)&(b);  Duff's Motion should be GRANTED IN PART as to claims against Duff for the sale of securities other than ACOF and ACF, specifically SAC ¶¶ 196(c), 198(d), 199(c), and 202(a)&(b); Plaintiffs should be given leave to re-plead their non-ACOF and non-ACF claims; Duff's Motion should be DENIED on all other grounds; and

6.    Ameritrade's Motion to Dismiss the SAC (ECF No. 275) should be DENIED.

The court further recommends that no further motions to dismiss be entertained. To the extent that Defendants' Motions herein should be granted with leave for Plaintiffs to re-plead, the court observes that what is required of Plaintiffs to comport with this Findings and Recommendation is minimal and does not prevent Defendants from filing Answers. Accordingly, the court recommends that any remaining issues concerning the sufficiency of the claims presented in the SAC be addressed on class certification (if appropriate) or summary judgment (if appropriate).

Scheduling Order

The Findings and Recommendation will be referred to the Honorable Michael W. Mosman for review. Objections, if any, are due **August 20, 2018**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this __1st__ day of August, 2018.


      /s/ John V. Acosta_____
         JOHN V. ACOSTA
     United States Magistrate Judge

61 - FINDINGS AND RECOMMENDATION ON DEFS.' MOTIONS TO DISMISS