**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley**, OSB #751380
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero**, OSB #014397
E-Mail: ptrinchero@gsblaw.com
**Eryn Karpinski Hoerster**, OSB #106126
E-Mail: ehoerster@gsblaw.com
**Daniel L. Keppler**, OSB #923537
E-Mail: dkeppler@gsblaw.com
Garvey Schubert Barer, P.C.
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939

**Peter A. Wald (admitted *pro hac vice*)**
E-Mail: peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
E-Mail: gavin.masuda@lw.com
**Nicole C. Valco (admitted *pro hac vice*)**
E-Mail: nicole.valco@lw.com
**Marcy C. Priedeman (admitted *pro hac vice*)**
E-Mail: marcy.priedeman@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

**Attorneys for Defendant Deloitte & Touche LLP**
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; INTEGRITY BANK & TRUST; and DUFF & PHELPS, LLC<br><br>Defendants. | Case No. 3:16-cv-00580-AC<br><br>**DEFENDANT DELOITTE & TOUCHE LLP'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

## ANSWER

In answer to Plaintiffs' Second Amended Class Action Complaint ("Complaint") defendant Deloitte & Touche LLP ("Deloitte") admits, denies, and alleges:

## SPECIFIC RESPONSES

1. Paragraph 1 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 1 are deemed factual, and to the extent they apply to Deloitte, Deloitte denies the allegations in the second sentence of Paragraph 1. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and, on that basis, denies such allegations.

2. Deloitte admits that the United States District Court for the District of Oregon imposed a "Stay of Litigation," in its April 14, 2016 Order Appointing Receiver, Dkt. No. 156, *SEC v. Aequitas Mgmt. LLC*, *et al.*, No. 3:16-cv-00438-PK (D. Or. filed Mar. 10, 2016). Paragraph 2 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 2 are deemed factual, Deloitte denies that it "participated and aided in the unlawful sales of Aequitas securities," and denies the last sentence of Paragraph 2 to the extent it applies to Deloitte. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 and, on that basis, denies such allegations.

3. Paragraph 3 contains characterizations, conclusions of law, and argument, purports to quote from unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the allegations in Paragraph 3 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

4. Paragraph 4 contains characterizations, conclusions of law, and argument, purports to quote from unidentified sources or documents, and makes no factual allegations as to

Deloitte, such that no answer is required. However, to the extent the allegations in Paragraph 4 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

5. Deloitte admits that the SEC filed a complaint against Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., Aequitas Investment Management, LLC, Robert J. Jesenik, Brian A. Oliver, and N. Scott Gillis on March 10, 2016 as Case No. 3:16-cv-00438-PK in the United States District Court for the District of Oregon. Deloitte admits that certain Aequitas entities are in receivership. Deloitte admits that, in late 2015, it received an October 19, 2015 memorandum purportedly written by Jeffrey Mazer, which document speaks for itself. In all other respects, Paragraph 5 contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 5 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

6. Paragraph 6 contains conclusions of law, to which no answer is required. However, to the extent the allegations in Paragraph 6 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, on that basis, denies them.

7. Paragraph 7 contains conclusions of law, to which no answer is required. However, to the extent the allegations in Paragraph 7 are deemed factual, Deloitte admits that venue is proper in this Court.

8. Paragraph 8 contains conclusions of law, to which no answer is required. However, to the extent the allegations in Paragraph 8 are deemed factual, Deloitte admits that this Court has personal jurisdiction over it. Deloitte otherwise lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8 and, on that basis, denies them.

9. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, on that basis, denies such allegations.

10. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and, on that basis, denies such allegations.

11. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and, on that basis, denies such allegations.

12. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and, on that basis, denies such allegations.

13. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and, on that basis, denies such allegations.

14. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and, on that basis, denies such allegations.

15. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and, on that basis, denies such allegations.

16. Deloitte admits that it is a Delaware limited liability partnership registered to do business in Oregon. Deloitte admits that it performed audits of the financial statements of certain Aequitas entities for the fiscal years ended December 31, 2013 and December 31, 2014, but denies that it "prepared" such financial statements. Deloitte admits that Aequitas Capital Management, Inc. engaged Deloitte's auditing services on or about October 10, 2013, and that EisnerAmper was the company's predecessor auditor. Deloitte admits that it was identified as auditor in certain Aequitas entities' offering documents, which documents speak for themselves. Deloitte admits that, from time to time, certain offering documents for securities offered by certain Aequitas entities included summary financial information and/or referred the reader to the entities' financial statements for additional detail. Deloitte admits that it was identified on

Aequitas Investment Management, LLC's ("AIM") SEC Form ADV filed on March 24, 2014 as the auditor of certain Aequitas entities. Paragraph 16 otherwise contains characterizations and conclusions of law, to which no answer is required. However, to the extent the remaining allegations in Paragraph 16 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 and, on that basis, denies such allegations.

17. Deloitte admits that EisnerAmper performed auditing and accounting services for certain Aequitas entities. Deloitte admits that certain Aequitas entities' offering documents identified EisnerAmper as auditor, which documents speak for themselves. Paragraph 17 otherwise contains characterizations and conclusions of law, to which no answer is required. However, to the extent the allegations in Paragraph 17 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 and, on that basis, denies such allegations.

18. Deloitte admits that Sidley provided legal services to certain Aequitas entities, and was identified as legal counsel in certain Aequitas entities' offering documents. Paragraph 18 otherwise contains argument and characterizations, to which no answer is required. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and, on that basis, denies such allegations.

19. Deloitte admits that Tonkon is a law firm with offices in Portland, Oregon. Deloitte admits that Tonkon provided legal services to certain Aequitas entities, and was identified as legal counsel in certain Aequitas entities' offering documents. Paragraph 19 otherwise contains argument and characterizations, to which no answer is required. However, to the extent that the remaining allegations in Paragraph 19 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 and, on that basis, denies such allegations.

20. Paragraph 20 contains characterizations and conclusions of law, purports to quote from unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, on that basis, denies such allegations.

21. Paragraph 21 contains characterizations and conclusions of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, on that basis, denies such allegations.

22. Deloitte admits that Duff & Phelps performed valuation analyses for certain Aequitas entities. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and, on that basis, denies such allegations.

23. Paragraph 23 contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the allegations in Paragraph 23 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

24. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and, on that basis, denies them.

25. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and, on that basis, denies them.

26. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and, on that basis, denies them.

27. Deloitte admits that Aequitas Investment Management, LLC ("AIM") was an SEC-registered investment advisor and former investment advisor to certain Aequitas entities. Deloitte admits that ACF's consolidated financial statements for the fiscal year ended December

31, 2013 and for the fiscal years ended December 31, 2014 and 2013 reported that ACF paid ACM management fees. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 and, on that basis, denies them.

28. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and, on that basis, denies them.

29. Paragraph 29 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 29 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

30. Deloitte admits that ACF issued promissory notes to investors. Paragraph 30 otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 30 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

31. Deloitte admits that certain Aequitas entities sold securities, including AIPF, AIOF, AIOF-II, AMLF, AEIF, APCF, and ACOF. Paragraph 31 otherwise contains characterizations and conclusions of law, purports to quote from or otherwise characterize unidentified sources or documents, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 31 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

32. Deloitte admits that AIOF's financial statements for the years ended December 31, 2013 and December 31, 2014 reported that AIOF's sole member was ACF. Deloitte admits that AIOF-II's financial statements for the period from November 1, 2014 (Commencement of Operations) to December 31, 2014 reported that AIOF-II's sole member was ACF. Deloitte

admits that AMLF's financial statements for the year ended December 31, 2013 reported that AMLF was a wholly-owned subsidiary of ACF. Deloitte admits that AIPF's financial statements for the years ended December 31, 2013 and December 31, 2014 reported that "ACF contributed $1,000 to [AIPF] in exchange for all of [AIPF]'s voting interests." Deloitte admits that ACF's consolidated financial statements for the fiscal year ended December 31, 2013 reported that they include ACF, Aequitas Income Protection Fund, LLC ("AIPF"), Aequitas Income Opportunity Fund, LLC ("AIOF"), Aequitas Income Opportunity Fund II, LLC ("AIOF-II"), Aequitas Capital Opportunities Fund, LP ("ACOF"), and Motolease Financial, LLC ("AMLF"), among other entities. Deloitte admits that ACF's consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 reported that they include ACF, AIPF, AIOF, AIOF-II, Aequitas Enhanced Income Fund, LLC ("AEIF"), ACOF, and ML Financial Holdings, LLC and its subsidiary AMLF, among other entities. Deloitte admits that AIOF's balance sheet for the fiscal year ended December 31, 2014 reported "Notes receivable due from affiliates, at cost" of $33,215,831, but denies that that was the "only asset[]" reported on AIOF's balance sheet. Deloitte admits that AIPF's balance sheet for the fiscal year ended December 31, 2014 reported "Note receivable from Special Member, at cost" and "Receivables from Affiliate, at fair value" of $34,856,464 and $3,020,706, respectively, but denies that these were the "only assets" reported on AIPF's balance sheet. Paragraph 32 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 32 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

33. Deloitte admits that ACF Notes were offered for sale during the fiscal years ended December 31, 2013 and 2014. Deloitte admits that the ACF Notes and other Aequitas entities' securities were different types of investments. Paragraph 33, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, to which no answer is

required. However, to the extent the remaining allegations in Paragraph 33, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

34. Deloitte admits that the ACF Notes were not registered as securities during the fiscal years ended December 31, 2013 and 2014. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 and, on that basis, denies such allegations.

35. Paragraph 35 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 35 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

36. Paragraph 36, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 36, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

37. Deloitte admits that ACF did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 37, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 37, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

38. Deloitte admits that AIOF Notes were offered for sale during the fiscal years ended December 31, 2013 and 2014. Deloitte admits that the AIOF Notes and other Aequitas entities' securities were different types of investments. Paragraph 38, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, to which no

answer is required. However, to the extent the remaining allegations in Paragraph 38, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

39. Deloitte admits that the AIOF Notes were not registered as securities during the fiscal years ended December 31, 2013 and 2014. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 and, on that basis, denies such allegations.

40. Paragraph 40 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 40 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

41. Paragraph 41, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 41, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

42. Deloitte admits that AIOF did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 42, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 42, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

43. Deloitte admits that AIPF Interests were offered for sale during the fiscal years ended December 31, 2013 and 2014. Deloitte admits that the AIPF Interests and other Aequitas entities' securities were different types of investments. Paragraph 43, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, to which no

answer is required. However, to the extent the remaining allegations in Paragraph 43, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

44. Deloitte admits that the AIPF Interests were not registered as securities during the fiscal years ended December 31, 2013 and 2014. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and, on that basis, denies such allegations.

45. Paragraph 45 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 45 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

46. Paragraph 46, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 46, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

47. Deloitte admits that AIPF did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 47, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 47, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

48. Deloitte admits that ACOF Interests were offered for sale during the fiscal year ended December 31, 2014. Deloitte admits that the ACOF Interests and other Aequitas entities' securities were different types of investments. Paragraph 48, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, to which no answer is

required. However, to the extent the remaining allegations in Paragraph 48, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

49. Deloitte admits that the ACOF Interests were not registered as securities during the fiscal year ended December 31, 2014. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and, on that basis, denies such allegations.

50. Paragraph 50 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 50 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

51. Paragraph 51, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 51, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

52. Deloitte admits that ACOF did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 52, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 52, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

53. Deloitte admits that AIOF-II Notes were offered for sale during the fiscal year ended December 31, 2014. Deloitte admits that the AIOF-II Notes and other Aequitas entities' securities were different types of investments. Paragraph 53, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, to which no answer is required.

However, to the extent the allegations in Paragraph 53, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

54. Deloitte admits that the AIOF-II Notes were not registered as securities during the fiscal year ended December 31, 2014. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54 and, on that basis, denies such allegations.

55. Paragraph 55 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 55 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

56. Paragraph 56, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 56, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

57. Deloitte admits that AIOF-II did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 57, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 57, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

58. Paragraph 58, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 58, including subparts (a) through (e), are deemed factual, Deloitte lacks

knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

59. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and, on that basis, denies such allegations.

60. Paragraph 60 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 60 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

61. Paragraph 61, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 61, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

62. Deloitte admits that AEIF did not publicly file with the SEC any report, registration statement, or form (other than Form D). Paragraph 62, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 62, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

63. Paragraph 63, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 63, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

64. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 and, on that basis, denies such allegations.

65. Paragraph 65 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 65 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

66. Paragraph 66, including subparts (a) through (c), contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 66, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

67. Deloitte admits that Motolease Financial, LLC did not publicly file with the SEC any report, registration statement, or form. Paragraph 67, including subparts (a) through (c), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 67, including subparts (a) through (c), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

68. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 and, on that basis, denies such allegations.

69. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and, on that basis, denies such allegations.

70. Paragraph 70 contains characterizations and argument, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and, on that basis, denies such allegations.

71. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 and, on that basis, denies such allegations.

72. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and, on that basis, denies such allegations.

73. Paragraph 73 contains argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and, on that basis, denies such allegations.

74. Paragraph 74 contains characterizations, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 74 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and, on that basis, denies such allegations.

75. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and, on that basis, denies such allegations.

76. Deloitte admits that, in late 2015, it received an October 19, 2015 memorandum purportedly written by Jeffrey Mazer, which document speaks for itself, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 76 and, on that basis, denies such allegations.

77. Deloitte admits that Deloitte documents state Olaf Janke represented to Deloitte that "ACF ha[d] raised . . . over $182.1M in private capital" as of the end of 2012, and that "[r]enewals ha[d] historically been 60-70%, making much of the capital a quasi-permanent form of capital." Deloitte admits Deloitte documents stated that "[g]iven successful refinancing, new investor money, and the product mix of the combined companies, the combined Aequitas companies appear[ed] to be able to operate as a going concern for the foreseeable future." Deloitte denies the allegations in the first sentence of Paragraph 77 to the extent they apply to Deloitte. Paragraph 77 otherwise contains characterizations and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. However, to the extent the remaining allegations in Paragraph 77 are deemed factual, Deloitte

lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

78. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and, on that basis, denies such allegations.

79. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 and, on that basis, denies such allegations.

80. Paragraph 80 contains characterizations, conclusions of law, and argument, and purports to quote from unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 80 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 and, on that basis, denies such allegations.

81. Deloitte admits that ACF reported "Notes receivable, affiliates," on its consolidated balance sheet for the fiscal years ended December 31, 2013 and 2014. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81 and, on that basis, denies such allegations.

82. Paragraph 82 contains characterizations, and purports to quote from unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 82 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 and, on that basis, denies such allegations.

83. Paragraph 83 contains characterizations and argument, to which no answer is required. However, to the extent the allegations in Paragraph 83 are deemed factual, Deloitte denies each and every such allegation.

84. Deloitte admits that the notes to ACF's consolidated financial statements for the year ended December 31, 2013 and for the years ended December 31, 2014 and 2013 reported a revolving line of credit issued to Aequitas Holdings, LLC. Deloitte otherwise lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84 and, on that basis, denies such allegations.

85. Paragraph 85 contains characterizations, conclusions of law, and argument, to which no answer is required. Paragraph 85 also purports to characterize Generally Accepted Accounting Principles, including ASC Topic 310 ("Receivables") and subtopic 310-10-35 governing the impairment of loans, which principles speak for themselves, such that no answer is required. However, to the extent the allegations in Paragraph 85 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 and, on that basis, denies such allegations.

86. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 and, on that basis, denies such allegations.

87. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 and, on that basis, denies such allegations.

88. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and, on that basis, denies such allegations.

89. Deloitte admits that the notes to ACF's consolidated financial statements for the fiscal year ended December 31, 2013 reported a revolving line of credit to Aequitas Holdings, LLC with a balance of $78,811,023 as of December 31, 2013.

90. Deloitte admits that the notes to ACF's consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 reported a revolving line of credit to Aequitas Holdings, LLC with a balance of $120,897,435 as of December 31, 2014. Deloitte admits that ACF's consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 reported "Notes receivable, affiliates" of $184,799,431 as of December 31, 2014. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 90 and, on that basis, denies such allegations.

91. Deloitte denies the allegations in the last sentence of Paragraph 91. Paragraph 91 otherwise contains characterizations and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 91 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

92. Deloitte admits that ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported member's equity of $1,862,524 as of December 31, 2014. Deloitte denies that the value of the note receivable between ACF and Holdings stated in ACF's audited consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 was materially overstated. Paragraph 92 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 92 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

93. Deloitte admits that Corinthian Colleges, Inc. and ASFG, LLC entered into a "Tuition Loan Program Agreement" dated June 29, 2011, which document speaks for itself, such that no answer is required. Paragraph 93 otherwise contains characterizations and conclusions of law, to which no answer is required. However, to the extent the remaining allegations in Paragraph 93 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

94. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and, on that basis, denies such allegations.

95. Deloitte admits that in June 2013, Corinthian Colleges, Inc. publicly disclosed that it had received an SEC subpoena seeking, among other things, documents and communications related to defaults on federal loans and on alternative loans, as well as those related to other corporate, operational, financial, and accounting matters. Deloitte further admits that the notes to ACF's consolidated audited financial statements for the years ended December

31, 2014 and 2013 reported that "[s]ince June 10, 2014 the for-profit post-secondary education company is in default with its contract with the Company concerning the payment of past due accounts, fees, and servicing expenses." Paragraph 95 otherwise contains characterization and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 95 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

96. Deloitte admits that a copy of ACF's consolidated financial statements for the fiscal years ended December 31, 2012 and 2011 in Deloitte's possession reported "Member's equity" of $1,341,209 as of December 31, 2012. Deloitte admits that the notes to those consolidated financial statements reported "Finance receivables – student loans" valued at $120,504,083 as of December 31, 2012. Deloitte admits that those consolidated financial statements include an Independent Auditors' Report dated April 30, 2013 and addressed to the Sole Member of ACF, signed by EisnerAmper LLP. Deloitte lacks knowledge or information sufficient to form a belief as to other versions of ACF's consolidated financial statements for these periods, if any exist. Paragraph 96 otherwise purports to characterize ACF's 2012 financial statements and an April 30, 2013 EisnerAmper audit opinion, which documents speak for themselves, such that no answer is required. However, to the extent the remaining allegations in Paragraph 96 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

97. Deloitte admits that the notes to ACF's consolidated financial statements for the fiscal year ended December 31, 2013 contain the language quoted herein. Paragraph 97 otherwise contains argument and purports to characterize ACF's financial statements, which documents speak for themselves, such that no answer is required. However, to the extent the remaining allegations in Paragraph 97 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

98. Paragraph 98 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 98 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and, on that basis, denies such allegations.

99. Deloitte admits that ACF's audited consolidated balance sheet for the years ended December 31, 2014 and 2013 reported total assets of $552,775,414 as of December 31, 2014. Deloitte admits that the notes to ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013 reported "Finance receivable, at fair value," of which $74,830,559 were "Student loans – with recourse" as of December 31, 2014. Deloitte admits that the notes to ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013 reported "Finance receivables, at amortized cost," of which $31,840,907 were "Student loans – with recourse" as of December 31, 2014. Deloitte denies that the values of ACF's student loan receivables were materially misstated in ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013. Paragraph 99 otherwise contains characterizations and conclusions of law, to which no answer is required. However, to the extent the remaining allegations in Paragraph 99 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

100. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported that "the education company associated with [ACF]'s student loan portfolio has stopped remitting payments for past due accounts. The accounts for which the education company has not remitted payment to [ACF] are included in finance receivables, at amortized cost, on the consolidated balance sheet as of December 31, 2014 at an amount of $31,840,907. . . . No allowance has been recorded as we estimate cash flows will be sufficient to recover our basis." Deloitte admits that Corinthian Colleges, Inc. publicly reported that, on August 20, 2014, it "sold to an unrelated third party, on a non-recourse

basis, after conducting a bid process, a portfolio of student loans for approximately $19 million." Paragraph 100 otherwise contains characterizations and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 100 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

101. Deloitte admits that ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013, which financial statements speak for themselves, reported "Finance receivable – student loans" with a fair value of $74,830,559 as of December 31, 2014 using a "Discounted cash flow" valuation technique, and "Unobservable Input" "Range[s]" of (i) "[w]eighted average interest rate" 5.9% - 14.9%; (ii) "[w]eighted average term" 48 – 164 months; (iii) "SSR rate" 0.0% - 18.6%; (iv) "[r]ecourse rate" 39.0% - 69.0%; (v) "[f]orbearance rate" 0.0% - 40.9%; (vi) "[c]redit risk" 0.0%; (vii) "[l]iquidity risk" 1.8%; and (viii) "[m]odel risk" 0.7% - 1.3%. Paragraph 101 otherwise contains characterizations and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 101 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

102. Paragraph 102 contains characterizations and argument, to which no answer is required. However, to the extent the allegations in Paragraph 102 are deemed factual, Deloitte denies each and every such allegation.

103. Paragraph 103 contains characterizations and argument, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 103 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and, on that basis, denies such allegations.

104. Paragraph 104 contains characterizations and argument, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is

required. However, to the extent the allegations in Paragraph 104 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 and, on that basis, denies such allegations.

105. Paragraph 105 contains characterizations and argument, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 105 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 and, on that basis, denies such allegations.

106. Paragraph 106 contains characterizations and argument, to which no answer is required. However, to the extent the allegations in Paragraph 106 are deemed factual, Deloitte denies the allegations in the last sentence of Paragraph 106 and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 106 and, on that basis, denies such allegations.

107. Paragraph 107 contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize unidentified sources or documents, such that no answer is required. However, to the extent the allegations in Paragraph 107 are deemed factual, Deloitte denies the allegations in the second and third sentences of Paragraph 107, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 107 and, on that basis, denies such allegations.

108. Deloitte admits that ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013, which financial statements speak for themselves, did not specifically disclose a complaint filed by the Consumer Financial Protection Bureau against Corinthian Colleges, Inc., Case No. 1:14-cv-07194 (N.D. Ill. filed Sept. 16, 2014) but denies any implication that the disclosures in the notes to said financial statements that "[f]rom time to time[,] ACF is a party to various claims and legal proceedings covering a range of matters," that ACF had "received a civil investigative demand from the U.S. Consumer Financial Protection

Bureau ('CFPB') seeking information related to private education loans made in connection with its arrangement with a for-profit post-secondary education company," and that "there c[ould] be no assurance that the ultimate outcome of this matter w[ould] not have a material adverse effect on [ACF]'s financial position, cash flows, or results of operations" were inadequate in this regard. Deloitte denies Paragraph 108's characterization of the CFPB lawsuit, and denies the second sentence of Paragraph 108, as well as any implication that ACF's audited consolidated financial statements for the years ended December 31, 2014 and 2013 should have contained additional or different disclosures in this respect. Paragraph 108 otherwise contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize ASC Topic 450 regarding "Contingencies," which standard speaks for itself, such that no answer is required. However, to the extent the remainder of the allegations in Paragraph 108 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies such allegations.

109. Deloitte admits that the notes to CarePayment, LLC's consolidated financial statements for the years ended December 31, 2014 and 2013, and for the year ended December 31, 2013, report that "Under the CarePayment[] program, accounts receivable due from patients are purchased at a discount from participating healthcare facilities . . . ." Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013, and for the year ended December 31, 2013, report that a CarePayment, LLC "line of credit with a bank" was "secured by all assets of CarePayment, LLC." Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 109 and, on that basis, denies such allegations.

110. Paragraph 110 contains characterizations and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110 and, on that basis, denies such allegations.

111. Paragraph 111 contains characterizations and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 and, on that basis, denies such allegations.

112. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 and, on that basis, denies such allegations.

113. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113 and, on that basis, denies such allegations.

114. Deloitte admits that the notes to ACC Funding Trust 2014-1's financial statements for the period from October 14, 2014 (Commencement of Operations) to December 31, 2014 state that "[t]he Trust purchases unsecured small balance consumer loans originated by a third party." Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 and, on that basis, denies such allegations.

115. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 and, on that basis, denies such allegations.

116. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 and, on that basis, denies such allegations.

117. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 report that a senior secured credit facility extended to ACC Funding Trust 2014-1 and ACC Funding Trust 2014-2 as co-borrowers was "collateralized by all the assets of ACC Funding Trust 2014-1." Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117 and, on that basis, denies such allegations.

118. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 and, on that basis, denies such allegations.

119. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 and, on that basis, denies such allegations.

120. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 and, on that basis, denies such allegations.

121. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121 and, on that basis, denies such allegations.

122. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 and, on that basis, denies such allegations.

123. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 and, on that basis, denies such allegations.

124. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124 and, on that basis, denies such allegations.

125. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported that those consolidated financial statements included ACC Holdings 1, LLC, the 100% beneficial owner of ACC Funding Trust 2014-1. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported "[f]inance receivable – consumer" valued at $11,225,557 as of December 31, 2014. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported, under "Notes Receivable from Affiliates," multiple promissory notes from ACC Holdings 2, LLC. Paragraph 125 otherwise contains characterizations, to which no answer is required. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125 and, on that basis, denies such allegations.

126. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126 and, on that basis, denies such allegations.

127. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 and, on that basis, denies such allegations.

128. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 and, on that basis, denies such allegations.

129. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129 and, on that basis, denies such allegations.

130. Deloitte admits that the notes to ACF's consolidated financial statements for the year ended December 31, 2013 reported that those consolidated financial statements included Motolease Financial, LLC and ACOF. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported that those consolidated financial statements included ML Financial Holdings, LLC and its subsidiary Motolease Financial, LLC, and ACOF. Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported "[n]on-marketable common stock and membership units" valued at $138,109,734 as of December 31, 2014 and $86,085,391 as of December 31, 2013. Deloitte admits that the notes to ACF's consolidated financial statements for the year ended December 31, 2013, and for the years ended December 31, 2014 and 2013, reported that "[f]rom its business partner, MotoLease, LLC, [ACF] purchases consumer power sport vehicle leases offered to consumers, along with the underlying lease property, e.g. motorcycles." Deloitte admits that the notes to ACF's consolidated financial statements for the years ended December 31, 2014 and 2013 reported "[d]irect financing leases" in the amount of $25,958,017 as of December 31, 2014 and $10,384,306 as of December 31, 2013. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 and, on that basis, denies such allegations.

131. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 and, on that basis, denies such allegations.

132. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 and, on that basis, denies such allegations.

133. Deloitte admits that the notes to ACOF's financial statements for the year ended December 31, 2014, and for the period from June 14, 2013 (Commencement of Operations) to December 31, 2013, reported that ETC Global Holdings, Inc. was "the parent company of Electronic Transaction Clearing, Inc. ('ETC'), an SEC registered broker-dealer. . . ." Paragraph 133, including subparts (a) through (h), otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 133, including subparts (a) through (h), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

134. Deloitte denies the allegations in the last sentence of Paragraph 134. Paragraph 134 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 134 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

135. Deloitte admits that ACOF held ownership interests in EDPlus and CPTI. Deloitte admits that the notes to CPTI's consolidated financial statements for the years ended December 31, 2014 and 2013, and for the year ended December 31, 2013, reported that CPTI "has the exclusive right to collect, administer and service all healthcare receivables . . . purchased or controlled by CarePayment, LLC . . . ." Deloitte denies that any Aequitas entities' financial statements audited by Deloitte overstated the values of CPTI and EDPlus during the fiscal years ended December 31, 2013 and 2014. Paragraph 135 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 135 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

136. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A); *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 136, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, makes no factual allegations as to Deloitte, and purports to quote from or otherwise characterize a June 9, 2010 ACF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 136, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

137. Deloitte incorporates its responses to the above unidentified paragraphs ("for the reasons detailed in Section IV(A); *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 137, including subparts (a) through (k), contains characterizations, conclusions of law, and argument, makes no factual allegations as to Deloitte, and purports to quote from or otherwise characterize a December 1, 2011 ACF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 137, including subparts (a) through (k), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

138. Deloitte incorporates its responses to the above unidentified paragraphs ("for the reasons detailed in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 138, including subparts (a) through (l), contains characterizations, conclusions of law, and argument, makes no factual allegations as to Deloitte, and purports to quote from or otherwise characterize a November 30, 2012 ACF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 138, including subparts (a) through (l), are

deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

139. Deloitte incorporates its responses to the above unidentified paragraphs ("thereby makes the same untrue and misleading statements identified previously herein") to the extent those paragraphs are incorporated into this allegation. Paragraph 139 contains characterizations and conclusions of law, makes no factual allegations as to Deloitte, and purports to quote from or otherwise characterize a March 1, 2013 ACF PPM Supplement, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 139 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

140. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession, which document speaks for itself, lists Deloitte as Auditor and Tonkon as Legal Counsel. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140, including to the extent these allegations pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company will make opportunistic investments in non-market correlated, niche income-yielding strategies," and that "[b]y remaining fast-moving and flexible, the Company expects to be able to capitalize on a variety of conditions favorable to deal structure and pricing . . . ." Deloitte further admits the PPM states that "the Company will focus on moving quickly to seize opportunities while they are available." Paragraph 140(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession contains the language quoted in Paragraph 140(b). Paragraph 140(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte incorporates its responses to the above unidentified paragraphs ("for the reasons detailed in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession contains a purported "Financial Information Summary" on Page 23. Deloitte admits that the summary lists "Investment Assets" in the amount of $208,863,000 under the column heading "Audited 2012," $124,025,000 under the column heading "Audited 2011," and $79,927,000 under the column heading "Audited 2010." Deloitte admits that the summary lists "Loans to Affiliates" in the amount of $108,922,000 under the column heading "Audited 2012," $77,736,000 under the column heading "Audited 2011," and $53,859,000 under the column heading "Audited 2010." Paragraph 140(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(c) are deemed factual, Deloitte denies the remaining allegations in Paragraph 140(c).

d. Deloitte incorporates its responses to the above unidentified paragraphs ("*See*, Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company makes debt and equity advances from time to time for the benefit of its affiliates and to provide operating capital and liquidity lines of credit. . . . The various advances and loans are typically secured by the equity or all assets of Holdings or the specific affiliates to which funds are advanced." Paragraph 140(d) otherwise purports to characterize this PPM,

which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states "the Aequitas integrated operating platform (the 'Platform'), a proven set of capabilities that identifies and qualifies attractive investment opportunities, designs innovative financing structures, and then adds deep expertise in management and technology. The Platform has demonstrated success optimizing business and investment outcomes." Paragraph 140(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

f. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company generally pays the principal and interest of Secured Notes from the proceeds from repayments of loans, leases, subordinated debt investments and similar assets of the Company and sales of Company assets. From time to time, the Company may use proceeds of the sale of Secured Notes to repay the principal and interest of previously issued Secured Notes due principally to the illiquid nature of many of the Company's investments and to the Company's ongoing efforts to reduce its weighted average cost of capital by, in part, replacing Secured Notes bearing higher interest rates with Secured Notes bearing lower interest rates." Paragraph 140(f) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(f) are deemed factual, Deloitte lacks knowledge or

information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

g. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company uses proceeds from the issuance of Secured Notes to engage in various specialty financing transactions, to provide lines of credit for the benefit of its affiliates and its related investment program and to repay previously issued Secured Notes." Paragraph 140(g) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(g) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

h. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states on Page 25 that "[t]he Company is not obligated to register the Secured Notes and does not intend to do so. . . ." Paragraph 140(h) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(h) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

i. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company generally pays the principal and interest of Secured Notes from the proceeds from repayments of loans, leases, subordinated debt investments and similar assets of the Company and sales of Company assets. From time to time, the Company may use proceeds of the sale of Secured Notes to repay the principal and interest of previously issued Secured Notes due principally to the illiquid nature of many of the Company's investments and to the Company's ongoing efforts to reduce its weighted average cost of capital by, in part, replacing Secured Notes bearing higher interest rates with Secured Notes bearing lower interest rates." Paragraph 140(i) otherwise purports to characterize this PPM, which

document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(i) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

j. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company generally pays the principal and interest of Secured Notes from the proceeds from repayments of loans, leases, subordinated debt investments and similar assets of the Company and sales of Company assets. From time to time, the Company may use proceeds of the sale of Secured Notes to repay the principal and interest of previously issued Secured Notes due principally to the illiquid nature of many of the Company's investments and to the Company's ongoing efforts to reduce its weighted average cost of capital by, in part, replacing Secured Notes bearing higher interest rates with Secured Notes bearing lower interest rates." Paragraph 140(j) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(j) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

k. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Company may be at risk for some level of losses in the event of default by third parties in its various finance transactions. In addition to its underwriting processes, Aequitas takes additional steps to reduce risk for the Company. These steps typically include: [¶] Securing obligations with liens against assets owned by affiliates of borrowers and lessees. [¶] Monitoring financial results on a periodic (typically monthly) basis and proactively taking corrective action when necessary or advisable. [¶] Employing a dedicated portfolio management team that provides ongoing counterparty due diligence, model valuations and other quantitative and qualitative risk management techniques to monitor investment performance on

an ongoing basis." Paragraph 140(k) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(k) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

l. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession contains in Appendix A risk factors with the following titles (among others): "Educational Loan Reform Efforts May Impact The Company"; "The Performance Of The Company's Counterparties May Affect The Company"; "Economic And Market Risks Exist"; "The Company May Make Investments In Affiliates"; and "The Collateral May Be Insufficient or Unavailable." Paragraph 140(l) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(l) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

m. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he ability of the Company to pay interest on and repay principal of Secured Notes depends, to a great extent, on the Manager's performance and ability to select successful investments." Paragraph 140(m) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(m) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

n. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession contains a risk factor in Appendix A with the following title: "The Company May Be Unable To Generate Sufficient Cash Flow To Meet Debt Service." Paragraph

140(n) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(n) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

o. Deloitte admits that a copy of the November 30, 2013 ACF PPM in Deloitte's possession states that "[t]he Aequitas Conflicts Review Committee (described below) has been established to review and render an opinion on matters submitted to it that involve transactions with parties related to the Company and/or perceived conflicts of interest with respect to transactions involving the Company," and that "[t]he fact that members of the Investment Committee, their affiliates or any related persons are directly or indirectly interested in or connected with any entity or individual with which or with whom the Company may have dealings will not by itself preclude such dealings, and the Company will not have any rights in or to such dealings or any profits derived therefrom." Paragraph 140(o) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 140(o) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

141. Deloitte admits that ACF issued a PPM Supplement dated October 16, 2014. Deloitte incorporates its responses to the above unidentified paragraphs ("thereby makes the same untrue and misleading statements identified previously herein") to the extent those paragraphs are incorporated into this allegation. Paragraph 141 otherwise contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize an October 16, 2014 ACF PPM Supplement, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 141 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

142. Deloitte admits that it performed an audit of ACF's consolidated financial statements for the fiscal years ended December 31, 2014 and 2013, and issued an audit report dated May 29, 2015 pertaining to the audit, which documents speak for themselves. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 142 and, on that basis, denies such allegations. Deloitte denies that ACF's audited consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 "materially overstated" the value of ACF's investment portfolio. Deloitte incorporates its responses to the above unidentified paragraphs ("as described in more detail in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 142 otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. In all other respects, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 142 and, on that basis, denies them.

143. Paragraph 143 purports to quote from or otherwise characterize an "Investor Update," about which Deloitte lacks knowledge or information sufficient to form a belief and, on that basis, Deloitte denies the allegations in Paragraph 143.

144. Deloitte incorporates its responses to the above unidentified paragraphs ("for the reasons detailed in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 144, including subparts (a) through (q), otherwise contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a September 9, 2015 ACF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 144, including subparts (a) through (q), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

145. Paragraph 145 contains characterizations and argument, and purports to quote from or otherwise characterize an October 2015 ACF "Performance Summary," which document speaks for itself, such that no answer is required. However, to the extent these allegations in Paragraph 145 are deemed factual, and as to the remaining allegations, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 and, on that basis, denies such allegations.

146. Deloitte incorporates its responses to the above unidentified paragraphs ("for the reasons detailed in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 146, including subparts (a) through (q), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize an October 27, 2015 ACF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 146, including subparts (a) through (q), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

147. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 147, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, makes no factual allegations as to Deloitte, and purports to quote from or otherwise characterize a July 1, 2011 AIOF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 147, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

148. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated

into this allegation. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession, which document speaks for itself, listed Tonkon as Legal Counsel and EisnerAmper as Auditor. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "the Fund intends to follow a value investing style. This means that the Fund intends to acquire or invest in assets it believes are undervalued by the market and thus have a lower price than their true worth." Deloitte further admits the PPM states that "Aequitas employs senior professionals in addition to Mr. Jesenik who have complementary skills and extensive experience relevant to making and managing the investments and financial operations of the Fund." Paragraph 148(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "[p]roceeds from the Notes may also be used to pay redemptions of previously issued Notes and to provide for the Fund's working capital needs." Paragraph 148(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "Sources of Note Repayment" include "Cash flow income generated from the assets of the Fund," and "Proceeds from the sale of assets and future capital raises." Paragraph 148(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession contains in Appendix A risk factors with the following titles (among others): "The Fund will be subject to economic, investment and market risk"; "There may be a lack of diversification in Portfolio Assets, and/or investment concentration risk among obligors of Portfolio Assets"; "Conflicts of Interest"; "Educational loan reform efforts may impact the Fund"; and "The Collateral securing the Notes may be insufficient." Paragraph 148(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "[t]he Notes are secured by a first priority security interest in all assets of the Fund . . . ." Paragraph 148(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

f. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "[i]n mid-2011, Aequitas arranged for its initial purchase of student loan portfolios originated by or on behalf of a publicly-held educational institution with nationwide

operations. . . . Aequitas intends to negotiate similar arrangements with additional major post-secondary educational institutions with the goal of deploying $500 million or more of capital into this sector and complementary student loan sectors during the next 3 to 5 years." Paragraph 148(f) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(f) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

g. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "[t]he forward flow loans will be purchased on a full recourse basis such that, in the event of a payment default by a loan obligor, the for-profit college is required to repurchase the loan for the unrecovered portion of the original purchase price . . . ." Paragraph 148(g) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(g) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

h. Deloitte admits that a copy of the March 1, 2012 AIOF PPM in Deloitte's possession states that "[t]he Fund is not obligated to register the Notes and does not intend to do so." Paragraph 148(h) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 148(h) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

149. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession, which document speaks for itself, listed Tonkon as Legal Counsel, but denies that it lists Harb, Levy & Weiland LLP as Auditor. Deloitte lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 149 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section [] IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession states that "[t]he Fund intends to follow a value investing approach by acquiring or investing in receivables or loans with an intrinsic worth that is undervalued by the market," and that "Aequitas employs senior professionals in addition to Mr. Jesenik who have complementary skills and extensive experience relevant to making and managing the investments and financial operations of the Fund." Paragraph 149(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 149(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession describes "Collateral" as a "First priority security interest in all assets of the Fund (shared *pari passu* among all holders of Senior Notes)." Paragraph 149(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 149(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession states that "[t]he Fund is not obligated to register the Senior Notes and does not intend to do so." Paragraph 149(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 149(c) are deemed factual, Deloitte lacks knowledge or

information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession states that "Senior Notes may be sold in this Offering by registered broker-dealers. Any such sales may be subject to sales commissions and/or broker-dealer fees that are payable by the Senior Note holder of the offering price for the Senior Note. As a result, the principal amount of the Senior Note may be reduced by such commissions or fees. The Manager may, in its sole discretion, elect to pay all or a portion of such commissions or fees with respect to any Senior Note holder." Paragraph 149(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 149(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte admits that a copy of the December 31, 2012 AIOF PPM in Deloitte's possession contains in Appendix A risk factors with the following titles (among others): "The Fund will be subject to economic, investment and market risk"; "Educational loan reform efforts may impact the Fund"; and "The Portfolio Assets may be inadequate to fund the Fund's obligations to Senior Note holders and others." Paragraph 149(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 149(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

150. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 150, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, makes no factual allegations as to Deloitte,

and purports to quote from or otherwise characterize a February 12, 2012 AIOF II PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 150, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

151. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 151, including subparts (a) through (g), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize an October 31, 2014 AIOF II PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 151, including subparts (a) through (g), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

152. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 152, including subparts (a) through (g), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize an October 31, 2014 AIOF II PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 152, including subparts (a) through (g), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

153. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's

possession, which document speaks for itself, identified Duff & Phelps as "independent valuation agent," and listed Sidley as Legal Advisers to the General Partner and the Investment Advisor, and Deloitte as Auditor. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's possession states that "[t]he General Partner is offering limited partnership interests in the Partnership to finance growth investments in the Existing Portfolio Investments and new investments in growth oriented companies generally in the financial services arena," and that "[t]he Investment Advisor expects that capital committed to the Partnership will be allocated to both existing and new investments, with a significant portion of invested capital funding growth investments in the portfolio companies described below under "*—Existing Portfolio Investments*" and the remainder funding investments in new opportunities that are consistent with the Partnership's investment objectives and the Investment Advisor's expertise." Paragraph 153(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 153(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte incorporates its responses to the above unidentified paragraphs ("the PPM omitted to disclose information alleged in Section IV(A)") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's possession contains disclosures regarding "Existing Portfolio Investments." Paragraph 153(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 153(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's possession states that "The EducationPlus™ Loan Program thus far has only financed loans for the for-profit, post-secondary educational institutions of Corinthian Colleges, Inc. ("Corinthian") and to Corinthian students. It recently ceased funding Corinthian loans with the intention of implementing enhancements to align with current market conditions. EDPlus Finance Group continues to pursue additional opportunities in the education market to offer similar loan programs and purchase and service similar loans." Paragraph 153(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 153(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's possession listed "Duff & Phelps Estimated Fair Value Range[s]" and "Aequitas Valuation[s]," for CarePayment Technologies, Inc., EDPlus Holdings, LLC, ETC Global Group, LLC, MotoLease, LLC, and Strategic Capital Alternatives, LLC. Paragraph 153(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 153(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the February 2014 ACOF PPM in Deloitte's possession states that "[t]he Managing Principals of the General Partner and the Chief Executive Officer of ACM are primarily responsible for the investment activities of the Partnership, in conjunction with the Investment Committee. The Investment Advisor employs senior professionals in addition to Messrs. Froude, Ruh and Jesenik, who have complementary

skills and extensive experience relevant to making and managing the investments of the Partnership" and that "[w]ith a team of industry experts and years of experience in these markets, the Investment Advisor believes that the Partnership is well-positioned to experience capital appreciation over the Partnership's term." Paragraph 153(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 153(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

154. Deloitte admits that a copy of the August 2014 ACOF PPM Supplement in Deloitte's possession states that "This supplement ('Supplement') updates, supplements or replaces, as the case may be, certain information with respect to Aequitas Capital Opportunities Fund, LP (the 'Partnership') as found in the Confidential Private Placement Memorandum of the Partnership dated February 2014 (the 'Memorandum')." Deloitte incorporates its responses to the above unidentified paragraphs ("thereby makes the same untrue and misleading statements identified previously herein") to the extent those paragraphs are incorporated into this allegation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154 and, on that basis, denies them.

155. Paragraph 155 contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a November 2014 ACOF PPM Supplement, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 155 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

156. Paragraph 156 contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a February 2015 ACOF PPM Supplement, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no

answer is required. However, to the extent the allegations in Paragraph 156 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

157. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first three sentences of Paragraph 157 and, on that basis, denies such allegations. Paragraph 157, including subparts (a) through (k), otherwise contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a March 9, 2014 ACOF Fund Summary, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the remaining allegations in Paragraph 157, including subparts (a) through (k), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157 and, on that basis, denies such allegations.

158. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 158, including subparts (a) through (e), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a September 30, 2011 AIPF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 158, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

159. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 159, including subparts (a) through (f), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a December 14, 2011 AIPF PPM, about which Deloitte lacks knowledge or information sufficient

to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 159, including subparts (a) through (f), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

160. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 160, including subparts (a) through (f), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a February 15, 2012 AIPF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 160, including subparts (a) through (f), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

161. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 161, including subparts (a) through (f), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a June 1, 2012 AIPF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 161, including subparts (a) through (f), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

162. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession, which document speaks for itself, listed Tonkon as Legal Counsel and EisnerAmper as Auditor. Deloitte lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 162 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession contains disclosures regarding "Use of Proceeds" and "Sources of Return on Investment and Membership Interest Redemptions." Paragraph 162(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession states that "[t]he Fund follows a value investing approach by directly acquiring or investing in SPEs that acquire receivables or debt assets that the Fund believes have an intrinsic worth that is undervalued by the market. The Fund accomplishes this by originating or participating (taking a *pari passu* or subordinate position) in the financing of receivables, loans, and leases, often at discounted prices, through the Aequitas platform. The Fund focuses solely on receivables and debt assets that enjoy recourse protection. Aequitas has established itself within large and inefficient credit markets such as education, healthcare, and private credit, where it provides unique financing solutions to companies and their consumers through its proprietary platforms." Deloitte further admits this PPM states that "[t]he Chief Executive Officer of the Manager is Robert J. Jesenik. Aequitas employs senior professionals in addition to Mr. Jesenik who have complementary skills and extensive experience relevant to making and managing the investments of the Fund." Paragraph 162(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(b) are deemed factual,

Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession states that "[t]he Fund focuses solely on receivables and debt assets that enjoy recourse protection," and that "[b]y structuring the purchase of the loans at a significant discount which provides substantial over-collateralization, Aequitas is able to mitigate the risk of a school not meeting its obligation to repurchase severely delinquent loans." Paragraph 162(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession states that "[o]ffers and sales of Series A Interests will be made on a 'best efforts' basis by employees of the Manager and by broker-dealers who are members of the Financial Industry Regulatory Authority, Inc., or FINRA. The Manager may pay selling commissions to registered broker-dealers with respect to sales of Series A Interests made by them. Certain broker-dealers may also receive from the Fund a fee for wholesaling, marketing, training and due diligence investigation." Paragraph 162(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession states that "Series A Interests have not been registered under the Securities Act or any state securities laws and must be held indefinitely unless a transfer of the Series A Interests is subsequently registered or an exemption from such registration is available. The Fund

is not obligated to register the Series A Interests and does not intend to do so." Paragraph 162(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

f. Deloitte admits that a copy of the December 31, 2012 AIPF PPM in Deloitte's possession contains in Appendix A risk factors with the following titles (among others): "The Fund will be subject to economic, investment and market risk" and "Educational loan reform efforts may impact the Fund." Paragraph 162(f) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 162(f) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

163. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession, which document speaks for itself, listed Tonkon as Legal Counsel and Deloitte as Auditor. Deloitte denies any implication in Paragraph 163 that it completed an audit of, or issued an audit report regarding, AEIF's financial statements. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession contains disclosures regarding "Use of Proceeds." Paragraph 163(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(a) are deemed

factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession contains disclosures regarding "Sources of Return on Investment and Membership Interest Redemptions." Paragraph 163(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession states that "[t]he Manager intends to pursue a strategy whereby the Fund will finance, directly or indirectly, in whole or in part, the purchase of portfolios of Credit Strategy Receivables (as defined below) by Aequitas Commercial Finance, LLC (the 'Special Member') or its subsidiaries (each such subsidiary, an 'SPE'). The Fund will invest in promissory notes issued to the Fund by the Special Member or applicable SPE, on senior or subordinated terms, as determined by the Manger in its sole discretion (each, a 'Special Member Loan'), the proceeds of which the Special Member or SPE will use to acquire portfolios of Credit Strategy Receivables." Paragraph 163(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession states that "Aequitas has established itself within large and inefficient credit markets such as education, healthcare, and private credit, where it provides unique

financing solutions to companies and their consumers through its proprietary platforms." Paragraph 163(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte incorporates its responses to the above unidentified paragraphs ("as detailed in Section IV(A)") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession contains disclosures under the heading "Educational Credit Strategies (such as Unigo Group)." Paragraph 163(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

f. Deloitte admits that a copy of the October 1, 2014 AEIF PPM in Deloitte's possession states that "Series A Interests have not been registered under the Securities Act or any state securities laws and must be held indefinitely unless a transfer of the Series A Interests is subsequently registered or an exemption from such registration is available. The Fund is not obligated to register the Series A Interests and does not intend to do so." Paragraph 163(f) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 163(f) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

164. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15"), which document speaks for itself, listed Tonkon as

Legal Counsel and Deloitte as Auditor. Deloitte denies any implication in Paragraph 164 that it completed an audit of, or issued an audit report regarding, AEIF's financial statements. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") contains disclosures regarding "Use of Proceeds." Paragraph 164(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") contains disclosures regarding "Sources of Return on Investment and Membership Interest Redemptions." Paragraph 164(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") states that "The Manager intends to pursue a strategy whereby the Fund will finance, directly or indirectly, in whole or in part, the purchase of portfolios of Credit Strategy Receivables (as defined below) by Aequitas Commercial Finance, LLC (the 'Special Member') or subsidiaries or affiliates (each such subsidiary or affiliate, an 'SPE'). The Fund will invest in promissory notes issued by the Special Member or applicable SPE, on senior or subordinated terms, as determined by the Manger in its sole discretion (each, a 'Special Member Loan'), the proceeds of which the Special Member or SPE will use to acquire

portfolios of Credit Strategy Receivables." Paragraph 164(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") states that "Aequitas has established itself within large and inefficient credit markets such as education, healthcare, and private credit, where it provides unique financing solutions to companies and their consumers through its proprietary platforms." Paragraph 164(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

e. Deloitte incorporates its responses to the above unidentified paragraphs ("as detailed in Section IV(A)") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") contains disclosures under the heading "Educational Credit Strategies (such as Unigo Group)." Paragraph 164(e) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(e) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

f. Deloitte admits that a copy of the January 1, 2015 AEIF PPM in Deloitte's possession (labeled "Draft dated 01 26 15") states that "Interests have not been registered under the Securities Act or any state securities laws and must be held indefinitely unless a transfer of the Interests is subsequently registered or an exemption from such registration is available. The Fund is not obligated to register the Interests and does not intend to do so." Paragraph 164(f) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 164(f) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

165. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Paragraph 165, including subparts (a) through (g), contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize a December 14, 2015 AEIF PPM, about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 165, including subparts (a) through (g), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

166. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession, which document speaks for itself, listed Tonkon as Legal Counsel and Deloitte as Auditor. Deloitte denies any implication in Paragraph 166 that it completed an audit of, or issued an audit report regarding, APCF's financial statements. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 to the extent they pertain to other versions of the PPM bearing the same date, if any exist.

a. Deloitte incorporates its responses to the above unidentified paragraphs ("as described more fully in Section IV(A), *supra*") to the extent those paragraphs are incorporated into this allegation. Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession states that "Aequitas equity investments are primarily control investments in niche companies operating within our core areas of focus. These companies benefit materially from the Aequitas integrated operating platform (the 'Platform'), that identifies and qualifies attractive investment opportunities, designs innovative financing structures, and then adds deep expertise in management and technology. The Platform optimizes business and investment outcomes." Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession states that "the Fund expects to be able to capitalize on a variety of conditions favorable to deal structure and pricing, including: [¶] A lack of competing sources of capital. [¶] Liquidity requirements forcing a sale of assets. [¶] Regulatory oversight forcing a sale of assets. [¶] Asset volumes below larger lender interest." Deloitte further admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession states that "[t]he Chief Executive Officer of the Manager and of the Investment Advisor is Robert J. Jesenik. Aequitas employs senior professionals in addition to Mr. Jesenik who have complementary skills and extensive experience relevant to making and managing the investments and financial operations of the Fund." Paragraph 166(a) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 166(a) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

b. Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession states that "[t]he Fund is not obligated to register the Series Notes and does not intend to do so." Paragraph 166(b) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining

allegations in Paragraph 166(b) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

c. Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession states that "[t]his Offering is made in the United States to certain selected offerees who qualify as accredited investors. Among other things, each such prospective investor will be required to represent to the Fund in the Subscription Agreement that such investor qualifies as an accredited investor, and has such knowledge and experience in financial and business matters that such purchaser is capable of evaluating the merits and risks of this investment and that such investor can withstand a complete loss of this investment." Paragraph 166(c) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 166(c) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

d. Deloitte admits that a copy of the July 31, 2015 APCF PPM in Deloitte's possession contains in Appendix A risk factors with the following titles (among others): "The Fund may be unable to generate sufficient cash flow to meet debt service" and "The collateral may be insufficient or unavailable." Paragraph 166(d) otherwise purports to characterize this PPM, which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 166(d) are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

167. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 167 and, on that basis, denies such allegations. Paragraph 167, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q4 2011 Performance Summary," which document speaks for itself, and makes

no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 167, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

168. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 168 and, on that basis, denies such allegations. Paragraph 168, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q2 2012 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 168, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

169. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 169 and, on that basis, denies such allegations. Paragraph 169, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q3 2012 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 169, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

170. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 170 and, on that basis, denies such allegations. Paragraph 170, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise

characterize a "Q4 2012 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 170, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

171. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 171 and, on that basis, denies such allegations. Paragraph 171, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q1 2013 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 171, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

172. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 172 and, on that basis, denies such allegations. Paragraph 172, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q2 2013 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 172, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

173. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 173 and, on that basis, denies such allegations. Paragraph 173, including subparts (a) through (e), otherwise contains

characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q3 2013 Performance Summary," which document speaks for itself, such that no answer is required. However, to the extent the remaining allegations in Paragraph 173, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

174. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 174 and, on that basis, denies such allegations. Paragraph 174, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q4 2013 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 174, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

175. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 175 and, on that basis, denies such allegations. Paragraph 175, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q1 2014 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 175, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

176. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 176 and, on that basis, denies such allegations. Paragraph 176, including subparts (a) through (e), otherwise contains

characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q2 2014 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 176, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

177. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 177 and, on that basis, denies such allegations. Paragraph 177, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q3 2014 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 177, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

178. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 178 and, on that basis, denies such allegations. Paragraph 178, including subparts (a) through (e), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q4 2014 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 178, including subparts (a) through (e), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

179. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 179 and, on that basis, denies such

allegations. Paragraph 179, including subparts (a) through (d), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q2 2015 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 179, including subparts (a) through (d), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

180. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 180 and, on that basis, denies such allegations. Paragraph 180, including subparts (a) through (d), otherwise contains characterizations, conclusions of law, and argument, purports to quote from or otherwise characterize a "Q3 2015 Performance Summary," which document speaks for itself, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the remaining allegations in Paragraph 180, including subparts (a) through (d), are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

181. Deloitte incorporates its responses to the above unidentified paragraphs ("it omitted to disclose the information alleged in Section IV (A) regarding MotoLease") to the extent those paragraphs are incorporated into this allegation. Paragraph 181 contains characterizations and argument, purports to quote from or otherwise characterize "AMLF Note investment documentation," about which Deloitte lacks knowledge or information sufficient to form a belief, and makes no factual allegations as to Deloitte, such that no answer is required. However, to the extent the allegations in Paragraph 181 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

182. Paragraph 182 contains characterizations and argument, and purports to quote from or otherwise characterize "AMLF Note investment documentation," about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. However, to the extent the allegations in Paragraph 182 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

183. Paragraph 183 contains characterizations and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183 and, on that basis, denies such allegations.

184. Paragraph 184 contains characterizations, conclusions of law, and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 and, on that basis, denies such allegations.

185. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185 and, on that basis, denies such allegations.

186. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186 and, on that basis, denies such allegations.

187. Deloitte admits that the SEC filed a civil complaint against Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, LLC, Aequitas Capital Management, Inc., Aequitas Investment Management, LLC, Robert J. Jesenik, Brian A. Oliver, and N. Scott Gillis on March 10, 2016 as Case No. 3:16-cv-00438-PK in the United States District Court for the District of Oregon, which document speaks for itself. Deloitte denies that the complaint contains "charg[es]" as characterized in Paragraph 187.

188. Deloitte admits that the SEC, Aequitas Management, LLC, Aequitas Holdings, LLC, Aequitas Commercial Finance, Inc., Aequitas Capital Management, Inc., and Aequitas Investment Management, LLC filed a "Stipulation Requesting Preliminary Injunction and

Appointment of Receiver," Ronald Greenspan of FTI Consulting, Inc., on March 10, 2016 in Case No. 3:16-cv-00438-PK in the United States District Court for the District of Oregon, which document speaks for itself.

189. Paragraph 189 states a conclusion of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 and, on that basis, denies such allegations.

a. Deloitte admits that EisnerAmper acted as the auditor for certain Aequitas entities. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189(a) and, on that basis, denies such allegations.

b. Paragraph 189(b) contains characterizations, conclusions of law, and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189(b) and, on that basis, denies such allegations.

c. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189(c) and, on that basis, denies such allegations.

d. Deloitte admits that EisnerAmper was listed as auditor in certain Aequitas entities' PPMs. Paragraph 189(d) otherwise purports to describe the contents of various of AIM's SEC Form ADVs, which documents speak for themselves. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189(d) and, on that basis, denies such allegations.

e. Paragraph 189(e) purports to quote from or otherwise characterize unidentified "marketing materials," about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189(e) and, on that basis, denies such allegations.

f. Paragraph 189(f) contains characterizations, conclusions of law, and argument, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189(f) and, on that basis, denies such allegations.

g. Paragraph 189(g) purports to quote from or otherwise characterize EisnerAmper "audit workpapers," about which Deloitte lacks knowledge or information sufficient to form a belief and, on that basis, Deloitte denies the allegations in Paragraph 189(g).

190. Paragraph 190 states a conclusion of law, to which no answer is required. However, to the extent the allegations in Paragraph 190 are deemed factual, Deloitte denies each and every such allegation.

a. Deloitte admits that it completed audits of, and issued audit reports pertaining to, the financial statements of various Aequitas companies for the period ended December 31, 2013, including ACF, AIPF, ACOF, AIOF, Aequitas ETC Founders Fund, LLC, Aequitas CarePayment Fund, LLC, and Aequitas Hybrid Fund, LLC. Deloitte admits that it completed audits of, and issued audit reports pertaining to, the financial statements of various Aequitas companies for the period ended December 31, 2014, including ACF, AIPF, ACOF, AIOF, AIOF-II, Aequitas ETC Founders Fund, LLC, and Aequitas Hybrid Fund, LLC. Deloitte admits that it completed an audit of, and issued an audit report pertaining to, the financial statements of Aequitas CarePayment Fund, LLC as of and for the five months ended May 31, 2014 (liquidation basis). Deloitte denies that it completed audits of, or issued audit reports pertaining to, the financial statements of AEIF or Aequitas WRFF I, LLC. Deloitte admits that it performed audits of, and issued audit reports pertaining to, the consolidated financial statements of ACF for the fiscal years ended December 31, 2013 and December 31, 2014. Deloitte admits that the notes to ACF's consolidated financial statements for the fiscal years ended December 31, 2014 and 2013 report that the "consolidated financial statements include the following entities:" ACF, Aequitas Income Opportunity Fund, LLC, Aequitas Income Opportunity Fund II, LLC,

Aequitas Income Protection Fund, LLC, Aequitas Enhanced Income Fund, LLC, Aequitas Income Fund, LLC, Aequitas Capital Opportunities Fund, LP, CarePayment Holdings, LLC and its subsidiaries CarePayment, LLC, CP Leverage I, LLC and CP Funding I Holdings, LLC, the 100% beneficial owner of CP Funding I Trust, CA Medical, LLC, Campus Student Funding, LLC, DC Equipment Finance, LLC, EC Hanger, LLC, ML Financial Holdings, LLC and its subsidiary Motolease Financial, LLC, Aequitas Consumer Credit, LLC, Aequitas Peer-To-Peer Funding, LLC, ACC Holdings 1, LLC, the 100% beneficial owner of ACC Funding Trust 2014-1, ACC Holdings 3, LLC, ACC Holdings 4, LLC, Aequitas Senior Housing, LLC, The Hill Land Company, LLC, and CSF Leverage II, LLC. Deloitte admits that the notes to ACF's consolidated financial statements for the fiscal year ended December 31, 2013 state that the "consolidated financial statements include the following entities:" ACF, Aequitas Income Opportunity Fund, LLC, Aequitas Income Opportunity Fund II, LLC, Aequitas CarePayment Fund, LLC, Aequitas Income Protection Fund, LLC, Aequitas Capital Opportunities Fund, LP, Aequitas North American Finance, LLC, CarePayment, LLC and its subsidiary CP Funding I, LLC, CA Medical, LLC, Campus Student Funding, LLC, CP Leverage I, LLC, CSF Leverage I, LLC, Destination Capital Equipment Finance, LLC, EC Hanger, LLC, Motolease Financial, LLC, and The Hill Land Company, LLC. Except as admitted, Deloitte denies the allegations in Paragraph 190(a).

b. Paragraph 190(b) contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 190(b) are deemed factual, Deloitte denies each and every such allegation.

c. Deloitte admits that Aequitas Capital Management, Inc. engaged its auditing services on or about October 10, 2013. Deloitte admits that EisnerAmper was the company's predecessor auditor and that Deloitte learned from EisnerAmper that the Aequitas entities were changing audit firms because of management's "desire to have a Portland-based team. . . coupled with a desire to be served by a larger firm." Paragraph 190(c) otherwise

contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the remaining allegations in Paragraph 190(c) are deemed factual, Deloitte denies each and every such allegation.

d. Deloitte admits that AIM was subject to the requirements of the Investment Advisers Act of 1940, including that certain Aequitas funds deliver to their existing investors the previous year's financial statements. Paragraph 190(d) contains characterizations and argument, and purports to quote from or otherwise characterize AIM's March 24, 2014 Form ADV Part 2A, which document speaks for itself, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 190(d) and, on that basis, denies such allegations.

e. Deloitte denies that its workpapers acknowledge that audited financials would be used by potential investors. Paragraph 190(e) otherwise purports to characterize Deloitte workpapers, which documents speak for themselves, such that no answer is required.

f. Deloitte admits that certain Aequitas entities identified Deloitte as auditor in certain PPMs. Deloitte admits that AIM's SEC Form ADV dated July 9, 2015, among other of AIM's SEC Form ADVs, which documents speak for themselves, listed Deloitte as the auditor for certain Aequitas entities. Deloitte incorporates its responses to the unidentified paragraphs ("as alleged herein") to the extent those paragraphs are incorporated into this allegation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 190(f) and, on that basis, denies such allegations.

g. Deloitte incorporates its response to Paragraph 189 ("[f]or the reasons discussed in Paragraph 189") to the extent that paragraph is incorporated into this allegation. Paragraph 190(g) otherwise contains characterizations and argument, to which no answer is required. However, to the extent the allegations in Paragraph 190(g) are deemed factual, Deloitte denies each and every such allegation.

h. Paragraph 190(h) contains characterizations and purports to quote from or otherwise characterize unidentified "marketing materials," about which Deloitte lacks knowledge or information sufficient to form a belief, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190(h) and, on that basis, denies such allegations.

191. Paragraph 191 states a conclusion of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 and, on that basis, denies such allegations.

a. Deloitte admits that Tonkon provided legal services to certain Aequitas entities. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 191(a) and, on that basis, denies such allegations.

b. Paragraph 191(b) contains characterizations and conclusions of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191(b) and, on that basis, denies such allegations.

c. Deloitte admits that Tonkon was listed as legal counsel in certain Aequitas entities' PPMs. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 191(c) and, on that basis, denies such allegations.

d. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191(d) and, on that basis, denies such allegations.

e. Deloitte admits that its workpapers stated that Kurt Ruttum and Steve Wilker of Tonkon said they "see no reason why [Deloitte] wouldn't want to be associated with Aequitas." Paragraph 191(e) otherwise contains characterizations and purports to characterize Deloitte workpapers, which documents speak for themselves, such that no answer is required. However, to the extent the remaining allegations in Paragraph 191(e) are considered factual,

Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

192. Paragraph 192 states a conclusion of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192 and, on that basis, denies such allegations.

a. Deloitte admits that Sidley provided legal services to certain Aequitas entities. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192(a) and, on that basis, denies such allegations.

b. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192(b) and, on that basis, denies such allegations.

c. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192(c) and, on that basis, denies such allegations.

d. Deloitte admits that Sidley Austin provided a memorandum to Aequitas Capital Management dated April 5, 2013 regarding the Status of ACF under the Investment Company Act of 1940, which memorandum speaks for itself, such that no answer is required. Paragraph 192(d) otherwise contains characterizations, conclusions of law, and argument, and purports to quote from or otherwise characterize unidentified PPMs, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192(d) and, on that basis, denies such allegations.

e. Deloitte denies the allegations in the first and third sentences of Paragraph 192(e) to the extent they apply to it. Deloitte admits that it received a legal confirmation letter from Sidley addressing an SEC investigation and discussed an SEC subpoena and investigation with Aequitas and Sidley personnel by phone in May 2015. Paragraph 192(e) otherwise contains characterizations, conclusions of law, and argument, to which no answer is required. Deloitte

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192(e) and, on that basis, denies such allegations.

f. Deloitte admits that AIPF self-reported to the SEC in July 2014 that AIPF was out of compliance with Section 3(c)(1) of the Investment Company Act of 1940, and AIPF began liquidation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192(f) and, on that basis, denies such allegations.

g. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192(g) and, on that basis, denies such allegations.

h. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192(h) and, on that basis, denies such allegations.

i. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192(i) and, on that basis, denies such allegations.

j. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192(j) and, on that basis, denies such allegations.

193. Paragraph 193, including subparts (a) through (e), contains characterizations and conclusions of law, to which no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, including subparts (a) through (e), and, on that basis, denies such allegations.

194. Paragraph 194, including subparts (a) through (f), contains characterizations and conclusions of law, and purports to quote from or otherwise characterize various contracts, which documents speak for themselves, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194, including subparts (a) through (f), and, on that basis, denies such allegations.

195. Deloitte admits that Duff & Phelps performed valuation analyses for certain Aequitas entities. Paragraph 195, including subparts (a) through (f), contains characterizations and conclusions of law, and purports to quote from or otherwise characterize various contracts,

which documents speak for themselves, such that no answer is required. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 195, including subparts (a) through (f), and, on that basis, denies such allegations.

196. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196, including subparts (a) through (c), and, on that basis, denies such allegations.

197. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197 and, on that basis, denies such allegations.

198. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198, including subparts (a) through (d), and, on that basis, denies such allegations.

199. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199, including subparts (a) through (c), and, on that basis, denies such allegations.

200. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200, including subparts (a) through (b), and, on that basis, denies such allegations.

201. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201, including subparts (a) through (d), and, on that basis, denies such allegations.

202. Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202, including subparts (a) through (b), and, on that basis, denies such allegations.

203. Paragraph 203 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 203 are

deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined in this paragraph.

204. Paragraph 204 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 205 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 205, denies the remaining allegations in Paragraph 205, and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

205. Paragraph 205 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 205 are deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

206. Paragraph 206, including subparts (a) through (d), contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 206, including subparts (a) through (d), are deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

207. Paragraph 207 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 207 are deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

208. Paragraph 208 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 208 are deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

209. Paragraph 209 contains characterizations, conclusions of law, and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 209 are deemed factual, Deloitte denies each and every such allegation and denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class defined.

210. Paragraph 210 contains conclusions of law and argument, to which no response is necessary. However, to the extent the allegations in Paragraph 210 are deemed factual, Deloitte denies that it is appropriate for Plaintiffs to bring claims on behalf of the purported Class as defined or on behalf of any class. Deloitte reserves the right to object to and seek any appropriate remedy in response to any attempt by Plaintiffs to expand, modify, or alter the Class definition in response to information learned during discovery.

211. Deloitte incorporates by reference and realleges each and every response set forth in the preceding paragraphs of this Answer.

212. Paragraph 212 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 212 are deemed factual, Deloitte d lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

213. Paragraph 213 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 213 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

214. Paragraph 214 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 214 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

215. Paragraph 215 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 215 are

deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

216. Paragraph 216 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 216 are deemed factual, and to the extent they apply to it, Deloitte denies each and every such allegation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 216 and, on that basis, denies such allegations.

217. Paragraph 217 contains characterizations, conclusions of law, and argument, to which no answer is required. However, to the extent the allegations in Paragraph 217 are deemed factual, Deloitte lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 217 and, on that basis, denies such allegations.

218. Paragraph 218 contains conclusions of law and argument, to which no answer is required. However, to the extent the allegations in Paragraph 218 are deemed factual, and to the extent they apply to it, Deloitte denies each and every such allegation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 218 and, on that basis, denies such allegations.

219. Paragraph 219 contains conclusions of law and argument, to which no answer is required. However, to the extent the allegations in Paragraph 219 are deemed factual, and to the extent they apply to it, Deloitte denies each and every such allegation. Deloitte otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 219 and, on that basis, denies such allegations.

## GENERAL DENIAL

220. All allegations of the Second Amended Class Action Complaint not expressly admitted are denied. In addition, the headings in the Second Amended Class Action Complaint are redundant and impertinent; as headings are not allegations, no response to them is necessary.

To the extent such headings are deemed to contain factual allegations, such allegations are hereby denied.

## AFFIRMATIVE DEFENSES

By way of Affirmative Defenses, Deloitte alleges:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

221. Each plaintiff's allegations fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

222. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, by the applicable statutes of limitations and other applicable periods of repose.

### THIRD AFFIRMATIVE DEFENSE

(ORS 59.115 Due Diligence)

223. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, because Deloitte & Touche LLP did not know and, in the exercise of reasonable care, could not have known of the existence of facts on which each plaintiff's claims are based.

### FOURTH AFFIRMATIVE DEFENSE

(*In Pari Delicto*)

224. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, by the doctrine of *in pari delicto*.

### FIFTH AFFIRMATIVE DEFENSE

(Waiver)

225. Each plaintiff, by acts, omissions, and/or conduct, has waived, in whole or in part, his/her claims against Deloitte & Touche LLP.

**SIXTH AFFIRMATIVE DEFENSE**

(Estoppel)

226. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, by the doctrine of estoppel or other related equitable doctrines.

**SEVENTH AFFIRMATIVE DEFENSE**

(Comparative Fault)

227. Any and all damages claimed by each plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Deloitte & Touche LLP, under the principles of comparative fault.

**EIGHTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

228. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, by the clean hands doctrine.

**NINTH AFFIRMATIVE DEFENSE**

(Ratification)

229. Each plaintiff's claims are barred, in whole or in part, as a result of his/her respective ratification of each act alleged.

**TENTH AFFIRMATIVE DEFENSE**

(Loss Causation or Superseding Cause)

230. Each plaintiff's claims against Deloitte & Touche LLP are barred because each plaintiff's alleged losses and/or damages, if any, were caused by superseding or intervening causes, and/or the conduct of others, other defendants and/or third parties, or other factors for which Deloitte is not responsible, and did not result from any acts or omissions by Deloitte & Touche LLP.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Laches)

231. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, by the doctrine of laches.

**TWELFTH AFFIRMATIVE DEFENSE**

(Offset Damages)

232. Any recovery for damages allegedly incurred by each plaintiff, if any, is subject to offset in the amount of any benefit actually received by each plaintiff through his/her investments or other equitable grounds for reducing recovery.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Bespeaks Caution)

233. Each plaintiff's claims against Deloitte & Touche LLP are barred, in whole or in part, because any alleged statements of material fact, alleged omissions of material fact, or other challenged statements were contained or were made in the context of sufficient cautionary language or risk disclosures and thus are rendered non-actionable under the "bespeaks caution" doctrine.

**FOURTEENTH AFFIRMATIVE DEFENSE**

(Failure to Mitigate Damages)

234. Plaintiffs have each failed to mitigate their respective damages, thus barring or reducing their recovery.

**FIFTEENTH AFFIRMATIVE DEFENSE**

(Additional Defenses)

235. Deloitte & Touche LLP hereby adopts and incorporates by reference any and all other defenses asserted, or that may hereafter be asserted, by any other defendant to the extent such defense may be applicable to Deloitte & Touche LLP. Deloitte & Touche LLP also

reserves the right to assert additional affirmative defenses as they may become apparent as the result of discovery or otherwise.

## RIGHT TO ATTORNEY FEES

236. If Deloitte prevails on any of plaintiffs' claims under the Oregon Securities Law, the Court should award Deloitte reasonable attorney fees pursuant to ORS 59.115(10).

## PRAYER FOR RELIEF

**WHEREFORE**, Deloitte prays that Plaintiffs take and be awarded nothing from or against Deloitte by way of their Complaint, that judgment be entered against Plaintiffs and in favor of Deloitte, that Deloitte be awarded its costs and attorneys' fees, and that Deloitte be awarded all other relief just and proper.

Dated: November 19, 2018

LATHAM & WATKINS LLP

By: s/ Peter A. Wald
**Peter A. Wald (admitted *pro hac vice*)**
**Gavin M. Masuda (admitted *pro hac vice*)**
**Nicole C. Valco (admitted *pro hac vice*)**
**Marcy C. Priedeman (admitted *pro hac vice*)**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Email: peter.wald@lw.com
gavin.masuda@lw.com
nicole.valco@lw.com
marcy.priedeman@lw.com

–And–

**Nicholas J. Siciliano (admitted *pro hac vice*)**
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: nicholas.siciliano@lw.com

–And–

**Robert C. Weaver, Jr.**, OSB No. 801350
**Gary I. Grenley**, OSB No. 751380
**Paul H. Trinchero**, OSB No. 014397
**Eryn Karpinski Hoerster**, OSB No. 106126
**Daniel L. Keppler**, OSB No. 923537
GARVEY SCHUBERT BARER, P.C.
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Email: rweaver@gsblaw.com
ggrenley@gsblaw.com
ptrinchero@gsblaw.com
ehoerster@gsblaw.com
dkeppler@gsblaw.com

**Attorneys for Defendant Deloitte & Touche LLP**