Philip S. Van Der Weele, OSB #863650
Email: phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, OR  97258
Phone:  503-228-3200
        Attorneys for Tonkon Torp LLP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,<br>　　　　　　Defendants. | Case No. 3:16-cv-00580-AC<br><br><br>DEFENDANT TONKON TORP LLP'S OPPOSITION TO DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO COMPEL |

DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT .....................................................................................................3

    A.    None of the three reasons Sidley has offered as to why it needs the
           discovery it seeks to compel is valid.........................................................3

          1.    Tonkon's distributions of income to a subset of its partners are not
               relevant to whether Tonkon is "partially solvent." .....................................3

          2.    ORS 67.615 is not relevant to Tonkon's settlement, and Tonkon's
               distributions to a subset of its partners are not relevant to whether
               Tonkon has distributed income in violation of ORS 67.615(1)..................4

          3.    Income Tonkon has distributed to a subset of its partners is not
               relevant to the adequacy of the settlement, and, in any event,
               Tonkon has produced information on the financial condition of
               three of its partners superior to the information Sidley seeks to
               compel......................................................................................................6

    B.    The information Sidley seeks to compel would be subject to a
           confidentiality agreement that Sidley has already breached...............................10

III.  CONCLUSION...................................................................................................10

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Price,* Case No. 3:17-cv-00869-HZ(D. Or. 2017).......................................................6, 7

*Merrihew v. Schwab, et al.*, Multnomah Co. Cir. Ct. Case No. 0907-10596,
    Contribution Claims Bar Order dated August 11, 2010 .........................................................3

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815, 119 S.Ct. 2295 (1999)......................................................................................7

**Statutes**

ORS 58.185.............................................................................................................................8

ORS 58.185(3).........................................................................................................................8

ORS 58.185(4).........................................................................................................................8

ORS 67.105(4).........................................................................................................................8

ORS 67.615.............................................................................................................................5

ORS 67.615(1).........................................................................................................................5

ORS 67.615(4).........................................................................................................................6

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

## I.     INTRODUCTION

Tonkon recognizes that the conditional, dollar-for-dollar judgment reduction rule Tonkon is asking this Court to follow entitles the Non-Settling Defendants to discovery on Tonkon's financial condition.  Even before July 16, 2018, the date Plaintiffs filed the original Motion for Preliminary Approval of Class Settlement (Doc. 333), Tonkon had begun voluntarily producing documents regarding its finances to the Non-Settling Defendants.  By the time of this Court's August 31, 2018 order that permitted the parties to "immediately begin discovery on the pro tanto issue" (Doc. 360, point (5)), Tonkon had already voluntarily produced 244 pages of Tonkon's financial information to the Non-Settling Defendants.  Tonkon also fully responded to a letter from the Non-Settling Defendants dated August 24, 2018 requesting additional documents, producing an additional 62 pages on September 18, 2018.  On September 18, 2018 Tonkon also produced an additional 542 pages voluntarily - *i.e.*, documents not even requested by the Non-Settling Defendants.  Documents already produced include five year's worth of Balance Sheets and Income Statements, multiple reports showing the aging of Accounts Receivable and Unbilled Work in Process, and budgets.  Tonkon's prompt, voluntary productions have already enabled the Non-Settling Defendants to invoke Tonkon's financial information in making the same arguments Sidley is essentially repeating here: (1) Tonkon is not currently insolvent; and (2) Tonkon isn't paying enough to settle this case.  <u>See</u> Unredacted Version of Doc. 370, Non-Settling Defendants' Response to Plaintiffs' Amended Motion for Preliminary Approval of the Tonkon settlement (filed under seal), internal p. 29, and Exs. 36-41 (filed under seal) to the Declaration of Gavin Masuda (Doc. 372).

Tonkon has also responded comprehensively and in good faith to Sidley's extensive written discovery requests, which consist of fifteen Requests for Admission, fifteen Requests for

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

Production of Documents, and seven Interrogatories.  Although Sidley's email requesting a meet-and-confer broadly criticized Tonkon's "deficient responses" to the written discovery (Templeton Decl., Ex. C, Doc. 407-3, p. 2), Sidley sought to confer on only two of the seven interrogatory responses, one of the fifteen document requests, and none of the responses to the fifteen RFAs.  The Motion to Compel is narrower still, addressing only one interrogatory (Interrogatory #2) and a request for production of documents (Request #7) that Sidley narrowed unilaterally after the meet and confer.[1]  Finally, after seeing Sidley's Motion, Tonkon produced the personal Balance Sheets of three of its partners, even though they are not documents that Sidley requested, let alone moved to compel production of.

Having already provided extensive discovery, Tonkon has drawn the line at the information Interrogatory #2 and Document Request #7 now coextensively seek: the income that Tonkon has distributed to a subset of its equity partners since October 1, 2015.[2]  This information is not relevant.  Moreover, given the reasons Sidley has given for relevance, the information Sidley seeks is inferior to information Tonkon has already produced.  That produced information includes Tonkon's Balance Sheets, which show the distributions of income to all Tonkon partners in the aggregate, and the personal Balance Sheets of the Tonkon partners who were most closely involved in the securities offerings at issue, which show their (lack of) ability to pay a meaningful amount in connection with a judgment or future contribution claim in the hypothetical world in which there is no settlement.

---

[1] Following the meet and confer, Sidley narrowed the scope of Document Request No. 7 to make it co-extensive with the subset of partners covered by Interrogatory 2, and shortened the time period covered by Interrogatory 2 to October 1, 2015.  Motion, Doc. 406, p. 6 (internal page 5), footnote 1 and accompanying text.

[2] Sidley presumably picked October 2015 because that is the month in which Tonkon withdrew from representing any Aequitas entity.

PAGE 2 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

## II.    ARGUMENT

Sidley offers three reasons as to why Tonkon should be compelled to specify how much income it has distributed to a subset of its equity partners.  None of those three reasons is valid. Moreover, Sidley has already breached a confidentiality agreement to which this extremely confidential and competitively sensitive information of Tonkon would be subject.

### A.    None of the three reasons Sidley has offered as to why it needs the discovery it seeks to compel is valid.

#### 1.    Tonkon's distributions of income to a subset of its partners are not relevant to whether Tonkon is "partially solvent."

<u>First</u>, Sidley says it needs to know how  much income Tonkon distributed to certain of its partners in order to challenge Tonkon's claim of "partial insolvency" (or, equivalently, "partial solvency," to use the terminology of Judge Rees in *Merrihew*).[3]  (Doc. 406 at 8-9.)  Whether Tonkon is "partially solvent," as that term is used in *Merrihew*, is relevant because partial solvency is an element of the judgment reduction rule Tonkon has asked this Court to follow. But distributions of income Tonkon has made to only a subset of its equity partners are not relevant to whether Tonkon is partially solvent.  As used in *Merrihew*, "partially solvent" refers to the inability of a settling defendant to satisfy a judgment against it in the hypothetical world in which there is no settlement.  (Tonkon Reply Memo In Support of Amended Motion, Doc. 385, pp. 29-31.)  Income distributed to only a subset of partners bears no connection to Tonkon's inability to pay.  Tonkon's assets are certainly relevant, but Tonkon has already produced numerous Balance Sheets, Accounts Receivable Reports, and Unbilled Work in Process Reports. Tonkon's income may be relevant, but Tonkon has already produced its Income Statements.

---

[3] A copy of Judge Rees' Contribution Claims Bar Order dated August 11, 2010 in *Merrihew v. Schwab, et al.,* Multnomah Co. Cir. Ct. Case No. 0907-10596, is attached as Exhibit B to the Declaration of Philip Van Der Weele in Support of Class Representatives Amended Motion for Preliminary Approval of Partial Settlement, Doc. 386-2.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

And if the portion of its annual income that Tonkon, as a pass-through entity for tax purposes, pays out to its equity partners is relevant, then it is Tonkon's distributions to all equity partners in the aggregate that are relevant.  Those aggregate payments are shown on Tonkon's Balance Sheets, which Tonkon had already produced months before Sidley even made its written discovery requests.[4]

Not surprisingly, the Non-Settling Defendants had already figured out Tonkon's distributions to its equity partners from Tonkon's Balance Sheets even before Sidley served its written discovery requests on Tonkon.  The Response of the Non-Settling Defendants to Amended Motion for Preliminary Approval of Class Settlements stated: "Since this lawsuit was filed in 2016, Tonkon has **distributed more than [actual number contained in unredacted version] to its individual partners** - including partners who performed the work for which Tonkon has been sued" (emphasis in original; citing to Tonkon Balance Sheets).  (Internal page 29 of Unredacted Response; Redacted Response is Doc. 370, and the quoted sentence is at page 34 of Doc. 370.)  Thus, Tonkon has already produced information sufficient for Sidley to challenge Tonkon's claim that Tonkon is "partially solvent" as that term is used in *Merrihew*, and the information Sidley seeks is not relevant to that challenge.

> **2.    ORS 67.615 is not relevant to Tonkon's settlement, and Tonkon's distributions to a subset of its partners are not relevant to whether Tonkon has distributed income in violation of ORS 67.615(1).**

The <u>second</u> argument Sidley offers for the relevance of the information it seeks to compel is that that information "relates to the validity of Tonkon's distributions to its partners" under

---

[4]  In the "Partners' Equity" portion of each of these Balance Sheets, distributions of income to equity partners are shown in two line items, "Bonus's Paid January" and "Partners' Draws." The Partners' Equity portion of the Balance Sheet also shows, on an aggregate basis, the capital payments made by equity partners and capital payments received by retiring equity partners, but those numbers are not significant, so we will just refer to the distributions of income, which include Draws and Bonuses.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

ORS 67.615  (Doc. 406, p. 3, last paragraph; pp. 9-10)  This argument fails for two reasons.

First, ORS 67.615 is not relevant in this settlement to any element of *Merrihew's* conditional,

dollar-for-dollar judgment rule.  *Merrihew* requires insolvency <u>or</u> partial solvency.  Tonkon

acknowledges (happily) that it is not insolvent, and Tonkon cited ORS 67.615(1) in connection

with that acknowledgement.  (Doc. 385, p. 29)  The Non-Settling Defendants, including Sidley,

agree, having already told this Court that Tonkon "is in fact comfortably solvent and financially

successful."  (Doc. 370, p. 34, first paragraph)  Because Tonkon is not relying on "insolvency" to

satisfy any element of *Merrihew*, ORS 67.615 is not relevant.[5]   Second, even if ORS 67.615 was

relevant - and it is not - distributions to a subset of equity partners would not be relevant to the

"validity" of distributions under ORS 67.615.  Payments made to a subset of partners are

irrelevant to the issue of whether Tonkon distributed "too much" to its equity partners.  If

Tonkon's distributions to its partners were problematic (and they are not, because Tonkon is not

currently insolvent), it would be because those distributions, in the aggregate, had exceeded

some amount.  As explained in subsection 1 above, Tonkon has already produced documents - its

Balance Sheets - showing how much income, in the aggregate, Tonkon has distributed to its

equity partner each year.  Therefore, Sidley already has all the information it

needs for its (misguided) challenge to the "validity" of Tonkon's distributions to its equity

partners.[6]

---

[5] As Tonkon explained in its Reply Memo, a consequence of the undisputed fact that Tonkon is
not currently insolvent is that Tonkon's distributions to its equity partners have been perfectly
legal under ORS 67.615.  (Doc. 385, p. 29, n. 13.)  This consequence does not somehow put
Tonkon's distributions to its partners at issue as Sidley contends at Doc. 406, pp. 9-10.  Those
distributions would be at issue if Tonkon were claiming, or if Sidley were claiming, that Tonkon
is currently insolvent.  But neither Tonkon nor Sidley is so claiming.
[6] Sidley says it needs discovery on Tonkon's attempt "to justify these distributions by asserting
that they are permitted by Oregon's LLP statute, ORS 67.615(4).  (Doc. 406, bottom of p. 9).
Tonkon had cited ORS 67.615(4) as a second, independently sufficient, reason as to why

PAGE 5 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

3.    **Income Tonkon has distributed to a subset of its partners is not relevant to the adequacy of the settlement, and, in any event, Tonkon has produced information on the financial condition of three of its partners superior to the information Sidley seeks to compel.**

<u>Third</u>, Sidley says that it needs to know the income Tonkon has distributed to a subset of its equity partners in order to assess the adequacy of the settlement payment. Sidley's argument of how distributions to partners are relevant to the adequacy of the settlement payment to the Class has two prongs, which correspond to two perspectives: that of the payor (Tonkon); and that of the payees (the subset of Tonkon's equity partners). In evaluating the distributions from the perspective of payor Tonkon, Sidley argues that if Tonkon has income to distribute to partners, it should be reserving some (unspecified) portion of that income to pay to the plaintiffs. And, in evaluating the distributions from the perspective of the subset of payee partners, Sidley argues that if those partners are earning income, they can contribute some (unspecified) portion of that income to the settlement payment.

Sidley's argument fails for three reasons. <u>First</u>, the argument rests on an incorrect premise. That incorrect premise is that, in order to approve the settlement, the Court must find that it the settlement payment represents some theoretical <u>maximum</u> payment possible. That premise comes from *Brown v. Price*, on which Sidley relies (Doc. 406, p. 8), but the premise is incorrect, because *Brown v. Price* does not apply to this settlement. For starters, unlike the partial settlement before this Court, *Brown v. Price* was a settlement with <u>all</u> defendants, so the Amended Judgment of Dismissal did not address a bar of contribution claims or the method of

---

Tonkon's distributions have been legal, with the first reason being that Tonkon is not insolvent. Reply Memo, Doc. 385, p. 29, n. 13. This citation does not put distributions made to a subset of partners at issue, because (1) everyone agrees that Tonkon is not insolvent; and (2) even if any distributions were relevant under ORS 67.615(4), it would be distributions in the aggregate, which Tonkon has already disclosed. Finally, the Income Statements Tonkon has produced demonstrate that Tonkon generates revenue by providing legal services, not by engaging in other lines of business that might render ORS 67.615(4) inapplicable.

PAGE 6 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

judgment reduction flowing from such a bar.  Declaration of Philip Van Der Weele filed herewith ("Van Der Weele Decl."), ¶ 3, Ex. 1, p. 2.

A further distinguishing fact is that the settlement in *Brown v. Price*, unlike Tonkon's settlement, did <u>not</u> permit opt-outs.[7]  Consequently, that settlement was subject to a different legal standard than the *Merrihew* standard for a settlement that permits opt outs.  For a settlement that does <u>not</u> allow opt-outs, the Supreme Court has held that district courts must determine that the settlement fund (referred to in this context as a "limited fund") is set at the maximum amount: "The first and most distinctive characteristic [of a limited fund class action settlement] is that the totals of the aggregated liquidated claims and the fund available for satisfying them, <u>set definitively at their maximums</u>, demonstrate the inadequacy of the fund to pay all claims." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838, 119 S.Ct. 2295, 2311 (1999) (emphasis added). That requirement of a maximum payment does not exist for an opt-out settlement, and with good reason.  If investors determine that the settlement payment is inadequate, they can opt-out.  The plaintiffs here do not need Sidley, who has motives for blowing up the settlement contrary to the best interests of the plaintiffs, to protect their economic interests.[8]

---

[7] *Brown v. Price*, Amended Order Approving Class Action Settlement, Templeton Dec., Ex. D, Doc. 407-4, top of p. 7: "Only a Rule 23(b)(1)(B) **non-opt out class** would prevent individuals from disproportionately depleting defendants' assets (and insurance) by prosecuting separate cases" (emphasis added).

[8] This discovery motion is not the place to address the merits of the settlement agreement. Nevertheless, because Sidley insinuates that the plaintiffs' attorneys gave away the store in settlement with Tonkon, leaving it up to Sidley to protect the interests of the Class, it is worth noting that Sidley has misstated or ignored critical features of the Tonkon's Stipulation and Agreement of Settlement with the Class (the "Stipulation"), thereby masking the significant financial risks Tonkon faces, even assuming that Tonkon obtains court approvals of all settlements.  Sidley asserts that "Tonkon proposes to pay the <u>remaining limits on its professional liability policy</u>, which will be split between the Class and individuals who have sued Tonkon in separate lawsuits." (Motion to Compel, Doc. 406, p. 4.)

PAGE 7 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

Second, if Tonkon's ability to pay more in settlement were relevant (which it is not), then at most, Tonkon's distributions of income in the aggregate would be relevant, not a subset of those distributions. As explained above, Tonkon has already produced its Balance Sheets, which show its aggregate distributions, and its Income Statements, which show its aggregate income.

Third, to the extent that the financial condition of certain individual partners is relevant under *Merrihew*, Tonkon has already provided the personal balance sheets for those partners, and that information is superior to the information Sidley seeks to compel. Under *Merrihew*, Tonkon must show that the $18.5 million it is paying in settlement now is more than what those who would be subject to contribution claims in the hypothetical world in which there was no

---

Not so. Tonkon has agreed to pay a minimum of $18.5 million, plus a supplemental payment of Remaining Policy Limits if that number is greater than $0. Stipulation, Doc. 355-1, p. 7 ¶ 2 (allocation of $18.5 million settlement payment between Class Action and Individual Actions) p. 6, ¶ 1-(y) (definition of "Remaining Policy Limits"); p. 8, ¶ 5 (payment of Remaining Policy Limits, if any, for the benefit of the Class).

Because Tonkon's total insurance started at $20.35 million ($350,000 PLF plus $20 million excess), $1.85 million represents the portion of Tonkon's total insurance not committed to the $18.5 million minimum settlement payment. Therefore, Tonkon bears the risk of having to make substantial payments itself that are not covered by insurance. These payments, which in effect come out of the pockets of Tonkon's equity partners, fall into two categories. The first category is litigation expenses (costs and attorneys fees). Tonkon will have to pay litigation expenses out of pocket to the extent those expenses, from the very beginning of this case in April 2016 through the final approval of settlements for all cases, exceed, in the aggregate for all seven cases, $1.85 million. (In the meantime, as long as Remaining Policy Limits is greater than $0, every dollar Tonkon spends fighting with Sidley to get this settlement approved is one less dollar available to the Class.) The second category of payments Tonkon is obligated to make out of its own pocket are payments to defend itself or to settle with plaintiffs who opt-out of the settlement, as long as the Opt-Out Threshold is not reached. If the Opt-Out Threshold is reached, then Tonkon must choose whether to pay out of its own pocket to deal with all the opt-outs or forego the settlement. Stipulation (Doc. 355-1), pp. 19-20, ¶ 38.

Finally, Sidley ignores the fact that any claims against Tonkon partners arising under ORS 58.185 (which applies to limited partners in an LLP by operation of ORS 67.105(4), *see* Doc. 406, p. 7) are claims belonging to the persons receiving Tonkon's services, *i.e.*, the Receivership Entity. See ORS 58.185(3) and (4). The Receivership Entity is not a member of the Settlement Class or a plaintiff in any of the Individual Actions. Therefore, Tonkon and its partners must address potential claims of the Receivership Entity apart from the $18.5 million aggregate settlement payment for investor lawsuits.

PAGE 8 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

settlement could be expected to pay after judgments in favor of plaintiffs. Tonkon will assume, for purposes of this motion only, that three of its individual partners would be subject to contribution claims in the hypothetical world of no settlement, thereby potentially making their ability to pay relevant.[9]

But the "income distributed" information Sidley seeks to compel is not relevant to ability to pay. Income distributed to a partner does not equate to personal assets of that partner available to satisfy a judgment. In essence, Sidley is confusing an Income Statement - inflows and outflows over time - with a Balance Sheet, a snapshot of what a person owns and owes at a given point in time. Income that Tonkon's partners have earned can be spent (e.g., on taxes, mortgage payments, and food) or saved. Only if income is saved does it become an asset that is potentially available to creditors. Assets are reflected on Balance Sheets, not Income Statements. Accordingly, Tonkon has produced personal Balance Sheets (ex retirement accounts, which are exempt from creditors) of three individual partners, even though Sidley has not asked for them, let alone moved to compel their production.[10]

---

[9] This assumption raises the question of whether the plaintiffs and Sidley would have been better off if the plaintiffs had named certain individual partners of Tonkon as defendants as well. The answer to that question is a resounding "no." Naming individuals as defendants would have been counterproductive because each individual would have been entitled separate defense counsel as to the "participate or materially aid" element of secondary liability, and the statutory affirmative defense. Multiple law firms and pursuing multiple defenses would have simply resulted in a much more rapid dissipation of the insurance policy, leaving less for the plaintiffs in settlement, and less for Sidley in a judgment reduction.

[10] In connection with this voluntary production, Tonkon did not request a personal Balance Sheet from a former Tonkon partner who worked on some Aequitas securities offerings, because she is the sole breadwinner in a family with two young children, and her husband has stage 4 colon cancer.

PAGE 9 – DEFENDANT TONKON TORP'S OPPOSITION TO SIDLEY
AUSTIN'S MOTION TO COMPEL

**B.      The information Sidley seeks to compel would be subject to a confidentiality agreement that Sidley has already breached.**

Sidley's Motion should be denied for the independent reason that Sidley has already breached the confidentiality agreement regarding Tonkon's financial information.  Tonkon has been producing its financial information, which is highly confidential and competitively sensitive, subject not only the Protective Order in this case, but also to a bilateral confidentiality agreement with each Non-Settling Defendant, including Sidley.  That confidentiality agreement, entered into on behalf of Sidley by Munger Tolles, gives attorneys at Munger Tolles, client reps at Sidley, and consulting experts access to Tonkon's financial information.  The agreement does not, however, permit Sidley's Oregon lawyers (or the Oregon lawyers of any other Non-Settling Defendant) to have access to that information.  Van Der Weele Decl., ¶ 4, Ex. 2.  As explained in Tonkon's responses to Interrogatory #2 and Document Request #7, Sidley/Munger Tolles breached this confidentiality agreement.  (Templeton Dec., Ex. A, Doc. 407-1, pp. 3-4; Ex. B, Doc. 407-2, pp. 3-4.)[11]  The information that Sidley seeks to compel - the amount of income Tonkon has distributed to certain of its partners each year - is extremely competitively sensitive, and Sidley cannot be counted on to keep it shielded from Oregon law firms.

## III.    CONCLUSION

For the foregoing reasons, Tonkon respectfully requests that the Court deny Sidley's Motion to Compel.

---

[11] These written responses also refer to breaches of a confidentiality agreement by Deloitte's counsel, Latham & Watkins.  Unlike Sidley's counsel, however, Latham & Watkins apologized and promptly took extensive remedial steps to try to prevent unauthorized persons from seeing Tonkon's financial information.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

Dated this 30th day of November, 2018.

K&L GATES LLP

By:  s/Philip Van Der Weele
Philip Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
503-228-3200
Attorneys for Tonkon Torp LLP

PAGE 11 – DEFENDANT TONKON TORP'S OPPOSITION TO
SIDLEY AUSTIN'S MOTION TO COMPEL

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of DEFENDANT TONKON TORP

LLP'S OPPOSITION TO DEFENDANT SIDLEY AUSTIN'S MOTION TO COMPEL to be

served upon all counsel of record to this matter on this 30th day of November, 2018 via the

Court's CM/ECF System.

DATED this 30th day of November, 2018.

s/Philip Van Der Weele
Philip Van Der Weele, OSB #863650

CERTIFICATE OF SERVICE