UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself
and as Trustee of CIUFFITELLI
REVOCABLE TRUST; GREG and
ANGELA JULIEN; JAMES and SUSAN
MACDONALD, as Co-Trustees of the
MACDONALD FAMILY TRUST; R.F.
MACDONALD CO.; ANDREW NOWAK,
for himself and as Trustee of the ANDREW
NOWAK REVOCABLE LIVING TRUST
U/A 2/20/2002; WILLIAM RAMSTEIN; and
GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated;

Case No. 3:16-cv-00580-AC

ORDER ON DEFENDANT'S
MOTIONS TO COMPEL

                Plaintiffs,

   v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK
& TRUST; and DUFF & PHELPS, LLC;

                Defendants.

1 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

ACOSTA, Magistrate Judge:

Presently before the court are two Motions to Compel (ECF Nos. 364 & 383) filed by Defendant Deloitte & Touche, LLP ("Deloitte").  The matters have been fully briefed, and the court heard oral argument on the motions on November 13, 2018.  For the reasons that follow, Deloitte's motions are denied.

*Pertinent Factual Background*

The parties and the court are well acquainted with the facts of this case and the court discusses here only facts pertinent to resolution of the parties' current discovery dispute.  Plaintiffs seek to represent a class of investors who purchased various securities from Aequitas Capital Management and its affiliated entities ("Aequitas").  Plaintiffs allege Deloitte and the other Defendants participated or materially aided the sale of Aequitas securities by means of untrue statements of material fact or omissions of material fact and are liable under Oregon Revised Statutes ("ORS") § 59.115(2).

In its first motion to compel, Deloitte seeks documents pertaining to Plaintiffs' financial condition and Plaintiffs' claims for damages.[1]  Deloitte previously filed a motion to compel concerning these documents, but withdrew that motion in exchange for Plaintiffs' agreement to produce damages documents in accordance with an order by the Honorable Kathleen M. Dailey in a related case, *Wurster et al. v. Deloitte & Touche, LLP, et al.*, 16CV25290 (Mult. Co. Cir. Ct.) ("*Wurster*").  (Decl. Gavin Masuda Supp. Deloitte Mot. Compel ("Masuda Decl.") Ex. 5, ECF No.

---

[1] Shortly before oral argument, the parties filed a Joint Stipulation indicating that they resolved their disagreement concerning the requested damages documents.  (Joint Stipulation Resolving Mot. Compel in Part, ECF No. 405.)  Consequently, the court does not consider the parties arguments concerning the damages documents.

2 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

365).   Deloitte contends that Plaintiffs have provided insufficient information pertaining to Plaintiffs' financial condition.  In its second motion to compel, Deloitte seeks documents pertaining to communications between Plaintiffs' counsel and the court-appointed Receiver in a related case, *SEC v. Aequitas Mgmt., LLC*, Case No. 3:16-cv-00438-JR (D. Or. filed March 10, 2016) (the "SEC action").

In response, Plaintiffs contend that their financial condition documents are not relevant to any claim or defense in this case.  Plaintiffs also argue that the documents requested in Deloitte's second motion are covered by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and are not relevant.  For all these reasons, Plaintiffs argue that Deloitte's motions to compel should be denied.

*Legal Standards*

Under Federal Rule of Civil Procedure ("Rule") 37(a)(3)(B), a party may move for an order compelling the production of requested documents.  FED. R. CIV. P. 37(a)(3)(B)(iv).  The party seeking to compel discovery has the burden of establishing its request is relevant under Rule 26(b)(1).  *Sarnowski v. Peters*, Case No. 2:16-cv-00176-SU, 2017 WL 4467542, at *2 (D. Or. Oct. 6, 2017).  The party opposing discovery has the burden of showing that discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections.  *Id.*; *Yufa v. Hach Ultra Analytics*, No. 1:09-cv-3022-PA, 2014 WL 11395243, at *1 (D. Or. Mar. 4, 2014) ("If a party elects to oppose a discovery request, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome, or not relevant.  Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation and quotation omitted)).  If a party objects to a discovery request, it is the burden of the party seeking discovery on a motion

to compel to demonstrate why the objection is not justified. *Weaving v. City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011).

In general, the party seeking to compel discovery must inform the court which discovery requests are the subject of the motion to compel, and, for each disputed request, inform the court why the information sought is relevant and why the objections are not meritorious. *Id.*

Rule 26(b)(1) provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Among the limitations Rule 26(b) provides is the direction that the court must limit the extent of discovery if it determines that the discovery sought is outside the scope of Rule 26(b)(1) or if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i); *Quaiz v. Rockler Retail Group, Inc.*, Case No. 3:16-cv-01879-SI, 2017 WL 960360, at *1 (D. Or. Mar. 31, 2017). Also the court has discretion to limit the scope of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii).

*Discussion*

I.    Motion to Compel ECF No. 364

In this motion, Deloitte seeks an order compelling Plaintiffs to produce documents responsive

to its Request for Production No. 13 ("RFP 13") in its First Set of Request for Production.  RFP 13

seeks documents pertaining to Plaintiffs' financial condition at the time of their Aequitas security

purchases or sales ("Financial Condition Documents"), and provides:

> Documents sufficient to show Your financial condition at the time of all of Your
> transactions of any Aequitas Security or any other Transaction with any Aequitas
> Entity, including without limitation Your federal income tax returns from the two
> years prior to such Transaction, Your investment, bank, or other account statements
> showing Your income, assets, or liabilities, or any other documentation sufficient to
> show Your income, assets, or liabilities.  (Masuda Decl. Ex. 1 at 9.)

Deloitte argues that it is entitled to documents pertaining to Plaintiffs' financial condition for

three primary reasons.  First, Deloitte argues that to establish its defense that the Aequitas securities

were not required to be registered under Rule 506, it must demonstrate that it offered the securities

to "accredited investors."  Deloitte contends that  Plaintiffs were required to affirm that they were

"accredited investors" (*i.e.*, their net worth was over $1 million or their income was over $200,000

for two years) when they signed their Aequitas PPM subscription agreements.  Thus, Deloitte argues

the Financial Condition Documents are relevant to Deloitte proving the securities were exempt from

registration.

Second, Deloitte argues that Plaintiffs' financial condition and investment experience is

relevant to Plaintiffs' knowledge and understanding of the risks of their investments.  Deloitte

contends that "accredited investors" are deemed to have a certain amount of financial sophistication,

and thus, the requested documents are relevant to test Plaintiffs' assertion that they did not know or understand the alleged misstatements in the securities they purchased.

Third, Deloitte contends that the Financial Condition Documents are relevant to class certification. Deloitte maintains that any unique defenses or credibility challenges it has against the lead Plaintiffs could impact Plaintiffs' ability to represent the putative class. Deloitte argues that it is entitled to impeach the credibility of any Plaintiffs who misrepresented their "accredited investor" status.

In response, Plaintiffs contend that their accredited investor status is not relevant to any claim or defense because they are challenging the Rule 506 exemption based on Aequitas engaging in general solicitations and advertising, not their accredited investor status. Plaintiffs have offered to stipulate to being accredited investors, an invitation Deloitte thus far has declined. Additionally, Plaintiffs argue that their financial condition documents are not relevant whatsoever to whether they knew of any untrue statements or omissions relating to Aequitas and its financial condition. And, Plaintiffs assert that their Financial Condition Documents do not bear on any issue pertaining to class certification because the affirmative defenses of unclean hand and *in pari delicto* posited by Deloitte are not available under Oregon Securities law.

The court denies Deloitte's motion with respect Plaintiffs' Financial Condition Documents in RFP 13. As Plaintiffs correctly indicate, they are challenging whether Aequitas's securities were exempt under Rule 506 because they engaged in general advertising or general solicitations. Accordingly, Plaintiffs status as accredited investors is not an issue in dispute, and the requested documents are simply not relevant to establishing that the securities were exempt.

6 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

Deloitte's second argument similarly fails. Deloitte has not demonstrated that the requested Financial Condition Documents as they relate to Plaintiffs' "accredited investor" status are relevant to any claim or defense in this case. Deloitte suggests that accredited investors are imputed with a certain amount of knowledge, sophistication, and understanding of risks. But, the authorities Deloitte relies upon involve publicly traded federal securities fraud claims under Rule 10b-5. 17 C.F.R. § 240.10b-5; *see, e.g., City of Alameda v. Nuveen Municipal High Income Opportunity Fund*, No. C. 08-4575-SI, 2010 WL 4955605, at *1 (N.D. Cal. Dec. 1, 2010) (granting motion to compel to inquire into plaintiff's purchases of RBANs as relevant to "sophisticated investor" status under federal securities law); *see also Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (stating elements of 10b-5 claim, including that plaintiff must have relied on the misstatement or omission). Unlike Rule 10b-5 claims, in claims brought under ORS § 59.115(1)(b), only a purchaser's actual knowledge of a misrepresentation or omission is relevant, and the statute provides for strict liability for nonsellers who participate or materially aid the sale. *See Towery v. Lucas,* 128 Or. App. 555, 563-64 (1994) (providing that ORS § 59.115(1)(b) does not contain obligation to make an inquiry; rather buyer's actual knowledge is critical); *Prince v. Brydon*, 307 Or. 146, 148 (1988) (holding that "[k]nowledge becomes an element of liability only in the form of an affirmative defense, to be proved by a nonseller"). Thus, any suggestion that Plaintiffs' status as "accredited investors" is relevant is mistaken.

Deloitte's third rationale also fails. Deloitte has not demonstrated its need to test Plaintiffs' credibility at this juncture. Deloitte has not established that any factual basis for using the Financial Condition Documents as impeachment evidence presently exists. *See U.S. v. Bundy*, 3:16-cv-00051-BR, 2016 WL 9049598, at *2 (D. Or. July 15, 2016) (denying defendants' request for documents

7 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

they contended could have been used as impeachment evidence or to show bias because the credibility of witnesses was not yet at issue); *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 610 (S.D.N.Y. 1989) (noting evidence of investor sophistication is relevant to elements of deception and reliance in Rule 10b-5 case, but denying defendant's request for documents evidencing plaintiff's financial transaction experience because defendant "failed to present any factual basis for its speculations that the wide ranging discovery it seeks" would lead to evidence relevant to credibility). Here, Deloitte similarly offers only unsubstantiated speculation that at least some Plaintiffs have lied about being accredited investors. Deloitte's unsupported suggestion is without merit, and is not relevant to any claim or defense in the case. (Masuda Decl., Ex. 4 at 9-10 (*Wurster* Tr. April 6, 2018, at 8-9)) (finding that whether plaintiffs lied about being accredited investors and should not have purchased Aequitas investment was not a defense at issue in the case; denying discovery of financial condition documents).

Likewise, the court concludes that the Financial Condition Documents are not relevant any unique defenses or knowledge possessed by a particular Plaintiff that somehow bears on class certification issues. At oral argument, Deloitte insisted that it could assert an unclean hands or *in pari delicto* defense if it discovered that a Plaintiff was not an accredited investor. Deloitte, however, has failed to demonstrate that such defenses are distinct from comparative negligence. Deloitte has not established that under Oregon law any equitable defenses are available as part of the statute's design or purpose. *Hall v. Johnston*, 758 F.2d 421, 423 (9th Cir. 1985) (finding that equitable defenses run counter to Oregon's interests and are not applicable under ORS § 59.115).

Finally, Deloitte has not demonstrated that the Financial Condition Documents will lead to any information of probative value that advances the claims or defenses at issue in this case. The

8 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

court finds that Deloitte's request does not justify the cost and time required for Plaintiffs to produce their Financial Condition Documents. Thus, the court also concludes that Deloitte's request is not proportional to the needs of the case. FED. R. CIV. P. 26(b)(2)(C)(iii).

Accordingly, Deloitte's motion to compel the production of Plaintiffs' Financial Condition Documents responsive to RFP No. 13 is denied.

## II.    Motion to Compel ECF No. 383

In this motion, Deloitte moves to compel the production of all nonprivileged documents responsive to Requests Nos. 22 and 23 contained in its Second Set of Requests for Production of Documents ("Second RFP"). Deloitte seeks two sets of documents: (1) Plaintiffs' and their lawyers' communications with Ronald L. Greenspan, the court-appointed Receiver (the "Receiver") in the SEC action and documents related to those communications; and (2) documents related to certain Plaintiffs' involvement in the Receiver's Investor Advisory Committee ("IAC"). Deloitte asserts that the Receiver has played a large and undisclosed role in this litigation and such communications are relevant and not covered by privilege or work product protections.[2]

Specifically, Request No. 22 seeks: "All documents Relating to any Communications between You and the Receiver." (Decl. Gavin M. Masuda Supp. Deloitte's Mot. Compel ("Masuda Decl.") Ex. 11 at 10, ECF No. 384.) Request No. 23 provides the following:

> All documents Relating to Your involvement in the Receiver's Investor Advisory Committee ("IAC"), including all Documents Relating to any Communications between You and any Person in the IAC.

---

[2] Deloitte has similarly moved to compel production of these documents in the Multnomah County actions. (*See* Def.'s Mot. Compel at 9 n.9, ECF No. 383.)

(*Id.*)  In response, Plaintiffs assert the requested information is not relevant; is protected by the attorney-client privilege, the common-interest doctrine and settlement privilege; and that Deloitte's request is over- broad.

A.      *Background of the Receiver and the IAC*

This lawsuit is one of several following the collapse of Aequitas.  The SEC filed a complaint against Aequitas and its principals, Robert J. Jesnick, Brian A. Oliver, and N. Scott Gillis in the SEC action (the "Individual Defendants").  On March 16, 2016, the court in the SEC action entered a "Stipulated Interim Order Appointing Receiver" naming Mr. Greenspan as Receiver of the "Receivership Entity," and the "Extended Entities."  (Masuda Decl. Ex. 2.)  Broadly, the Receiver was appointed to marshal and preserve Aequitas assets.  The interim order also included a stay of any ancillary litigation proceedings.  (*Id.* at 8-9.)  On March 18, 2016, several of the Plaintiffs in this case, (listed as "interested parties" in the SEC action), filed a motion for relief from the litigation stay in the SEC action, seeking to assert Oregon Securities Law claims against non-receivership (non-Aequitas) parties.  (*Id.* Ex. 3.)

On April 14, 2016, the court in the SEC action entered a final Order Appointing Receiver ("Final Order").  (*Id.* Ex. 6.)  The Final Order contains a revised litigation stay, permitting "civil legal proceedings" that have accrued or are accruing to parties other than the Receiver and brought against "third party professionals, registered investment advisors, and others in which the Receivership Entity has no direct or indirect ownership interest."  (*Id.* Ex. 6 at ¶ 23.)  In a September 14, 2016 Receiver's Report, the Receiver noted that he "has undertaken efforts to maximize recovery under the various insurance policies while, at the same time, clearing a path for investors to pursue

recovery on claims against third party professionals which are not held by the Receivership Entity." (*Id.* Ex. 7 at 9.)

The Receiver formed the Investor Advisory Committeee ("IAC") to "facilitate regular communication regarding significant opportunities, challenges and actions" and is comprised of about 50 members, including registered investment advisors ("RIAs"), "individual investors representing approximately 1,100 of the investors and more than $406 million in investor funds." (*Id.* Ex. 7 at 31.) In the Receiver's September 14, 2016 Report, the Receiver indicated that IAC meetings occurred on March 6, 2016 (pre-receivership), April 27, 2016, June 22, 2016, and August 24, 2016. (*Id.*) In that Report, the Receiver also indicated that he also "provides substantially similar information to interested counsel immediately following IAC meetings" in order to "convey information regarding the receivership and also discuss strategy to maximize recovery to the Receivership Entity." (*Id.* at 32.) The Receiver indicated in the Report that:

> Copies of presentation materials utilized in the meetings were provided to SEC staff, and an SEC staff-representative attended the April 27, 2016 meeting in person. The Receiver and his counsel regularly apprise SEC staff of significant developments affecting the Receivership Entity. In addition, the Receiver provided an in-person report to SEC staff at the SEC's San Fransico office on May 9, 2016.

(*Id.*)

In the July 31, 2018 Receiver's Report, the Receiver indicates that he consolidated all digital information into a centralized database to which 250 users have access, including Deloitte and Plaintiffs' counsel. (*Id.* Ex. 8 at 9 & n.6.) In that Report, the Receiver also indicated that he has negotiated settlements between Aequitas Investors, the Individual Defendants, the Receivership Entity, and the responsible insurance carriers in an effort to maximize recovery and minimize litigation expenses. (*Id.* at 10.)

11 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

In its motion, Deloitte contends that members of the IAC include at least one Plaintiff from this action (James MacDonald), plaintiffs from the Multnomah County actions, registered investment advisors Keith Barnes and William Ruh, and representatives from Defendant Integrity Bank and Trust. Deloitte complains that it is unknown who is invited to attend the IAC meetings with counsel. Deloitte argues that the Receiver has been providing information to Plaintiffs to support their allegations, that the Receiver has assisted Plaintiffs in fulfilling their document production obligations, and that the Receiver was a key player in brokering the Tonkon partial settlement currently under the court's review. (Masuda Decl. Ex. 13 at 5; Am. Mot. Preliminary Approval of Partial Settlement, ECF No. 350.) Deloitte argues that the *pro tanto* bar order was the Receiver's idea, and that it has the effect of pushing off Tonkon's liability to the other non-settling Defendants.[3] (Masuda Decl. Ex. 8 at 27.) Deloitte further argues that the Receiver and the IAC have played key roles in the instant action, and therefore the documents requested in RFP Nos. 22 and 23 are relevant and discoverable.

Plaintiffs respond that they have provided all direct, personal communications with the Receiver related to their personal Aequitas investments. Plaintiffs contend that any remaining responsive documents are communications between them and the Receiver concerning litigation and

---

[3] The court notes that in the July 31, 2018 Receiver's Report, the Receiver indicated that the Individual Defendants (Jesnick, Oliver, and Gillis) and the SEC had reached a tentative resolution of the claims presented in the SEC action. (Masuda Decl. Ex. 8 at 10.) In the July 31, 2018 Report, the Receiver recommended that the Stay of Litigation against the Individual Defendants and the Receivership Entity not be lifted until sometime after September 30, 2018. (Masuda Decl. Ex. 8 at 11.)

settlement strategies that are protected by various privileges and confidentiality agreements, or are not relevant to any claims in dispute in this case and Deloitte's motion must be denied.[4]

      B.    *Analysis*

Deloitte contends that the Plaintiffs and the Receiver have been in communication about the lawsuit and relevant topics since before Mr. Greenspan was appointed as Receiver. It appears that Deloitte seeks information pertaining to IAC presentation materials to SEC staff, documents from the Receiver supporting litigation positions, documents relating to the valuation and sale of ACOF, documents pertaining to forensic findings shared with IAC and Plaintiffs' counsel, and documents relating to the settlement between Plaintiffs and Tonkon. (Def. Deloitte Mot. Compel at 6-7, ECF No. 383.) According to Deloitte, to the extent that any documents could be covered by privilege, the privilege has been waived.

Plaintiffs contend that the documents requested by Deloitte in RFP Nos. 22 and 23 fall into several categories: (1) communications between the Receiver and Plaintiffs' counsel relating to mediations or settlements of claims against Defendants and others; (2) communications between the Receiver and Plaintiffs' counsel regarding claims against Defendants; and (3) communications between the Receiver and his counsel and Plaintiff MacDonald in his role as member of the IAC. Plaintiffs argue that the requested documents contain confidential mediation communications, contain communications protected by the common-interest doctrine, or are covered by the work-

---

[4] Plaintiffs also contend that Deloitte did not adequately confer pursuant to Local Rule 7-1(a) prior to filing this motion. Information submitted by Deloitte in support of its motion reveals that the parties exchanged letters concerning RFP Nos. 22 and 23. (Masuda Decl. Exs. 13 & 14.) While the court always encourages parties to attempt to reach resolution, the court concludes that given the serious nature of the parties' dispute, further discussions were unlikely to do so in this instance.

product doctrine.  Finally, Plaintiffs submit that to extent that any documents are discoverable, Deloitte's requests are overbroad.

      1.     mediation/settlement communications between Receiver, Plaintiffs, and Plaintiffs' counsel

Deloitte contends that it is entitled to discovery of any documents created at any mediation involving Plaintiffs and the Receiver.  Deloitte argues such documents are necessary to establish that the Plaintiffs' settlement with Defendant Tonkon is coercive and prejudicial to the non-settling Defendants.

Plaintiffs acknowledge they have made the settlement reached with Defendant Tonkon available in the public record.  Information submitted by Plaintiffs includes the settlement amount. (Am. Mot. Preliminary Approval Partial Settlement at 3-4, ECF No. 350.) Plaintiffs submit that they have participated along with the Receiver in a second mediation.  Plaintiffs add that the Receiver acted as a third-party mediator to assist a smaller group of investors to settle their claims against Tonkon and that Plaintiffs participated in that mediation as well.  Plaintiffs argue that any communications at the various mediations are privileged, non-discoverable, and inadmissible.  The court agrees.

Pursuant to ORS § 36.220(1), "[m]ediation communications are confidential and may not be disclosed to any other person."  ORS § 36.220(1)(a).  If a communication is confidential under ORS § 36.220, it is inadmissible in "any subsequent adjudicatory proceeding." *Alfieri v. Solomon*, 358 Or. 383, 395-96 (2015) (*en banc*) (discussing mediation communications under ORS § 36.222(1)).  Likewise, federal courts recognize a "strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly

abrogated." *See Thomasian v. Wells Fargo Bank, N.A.,* No. 3:12-cv-01435-HU, 2013 WL 4498667, at *2 (D. Or. Aug. 22, 2013).

Plaintiffs have demonstrated that they and the Receiver were parties to two mediations conducted by third-party mediators, and that all statements, documents, and other written materials submitted at those mediations are privileged, non-discoverable, and inadmissible.  ORS §§ 36.110(7), 36.222(1).  To the extent that settlement amounts received by Plaintiffs become relevant to a post-judgment reduction of damages, that issue may be addressed at a later time.  *See Thomasian,* 2013 WL 4498667, at *2 (concluding that issues of off-set could be resolved post-trial and potential credibility issues could be resolved by court's *in camera* review; denying motion to compel settlement agreements); *Contreras v. Kohl's Dept. Stores, Inc.,* No. EDCV 16-2678-JGB (KKx), 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017) (same); *Peters v. Equifax Info. Servs. LLC,* No. EDCV 12-1837-TJH (OPx), 2013 WL 12169355, at *3 (C.D. Cal. Dec. 13, 2013) (same). Deloitte's motion to compel is denied.

2.    communications between the Receiver and Plaintiffs' counsel regarding claims against Defendants

The parties do not precisely define documents in this category.  Here, Deloitte seeks documents concerning the Receiver's meetings "with counsel for the various investor interests" to "convey information regarding the receivership" and discussing "strategy to maximize recovery into the Receivership Entity." (Masuda Decl. Ex. 7 at 32.)  Deloitte argues that the common-interest doctrine does not apply to these documents because Plaintiffs' interests and those of the Receiver are directly adverse.  Deloitte maintains that the Receiver's interests are adverse because the IAC comprises Aequitas insiders, registered investment advisors (including Barnes and Ruh), and Defendant Integrity Bank.  Additionally, Deloitte contends that any documents between the Receiver

15 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

and Plaintiffs' counsel cannot be protected by the work-product doctrine because the Receiver cannot play a role in helping Plaintiffs prepare for litigation. Further, Deloitte contends that Plaintiffs have not prepared a privilege log.

Plaintiffs argue that Deloitte's request is simply an effort to probe into Plaintiffs' and the Receiver's litigation strategies. Plaintiffs contend that the documents are not relevant to any claim asserted by the Plaintiffs or any affirmative defense asserted by Deloitte. Additionally, Plaintiffs contend that even if responsive documents are relevant, they are covered by the common-interest doctrine. Plaintiffs argue they share common interests with the Receiver because they are trying to maximize assets in order to repay Plaintiffs and the potential investor class. Additionally, Plaintiffs contend that their interests align with the Receiver because the Receiver also has claims against Deloitte and the other Defendants in this action. Plaintiffs highlight that their interests need not be identical, just sufficiently similar. Finally, Plaintiffs assert that it is contrary to common practice to create a privilege log for documents prepared during the course of litigation.

The court finds that on the current record, Deloitte has not established that any documents (beyond the investor packets Plaintiffs already have provided) evidencing communications between Plaintiffs and the Receiver are relevant to any claim or defense at issue in this case. Deloitte has not demonstrated that documents created by Receiver (appointed in April of 2016) are relevant to whether Aequitas sold securities to Plaintiffs in violation of Oregon Securities law and whether Deloitte participated or materially aided in the sale of those securities. And, Deloitte has not offered any argument to explain how the requested documents from Plaintiffs that concern the Receiver's asset recovery strategy after Aequitas entered receivership is probatively tied to Plaintiffs' underlying securities fraud claims. Deloitte's motion to compel these documents is denied.

16 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

3.      communications between the Receiver, the IAC, and others

In Request No. 23, Deloitte seeks documents pertaining to any Plaintiffs' involvement on the IAC, and all documents relating to any communications between Plaintiffs and any person on the IAC. Deloitte argues that even if the IAC materials are covered by the attorney-client or common-interest privilege, it has been waived. To that end, Deloitte contends that the Receiver has acknowledged providing certain IAC materials to SEC staff on April 27, 2016, and any documents related to an in-person report between the Receiver and SEC staff on May 9, 2016. (Masuda Decl. Ex. 7 at 32.) And, Deloitte contends that the Receiver has shared preliminary "forensic findings" with Plaintiffs and the IAC before they were made public. (Masuda Decl. Ex. 8 at 31.) Deloitte also appears to argue that the Receiver had communications with the IAC about the valuation and sale of ACOF.

Plaintiffs respond that their attorneys do not participate in IAC meetings; the IAC meetings are attended by IAC members, the Receiver, and the Receiver's attorneys. Plaintiffs contend that Mr. MacDonald's participation in IAC meetings is conditioned on the confidentiality of all information shared. Plaintiffs submit that documents the Receiver has provided to Mr. MacDonald as a member of the IAC are labeled "Privileged and Confidential" and constitute the Receiver's work product. Alternatively, Plaintiffs argue that information the Receiver shared with IAC members is not relevant to the issues in this lawsuit and, therefore, Deloitte is not entitled to discovery of those documents. Plaintiffs submit that any valuation of ACOF during Aequitas's receivership is simply not relevant to the claims at issue in the current litigation, which only relates to the pre-receivership valuation of ACOF.

17 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

As the court stated above, Deloitte has failed to demonstrate that its requests for documents revealing communications between Plaintiffs, the Receiver, and the IAC are relevant to any claim or defense at issue in this case. Deloitte has not shown that any documents provided at any IAC meeting are relevant to whether Aequitas sold securities in violation of Oregon Securities law and whether Deloitte participated or materially aided in the sale of those securities. And, contrary to Deloitte's suggestion that the Receiver assisted Plaintiffs with their document production in this case, the Receiver created a database of information publicly available to multiple parties, including Deloitte.

Deloitte likewise has failed to explain why it has not requested or subpoenaed its requested documents directly from the Receiver, who could then provide the documents or assert any claims of privilege, work product, or objections he may have. For example, Deloitte contends that the Receiver shared its preliminary "forensic findings" and discussed the valuation of ACOF with the IAC. However, it appears on the limited record before the court that the Receiver may assert such drafts are protected by a work-product privilege. Deloitte's attempt to obtain them through a motion directed at Plaintiffs in this action, as opposed to seeking them from the Receiver is inefficient, inconvenient, and not proportional. Thus, the court concludes that Deloitte has not demonstrated its request for the IAC documents will yield probative information that advances the claims or defenses that justify the cost and time required to produce it. Deloitte has failed to show its request cannot be obtained from another source that is less burdensome and more proportional to the needs of the case. FED. R. CIV. P. 26(b)(2)(C). Therefore, on the record as it currently stands, Deloitte's motion to compel is denied.

18 - ORDER ON DEFENDANT'S MOTIONS TO COMPEL

*Conclusion*

Based on the foregoing, Deloitte's Motion to Compel (ECF No. 364) is DENIED. Deloitte's Motion to Compel (ECF No. 383) is DENIED.

IT IS SO ORDERED.

DATED this _10th_ day of December, 2018.

JOHN V. ACOSTA
United States Magistrate Judge