UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and GREG WARRICK, for himself and, with SUSAN WARRICK, as Co-Trustees of the WARRICK FAMILY TRUST, individually and on behalf of all others similarly situated;

Plaintiffs,

v.

DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; INTEGRITY BANK & TRUST; and DUFF & PHELPS, LLC;

Defendants;

Case No. 3:16-cv-00580-AC

FINDINGS AND RECOMMENDATION PRELIMINARY APPROVAL OF PARTIAL CLASS SETTLEMENT

v.

N. SCOTT GILLIS; ROBERT J. JESENIK;
and BRIAN A. OLIVER;

Intervenors.

---

ACOSTA, Magistrate Judge:

In this putative class action, Plaintiffs Lawrence P. Ciuffitelli (on behalf of himself and as Trustee of the Ciuffitelli Revocable Trust); Greg and Angela Julien (as Trustees of the Gregory and Angela Julien Revocable Trust U/A 7/2/2012); R.F. MacDonald Co.; James and Susan MacDonald (as co-Trustees of the MacDonald Family Trust U/A 12/05/2000); Andrew Nowak (on behalf of himself and in his capacity as Trustee of the Andrew Nowak Revocable Living Trust U/A 2/20/2002); William Ramstein; Greg Warrick (on behalf of himself and as co-Trustee of the Warrick Family Trust); and Susan Warrick (as co-Trustee of the Warrick Family Trust) (collectively, "Plaintiffs"), allege multiple violations of Oregon Securities Law stemming from the sale of securities issued by "Aequitas," a group of related investment and private equity entities. According to Plaintiffs, they lost over $450 million on the securities they purchased from Aequitas. Plaintiffs seek to hold Defendants Deloitte & Touche LLP ("Deloitte"); EisnerAmper LLP ("EisnerAmper"); Sidley Austin LLP ("Sidley"); Tonkon Torp LLP ("Tonkon"); TD Ameritrade, Inc. ("Ameritrade"); Integrity Bank & Trust ("Integrity"); and Duff & Phelps, LLC ("Duff") (collectively, "Defendants") jointly and severally liable for participating or materially aiding the unlawful sale of Aequitas securities under Oregon Revised Statutes ("ORS") § 59.115(3).

In the instant motion, the named Plaintiffs seek preliminary approval of a settlement with Tonkon (the "Proposed Settlement"). If approved, the Proposed Settlement would provide at least

$12,913,000 to the putative class members. Tonkon and its insurers have agreed to pay all remaining insurance policy limits, in exchange for a release of all claims against it. Additionally, the Proposed Settlement is conditioned upon entry by the court of a *pro tanto* contribution claims bar.

Defendants Deloitte, EisenerAmper, Sidley, Ameritrade, and Duff (collectively, the "Non-Settling Defendants"), oppose preliminary approval of the Proposed Settlement, contending that the court should delay approval until the Ninth Circuit issues an en banc decision in *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679, *vacated and rehearing en banc granted*, 897 F.3d 1003 (9th Cir. 2018). The Non-Settling Defendants alternatively contend that Plaintiffs have not made a sufficient evidentiary record supporting provisional approval of a settlement class, and are not entitled to a *pro tanto* contribution claims bar. The court provides the following findings and recommendation to address the issues raised by the Non-Settling Defendants.

## *Background*

### I. Facts

Plaintiffs allege that Aequitas sold securities worth over $600 million without proper registration and made untrue statements of material fact or material omissions in violation of Oregon Securities Law. Aequitas was forced into receivership on March 1, 2016, and there is an ongoing SEC action against Aequitas and its principals pending in this court before the Honorable Jolie Russo. *SEC v. Aequitas Mgmt., LLC*, Case No. 3:16-cv-00438-JR (D. Or.). Defendants Deloitte and EisnerAmper are accounting firms that performed accounting and auditing services for various Aequitas entities. Defendant Sidley is a law firm that prepared legal documents necessary to sell securities through various Aequitas entities. Ameritrade served as custodian for various Aequitas

securities and referred investors to financial advisors to purchase Aequitas securities. Integrity, a commercial bank, also served as custodian for Aequitas securities and solicited sales of Aequitas securities. Duff is a financial services corporation that specializes in valuing commercial assets, and it provided valuations of three portfolio companies of an Aequitas fund, and its valuations were included in a private placement memorandum and in Aequitas' consolidated financial statements. In this action, Plaintiffs allege that Defendants are jointly and severally liable for Aequitas's violations because they participated or materially aided in the sales of various Aequitas securities to Class Members.

There are multiple other actions stemming from the collapse of Aequitas, including actions brought by numerous plaintiffs to recover investment losses. *Wurster v. Deloitte & Touche, LLP*, Case No. 16CV25920 (Multnomah Cty. Cir. Ct.); *Pommier v. Deloitte & Touche, LLP*, Case No. 16CV36439 (Multnomah Cty. Cir. Ct.); *Ramsdell v. Deloitte & Touche, LLP*, Case No. 16CV40659 (Multnomah Cty. Cir. Ct.); *Albers v. Deloitte & Touche, LLP*, Case No. 3:16-cv-02239-AC (D. Or.); *Layton v. Deloitte & Touche, LLP*, Case No. 17CV42915 (Multnomah Cty. Cir. Ct.); and *Cavanaugh v. Deloitte & Touche LLP*, Case No. 18CV09052 (Multnomah Cty. Cir. Ct.) (collectively, the "Individual Actions").[1] (Berman Decl., Ex. A, Stip. & Agreement of Compromise, Settlement, and

[1] In the *Wurster, Pommier, Ramsdell*, and *Layton* cases, Tonkon and Plaintiffs filed Joint Motions for Entry of Partial Judgment in which they seek entry of a *pro tanto* contribution claims bar in conjunction with Tonkon's proposed settlement of the Individual Actions. (Notice Supp. R. Ex. 1 at 4 & n.1, ECF No. 456-1). The Individual Actions have all been assigned to the Honorable Kathleen M. Dailey. Judge Dailey has deferred ruling on the Joint Motions filed in the Individual Actions until after this court issues a ruling on the instant motion. (Decl. Gavin Masuda Ex. 3, ECF No. 454-3) (attaching letter to counsel from Judge Dailey). Consequently, this court permitted the parties in the Individual Actions to supplement the record with briefing they filed in the state court cases. (Order, ECF No. 455.) The court has carefully considered the parties' supplements to the record (ECF No. 456 - 460) and addresses arguments contained therein where appropriate.

Release at 5, ECF No. 355-1.) Also, a putative class of investor plaintiffs sued a number of registered investment representatives, alleging assorted violations of California and Washington securities laws, breach of contract, negligence, breach of fiduciary duties, among other allegations. *Brown v. Price*, Case No. 3:17-cv-00869-HZ (D. Or.). The *Brown* action has settled.

Defendant Tonkon, a law firm in Portland, Oregon, was one of Aequitas's law firms for an ongoing securities offering conducted through at least seven Aequitas subsidiaries over the relevant time period. Plaintiffs allege that Tonkon is liable under ORS § 59.115(3) for participating and materially aiding Aequitas in the unlawful sale of securities.

## II. Procedural History

On April 4, 2016, Plaintiffs filed their initial complaint and on May 19, 2016, Plaintiffs filed an Amended Complaint. (ECF Nos. 1, 57.) On June 10, 2016, Tonkon and other Defendants filed a joint motion to dismiss the Amended Complaint. (ECF No. 74.) Tonkon also filed its own separate motion to dismiss the Amended Complaint. (ECF No. 80.)

On September 21, 2016, Plaintiffs served requests for production of documents on Tonkon. In response, Tonkon has submitted over 455,000 pages of documents. In a July 31, 2018 Receiver's Report, the Receiver indicated that he has consolidated all digital information into a centralized database containing approximately 16.8 million documents to which 250 users have access, including Class Counsel, Tonkon, and the Non-Settling Defendants' counsel. (Order on Motion to Compel at 11, ECF No. 421.)

\\\\

\\\\

On April 24, 2017, the court issued an Amended Findings and Recommendation, granting in part and denying in part Defendants' motion to dismiss. (April F&R, ECF No. 242.) On July 5, 2017, the Honorable Michael J. Mosman adopted the April F&R. (ECF No. 250.)

On September 8, 2017, Plaintiffs filed a Second Amended Complaint. (SAC, ECF No. 257.) On October 3, 2017, Defendants, including Tonkon, filed a joint motion to dismiss. On August 1, 2018 the court granted in part and denied in part the motion to dismiss, which Judge Mosman adopted on September 21, 2018. (ECF Nos. 340, 368.)

III. Mediation and Settlement Process

On March 17, 2017, Counsel for Plaintiffs ("Class Counsel") and Tonkon's counsel and insurer met with United States District Judge Michael H. Simon for a settlement conference. After difficult negotiations, Plaintiffs and Tonkon reached a settlement as to the financial component of a potential settlement. (DeJong Decl. ¶ 2, ECF No. 352.) After the initial settlement conference, Class Representatives and Tonkon continued to negotiate. On March 27, 2017, Plaintiffs and Tonkon executed a "Term Sheet" memorializing the basic terms of a settlement. (*Id.* at Ex. A.) The Term Sheet contemplated that the investors plaintiffs in the Individual Actions would participate in the proposed settlement class as part of a single settlement. (*Id.* at ¶ 3.)

However, the plaintiffs in the Individual Actions declined to participate in a single class settlement. (*Id.*) Judge Simon conducted an additional mediation on April 17, 2017 between Class Counsel and the plaintiffs' counsel for the Individual Actions, which was ultimately unsuccessful. (*Id.*) The settlement negotiations between the various investor plaintiffs were contentious and lengthy – stretching over the course of a year. Due to disagreements about how to allocate the

proposed settlement among the Class Members and the Individual Actions, the parties turned to the Receiver in the SEC action for assistance. The Receiver proposed an allocation formula. (*Id.* at ¶ 4.) The Receiver calculated the net losses of all the investors and determined that the Individual Actions represent approximately 30.2% of the total net loss and the Class Members' net losses the remaining 69.8%. The Receiver further proposed that all investors pay attorney fees equal to 20% of the recovery. Thereafter, Plaintiffs in this action and the plaintiffs in the Individual Actions negotiated separate settlement agreements with Tonkon, based upon the negotiated allocation of 69.8% of the proceeds to this putative class action and 30.2% to the Individual Actions.[2]

On July 16, 2018, Plaintiffs filed a Motion for Preliminary Approval of Partial Settlement. The Non-Settling Defendants and Plaintiffs submitted letters responding to the Motion. On August 21, 2018, Plaintiffs' filed an Amended Motion for Preliminary Approval of Partial Settlement (the "Amended Motion") (ECF No. 350). The amended motion clarified the class definition, revised the Plan of Allocation to be consistent with the procedure approved by Judge Hernandez for distribution of other settlement payments to Aequitas investors in *Brown*. Plaintiffs revised the Notice, Summary Notice, and Preliminary Approval Order to reflect those changes. (Pls.' Reply Supp. Prelim. Approval at 35, & Exs. 1-5, ECF Nos. 389 & 389-1 through 389-5.) On August 27, 2018, this court held a status conference regarding the Amended Motion for Preliminary Approval of Settlement. (Minutes of Proceedings, ECF No. 359.) The court permitted the parties to submit additional briefing and conduct any necessary discovery. The court conducted oral argument concerning the Amended Motion on February 27, 2019.

---

[2] In those separate settlements, Tonkon has agreed to pay a total of $5,587,000 to the investor plaintiffs in the Individual Actions.

## IV. The Settlement Agreement

### *A. Class Definition*

The proposed settlement class (the "Class") includes all persons who purchased "Covered Aequitas Securities" on or after June 9, 2010, and had an account balance as of March 31, 2016. The Covered Aequitas Securities are those issued by the following entities: (1) Aequitas Commercial Finance, LLC ("ACF"); (2) Aequitas Income Opportunity Fund, LLC ("AIOF"); (3) Aequitas Income Opportunity Fund II, LLC ("AIOF-II"); (4) Aequitas Capital Opportunities Fund, LP ("ACOF"); (5) Aequitas Income Protection Fund, LLC ("AIPF"); (6) Aequitas Enhanced Income Fund, LLC ("AEIF"); (7) Aequitas Private Client Fund ("APCF"); (8) Aequitas ETC Founders Fund, LLC ("AETC"); and (9) MotoLease Financial, LLC ("AMLF"). (Pls.' Reply Supp. Prelim. Approval, Ex. 1, ECF No. 389-1.)

The Class excludes: (a) Defendants; (b) past and present officers and directors of the Aequitas affiliated companies, including Robert Jesenik, Brian Oliver, Craig Froude, Scott Gillis, Andrew MacRitchie, Olaf Janke, Brian Rice, William Ruh, Steve Hedberg, Brett Brown, Tom Goila, Patricia Brown, Bill Mally, and Thomas Azabo, and their families and affiliates; (c) the past and present members of the Aequitas Advisory Board, including William McCormick, L. Martin Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith Barnes, Bob Zukis, and their families and affiliates; (d) registered investment advisors and investment advisor representatives; (e) any investor who received finder's fees or other consideration from Aequitas in connection with referring investors to Aequitas; and (f) any of the Individual Plaintiffs in any of the Individual Actions. (*Id.*)

The Settlement also provides that:

> [t]his provisional settlement Class certification, and the ultimate certification of a settlement Class against Tonkon (if any), shall not have any bearing on, and shall not be admissible in connection with the issue of whether any class should be certified in a non-settlement context.

(Pls.' Reply, Proposed Or. Prelim. Approval, Ex. 2, ¶ 6, ECF No. 389-2.)

*B. Settlement Consideration/Benefits*

Tonkon has agreed to pay to the Class a minimum of $12,913,000 (the "Settlement Fund"). This amount may be increased by any remaining policy limits at the time the Settlement becomes final, in the amount of $1,850,000 less the total fees and costs Tonkon has incurred for legal work performed by its counsel in defending this case, the Individual Actions, and the SEC action.

The Settlement provides a Plan of Allocation under which each Class Member is paid based upon losses on Covered Aequitas Securities purchased during the Class Period. (Pls.' Reply, Proposed Plan of Allocation, Ex. 3, ECF No. 389-3.) Each Class Member will be paid based upon a proportional basis calculated by determining each Class Member's Net Loss as a percentage of all Class Member Net Losses. (*Id.*)

*C. Release*

In exchange, Class Representatives and Class Members who have not opted out will release all claims for damages against Tonkon arising out of or relating in any way to any act or omission of the Defendants or their member institutions that is alleged or could have been alleged in this litigation. (Pls.' Reply, Proposed Or. Prelim. Approval, Ex. 2 ¶ 24, ECF No. 389-2.)

\\\\\\

\\\\\\

*D. Class Notice and Administration of Claims*

The Settlement provides that the court will appoint Garden City Group, LLC as a third-party Claims Administrator to supervise and administer the notice procedure as well as the processing of claims. (*Id.* ¶ 8.)

The Proposed order mandates that within twenty-eight (28) days of the Court's order providing preliminary approval, Class Counsel shall provide notice to Class Members as identified by the Receiver: (1) the Proposed Notice of Pendency and Proposed Settlement of Class Action (the "Notice"); and (2) the Proof of Claim and Release. (Pls.' Am. Mot. Prelim Approval at 28 & Ex. A-3, ECF Nos. 350, 350-4; Pls.' Reply, Proposed Notice, Ex. 4, ECF No. 389-4.) And, within thirty-five (35) days after entry of the Court's Preliminary Approval, Class Counsel shall publish a Summary Notice in the *Wall Street Journal* and the *Oregonian*, to be distributed over a national newswire service. (Pls.' Reply, Proposed Summ. Notice, Ex. 5, ECF No. 389-5.) The Notice and Summary Notice will include the nature of the action, a summary of the settlement terms, instructions on how to object to and opt out of the settlement, including relevant deadlines and procedures.

*E. Attorney Fees and Costs*

Plaintiffs will file a motion for attorney fees after Final Approval of the Settlement, requesting attorney fees equal to twenty percent of the settlement fund and for reimbursement of charges and expenses. (Decl. Timothy S. DeJong Supp. Prelim. Approval ("DeJong Decl." at ¶ 4, ECF No. 352.)

\\\\\\

*F. Contribution Claims Bar*

The Settlement is expressly conditioned upon: (1) entry of an injunction barring contribution claims by the other defendants in this action against Tonkon; and (2) approval of a *pro tanto* credit in favor of the remaining Defendants in this action against any judgment that may be entered against them in this action. Defendants will receive a dollar-for-dollar credit for the amount contributed by Tonkon against any award against them at trial.

*G. Objections and Exclusions*

The Notice provides that the Settlement Class Members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement to the Claims Administrator at least twenty-eight (28) days before the Settlement Hearing. Class Members requesting exclusion are forever barred from receiving payments pursuant to the Settlement.

Class Members may object to the proposed settlement by filing an objection with the court at least twenty-eight (28) days before the Settlement Hearing.

*H. Final Approval & Judgment Order*

The Settlement Agreement is subject to issuance by the Court of a Final Approval Order following a Settlement Hearing that: (1) grants final approval of the Agreement as fair, reasonable and adequate; (2) determines whether a final judgment should be entered; (3) determines whether the Plan of Allocation should be finally approved; (4) determines the amount of attorney fees that should be awarded to Class Counsel; and (5) any other matters the court deems appropriate.

\\\\

\\\\

*Relief Sought*

In the instant motion, Plaintiffs and Tonkon seek the following: (1) preliminary approval of the Proposed Settlement and Stipulation with Tonkon; (2) provisional certification of the settlement class; (3) preliminary approval of the Plan of Allocation; (4) approval of the proposed Claims Administrator; (5) approval of the form and manner of notice to settlement class; (6) preliminary approval of counsel for Plaintiffs as Settlement Class Counsel; and (7) scheduling a Settlement Hearing for final approval of the Settlement.

*Discussion*

The Non-Settling Defendants argue that the court should not approve the Proposed Settlement because: (1) it should be held in abeyance pending resolution of *Hyundai*; (2) the *pro tanto* contribution claims bar is contrary to law; and (3) the class cannot be certified because the typicality and predominance requirements are not satisfied.

Plaintiffs contend that preliminary approval is appropriate and that Non-Settling Defendants have standing only to challenge the *pro tanto* contribution claims bar and they may not challenge the provisional approval of class certification. Plaintiffs further argue that waiting to grant preliminary approval of the Proposed Settlement pending *Hyundai* is unnecessary.

I. <u>Holding Case in Abeyance is Unwarranted</u>

According to Non-Settling Defendants, the court's decision on Plaintiffs' Motion for Preliminary Approval of the settlement should be held in abeyance pending a decision from the Ninth Circuit in *Hyundai*. In *Hyundai*, a Ninth Circuit panel held that in assessing a nationwide class action settlement, district courts must consider whether variations in state law defeat predominance

because class members that reside in different states might be subject to different substantive laws, or have different remedies available. *Hyundai*, 881 F.3d at 691-692. In granting rehearing *en banc*, the Ninth Circuit vacated the *Hyundai* decision and indicated the three-judge panel decision should not be cited as precedent. *Hyundai*, 897 F.3d at 1007. The Ninth Circuit held oral argument on September 27, 2018. Defendants note that two other district courts have stayed motions seeking approval of a nation-wide class action while the *Hyundai en banc* process plays out. Defendants submit that the *en banc* decision will necessarily clarify predominance standards under Rule 23(b)(3) and its application to nationwide settlement classes.

Holding the motion in abeyance until the Ninth Circuit issues a decision in *Hyundai* is unnecessary. Indeed, the Ninth Circuit has continued to issue decisions approving nationwide class action settlements agreements prior to class certification after *Hyundai* was taken *en banc*. *See In re Volkswagen "Clean Diesel" Marketing*, 895 F.3d 597, 609 (9th Cir. 2018) (approving nationwide consumer settlement, noting that unlike the decision in *Hyundai*, the court provided a thorough predominance analysis under Rule 23(b)(3)); *In re Lenovo Adware Litig.*, Case No. 15-md-02624-HSG, 2018 WL 6099948, at*1 (N.D. Cal. Nov. 11, 2018) (granting preliminary approval for nationwide class action settlement of computer and software purchasers under New York and California laws); *Padron v. Golden State Phone & Wireless*, Case No. 16-cv-04076-BLF, 2018 WL 2234550, at *2-3 (N.D. Cal. May 16, 2018) (granting final approval of settlement class action after *Hyundai*). As other courts have determined, waiting for a decision in *Hyundai* certainly is not required.

Moreover, in this district, the Honorable Marco A. Hernandez approved a class action settlement of Aequitas-related claims brought against investment advisor representatives. *Brown v. Price*, Case No. 3:17-cv-00869-HZ (D. Or.). There, the investor plaintiffs alleged a class action including assorted violations of California and Washington securities laws, among other claims. Although that case sought preliminary approval of a class under Rule 23(b)(1) instead of Rule 23(b)(3), nevertheless, Judge Hernandez readily approved the preliminary motion for settlement.

Finally, even if the rationale in *Hyundai* could apply, the court finds that addressing the motion for preliminary approval now is appropriate, in lieu of holding the case in abeyance. The process of approving a class action settlement involves multiple steps and can be time consuming. The court has the opportunity to undertake further analysis about whether predominance is defeated by variations in state law at the final approval stage depending upon developments in *Hyundai*. *See Lenovo Adware*, 2018 WL 6099948, at *6 n.2 (providing preliminary approval of class action).

## II. *Pro Tanto* Contribution Claims Bar

Non-settling defendants generally lack standing to object to a partial settlement. *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987). However, non-settling defendants may object where they can demonstrate that they will suffer some formal legal prejudice as a result of the settlement. *Id.* Because the contribution claims bar in the Proposed Settlement affects Non-Settling Defendants' rights to indemnification and contribution, the court finds they have standing to object to the bar order portion of the Proposed Settlement. *Waller*, 828 F.2d at 583; *see also Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3rd Cir. 1995) (finding non-settling defendant had standing to object

to settlement where right to indemnification would be extinguished by bar order in settlement agreement).

The court begins by observing that the parties do not dispute that a contribution claims bar is appropriate, and that entering a bar order is within the court's authority. *Fluck v. Blevins*, 969 F. Supp. 1231, 1238 (D. Or. 1997) (finding that "it is best" to decide the method of crediting a partial settlement against the liability of the non-settling defendants before approving the settlement and entering the bar order). Instead, the parties disagree about the methodology that should be used for off-setting the settlement amount Plaintiffs receive against any future judgments that may be entered against Non-Settling Defendants; either *pro tanto* (dollar-for-dollar) as Plaintiffs and Tonkon advocate, or on a proportionate liability basis as Defendants contend.

Under a *pro tanto* reduction, "the amount paid by the settling defendants is deducted from the overall verdict, and the non-settling defendants are liable for the balance." *Id.* at 1233. Under a proportionate liability reduction, "the jury determines the amount of total damages and percentage of culpability for each defendant. The percentage attributable to the settling defendants is then subtracted, and the non-settling defendants are jointly and severally liable for the balance of the damages." *Id.* As numerous courts have observed, there are advantages and disadvantages to both methods. *See, e.g., Fluck*, 969 F. Supp. at 1233-37 (discussing the myriad complexities of each method); *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229-32 (9th Cir 1989) (same); *Bragger v. Trinity Capital Enterprise Corp.,* Case No. 92 Civ. 2124 (LMM), 1993 WL 287627, at *1 (S.D.N.Y. July 23, 1993) (discussing that contribution claim bars are acceptable and desirable, but

how a subsequent judgment is to be properly reduced is not "that simple a question"), *appeal dismissed and remanded as moot by*, 30 F.3d 14 (3rd Cir. 1994).

Plaintiffs argue that *pro tanto* reductions are the preferred method of reducing judgments after partial settlements under Oregon Securities Law. They contend that under ORS § 59.115(3), liability is joint and several and that proportionate liability incorrectly introduces the concept of fault where none is warranted. Plaintiffs also argue that the *pro tanto* reduction method is most consistent with Oregon law on contribution claims. According to Plaintiffs, there was no common law right to contribution among joint tortfeasers until that right was created by statute in 1971. *Blackledge v. Harrington*, 291 Or. 691, 694 (1981) (holding that right of contribution was created by statute). Because no right of contribution existed among joint tortfeasors at the time the Oregon Legislature adopted the Oregon Securities Law in 1967, it could not have intended for proportionate liability to be used to credit partial settlements among those held jointly and severally liable. Plaintiffs also contend that *pro tanto* reductions are consistent with Oregon's "one satisfaction" rule.

Plaintiffs contend that the Oregon Court of Appeals endorsed a *pro tanto* reduction for a partial settlement of an Oregon Securities Law claim where a contribution claims bar was entered in *Ainslie v. Spolyar*, 144 Or. App. 134, 147 (1996). Plaintiffs rely on *Merrihew v. Charles Schwab, et al.*, No. 0907-10596 (Mult. Cty. Cir. Ct. Aug. 11, 2010), where the Honorable David Rees examined whether a *pro tanto* reduction would be appropriate in the context of settling an Oregon Securities Law claim against a defendant with limited assets to satisfy a substantial judgment. (Decl. Pilip Van Der Weele Supp. Pls.'s Am. Mot. Prelim. Approval ("Van Der Weele Decl.") Ex. B at 4, *Merrihew v. Charles Schwab, et al.*, Mult. Co. Cir. Ct. Case No. 0907-10596, Contribution Claims

Bar Order (dated Aug. 11, 2010), ECF No. 386-2.) Judge Rees noted that "it is well established that the [Oregon Securities Law] is to be liberally construed to provide the greatest protection to the public." (*Id.*, citing *Adams v. American Western Sec., Inc.*, 265 Or. 514, 524 (1973).) Additionally, Judge Rees indicated that *Ainslie* supported a *pro tanto* reduction methodology for partial settlements of state securities law claims. (*Id.* at 5.).

Plaintiffs also cite to other state trial court orders approving *pro tanto* reductions in connection with contribution claim bars. (See Van Der Weele Decl., Ex. C, *Gattuccio v. Averill*, Consolidated Cases, 1011-16582 and 1105-06352 (Multnomah Cty. Cir. Ct.) (Claims Bar Order and Injunction dated Aug. 16, 2013), ECF No. 386-3; *Id.* Ex. D, *Adams v. Perkins & Co., P.C.*, No. 1110-12903 (Multnomah Cty. Cir. Ct.) (Order Approving Compromise dated Nov. 24, 2014), ECF No. 386-4.) Thus, according to Plaintiffs, *pro tanto* offsets are the preferred method for reducing future judgments in cases involving Oregon Securities Law claims.

Defendants counter that the correct rule for crediting partial settlements is set forth in *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989). In *Kaypro*, the Ninth Circuit addressed whether a court should apply the proportionate liability or *pro tanto* methodology to credit a partial settlement in a federal securities class action case. *Id.* at 1223-24. There, the *Kaypro* court rejected the *pro tanto* approach in favor of proportionate liability because it satisfies the "statutory goal of punishing each wrongdoer, the equitable goal of limiting liability to relative culpability, and the policy goal of encouraging settlement." *Id.* at 1231. The *Kaypro* court observed that applying proportionate liability to credit partial settlements ensures that "[n]on-settling defendants never pay more than they would if all parties had gone to trial." *Id.*

Defendants argue that the proportionate liability rule applies to partial settlements in ORS § 59.115(3) claims because *pro tanto* credits encourage collusion between certain defendants and forces wealthier clients to trial. *Kaypro*, 884 F.2d at 1232. The court notes that although *Kaypro* involved a class action, it did not involve Oregon Securities Law claims.

Non-Settling Defendants also contend that the August 11, 2010 *Merrihew* decision upon which Plaintiffs rely, is simply an interim order, and that the court ultimately determined that proportionate fault reduction was proper. (Defs.' Resp. Opp'n at 27-30, ECF No. 370; *compare* Decl. Daniel L. Keppler ("Keppler Decl.") Ex. C, *Merrihew v. Schwab*, Claims Bar Order and Injunction (Aug. 26, 2010), ECF No. 371-3, *with* Van Der Weele Decl. Ex. B, Aug. 11, 2010 *Merrihew* Order, ECF No. 386-2.) Non-Settling Defendants argue that because the *pro tanto* approach set forth in the interim *Merrihew* order was not followed, it has no precedential value and should not serve as a basis for the court's rationale.

The court makes these preliminary observations. First, in *Merrihew*, Judge Rees appears to have entered a final order adopting a proportionate liability method of setoff. (Keppler Decl. Ex. A, ECF No. 371-1.) However, the *Merrihew* final order is brief and Judge Rees does not explain why he initially embraced the *pro tanto* method and later switched to proportionate liability. (Keppler Decl. Ex. C at 4, ECF No. 371-3.)

Second, the solvency (or insolvency) of settling or non-settling defendants effects the overall "fairness" of the bar order to Plaintiffs or the remaining non-settling defendants in a case, and should factor into the court's analysis of whether *pro tanto* or proportionate liability is appropriate. *See Kahn v. Weldin*, 60 Or. App. 365, 374 (1982) (stating that for contribution purposes, liability is

typically only apportioned among solvent defendants). As the Honorable Donald Ashmanskas aptly observed in *Fluck*, "there are serious problems with both the *pro tanto* and proportionate liability methods of crediting partial settlements" because they fail to appreciate the added complexities of insolvent defendants and the fact that contribution claims may be asserted against non-defendants. *Fluck*, 969 F. Supp. at 1235-36. The court anticipates lengthy litigation against third parties for contribution in this case. (*See, e.g.,* Deloitte's Mot. Leave to File Third Party Compl., ECF No. 423; Pl.'s Mot. Strike Third Party Compl., ECF No. 436.)[3]

And third, there is very limited body of Oregon securities case law addressing the methodology of crediting partial settlements against potential future judgments. In *Ainslie,* the Oregon Court of Appeals briefly touched on a partial settlement of an Oregon Securities Law claim. *Ainslie*, 144 Or. App. at 147-48. There, Classic Christmas Trees Associates ("Classic") sold units of interests in its Christmas tree business in exchange for providing a tax shelter for investors. *Id.* at 137. Classic offered limited partnership units via private placement subscriptions. *Id.* at 138. Classic had difficulty selling enough subscriptions to secure needed financing and ultimately, it was not profitable. *Id.* at 140. The plaintiffs, purchasers of the limited partnership units, brought suit against Classic for Oregon Securities Law violations and the attorneys who materially aided the sale

[3] Although occurring in the context of an SEC enforcement action, the Honorable Garr M. King applied a *pro tanto* method of reducing a partial settlement between a receiver and a bankrupt defendant, finding the court "would be remiss to not approve a settlement with a key defendant (even if it is conditioned on a pro tanto allocation of liability) if the settlement allows the estate to receive far more than it would if it litigated against the defendant to judgment." *SEC v. Capital Consultants*, No. Civ. 00-1290-KI, 2002 WL 31470399, at *3 (D. Or. Mar. 8, 2002). Judge King noted that to insist upon proportionate liability would handicap claimants' ability to recover "a significant percentage of their losses, given Barclay Grayson's inability to pay anywhere close to the monetary value of his liability . . . [and] would, arguably, reduce the exposure of non-settling defendants' exposure to such a point that they would receive a windfall." *Id.*

of those securities under ORS § 59.115(3). *Id.* at 137, 141. The trial court granted summary judgment to the plaintiffs and against the attorney defendant, and most other claims in the case were resolved prior to trial "through summary judgment, settlement, default or dismissal." *Id.*

On appeal, the plaintiffs challenged the trial court's calculation of prejudgment interest, and argued that the court should have used the settlement amounts to reduce the accrued interest before applying the settlement amounts to reduce the principal amount owed. The *Ainslie* court determined that the trial court erred in failing to apply the "United States rule" which required the court to apply the partial payment to interest, then any surplus to principal. *Id.* at 146.

Additionally, the *Ainslie* court rejected the non-settling attorney defendant's cross-assignment of error that the trial court erred in failing "to control the fairness of the settlements by requiring offsets to the final judgment based on proportional fault." *Id.* at 147. There the non-settling defendant argued that it was unfair to apply the settlement amounts to interest because it would encourage "cheap settlements with favored defendants." *Id.* The *Ainslie* court rejected that argument, stating that "we are not aware of any requirement in this context that the court review a settlement with one defendant for its fairness to the other defendants." *Id.* at 148.

According to Plaintiffs, the *Ainslie* court's rejection of the non-settling defendant's argument that the settlements should be applied on a proportionate liability basis ends the inquiry about the appropriate method. The court is not convinced its analysis must be so limited. While *Ainslie* applied a *pro tanto* offset to the judgment, the question of the offset methodology was not squarely presented to the Oregon Court of Appeals because the non-settling attorney defendant had agreed

to the contribution claims bar below and thus could not challenge the trial court's setoff method on appeal. (Deloitte Mot. Supp. Record Ex. E at 10-11, ECF No. 456-2.)

After careful review of *Ainslie, Kaypro,* and *Fluck,* and the state court orders in *Merrihew*, *Gattuccio*, and *Adams*, it is clear to this court that both methods of offset are available under Oregon securities law. Additionally, it is evident that Oregon courts, in their discretion, utilize the method either agreed upon by the parties or supported by the unique facts and circumstances present in each case to reach a result that is fair, reasonable, and adequate. (See Keppler Decl. Ex. C at 2, Aug. 26, 2010 *Merrihew* Claims Bar Order and Injunction (observing that "courts have sought to fashion the most appropriate rule that advance[s] the goals of encouraging settlement and promoting judicial efficiency.")

The court is persuaded by the thoughtful rationale in *Adams* because it presented circumstances similar to those presented in this case. In *Adams*, over 100 investor plaintiffs purchased limited partnership interests from Grifphon and Sasquatch Funds, and subsequently lost approximately $43 million. The SEC conducted an investigation and obtained some judgments, but all investments were lost. (Van Der Weele Decl. Ex. D at 5, ECF No. 386-4.) There, the Honorable Youlee Y. You[4] addressed a class action settlement involving securities law claims against accounting defendants and lawyer defendants in which they agreed to pay a total of $14,650,000 in exchange for releases and entry of a *pro tanto* contribution claims bar. (*Id.* at 6.) Judge You discussed at length the propriety of entering a contribution claims bar and found that under Oregon

[4] Judge You since has been appointed a magistrate judge on this court.

law, it is in the interest of judicial economy for courts to approve comprehensive settlements that prevent re-litigation of settled questions in class actions. (*Id.* at 17-18.)

Additionally, Judge You observed that because the attorney defendants and accounting defendants were in the "business of providing personal services" and the liability of their shareholders and partners is limited, and nothing prevents partners and shareholders from leaving should a large judgment be entered against the business. (*Id.* at 10-11.) Thus, Judge You reasoned, "their most significant asset to pay a judgment in a case like this is their liability insurance." (*Id.* at 11.) Judge You explained that the insurance policies at issue in that case were "wasting limits" policies, meaning that the longer litigation drags on, the less money is available to pay a judgment or settlement. (*Id.*) In that vein, Judge You considered the case one of "limited funds." (*Id.*)

Judge You determined specifically that under ORS § 59.115(3), the court has the authority to enter a contribution claims bar, and that in limited fund situations, defendants would not be "willing to settle for a large part of their insurance coverage" unless the settlement provides peace by way of a contribution claims bar. (*Id.* at 18.) In addition, Judge You found that the *pro tanto* reduction is consistent with Oregon common law, consistent with Oregon's "one satisfaction" rule, and consistent with the policies in the Restatement (Third) of Torts, Apportionment of Liability § 16, Comment c, which indicates that dollar-for-dollar reductions are preferable where there is joint and several liability and there are limited fund concerns. (*Id.* at 21; *see also* Van Der Weele Decl, Ex.C, (the Honorable Jean Kerr Maurer approving a *pro tanto* contribution claims bar in *Gattuccio*).

Non-Settling Defendants argue that the Oregon Securities Law gives them a statutory right to contribution that a bar order may not preclude, but this argument is contrary to *Kaypro* upon

which Non-Settling Defendants heavily rely for their general position on this motion. In *Kaypro*, the non-settling defendants there urged the Ninth Circuit "to prohibit settlements that bar further contribution . . . [because] contribution is a statutorily vested right that cannot be divested before full trial." *Kayro*, 884. F.2d at 1229. The Ninth Circuit rejected this argument as "simplistic approach" that would "preclude partial settlement" and undermine the "overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits." *Id.* (citation and internal quotes omitted). The Ninth Circuit concluded with this observation:

> In short, we do not believe that Congress intended to preclude partial settlements, nor do we think Congress intended the right to contribution to be inextinguishable. Therefore, we decline to prohibit orders that bar further contribution.

*Id.* at 1229.

Although the *Kaypro* court analyzed partial settlement in the context of federal securities law, its reasoning on this point is equally applicable to analyzing partial settlement under Oregon's securities law. As in the federal law the Ninth Circuit analyzed, nothing in the Oregon law explicitly precludes partial settlements or bar orders in securities cases, or precludes a court from deeming a right to contribution to be satisfied or extinguished.

Therefore, the court finds that the *pro tanto* contribution claims bar is fair, reasonable, and adequate in the circumstances of this case. As in *Adams*, Tonkon's largest asset for payment of a judgment is its insurance policy, a wasting limits policy that will shrink as this litigation continues. And, like the accountant and lawyer defendants *Adams*, the court finds that Tonkon reasonably wants "peace" from the litigation, and that the *pro tanto* methodology more effectively provides it. And, as in *Adams*, examining the reality of facts in this case, the settlement with the *pro tanto* contribution

claims bar provides the maximum possible recovery for Plaintiffs from Tonkon. Should this case proceed through to trial, not only would Tonkon use much of the available insurance policy in its own defense costs, the threat of a potentially large judgment against the firm may hasten the departure of attorneys, leaving few, if any assets by which to pay a judgment and little recourse for future recovery against any partners or shareholders in their individual capacities. Although Non-Settling Defendants argue that the individual partners who handled Aequitas matters may be personally liable, no individual partners have been named as defendants in this action. And, as Tonkon highlights, and Judge You found in *Adams*, the *pro tanto* judgment reduction provides the greatest likelihood recovery for Plaintiffs. (Van Der Weele Decl., Ex. D at 12; Tonkon's Reply at 15-20, ECF No. 385.) Approving the *pro tanto* contribution claims bar at this juncture provides for the largest possible recovery for Class Members in the circumstances of this case, and is consistent with the purpose of ORS § 59.115 to "'afford the greatest possible protection to the public.'" *Adams v. Am. Western Secs., Inc.*, 265 Or. 514, 524 (1973) (quoting *Adamson v. Lang*, 236 Or. 511, 516 (1964)).

II. Provisional Class Certification

Before a court may evaluate a class settlement, the court must ensure that the settlement class satisfies Rule 23 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 23. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 628 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Lenovo Adware,* 2018 WL 6099948, at *4; *Fowler v. Wells Fargo Bank, N.A.*, Case No. 17-cv-02092-HSG, 2018 WL 4003286, at *1 (N.D. Cal. Aug. 22, 2018). First, the court examines whether the plaintiffs have satisfied the four requirements of Rule 23(a). *Amchem,* 521 U.S. at 620;

*Hanlon*, 150 F.3d at 1019. Second, the court examines whether the plaintiffs have satisfied at least one basis for certification under Rule 23(b). *Amchem*, 521 U.S. at 614; *Hanlon*, 150 F.3d at 1022. Many of the qualifying criteria contained in Rule 23(a) and (b) exist to protect the interests of absentee class members and therefore deserve "undiluted, even heightened, attention" in the context of a settlement-only class certification. *Amchem*, 521 U.S. at 620; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) (explaining that when a district court "certifies for class action settlement only, the moment of certification requires 'heightene[d] attention' to the justifications for binding the class members" (quoting *Amchem*, 521 U.S. at 620)).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

\\\\

\\\\

*A. Standing*

Plaintiffs insist that Non-Settling Defendants lack standing to object to the court's provisional class certification in a settlement context. According to Plaintiffs, because Non-Settling Defendants are not parties to the settlement agreement, and they have agreed that provisional (or final) class certification shall have no bearing on or be admissible in any future motion for class certification, the court should not consider Non-Settling Defendants' arguments. The court disagrees.

Plaintiffs cite no controlling Ninth Circuit case providing that Non-Settling Defendants lack standing to object to provisional class certification. Additionally, the case law cited by Plaintiffs cannot be so broadly interpreted as to prevent the court from examining their objections to provisional class certification. *See, e.g., Eichenholtz,* 52 F.3d at 488 (holding non-settling defendants lacked standing to challenge the fairness of dismissal of one claim because they received a benefit from claim's dismissal). Therefore, the court addresses Non-Settling Defendants' arguments.

*B. Evidentiary Basis*

Non-Settling Defendants insist that Plaintiffs have failed to provide a sufficient evidentiary basis to support provisional class certification. Non-Settling Defendants contend that without additional facts in the record concerning typicality and predominancy, the court should deny provisional class certification. The court disagrees.

Plaintiffs have provided a sufficient evidentiary record upon which this court can make a preliminary ruling. This case has been in this court for over two years, during which time it has been heavily litigated. The court is intimately familiar with the parties' theories of the case, and some

evidence has been filed in the case through several discovery and substantive motions. Additionally, the court is familiar with the Receiver's publicly filed forensic findings in the related SEC action. *See SEC v. Aequitas Mgmt., LLC*, 3:16-cv-00438-JR (Notice Filing Receiver's Report Re: Investigation of Entity's Business Conduct, ECF No. 663). Under Non-Settling Defendants' construction of the necessary basis for preliminary approval, a court could never approve settlements of class actions prior to class certification, a position clearly not intended by Rule 23 or supported by case law, and counter to the court's role of promoting settlement and judicial economy. The court is satisfied that Plaintiffs have provided sufficient evidence from which this court can apply heightened scrutiny to Plaintiffs' and Tokon's proposed class action settlement.

C. *Rule 23(a) Requirements*

1. numerosity

Under Rule 23(a)(1), the class must be so numerous that "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Typically, a class size of forty or more is sufficient. *Villaneuva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017); *Corley v. Google*, 316 F.R.D. 277, 290 (N.D. Cal. 2016) (noting that 40 class members usually is enough). Here, Plaintiffs readily satisfy this requirement as they have alleged a class of approximately 1,500 members.

2. commonality

Under Rule 23(a)(2), plaintiffs must show that there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This requirement has "been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*,

657 F.3d 970, 981 (9th Cir. 2011); *Moss v. U.S. Secret Serv.*, No. 1:06-cv-3045-CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015). Indeed, "for purposes of Rule 23(a)(2)[,] even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation, internal quotation marks, and alteration omitted); *Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."). Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)). Additionally, in securities class action cases "'where putative class members have been injured by the same material misrepresentations and omissions, the commonality requirement satisfied.'" *In re Bank of Am Corp. Sec.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012).

Here, Plaintiffs have identified numerous common issues of law and fact that are susceptible to class-wide determination. For example, the Settlement Class Members all purchased Covered Aequitas Securities, all allege that the Covered Aequitas Securities were sold without proper registration, all assert the Covered Aequitas Securities were sold by means of false statements of fact or omissions of material fact, and all allege that Tonkon materially aided in the unlawful sales of the Covered Aequitas Securities.

The common answers to these questions are "apt to drive the resolution" of the legal issues in this case. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013); *Hurst v. First Student, Inc.*, No. 3:15-cv-00021-HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014)). Indeed, the answer to whether the Covered

Securities were required to be registered or were sold by means of false statements or material omissions are common questions of liability and clearly will "drive the resolution" of this litigation. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (finding that employer's practice withholding information pertaining to H-2A jobs was a common question of liability, satisfying commonality requirement); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165-66 (9th Cir. 2014) (finding that common question of discouraging employees to report overtime was the "glue" that would produce a common answer crucial to plaintiffs claims); *Bank of Am.*, 281 F.R.D. at 139 (finding that plaintiffs established commonality because their claims were based on the same alleged misstatements and omissions); *Moss*, 2015 WL 5705126, at *3 (finding commonality requirement satisfied where all class members "are asking the same legal questions" and the answers will impact a substantial number of class members). Therefore, the court readily finds the commonality requirement is satisfied.

3. typicality

Under Rule 23(a)(3), plaintiffs must show that the "claims . . . of the representative parties are typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). "The test of typicality serves to ensure that 'the interest of the named representative aligns with the interests of the class.'" *Torres*, 835 F.3d at 1141 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (internal quotations omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."

*Ellis*, 657 F.3d at 984. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres*, 835 F.3d at 1141 (quoting *Hanon*, 976 F.2d at 508); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (finding typicality where "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have in injured in the same course of conduct"). Moreover, in a securities class action, where the plaintiffs assert that defendants disseminated "allegedly false or misleading statements," the claims and nature of the evidence "are generally considered sufficient to satisfy the typicality requirement." *Bank of Am.*, 281 F.R.D. at 139 (internal quotation and citation omitted); *see also Karam v. Corinthian Colleges, Inc.*, Case No. 2:10-cv-06523-RGK-PJW, 2017 WL 4070889, at *3 (C. D. Cal. July 7, 2017) (finding named plaintiffs' claims and those of the class members satisfied typicality requirement where claims premised on same set of operative facts, including that they all purchased Corinthian stock at inflated prices before true financial condition was revealed).

Non-Settling Defendants argue that Plaintiffs claims are not typical of the class, defeating certification of the class for settlement purposes. Non-Settling Defendants contend that Plaintiffs did not purchase the identical securities as those purchased by Class Members. Non-Settling Defendants focus on the differences between the various Aequitas securities that were marketed during the purported class period – which includes some 39 different PPMs and notes. According to Non-Settling Defendants, Plaintiffs ignore fundamental differences among the various Aequitas

entities and the securities they sold, and that Plaintiffs' claims are not typical of Class Members' claims who have purchased different securities from different Aequitas entities. (Defs.' Resp. at 20, ECF No. 370.)

Plaintiffs correctly highlight that Judge Hernandez approved a settlement class of all persons who purchased any "Aequitas Investment" through certain investment advisors and brokers. *Brown v. Price*, Case No. 3:17-00869-HZ (D. Or.). There, the "Aequitas Investments" were defined broadly to include securities issued by 44 different Aequitas entities. In approving the class settlement, Judge Hernandez determined that the claims of the six named plaintiffs were typical of the class claims without regard to whether each named plaintiff invested in each of the 44 Aequitas entities/funds. (*See* Stip. Settlement Agreement, Order Prelim. Approval, Case No. 3:17-cv-00869-HZ, ECF Nos. 61, 66.)

Non-Settling Defendants' arguments are unconvincing. Each named Plaintiff has purchased at least one of the nine Aequitas securities defined in the class. (SAC ¶¶ 196-202; Pls.' Reply Ex. 1, ECF No. 389-1.) The fact that Class Members may have purchased different Covered Aequitas Securities does not defeat typicality. In this action, Aequitas is alleged to have engaged in a course of conduct that is not unique to Plaintiffs.

The court finds that Plaintiffs' claims are reasonably co-extensive with those of the absent class members' claims. The court finds that Plaintiffs' claims, and those of Class Members, derive from the same course of conduct by Aequitas and Defendants. In this action, Plaintiffs contend that the sales of Aequitas securities were all part of a common fraudulent scheme and the same course of conduct. Plaintiffs allege the various Aequitas securities were marketed as stable, secure, and

liquid investments with strong asset coverage, backed by guarantees and recourse agreements, when in reality the assets were overstated, the collateral was worthless, and new investments were used to satisfy existing obligations to other Aequitas entities. (August F&R at 20, ECF No. 340.) Tonkon is alleged to have materially aided or participated in the sale of those securities. Plaintiffs and the Class Members also allege the same legal theories in holding Tonkon and the Non-Settling Defendants accountable, and assert the same legal right to rescissory damages. *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 369 (D. Ariz. 2012) (finding named plaintiffs' claims typical of class claims in common scheme selling various mortgage backed securities, regardless of what particular security offering they purchased and where all class members sought rescissory damages); *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 609-10 (S.D. Cal. 2007) (finding named plaintiffs' claims typical of class where common scheme of misrepresentations and purchased securities at a different times). Thus, Plaintiffs' claims are sufficiently typical of the Class Members' claims to satisfy Rule 23(a)(3).

4. adequacy

The final requirement is satisfied if the "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement examines: (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985; *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Class Counsel have no conflicts with the other Class Members. Plaintiffs are incentivized to adequately represent the class because they share a common economic injury

from their purchases of Aequitas securities. Class Counsel is highly experienced and qualified, having successfully litigated and settled numerous class actions, including securities class actions. Moreover, Non-Settling Defendants do not challenge the adequacy of counsel. Accordingly, the adequacy of representation requirement is satisfied.

*D. Rule 23(b) Requirements*

Once the threshold requirements of Rule 23(a) are satisfied, plaintiffs also must show that the proposed class can satisfy one of the requirements under Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(3), which provides that a class may be certified if "the court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members," and that a class action is superior to other available methods. FED. R. CIV. P. 23(b)(3).

1. predominance

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Amchem*, 521 U.S. at 624. The primary concern of the predominance inquiry under Rule 23(b)(3) is the "'balance between individual and common issues.'" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013)) (additional quotations and citations omitted). Additionally, the predominance inquiry "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang*, 737 F.3d at 545 (quoting *Hanlon*, 150 F.3d at 1022).

Non-Settling Defendants argue that Class Representatives are unable to satisfy the predominance inquiry for three reasons: (1) there was no active trading market for Aequitas securities and thus each sale must be examined individually; (2) investors were required to perform due diligence; and (3) whether the information provided to each investor provided actual knowledge of the misrepresentations or omissions. In essence, Non-Settling Defendants argue that evidence concerning individual class members' understanding, knowledge, and inquiry into their Aequitas purchases will predominate over other issues, making class certification inappropriate. The court disagrees.

Non-settling Defendants do not raise any concerns that elevate individual issues that predominate over common issues of law and fact. Under ORS § 59.115, only an investor's actual knowledge is relevant, and the statute does not impose an obligation of inquiry on the buyer or purchaser. *See Towery v. Lucas*, 128 Or. App. 555, 563-64 (1994) (holding that ORS § 59.115(1)(b) imposes "obligation on *defendants* who seek to avoid liability for their untrue statements") (emphasis added). Thus, any Class Members' alleged lack of due diligence is not an issue that will predominate over the more critical liability issues.

In this case, is it clear that common issues of fact and law predominate over any individual issues. Courts readily find predominance in securities cases alleging a common scheme accomplished through misrepresentations and omissions similar to those alleged here. For example, the Ninth Circuit has determined that:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of

> conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). The *Blackie* court then found that common issues of fact and law related to the misrepresentations and omissions in the financial reports predominated over individual issues of reliance and damages. *Id.* at 905-06. Although *Blackie* involved a 10b-5 case based on stocks traded in an open market, the court noted that the "class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations." *Id.* at 904 n.19.

Likewise, in *Facciola v. Greenberg Traurig, LLP*, a district court certified a class of investors who purchased private securities that were marketed as "mortgage backed securities" when in fact they were unsecured, unregistered, illegal pass-through interests in loans sold by principals who were not properly licensed under state law. 281 F.R.D. at 366. There, the defendants argued that a class could not be certified because the "class members invested at different times, for different periods, with different offerings, based on different knowledge" and individualized evidence would predominate. *Id.* at 371. The *Facciola* court rejected that rationale concluding that:

> common questions of both law and fact predominate over questions affecting only individual members. Plaintiffs' primary liability claims under the Arizona Securities Act are capable of proof through common evidence of (1) the existence and operation of the underlying Ponzi scheme; (2) defendants' knowledge of the illegality and insolvency that the scheme concealed; (3) defendants' active participation in the scheme by, for example, authoring offering documents that omitted disclosure of the facts that made the scheme possible; (4) defendants' failure to withdraw their offering documents and end their representation; and (5) defendants' continued assistance in allowing their professional credibility to be used to perpetrate the scheme. Related legal questions posed by plaintiffs' statutory claims are also appropriately resolved on a classwide basis. Plaintiffs' evidence of defendants' knowledge of and participation in the scheme is not unique to any particular class member.

*Id.* at 372-73.

As in *Facciola*, the common legal and factual issues predominate over any individual issues in this case. Indeed, to establish Tonkon's liability in this action, Plaintiffs first must establish that Aequitas committed a primary violation of the Oregon Securities law by selling unregistered securities, or by making untrue statements of material fact or omitting statements of material fact under ORS §§ 59.055, 59.115, or 59.135. Then, to establish Tonkon's secondary liability, Plaintiffs would need to demonstrate that Tonkon participated in or materially aided the sale of those securities under ORS § 59.115(3). Moreover, these common questions of law and fact are amenable to common proof. If Plaintiffs are unable to prove that the securities were required to be registered, or that false statements of material fact were made, all class members' claims will fail, regardless of when the statements were made or in which particular PPM they occurred. Additionally, if Plaintiffs are unable to establish Tonkon's participation and material aid, all the class claims will fail. Without favorable findings on these critical issues, none of the class claims can succeed. Therefore, the court finds that common issues predominate over the individual ones. *See Jensen v. Fiserv Trust Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (affirming district court's certification of class because the "center of gravity" of fraudulent "Ponzi scheme itself would have to be proved or controverted over and over were the case not to proceed as a class action"); *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 145 (S.D.N.Y. 2015) (finding common issues predominated over individual issues of investors' knowledge in class action where investors "chose to invest and continued to make subsequent investments after being provided with supposedly 'clean' audit statements").

2. multi-state law analysis

Defendants contend that because more than one state's laws apply to Class Members' claims, common issues of law and fact fail to predominate, and that the court must undertake a choice of law analysis prior to provisionally certifying the class for settlement purposes. Here, Defendants contend that Colorado law applies to Class Members who purchased Aequitas securities though Defendant Integrity because those contracts provided choice of law and venue provisions. For two reasons Defendants' argument focuses on the wrong issue. First, even assuming *arguendo* that the contractual provisions could apply to non-contractual claims, those contractual provisions would apply only to the Class Members' claims against Integrity, not Tonkon. Second, there is no dispute that Oregon law applies to the Class Members' claims against Tonkon. Tonkon is an Oregon law firm and does not dispute that Oregon law governs the claims against it. Therefore, the court concludes that common issues of Oregon law predominate over any potential variations of other state laws that could individualize any Class Members' claims against Tonkon. Accordingly, the court finds that the predominance requirement is satisfied for purposes of provisional class certification.

3. superiority

Rule 23(b) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). This inquiry requires the court to determine whether "the objectives of the particular class action procedure will be achieved in the particular case. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (internal citation omitted).

Here, the alternative method of resolving this matter is would be to pursue approximately 1,500 individual lawsuits (or 1,500 individual settlements). Thus, the court readily finds that the class action format is superior in this circumstance. Notably, the Non-Settling Defendants do not challenge provisional certification on this basis. Accordingly, the court finds the superiority requirement is satisfied.

## III. Preliminary Settlement Approval

### *A. Standards*

The Ninth Cicuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016). Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." FED. R. CIV. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In such situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that

of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

To assess whether the proposed class settlement is fair, the court considers the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); *In re Bluetooth*, 654 F.3d at 946. However, the court cannot fully assess all of the fairness factors until after the final approval hearing, and thus, "'a full fairness analysis is unnecessary at this stage'" *In re Zynga Inc. Sec. Litig.*, Case No. 12-cv-04007-JSC, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 2015) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).

Rather, at the preliminary approval stage, the proposed settlement need only be potentially fair. *Id.* Courts may preliminarily approve a settlement and direct notice to the class if "'[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment to class representatives or other segments of the class; [4] falls within the range of possible approval.'" *In re Zynga*, 2015 WL 6471171, at *8 (quoting *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014)); *accord In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (same). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d

at 1026. Ultimately, the "decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted); *accord In Re Volkswagen "Clean Diesel" Marketing*, 895 F.3d at 611 (recognizing that district judge is the position to determine whether class settlement is fair).

If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see also In re Google Referrer Header Privacy Litig.*, Case No. 5:10-cv-04809 EJD, 2014 WL 1266091, at *2 (N.D. Cal. Mar. 26, 2014) (noting that court must first determine class exists, then whether proposed settlement is fair, then must hold fairness hearing to make final determination of class settlement).

*B. Analysis of Preliminary Settlement*

1. the settlement is non-collusive

The Ninth Circuit has identified three signs of a collusive settlement: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorney fees separate and apart from class funds without objection by defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Bell v. Consumer Cellular, Inc.*, Case No. 3:15-cv-00941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017). *See also In re Volkswagen*, 895 F.3d at 612 (finding that absence of reversion or kicker of unused settlement is evidence that it was not collusive).

Here, the Proposed Settlement bears none of the hallmarks of collusion. The allocation plan provides that Plaintiffs will receive the same *pro rata* share as the Class Members and that Class Counsel's fees must be approved by the court. The Proposed Settlement contains no "clear sailing" provision, as fees awarded are paid by the Settlement Fund, and there is no reversion of any of the settlement fund to Tonkon.

Here, the parties' two year litigation history, the disclosure of information, and representation by experienced counsel all indicate that the Proposed Settlement is the product of serious, informed, non-collusive negotiation. Additionally, the parties were assisted in mediation by the Honorable Michael H. Simon, further weighing against any indication of collusion.[5] *See In re PNC Fin. Servs. Group, Inc.*, 440 F. Supp. 2d 421, 430 (W.D. Pa. July 13, 2006) (finding that partial settlement of large securities fraud case negotiated over several months with assistance from retired United States District Judge Nicholas Politan "in itself significantly dispels any concern of collusion"); *In re Zynga*, 2015 WL 6471171, at *9 (finding proposed settlement of class action was not collusive where parties engaged in limited discovery, were represented by experience counsel and used neutral mediator). Moreover, the presence of counsel for the plaintiffs in the Individual Actions also weighs against collusion between Plaintiffs and Tonkon. Notably, Non-Settling Defendants do not contend that the Proposed Settlement is collusive.

---

[5] The court has considered the Affidavit submitted by the Honorable Michael H. Simon in his role as mediator only. (Decl. Michael H. Simon Supp. Mot. Prelim. Approval Settlement ¶ 4, ECF No. 353.) Pursuant to Federal Rule of Evidence 408 and OR. REV. STAT. chapter 36, the court has not, and will not, consider any information relating to the content of the discussions that occurred during the mediations. Similarly, the court will reject any attempt by any party to compel any testimony from Judge Simon concerning the content of any discussions occurring during the mediations.

2. there are no obvious deficiencies

The Proposed Settlement contains no obvious deficiencies that would preclude preliminary approval. The attorney fees allocation is not unreasonably high, there is no preferential treatment for Class Representatives, the non-settling defendants have not raised any concerns about the quality of notice to the class, or claims administration. Here, counsel is seeking an award of 20% of the Settlement Fund, which is below the 25% "benchmark" typically considered a reasonable fee in the Ninth Circuit. *In Re Bluetooth*, 654 F.3d at 942 (holding that courts may award a percentage of the common fund and that 25 percent is typically a reasonable fee). Additionally, as noted above, there is no clear sailing provision, and requested fees must be approved by the court. Accordingly, the Proposed Settlement lacks obvious deficiencies that would preclude preliminary approval.

3. no preferential treatment

The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class. As noted above, the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses. The lack of preferential treatment for Plaintiffs weighs in favor of preliminary approval. *In re Zynga*, 2015 WL 641171, at *10 (approving preliminary settlement of class action where the plan of allocation "distributes the funds without giving undue preferential treatment to any class members").

4. proposed settlement within range of possible approval

The court must examine whether the settlement "falls within the range of possible approval" by considering "substantive fairness and adequacy" and what plaintiffs' expected recovery may be

"balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. The adequacy of the amount of the settlement must be considered in light of the strength of the plaintiff's case and the risks in pursuing further litigation. *In re Mego Fin. Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 460 (9th Cir. 2000); *see also Bell*, 2017 WL 2672073, at *5 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (internal quotation omitted).

Here, the court readily finds that Settlement provides a substantial benefit without further risk to the class. To be sure, the insurance proceeds represent the best opportunity for recovery against Tonkon, as the risk of non-payment as the case proceeds increases. Here, the insurance proceeds likely represent the largest asset that Tonkon has to pay a large judgment. Given that the insurance policies are "wasting policies" the amount Tonkon has to offer will never be greater, given the likelihood of protracted litigation as this matter proceeds. *See In re Mego Fin. Corp.*, 213 F.3d at 459 ("It is well-settled law that a cash settlement amounting only to a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quotation and citation omitted)). If the Proposed Settlement and its attendant release are not approved, the settlement will be revoked and Tonkon will proceed trial. In doing so, Tonkon will continue to incur attorney fees, thereby lowering the potential sum available to pay a judgment should Plaintiffs ultimately prevail. Should Plaintiffs prevail, the purported losses to the class are estimated to be $450 million, an amount Tonkon is unlikely to ever satisfy.

Additionally, there are risks to the Class Members given the complexity inherent in this case. The Class faces legal challenges at the class certification level, summary judgment and trial, which

may result in little or no recovery. Thus, the court finds that the proposed settlement is well within the range of possible.

5. an injunction and contribution claims bar is appropriate

As discussed above, entry of a *pro tanto* contribution claims bar is appropriate in the circumstances of this case. The court is aware that the parties have conducted discovery concerning Tonkon's assertion of partial solvency. Plaintiffs and Tonkon are not asking for the court to finally resolve the form of judgment and bar order that ultimately will be entered. Therefore, the court preliminarily finds that the requested *pro tanto* contribution claims bar is appropriate, with a final determination to be made after the Settlement Hearing.

IV. Plan of Allocation

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Ech., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (quoting *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries." *Scott v. ZST Digital Networks, Inc.*, Case No. CV 1-3531 GAF (JCx), 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013). The court finds the plan of allocation reasonable.

The proposed Plan of Allocation is described in the Notice, and seeks to disperse the monies in the Net Settlement Account on a pro rata basis according to the proportionate losses suffered by each Class Member. As detailed above, Plaintiffs receive no special treatment. Non-Settling Defendants do not object to Plan of Allocation. Here, the plan was formulated with the assistance

of the Receiver, and compensate all Class Members in a similar manner based on their Net Losses, the court finds that the plan is fair, reasonable, and adequate. *See Schueneman v. Area Pharm.*, Case No. 3:10-cv-01959, CAB (BLM), 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12, 2018) (approving final plan of allocation that treats all class members' losses in the same way by awarding pro rata share to settlement fund to each authorized claimant).

## V. Form and Method of Notice

If the court certifies a class under Rule 23(b)(3), the court "must direct to class members the "best notice that is practicable under the circumstances." FED. R. CIV. P. 23(b)(3). Rule 23(c)(2) governs the form and content of a proposed notice. Although notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. Oct. 8, 2014) (finding form of notice was reasonably calculated to provide notice and was best under circumstances).

Here, the Proposed Settlement provides that a Claims administrator will provide notice of proposed settlement, and a copy of the Proof of Claim and Release Form to all potential Class Members at their last know address provided in Aequitas records. Additionally, a Summary Notice will be published in the *Wall Street Journal* and the *Oregonian*, and a national newswire service. The Claims Administrator also will maintain a settlement website and a toll free number and email address dedicated to this settlement.

The court finds that the content of the Notice and Summary Notice are reasonably calculated to inform the absent class members. Here, the Notice itself clearly identifies the nature of the action;

the class definition; the claims, issues, and defenses; and the options available to the putative class members – to appear through an attorney or exclude themselves from the class; the method for doing so; and the binding effect of a class judgment.

Therefore, the court finds that the proposed form and method of Notice and Summary Notice comply with the requirements in Rule 23, due process, and provided the best practicable notice under the circumstances. *See Ontiveros*, 303 F.R.D. at 367 (finding notice provided by claims administrator satisfied Rule 23); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (finding notice by mail and publication was fair, reasonable and adequate to notify investor class).

*Conclusion*

Based on the foregoing, the court recommends that Plaintiffs Amended Motion for Preliminary Approval of the Partial Settlement and Notice (ECF No. 350) be granted. The court further recommends the following: (1) the "Class" as defined in Exhibit 1 (ECF No. 389-1) be provisionally certified; (2) the Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 389-2) be entered; (3) the Plan of Allocation (ECF No. 389-3) be approved; (4) the Notice of Pendency and Proposed Settlement of Class Action (ECF No. 389-4) and the Summary Notice (ECF No. 389-5) be approved; (5) the Claims Administrator be approved; (6) the court appoint Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Schlacter P.C. as Class Co-Lead Counsel; and (7) the court follow the Proposed Schedule of Events set forth in the Amended Motion (ECF No. 350).

*Scheduling Order*

The Findings and Recommendation will be referred to the Honorable Michael W. Mosman for review. Objections, if any, are due within fourteen (14) days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 19th day of March, 2019.

JOHN V. ACOSTA
United States Magistrate Judge