**Robert C. Weaver, Jr., OSB #801350**
E-Mail: rweaver@gsblaw.com
**Gary I. Grenley, OSB #751380**
E-Mail: ggrenley@gsblaw.com
**Paul H. Trinchero, OSB #014397**
E-Mail: ptrinchero@gsblaw.com
**Eryn Karpinski Hoerster, OSB #106126**
E-Mail: ehoerster@gsblaw.com
**Daniel L. Keppler, OSB #923537**
E-Mail: dkeppler@gsblaw.com
Garvey Schubert Barer
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939

**Peter A. Wald (admitted pro hac vice)**
E-Mail: peter.wald@lw.com
**Gavin M. Masuda (admitted pro hac vice)**
E-Mail: gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

**Attorneys for Defendant Deloitte & Touche LLP**
(*Additional Counsel Listed on Signature Page*)

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; and INTEGRITY BANK & TRUST,<br><br>        Defendants. | Case No. 3:16-cv-00580-AC<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION REGARDING PRELIMINARY APPROVAL OF PARTIAL CLASS SETTLEMENT (TONKON)**<br><br>**Request for Oral Argument** |

OBJECTIONS TO FINDINGS AND RECOMMENDATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

     A.     The Aequitas Entities And Claims At Issue ................................................3

     B.     The Tonkon Settlement...............................................................................5

     C.     The Parties' Positions And The Magistrate Judge's Findings &
           Recommendation ........................................................................................7

III.   STANDARD OF REVIEW .....................................................................................8

IV.   ARGUMENT .........................................................................................................9

     A.     The Magistrate Judge Clearly Erred In Finding That *Pro Tanto* Judgment
           Reduction Is Available Under The OSL, And Any Purported Factual
           Findings Should Be Stricken ......................................................................9

           1.     The OSL Does Not Permit *Pro Tanto* Judgment Reduction.......................9

           2.     Even If The OSL Did Permit *Pro Tanto* Judgment Reduction,
                Plaintiffs Have Not Made The Required Factual Showings ....................17

     B.     The Magistrate Judge Clearly Erred In Provisionally Certifying The
           Tonkon Settlement Class .........................................................................19

V.    CONCLUSION....................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adams v. Perkins & Co., P.C.*,
No.1110-12903 (Or. Cir. Ct.) (Nov. 25, 2014) ................................................................13, 17

*Ainslie v. Spoylar*,
144 Or. App. 134 (1996) ........................................................................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...............................................................................................2, 7, 20, 21

*Barrie v. Intervoice-Brite, Inc.*,
No. 3:01–CV–1071–K, 2009 WL 3424614 (N.D. Tex. Oct. 26, 2009) .................................20

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................................26

*Burdick v. Comm'r*,
979 F.2d 1369 (9th Cir. 1992) .................................................................................................9

*Calderon v. Experian Info. Solutions, Inc.*,
290 F.R.D. 508 (D. Idaho 2013) ..............................................................................................9

*In re Coburn*,
175 B.R. 400 (Bankr. D. Or. 1994) ........................................................................................16

*Easley v. Cromartie*,
532 U.S. 234 (2001) .................................................................................................................9

*Facciola v. Greenberg Traurig, LLP*,
281 F.R.D. 363 (D. Ariz. 2012) .............................................................................................26

*Fluck v. Blevins*,
969. F. Supp. 1231 (D. Or. 1997) ...............................................................................12, 13, 14

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) ...................................................................................... *passim*

*In re Hyundai and Kia Fuel Economy Litigation*,
881 F.3d 679 (9th Cir. 2018), *reh'g granted* 897 F.3d 1003 (9th Cir. 2018) ...............7, 21, 22

*Juniper Networks, Inc. v. SSL Servs., LLC*,
No. C 08-5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009), *aff'd*, 404
F. App'x 499 (Fed. Cir. 2010) ................................................................................................20

*In re Lehman Bros. Sec. and ERISA Litig.*,
    No. 08 CIV. 5523 LAK, 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ...................................25

*Merrihew v. Charles Schwab et al.*,
    No. 0907-10596 (Or. Cir. Ct. Aug. 11, 2010)..........................................................................18

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)..................................................................................................25

*Ortiz v. Menu Foods, Inc.*,
    525 F. Supp. 2d 1220 (D. Haw. 2007) ......................................................................................9

*Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    No. 12–00064 LEK–KSC, 2015 WL 419654 (D. Haw. Jan. 30, 2015) ...............................8, 9

*Quatama Park Townhomes Owners Ass'n v. RBC Real Estate Fin., Inc.*,
    No. 3:18-CV-00023-SB, 2019 WL 1237147 (D. Or. Mar. 18, 2019) ......................................8

*Rael v. Children's Place, Inc.*,
    No. 3:16-cv-00370-GPC-JMA, 2018 U.S. Dist. LEXIS 56909 (S.D. Cal. Apr.
    2, 2018) ...................................................................................................................................21

*SEC v. Aequitas Mgmt. LLC*,
    No. 3:16-cv-00438-JR (D. Or. Nov. 21, 2018).........................................................................5

*SEC v. Aequitas Mgmt., LLC*,
    No. 3:16-cv-00438-PK (D. Or. filed Mar. 10, 2016) ...............................................................3

*State v. Gaines*,
    346 Or. 160 (2009)....................................................................................................................9

*Veloz v. Foremost Ins. Co.*,
    306 F. Supp. 3d 1271 (D. Or. 2018) .......................................................................................21

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ..................................................................................................20

*Wolpin v. Philip Morris Inc.*,
    189 F.R.D. 418 (C.D. Cal. 1999).............................................................................................8

*Wright v. Farouk Sys., Inc.*,
    701 F.3d 907 (11th Cir. 2012) ................................................................................................21

## STATUTES

ORS 31.815.................................................................................................................................15

ORS 59.115.......................................................................................................................... *passim*

ORS 59.135 ...................................................................................................................4, 26

ORS 59.335(1) ...................................................................................................................21

ORS 67.615(1) ...................................................................................................................19

## RULES

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(a) .............................................................................................2, 7, 8

Fed. R. Civ. P. 23(b)(3) .................................................................................... *passim*

Fed. R. Civ. P. 72(a) .................................................................................................8

## TREATISES

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, § 16 ...................13, 14, 15, 16

## OTHER AUTHORITIES

Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS 2018 REVIEW
    AND ANALYSIS 20 (2018), *available at*
    https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-
    Settlements-2018-Review-and-Analysis...............................................................................16

## I.    INTRODUCTION

In this complex putative securities class action arising from the collapse of Aequitas Capital Management and its affiliated entities ("Aequitas Entities" or "Aequitas"), Plaintiffs seek to recover an estimated $500 million in losses from six Defendants.  None of the Defendants are alleged to have been complicit in Aequitas's alleged fraud.  Instead, Plaintiffs allege that Defendants' services—whether legal, accounting, custodial, or otherwise—constituted "participation or material aid in" Aequitas's illegal sales.  *See* ORS 59.115(3).  Plaintiffs seek to hold the Defendants jointly and severally liable for *all* investor losses (subject to certain limitations on the liability of each Defendant imposed by the Magistrate Judge in his rulings on various motions to dismiss), regardless of the Defendant's relative importance to Aequitas's securities sales at issue.

Yet, Plaintiffs have reached an early settlement, amounting to just 3% of the estimated class-wide losses, with the one Defendant whose services were central to *all* of Aequitas's sales during the putative class period:  Tonkon Torp LLP ("Tonkon"), the law firm that drafted approximately 95% of the offering documents Aequitas used to sell securities, and advised Aequitas on its securities sales throughout the class period.  Tonkon is paying only its remaining insurance limits, and the Tonkon partners who actually worked on Aequitas's engagements have contributed nothing—even though the settlement purports to release them from all related liability.  Plaintiffs and Tonkon know this settlement is insufficient, because they have conditioned it on the Court issuance of a *pro tanto* claims bar order that will (1) prevent the non-settling Defendants from exercising their right to contribution from Tonkon and its partners, and (2) reduce the non-settling Defendants' liability by just the dollar amount of Tonkon's settlement, rather than Tonkon's proportional fault.

On March 19, 2019, the Magistrate Judge preliminarily approved the Tonkon settlement over the non-settling Defendants' objections, issuing the *pro tanto* claims bar order and preliminarily certifying the settlement class under the "heightened" standard the Supreme Court has instructed district courts to apply in determining whether a settlement class satisfies the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.[1]  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Magistrate Judge overruled both objections by making findings of fact that were—as even Plaintiffs and Tonkon have acknowledged—unsupported by record evidence.  The Magistrate Judge instead cited his own "intimate[] familiar[ity]" with the parties' theories of the case, and unspecified evidence filed in connection with discovery and substantive motions.  *See* Findings and Recommendations Prelim. Approval of Partial Class Settlement ("F&R") at 26-27 (Dkt. 481).  But this case was at the *pleadings stage through November 2018*, when the non-settling Defendants filed their answers and affirmative defenses.  In other words, the only "theories" and "facts" that have been litigated involve the allegations in Plaintiffs' various complaints, which the Magistrate Judge was obligated to accept as true for pleading purposes.  But to demonstrate that a *pro tanto* bar order is appropriate under Oregon law, and that the putative settlement class preliminarily should be certified for settlement purposes, Plaintiffs were required to submit *evidence* supporting the necessary factual findings—not simply recycle *allegations* from previously filed pleading and

---

[1] Although these objections are made to an order preliminarily approving the proposed settlement, and while the Magistrate Judge has indicated his intention to revisit certain findings upon final approval, the Court should consider these objections now because it is imprudent to grant preliminary approval and give notice to putative class members of a settlement that cannot stand as constituted;  the Settlement is contingent on a *pro tanto* bar order that is unavailable under Oregon law, and requires the Court to certify a class that does not, on the record presented, meet the stringent requirements of Rule 23.

discovery motions.  This they failed to do, and the lack of a factual record constitutes clear error that must be remedied by this Court.

## II.    BACKGROUND

### A.    The Aequitas Entities And Claims At Issue

This putative class action arises from the collapse of Oregon-based Aequitas Capital Management and its affiliated entities,[2] which invested in and sold securities related to the purchase and financing of trade receivables.  The Securities and Exchange Commission ("SEC") brought suit against the Aequitas Entities and certain of its former officers on March 10, 2016, alleging that they perpetrated a "Ponzi-like" scheme upon investors by at least July 2014.  *See* Complaint, *SEC v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-PK (D. Or. Mar. 10, 2016).  The Aequitas Entities were placed into receivership (the "SEC Receivership" or "Receiver") shortly thereafter.  *See* Stip. Interim Order Appointing Receiver, *SEC v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-PK (D. Or. March 16, 2016).

In the wake of the SEC Receivership, numerous groups of investors, who purchased securities issued by the Aequitas Entities, filed lawsuits seeking to recover their losses.  In this action, seven named plaintiffs ("Plaintiffs") who purchased private notes, partnership interests, and other securities issued by six different Aequitas entities[3] purport to represent a class of persons who purchased various Aequitas securities on or after June 9, 2010.  *See* SAC ¶ 203.

---

[2] Forty-eight of these functionally and legally distinct entities were placed into the "SEC Receivership" in March 2016 and remain in receivership.  *See SEC v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-PK (D. Or. filed Mar. 10, 2016).

[3] The named plaintiffs purchased securities issued by following Aequitas entities: Aequitas Commercial Finance, LLC ("ACF"); Aequitas Capital Opportunities Fund, LP ("ACOF"); MotoLease Financial, LLC ("AMLF"); Aequitas Income Opportunity Fund, LLC ("AIOF"); Aequitas Income Protection Fund, LLC ("AIPF"); and Aequitas Income Opportunity Fund II, LLC ("AIOF-II").  *See* Second Am. Class Action Compl. ("SAC") ¶¶ 196-202 (Dkt. 257).

Each of the six entities at issue sold a different security.  For example, ACF sold secured subordinated private notes (debt instruments) that permitted Aequitas to use investor proceeds to fund general corporate obligations or repay prior investors.  *See* Non-settling Defendants' Resp. to Mot. ("Response") at 5 (Dkt. 370).  ACOF, meanwhile, sold limited partnership interests (equity instruments) to investors.  *Id.*  Each of these securities was sold in a private placement transaction between Aequitas and its investors, by means of numerous different private placement memoranda ("PPMs").  Moreover, purchasers of Aequitas securities received documents and information about those securities that varied widely from transaction to transaction, even for sales that occurred during the same period by the same Aequitas fund.  *Id.* None of these securities could be resold—meaning there was no "market" for any Aequitas security.  *Id.*

Plaintiffs allege that the Aequitas Entities committed "primary" violations of the Oregon Securities Laws ("OSL") by selling securities that were not registered with the State of Oregon (in violation of ORS 59.115(1)(a)), and that contained materially false or misleading statements (in violation of ORS 59.115(1)(b) and ORS 59.135(2)).  According to Plaintiffs, these alleged false statements were made in more than a dozen PPMs issued by the Aequitas Entities over the six-year class period—but, as the Magistrate Judge noted, each PPM was allegedly false or misleading for different reasons.  *See* April 10, 2017 F&R at 2-3, 49 (Dkt. 242) (recognizing that "whether a statement was misleading when made depends on changing circumstances," and recommending that the Court dismiss any allegations that do not "differentiate between the Aequitas entities and the securities they sold," or fail to "state when and where the misleading statements occurred").

Plaintiffs further allege that Defendants are jointly and severally liable with the Aequitas

Entities because they "participate[d] or materially aid[ed] in" the sales of securities at issue.  *See* ORS 59.115(3).  To prevail on their claims, Plaintiffs must adequately allege and prove both "primary liability" (*i.e.*, that the sales to them were made in violation of the Oregon Securities Laws, specifically ORS 59.115(1)), and "secondary liability" (*i.e.*, that Defendants "participate[d] or materially aid[ed]" in "the sale" that violated those laws).  *Id.*

The SEC Receiver has estimated that the putative class has suffered roughly $500 million in losses on their investments.  *See* Reply Mem. of Settling Def. Tonkon Torp LLP iso Mot. for Prelim. Approval ("Tonkon's Reply") at 16-17 n.8 (Dkt. 385).[4]  The Receiver has also performed an investigation into the conduct of the Aequitas entities in receivership and concluded that Aequitas was insolvent no later than July 3, 2014—which is notable as the proposed class would cover investors who purchased as early as June 2010—and that Aequitas's financial condition continued to change from 2014 into 2015.  *See* Report Regarding The Investigation of The Receivership's Business Conduct at, *e.g.*, 7-10, 39-40, 90-91, *SEC v. Aequitas Mgmt. LLC*, No. 3:16-cv-00438-JR (D. Or. Nov. 21, 2018) ("Receiver's Report").[5]

## B.    The Tonkon Settlement

One professional service provider from which Plaintiffs seek to recover losses is Tonkon.  Plaintiffs allege that, "[a]t all material times, Tonkon provided legal services to Aequitas in connection with the sale of securities that are at issue in this action."  *See* SAC ¶ 19.  Indeed,

---

[4] To date, the non-Settling Defendants have had little opportunity to evaluate the Receiver's legal or factual conclusions.  A litigation stay in the Receivership action prevents Defendants from seeking discovery from either the Receivership entities or Aequitas's former officers and employees, who would have first-hand knowledge of facts about the company's financial condition.

[5] Although the Receiver's report suggests that Aequitas could have been insolvent before July 3, 2014, the Receiver concluded that it would not be a "beneficial use of Receivership resources to undertake the extensive analysis necessary to support or refute a hypothesis of insolvency prior to July 2014."  Receiver's Report at 11.

Tonkon advised Aequitas on the sales of its securities, prepared the legal documentation necessary to complete those sales—including offering documents, risk disclosures, subscription agreements, and promissory notes—and was identified in Aequitas offering documents as counsel to the offering entities. *Id*.

On August 21, 2018, Plaintiffs moved the Court to certify provisionally a settlement class (the "Class") and preliminarily approve the proposed settlement (the "Settlement") between Tonkon and the Class, on terms set forth in the May 31, 2018 Stipulation and Agreement of Settlement (the "Stipulation") and the August 21, 2018 Amendment No. 1 to the Stipulation. *See generally*, Am. Mot. for Prelim. Approval of Partial Settlement ("Motion" or "Mot.") at 3 (Dkt. 350). The Class is defined to include any person who purchased a security issued by eight distinct Aequitas entities on or after June 9, 2010, and who had an account balance related to that security as of March 31, 2016. *Id*. at 8. Under the Stipulation, Plaintiffs, on behalf of the Class, agree to release claims against Tonkon, and its current and former partners of liability, in exchange for payment of $12,913,000 to the putative class—representing just 3% of the Receiver-estimated losses—from what remains under Tonkon's insurance policy.[6] *See id*. at 3; *see* Stipulation ¶ 2 (Dkt. 355). Further, the Settlement is expressly conditioned upon: (1) the entry of an injunction barring contribution claims by the non-settling Defendants against Tonkon and every individual lawyer employed by Tonkon, past or present; and (2) the entry of an order limiting the non-settling Defendants to a *pro tanto* credit for this Settlement, if any judgment is entered against them in this action. *See* Mot. at 19-20.

---

[6] Tonkon and its insurers have agreed to allocate the $18.5 million remaining under its insurance policy between the *Ciuffitelli* Class Action at 69.8% ($12,913,000) and the Individual Actions in the aggregate at 30.2% ($5,587,000). Stipulation ¶ 2.

### C.    The Parties' Positions And The Magistrate Judge's Findings & Recommendation

On September 24, 2018, Deloitte & Touche LLP, Sidley Austin LLP, EisnerAmper LLP, Duff & Phelp LLP, and TD Ameritrade, Inc. (together, non-settling Defendants) jointly filed their Response to the Motion, arguing first that the Court should hold the Settlement in abeyance pending the Ninth Circuit decision in *In re Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679, 693 (9th Cir. 2018), *reh'g granted* 897 F.3d 1003 (9th Cir. 2018), which will clarify the standard that the Court must apply when making findings under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure at the preliminary approval stage. *See* Resp. at 14.  Non-settling Defendants also explained that Plaintiffs offer *no evidence* by which the Court can satisfy its obligation—extant even before *Hyundai*—to afford "undiluted, even heightened, attention" to the requirements of Rules 23(a) and (b)(3) at the provisional certification stage.  *See id.* at 10, 22 (citing *Amchem*, 521 U.S. at 620).  With respect to the requested *pro tanto* contribution claims bar, non-settling Defendants further argued that *pro tanto* reduction is contrary to the OSL, and that even if *pro tanto* reduction were permissible under certain circumstances, Tonkon cannot plausibly invoke its proposed "partially solvent" standard to obtain a *pro tanto* reduction under the facts of this case.  *See id.* at 27, 29.

On March 19, 2019, the Magistrate Judge issued Findings and Recommendations [re] Preliminary Approval of Partial Class Settlement ("F&R"), recommending that the District Court grant Plaintiffs' Motion and preliminarily certify a settlement class.  F&R at 46.  First, the Magistrate Judge declined to hold the Settlement in abeyance pending the Ninth Circuit's *en banc* review of *Hyundai*.  *Id.* at 12.  Regarding Plaintiffs' requested bar order, the Magistrate Judge found that *pro tanto* reduction is available under the Oregon Securities Laws, and "preliminarily" found that the requested *pro tanto* contribution claims bar is "appropriate in the

circumstances of this case." *Id*. at 23-24, 44.  However, the Magistrate Judge expressly noted

that "a final determination [will] be made after the Settlement Hearing." *Id*. at 44.

Regarding provisional certification of the Class for settlement purposes, the Magistrate

Judge found that "Plaintiffs have provided a sufficient evidentiary record upon which th[e] court

can make a preliminary ruling." *Id*. at 26.  In reaching this conclusion, the Magistrate Judge

acknowledged the requirement to apply "heightened" judicial scrutiny to the question of whether

Rule 23(a) and 23(b)(3) requirements have been satisfied. *Id*. at 27.  Although Plaintiffs

submitted no evidence to support these findings, the Magistrate Judge relied on his "intimate[]

familiar[ity] with the parties' theories of the case" and other unspecified "evidence" to conclude

that "Plaintiffs have provided sufficient evidence from which this court can apply heightened

scrutiny" to the Settlement. *Id*. at 26-27.  The Magistrate Judge also indicated that he intends to

revisit these provisional findings at the final approval stage. *See id*. at 39 ("the court cannot fully

assess all of the fairness factors until after the final approval hearing").

Respectfully, non-settling Defendants submit that the foregoing findings in the F&R were

in error and should be corrected on review.

## III.    STANDARD OF REVIEW

A district court reviews a magistrate judge's findings of fact under a "clearly erroneous or

contrary to law" standard.  Fed. R. Civ. P. 72(a); *Quatama Park Townhomes Owners Ass'n v.*

*RBC Real Estate Fin., Inc.*, No. 3:18-CV-00023-SB, 2019 WL 1237147, at *2 (D. Or. Mar. 18,

2019); *see also Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 421 (C.D. Cal. 1999).  The "clearly

erroneous" standard applies to findings of fact.  *See Pacific Radiation Oncology, LLC v. Queen's*

*Med. Ctr.*, No. 12–00064 LEK–KSC, 2015 WL 419654, at *3 (D. Haw. Jan. 30, 2015).  The

"contrary to law" standard applies to conclusions of law and requires *de novo* review of matters

to which a party objects.  *See id*.; *see also Calderon v. Experian Info. Solutions, Inc*., 290 F.R.D.

508, 511 (D. Idaho 2013).  A finding of fact is clearly erroneous where, "on the entire evidence

the Court is left with the definite and firm conviction that a mistake has been committed."

*Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation and quotations omitted); *see also*

*Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir. 1992) (same).  A decision is contrary to law if

it applies an incorrect legal standard or fails to consider an element of the applicable standard.

*Ortiz v. Menu Foods*, *Inc*., 525 F. Supp. 2d 1220, 1222 (D. Haw. 2007).

## IV.    ARGUMENT

### A.    The Magistrate Judge Clearly Erred In Finding That *Pro Tanto* Judgment Reduction Is Available Under The OSL, And Any Purported Factual Findings Should Be Stricken

The Magistrate Judge's finding that *pro tanto* judgment reduction is "appropriate in the

circumstances of this case," F&R at 23-24, 44, was clearly erroneous for two reasons.  First, the

OSL does not permit *pro tanto* judgment reduction in the case of partial settlements.  Second,

even if the OSL did permit *pro tanto* reduction in certain circumstances, Tonkon and Plaintiffs

admittedly have not made the evidentiary showing required of them to justify application of that

methodology.  There simply was no record upon which the Magistrate Judge *could* have

concluded that *pro tanto* reduction is "appropriate in the circumstances of this case"—and any

"findings" suggesting the contrary should be stricken from the record.

#### 1.    The OSL Does Not Permit *Pro Tanto* Judgment Reduction

The parties agree that the availability of *pro tanto* judgment reduction is a question of

Oregon law.  *See* F&R at 16.  When interpreting Oregon law, the Oregon Supreme Court has

instructed courts first to examine the text of a statute and its context.  *See State v. Gaines*, 346

Or. 160, 164 (2009) ("First, the court examines the text and context of the statute.").  The plain

language and context of the OSL indicate that it does not permit the *pro tanto* judgment-

reduction upon which Plaintiffs have conditioned this settlement.  A plaintiff who prevails on an ORS 59.115 claim is entitled to rescissory damages:  upon tender of the security, the plaintiff shall receive "the consideration paid for the security" (including statutory interest), "less any amount received on the security."  *See* ORS 59.115(2).  The Oregon Court of Appeals in *Ainslie v. Spoylar* held—and Plaintiffs do not dispute—that prior settlement payments constitute "amount[s] received on the security" and therefore reduce a plaintiff's damages award on a dollar-for-dollar basis.  *See Ainslie v. Spoylar*, 144 Or. App. 134, 145-46 (1996); Pls.' Reply iso Am. Mot. for Prelim. Approval ("Pls.' Reply"), at 9-10 (Dkt. 389) (discussing *Ainslie* without disputing its holding that prior settlement amounts reduce a plaintiff's damages claim on a dollar-for-dollar basis).  Therefore, even without a court order, non-settling Defendants would be entitled by statute to reduce any judgments against them by the $12.9 million Tonkon will have paid to the putative class.

Meanwhile, ORS 59.115(3) provides "every person who participates or materially aids in" an illegal securities sale has the right to "contribution from those jointly and severally liable with that person."  *Id.*  The statute grants this right not as an alternative but *in addition to* the right to an offset for recoveries received.  The claims bar order Plaintiffs ask the Court to sign will eliminate non-settling Defendants' right to contribution while providing them with nothing in return—other than the dollar-for-dollar reduction to which they are already entitled.  This result is inconsistent with the text and context of ORS 59.115, which indicates the Oregon legislature's clear intent to provide defendants with the rights *both* to offset damages by the amounts of prior settlements, *and* to seek contribution from settling defendants.[7]

---

[7] The Magistrate Judge appears to have misunderstood Defendants' position, characterizing Defendants as arguing that the OSL precludes entry of a contribution bar order.  *See* F&R at 222 ("Non-Settling Defendants argue that the [OSL] gives them a statutory right to

The correct rule—which would fairly compensate non-settling Defendants for the loss of their contribution claims against Tonkon—is that the liability of non-settling Defendants must be reduced by the proportionate fault of the settling defendant. The Ninth Circuit adopted this "proportionate fault" rule in *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989), a case involving partial settlement of claims arising under Section 11 of the Securities Act of 1933.

In *Kaypro*, one defendant reached a partial settlement with plaintiffs, but conditioned settlement on obtaining an order barring contribution claims by non-settling defendants. *Id*. at 1225. The district court issued the bar order, and the non-settling defendants appealed, arguing that the bar order infringed on their right to full contribution from the settling defendants. *Id*. at 1226. The Ninth Circuit discussed at length the respective merits of *pro tanto* and proportionate fault reduction, and ultimately remanded the case to the district court because the proposed settlement "did not limit the subsequent exposure of the non-settling defendants. The limit must be the non-settling defendants' actual percentage of liability for the amount of total damages determined at trial." *Id*. at 1232. As the Ninth Circuit explained, proportional liability is favored because it "satisfies the statutory goal of punishing each wrongdoer" while protecting non-settling defendants from paying "more than they would if all parties had gone to trial." *Id*. at 1231. By contrast, the *pro tanto* approach encourages plaintiffs to "engage in collusion with certain defendants" and "effect low settlements with defendants who had limited resources, and thereby *force* wealthier defendants to pay more than if all parties proceeded to trial." *Id*. at 1230

---

contribution that a bar order may not preclude."). That is not (and has never been) Defendants' position. Defendants agree that contribution claims can be barred, but only *if non-settling defendants are fairly compensated* for the loss of their contribution claims. *See* Response at 27-28.

(emphasis in original).  For this reason, the Ninth Circuit held that the proportionate fault rule should apply as a matter of law in the case of partial settlements of federal securities law claims.

The Magistrate Judge declined to follow the proportionate fault rule—and instead found that both methods of judgment reduction "are available under Oregon law"—for several erroneous reasons.  First, citing Judge Ashmanskas' analysis in *Fluck v. Blevins*, 969. F. Supp. 1231, 1236 (D. Or. 1997), the Magistrate Judge observed that "there are serious problems with both the *pro tanto* and the proportionate liability methods of crediting partial settlements," and that, as a result, Oregon law should permit both methods depending on the circumstances.  *See* F&R at 19.  But in *Fluck*, Judge Ashmanskas reconciled these "problems" by adopting the methodology Congress chose to follow when enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA")—which credits non-settling defendants in federal securities cases with the *greater of* the dollar amount of the settlement or the proportionate fault of the settling defendant.  *Id.*[8]  There is no contention here that the *pro tanto* rule would result in a greater credit to non-settling Defendants than the proportionate fault rule,[9] and as a consequence, the Magistrate Judge's findings run directly contrary to those of Judge Ashmanskas in *Fluck* by crediting non-settling Defendants with the *lesser* of the dollar amount of the settlement or the proportionate fault of the defendant.  This is precisely the structure—warned against by both the Ninth Circuit and Judge Ashmanskas—that leads to collusive settlements between plaintiffs and less solvent but highly culpable defendants.  *See Kaypro*, 884 F.2d at 1230 (explaining that the "proportionate fault rule" prevents plaintiffs from "effect[ing] low settlements with defendants

---

[8] As Judge Ashmanskas observed in *Fluck*, Congress, in enacting the PSLRA's dual judgment reduction method, "attempted to redress the weaknesses of the *pro tanto* and proportionate liability approaches by combining them."  *Fluck*, 969 F. Supp. at 1237.

[9] Non-settling Defendants would not object to a credit for the greater of those amounts if the Court chooses to follow that holding.

who had limited resources, and thereby *forc*[ing] wealthier defendants to pay more than if all parties had proceeded to trial" (emphasis in original)); *see also Fluck*, 969 F. Supp. at 1234 (acknowledging that a "problem with *the pro tanto* method is that it encourages collusion.  A plaintiff can settle rather cheaply with some of the defendants, in return for their assistance in prosecuting the plaintiffs' case against the remaining defendants, *i.e.*, those with deeper pockets, or in return for an interim 'war chest' to finance the litigation against the deep pocket defendants.").

Second, citing an order by Judge You (then of the Multnomah County Circuit Court) in *Adams v. Perkins & Co., P.C.*, No.1110-12903 (Or. Cir. Ct.) (Nov. 25, 2014), the Magistrate Judge found that *pro tanto* reduction would be consistent with Oregon's "one satisfaction" rule, and with the policies in the Restatement (Third) of Torts, Apportionment of Liability § 16, Comment c (the "Restatement").  *See* F&R at 22.  But the Magistrate Judge erred by following *Adams*, because the *Adams* settlement was global and the bar order uncontested.  This means that the issue of which judgment reduction methodology to apply was not litigated, and there were no "non-settling defendants" who were prejudiced by the bar order.  *See* Defs.' Uncontested Joint Mot. for Claim Bar Order and Inj., *Adams*, No. 1110-12903 (May 19, 2014).  Critically, Judge You was not presented with the kind of significant unfairness concerns related to non-settling defendants that are present here.  *Cf. Kaypro*, 884 F.2d at 1232.[10]

_____

[10]The Magistrate Judge correctly recognized that the Oregon Court of Appeals' decision in *Ainslie* does not hold that *pro tanto* judgment reduction is required under Oregon law.  *See* F&R at 20-21.  Similarly, the Magistrate Judge did not give weight to the Interim *Merrihew* Order, recognizing that "the *Merrihew* final order is brief and Judge Rees does not explain why he initially embraced the *pro tanto* method and later switched to proportionate liability."  *See* F&R at 18.

But even if *Adams* had actually decided the issue presented here, its reasoning should not persuade the Court. As to the "one satisfaction" rule, that rule provides only that a plaintiff should recover only once for a particular injury. *See Fluck*, 969 F. Supp at 134 ("a plaintiff may obtain only one satisfaction for an injury"). In other words, it is a *cap* on plaintiff's recovery— not an *entitlement* to full recovery where a plaintiff decides to settle its claims rather than face the risk and expense of taking them to trial.[11] *See* Mot. at 14 (acknowledging the many risks Plaintiffs face in bringing their claims to trial). As the Ninth Circuit held in *Kaypro*, "plaintiffs manage their own litigation, they could easily withdraw their complaint or settle with all defendants: *there is no requirement in the statute that defendants pay a given amount of money*." *See Kaypro*, 884 F.2d at 1231 (emphasis added). The same is true here, where Plaintiffs are free to pursue their claims through trial in order potentially to secure full recovery on behalf of the putative class. While Plaintiffs may elect to avoid the risk of doing so by settling their claims against one or more Defendants, that decision does not entitle Plaintiffs to recover the entirety of their alleged losses from the non-settling Defendants.

Nor should the Court follow the approach that is suggested in the Restatement (Third) of Torts: Apportionment of Liability. The Restatement's default rule is the rule Plaintiffs seek to circumvent: proportionate fault. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, § 16 ("The plaintiff's recoverable damages from a jointly and severally liable tortfeasor are reduced by the comparative share of damages attributable to a settling tortfeasor who otherwise would have been liable for contribution to jointly and severally liable defendants

---

[11] The "one satisfaction" rule is fully consistent with the rescissory damages remedy of ORS 59.115(2), which limits recovery for ORS 59.115 claims to "consideration paid for the security, and interest from the date of payment . . . less any amount received on the security"—including "amounts" received from partial settlements. *See* ORS 59.115(2).

who do not settle."). As an exception to that default, the Restatement outlines an alternative procedure whereby a court might apply a *pro tanto* setoff if the court first conducts a pre-trial evidentiary hearing and determines that the settling defendant is insolvent. *Id.* § 16, cmt. c, g.

Neither the Restatement exception nor the procedure it proposes find any support under Oregon law. Indeed, even Oregon's tort statutes do not follow the Restatement approach. As explained more fully in TD Ameritrade's Objections to the F&R, the Oregon legislature has enacted a tort statute that requires proportionate fault reduction in partial settlements of multi-defendant tort actions. *See* ORS 31.815; *see also* TD Ameritrade Objection at 7. It does not authorize *pro tanto* judgment reduction—with or without a pretrial insolvency proceeding. Given the Oregon legislature's rejection of *pro tanto* reduction in the tort context, it strains credulity to believe that the legislature intended to authorize such offsets under the OSL.

Against this backdrop, it is unsurprising that no precedential Oregon case has ever adopted the Restatement exception in an OSL lawsuit. Nor have Plaintiffs or Tonkon cited a single federal case (even before *Kaypro* and the PSLRA) that adopts the Restatement exception in the context of federal securities claims. There are good reasons why Oregon authorities have not adopted the Restatement exception.

First, the exception undermines the sound policy goals that the proportional fault rule advances. As the Ninth Circuit observed in *Kaypro*, one "evil" of a *pro tanto* regime is that "plaintiffs c[an] effect low settlements with defendants who had limited resources, and thereby force wealthier defendants to pay more than if all parties proceeded to trial." *Kaypro*, 884 F.2d at 1230; *cf.* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 16, cmt. c ("A *pro tanto* credit has the disadvantage of imposing any inadequacy in a partial settlement between the plaintiff and a settling tortfeasor on nonsettling tortfeasors against whom the plaintiff prevails

at trial.").  That tendency can be checked only by holding a complex fairness hearing involving evidentiary submissions and argument on the settling defendant's degree of responsibility. *Kaypro*, 884 F.2d at 1230.  As the Ninth Circuit observed, such a procedure—the precise procedure contemplated by the Restatement exception—would require a significant expenditure of resources that "would negate many of the benefits of settlement."  *Id.*

Second, adopting the Restatement exception in the context of securities actions would allow that exception to swallow the proportionate fault "rule."  In modern securities lawsuits, potential damages can and frequently do exceed hundreds of millions of dollars.  Because few securities defendants are able to satisfy such awards, the Restatement exception would apply in virtually every partial settlement, depriving non-settling Defendants of valuable contribution rights as a matter of course.  *See* Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS 2018 REVIEW AND ANALYSIS 20 (2018) (chart of maximum dollar loss for securities class actions, listing $818 million median maximum dollar loss and $2.97 billion average maximum dollar loss in 2018).[12]  In other words, adopting the Restatement approach would thwart the express intent of the Oregon legislature to provide non-settling Defendants with both a right to judgment reduction based on prior settlements *and* a right to seek contribution from others jointly and severally liable for the OSL violation at issue.  *See supra*; *see also In re Coburn*, 175 B.R. 400, 404 (Bankr. D. Or. 1994) ("Courts are not legislative bodies.").

This Court should find, based on the plain language and context of the OSL, persuasive federal authority, and the absence of contrary authority from the Oregon courts, that *pro tanto*

---

[12] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.

judgment reduction is unavailable in the case of partial OSL claim settlements.  The Magistrate

Judge's contrary finding constituted clear legal error.

### 2.    Even If The OSL Did Permit *Pro Tanto* Judgment Reduction, Plaintiffs Have Not Made The Required Factual Showings

Following *Adams*, the Magistrate Judge found that *pro tanto* reduction is appropriate

under Oregon law "where there is joint and several liability and there are limited fund concerns."

*See* F&R at 22.  Although the Magistrate Judge did not explain when such "limited fund

concerns" could be found to exist, Judge You in *Adams* wrote that such concerns may exist

where "it would not have made economic sense for plaintiffs to have continued to litigate in

hopes of recovering more, no matter how strong plaintiffs' claims or weak defendants' defenses

might have been. . . . The most likely end result would have been that it would have cost

plaintiffs more and they would have recovered less."  *See* Order Approving Compromise at 11,

*Adams*, No. 1110-12903 (Nov. 25, 2014) (quotations omitted).  In *Adams*, Judge You analyzed

several factors before deciding that settling defendants possessed limited funds—including the

amount of consideration to be paid in settlement, the actual amount of remaining insurance left

on the settling defendants' policies, "the nature of [settling] defendants' personal services

businesses and their limited liability," and whether plaintiffs could potentially recover more from

settling defendants through additional litigation.  *Id*. at 10-12.

As even Tonkon acknowledged in its submissions to the Magistrate Judge, the entry of a

*pro tanto* bar order requires findings of fact, based on record evidence.  Specifically, although

Tonkon argued that preliminary approval was proper because it could "plausibly claim" to be

"partially insolvent," Tonkon asserted that further discovery into its financial condition was

unnecessary at this stage because "Tonkon and the Plaintiffs are not asking the Court to actually

enter a *pro tanto* bar order as part of preliminary approval."  *See* Tonkon's Reply at 26-27.

However, in the parallel state court proceedings, Tonkon submitted expert declarations (one from

Serena Morones, on Tonkon's anticipated "liquidation value" after trial, and another from

Anthony Spain, regarding Tonkon's anticipated litigation expenses through trial) in an attempt to

satisfy the "partial solvency" criteria of *Adams* and the interim order in *Merrihew v. Charles*

*Schwab et al.*, No. 0907-10596 (Or. Cir. Ct. Aug. 11, 2010) ("Interim *Merrihew* Order). The

Circuit Court decided to defer to the Magistrate Judge on these issues—but before doing so,

entered a schedule that provided for the depositions of Tonkon's experts, the submission by

defendants of rebuttal expert declarations, and an evidentiary hearing to decide Tonkon's "partial

solvency" as a prerequisite to entry of a *pro tanto* claims bar.

The Magistrate Judge appears to have recognized that additional proof on the issue of

Tonkon's "partial solvency" needs to be considered at the final approval stage, reserving "final

determination" on the issue until "after the Settlement Hearing." *See* F&R at 44. Yet, the

Magistrate Judge provided for none of the procedural safeguards or evidence-gathering rights

that the Circuit Court judge provided, and seemed to make  findings that require consideration of

evidence and expert opinion. Specifically, citing "the reality of facts in this case," the Magistrate

Judge found that:

- "Tonkon's largest asset for payment of a judgment is its insurance policy";

- Tonkon's insurance policy "provides the maximum possible recovery for Plaintiffs

  and Tonkon";[13] and

---

[13]While Tonkon's proposed release and bar order would include not only the firm itself, but also
its partners individually, the Court did not make any findings regarding their ability to pay
towards a future judgment. The Court also made no findings regarding the propriety of
distributions Tonkon has made to its partners during the pendency of this litigation—or
whether any of those distributions might be available to satisfy a judgment against the firm.
The Oregon LLP statute limits an LLP's ability to distribute assets in the face of a significant
contingent liability, such as the one Tonkon faces in this litigation. Specifically, it provides

PAGE 18 -- OBJECTIONS TO FINDINGS AND RECOMMENDATION

- "Should this case proceed through trial, not only would Tonkon use much of the
  available insurance policy in its own defense costs, the threat of a potentially large
  judgment against the firm may hasten the departure of attorneys, leaving few, if any
  assets by which to pay a judgment and little recourse for future recovery."

*See* F&R at 24.  These are *all* facts that will be hotly contested through fact and expert

discovery—as Tonkon's own submissions to the state court acknowledge.  *See* Def. Tonkon

Torp LLP's Notice of Suppl. to the R., Exs. 1-6 (Dkts. 458 and 459).  To the extent the

Magistrate Judge reached these conclusions before considering contrary evidence from the

Defendants and before holding an evidentiary hearing on the factual issues presented, it

constitutes clear error.  Such "findings" cannot support application of the *pro tanto* methodology

in this case and should be stricken from any order adopted by this Court.[14]

###   B.    The Magistrate Judge Clearly Erred In Provisionally Certifying The Tonkon Settlement Class

The Magistrate Judge's "provisional approval of a settlement class," F&R at 3, is also

clearly erroneous.  The F&R correctly recognizes that this decision can have no bearing on

certification of a litigation class against the non-settling Defendants.  F&R at 9 (quoting

provision in proposed order); *see also id.* at 43 (recognizing the class "faces legal challenges at

---

that an LLP may make distributions to partners "*only if*, after giving effect to the distribution, in the judgment of the partners approving the distribution . . . [t]he partnership would be able to pay its debts as they become due in the ordinary course of business; and the fair value of the total assets of the partnership would equal or exceed its total liabilities."  ORS 67.615(1) (emphasis added).

[14] Notably, in a related case, *Brown v. Price*, Case No. 3:17-CV-00869-HZ (D. Or. 2017), the Court approved the settlement of claims by a class of Aequitas investors where advisory firms and related individuals contributed both insurance proceeds and personal assets to the settlement fund.  To support that settlement, the individuals submitted financial statements and testimony regarding their personal ability to contribute.  The record here is devoid of any such evidence.

PAGE 19 -- OBJECTIONS TO FINDINGS AND RECOMMENDATION

the class certification level").  Yet, even for purposes of provisionally certifying a settlement

class as to Tonkon alone, the Magistrate Judge erred in finding that Plaintiffs satisfied the

requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  When confronted

"with a request for settlement-only class certification," the Court *must* apply "undiluted, even

heightened, attention" to ensuring that each of the Rule 23 requirements are met.  *Amchem*, 521

U.S. at 620.  Plaintiffs' submission fails to meet this standard.

        First, as the party seeking certification, Plaintiffs bear the burden of demonstrating that

each of the Rule 23 requirements are satisfied—including that "questions of law or fact common

to class members predominate over any questions affecting only individual members" under

Rule 23(b)(3).  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 n.9 (9th Cir.

2009).  Plaintiffs come nowhere close to meeting this burden.  In fact, they provided *no evidence*

*whatsoever* that would allow the Court to make the necessary findings.  Instead, Plaintiffs—and

the Magistrate Judge—rely entirely upon allegations contained in Plaintiffs' SAC and other court

pleadings.  *See* F&R at 26-27.  The Magistrate Judge notes, for example, that he is familiar with

the "parties' theories of the case" because he has read their "discovery and substantive motions."

F&R at 26-27.  The Magistrate Judge does not explain how those motions pertain to the class

certification inquiries (they do not), or how those motions constitute *evidence* upon which the

Court can find that certification of a settlement class is appropriate.  "Allegations in pleadings

are not evidence," and Plaintiffs' failure to provide a record upon which the Court can find that

the Rule 23 requirements have been met (including, for example, deposition testimony or expert

declarations) make certification inappropriate.  *See Barrie v. Intervoice-Brite, Inc.*, No. 3:01–

CV–1071–K, 2009 WL 3424614, at *9 (N.D. Tex. Oct. 26, 2009) (noting that allegations in

pleadings cannot be used as evidence to support class certification findings); *see also Juniper*

*Networks, Inc. v. SSL Servs., LLC*, No. C 08-5758 SBA, 2009 WL 3837266, at *3 (N.D. Cal. Nov. 16, 2009), *aff'd*, 404 F. App'x 499 (Fed. Cir. 2010) ("allegations in pleadings are not evidence"); *Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2012) ("pleadings are only allegations, and allegations are not evidence of the truth of what is alleged"); *Veloz v. Foremost Ins. Co.*, 306 F. Supp. 3d 1271, 1281 (D. Or. 2018) ("pleadings are not evidence").

In addition, the Magistrate Judge made these findings while the Ninth Circuit is considering *Hyundai en banc*. *See In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 693 (9th Cir. 2018), *reh'g granted* 897 F.3d 1003 (9th Cir. 2018). As the Court is aware, the Ninth Circuit's *Hyundai* decision has created significant uncertainty in the standard applicable to settlement class certification—particularly regarding the plaintiffs' burden under Rule 23(b)(3) to establish that common issues "predominate" over individualized inquiries. *See Rael v. Children's Place, Inc.*, No. 3:16-cv-00370-GPC-JMA, 2018 U.S. Dist. LEXIS 56909, at *4 (S.D. Cal. Apr. 2, 2018) (noting that a stay pending *Hyundai* "would provide the Court with clarity on the standards applicable in this nationwide settlement").[15] For these reasons alone, the

---

[15] If the panel's decision is affirmed, the Court's analysis will be impacted in two significant ways. First, the panel held that district courts are required to perform a choice-of-law analysis to determine whether other states' laws apply to class members' claims—and whether variations in those laws preclude a finding of predominance. *Id.* at 691. Plaintiffs failed to establish that Oregon law applies to all of the putative class members' claims. *See* F&R at 37. At least three Aequitas entities—ACF, AIPF, AIOF-II—sold securities to Integrity, a Colorado company with no offices in Oregon, which in turn sold different securities ("interests" in the Aequitas securities) to purchasers from across the country. *See* Response at 5-7. These transactions are outside the reach of Oregon's long-arm statute. *See* ORS 59.335(1) (limiting the reach of ORS 59.115 to "persons who sell or offer to sell when: (a) an offer is made in [Oregon]; or (b) an offer to buy is made and accepted in [Oregon]").

Second, the panel held that even if the class had consisted only of California consumers (removing choice-of-law concerns), certification of a settlement class was still inappropriate because the district court failed to consider whether "factual differences regarding [the class members'] exposure to the misleading statements translate into significant legal differences regarding the viability of these class members' claims." *Id.* at 703-05 (citing *Amchem*, 521 U.S. at 624). This inquiry was not made here.

Magistrate Judge should have deferred his recommendation until the Ninth Circuit issued its decision in *Hyundai*. *See* Response at 12-14 (citing district court decisions staying consideration of nationwide settlements pending the *en banc* review). In any event, it would be prudent for this Court to hold its provisional certification decision in abeyance pending the outcome in *Hyundai*.

Second, certification of the settlement class—at least as currently defined—is inappropriate because common issues do not predominate over individualized inquiries. *See* Fed. R. Civ. P. 23(b)(3) (to maintain the class, Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members"). Plaintiffs seek to certify a class of "all persons who purchased 'Covered Aequitas Securities'"—which include any securities issued on behalf of eight separate entities—"on or after June 9, 2010, and had an account balance as of March 31, 2016." *See* F&R at 8. As non-settling Defendants explained in their Response, given the nature of the securities at issue and the way in which Aequitas and numerous third-party investment advisors sold those securities, Plaintiffs have failed to demonstrate that questions common to the class predominate over individualized inquiries. *See* Response at 22-26.

In particular, each of the Aequitas entities sold different types of securities. Some, for example, sold debt instruments, while others sold equity interests. *See supra*, Section II.A. Furthermore, all of the securities were sold through PPMs, which contained information that varied widely by transaction, and were sold only to accredited investors who were required to certify their accredited status and perform their own due diligence. *See id.*; *see also* Response at 22-26. In fact, the PPMs (and investors' transactions in the various securities) differed so substantially that Plaintiffs allege the statements contained within those PPMs are false or

misleading for different reasons, depending upon the Aequitas entity at issue and the time of purchase. *See supra*, Section II.A. Furthermore, none of the securities were allowed to be resold. *Id*. Accordingly, and as the investors were informed at the time they made their investments, there was no trading in these securities—and thus, no "market" for them. Response at 24-25; *see also supra*, Section II.A.

The uniqueness of the multiple securities at issue renders certification of a settlement class inappropriate, at least in the absence of evidence upon which the Court can ground the necessary Rule 23 findings—or any explanation from the Plaintiffs as to why these differences can be ignored for purposes of certifying this settlement class. As the Magistrate Judge acknowledged, to prevail in this action Plaintiffs must first "establish that Aequitas committed a primary violation of the Oregon Securities law by selling unregistered securities, or by making untrue statements of material fact or omitting statements of material fact." F&R at 36. Each individual investor must also prove that he or she did not know of the alleged misrepresentations or omissions. *See id*. at 34 (citing ORS § 59.115). Then, to establish non-settling Defendants' secondary liability, Plaintiffs must demonstrate that non-settling Defendants "participated in or materially aided the sale of those securities." *Id*. On the current evidentiary record, common questions do not predominate over individual inquiries with respect to either element. In fact, just the opposite is true.

As an initial matter, the absence of a common market for Aequitas securities means that each sale must be examined individually—or, at minimum, in groups based on time period and fund—including an analysis of the information that investors received in connection with the sales made to them, and the reason that such information was false or misleading *at the time it was given*. *See* Response at 25-26. In particular, it is unquestionably true that each sale:

- Was made pursuant to unique information—including through different PPMs and different oral representations;

- Pertained to different Aequitas entities that had different investment goals and strategies (whose statements are alleged to be false and misleading for different reasons, and whose circumstances changed over time);

- Was made to sophisticated investors who had diverse knowledge about the investments; and

- Was made to investors who were directed by the PPMs and offering materials to perform their own individual due diligence—and signed subscription agreements explicitly stating that he, she, or it had in fact done so.

By provisionally certifying the settlement class, the Magistrate Judge construed non-settling Defendants' arguments as bearing only on the last point—whether each investor had conducted due diligence.  F&R at 34.  The Magistrate Judge concluded that investors' diligence had no bearing on class certification because "only an investor's actual knowledge is relevant and the statute does not impose an obligation of inquiry."  *Id.*  But the issue is not whether investors "should have" inquired; the issue is that many of them *actually did inquire*—and were, in many instances, provided with information the class representatives now claim was omitted from the PPMs identified in the Complaint.  Indeed, Aequitas's offering documents required every investor to certify that he/she/it (combined with their advisors) performed due diligence, including speaking with Aequitas personnel as necessary to complete that diligence.  The F&R assumes, without basis, that none of these sophisticated investors or their investment advisors actually performed the diligence that they certified they performed.

Setting aside the fact that investors had different knowledge about their investments, the variations in the offering materials, the facts surrounding different funds at different points in time, and the manner in which the sales were accomplished mean that—at least without evidence or explanation to the contrary—Plaintiffs cannot establish that common questions predominate over individualized inquiries with respect to whether a false or misleading statement was made in connection with the sales at issue.  *See* Response at 25-26 (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (noting that "the Third, Fourth, Fifth, Sixth, and Seventh Circuits . . . have held that oral misrepresentations are presumptively individualized"); *In re Lehman Bros. Sec. and ERISA Litig.*, No. 08 CIV. 5523 LAK, 2013 WL 440622, at *3-4 (S.D.N.Y. Jan. 23, 2013) (denying certification of Section 12 claims, explaining that "the knowledge of each potential class member . . . would cut against a finding that common questions predominate, and that Section 12(a)(2) classes could be certified only or generally in circumstances in which the putative class plaintiff had evidence common to the class members generally that would permit or warrant a finding of lack of knowledge.")).

Indeed, the Magistrate Judge's determination that the question of whether the various Aequitas securities sales were made through false or misleading statements was "amenable to common proof," *see* F&R at 36, is difficult to reconcile with his prior legal rulings.  In ruling on motions to dismiss Plaintiffs' First Amended Complaint, for example, the Magistrate Judge explained that Plaintiffs were *not* entitled to pursue an "integrated offering theory" by which they could allege that "all the 'Aequitas Securities'" were the same.  *See* April 10, 2017 F&R at 30. Rather, he explained that such a theory was "unsupported by the Oregon Securities Law," and that Plaintiffs were required to "distinguish between the securities sold by different Aequitas

entities." *Id*.  The same logic applies—with heightened force—in determining whether to certify a settlement class here.

The Ninth Circuit's *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) decision, upon which the Magistrate Judge relied, *see* F&R at 34-35, does not support certification on this record.  Rather, in *Blackie*, the Ninth Circuit found that individual questions regarding investors' reliance did not predominate *where the securities at issue were traded on the open market through a national stock exchange*.  524 F.2d at 906 (adopting fraud-on-the-market theory of establishing class-wide reliance).  In that situation, the Court explained, a "purchaser on the stock exchange . . . relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus [he relies] indirectly on the truth of the representations." *Id*. at 907.  That the statements were made over a period of time was not an impediment to certifying the class, because "the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task." *Id*. at 905.  The exact opposite is true here.  Aequitas securities were not traded at all.  There was no market through which investors could purchase these securities.  And Plaintiffs have offered no proof that individualized questions regarding each sale could be dealt with "mechanically," as was the case in *Blackie*.[16]

---

[16] Nor is the decision in *Facciola v. Greenberg Traurig, LLP*, 281 F.R.D. 363 (D. Ariz. 2012) relevant to whether this settlement class should be certified.  *See* F&R at 35-36.  As an initial matter, at issue in *Facciola* were Arizona securities laws pursuant to which plaintiffs were pursuing a "scheme" or "course of conduct" theory of liability.  Here, Plaintiffs have not pled a claim under the OSL "scheme" provisions, ORS 59.135(1), (3).  The Court, moreover, has already found that Plaintiffs are *not* entitled to pursue a similar "integrated offering theory" by which they could allege that "all the 'Aequitas Securities'" were the same.  *See* April 10, 2017 F&R at 30.  Thus, that decision is not relevant to the issues in this case.  Furthermore, the Magistrate Judge's reliance on *Facciola* demonstrates the necessity for staying any decision preliminarily to certify the settlement class pending the *en banc* decision in *Hyundai*, as it is

For all of these reasons, the non-settling Defendants request that the Court hold in abeyance any decision regarding the preliminary approval of the Tonkon settlement class, pending the Ninth Circuit's decision in *Hyundai*, and otherwise decline to certify the settlement class on the current record.

## V.    CONCLUSION

For the reasons set forth above, non-settling Defendants respectfully request that this Court sustain its Objections to the Magistrate Judge's Findings and Recommendation.

---

possible (indeed, likely) that different state statutory schemes impose different rules on the challenged conduct, thus rendering certification inappropriate.

Dated: April 2, 2019

THE FERRANTI FIRM LLC

By: s/ William P. Ferranti
**William P. Ferranti,** OSB No. 160069
1819 SW 5th Avenue, Suite 403
Portland, OR 97201
Telephone: (503) 877-9220
Email: wpf@ferrantiappeals.com

-And –

**Linda T. Coberly (admitted *pro hac vice*)**
**Joanna Rubin Travalini (admitted *pro hac***
***vice*)**
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone:(312) 558-5600
Email: lcoberly@winston.com
jtravalini@winston.com

***Of Attorneys for Defendant EisnerAmper***
***LLP***

Respectfully submitted,

LATHAM & WATKINS LLP

By  s/ Peter A. Wald
**Peter A. Wald (*admitted pro hac vice*)**
**Gavin M. Masuda (*admitted pro hac***
***vice*)**
**Nicole C. Valco (*admitted pro hac vice*)**
**Marcy C. Priedeman (*admitted pro hac***
***vice*)**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Email: peter.wald@lw.com
gavin.masuda@lw.com
nicole.valco@lw.com
marcy.priedeman@lw.com

–And–

**Nicholas J. Siciliano (*admitted pro hac***
***vice*)**
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: nicholas.siciliano@lw.com

–And–

**Robert C. Weaver, Jr.**, OSB No.
801350
**Gary I. Grenley**, OSB No. 751380
**Paul H. Trinchero**, OSB No. 014397
**Eryn Karpinski Hoerster**, OSB No.
106126
**Daniel L. Keppler**, OSB No. 923537
GARVEY SCHUBERT BARER
121 SW Morrison Street, 11th Floor
Portland, OR 97204
Telephone:  (503) 228-3939
Facsimile:  (503) 226-0259
Email:    rweaver@gsblaw.com
            ggrenley@gsblaw.com
            ptrinchero@gsblaw.com
            ehoerster@gsblaw.com
            dkeppler@gsblaw.com

*Of Attorneys for Defendant Deloitte &
Touche LLP*

HARRANG LONG GARY RUDNICK P.C.

By: s/ Sharon A. Rudnick
**William F. Gary,** OSB No. 770325
**Sharon A. Rudnick,** OSB No. 830835
360 E. 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone: (541) 485-0220
Email:  william.f.gary@harrang.com
sharon.rudnick@harrang.com

-And –

**Stephen V. D'Amore (admitted *pro hac vice*)**
**Scott M. Ahmad (admitted *pro hac vice*)**
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-6468
Email: sdamore@winston.com
Scott.ahmad@wisnton.com

**Andrew C. Nichols (admitted *pro hac vice*)**
WINSTON & STRAWN LLP
1700 K Street NW
Washington, D.C. 20006-3817
Email: anichols@winston.com

*Of Attorneys for Defendant Duff & Phelps,
LLC*

MARKOWITZ HERBOLD PC

s/ Chad M. Colton
**Chad M. Colton**
**David B. Markowitz**
**Jeffrey M. Edelson**
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Email: chadcolton@markowitzherbold.com
davidmarkowitz@markowitzherbold.com
jeffedelson@markowitzherbold.com

-And-

**Bruce A. Abbott (admitted *pro hac vice*)**
**Brad D. Brian (admitted *pro hac vice*)**
**Zachary M. Briers (admitted *pro hac vice*)**
**Trevor N. Templeton (admitted *pro hac
vice*)**
**Michael R. Doyen (admitted *pro hac vice*)**
**Lauren M. Harding (admitted *pro hac
vice*)**
**Alexander S. Gorin (admitted *pro hac vice*)**
MUNGER TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Email: bruce.abbott@mto.com
brad.brian@mto.com
zachary.briers@mto.com
trevor.templeton@mto.com
michael.doyen@mto.com
lauren.harding@mto.com
alex.gorin@mto.com

*Of Attorneys for Defendant Sidley Austin
LLP*