**Keith A. Ketterling**, OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:      (503) 227-6840

**Steve W. Berman** (*pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (*pro hac vice*)
Email: karlb@hbsslaw.com
**Dawn D. Cornelius** (*pro hac vice*)
Email: dawn@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone:     (206) 623-7292
Facsimile:      (206) 623-0594

*Attorneys For Plaintiffs*
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the | Case No. 3:16-cv-00580-AC<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

ANDREW NOWAK REVOCABLE LIVING
TRUST U/A 2/20/2002; WILLIAM
RAMSTEIN; and GREG WARRICK, for
himself and, with SUSAN WARRICK, as Co-
Trustees of the WARRICK FAMILY TRUST,
individually and on behalf of all others
similarly situated,

            Plaintiffs,

   v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; and DUFF & PHELPS, LLC,

            Defendants.

# TABLE OF CONTENTS

**Page**

I.      CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-1 .................................1

II.     MOTION ...............................................................................................................1

III.    INTRODUCTION .................................................................................................1

IV.     THE PROPOSED CLASS AND SUBCLASS .....................................................4

V.      BACKGROUND INFORMATION ......................................................................4

        A.    The relevant Aequitas entities .....................................................................4

        B.    The Aequitas Funds and the Aequitas Securities .........................................5

        C.    Aequitas's concealed Ponzi scheme .............................................................5

        D.    The Aequitas Funds operated in the Aequitas Ponzi scheme as part of a
              unitary business throughout the Class Period. .............................................7

        E.    The Aequitas Securities were not registered or subject to any exemptions
              from registration ..........................................................................................9

        F.    The common course of untrue statements and omissions in the sale of
              Aequitas Securities .......................................................................................9

VI.     APPLICABLE LEGAL STANDARDS ..............................................................12

VII.    THE CLASS AND THE SUBCLASS EACH SATISFY THE RULE 23(A)
        REQUIREMENTS .............................................................................................13

        A.    The members of the Class and the Subclass are each so numerous that
              joinder of all members is impracticable. ...................................................13

        B.    Numerous common issues exist because the focus is on the Sellers' and
              the Defendants' common course of conduct. ..............................................15

        C.    The Class Representatives' claims are typical of those of the Class and the
              Subclass because the claims arise from a common course of conduct. .................17

        D.    The Class Representatives and their counsel will fairly and adequately
              protect the Class's and the Subclass's interests. ...................................20

VIII.   THE COURT SHOULD CERTIFY THE CLASSES UNDER RULE 23(B)(3) .............21

A.    Common questions of law or fact predominate because legal and factual questions will be resolved with proof common to the Class Representatives and all Class Members.................................................21

    1.    Plaintiffs will prove with common evidence the Sellers' primary violations of ORS § 59.115(1) ..................................................23

        a.    Plaintiffs will prove with common evidence the Sellers' primary violation of selling unregistered securities.......................23

        b.    Plaintiffs will prove with common evidence the Sellers' primary violations of ORS § 59.115(1)(a) and(b) for selling securities by means of untrue statements of material facts or omissions. .................................................................24

    2.    Plaintiffs will prove with common evidence the Defendants' liability pursuant to ORS § 59.115(3) for participation or material aid in the sale of the Aequitas Securities to the Class...............................29

B.    A Class Action is Superior to Other Methods of Adjudicating This Dispute. ......................................................................................30

IX.    THE PROPOSED CLASSES ARE ASCERTAINABLE .................................................33

X.    CONCLUSION....................................................................................33

010594-11/1012040 V2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
   281 F.R.D. 134 (S.D.N.Y. 2012) ...........................................................................15

*Bateman v. Am. Multi-Cinema, Inc.,*
   623 F.3d 708 (9th Cir. 2010) ................................................................................12

*In re Beacon Assocs. Litig.,*
   282 F.R.D. 315 (S.D.N.Y. 2012) ...........................................................................27

*Beebe v. Pac. Realty Tr.,*
   99 F.R.D. 60 (D. Or. 1983) ...................................................................................16

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir.1975) .................................................................16, 19, 25, 26

*Brown v. Price,*
   Case No. 3:17-cv-00869-HZ (D. Or. Aug. 3, 2017) ..............................................19

*Buttonwood Tree Value Partners, LP v. Sweeney,*
   No. SACV1000537CJCMLGX, 2013 WL 12125980 (C.D. Cal. Sept. 12, 2013) ................32

*Canales-Robles v. Peters,*
   No. 6:16-cv-01395-AC, 2018 WL 4762899 (D. Or. July 2, 2018)..........................13

*In re Computer Memories Sec. Litig.,*
   111 F.R.D. 675 (N.D. Cal. 1986)...........................................................................12

*Cooper v. Miller Johnson Steichen Kinnard, Inc.,*
   No. CIV. 02-1236(RHK/AJB), 2003 WL 1955169 (D. Minn. Apr. 21, 2003) ......24

*Demmings v. KKW Trucking, Inc.,*
   No. 3:14-cv-0494-SI, 2018 WL 4495461 (D. Or. Sept. 19, 2018) .........................33

*Dietrich v. Bauer,*
   192 F.R.D. 119 (S.D.N.Y. 2000) ...........................................................................24

*Dynabursky v. AlliedBarton Sec. Servs. LP,*
   No. 812CV2210JLSRNBX, 2014 WL 12690698 (C.D. Cal. Jan. 29, 2014) ..........32

*In re Enron Corp. Sec. Litig.,*
   206 F.R.D. 427 (S.D. Tex. 2002)............................................................................26

*Everts v. Holtmann*,
    64 Or. App. 145 (Or. Ct. App. 1983) .......................................................................29

*Facciola v. Greenberg Traurig LLP*,
    281 F.R.D. 363 (D. Ariz. 2012) ...........................................................19, 26, 27

*Freedman v. Louisiana-Pac. Corp.*,
    922 F. Supp. 377 (D. Or. 1996) .................................................................16, 26

*Getty v. Harmon*,
    No. C98-178WD, 1998 WL 919368 (W.D. Wash. Oct. 23, 1998)..........................27

*Giles v. St. Charles Health Sys., Inc.*,
    294 F.R.D. 585 (D. Or. 2013) ...............................................................................14

*Gonzales v. Lloyds TSB Bank*,
    No. CV 06-1433-VBF(JTLX), 2007 WL 9711433 (C.D. Cal. May 2, 2007) .................10, 27

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................................18, 31

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ................................................................................13

*In re Home-Stake Prod. Co. Sec. Litig.*,
    76 F.R.D. 351 (N.D. Okla. 1977).........................................................................27

*Hurst v. First Student, Inc.*,
    No. 3:15-cv-00021-HZ, 2015 WL 6437196 (D. Or. Oct. 22, 2015)........................18

*Jenson v. Fiserv Tr. Co.*,
    256 F. App'x 924 (9th Cir. 2007) ...................................................................27, 28

*Jordan v. Los Angeles Cty.*,
    669 F.2d 1311 (9th Cir. 1982) .......................................................................13, 14

*Katz v. MRT Holdings, LLC*,
    No. 07-61438-CIV, 2008 WL 4725284 (S.D. Fla. Oct. 24, 2008) ..........................24

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) .............................................................................32

*McKenzie v. Fed. Express Corp.*,
    275 F.R.D. 290 (C.D. Cal. 2011) ...........................................................................32

*In re Micron Techs., Inc. Sec. Litig.*,
    247 F.R.D. 627 (D. Idaho 2007) ............................................................................31

*Murphy v. Precision Castparts Corp.*,
　No. 3:16-cv-00521-SB, 2018 WL 3151426 (D. Or. June 6, 2018) .........................................16

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
　65 F. Supp. 3d 1046 (D. Or. 2014) ...............................................................................................33

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
　277 F.R.D. 97 (S.D.N.Y. 2011) ..............................................................................12, 22, 29, 32

*S.E.C. v. Mantria Corp.*,
　No. 09-cv-02676-CMA-MJW2011..............................................................................................27

*Schulein v. Petroleum Dev. Corp.*,
　2014 WL 114520 (C.D. Cal. Jan. 6, 2014) .................................................................................26

*Sec. & Exch. Comm'n v. Wang*,
　No. LACV1307553JAKSSX, 2015 WL 12656906 (C.D. Cal. Aug. 18, 2015) .......................5

*Torres v. Mercer Canyons Inc.*,
　835 F.3d 1125 (9th Cir. 2016) ...............................................................................................18, 30

*Tyson Foods, Inc. v. Bouaphakeo*,
　136 S. Ct. 1036 (2016).................................................................................................................22

*In re United Energy Corp.*,
　944 F.2d 589 (9th Cir. 1991) .........................................................................................................7

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
　122 F.R.D. 251 (C.D. Cal. 1988) ................................................................................................16

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
　319 F.R.D. 307 (D. Or. 2017) ........................................................................................... *passim*

*In re Visa Check/MasterMoney Antitrust Litig.*,
　280 F.3d 124 (2d Cir. 2001)........................................................................................................32

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011).....................................................................................................................15

*Weinberger v. Thornton*,
　114 F.R.D. 599 (S.D. Cal. 1986) ................................................................................................32

*Wolin v. Jaguar Land Rover N. Am., LLC*,
　617 F.3d 1168 (9th Cir. 2010) .........................................................................................18, 30, 31

*Yi Xiang v. Inovalon Holdings, Inc.*,
　327 F.R.D. 510 (S.D.N.Y. 2018) ...............................................................................................22

## STATUTES

ORS § 59.055 ................................................................................................................23

ORS § 59.115 ........................................................................................................... *passim*

ORS § 59.135 .........................................................................................................1, 25

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Evid. 803(6) .........................................................................................................5

Fed. R. Evid. 803(8)(A)(iii) ............................................................................................5

010594-11/1012040 V2

# GLOSSARY OF TERMS

| | |
|---|---|
| **ACF** | **Aequitas Commercial Finance, LLC** |
| **ACM** | **Aequitas Capital Management, Inc.** |
| **ACOF** | **Aequitas Capital Opportunities Fund, LP** |
| **ACOG** | **Aequitas Capital Opportunities GP, LP** |
| **AEIF** | **Aequitas Enhanced Income Fund, LLC** |
| **Aequitas** | **Aequitas Management, LLC** |
| **Aequitas Funds** | **ACF, ACOF, AEIF, AIOF, AIOF-II, AIPF, AETC and AMLF** |
| **Aequitas Securities** | **All securities issued by any of the Aequitas Funds** |
| **AETC** | **Aequitas ETC Founders Fund, LLC** |
| **AH** | **Aequitas Holdings, LLC** |
| **Ameritrade** | **TD Ameritrade, Inc.** |
| **AIM** | **Aequitas Investment Management, LLC** |
| **AIOF** | **Aequitas Income Opportunity Fund, LLC** |
| **AIOF–II** | **Aequitas Income Opportunity Fund II, LLC** |
| **AIPF** | **Aequitas Income Protection Fund, LLC** |
| **AM** | **Aequitas Management, LLC** |
| **AMLF** | **MotoLease Financial, LLC** |
| **Deloitte** | **Deloitte & Touche, LLP** |
| **Duff** | **Duff & Phelps, LLC** |
| **EisnerAmper** | **EisnerAmper LLP** |
| **Receiver** | **Ronald F. Greenspan, court-appointed receiver of the Receivership Entities** |
| **Sidley** | **Sidley Austin LLP** |

## I.    CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-1

The parties made a good faith attempt to resolve this dispute by means of a conference call on April 19, 2019, but were unable to do so.

## II.    MOTION

Plaintiffs respectfully request that the Court issue an Order certifying the classes described in Section IV, *infra*, as a class action pursuant to Fed. R. Civ. P. 23.

## III.    INTRODUCTION

Aequitas sold Plaintiffs Lawrence P. Ciuffitelli, Greg and Angela Julien, James and Susan MacDonald, R.F. MacDonald Co., William Ramstein, and Greg and Susan Warrick ("Plaintiffs") and the proposed Class hundreds of millions of dollars of securities issued by various entities under the control of Aequitas Capital Management, LLC ("ACM").  As this Court has previously recognized, Plaintiffs' Second Amended Complaint (the "SAC") properly alleges that these securities were marketed to Plaintiffs and members of the Class by means of untrue statements and omissions in violation of ORS §§ 59.115(1)(b) and 59.135.[1]  Indeed, the untrue statements and omissions identified by Plaintiffs concealed the fact that the securities purchased by Plaintiffs and members of the proposed Class were part of a Ponzi scheme run by ACM and its management.  When the Ponzi scheme ultimately unraveled (as all Ponzi schemes are destined to do) in March 2016, Plaintiffs and members of the proposed Class stopped receiving their contractually required interest payments, and a receiver was appointed by the

---

[1] *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2018 WL 4568737, at *9 (D. Or. Aug. 1, 2018), *report and recommendation adopted*, 2018 WL 4568586 (D. Or. Sept. 21, 2018) (the "*Aug. 1, 2018 F&R*") ("Broadly speaking, Plaintiffs allege the various Aequitas securities were marketed as stable, secure, and liquid investments that had strong asset coverage, and were backed by guarantees and recourse agreements, when in reality assets were overstated, underlying collateral was worthless, and new investments were used to satisfy existing obligations to other Aequitas entities.").

PAGE 1 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Court to unwind this massive fraud.  Defendants in this action are liable pursuant to ORS § 59.115(3) because they "participated" or provided "material aid" in the sale of the securities to Plaintiffs and members of the proposed Class.  Plaintiffs now move to certify their claims on behalf of all purchasers of Aequitas Securities on or after June 9, 2010 (the "Class") under Section 59.115(3) of the Oregon Securities Laws.  Because all the required elements of Fed. Civ. P. 23(a) and (b)(3) are satisfied, the Court should certify the proposed Class.

Additionally, the securities sold to Plaintiffs were unregistered, in violation of ORS § 59.115(1)(a).  Defendants are liable pursuant to ORS § 59.115(3) because they "participated" or provided "material aid" in the sale of these unregistered securities.  Plaintiffs now also move to certify claims based on the sale of unregistered securities on behalf of all purchasers of Aequitas Securities on or after April 4, 2013 (the "Subclass").

As Plaintiffs demonstrate below, Rule 23(a)(1) numerosity is satisfied because the proposed Class and Subclass are comprised of approximately 1,619 and 1,282 accounts, respectively, spread geographically across the country, making joinder impracticable.  *See infra* at 14-15.

There are many questions of law and fact common to: (i) members of the Class arising from the Aequitas scheme and course of conduct of selling hundreds of millions of dollars in securities by means of material false statements and omissions; (ii) members of the Subclass related to the sale of unregistered securities; and (iii) members of both the Class and the Subclass related to whether Defendants are liable under ORS § 59.115(3) for participating or rendering material aid in the sale of the Aequitas securities.  *See infra* at 15-18.

PAGE 2 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292   FAX (206) 623-0594

Rule 23(a)(3)'s typicality requirement is also satisfied. Plaintiffs' claims are typical of the claims of all Class members because all Plaintiffs and members of the Class purchased Aequitas Securities after Aequitas made similar untrue statements and omissions in securities offering and marketing documents and members of the Subclass all purchased unregistered securities. Plaintiffs and the Class and the Subclass thus seek the same remedies via common legal claims arising out of the same courses of conduct. *See infra* at 18-20.

The final Rule 23(a) requirement—adequacy of representation under Rule 23(a)(4)—is fulfilled because Plaintiffs do not have interests that conflict with the Class, and they are represented by well-qualified counsel who are diligently prosecuting the claims on behalf of the Class. Each Plaintiff, like each Class member, has a strong interest in proving the Defendants' liability and obtaining redress for their injuries. *See infra* at 20-22.

Plaintiffs also demonstrate their entitlement to certification under Rule 23(b)(3), because: (i) common issues of law or fact predominate over questions affecting individual class members; and (ii) class treatment is superior to other methods of adjudicating this matter. Common issues predominate because the salient legal and factual questions in this case will be resolved with proof common to all Plaintiffs and Class and Subclass members. Plaintiffs will prove their case with common evidence that, among other things: (i) Aequitas committed the primary violations of ORS § 59.115(1)(a) and 1(b); and (ii) Defendants are liable under ORS § 59.115(3) for participating in or providing material aid to the primary violations. All of this evidence, and more, will have a direct impact on every Class member's effort to establish liability and on every Class member's entitlement to relief. Common issues thus predominate. *See infra* at 22-32.

**PAGE 3 - PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Class treatment is the superior method of adjudication under Rule 23(b)(3) because it would be far more efficient for more than 1,600 Class members to litigate their common claims against the Defendants in a single proceeding before this Court.  *See infra* at 32-34.

## IV.    THE PROPOSED CLASS AND SUBCLASS

Plaintiffs request certification of a class consisting of *all persons who purchased Aequitas Securities on or after June 9, 2010 and had an account balance as of March 31, 2016* (the "Class").  Additionally, Plaintiffs seek certification of a subclass of *all persons who purchased Aequitas Securities on or after April 4, 2013 and had an account balance as of March 31, 2016* (the "Subclass").[2]  The Subclass distinguishes non-registration claims of Class members who purchased Aequitas Securities during the applicable limitations period.  *See* ORS § 59.115(6). Plaintiffs seek to certify claims against all defendants except Tonkon Torp, LLP (for which a settlement has been preliminarily approved by the Court) and Integrity Bank & Trust (a motion for preliminary approval of a settlement will be filed imminently).

## V.    BACKGROUND INFORMATION

### A.    The relevant Aequitas entities

Aequitas Management, LLC ("Aequitas") was the parent of the various Aequitas entities and owned a majority stake (84%) in Aequitas Holdings, LLC ("Holdings"), which owned all of

---

[2] The Class and Subclass each exclude: (a) Defendants; (b) the past and present officers and directors of the Aequitas affiliated companies, including without limitation Robert Jesenik, Brian Oliver, Craig Froude, Scott Gillis, Andrew MacRitchie, Olaf Janke, Brian Rice, William Ruh, Steve Hedberg, Brett Brown, Tom Goila, Patricia Brown, Bill Malloy, and Thomas Szabo, and their respective families and affiliates; (c) the past and present members of the Aequitas Advisory Board, including without limitation William McCormick, L. Martin Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith Barnes, Bob Zukis, and their respective families and affiliates; (d) registered investment advisors and investment advisor representatives; (e) any investor who received finder's fees or other consideration from Aequitas in connection with referring investors to Aequitas; and (f) any persons ("Individual Plaintiffs") that have filed individual actions asserting similar claims against any of the Defendants in this action ("Individual Actions").

PAGE 4 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

the equity in ACM, which, in turn, owned 100% of Aequitas Investment Management, LLC

("AIM") and a controlling interest in Aequitas Capital Opportunities GP, LLC ("ACOG").

**B.     The Aequitas Funds and the Aequitas Securities**

Plaintiffs seek to certify the proposed Class and Subclass concerning securities (the

"Aequitas Securities") issued by the following Aequitas-affiliated entities: (a) Aequitas

Commercial Finance, LLC ("ACF"); (b) Aequitas Enhanced Income Fund, LLC ("AEIF"); (c)

Aequitas Income Opportunity Fund, LLC ("AIOF"); (d) Aequitas Income Opportunity Fund II,

LLC ("AIOF-II"); (e) Aequitas Income Protection Fund ("AIPF"); (f) Aequitas Capital

Opportunities Fund, LP ("ACOF"); (g) Aequitas ETC Founders Fund, LLC ("AETC"); and (h)

Motolease Financial, LLC ("AMLF") (combined, the "Aequitas Funds").

**C.     Aequitas's concealed Ponzi scheme**

Aequitas operated throughout the Class Period pursuant to a complex web of at least 75

inter-related entities.  ¶ 23[3]; *see also Rec. Rpt.*, Ex. A (Organization chart).[4]  After extensive

review, the Court-appointed receiver determined that Aequitas and its subsidiaries (including the

Aequitas Funds) had been operating as a Ponzi scheme based upon his findings that the

combined entities of Aequitas and its subsidiaries (including the Aequitas Funds) were insolvent,

were commingling funds, and were reliant upon new investor money to pay interest and principal

---

[3] Citations to "¶ __" refer to specific paragraphs of Plaintiffs' Second Amended Complaint (the "SAC") [Dkt. # 257].

[4] Ronald F. Greenspan, Report Regarding the Investigation of the Receivership Entity's Business Conduct, *Securities and Exchange Commission v. Aequitas Management, LLC, et al.*, No. 3:16-cv-00438-JR (D. Or. Nov. 21, 2018) [Dkt. #663] (the "*Rec. Rpt.*").  This report is admissible pursuant to the Business Records Exception (Fed. R. Evid. 803(6)) and as a Public Record (Fed. R. Evid. 803(8)(A)(iii)).  *See Sec. & Exch. Comm'n v. Wang*, No. LACV1307553JAKSSX, 2015 WL 12656906, at *6-8 (C.D. Cal. Aug. 18, 2015).  A copy of this report is attached as Exhibit B to the contemporaneously filed Declaration of Steve W. Berman (the "Berman Decl.").

**PAGE 5 -  PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

payments to earlier investors. *Rec. Rpt.* at 7-12.[5]  Aequitas had become insolvent by virtue of:
(a) outlandish spending by Aequitas using money borrowed from ACF (¶ 82; *Rec. Rpt.* at 9); and
(b) a flawed business model that was not, and could not be, profitable. *Rec. Rpt.* at 39.

Aequitas's spending spree on items such as corporate headquarters renovations, opening
an office in New York City, outsized executive salaries and private jet expenses was far in
excess of the fees that it had earned from overseeing ACF's investment portfolio. But Aequitas
"borrowed" the shortfall from ACF in exchange for an unsecured $180 million note, despite no
reasonable prospect that the note would ever be repaid. ¶¶ 81-92; *Rec. Rpt.* at 39.

Aequitas was also losing money from a fundamentally flawed investment program that
was not, and *could not ever be*, profitable. Aequitas claimed a particular expertise in subprime
or high-interest consumer receivables in the education, healthcare, vehicle and other consumer
loan markets, and touted its CarePayment program for servicing healthcare receivables, EDPlus
program for student loans and MotoLease for vehicle loans. ACF initially owned each of these
servicing platforms, and had also invested in portfolios of loans to be run through the servicing
platforms. ACF also owned equity interests in two businesses in the financial sector, ETC
Global Group, LLC ("ETC Global") and SCA Holdings, LLC ("SCA"). After extensive review,
the Receiver concluded that each of these investments was unprofitable and the combined
portfolio of the various Aequitas business was doomed to failure as a "flawed business model
which could not reasonably fund operations." *Rec. Rpt.* at 39.[6]

---

[5] The scope of the Receiver's investigation included the time period from January 1, 2014 through the date of the receivership. *Rec. Rpt.* at 5. Although he determined that Aequitas was "likely insolvent" substantially prior to July 3, 2014, the exact determination of the commencement of the Ponzi scheme was beyond the scope of his investigation. *Id.* at 9. Whether Aequitas operated as a Ponzi scheme at all times during the Class Period will be a central issue in this litigation.

[6] *See Rec. Rpt.* at 38 ("Many, if not all, of the Aequitas operating companies and portfolios lost money …").

**PAGE 6 -  PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

With ACF stripped of its working capital by ACM's lavish spending spree and ongoing losses from its flawed business model, ACF was unable to purchase sufficient investments from which it hoped to generate the legitimate profits necessary to pay its noteholders and began relying upon the issuance of new notes to pay interest and redemptions to existing noteholders (¶ 70)—the classic definition of a Ponzi scheme.[7]

**D.    The Aequitas Funds operated in the Aequitas Ponzi scheme as part of a unitary business throughout the Class Period.**

Robert Jesenik, the CEO of Aequitas, referred to ACF as the "corporate balance sheet" of Aequitas. *Rec. Rpt.* at 39.  ACF was insolvent throughout the Class Period.  ¶¶ 98, 138(a), 140(a), 150(a), 151(a), 152(a).  However, it was able to continue selling securities by falsifying its reported financial information, by recognizing false "unrealized gains" in its investments and by failing to write-down the value of impaired assets. ¶¶ 80-135; *Rec. Rpt.* at 40-60.

ACM also sought to generate cashflow for the loan servicing businesses owned by ACF by forming AIOF, AIOF-II and AIPF, purportedly to purchase pools of loans in the healthcare, education, vehicle and other private credit strategies markets.  *See*, *e.g.*, AIOF July 1, 2011 PPM, p. 2 (Appendix, Ex. B)[8]; AIOF-II Feb. 15, 2012 PPM, p. 4 (Appendix, Ex. G); AIPF Feb. 15, 2012 PPM, p. 4 (Appendix, Ex. H).  ACM also formed AEIF for the stated purpose of purchasing promissory notes issued by ACF's subsidiaries (which the subsidiaries would use to purchase receivables).  ¶ 163(c).  Similarly, ACM organized ACOF to generate cash flow for

---

[7] *See, e.g.*, *In re United Energy Corp.*, 944 F.2d 589, 590 (9th Cir. 1991) ("A Ponzi scheme is a fraudulent arrangement in which an entity makes payments to investors from monies obtained from later investors rather than from any 'profits' of the underlying business venture. The fraud consists of funnelling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment.").

[8] The Private Placement Memoranda ("PPMs") identified in this motion are included in the Appendix of Exhibits filed contemporaneously with this motion.

PAGE 7 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

ACF by purchasing ACF's equity interests in the CarePayment, EDPlus and Motolease loan servicing platforms and ETC Global and SAC.  ACOF Feb. 2014 PPM at 1 (Appendix, Ex. O).

Each Class member, whether they invested in ACF or one of the other Aequitas Funds, ultimately depended upon ACF for repayment because: (a) ACF owned all of the equity interests in AIOF, AIOF-II, AEIF and AMLF, and all of the voting interests in AIPF (¶¶ 25, 32); (b) Aequitas (through either ACM, AIM or ACOG) managed each of the Aequitas Funds (¶ 27); (c) each of the Aequitas Funds owned significant receivables from ACF or related entities; (d) each of the Aequitas Funds was "dependent on" ACF for financing;[9] and (e) the reported financial results of ACF were consolidated with and encompassed AIPF, AIOF, AIOF-II, AEIF, ACOF and AMLF.  ¶ 32; *Rec. Rpt*. at 108.

Further, even though each of the Aequitas Funds purported to be legally separate and distinct, Aequitas treated them, in combination, as one big piggy bank that could be looted by Aequitas to pay the lavish expenses of Aequitas, or to make the Ponzi payments to earlier investors of any of the other Aequitas Funds.[10]  The Receiver's Report described the "Manufactured Note Program," whereby Aequitas would automatically "sweep" new investor money *from any of the Aequitas Funds* into ACF's account in exchange for a receivable from ACF, which was later converted to a receivable from another Aequitas entity, not based upon any actual transfer of assets, but only upon accounting gimmickry.  The Receiver concluded that

---

[9] *See, e.g*., ACOF Feb. 1, 2014 PPM at 71 (Appendix, Ex. O) ("**Reliance on ACF Financing** - Certain portfolio companies may rely on ACF (or its affiliates) to provide financing for the services and products offered through, or serviced by, such portfolio companies. Such portfolio companies will ultimately be dependent on ACF's ability to provide sufficient financing to fund the portfolio company's services/products.").

[10] *See Rec. Rpt*. at 8 (finding #C.5 – "Investor funds were frequently transferred between Aequitas's bank accounts at the direction of Aequitas management rather than Investors' instructions.  At least $1.3 billion in intercompany cash transfers were completed during this period.").

PAGE 8 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

the "Manufactured Note" scheme was responsible for "stripping out equity and value from

certain entities in an effort to fund needs at other entities." *Rec. Rpt*. at 31.  Thus, investors in

one of the Aequitas Funds would be materially harmed by capital shortfalls at any of the other

Aequitas Funds by the assets and collateral of their fund being diverted to the Aequitas Fund

having the shortfall.  Essentially, Aequitas oversaw one big pot of investor money allocated

among the Aequitas Funds and other Aequitas entities without regard to the Aequitas Fund's

legal entitlement to the money.  *Id*.  Accordingly, each of the Aequitas Funds had the same level

of risk as the portfolio of all Aequitas investments.  Thus, any misstatements regarding any of the

Aequitas Funds would have the same material impact on each of the other Aequitas Funds.

**E.    The Aequitas Securities were not registered or subject to any exemptions from registration.**

The Aequitas Securities were sold in violation of the Oregon Securities Law because they

were neither registered with the state of Oregon nor subject to any statutory exemption

requirement.  ¶¶ 33-67.

**F.    The common course of untrue statements and omissions in the sale of Aequitas Securities**

The sales of the Aequitas Securities were made to the Class by virtue of a common

course of conduct by Aequitas in making similar misrepresentations throughout the Class Period

in the various PPMs and other materials disseminated in order to sell the Aequitas Securities.  As

this Court previously recognized, "[b]roadly speaking, Plaintiffs allege the various Aequitas

securities were marketed as stable, secure, and liquid investments that had strong asset coverage,

and were backed by guarantees and recourse agreements, when in reality assets were overstated,

underlying collateral was worthless, and new investments were used to satisfy existing

obligations to other Aequitas entities." *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *9.

PAGE 9 -  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

At the core of this action is the material omission, made throughout each of the offerings of the Aequitas Securities, and concealment of the Ponzi scheme orchestrated by Aequitas and including the Aequitas Funds—an omission that is "fundamental" and related to the "nature of the investment itself." *Gonzales v. Lloyds TSB Bank*, No. CV 06-1433-VBF(JTLX), 2007 WL 9711433, at *7 (C.D. Cal. May 2, 2007). A Ponzi scheme, by its very nature is doomed to fail. *Rec. Rpt.* at 11 ("Ponzi schemes are doomed because their funding requirements increase geometrically over time."). The failure to disclose the fundamental Ponzi scheme also rendered numerous affirmative statements regarding the Aequitas Funds to be untrue, including statements regarding the following subjects: **(a) Untrue statements regarding the sources of repayment for investors**. Each of the PPMs similarly portrayed cash flow from operations as the primary source of repayment for investors, when the primary source of repayment would depend upon money from new investors in the future. (¶¶ 136-65; Chart A)[11]; **(b) Untrue statements regarding the use of proceeds from investors**. Each of the PPMs falsely claimed that investor funds would be used primarily to secure new investment opportunities, when they would be used in large part to pay previous investors (¶¶ 136-65; Chart B); **(c) Mischaracterization of the nature of the investments and associated risk**. The PPMs used to sell the Aequitas Securities all similarly mischaracterized the nature of the investments contemplated by the Fund and their associated risk, each claiming a business opportunity related to one of the equally flawed business models employed by Aequitas (¶¶ 136-65; Chart C). *See also Rec. Rpt.* at 71 (unrealistic promises of returns).

---

[11] For the Court's convenience, the relevant sample misrepresentations are summarized in Charts A through F attached hereto, with the PPM and page number from which they were drawn. The full PPMs are submitted in the Appendix of Exhibits submitted herewith.

PAGE 10 - **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Each of these statements were also materially untrue because they omitted to disclose the Aequitas Ponzi scheme.  Further, the investment opportunities touted in the PPMs were a mere sideshow to provide the appearance of a legitimate investment fund, while masking the ugly fact that Aequitas was entirely dependent on the continuing and escalating sales of new securities in order to repay existing investors and that the primary use of the investment proceeds would be to repay old investors.  *Rec. Rpt.* at 8 (findings C.6.1 and C.6.3).

Plaintiffs also allege several additional representative categories of untrue statements regarding the Aequitas Securities that remained consistent and similar throughout the Class Period, including: (a) falsely identifying "risks" related to future operating performance as potentially impacting the Funds' ability to repay investors (¶¶ 136-65; Chart D), when the flawed business models employed by Aequitas had already materialized and impacted the Funds' ability to repay investors; (b) false claims that the Funds were not required to register their securities (¶¶ 136-65; Chart E); (c) statements regarding the management of the Funds (¶¶ 136-65; Chart F) that were untrue because they omitted the numerous business failures and securities fraud claims against the management (¶¶ 68-69); and (d) false financial information presented in PPMs that materially overstated the value of the Funds' assets, net worth and collateral (¶¶ 137(c), 138(c), 140(c), 144(c), 146(c)).[12]  *See also Rec. Rpt.* at 41 (fraudulent gains from false valuations "were the sole source of 'profitability' and masked negative cash flows from operations").

---

[12] *See, e.g.*, Jun. 9, 2010 ACF PPM at 25 (Appx., Ex. A); Jul. 1, 2011 AIOF PPM at 33 (Appx., Ex. B); Dec. 1, 2011 ACF PPM at 23 (Appx., Ex. E); Mar. 1, 2012 AIOF PPM at 30 (Appx., Ex. I); Nov. 30, 2012 ACF PPM at 21 (Appx., Ex. K); Nov. 30, 2013 ACF PPM at 23 (Appx., Ex. N); Sep. 9, 2015 ACF PPM at 22 (Appx., Ex. S); Oct. 27, 2015 ACF PPM at 22 (Appx., Ex. T).

PAGE 11 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## VI.    APPLICABLE LEGAL STANDARDS

The Ninth Circuit has taken a liberal view of class certification in securities cases based on the recognition that "securities litigation is particularly well-suited for class action treatment." *In re Computer Memories Sec. Litig*., 111 F.R.D. 675, 679 (N.D. Cal. 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir.1975)).  In particular, courts have "repeatedly found" that claims brought pursuant to Section 12(a)(2) of the Securities Act of 1933 are "especially amenable to class action resolution."  *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co*., 277 F.R.D. 97, 101 (S.D.N.Y. 2011) (citing authorities).[13]

"The decision to grant or deny class certification is within the trial court's discretion. District courts are 'in the best position to consider the most fair and efficient procedure for conducting any given litigation.'"  *Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted); *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 313 (D. Or. 2017).  This Court has previously expressed its view, in recommending preliminary approval of Plaintiffs' class-wide settlement with Tonkon Torp, that Plaintiffs' claims are appropriate for class treatment.  *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, at *12 (D. Or. Mar. 19, 2019) (the "*Mar. 19, 2019 F&R*").[14]

A party seeking class certification bears the burden of affirmatively demonstrating that they have satisfied each of the four requirements of Rule 23(a) and at least *one* of the

---

[13] ORS § 59.115(1) was modeled on and mirrors Section 12(a)(2) of the federal Securities Act of 1933 (15 U.S.C. § 77l).  *Apr. 10, 2017 F&R*, 2017 WL 2927481, at *14 (citing *Karsun v. Kelley*, 258 Or. 155, 161 (Or. 1971)). Thus, decisions construing Section 12(a)(2) can be instructive in interpreting ORS § 59.115(1)(b).

[14] Defendants have previously incorrectly asserted that the Court's prior ruling "can have no bearing on certification of a litigation class against the non-settling Defendants." Joint Obj. [Dkt. # 494] at 19.  As part of a broader proposal, Plaintiffs previously offered to stipulate against the application of the findings of the *Mar. 19, 2019 F&R* as constituting precedent for certification of a litigation class, but Defendants declined Plaintiffs' proposal. *See id.* Therefore, the Court may consider the *Mar. 19, 2019 F&R* as precedent and the law of the case.

HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292  FAX (206) 623-0594

requirements of Rule 23(b).  *Villanueva*, 319 F.R.D. at 313.  "For purposes of ruling on a motion

to certify a class, the court takes the substantive allegations of the complaint as true."  *Id*.  "The

determination of class certification does not require or permit a preliminary inquiry into the

merits, and an extensive evidentiary showing by the plaintiff is not required as long as the court

has sufficient material before it to determine the nature of the allegations and to rule on

compliance with the requirements of Rule 23."  *Id*.  Both the Class and the Subclass must

independently meet Rule 23's requirements for the maintenance of a class action.  *See Canales-*

*Robles v. Peters*, No. 6:16-cv-01395-AC, 2018 WL 4762899, at *4 (D. Or. July 2, 2018), *report*

*and recommendation adopted*, 2018 WL 4762120 (D. Or. Oct. 1, 2018).

## VII.    THE CLASS AND THE SUBCLASS EACH SATISFY THE RULE 23(A) REQUIREMENTS

Class certification is appropriate if: "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).  The proposed Class complies with each of these requirements.

**A.    The members of the Class and the Subclass are each so numerous that joinder of all members is impracticable.**

A putative class satisfies the numerosity requirement if "the class is so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticability is not

impossibility, and instead refers only to the "difficulty or inconvenience of joining all members

of the class."  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 914 (9th Cir. 1964).

The size of a potential class is a key factor in assessing numerosity because "where a

class is large in numbers, joinder will usually be impracticable."  *Jordan v. Los Angeles Cty.*, 669

PAGE 13 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

F.2d 1311, 1319 (9th Cir. 1982, *vacated on other grounds*, 459 U.S. 810 (1982)); s*ee also Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013).  The Ninth Circuit has held that a class of 39 members was sufficiently numerous to render joinder impracticable.  *Jordan*, 669 F.2d at 1319-20 (stating inclination "to find the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members, *i.e.*, 39, 64, and 71," and listing thirteen cases in which courts certified classes with fewer than 100 members).  In this District, there is a "rough rule of thumb" that 40 class members makes joinder impracticable and is thus sufficient to meet the numerosity requirement.  *Villanueva*, 319 F.R.D. at 314 (quoting *Or. Laborers– Emp'rs Health & Welfare Tr. Fund v. Philip Morris*, 188 F.R.D. 365, 372 (D. Or. 1998)).

Here, the Class consists of approximately 1,619 different investment accounts and the Subclass consists of 1,282 different investment accounts, each far exceeding the 40-member threshold and rendering joinder impracticable on the basis of size alone.[15]  In addition, the geographical dispersion of the class members throughout the United States, including members residing in 43 states and the District of Columbia (as well as in four foreign countries), further supports a finding of numerosity.[16]  *Jordan*, 669 F.2d at 1319.  Thus, both the Class and the Subclass are sufficiently numerous to satisfy the Rule 23(a)(1) requirements.

---

[15] *See* Declaration of Larissa Gotguelf ("Gotguelf Decl."), filed concurrently with this memorandum.

[16] Gotguelf Decl. ¶ 3.  The Receiver's data indicates that Class members reside in the states of Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Washington, D.C., Delaware, Florida, Georgia, Hawaii, Iowa, Idaho, Illinois, Kansas, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Vermont and Washington, and in the foreign countries of France, Germany, the Netherlands and Peru.

PAGE 14 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**B.    Numerous common issues exist because the focus is on the Sellers' and the Defendants' common course of conduct.**

Rule 23(a)'s second requirement is the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2).  This requirement has "been construed permissively," and "all questions of fact and law need not be common to satisfy the rule."  *Villanueva*, 319 F.R.D. at 315 (quoting *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011)).  Indeed, "commonality only requires a single significant question of law or fact."  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *28 (citing *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012)).[17]  The claims "must depend upon a common contention" and that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Villanueva*, 319 F.R.D. at 315 (quoting *Dukes*, 564 U.S. at 350).  The primary goal of the commonality requirement is to identify "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 316 (quoting *Dukes*, 564 U.S. at 350).

"The commonality requirement has been applied permissively in securities fraud litigation. In general, where putative class members have been injured by *similar* material misrepresentations and omissions, the commonality requirement is satisfied."  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig*., 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (quoting *Fogarazzao v. Lehman Bros., Inc*., 232 F.R.D. 176, 180 (S.D.N.Y.

---

[17] *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("for purposes of Rule 23(a)(2), even a single common question will do") (internal quotation marks and citation omitted).

**PAGE 15 -PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

2005)) (emphasis added).[18]  The commonality requirement is satisfied by demonstrating a

"common course of conduct" against all members of a class, including where "a class of

purchasers [is] allegedly defrauded over a period of time by similar misrepresentations."

*Blackie*, 524 F.2d at 902; s*ee Freedman v. Louisiana-Pac. Corp.*, 922 F. Supp. 377, 399 (D. Or.

1996).  For example, an early purchaser may represent a class when "a series of financial reports

uniformly misrepresent a particular item in the financial statement," because in that situation, the

misrepresentations are "interrelated, interdependent, and cumulative."  *Blackie*, 524 F.2d at 903.

Here, as the Court previously determined, "[p]laintiffs have identified numerous common

issues of law and fact that are susceptible to class-wide determination."  *Mar. 19, 2019 F&R*,

2019 WL 1441634, at *12.  The common questions of law and fact applicable to the claims of

the Class in this action include: (1) the required nexus between the acts of participation or

material aid and the sale of securities for liability under ORS § 59.115(3); (2) whether Plaintiffs

must prove reliance or receipt of the misrepresentations or omissions to establish liability under

ORS § 59.115; (3) whether the PPMs and other disclosures contained material misstatements and

omissions; (4) whether the Aequitas Securities were sold to Class members by means of false

statements of fact or omissions; (5) the materiality of any such false statements or omissions; (6)

whether each of the Defendants materially aided in the sale of the Aequitas Securities to Class

members; (7) whether each of the Defendants did not know, and, in the exercise of reasonable

---

[18] *See also Beebe v. Pac. Realty Tr.*, 99 F.R.D. 60, 65, 72 (D. Or. 1983) (finding commonality and certifying class of Oregon Securities Law Claims based upon alleged misrepresentations and omissions); *Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521-SB, 2018 WL 3151426, at *2 (D. Or. June 6, 2018), *report and recommendation adopted*, 2018 WL 3150675 (D. Or. June 27, 2018) ("Courts often find commonality in securities class actions where investors sue for misrepresentations or omissions that had an impact on stock price.") (internal quotation marks and citations omitted); *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 254 (C.D. Cal. 1988) (collecting cases and finding that "[v]arious courts have held that where members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct, common questions exist and a class action is appropriate").

PAGE 16 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

care, could not have known, of the false statements of fact or omissions in the PPMs and other disclosures; and (8) the method of calculating each Class member's recovery under ORS § 59.115(2).

The claims of the Subclass also present common issues of law and fact that are susceptible to class-wide determination, including:  (1) whether the Aequitas Securities were sold without registration; (2) whether Plaintiffs or Defendants have the burden to prove that the Aequitas Securities were exempt from registration or were "federal covered securities"; (3) whether the Aequitas Securities were exempt from registration or were "federal covered securities"; (4) whether Aequitas engaged in general solicitation; (5) whether the Aequitas Securities were part of an integrated offering; and (6) whether Defendants did not know, and, in the exercise of reasonable care, could not have known, that the Aequitas Securities were sold without registration.

The common answers to these questions are "apt to drive the resolution" of the legal issues in this action.  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *12 (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013); *Hurst v. First Student, Inc.*, No. 3:15-cv-00021-HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014))); s*ee also Villanueva*, 319 F.R.D. at 316.  Accordingly, the Rule 23(a)(2) commonality requirement has been satisfied.

**C.      The Class Representatives' claims are typical of those of the Class and the Subclass because the claims arise from a common course of conduct.**

The third requirement is that the "claims … of the representative parties are typical of the claims … of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."

PAGE 17 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Under the "permissive standards" of Rule 23(a)(3), the "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016).  Although the claims of the class representative need not be identical to the claims of other class members, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Villanueva*, 319 F.R.D. at 326 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *13 (quoting *Ellis*, 657 F.3d at 984).  Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (quoting *Torres*, 835 F.3d at 1141).  The commonality and typicality requirements of Rule 23(a) "tend to merge" and the same showing of commonality from a Defendants' "course of conduct" may also demonstrate typicality.  *Hurst*, 2015 WL 6437196, at *3. Typicality is satisfied in cases such as this where all Class members are alleged to have suffered injury as a result of the same course of conduct by the Defendants.  *Id.*  For this reason, the claims and nature of the evidence "are generally considered sufficient to satisfy the typicality

PAGE 18 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

requirement" in a securities class action alleging "false or misleading statements." *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *13 (quoting *In re Bank of Am. Corp.*, 281 F.R.D. at 139). Typicality is present where, as here, the Class covers multiple types of securities and PPMs, if the securities were sold through a common course of conduct of similar misrepresentations and omissions. *Id.*; *Blackie*, 524 F.2d at 910 (representative's claims were typical of other securities sold through same course of conduct of misrepresentations); *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 369 (D. Ariz. 2012) (plaintiffs' claims were typical of class claims for various securities sold in common course of conduct of misrepresentations). Indeed, Judge Hernandez approved a provisional Rule 23(b)(1)(B) settlement class of persons that purchased 44 different Aequitas securities.[19]

Plaintiffs' claims here arise from a common course of conduct and common legal theories: the Aequitas Securities were sold by means of selling materials containing material untrue statements and omissions (the Class) and also were unregistered securities (the Subclass). The Defendants are liable to Plaintiffs and the Class for these violations because they participated in or materially aided these illegal sales of securities. Because each Class member's claims arise from the same course of conduct, and each Class member makes the same legal arguments to prove liability, the Rule 23(a)(3) typicality requirement is satisfied. Furthermore, as the Court ruled in connection with the Tonkon settlement, "[e]ach named Plaintiff has purchased at least one of the nine Aequitas securities defined in the class." *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *13.

---

[19] Order Determining that Class Action May be Maintained Pursuant to CR 23(a) and 23(b)(3), Certifying Class, Preliminarily Approving Settlement, Approving Form of Notice and Setting Fairness Hearing, *Brown v. Price*, Case No. 3:17-cv-00869-HZ (D. Or. Aug. 3, 2017) [Dkt. # 66].

PAGE 19 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**D.    The Class Representatives and their counsel will fairly and adequately protect the Class's and the Subclass's interests.**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiff[s] have no conflicts of interest with the proposed class; and (2) that plaintiffs are represented by qualified and competent counsel." *Villanueva*, 319 F.R.D. at 327 (quoting *Hanlon*, 150 F.3d at 1020).

Plaintiffs have submitted declarations in support of this motion, wherein they explain their desire to serve as Class Representatives.[20] Plaintiffs are representatives of the Classes that they seek to represent, suffer from the same injury as members of the proposed Class and Subclass. The Plaintiffs are incentivized to adequately represent the Class and the Subclass because they share a common economic injury from their purchases of Aequitas securities. *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *14. They have all assisted in the litigation, assisted in discovery, and willingly agreed to submit to depositions. None of the Class Representatives have conflicts antagonistic to the Class or the Subclass that they seek to represent, and the Court should conclude that they will adequately represent the Class and the Subclass.

Likewise, Plaintiffs' Counsel satisfies the adequacy requirement under Rules 23(a)(4) and 23(g)(1). Pursuant to Rule 23(g)(1)(A), in appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

---

[20] *See* the concurrently filed Declarations of Lawrence Ciuffitelli, Greg Julien, Angela Julien, James MacDonald, Susan MacDonald, William Ramstein, Greg Warrick, and Susan Warrick.

PAGE 20 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

resources that counsel will commit to representing the class.  Rule 23(g)(1)(A).  Further, the

Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately

represent the interests of the class."

In retaining Hagens Berman Sobol Shapiro LLP and Stoll Berne Lokting & Shlachter

P.C., Plaintiffs have employed counsel with the unquestionable qualifications, experience, and

resources necessary to prosecute this case to a successful resolution.[21] *See Mar. 19, 2019 F&R*,

2019 WL 1441634, at *14 ("Class counsel is highly experienced and qualified, having

successfully litigated and settled numerous class actions, including securities class actions.").

With their extensive experience in class action and securities litigation, and their zealous

prosecution of Plaintiffs' claims to date, there can be no question that they are adequate.

Accordingly, the Rule 23(a)(4) adequacy requirement is satisfied.

## VIII.   THE COURT SHOULD CERTIFY THE CLASSES UNDER RULE 23(B)(3)

The Class Representatives must also demonstrate compliance with Rule 23(b)(3), which

provides that a class may be certified if "the court finds that questions of law and fact common to

class members predominate over any questions affecting only individual members," and that a

class action is superior to other methods.  Plaintiffs readily show these elements.

### A.    Common questions of law or fact predominate because legal and factual questions will be resolved with proof common to the Class Representatives and all Class Members.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Villanueva*, 319 F.R.D. at 331 (quoting

---

[21] The firm resumés of Proposed Co-Lead Counsel Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Shlachter P.C. are attached as Exhibit A to the Berman Decl., and Exhibit A to the contemporaneously filed Declaration of Timothy S. DeJong, respectively.

PAGE 21 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  The primary concern of the predominance inquiry under Rule 23(b)(3) is the "balance between individual and common issues."  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *14 (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018)).  A common question "is one where 'the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized class-wide proof.'"  *Tyson Foods*, *Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)).  In contrast, an individual question "is one where 'members of a proposed class will need to present evidence that varies from member to member.'"  *Id.*  Predominance does not require a plaintiff to show an absence of individual issues, but only that any individual issues that exist are of a lesser significance than the many common issues in the litigation.  *Villanueva*, 319 F.R.D. 307 at 332 ("Plaintiffs need not establish that there are no individual issues, only that the class issues predominate."); s*ee also Merrill Lynch & Co*., 277 F.R.D. at 111 ("[I]ndividual issues will likely arise in this case as in all class action cases," and to allow "various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws").

The Supreme Court has noted that the Rule 23(b)(3) predominance requirement is "readily met in certain cases alleging ... securities fraud."  *Amchem Prod.*, 521 U.S. 5at 625.  Courts often follow this guidance to find that claims under Section 12(a)(2) of the federal Securities Act of 1933 (upon which ORS § 59.115(1) is modeled) are "especially amenable to class action resolution."  *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 519 (S.D.N.Y. 2018); *Merrill Lynch & Co.*, 277 F.R.D. at 101.

PAGE 22 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Common issues will predominate the trial of Plaintiffs' claims. Plaintiffs have asserted a single legal claim for liability pursuant to ORS § 59.115(3) against each of the Defendants in this action. Each of the legal elements of any plaintiff's ORS § 59.115(3) claims against the Defendants in this action would involve an evidentiary presentation that will be identical, whether made on behalf of an individual plaintiff or the Class. To demonstrate Defendants' liability pursuant to ORS § 59.115(3), every plaintiff asserting this claim would need to: (1) establish the primary liability of the sellers under ORS § 59.115(1); and then (2) establish the Defendants' secondary liability under ORS § 59.115(3). *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *1. The proof of each of these elements will be accomplished entirely with common evidence.

1.    **Plaintiffs will prove with common evidence the Sellers' primary violations of ORS § 59.115(1)**

The Plaintiffs allege on behalf of the Subclass that Aequitas and the particular Aequitas Fund (the "Sellers") committed primary violations of ORS § 59.115(1)(a) by selling unregistered securities, and allege on behalf of the Class that the Sellers committed primary violations of ORS § 59.115(1)(a) and (b) by selling securities by means of an untrue statement of a material fact or omission. Plaintiffs will establish the Sellers' primary liability with common proof.

a.    **Plaintiffs will prove with common evidence the Sellers' primary violation of selling unregistered securities.**

The Subclass asserts that the Sellers committed a primary violation of ORS § 59.115(1)(a), which prohibits the sale of any security in violation of any provision of the Oregon Securities Law. Specifically, Plaintiffs allege that the Sellers violated ORS § 59.055 by selling unregistered securities to the Subclass Members. ¶ 213. To prove Sellers' violation of ORS § 59.055 at trial, every plaintiff bringing such a claim would need to establish precisely the

PAGE 23 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

same element—that the securities were not registered.[22]  The Defendants would then have the burden to prove that the Aequitas Securities were exempt from registration—another issue common to all Class members.  *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *6.  Because the conduct regulated by this statute concerns only the *Sellers*' conduct, and is unimpacted by any conduct of the plaintiff, the evidentiary proof at trial on the *prima facie* case and all available defenses would be entirely the same for each plaintiff asserting a primary violation based on the sale of unregistered securities.  These common issues will be the focus of the nonregistration claims and will predominate over any potential individual issues for the Subclass.  *See*, *e.g.*, *Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. CIV. 02-1236(RHK/AJB), 2003 WL 1955169, at *5 (D. Minn. Apr. 21, 2003) (finding the proposed class "easily" met the predominance requirement because "common legal questions—whether or not that paper was required to be registered—significantly outweigh the individual issues involved in this case").[23]

        **b.**     **Plaintiffs will prove with common evidence the Sellers' primary violations of ORS § 59.115(1)(a) and(b) for selling securities by means of untrue statements of material facts or omissions.**

The Class asserts that the Sellers committed a primary violation of ORS § 59.115(1)(b), which prohibits the sale of any security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth

---

[22] In moving to dismiss the SAC, the Defendants "[did] not dispute that the securities at issue were not registered and they [did] not assert that the securities were exempt under state law."  *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *4.

[23] *See also Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 WL 4725284, at *5 (S.D. Fla. Oct. 24, 2008) (claims for sale of unregistered securities meet the predominance requirement); *Dietrich v. Bauer*, 192 F.R.D. 119, 128 (S.D.N.Y. 2000) (same).

PAGE 24 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."[24]

To prevail at trial, any plaintiff will need to prove that they were sold an Aequitas Security by means of a material false statement.  Plaintiffs will prove at trial through common evidence each of the elements of: (1) false statements or omissions; (2) the materiality of the false statements and omissions; and (3) the nexus between the untrue statement of material fact or omission and the subsequent sale or solicitation" to satisfy the "by means of" requirement.

In this action, the common course of omissions and false statements alleged in the SAC affected all Class members in the same or a similar manner.  This Court previously recognized that the SAC alleges similar misrepresentations and omissions throughout the Class Period in the written materials supporting the sales of the various Aequitas Securities at issue:

> Broadly speaking, Plaintiffs allege the various Aequitas securities were marketed as stable, secure, and liquid investments that had strong asset coverage, and were backed by guarantees and recourse agreements, when in reality assets were overstated, underlying collateral was worthless, and new investments were used to satisfy existing obligations to other Aequitas entities.

*Aug. 1, 2018 F&R*, 2018 WL 4568737, at *9 (also identifying the various securities and related PPMs and other marketing materials described in the SAC).  Misrepresentations or omissions may be proven with common evidence where "a class of purchasers [is] allegedly defrauded over a period of time by *similar* misrepresentations."  *Blackie*, 524 F.2d at 902 (emphasis added);

---

[24] Plaintiffs also allege the primary violation of ORS § 59.115(1)(a) through the violation of ORS § 59.135(2), which similarly prohibits the seller of a security from making "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

**PAGE 25 - PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Freedman*, 922 F. Supp. at 399.  The misrepresentations need not be ***identical*** to demonstrate the requisite "common course of conduct":

> Where, as here, there is a common course of conduct consisting of a whole roster of deception designed to contrive a false image of [the defrauding company], the exact wording of the oral misrepresentations ... is not the predominant issue. It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again."

*Facciola*, 281 F.R.D. at 372 (quoting *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D. 425, 431 (D. Ariz. 1992)).  Even though the specific misrepresentations in this action may have differed slightly, they were uniformly misleading with respect to their omission of Aequitas's profitability, sustainability, security, stability and liquidity and need for new investor money to repay old investors.  The existence of multiple types of securities and different PPMs throughout the Class Period will not defeat predominance where, as in this action, the allegations of misrepresentation and omission stem from similar misrepresentations establishing a common course of conduct.  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at \*15; *Blackie*, 524 F.2d at 902; s*ee also Schulein v. Petroleum Dev. Corp.*, 2014 WL 114520, at \*6 (C.D. Cal. Jan. 6, 2014) ("[a]lthough the case involves different partnerships, the allegations all stem from a common course of conduct."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests").

Plaintiffs have alleged a "whole roster of deception designed to contrive a false image of" the Aequitas Securities *that were part of a common course of conduct that may be established*

PAGE 26 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*through common evidence at trial*, including the unquestionably material omission that the

Aequitas Securities were issued as part of a Ponzi scheme. *See Facciola*, 281 F.R.D. at 372

(citation omitted); Section V(F), *supra* at 9-112. The common issue of proving concealment of a

Ponzi scheme will predominate over any potential individual issues because such an omission is

"fundamental" and related to "the nature of the investment itself":

> [T]he character of the misrepresentation to the putative class was
> more fundamental, and went to the nature of the investment itself….
> [T]he underlying nature of the misrepresentation here makes this
> case unique and appropriate for class certification. There is one
> clear, unifying misrepresentation, as alleged, that all Plaintiffs
> believed that they were investing in a legitimate investment vehicle
> and not a Ponzi scheme. Put differently, in many of the cases cited
> by both parties, the misrepresentations were to a collateral matter.
> Here, however, the misrepresentation was central and went to the
> character of the Midland Entities' business.

*Gonzales*, 2007 WL 9711433, at *7 (common issues regarding failure to disclose a Ponzi scheme

predominated); s*ee also Jenson v. Fiserv Tr. Co*., 256 F. App'x 924, 926 (9th Cir. 2007)

(affirming certification of class because the "center of gravity" of the Ponzi scheme "would have

to be proved or controverted over and over were the case not to proceed as a class action"). For

this reason, courts routinely find that common issues predominate in cases alleging the failure to

disclose the existence of a Ponzi scheme.[25]

  In addition to this material omission, Plaintiffs have alleged numerous topics of untrue

statements of material fact that were made in a similar fashion throughout the Class Period,

---

[25] *See, e.g.*, *Facciola*, 281 F.R.D. at 371; *In re Beacon Assocs. Litig*., 282 F.R.D. 315, 332 (S.D.N.Y. 2012); *see also S.E.C. v. Mantria Corp*., No. 09-cv-02676-CMA-MJW2011 WL 3439348, at *3 (D. Colo. Aug. 5, 2011); *Getty v. Harmon*, No. C98-178WD, 1998 WL 919368, at *5 (W.D. Wash. Oct. 23, 1998) ("The constant material omission—that the investments were into a Ponzi scheme—is sufficient to show the predominance of common questions."); *In re Home-Stake Prod. Co. Sec. Litig*., 76 F.R.D. 351, 369 (N.D. Okla. 1977) ("The existence of this alleged 'Ponzi' scheme itself constitutes the necessary 'common course of fraudulent conduct' that creates the predominance of common factual and legal issues").

PAGE 27 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

including: (1) the sources of repayment for investors; (2) the use of investor proceeds; (3) mischaracterization of the nature of the investments and associated risk; (4) identifying operating issues that had already materialized as future "risks"; (5) claims that the Funds were not required to register their securities; (6) statements regarding the management of the Funds; and (7) false financial information presented in PPMs that materially overstated the value of the Funds' assets, net worth and collateral.  *Id*.  These common issues of whether these identified omissions and statements are untrue and material will undoubtedly predominate over any possible individual issues in this action.

The nexus element, or whether the particular security was sold "by means of" the material false statement or omission, is also a common issue.  To satisfy this element, a plaintiff must: (1) prove the misleading statement or omission; and (2) that the misleading statement or omission preceded their purchase of the Aequitas Security.  *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *9.  Proof of this nexus element can be established on a classwide basis through common evidence because the false and misleading statements and omissions were part of a common course of conduct of similar false and misleading statements and omissions made throughout the Class Period, and beginning prior to any purchases by Class members.  Importantly, this Court has ruled on numerous occasions that reliance is not an element of a violation of ORS § 59.115(1)(b).  *Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2017 WL 2927481, at *20 (D. Or. Apr. 10, 2017), *report and recommendation adopted sub nom. Ciuffitelli v. Deloitte & Touche LLP*, 2017 WL 2927150 (D. Or. July 5, 2017) (the "*Apr. 10, 2017 F&R*") ("A primary violation of ORS § 59.115(1)(b) does not require reliance on a misrepresentation or omission."); *Aug. 1, 2018 F&R*, 2018 WL

PAGE 28 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

4568737, at *8 ("As the court discussed in the April F&R, a primary violation of ORS §

59.115(1)(b) does not require reliance on a misrepresentation or omission.").

Likewise, because the materiality of the misrepresentations and omissions is judged on an

objective standard of whether "the defendants' representations, taken together and in context,

would have misled a reasonable investor," questions regarding materiality are also a common

issue. *Merrill Lynch & Co.*, 277 F.R.D. at 114; s*ee also Everts v. Holtmann*, 64 Or. App. 145,

152-53 (Or. Ct. App. 1983) (materiality under ORS 59.115(1)(b) is "an objective question").

> **2.    Plaintiffs will prove with common evidence the Defendants' liability
> pursuant to ORS § 59.115(3) for participation or material aid in the sale of
> the Aequitas Securities to the Class.**

Once primary liability is established against the Sellers, the nonseller liability of the

Defendants to the Class members under ORS § 59.115(3) may be established by proving that a

Defendant "participates or materially aids in the sale," unless the nonseller "did not know, and,

in the exercise of reasonable care, could not have known, of the existence of facts on which the

liability is based."  Generally, "participation" addresses direct involvement in the sale, while

"material aid" involves indirect support for the seller in making the sale.  *April 10, 2017 F&R*,

2017 WL 2927481, at *9 (citation omitted).  Plaintiffs allege that Defendants participated in and

materially aided in the sales through interactions enabling the Sellers to continue their securities

business.  ¶¶ 189-90, 192-93, 195.  The Defendants' alleged conduct impacts each Class member

identically and is based upon the *Defendant's role in assisting Aequitas*.  Reliance by the

plaintiff regarding the defendants' participation or material aid is not an element of ORS

59.115(3).  *Aug. 1, 2018 F&R*, 2018 WL 4568737, at *12.  Proving this element will require the

same evidence regardless of the plaintiff asserting the claim.  For example, whether Deloitte or

EisnerAmper's services as auditor, Duff's appraisal services, TD's sales and custody practices or

PAGE 29 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Sidley's provision of legal services: (i) reflected some knowledge, judgment or specialized skill; (ii) that materially aided the sales transaction; and (iii) had a causal nexus to the sales will depend upon the same proof regardless of the plaintiff asserting the claim.

Common issues are also present with respect to the Defendants' possible affirmative defense under ORS § 59.115(3) that they "did not know" and "in the exercise of reasonable care, could not have known" about the facts constituting the primary violations of the Oregon Securities Law, as described above.  These affirmative defenses are based entirely upon the *Defendants'* knowledge of the Sellers' misconduct and the proof required will be identical when asserted against any Plaintiff, or the Class.

Each of the elements of Plaintiffs' claims against the Defendants will be demonstrated through common proof, and there are no significant individual issues that are relevant, much less predominate over the numerous common issues in this action.[26]  The determination of these common issues would resolve the allegations for the entire Class and Subclass "in one stroke." *See Villanueva*, 319 F.R.D. at 315 (citation omitted).

**B.    A Class Action is Superior to Other Methods of Adjudicating This Dispute.**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (quoting 7A CHARLES WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1779 at 174 (3d ed. 2005)) (alteration in original).  When considering the superiority requirement, the Court must determine (A) the class members' interest in controlling

---

[26] One individual issue that will arise is the calculation of damages for each particular Class member.  But the "presence of individualized damages calculations, however, does not defeat predominance."  *Torres*, 835 F.3d at 1136.  No other significant individual issues with respect to proving the ORS § 59.115(3) claim against any of the Defendants defeat predominance.

PAGE 30 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

their own actions, (B) the extent and nature of any litigation concerning the controversy already

begun by or against class members, (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum, and (D) the likely difficulties in managing a class

action.  *Id.*; Fed. R. Civ. P. 23(b)(3)(A)-(D).  All of these factors favor class treatment here.

With respect to factors (A) and (C), the value of many of the claims is simply too low to

incentivize many Class members to litigate their claims individually, particularly in light of

Defendants' resources, and weighs in favor of concentrating the claims in a single forum.

*Hanlon*, 150 F.3d at 1023 (class action superior where individual action "litigation costs would

dwarf potential recovery").  This Court is the most appropriate single forum because the fraud

occurred here, and many of the witnesses and much of the other evidence is within this District.

The determination of superiority also "necessarily involves a comparative evaluation of

alternative mechanisms of dispute resolution."  *Mar. 19, 2019 F&R*, 2019 WL 1441634, at *16

(quoting *Hanlon*, 150 F.3d at 1023).  If this action is not certified as a class, each plaintiff would

have to establish the same fraudulent scheme in hundreds of individual lawsuits, potentially

scattered across the 43 states in which they reside—a "repetitive process" that would

"unnecessarily burden the judiciary."  *Hanlon*, 150 F.3d at 1023; *see also Mar 19, 2019 F&R*,

2019 WL 1441634, at *16.[27]  Not only will individual resources be spared with class

certification, but judicial resources will also be conserved.  Because of the many common

---

[27] *See also In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 635 (D. Idaho 2007) ("[I]t would be folly to
force each to prove the nucleus of the alleged fraud again and again").

HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292   FAX (206) 623-0594

liability issues, "[m]any courts have affirmed the superiority of class actions in securities fraud cases." *Weinberger v. Thornton*, 114 F.R.D. 599, 605 (S.D. Cal. 1986).[28]

With respect to factor (B)—the extent and nature of any similar litigation—as the Court is aware, certain plaintiffs have pursued similar individual actions in Oregon state and federal court. These plaintiffs are excluded from the Class and "this fact alone does not militate against superiority." *Dynabursky v. AlliedBarton Sec. Servs. LP*, No. 812CV2210JLSRNBX, 2014 WL 12690698, at *10 (C.D. Cal. Jan. 29, 2014). There, the plaintiffs were forced to split their claims and proceed against some defendants in state court and simultaneously against others in arbitration. This experience counsels in favor of finding that a class action is superior.

Factor (D)—manageability—focuses on whether "'the complexities of class action treatment outweigh the benefits of considering common issues in one trial….'" *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001)). The question is whether multiple individual lawsuits would be more manageable than a class action, and not whether trying the class claims is easy. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004). Indeed, this fourth factor "will rarely, if ever, be in itself sufficient to prevent certification." *Id.* at 1272; *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (refusal to certify a class solely on grounds of manageability is disfavored and "should be the exception rather than the rule"). Here, Plaintiffs do not foresee any serious manageability problems and certainly none that make thousands of individual actions a better alternative.

---

[28] *See also Buttonwood Tree Value Partners, LP v. Sweeney*, No. SACV1000537CJCMLGX, 2013 WL 12125980, at *14 (C.D. Cal. Sept. 12, 2013); *Merrill Lynch & Co.*, 277 F.R.D. at 120 ("In general, securities suits ... easily satisfy the superiority requirement of Rule 23.").

PAGE 32 -**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## IX.    THE PROPOSED CLASSES ARE ASCERTAINABLE

Although not specified in Rule 23, some courts imply an additional prerequisite that the proposed class be "ascertainable," meaning that "membership must be determinable from objective, rather than subjective, criteria." *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Demmings v. KKW Trucking, Inc.*, No. 3:14-cv-0494-SI, 2018 WL 4495461, at *6 (D. Or. Sept. 19, 2018). The Class and Subclass definitions utilize objective criteria that make class membership ascertainable.

## X.    CONCLUSION

Plaintiffs have demonstrated that they satisfy all of the elements of Rule 23(a) and (b)(3). The class action mechanism is the best and most efficient way to adjudicate the Class members' claims in this case. For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to certify both the Class and the Subclass.[29]

Dated: April 26, 2019.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Steve W. Berman*
    **Steve W. Berman** (admitted *pro hac vice*)
    **Karl P. Barth** (admitted *pro hac vice*)
    **Dawn D. Cornelius** (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email:    steve@hbsslaw.com
           karlb@hbsslaw.com
           dawn@hbsslaw.com

-And-

---

[29] Plaintiffs will file with their reply papers a Proposed Order Granting Plaintiffs' Motion for Class Certification, Appointing Class Representatives and Appointing Class Counsel.

**PAGE 33 -PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**Keith A. Ketterling**, OSB No. 913368
kketterling@stollberne.com
**Timothy S. DeJong**, OSB No. 940662
tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

-And-

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bbanks@SamuelsLaw.com
**Darlene D. Pasieczny,** OSB No. 124172
Email: darlenep@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone: (503) 226-2966
Facsimile: (503) 222-2937

**Attorneys For Plaintiffs**

PAGE 34 **-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**