**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Jeniphr Breckenridge** (admitted *pro hac vice*)
Email: jeniphr@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

**Attorneys For Plaintiffs**
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and | Case No. 3:16-cv-00580-AC<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)** |

GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

        v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; and DUFF & PHELPS, LLC,

                    Defendants.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 3

II.   BACKGROUND ........................................................................................ 5

    A.    Aequitas Investors' Claims Against Integrity ................................. 5

    B.    Procedural Background.................................................................... 7

    C.    The Mediation/Settlement Process ............................................... 11

III.  SUMMARY OF KEY SETTLEMENT TERMS ....................................... 12

    A.    The Class Definition ...................................................................... 12

    B.    The Settlement Consideration......................................................... 12

    C.    Release of Claims ........................................................................... 12

    D.    Contribution Claims Bar ................................................................ 13

IV.  NOTICE OF THE SETTLEMENT .......................................................... 13

V.   ARGUMENT ............................................................................................. 13

    A.    The Proposed Settlement Warrants Preliminary Approval............ 13

        1.   The Settlement is Entitled to the Presumption of Fairness as Being the Result of Non-Collusive, Informed, Arm's-Length Negotiations. ........... 15

        2.   The Settlement Does Not Suffer from Any Obvious Deficiencies.......... 17

        3.   The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class......................................... 18

        4.   The Settlement Falls Within the Range of Possible Approval ................ 19

    B.    The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23......... 21

        1.   The Rule 23(a) Requirements Are Met...................................... 21

            a.   The Class Is So Numerous that Joinder Is Impracticable. .................. 21

            b.   Numerous Common Issues Exist ....................................... 22

c.   The Class Representatives' Claims Are Typical of Those of Other
Class Members. ................................................................................. 23

d.   The Class Representatives and Their Counsel Adequately Represent
the Interests of the Class. ................................................................. 25

2.   The Requirements of Rule 23(b)(3) Are Met. ........................................... 25

a.   Common Questions of Fact or Law Predominate. ............................ 25

b.   The Class Action Mechanism is Superior to Any Other Method of
Adjudication. ..................................................................................... 27

C.   The Proposed Plan of Allocation is Fair and Reasonable. .............................. 28

D.   The Proposed Claims Administrator Should be Approved. ............................ 29

E.   The Form and Method of Notice Should be Approved. .................................. 29

F.   The Court Should Appoint Class Counsel. ..................................................... 31

VI.   PROPOSED SCHEDULE OF EVENTS .................................................................. 32

VII.   CONCLUSION ......................................................................................................... 33

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods. v. Windsor*
    521 U.S. 591 (1997) ........................................................................ 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
    568 U.S. 455 (2013) ........................................................................ 26

*Bell v. Consumer Cellular, Inc.*
    2017 WL 2672073 (D. Or. June 21, 2017) ............................... 16, 17

*Bickley v. Schneider Nat'l Inc.*
    2016 WL 4157355 (N.D. Cal. Apr. 25, 2016) ............................... 14

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) .................................. 21, 26, 27

*Brown v. Price*
    No. 3:17-cv-00869-HZ (D. Or.) ................................................ 24

*Churchill Vill., L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) ........................................................ 30

*Ciuffitelli v. Deloitte & Touche LLP*
    2019 WL 1441634 (D. Or. March 19, 2019) ......................... passim

*Collins v. Cargill Meat Sols. Corp.*
    274 F.R.D. 294 (E.D. Cal. 2011) .................................................. 14

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013) ........................................................................ 25

*Costelo v. Chertoff*
    258 F.R.D. 600 (C.D. Cal. 2009) ................................................. 24

*Cotton v. Hinton*
    559 F.2d 1326 (5th Cir. 1977) ...................................................... 15

*Couser v. Comenity Bank*
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ......................................... 17

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) .............................................. 22, 23, 25

*Facciola v. Greenberg Traurig, LLP*
    281 F.R.D. 363 (D. Ariz. 2012) .................................................... 27

*Fidel v. Farley*
    534 F.3d 508 (6th Cir. 2008) ........................................................ 31

*Fraley v. Facebook, Inc.*
  2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ........................................................ 14

*Fraser v. ASUS Computer Int'l*, No. C
  2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ........................................................ 18

*Freedman v. Louisiana-Pacific Corp.*
  922 F. Supp. 377 (D. Or. 1996) .......................................................................... 23

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) .................................................................. 23, 25, 26

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ........................................................................ 23, 24

*Hurst v. First Student, Inc.*
  2015 WL 6437196 (D. Or. Oct. 22, 2015) ........................................................ 22, 23

*In re Bank of Am. Corp. Sec.*
  *Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*
  281 F.R.D. 134 (S.D.N.Y. 2012) .......................................................................... 24

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) .............................................................................. 16

*In re Computer Memories Sec. Litig.*
  111 F.R.D. 675 (N.D. Cal. 1986) ........................................................................ 21

*In re Global Crossing Sec. & ERISA Litig.*
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 28

*In re Immune Response Sec. Litig.*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 31

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ........................................................................ 15, 19

*In re Merrill Lynch Tyco Research Sec. Litig.*
  249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................ 28

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ 28

*In re Oracle Secs. Litig.*
  1994 WL 502054 (N.D. Cal. June 18, 1994) ........................................................ 28

*In re Pac. Enters. Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995) ................................................................................ 15

*In re Portal Software, Inc. Sec. Litig.*
  2007 WL 1991529 (N.D. Cal. June 30, 2007) ........................................................ 31

*In re Syncor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ............................................................................ 14

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................... 14, 15, 19

*In re Zynga Sec. Litig.*
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................... 18

*Jensen v. Fiserv Trust Co.*
    256 F. App'x 924 (9th Cir. 2007) ........................................................... 27

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014) ............................................................... 22, 23

*Lane v. Brown*
    166 F. Supp. 3d 1180 (D. Or. 2016) ..................................................... 13

*Medearis v. Or. Teamster Emplrs. Tr.*, No. CV.
    2009 WL 1788183 (D. Or. June 19, 2009) ........................................... 15

*Moss v. U.S. Secret Serv.*
    2015 WL 5705126 (D. Or. Sept. 28, 2015) ........................................... 21, 22, 26

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 15

*Nobles v. MBNA Corp.*, No. C
    2009 WL 1854965 (N.D. Cal. June 29, 2009) ..................................... 15

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ............................................................... 14, 19

*Ontiveros v. Zamora*
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................... 30

*Pecover v. Elec. Arts Inc.*, No. C
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ..................................... 22

*Pokorny v. Quixtar Inc.*
    2011 WL 2912864 (N.D. Cal. July 20, 2011) ....................................... 18

*Rieckborn v. Velti PLC*
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................................... 31

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ............................................................... 15

*Schueneman v. Arena Pharms., Inc.*
    2018 WL 1757512 (S.D. Cal. Apr. 12, 2018) ..................................... 28

*Scott v. ZST Digital Networks, Inc.*
    2013 WL 12126744 (C.D. Cal. Aug. 5, 2013) ..................................... 28

*Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC,*
    No. 3:16-cv-00438-JR (D. Or.) ........................................................... 9

*Silber v. Mabon*
   18 F.3d 1449 (9th Cir. 1994) ................................................................. 30, 31

*Simpson v. Fireman's Fund Ins. Co.*
   231 F.R.D. 391 (N.D. Cal. 2005) .................................................................. 24

*Smith v. Am. Greetings Corp.*
   2015 WL 4498571 (N.D. Cal. July 23, 2015) ............................................. 14, 15

*Spann v. J.C. Penney Corp.*
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ....................................................... 19

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 14

*Stearns v. Ticketmaster Corp.*
   655 F.3d 1013 (9th Cir. 2011) ................................................................. 25, 26

*Sullivan v. Kelly Servs.*
   268 F.R.D. 356 (N.D. Cal. 2010) ................................................................ 23

*Torres v. Mercer Canyons Inc.*
   835 F.3d 1125 (9th Cir. 2016) ..................................................................... 26

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) ........................................................................ 19

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ............................................................................... 26

*United States v. Brian A. Oliver*
   No. 3:19-cr-00132-MO (D. Or. 2019) .......................................................... 10

*Viceral v. Mistras Grp., Inc.*
   2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................................... 19

*Villanueva v. Liberty Acquisitions Servicing, LLC*
   319 F.R.D. 307 (D. Or. 2017) ................................................................. 21, 22

*Villanueva v. Morpho Detection, Inc.*
   2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ............................................... 17

*Villegas v. J.P. Morgan Chase & Co.*
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................................... 19

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) .................................................................................. 22

*Walsh v. CorePower Yoga LLC*
   2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ................................................. 17

*Walter v. Hughes Commc'ns, Inc.*
   No. 09–2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ........................ 18

*West v. Circle K Stores, Inc.*
  2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................................... 18

*Zepeda v. PayPal, Inc.*
  2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) .......................................................... 14


Statutes

Or. Rev. Stat. § 59.115(3) .................................................................................... 5, 18

Rules

Fed R. Civ. P. 23 ................................................................................................. *passim*

Other Authorities

4 Newberg on Class Actions § 13:10 (5th ed. 2011) .................................................. 14

4 Newberg on Class Actions § 13:14 (5th ed. 2011) ............................................. 15, 16

4 Newberg on Class Actions § 13:15 (5th ed. 2011) .................................................. 18

Manual for Complex Litigation (Fourth) § 21.632, at 320–21 (2004) ........................ 14

## CERTIFICATION OF COMPLIANCE WITH LR 7-1

Defendants Tonkon Torp LLP and Integrity Bank & Trust do not oppose this motion. Plaintiffs' counsel conferred with counsel for each of the other Defendants (the "Non-Settling Defendants") by telephone and the parties made a good faith effort to resolve this dispute but were unable to do so.

## MOTION

Pursuant to Fed R. Civ. P. 23(e), Plaintiffs Lawrence P. Ciuffitelli (on behalf of himself and as Trustee of the Ciuffitelli Revocable Trust); Greg and Angela Julien (as co-Trustees of the Gregory and Angela Julien Revocable Trust U/A 7/2/2012); R. F. MacDonald Co.; James and Susan MacDonald (as co-Trustees of the MacDonald Family Trust U/A 12/05/2000); William Ramstein; Greg Warrick (on behalf of himself and as co-Trustee of the Warrick Family Trust); and Susan Warrick (as co-Trustee of the Warrick Family Trust) (collectively, the "Class Representatives" or "Plaintiffs,"),[1] through their legal counsel, move the Court for the following relief:

1.  Preliminary approval of a proposed class action settlement (the "Settlement") with Defendant Integrity Bank & Trust ("Integrity") (Plaintiffs and Integrity, collectively "the Parties") on the terms set forth in the Stipulation and Agreement of Settlement dated April 24, 2019 (the "Stipulation");[2]

2.  Provisionally certifying a settlement class (the "Settlement Class") consisting of:

    All persons who purchased "Covered Aequitas Securities" on or after June 9, 2010, and had an account balance as of March 31, 2016. The Covered Aequitas Securities are those issued by the following entities: (1) Aequitas Commercial

---

[1] Plaintiff Andrew Nowak has filed a motion [ECF No. 463] for leave to voluntarily dismiss his claims without prejudice, and to become an ordinary member of any class that is certified, rather than to serve as a class representative.  That motion is fully briefed and pending.

[2] A true and correct copy of the Stipulation and Agreement of Compromise, Settlement and Release, dated April 24, 2019 (the "Stipulation"), is attached as Ex. A to the DeJong Decl.

PAGE 1 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

Finance, LLC ("ACF"); (2) Aequitas Income Opportunity Fund, LLC ("AIOF"); (3) Aequitas Income Opportunity Fund II, LLC ("AIOF-II"); ( 4) Aequitas Capital Opportunities Fund, LP ("ACOF"); (5) Aequitas Income Protection Fund, LLC ("AIPF"); (6) Aequitas Enhanced Income Fund, LLC ("AEIF"); (7) Aequitas Private Client Fund ("APCF"); (8) Aequitas ETC Founders Fund, LLC ("AETC"); and (9) MotoLease Financial, LLC ("AMLF").

Excluded are: (a) Defendants; (b) past and present officers and directors of the Aequitas affiliated companies, including Robert Jesenik, Brian Oliver, Craig Froude, Scott Gillis, Andrew MacRitchie, Olaf Janke, Brian Rice, William Ruh, Steve Hedberg, Brett Brown, Tom Goila, Patricia Brown, Bill Malloy, and Thomas Szabo, and their families and affiliates; (c) the past and present members of the Aequitas Advisory Board, including William McCormick, L. Martin Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith Barnes, Bob Zukis, and their families and affiliates; (d) registered investment advisors and investment advisor representatives; (e) any investor who received finder's fees or other consideration from Aequitas in connection with referring investors to Aequitas; and (f) any of the Individual Plaintiffs in any of the Individual Actions.

3.      Preliminarily approving the Plan of Allocation;[3]

4.      Approving the retention of the proposed Claims Administrator, Garden City Group LLC;

5.      Approving the form and method for providing notice of the Settlement to the Settlement Class;

6.      Preliminarily approving counsel for the Class Representatives as Settlement Class Counsel; and

7.      Scheduling a hearing at which the Court will consider (a) final approval of the Settlement; (b) certification of the Settlement Class; (c) approval of the Plan of Allocation; (d) Class Counsel's request for fees and expenses; (e) entry of a Limited Judgment; and (f) rule upon such other matters as the Court may deem appropriate.

This motion is supported by the Declarations of Timothy S. DeJong ("DeJong Decl."), Steve W. Berman ("Berman Decl."), Milo Petranovich ("Petranovich Decl."), Randy Rush ("Rush Decl.") and Stephen P. McCarthy ("McCarthy Decl."), filed herewith.

---

[3] A true and correct copy of the Plan of Allocation is attached as Ex. B to the DeJong Decl.

PAGE 2 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiffs have reached a Settlement in this action with Integrity.  The Settlement presents certain issues common to the Tonkon settlement.  Applying this Court's reasoning in granting preliminary approval of the Tonkon settlement, the Settlement with Integrity should also be preliminarily approved.

Integrity and its insurers have agreed to pay $3.4 million to settle all pending lawsuits by Aequitas investors, including the Class.  DeJong Decl., ¶ 7.  At the time of the parties' mediation, the maximum remaining insurance potentially available to Integrity was $3.4 million. McCarthy Decl., ¶ 8.  Integrity's insurers disputed that the full policy limits were available, but ultimately agreed to pay $3.3 million.  McCarthy Decl., ¶¶ 8–9; DeJong Decl., ¶ 7.  Integrity will pay an additional $100,000 so that investors receive the full insurance policy limits.  DeJong Decl., ¶ 7.  Of the total payments of $3.4 million, the Class will receive $1.7 million. Stipulation, ¶ 1.  In exchange, Integrity will receive a release of all claims against it.  *Id*., ¶ 14. Like the Tonkon settlement, the Integrity Settlement is conditioned upon the entry by the Court of a contribution claims bar, with a *pro tanto* reduction of the potential future judgment against Non-Settling Defendants.  *Id.,* ¶ 26(c).  This Court has ruled that *pro tanto* judgment reduction is available under appropriate circumstances.  *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, *9–10 (D. Or. March 19, 2019) ("Tonkon F&R").

Integrity has limited financial resources to pay a settlement or any judgment.  Petranovich Decl., ¶ 5 and Ex. A; Rush Decl., ¶¶ 3–4.  Like Tonkon, Integrity's primary asset available to Plaintiffs is its insurance, which consists of wasting-limit policies that will be exhausted to defend Integrity from the overwhelming litigation pending against it.  Petranovich Decl., ¶¶ 4–5; McCarthy Decl., ¶¶ 5, 8.  The Parties submit evidence that the amount the investors will collectively recover in settlement exceeds any amount Plaintiffs could obtain following a

PAGE 3 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

judgment against Integrity, after trial and appeal.  *See* Petranovich Decl., ¶ 7 and Ex. A; DeJong Decl., ¶ 12.  As in the case of the Tonkon settlement, there will never be more money available to Plaintiffs than is available from this Settlement.

If approved, Plaintiffs will have settled all claims against Defendants with limited resources.  Plaintiffs believe that each of the Non-Settling Defendants has sufficient assets to satisfy any judgment Plaintiffs obtain against them.

Plaintiffs and proposed Class Counsel recommend this Settlement, which meets the standard for preliminary approval.  *See* Section V(A), *infra*.  Further, because all the requirements for class certification are met, the Court should certify the Settlement Class.  *See* Section V(B), infra.  The Court should also grant preliminary approval of the proposed Plan of Allocation, which is identical to the plan of allocation approved for the Tonkon settlement. Plaintiffs propose to disburse the settlement funds to Settlement Class members based on their proportionate losses.  *See* Section V(C), *infra*.

The Court should also approve the proposed Notice and method of notice to Class Members because the Notice complies with the requirements of Rule 23(c)(2)(B), and the proposed method of notice satisfies the requirements of Rule 23 and due process.  *See* Section V(E), infra.  The Garden City Group, LLC should be approved as Claims Administrator to administer the method of notice and administration of the settlement proceeds.  *See* Section V(D), *infra*.  Additionally, the Court should appoint counsel for the Class Representatives as Class Counsel.  *See* Section V(F), *infra*.

Lastly, the Court should schedule a final fairness hearing for approximately four months after the preliminary approval order is entered, to allow sufficient time for providing the Notice to Class Members, and allowing them to object or exclude themselves from the Class, as well as sufficient time for the Class Representatives to review any objections and to file a motion for Final Approval.  *See* Section VI, *infra*.

PAGE 4 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

## II.    BACKGROUND

### A.    Aequitas Investors' Claims Against Integrity

The Court is very familiar with the allegations of this lawsuit.  The Aequitas companies sold hundreds of millions of dollars of unregistered securities to members of the Settlement Class in violation of the Oregon Securities Law.  Plaintiffs allege that Integrity is liable pursuant to Or. Rev. Stat. § 59.115(3) for participating and materially aiding in Aequitas' unlawful sales of securities.

Integrity is a commercial bank.  Second Amended Complaint [ECF No. 257] ("SAC"), ¶ 21.  Integrity both participated in sales of ACF, AIPF and AIOF-II securities and aided Aequitas' sales of Covered Aequitas Securities by providing huge inflows of investment funds that Aequitas needed to keep its Ponzi-like scheme alive.

Integrity acted as a sales agent to Aequitas and facilitated sales of more than $100 million of Aequitas securities during the class period.  *Id.*  Integrity was actively involved in marketing the Aequitas securities.  *Id.*  Integrity lent its name to Aequitas' securities marketing.  *Id.* ¶ 194(e).  Integrity also provided custodial services for the Aequitas securities it helped Aequitas sell.  *Id.*  Integrity participated in sales of Aequitas securities pursuant to various contracts with Aequitas.  *Id.* ¶ 194(b)-(d).  Integrity received various fees for its sales-related services.  *Id.*

Integrity participated in sales of ACF Notes.  *Id.* ¶ 194.  ACF Notes were sold throughout the time period encompassed by the Settlement Class.  *Id.* ¶ 33.

Integrity participated in sales of AIPF Interests.  *Id.* ¶ 192(f), 194(a).  Sales of AIPF Interests began at least as early as September 30, 2011, and the offering of the AIPF Interests continued through at least May 27, 2014.  *Id.* ¶ 43.  Integrity also aided sales of AIPF Interests by acting as aggregator of individual investments in an effort to circumvent the Investment Company Act.  *Id.* ¶ 192(f).  Integrity told Aequitas that they could create a structure using a trust (having Integrity, a general partnership, as nominee) that would allow Integrity to act as a

PAGE 5 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

pass-through for many different investors that would count as only one investor for purposes of the exemption from the Investment Company Act on which AIPF relied. *Id*. Aequitas and Sidley later learned that Integrity was wrong and Aequitas liquidated AIPF. *Id*.

Integrity aided in sales of AIOF-II securities and enabled Aequitas to continue its Ponzi scheme and sell additional securities by aiding Aequitas to avoid this liquidity crisis. *Id*. ¶¶ 192(f), 194. During 2014, Sidley worked with Aequitas to create a structure that would allow Integrity to serve as an aggregator of individual investments, as originally intended, via AIOF-II. *Id*. ¶ 192(f). AIOF-II was set up specifically for the purpose of retaining AIPF investor money in order to avoid a liquidity crisis, by having the investments in AIPF transfer over to AIOF-II. *Id*.

The substantial sale proceeds that Integrity generated enabled Aequitas to continue the Ponzi scheme and sell more Covered Aequitas Securities. Thus, Plaintiffs allege that Integrity's participation and aid made it possible for Aequitas to sell more than $600 million of Covered Aequitas Securities, with exposure for at least $450 million of principal losses. *Id*. ¶ 1.

Non-Settling Defendants have argued that Integrity—not Aequitas—was the seller of certain Aequitas securities. Non-Settling Defendants contend that Integrity purchased securities from Aequitas on Integrity's own behalf, and then sold to investors participation interests in Integrity's Aequitas Securities. Those contentions are contrary to the evidence. For example, the following document was executed when the Warrick Plaintiffs purchased an IOF II Note:

**Direction of Investment**

Dated: 9-12-15

Re: Warrick Family Trust Custodial Trust

Account # 85866

By execution of this letter agreement, the Owner directs Integrity Bank & Trust to purchase the following investment(s) in the above referenced Account:

PAGE 6 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

$94,000.00 Aequitas IOF II Note

Integrity Bank & Trust is to retain said investment(s) until directed otherwise in writing by the owner. …

Decl. of Greg Warrick [ECF No. 528], Ex. B.[4]  By the terms of the Direction of Investment, Integrity was to purchase the AIOF-II Note for Plaintiff, the Owner of the investment.  Non-Settling Defendants' contentions also are irrelevant to this settlement, because the parties are settling Plaintiffs' claims of participation and material aid.

Plaintiffs assert their claims against Integrity pursuant to the Oregon Securities Law. Non-Settling Defendants have argued that "Colorado law applies to Class Members who purchased Aequitas securities through Defendant Integrity because those contracts provided choice of law and venue provisions."  Tonkon F&R, 2019 WL 1441634, at *16.  This Court found those arguments insufficient to defeat certification of the Tonkon settlement class, and the arguments are also insufficient to defeat certification of the Integrity Settlement Class.[5]  *See id.* Notably, Integrity did not move to dismiss Plaintiffs' Oregon Securities Law claims based upon any contractual choice-of-law provision.

B.    **Procedural Background**

On April 4, 2016, Plaintiffs filed their initial Complaint in this Action [ECF No. 1], alleging violations of the Oregon Securities Law by other Defendants in connection with their roles in participating in and materially aiding the sales of Aequitas Securities.  On May 19, 2016, Plaintiffs filed an Amended Complaint [ECF No. 57], adding by amendment claims against Integrity.

---

[4] The Warrick Decl. was filed by Plaintiffs on April 26, 2019, in support of their Motion for Class Certification.

[5] Plaintiffs perceive no limitation on their ability to cite to the Tonkon F&R.  The Court found that Non-Settling Defendants had standing to object despite Plaintiffs' offer to stipulate that the ruling would not be precedent for future class certification motions.

PAGE 7 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

On July 15, 2016, Integrity filed a motion to dismiss the First Amended Complaint [ECF No. 95]. On August 22, 2016, Plaintiffs filed an opposition to Integrity's motion to dismiss [ECF Nos. 125]. On September 21, 2016, Integrity filed a reply to the opposition to its motion [ECF No. 135].

On September 29, 2016, Plaintiffs served requests for production of documents on Integrity. DeJong Decl., ¶ 4. In response, Integrity has produced more than 420,000 pages of documents. *Id.* Class Counsel have reviewed more than 2.6 million pages of documents collectively produced by Integrity, other parties to this Action, and Aequitas. *Id.*, ¶ 5.

On April 24, 2017, the Court issued Amended Findings and Recommendations [ECF No. 242] largely denying Integrity's motion to dismiss and granting Plaintiffs an opportunity to amend their complaint to address certain issues identified by the Court. Integrity objected to the Amended Findings and Recommendations [ECF No. 218]. Judge Mosman adopted the Amended Findings and Recommendations on July 5, 2017 [ECF No. 250].

On September 8, 2017, Plaintiffs filed their Second Amended Complaint [ECF No. 257]. On October 23, 2017, Integrity participated in a joint motion to dismiss filed collectively by all Defendants in this action [ECF No. 278]. On November 22, 2017, Plaintiffs filed their opposition to the joint motion to dismiss [ECF No. 287]. On December 20, 2017, Integrity and the other Defendants filed a reply memorandum in support of their motion to dismiss [ECF No. 300]. The Court held a hearing on this motion on June 1, 2018, and issued its Findings and Recommendations on Defendants' Motions to Dismiss on August 1, 2018 [ECF No. 340]. Judge Mosman adopted the Findings and Recommendations on September 21, 2018 [ECF No. 368].

In the related state court Individual Actions, defendant TD Ameritrade sought to dismiss claims of all Aequitas investors who were not customers of TD Ameritrade. *See* DeJong Decl., Ex. C (copy of February 28, 2018, written Opinion and Order Re: Motions to Dismiss) ("2/28/18 Judge Dailey Opinion"). TD Ameritrade argued that non-customers could not establish a

PAGE 8 -  **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

connection between TD Ameritrade and the sale of any security to a non-customer.  2/28/18

Judge Dailey Opinion at 13.  But in a February 28, 2018, written Opinion and Order Re: Motions

to Dismiss, Judge Dailey rejected this argument and held that claims of non-customers could go

forward on the theory that TD Ameritrade lent its reputation and credibility in support of

Aequitas' public perception, and that Aequitas was counting heavily on TD Ameritrade to

generate consistent new funds to continue the Ponzi-like scheme.  *Id.* at 14.  Judge Dailey held

that "Plaintiffs have sufficiently alleged that TD Ameritrade's actions enabled the sales to occur

by granting Aequitas the illusion of credibility and solvency.  Accepting these allegations as true

and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have adequately pleaded that

the sales 'would and could not have been completed or consummated' without the material aid of

TD Ameritrade."  *Id.*  Plaintiffs asserted in this case that the same reasoning applies to Integrity.

The court-appointed Receiver for Aequitas filed a "Report Regarding the Investigation of

the Receivership Entity's Business Conduct" on November 21, 2018.  *Sec. & Exch. Comm'n v.

Aequitas Mgmt., LLC*, No. 3:16-cv-00438-JR (D. Or.) [ECF No. 663] ("Receiver's Report").

The Receiver investigated the time period January 1, 2014 through March 10, 2016.  Receiver's

Report at 7.[6]  Based upon his findings, the Receiver expressed his "intention to seek the

designation of a Ponzi scheme as it relates to the Receivership Entity."  *Id.* at 9.  Among his

findings, the Receiver found that Aequitas was "dependent on continued infusion of new

Investor money to pay operating expenses and returns to Investors," "[d]id not use Investor

money for the stated purposes," "[u]sed a significant portion of new Investor money to pay

returns and principal to earlier Investors," "[d]id not generate sufficient (any) profits to pay the

promised returns to Investors," "[w]as insolvent from at least July 3, 2014 onward," and that

Aequitas' accounting records did not "reflect appropriate reserves for uncollectable assets and …

---

[6] Due to a discrepancy in page numbering between the ECF-filed document and the report
itself, Plaintiffs cite to the ECF page number.  For example, this citation is to page 7 of 174.

**PAGE 9 -  PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL
            SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

include[d] inflated 'mark-ups' to asset valuations, both of which result[ed] in a misrepresentation of Aequitas' income generated and assets available (and net worth)." *Id.* at 10. The Receiver noted that, "[w]hile Aequitas was likely insolvent substantially prior to July 3, 2014, the Receiver has not considered it a beneficial use of Receivership resources to undertake the extensive analysis necessary to support or refute a hypothesis of insolvency prior to July 2014 (however, if such need becomes apparent, this analysis can be performed)." *Id.* at 11.

On March 19, 2019, the Court issued its Findings and Recommendations to give preliminary approval to Plaintiffs' settlement with Tonkon [ECF No. 481]. The Court held that *pro tanto* judgment reduction is available for a bar of contribution claims under the Oregon Securities Law. Tonkon F&R, 2019 WL 1441634, at *10. The Court also provisionally certified a settlement class for the Tonkon settlement that is identical to the Integrity Settlement Class. *Id.* at *20.

On April 19, 2019, former Aequitas executive Brian Oliver pleaded guilty to federal crimes in a case pending in this District, *United States v. Brian A. Oliver*, No. 3:19-cr-00132-MO. In the Plea Agreement Letter [ECF No. 13] in that case, Oliver admits to creating and approving investment materials "that contained material misrepresentations, including material misrepresentations about the use of investor moneys, the financial health and strength of the Aequitas companies, their investments and investment strategies, and the inherent risks of those investments and strategies." Oliver further admitted that "[t]hese promotional materials also omitted material facts, including that the Aequitas companies were consistently in liquidity and cash-flow crises, that defendant and others used the majority of investor money to repay investors and to pay operating expenses rather than buy trade receivables, and that there was insufficient collateral to secure the notes." *Id*. Oliver further admitted that Aequitas "used an intercompany loan and intercompany transfers of money to prop up Aequitas Commercial Finance and the other Aequitas entities and to mislead investors. Defendant and others counted

PAGE 10 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

the intercompany note as an asset even though defendant and others knew that the note was woefully under-collateralized and could not be repaid without the occurrence of several speculative contingencies that were not disclosed to investors." *Id.*

On April 26, 2019, Plaintiffs filed a motion for certification of a litigation class for Plaintiffs' claims against the Non-Settling Defendants [ECF No. 522]. Plaintiffs incorporate by this reference their submissions in connection with that motion for class certification.

C.    **The Mediation/Settlement Process**

Plaintiffs, Integrity, the Aequitas Receiver, and other Aequitas investors who filed related actions against Integrity in state and federal court, retained the services of mediator Louis D. Peterson for a "global" mediation of all Aequitas investors' pending claims against Integrity. DeJong Decl., ¶ 7. The mediator conducted pre-mediation telephone calls with all participating parties in early June 2018. *Id.* On June 12, 2018, Mr. Peterson conducted an all-day mediation with all parties—including Integrity's insurers—attending in person. *Id.* Although substantial progress was made during the in-person mediation, substantial additional mediation, in the form of telephone calls and emails, was required after June 12. *Id.* Ultimately, all parties reached a settlement in principle on July 19, 2018. *Id.* The settlement was the product of serious, informed, non-collusive negotiations. DeJong Decl., ¶ 10.

Because the Settlement requires a contribution claims bar with a *pro tanto* judgment reduction, which Non-Settling Defendants contend is unavailable under the Oregon Securities Law, Plaintiffs and Integrity agreed to postpone submission of the Settlement for approval by the Court until that legal issue was resolved in connection with the Tonkon settlement. DeJong Decl., ¶ 8. The Court recently held that a *pro tanto* judgment reduction credit is available. Tonkon F&R, 2019 WL 1441634, at *10.

PAGE 11 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

III.    **SUMMARY OF KEY SETTLEMENT TERMS**

A.    **The Class Definition**

The proposed settlement class (the "Settlement Class") includes:

> All persons who purchased "Covered Aequitas Securities" on or after June 9, 2010, and had an account balance as of March 31, 2016. The Covered Aequitas Securities are those issued by the following entities: (1) Aequitas Commercial Finance, LLC ("ACF"); (2) Aequitas Income Opportunity Fund, LLC ("AIOF"); (3) Aequitas Income Opportunity Fund II, LLC ("AI OF-II"); ( 4) Aequitas Capital Opportunities Fund, LP ("ACOF"); (5) Aequitas Income Protection Fund, LLC ("AIPF"); (6) Aequitas Enhanced Income Fund, LLC ("AEIF"); (7) Aequitas Private Client Fund ("APCF"); (8) Aequitas ETC Founders Fund, LLC ("AETC"); and (9) MotoLease Financial, LLC ("AMLF").
>
> Excluded are: (a) Defendants; (b) past and present officers and directors of the Aequitas affiliated companies, including Robert Jesenik, Brian Oliver, Craig Froude, Scott Gillis, Andrew MacRitchie, Olaf Janke, Brian Rice, William Ruh, Steve Hedberg, Brett Brown, Tom Goila, Patricia Brown, Bill Malloy, and Thomas Szabo, and their families and affiliates; (c) the past and present members of the Aequitas Advisory Board, including William McCormick, L. Martin Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith Barnes, Bob Zukis, and their families and affiliates; (d) registered investment advisors and investment advisor representatives; (e) any investor who received finder's fees or other consideration from Aequitas in connection with referring investors to Aequitas; and (f) any of the Individual Plaintiffs in any of the Individual Actions.

Stipulation, ¶ I.1(d).

B.    **The Settlement Consideration**

The Total Settlement Amount to be paid by Integrity and its insurers to the Class is $1,700,000.[7]  Stipulation, ¶ 1.

C.    **Release of Claims**

Once the Settlement is effective, the Class Representatives and Class Members who have not opted out will release all claims for damages against Integrity arising out of or relating in any

---

[7] In separate settlements, Integrity has agreed to pay a total of $1,700,000 to the plaintiffs in the Individual Actions.  $100,000 of the total settlement payments of $3.4 million will be paid by Integrity, with the balance to be paid by its insurers.  DeJong Decl., ¶ 7.

PAGE 12 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

way to any act or omission of the Defendants or their member institutions that is alleged or could have been alleged in this litigation.  Stipulation, ¶ 14.

### D.    Contribution Claims Bar

The Settlement is conditioned upon: 1) the entry of an injunction barring contribution claims by the other Defendants in this action against Integrity (Stipulation, ¶¶ 26(b), 27); and 2) approval of a *pro tanto* credit in favor of the remaining defendants in this action against any judgment that may be entered against them in this action (Stipulation, ¶¶ 26(c), 28).

## IV.    NOTICE OF THE SETTLEMENT

The [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to this motion, mandates that within twenty-eight (28) calendar days of the Court's order preliminarily approving the Settlement, Class Counsel shall provide notice to Class Members through mailing to all identifiable Class Members as identified by the Receiver the proposed Notice of Pendency and Settlement of Class Action (the "Notice") (substantially in the form annexed as Exhibit A-1 to the Preliminary Approval Order).  The Notice is in the same form as that approved in connection with the Tonkon settlement.

Additionally, within thirty-five (35) calendar days after entry of the Preliminary Approval Order, Class Counsel shall cause a Summary Notice, substantially in the form annexed as Exhibit A-2 to the Preliminary Approval Order, to be published in *The Wall Street Journal* and *The Oregonian* and to be distributed over a national newswire service.

## V.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims.  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Lane v. Brown*, 166 F. Supp. 3d

PAGE 13 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

1180, 1188 (D. Or. 2016) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution … especially … in complex class action litigation").  Approval of a settlement is a multi-step process, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a motion for final approval and fairness hearing.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); Manual for Complex Litigation (Fourth) § 21.632, at 320–21 (2004).  Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301–302 (E.D. Cal. 2011).  The Court's primary objective is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.  4 Newberg on Class Actions § 13:10 (5th ed. 2011).  Preliminary approval establishes an "initial presumption" of fairness such that notice may be given to the class.  *Tableware*, 484 F. Supp. 2d at 1079 (internal quotation marks and citation omitted); *see also Smith v. Am. Greetings Corp.*, No. 14–cv–02577–JST, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same).

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.  *Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, No. C 11–1726 RS, 2012 WL 5838198, at

PAGE 14 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

*1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware*, 484 F. Supp. 2d at 1079; *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2011).  All factors weigh in favor of preliminary approval here.

>    **1.    The Settlement is Entitled to the Presumption of Fairness as Being the Result of Non-Collusive, Informed, Arm's-Length Negotiations.**

As the Ninth Circuit has stated, "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Medearis v. Or. Teamster Emplrs. Tr.*, No. CV. 07–723–PK, 2009 WL 1788183, at *3 (D. Or. June 19, 2009) (quoting *Rodriguez*).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Pac. Enters.*).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)) (other citations omitted).  Accordingly, as is the case here, when proposed counsel are experienced and support the settlement, which was the result of arm's-length negotiations and relevant discovery has been conducted, there is an initial "presumption that the agreement is fair."  *Smith*, 2015 WL 4498571, at *6; *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009).

The proposed Settlement arises out of extended, informed, arm's-length negotiations between experienced counsel for the Parties.  Here, the Parties have engaged in more than two years of litigation and Integrity has produced more than 420,000 pages of document discovery.  DeJong Decl., ¶ 4.  This "significant investigation, discovery and research" weighs in favor of finding the Settlement was adequately informed.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research"

PAGE 15 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement"). Further, Plaintiffs' counsel are experienced and recognized nationally for competently handling large-scale, financial fraud and class action litigation. Berman Decl., Ex. A; DeJong Decl., Ex. D.

There is no evidence of conflicts of interest or collusion among the Parties in crafting the Settlement. Courts considering a pre-class certification settlement must examine whether the settlement was the result of good faith, arm's-length negotiations or the result of fraud and collusion. *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). None of those things is present here.

First, the proposed Settlement does not bear any of the characteristics of collusion, the Plan of Allocation provides that the Class Representatives will recover the same pro rata share as all other Class Members, and Class Counsel's fees must be approved by this Court. DeJong Decl., Ex. B; Stipulation, ¶ 29. Second, there is no "clear sailing" provision, and any fees awarded by this Court will be paid from the Settlement Fund. Third, there is no reversion of any of the Settlement Amount to Integrity.

In addition, the Parties were assisted by mediator Louis D. Peterson in their settlement negotiations, which is a "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948; *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2011). The presence of counsel for plaintiffs in the various Individual Actions, and the Receiver, in the

PAGE 16 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

negotiations further underscores the lack of collusion between the Class Representatives and Integrity.

The Settlement is the result of informed, non-collusive and hard-fought negotiations between the Class Representatives, Integrity and the plaintiffs in the Individual Actions. Plaintiffs and their counsel recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class Members.  Berman Decl., ¶ 3; DeJong Decl., ¶¶ 10–11.  "Great weight" should be accorded to this recommendation of Class Counsel.  *Bell*, 2017 WL 2672073, at *6 (citations omitted); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (citation omitted).  Accordingly, the Court should give an initial "presumption of fairness" to the Settlement.  *Villanueva v. Morpho Detection, Inc*., No. 13–cv–05390–HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted); *see also Walsh v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) ("[S]ettlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel.") (citation omitted).

### 2.    The Settlement Does Not Suffer from Any Obvious Deficiencies.

The Settlement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case, including the collectability of any potential judgment obtained against Integrity.  The Parties have litigated this case for more than two years, during which time the Class Representatives conducted extensive document discovery.  The Aequitas Receiver waived applicable attorney-client privileges, allowing an unfettered look into the relevant documents.  The Receiver produced a massive database containing Aequitas' documents, and Integrity has produced more than 420,000 pages of documents.  Accordingly, the Settlement reflects the Class Representatives' informed assessment of the risks generally inherent in litigation, and the specific litigation risks present in this action in particular.  Had there not been a settlement, Integrity would have vigorously defended Plaintiffs' claims,

PAGE 17 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

including by asserting the statutory "due diligence" defense to a claim for secondary liability under Or. Rev. Stat. § 59.115(3).  Furthermore, the massive cost to defend this action, and the related Individual Actions, would have depleted Integrity's insurance entirely, leaving little if anything for any Plaintiffs to collect post-judgment.  Weighing the benefits of the Settlement with the risks that the Class Representatives faced in this Action, there are no obvious deficiencies in the Settlement.

Further, the Settlement contains no obvious defects of the types that courts have found to preclude preliminary approval such as:  unreasonably high attorneys' fees; preferential treatment of class representatives; deficient notice plan; burdensome claims procedure; and plainly unfair allocation scheme or overly broad releases of liability.  *See* 4 Newberg on Class Actions § 13:15 (5th ed. 2011) (citing, *inter alia*, *Pokorny v. Quixtar Inc*., No. 07–0201 SC, 2011 WL 2912864, at \*1 (N.D. Cal. July 20, 2011) (fee concerns); *West v. Circle K Stores, Inc*., No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at \*12 (E.D. Cal. June 13, 2006) (preferential treatment of class representatives); *Walter v. Hughes Commc'ns, Inc*., No. 09–2136 SC, 2011 WL 2650711, at \*15-16 (N.D. Cal. July 6, 2011) (deficient notice); *Fraser v. ASUS Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142, at \*3 (N.D. Cal. Dec. 21, 2012) (overly broad releases)).  The lack of any obvious deficiencies in the Settlement weighs in favor of preliminary approval.

### 3.    The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class.

The third factor to consider is whether the Settlement grants preferential treatment to Class Representatives or segments of the Settlement Class.  The Settlement does not.  The Plan of Allocation is designed to compensate all Class Members equally based on their losses.  DeJong Decl., Ex. B.  Therefore, there is no preferential treatment where the Class Representatives will receive the same *pro rata* distribution based on their losses that is applicable to all class members.  *In re Zynga Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at \*12

PAGE 18 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

(N.D. Cal. Oct. 27, 2015).  The lack of preferential treatment for the Class Representatives also weighs in favor of preliminary approval.

### 4.      The Settlement Falls Within the Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement." *Tableware*, 484 F. Supp. 2d at 1079–80.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Officers for Justice*, 688 F.2d at 628).  The adequacy of the amount offered in settlement "cannot be assessed in a vacuum.  Rather, it must be considered in light of 'the strength of the plaintiff's case' and the risks in pursuing further litigation."  *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.") (citing *In re Mego Fin. Corp.*, 213 F.3d at 459).

Integrity's inability to pay a significantly larger amount is also an important consideration.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (the financial condition of defendant predominated in assessing the reasonableness of settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1256 (C.D. Cal. 2016) (uncertainty concerning defendant's financial stability "strongly supports the reasonableness of the settlement").  Here, the substantial relief that will be received by the Class in this Settlement is favorable in light of the litigation risks and the risks of collection of any judgment that might have been obtained against Integrity.

Plaintiffs believe that it is appropriate for the Settlement Class to receive 50% of the total settlement payments to all Aequitas investors under these circumstances.  For example, one

PAGE 19 **- PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

group of individual Aequitas investors were scheduled to arbitrate their claims against Integrity a few months after the mediation.  Had those investors proceed to arbitration and prevailed, it is likely that there would have been no money, or far less than $1.7 million, for Plaintiffs to recover after trial against Integrity years later.

Further, the entry of a contribution claims bar, including a *pro tanto* credit for the non-settling Defendants, is appropriate under the circumstances.  This Court held in connection with the Tonkon settlement that the *pro tanto* method of judgment reduction is available under the Oregon Securities Law.  Tonkon F&R, 2019 WL 1441634, at *9.  This Court also indicated that a *pro tanto* credit is appropriate on the facts of the Tonkon settlement.  *Id.* at *10.  The same analysis applies here.

The Settlement provides the substantial benefit of $1,700,000, without further risk to the Class, including the risk that the arbitration plaintiffs would have obtained a judgment sufficient to put Integrity out of business and render Integrity judgment-proof.  Due to the complexities inherent in this case, the certainty of this settlement amount has to be judged in the context of the legal and practical obstacles to obtaining a judgment against Integrity at trial, and the likelihood of collecting any such judgment.  Furthermore, had the case continued, the Class faced significant legal challenges at class certification, summary judgment, and trial that could have resulted in no recovery at all for the Class.  In addition, this Settlement (together with the related settlements of the Individual Actions) represents a recovery of the entire value of Integrity's insurance policy.  Moreover, even if the Class Representatives had tried the case and prevailed, Integrity would likely have appealed the verdict, thus adding years of further delay and expense to the litigation.  These events would further diminish the insurance monies available for the Class.

Given the collection risks that the Class faced here, along with risks inherent in any litigation, the Class Representatives believe that the $1,700,000 Settlement that will be available

PAGE 20 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

promptly for the Class is reasonable and adequate. For these reasons, the amount of the Settlement is very much within the "range of possible approval."

### B.    The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23.

The standards for provisional class certification are set forth in the Court's Findings & Recommendation [ECF No. 481] preliminarily approving the Tonkon settlement. *See* Tonkon F&R, 2019 WL 1441634, at *11. Courts within the Ninth Circuit have taken a liberal view of class certification in cases such as this, recognizing that "securities litigation is particularly well suited for class action treatment." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 902–04 (9th Cir. 1975)). To certify the proposed Class, the Class Representatives must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *Id.* at 24–25. In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3). As described below, each of these requirements is met in this case.

#### 1.    The Rule 23(a) Requirements Are Met.

##### a.    The Class Is So Numerous that Joinder Is Impracticable.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) (citations omitted). "Plaintiffs need not provide an exact number of class members, 'so long as there are enough to make joinder impracticable.'" *Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015) (citation omitted). This Court previously found that "Plaintiffs readily satisfy the requirement as they have alleged a class of approximately 1,500 members." Tonkon F&R, 2019 WL 1441634, at *12; *see* SAC ¶ 204.

PAGE 21 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

### b.    Numerous Common Issues Exist

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." *Villanueva*, 319 F.R.D. at 315.  The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Moss*, 2015 WL 5705126, at *3.  Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010) (citation omitted).  "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (internal quotation marks and citation omitted).  Rather, commonality requires the existence of even a *single* common contention that is capable of class-wide resolution.  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).  However, the common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation."  *Id*. (citation omitted).  As this Court recognized in certifying the Tonkon settlement class, "in securities class action cases 'where putative class members have been injured by the same material misrepresentations and omissions, the commonality requirement [is] satisfied.'"  Tonkon F&R, 2019 WL 1441634, at *12 (citations omitted).

Here, the SAC identifies numerous common issues of fact and law, each of which are amenable to class-wide proof, including, without limitation, the following:

- whether the Aequitas Securities were sold to Class Members in violation of the registration requirements of the Oregon Securities Law;

- whether the Aequitas Securities were sold by means of false statements of fact or omissions of material fact; and

- whether Defendant Integrity participated or materially aided in the unlawful sales of Aequitas Securities.

SAC ¶ 206.  The determination of these common issues would resolve the allegations for the entire Class "in one stroke." *Hurst v. First Student, Inc.*, No. 3:15–cv–00021–HZ, 2015 WL

PAGE 22 **- PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165).  As such, the

commonality requirement is satisfied.

The Court has already found that "Plaintiffs have identified numerous common issues of

law and fact that are susceptible to class-wide determination."  Tonkon F&R, 2019 WL 1441634,

at *12.  As the Court noted:

> The common answers to these questions are "apt to drive the resolution" of the
> legal issues in this case.  Indeed, the answer to whether the Covered Securities
> were required to be registered or were sold by means of false statements or
> material omissions are common questions of liability and clearly will "drive the
> resolution" of this litigation.  Therefore, the court readily finds the commonality
> requirement is satisfied.

*Id.* (citations omitted).  The same analysis applies here.

### c.    The Class Representatives' Claims Are Typical of Those of Other Class Members.

The third requirement is that the "claims … of the representative parties are typical of the

claims … of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other

members have the same or similar injury, whether the action is based on conduct which is not

unique to the named plaintiffs, and whether other class members have been injured by the same

course of conduct.'"  *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d

497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific

Corp.*, 922 F. Supp. 377, 399 (D. Or. 1996).  "Typicality refers to the nature of the claim or

defense of the class representative, and not to the specific facts from which it arose or the relief

sought."  *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).  Like

commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards,

representative claims are 'typical' if they are reasonably co-extensive with those of absent class

members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1020 (9th Cir. 1998); *see also Sullivan v. Kelly Servs.,* 268 F.R.D. 356, 363 (N.D. Cal. 2010).

The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury

PAGE 23 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. In a securities class action, the claims and nature of evidence "are generally considered sufficient to satisfy the typicality requirement." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

This Court previously rejected Non-Settling Defendants' argument that Plaintiffs' claims are not typical because they "did not purchase the identical securities as those purchased by Class Members. . . . According to Non-Settling Defendants, Plaintiffs ignore fundamental differences among the various Aequitas entities and the securities they sold, and that Plaintiffs' claims are not typical of Class Members' claims who have purchased different securities from different entities." Tonkon F&R, 2019 WL 1441634, at *13. This Court found typicality based on the fact that "[e]ach named Plaintiff has purchased at least one of the nine Aequitas securities defined in the class. The fact that Class Members may have purchased different Covered Aequitas Securities does not defeat typicality. In this action, Aequitas is alleged to have engaged in a course of conduct that is not unique to Plaintiffs." *Id*.

Similarly, Judge Hernandez certified a settlement class consisting of all persons who purchased securities issued by 44 different Aequitas entities. *Brown v. Price*, No. 3:17-cv-00869-HZ (D. Or.). "In approving the class settlement, Judge Hernandez determined that the claims of the six named plaintiffs were typical of the class claims without regard to whether each named plaintiff invested in each of the 44 Aequitas entities/funds." Tonkon F&R, 2019 WL 1441634, at *13.

Plaintiffs' claims here arise from the same events or course of conduct that give rise to claims of other Class Members, and the claims asserted are based on the same legal theories.

PAGE 24 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

Plaintiffs allege that all Class Members purchased Aequitas Covered Securities which were sold in violation of Oregon Securities Laws and that Integrity participated and aided in the unlawful sales of the Aequitas Covered Securities. And Plaintiffs are not subject to any unique defenses that could make them atypical of Class Members. Therefore, the Class Representatives' claims are typical.

        **d.**       **The Class Representatives and Their Counsel Adequately Represent the Interests of the Class.**

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the Class. The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). This Court previously found that the Class Representatives and Class Counsel are adequate. Tonkon F&R, 2019 WL 1441634, at *14.

        **2.**       **The Requirements of Rule 23(b)(3) Are Met.**

A class may be certified under Rule 23(b)(3) when: a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and b) the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied in this case. Indeed, this Court has already found that these requirements are satisfied. Tonkon F&R, 2019 WL 1441634, at *14–16.

        **a.**       **Common Questions of Fact or Law Predominate.**

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011*)* (citation omitted), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). "The focus is on the relationship between the common and individual

PAGE 25 **- PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

issues." *Id.* (internal quotation marks and citation omitted).  To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.").  "Predominance exists 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Moss*, 2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.").  Predominance does not require a plaintiff to show a complete absence of individual issues.  Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted).  Predominance is not a matter of "nose-counting," but "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

This Court previously found that common questions predominate Plaintiffs' claims and rejected Non-Settling Defendants' arguments to the contrary.  Tonkon F&R, 2019 WL 1441634, at *14–15.  "Courts readily find predominance in securities cases alleging a common scheme accomplished through misrepresentations and omissions similar to those alleged here.  *Id*. at *15. This Court relied upon the Ninth Circuit's decision in *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.

**PAGE 26 -** **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

1975).  "Although *Blackie* involved a 10b-5 case based on stocks traded in an open market, the court noted that the 'class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations.'"  Tonkon F&R, 2019 WL 1441634, at *15 (quoting *Blackie*, 524 F.2d at 904 n.19).  This Court also analogized Plaintiffs' claims to those at issue in *Facciola v. Greenberg Traurig, LLP*, 281 F.R.D. 363 (D. Ariz. 2012).  There, the district court certified a class over defendants' arguments that "class members invested at different times, for different periods, with different offerings, based on different knowledge."  *Id*. at 371.

Common issues predominate Plaintiffs' claims.  "If Plaintiffs are unable to prove that the securities were required to be registered, or that false statements of material fact were made, all class members' claims will fail, regardless of when the statements were made or in which particular PPM they occurred.  Additionally, if Plaintiffs are unable to establish [Integrity's] participation and material aid, all the class claims will fail.  Without favorable findings on these critical issues, none of the class claims can succeed."  *See* Tonkon F&R, 2019 WL 1441634, at *15; *see also Jensen v. Fiserv Trust Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (unpublished) (class certification upheld because the "center of gravity" of the fraudulent "Ponzi scheme itself would have to be proved or controverted over and over were the case not to proceed as a class action").

     b.  **The Class Action Mechanism is Superior to Any Other Method of Adjudication.**

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication.  "Here, the alternative method of resolving this matter would be to pursue approximately 1,500 individual lawsuits (or 1,500 individual settlements).  Thus, the court readily finds that the class action format is superior in this circumstance."  Tonkon F&R, 2019 WL 1441634, at *16.

PAGE 27 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

For these reasons, the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and the Court should grant provisional certification for purposes of effecting the proposed Settlement.

### C.    The Proposed Plan of Allocation is Fair and Reasonable.

Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards as the settlement as a whole – the plan of allocation must be fair, reasonable and adequate. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2007). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc*., No. CV 11-3531 GAF (JCx), 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).

The proposed Plan of Allocation is described in the Notice, and seeks to disburse the monies in the Net Settlement Account on a *pro rata* basis according to the proportionate losses that were suffered by each Class Member. Ex. A-1 at 6; DeJong Decl., Ex. B. The Class Representatives will receive no special treatment or different allocation than any other Class member under the Plan.

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Secs. Litig*., No. C–90–0931–VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *In re Merrill Lynch Tyco Research Sec. Litig*., 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."). Because it has a reasonable and rational basis (and treats all Class Members fairly and equally), the proposed Plan of Allocation should be granted preliminary approval. *See Schueneman v. Arena*

PAGE 28 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

*Pharms., Inc.*, No.: 3:10-CV-01959-CAB-(BLM), 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12, 2018).

### D.    The Proposed Claims Administrator Should be Approved.

The Class Representatives also respectfully request the appointment of the Garden City Group, LLC ("GCG"), an experienced and diligent administrator, as Claims Administrator.  As Claims Administrator, GCG will be responsible for, among other things, mailing the notices to the Class, reviewing claims from Class Members, claims administration, and compiling a distribution schedule to Class Members. GCG is the leading global administrator of securities class actions, having handled 43% of the Top 100 securities settlements of all times, more than any other administrator.  Declaration of Steve W. Berman in Support of the Class Representatives' Amended Motion for Preliminary Approval of Settlement [ECF No. 351], Ex. C, Declaration of Shandarese Garr ("Garr Decl."), ¶¶ 4–6.  GCG has handled some of the largest securities matters ever, including the $6.15 billion *WorldCom Securities Litigation Settlement*, the $3.2 billion *Tyco Securities Litigation Settlement*, two separate $1.1 billion settlements of the *Nortel Securities Litigations*, and the $2.4 billion *Bank of America Securities Litigation Settlement*.  *Id.*  During its 30-year history, GCG has also administered more than 3,200 cases, mailed hundreds of millions of notices, handled over 33 million phone calls, processed tens of millions of claims, designed and launched over 1,000 case websites, distributed over $63 billion in compensation, and issued approximately 30 million checks.  *Id.*  Additional detail regarding GCG is available in the Garr Declaration previously filed in connection with the Tonkon settlement at ECF No. 351.  Additionally, a comprehensive list of the cases GCG has administered can be found at www.choosegcg.com/case-list.

### E.    The Form and Method of Notice Should be Approved.

For any class certified under Rule 23(b)(3), the court must direct to class members the *best notice that is practicable under the circumstances*, including individual notice to all

PAGE 29 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).
Similarly, Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in
a *reasonable manner* to all class members who would be bound by the proposal." Fed. R. Civ.
P. 23(e)(1). "Although that notice must be 'reasonably certain to inform the absent members of
the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367
(E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). The form and
method of notice proposed by the Class Representatives in Section IV, *supra*, are appropriate
because the *form* of the Notice complies with the requirements of Rule 23(c)(2)(B)(i)-(vii); and
the *method* of notice complies with Rule 23(c)(2)(B) and due process requirements by providing
the "best notice that is practicable under the circumstances."

A class action settlement notice "is satisfactory if it generally describes the terms of the
settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come
forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)
(internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing
specific information to be included in the notice). Here, the content of the proposed Notice
complies with the specific requirements of Rule 23(c)(2)(B) because it clearly and concisely
states in plain, easily understood language: (i) the nature of the action (Notice at 4); (ii) the class
definition (Notice at 1); (iii) the claims, issues, and defenses (Notice at 4–5), (iv) that a Class
Member may enter an appearance through an attorney (Notice at 8); (v) Class Members' right to
exclude themselves from the class (Notice at 7–8); (vi) the time and manner for requesting
exclusion (Notice at 7–8); and (vii) the binding effect of a class judgment on all Class Members
who do not request exclusion (Notice at 7–8, 10). *See Churchill Vill.*, 361 F.3d at 575.

Likewise, Plaintiffs' proposed method for providing notice to Class Members constitutes
the best practicable notice under the circumstances. Plaintiffs propose to mail, by first class
mail, individual copies of the Notice of Proposed Settlement (the "Notice") to all potential Class

PAGE 30 **- PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

Members at the address of each such person as set forth in Aequitas records or who otherwise may be identified through further reasonable effort.  Garr Decl., ¶ 11.  In addition, a summary notice (the "Summary Notice") will be published in *The Wall Street Journal* and *The Oregonian* and disseminated over a national newswire service.  *Id.*, ¶ 12.  GCG will also maintain a settlement website, a toll-free number and email address dedicated to this Settlement.  *Id.*, ¶¶ 13-14.  Courts regularly approve similar notice plans in securities class actions.  *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 511 (6th Cir. 2008) (adequate notice provided by publication of notice in Investor's Business Daily and mailing notice to potential class members); *Rieckborn v. Velti PLC*, No. 13–cv–03889–WHO, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (similar); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (similar); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (mailed and published notices satisfy Rule 23(c)(3)).

The Court should approve both the proposed form and method of Notice because they both comply with the requirements of Rule 23 and due process, and represent the best practicable notice under the circumstances. *Silber*, 18 F.3d at 1454.

### F.    The Court Should Appoint Class Counsel.

Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider, *inter alia*, counsel's (i) work in identifying or investigating potential claims; (ii) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (iii) knowledge of the applicable law; and (iv) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Shlachter P.C. seek to be appointed Class Co-Lead Counsel.  Both Hagens Berman and Stoll Berne have extensive experience in handling complex class actions, including securities class actions.  Berman Decl.,

PAGE 31 -**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

Ex. A; DeJong Decl., Ex. D.  Moreover, both firms have vigorously investigated and prosecuted this case.  Thus, the Court should appoint Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Shlachter, P.C. as Class Co-Lead Counsel.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this action as a class action; and (ii) direct notice of the Settlement to all members of the Class.  As such, the Preliminary Approval Order sets a proposed schedule for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims and/or objecting to the Settlement or opting out of the Class.

Plaintiffs recommend the schedule set forth below.  Integrity agrees to the proposed schedule setting the Settlement Hearing.  The Parties also agree to the schedule for the other dates, as provided for in the proposed Preliminary Approval Order, which was negotiated among the Parties.

The Parties propose the following schedule for notice, final approval hearing and related dates:

| Date | Event |
|---|---|
| Not later than twenty-eight (28) days after entry of Preliminary Approval Order | Settlement website established and basic Settlement documents posted |
| Not later than twenty-eight (28) days after entry of Preliminary Approval Order | Mailing of Notice and Proof of Claim to be mailed by first class mail to all Class members who can be identified with reasonable effort (the "Notice Date") |
| Not later than thirty-five (35) days after entry of Preliminary Approval Order | Summary Notice to be published in *The Wall Street Journal* and *The Oregonian* |

PAGE 32 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

| Date | Event |
|------|-------|
| Not later than forty-two (42) days prior to the Fairness Hearing | Class Counsel to file with the Court Proof of Mailing and Publishing by Declaration of Claims Administrator |
| Not later than forty-two (42) days prior to the Fairness Hearing | Due date for Plaintiffs' Class Counsel's papers in support of final approval of the Settlement and papers in support of the request for an award of attorneys' fees and expenses |
| At least twenty-eight (28) days prior to the Fairness Hearing | Due date for postmark or delivery of requests for exclusion<br><br>Due date for delivery and filing of objections and intents to appear at the Fairness Hearing |
| No later than fourteen (14) days prior to the Fairness Hearing | Due date to file reply papers, if any, in support of final approval of the Settlement and request for an award of attorneys' fees and expenses |
| To be set by the Court approximately four months following entry of the Preliminary Approval Order | Fairness Hearing |

This schedule is the same schedule that the Court adopted for the Tonkon settlement. The Class Representatives respectfully request that the Court schedule the Settlement Hearing at least one hundred twenty (120) calendar days after entering the Preliminary Approval Order in order to allow sufficient time for mailing the Notice, publishing the Summary Notice, filing the motions in support of final approval of the Settlement, and any objections or requests for exclusion that may be made by Class Members.

## VII.    CONCLUSION

Counsel for the Parties reached this Settlement following extensive discussions and arm's-length negotiations, and after significant discovery and motions practice.  At this juncture, the Court need not answer the ultimate question:  whether the Settlement is fair, reasonable, and adequate.  The Court is being asked only to grant preliminary approval of the proposed

PAGE 33 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

Settlement so that notice of the terms of the Settlement may to be sent to the Class, and to schedule a Settlement hearing to consider: i) final approval of the Settlement; ii) Certification of the settlement Class; iii) approval of the Plan of Allocation; iv) Class Counsel's request for fees and expenses; v) entry of the Final Judgment and Order; and vi) other matters as the Court may deem appropriate.

DATED this 6th day of May, 2019.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Timothy S. DeJong

**Keith A. Ketterling**, OSB No. 913368
**Timothy S. DeJong**, OSB No. 940662
**Jennifer S. Wagner**, OSB No. 024470
**Nadia H. Dahab,** OSB No. 125630
**Lydia Anderson-Dana**, OSB No. 166167

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

Email:      kketterling@stollberne.com
            tdejong@stollberne.com
            jwagner@stollberne.com
            ndahab@stollberne.com
            landersondana@stollberne.com

-And-

**Steve W. Berman** (admitted *pro hac vice*)
**Karl P. Barth** (admitted *pro hac vice*)
**Jeniphr Breckenridge** (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Email: steve@hbsslaw.com; karlb@hbsslaw.com
jeniphr@hbsslaw.com
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

-And-

PAGE 34 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bob@bankslawoffice.com
Robert S. Banks, Jr.
Banks Law Office, P.C.
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
Telephone: (503) 222-7475

**Attorneys for Plaintiffs**

PAGE 35 - **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN SUPPORT (INTEGRITY BANK)**