**Robert C. Weaver, Jr.**, OSB #801350
E-Mail: rweaver@gsblaw.com
**Paul H. Trinchero, OSB #014397**
E-Mail: ptrinchero@gsblaw.com
**Eryn Karpinski Hoerster**, OSB #106126
E-Mail: ehoerster@gsblaw.com
**Daniel L. Keppler**, OSB #923537
E-Mail: dkeppler@gsblaw.com
Garvey Schubert Barer, P.C.
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939

**Peter A. Wald (admitted *pro hac vice*)**
E-Mail: peter.wald@lw.com
**Gavin M. Masuda (admitted *pro hac vice*)**
E-Mail: gavin.masuda@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

**Attorneys for Defendant Deloitte & Touche LLP**
*(Additional Counsel Listed on Signature Page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST, *et al.*,<br><br>     Plaintiffs,<br>  v.<br><br>DELOITTE & TOUCHE LLP; EISNERAMPER LLP; SIDLEY AUSTIN LLP; TONKON TORP LLP; TD AMERITRADE, INC.; INTEGRITY BANK & TRUST; and DUFF & PHELPS, LLC<br><br>     Defendants. | Case No. 3:16-cv-00580-AC<br><br>**DEFENDANT DELOITTE & TOUCHE LLP'S RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** |

I.    **INTRODUCTION**

Plaintiffs, none of whom were clients of CliftonLarsonAllen Wealth Advisors, LLC ("CLAWA"), seek to interject themselves into a dispute between Deloitte and CLAWA to obstruct this third-party discovery on grounds that it is irrelevant and unduly burdensome. But Plaintiffs lack standing to quash the subpoena because they cannot claim any right of privacy or privilege in the information sought. Even if Plaintiffs had standing, none of their relevance or burden objections have merit. The motion should be denied.

II.    **BACKGROUND**

Plaintiffs seek to represent a putative class of investors who purchased hundreds of millions of dollars in securities from Aequitas Commercial Finance and seven other Aequitas entities. CLAWA is a prominent national registered investment adviser ("RIA") firm, which recommended to no fewer than 33 of its clients—all members of the putative class—that they purchase over $16 million in various Aequitas securities. Deloitte's subpoena to CLAWA seeks production of documents that are essential to understanding CLAWA's role in selling Aequitas securities.[1]

There can be no doubt that CLAWA played a critical role in the sales of those securities to its clients because, as a fiduciary, CLAWA was obligated to (i) perform adequate due diligence on the Aequitas entities; (ii) understand its clients' financial situation, investment

---

[1] Plaintiffs also moved to quash Request Nos. 2 and 4 in Deloitte's subpoenas to third-party investment advisers Aaron D. Maurer and Antonio Ramirez. *See* Plaintiffs' Motion for Protective Order ("Mot."), Dkt. 545, at 7-9. Maurer and Ramirez have responded to Deloitte stating that they possess no responsive documents. As a result, Plaintiffs' Motion for Protective Order as to these Requests is moot. Deloitte, however, reserves the right to take the depositions of Maurer and Ramirez and subpoena them for trial. Plaintiffs acknowledge that the instant Motion does not address Deloitte's deposition subpoenas to Maurer and Ramirez, as "Plaintiffs intend to file a separate motion for protective order to limit or preclude those depositions." Mot. at 2 n.1.

Page 1 – DELOITTE & TOUCHE LLP'S RESPONSE TO
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

objectives, and risk tolerances; and (iii) make investment recommendations that were suitable in light of its clients' financial situation, investment objectives, and risk tolerances.  Indeed, testimony from this action and related actions uniformly confirms that RIAs like CLAWA—because of their unique roles as fiduciaries and the trust their clients placed in them—were *the most important factor* in their clients' decisions to purchase Aequitas securities.

Deloitte's subpoena therefore seeks CLAWA policies and procedures that will show what CLAWA believed its fiduciary duties required, vis-à-vis CLAWA's clients (Request No. 11). The subpoena seeks evidence of the diligence CLAWA performed because that diligence (if any) informed CLAWA's investment recommendations to its clients (Request No. 12).  Finally, the subpoena seeks evidence regarding what CLAWA knew about its clients, because that understanding determines whether CLAWA's recommendations were suitable to its clients' investment needs and objectives (Request Nos. 6, 10, 13).  These documents are critical to Deloitte's defense that it was CLAWA's close relationships with its clients and the related advice it gave—not any conduct by Deloitte—that caused dozens of its clients to invest in Aequitas securities, despite the clear cautions in Deloitte's reports and the financial statements it audited. CLAWA has asserted certain objections to the subpoena and Deloitte's motion to compel CLAWA to produce these documents is pending.  *See* Dkt. 506, 520.

## II.    ARGUMENT

### A.    Plaintiffs Lack Standing To Quash Deloitte's Subpoena To CLAWA

A party generally lacks standing to quash or modify a subpoena served upon a non-party, "except as to claims of privilege relating to the documents being sought."  *See MD Helicopters, Inc. v. Aerometals, Inc.*, 2019 WL 1227919, at *5 (E.D. Cal. Mar. 15, 2019).  Under this rule, parties "lack[] standing to object to the subpoena on the grounds of relevance or undue burden. A party cannot seek to quash a Rule 45 subpoena except to the extent that it has 'a personal right

or privilege in the information sought to be disclosed.'" *Id.* (citing *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014)); *accord  In re REMEC, Inc. Sec. Litig.*, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008).

Plaintiffs cannot claim a personal right of privacy or privilege in the documents Deloitte seeks for one simple reason:  Plaintiffs were not CLAWA clients and therefore did not provide CLAWA with any personal information or have any privilege with CLAWA.  *See* Mot. at 7-10 (failing to identify any right to privacy or privilege in documents in CLAWA's possession).  The Motion should be denied on this basis alone.  *See MD Helicopters, Inc.*, 2019 WL 1227919, at *5 (finding that "plaintiff lacks standing to object to the [Rule 45] subpoena on grounds of relevance or undue burden").

Because Plaintiffs cannot identify any right to privacy or privilege in CLAWA's documents, they claim the subpoena causes them "undue burden and expense"—and that such showing is sufficient to confer standing to object.  Plaintiffs are wrong as a matter of law and fact.  On the law, Plaintiffs omit the holding of *In re REMEC*, where the court observed that "[a]s a general proposition, a party lacks standing under [Rule 45] to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *In re REMEC, Inc. Sec. Litig.*, 2008 WL 2282647, at *1 (denying motion to quash third-party subpoena for lack of standing as to all asserted grounds, except as to work product); *see also MD Helicopters, Inc.,* 2019 WL 1227919, at *5.

But even assuming Plaintiffs could establish standing based on "undue burden or expense," Plaintiffs admit they must show how their "*own interests* are jeopardized by discovery sought from a third party."  *See* Mot. at 4 (citing *In re REMEC*); *see also* Local Rule 26-4 (requiring party moving for protective order to demonstrate that "specific prejudice or harm will

result if no order is granted"). Plaintiffs cannot make this factual showing because, while the subpoena asks CLAWA to incur moderate expense associated with producing the requested documents, it imposes no burden on Plaintiffs. Indeed, Plaintiffs' principal objections to the subpoena sound in relevance—*i.e.*, Plaintiffs' (mistaken) belief that the requested documents are unrelated to the claims or defenses at issue in this action. *See* Mot. at 2 (arguing that Deloitte's requests "seek a kitchen pantry of irrelevant material"). But "relevance" does not confer upon Plaintiffs the standing necessary to object. *See MD Helicopters, Inc.*, 2019 WL 1227919, at *5.

## B. The Requested Documents Are Relevant To Plaintiffs' Claims And Deloitte's Defenses

Deloitte's subpoena seeks documents that are essential to understanding the role that CLAWA played in the sales of more than $16 million worth of Aequitas securities to putative class members. Although CLAWA has stonewalled Deloitte's efforts to obtain these documents, other discovery in this action reveals just how important RIAs like CLAWA were to their clients' purchase decisions. Among many other examples, Plaintiff Greg Warrick testified to a longstanding relationship with his RIA (Concert Wealth Management), which recommended that he purchase Aequitas securities. *See* Declaration of Gavin M. Masuda in Support of Response ("Masuda Decl.") Ex. 1 (Warrick Tr.) at 26:10-20. Mr. Warrick further testified that he learned of Aequitas through his RIA, received all of his information about Aequitas through in-person meetings with his RIA, understood that his RIA performed diligence on Aequitas before recommending that he purchase Aequitas securities, and relied on his RIA's recommendation when deciding to purchase. *Id.* at 44:17-46:17, 63:19-64:9. There can be no dispute that Mr. Warrick's RIA was the most important factor in his decision to purchase Aequitas securities.

The role played by the RIAs in the securities sales at issue is relevant to the claims and/or defenses in this action for numerous reasons. First, Plaintiffs claim that Aequitas sold securities

"by means of" materially false or misleading statements, in violation of ORS 59.115(1)(b).

Plaintiffs claim these statements were contained in Aequitas's various private placement

memoranda ("PPMs")—and that the misleading statements were materially similar over time.

*See* Dkt. 522 (Pls.' Mot. for Class Cert.) at 27-28.  But as discovery has revealed, Aequitas's

PPMs had very little to do with its securities sales.  Instead, the Aequitas securities were sold "by

means of" a wide-ranging mix of marketing materials (ranging from one-page sheets containing

no financial information, to one-page "tear sheets" showing unaudited financial information, to

PowerPoint presentations touting Aequitas's supposed history of repaying its investors).  *See*,

*e.g.*, Masuda Decl. Ex. 2 (Taylan Tr.) at 83:1-84:25 (testifying to materials that Aequitas

provided for marketing securities to investors).  They also were sold "by means of" the oral

representations that RIAs made to their clients—including representations that the securities

were "safe" and "secure," in direct contravention of PPM disclosures describing the Aequitas

securities as involving a "HIGH DEGREE OF RISK."  *See* Masuda Decl. Ex. 3 at 3.  All this

information—written and orally conveyed by the RIAs—must be considered in determining

whether Aequitas's statements to investors were materially false or misleading.  *See* ORS

59.115(1)(b) (providing that only persons not knowing of the untruth or omission may recover

damages).

Second, Plaintiffs claim that Deloitte "materially aided in" the sales at issue because it

"lent clout" to the Aequitas entities and the securities they sold.  *See* Dkt. 257 (2d Am. Compl.)

¶ 16.  But discovery has disproven this aspect of Plaintiffs' claim because it has revealed instead

that Aequitas actively concealed Deloitte's audit opinions and audited financial statements from

investors—precisely because Deloitte's audit opinions and the audited financial statements

emphasized and revealed Aequitas's precarious financial condition.  *See* Masuda Decl. Ex. 2

(Taylan Tr.) 74:2-75:14.  Instead, Aequitas provided RIAs with a litany of other marketing materials and *excerpted* financial statements (excluding Deloitte's audit opinion and the notes to the financial statements), which the RIAs in turn conveyed to their clients.  *See*, *e.g.*, Masuda Decl. Ex. 4.  Meanwhile, Aequitas misleadingly "touted" Deloitte to the RIAs and investors by falsely characterizing the status of Deloitte's audits and the content of its opinions—characterizations that RIAs then conveyed to their clients.  *See* Masuda Decl. Ex. 2 (Taylan Tr.) 153:23-155:25.  Discovery regarding the role played by the RIAs—including CLAWA—in the securities sales at issue here is critical to determining whether Deloitte "materially aided" in the challenged sales.  *See Prince v. Brydon*, 307 Or. 146, 149 (1989) (finding that "it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are 'material' to the sale").  The information Deloitte seeks to obtain from CLAWA may reveal what CLAWA knew about the Aequitas securities, what it knew about Deloitte's work in auditing Aequitas's financial statements, what it knew about Deloitte's audit opinions—and what information CLAWA chose to share with its clients about the Aequitas securities and about Deloitte.

Notably, Plaintiffs do not object to the majority of Deloitte's requests to CLAWA.  Their objections are only as to three categories, which seek (i) policies and procedures that CLAWA created in order to comply with the Investment Advisers Act of 1940 ("Advisers Act") (Request No. 11); (ii) documents regarding the due diligence CLAWA was required to conduct on its clients' Aequitas investments (Request No. 12); and (iii) documents related to the suitability analyses and other services that CLAWA performed in connection with its Aequitas recommendations to clients (Request Nos. 6 ("suitability analysis" documents), 10 (client

disclosures, waivers, and acknowledgements), and 13 (client investment files)).  None of these objections have merit.

First, regarding CLAWA's Advisers Act policies,[2] Plaintiffs' only objection is that these policies "have nothing whatsoever to do with Plaintiffs' claims or Deloitte's defenses."  Mot. at 10.  Not so.  These policies are critical to understanding how CLAWA interpreted its obligations under the Advisers Act—which, in turn, informed everything that CLAWA did (or did not do) with respect to its clients and their Aequitas investments.  For example, Deloitte expects that CLAWA's policies dictated the extent to which CLAWA was required to perform due diligence on Aequitas investments before recommending them to their clients—including whether CLAWA was required to obtain and review Aequitas's audited financial statements—as well as what information CLAWA was required to provide to its clients.  These documents are relevant and must be produced.

Second, regarding CLAWA's due diligence documents, CLAWA was duty-bound to perform due diligence sufficient to inform CLAWA's client recommendations regarding Aequitas.  *Supra*, pp. 1-2 (discussing role of RIA due diligence).  Plaintiffs argue CLAWA's due diligence is irrelevant because this Court has ruled that *Plaintiffs* had no duty of inquiry.  *See* Mot. at 9.  But Deloitte's subpoena is not addressed to the Plaintiffs or the diligence they performed; it is addressed to CLAWA, and seeks evidence regarding what CLAWA knew, and

---

[2] The Advisers Act sets forth, in very broad terms, an RIA's fiduciary obligations to its clients. *See SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 191-92 (1963).  It does not, however, specify the means by which an RIA is to comply with these broad obligations—leaving RIAs to implement specific policies and procedures within the broad mandates the Advisers Act provides.  *See id.*  Such policies and procedures might include, among other things, policies governing the extent of due diligence that the RIA must perform, its full and fair disclosure of all facts material to the client's engagement, and its provision of suitable investment advice in light of the client's financial situation and investment objectives.

what it conveyed (or failed to convey) to its clients. The information CLAWA conveyed to its clients is relevant to the question of whether the securities at issue were sold "by means of" materially false or misleading statements (as Plaintiffs allege), and whether Plaintiffs knew the "truth" regarding the allegedly false and misleading statements on which they rely for their claims. *See supra*, pp. 4-5 (describing Plaintiffs' primary liability claims). And the information CLAWA did not convey—such as Deloitte's actual audit opinion and Aequitas's audited financial statements, *supra*, pp. 5-6—is relevant to whether Deloitte's audit opinion and the audited financial statements "materially aided" the securities sales to CLAWA's clients. If, for example, CLAWA misrepresented or concealed the content of the audit opinions or the audited financial statements, the jury could reasonably infer that neither Aequitas nor CLAWA believed that those documents aided sales. CLAWA's diligence documents also must be produced.

Finally, regarding CLAWA's suitability analysis and related documents,[3] CLAWA was duty-bound to understand its clients' financial condition and risk tolerances, and to recommend securities that were "suitable" in light of this information. *Supra*, pp. 1-2. In order to obtain this understanding, RIAs typically will conduct interviews of their clients and request *limited* financial documentation in order to obtain a general understanding of their clients' financial condition and ability to bear risk. *See* Masuda Decl. Ex. 2 (Taylan Tr.) 26:24-27:4 (requiring clients to complete financial questionnaires). RIAs then use that understanding to match their clients' profiles and objectives to "suitable" investments. *Id.* The suitability analyses CLAWA performed, if any, go to the heart of CLAWA's recommendations to its clients—who claim

---

[3] Deloitte is willing to limit Request Nos. 6 and 13 to documents related to the Aequitas transactions by CLAWA's clients, as it did in conferring with Plaintiffs over Deloitte's subpoena to Messrs. Maurer and Ramirez. Mot. at 8. Regardless, CLAWA has objected to producing documents responsive to Request Nos. 6 and 13, even if limited to Aequitas transactions. *See* Dkt. 520-1, at 43-54.

(through the putative class) they were misled into believing that Aequitas securities were "safe" and "secure." Dkt. 257 ¶¶ 2. These claims simply cannot be squared with Aequitas's PPMs, *all of which* described the subject securities as "INVOLV[ING] A HIGH DEGREE OF RISK" and intended only for investors who could afford to lose their entire investment. *See* Masuda Decl. Ex. 3, at 3.

Against this, Plaintiffs misleadingly argue that the Court's order denying Deloitte discovery of documents ("Order"), Dkt. 421, related to Plaintiffs' financial condition ("financial condition documents")—defined to include documents like tax returns and brokerage statements—precludes discovery of CLAWA's suitability analyses. *See* Mot. at 7.[4] Plaintiffs' argument is misplaced, because the purpose of Deloitte's request to CLAWA is different from the purpose of its financial condition documents request—which was to discover whether Plaintiffs qualified as "accredited investors" under applicable federal law.

Here, as discussed above, these documents are relevant to CLAWA's understanding of its clients and the appropriateness of its investment recommendations—which are simply different issues. *Supra*, pp. 1-2. Moreover, the documents Deloitte seeks from CLAWA are different in nature from the financial condition documents that Deloitte sought from Plaintiffs. As noted above, suitability analyses do not typically involve a full review of an investor's financial condition or its federal tax returns; instead, an RIA typically will ask questions to understand their clients' risk tolerance and financial objectives. These documents could contain information about investors' net worth. But if they did include such information, such inclusion would only

---

[4] Plaintiffs say that they intend to seek judgment on the pleadings and/or partial summary judgment as to certain of Deloitte's "comparative-fault like" defenses and equitable defenses. Mot. at 6. This is a red herring. Deloitte does not argue that the requested documents are relevant to these affirmative defenses; rather Request Nos. 6, 10, and 13 are relevant to Plaintiffs' secondary-liability claims and Deloitte's ability to rebut those claims.

Page 9 – DELOITTE & TOUCHE LLP'S RESPONSE TO
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

confirm the information's relevance to CLAWA's investment recommendation. Deloitte expects that such analyses would be documented in CLAWA forms or files that would not be burdensome to produce. These requests are not, as Plaintiffs suggest, a backdoor attempt to obtain documents related to Plaintiffs' status as accredited investors.[5]

## III.    CONCLUSION

For the foregoing reasons, Deloitte respectfully requests that the Court deny Plaintiffs' Motion for Protective Order.

---

[5] Even if the Court's Order precluded documents related to the financial condition and investment experience of CLAWA's clients, this would not warrant quashing the entirety of Request Nos. 6, 10 or 13. Request No. 10 does not seek any information that would reveal a client's "financial condition," and Plaintiffs fail to explain how this Court's Order precludes the discovery sought by Request No. 10. In addition, Plaintiffs ignore that Request Nos. 6 and 13 seek other relevant information that does not implicate "financial condition" issues -- such as CLAWA's investment strategy and client investment restrictions. Because Plaintiffs' Motion cannot assert that these documents are precluded by the Court's Order, the Court must—at minimum—allow Request Nos. 6, 10, and 13 to the extent that they do not concern a CLAWA client's financial condition.

Page 10 – DELOITTE & TOUCHE LLP'S RESPONSE TO
PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Dated:  May 22, 2019

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Peter A. Wald
   **Peter A. Wald (admitted *pro hac vice*)**
   **Gavin M. Masuda (admitted *pro hac vice*)**
   **Nicole C. Valco (admitted *pro hac vice*)**
   **Marcy C. Priedeman (admitted *pro hac vice*)**
   505 Montgomery Street, Suite 2000
   San Francisco, CA 94111-6538
   Telephone: (415) 391-0600
   Email: peter.wald@lw.com
   gavin.masuda@lw.com
   nicole.valco@lw.com
   marcy.priedeman@lw.com

   And–

   **Nicholas J. Siciliano (admitted *pro hac vice*)**
   LATHAM & WATKINS LLP
   330 North Wabash Avenue, Suite 2800
   Chicago, IL 60611
   Telephone: (312) 876-7700
   Email: nicholas.siciliano@lw.com

   -And-

   **Robert C. Weaver, Jr.**, OSB No. 801350
   **Gary I. Grenley**, OSB No. 751380
   **Paul H. Trinchero**, OSB No. 014397
   **Eryn Karpinski Hoerster**, OSB No. 106126
   **Daniel L. Keppler**, OSB No. 923537
   GARVEY SCHUBERT BARER, P.C.
   121 SW Morrison Street, 11th Floor
   Portland, OR 97204
   Telephone: (503) 228-3939
   Email: rweaver@gsblaw.com
   ggrenley@gsblaw.com
   ptrinchero@gsblaw.com
   ehoerster@gsblaw.com
   dkeppler@gsblaw.com

   ***Attorneys for Defendant Deloitte & Touche LLP***