**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Jeniphr Breckenridge** (admitted *pro hac vice*)
Email: jeniphr@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

**Attorneys For Plaintiffs**
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and | Case No. 3:16-cv-00580-AC <br><br> **PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT** |

GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated,

        Plaintiffs,

   v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; and DUFF & PHELPS, LLC,

        Defendants.

# TABLE OF CONTENTS

CERTIFICATION OF COMPLIANCE WITH LR 7-1 ............................................... 1

MOTION .................................................................................................................... 1

MEMORANDUM IN SUPPORT ............................................................................... 3

I.      INTRODUCTION ........................................................................................... 3

II.      OUTLINE OF UNIFIED SETTLEMENT PROCEEDING AND RELIEF
REQUESTED ................................................................................................... 5

III.      BACKGROUND ............................................................................................. 7

     A.      Aequitas Investors' Claims Against Settling Defendants ................. 7

     B.      Procedural Background ...................................................................... 7

     C.      The Mediation/Settlement Process ................................................. 10

     D.      The Parties Intend to Coordinate All Pending Settlements ................. 11

IV.      SUMMARY OF KEY GLOBAL SETTLEMENT TERMS ........................... 11

     A.      The Class Definition ....................................................................... 11

     B.      The Settlement Consideration .......................................................... 12

     C.      Release of Claims ........................................................................... 12

     D.      Contribution Claims Bar ................................................................. 12

     E.      Withdrawal of Objections to Prior Settlements ................................. 13

V.      NOTICE OF THE SETTLEMENT ............................................................... 13

VI.      ARGUMENT .................................................................................................. 14

     A.      The Proposed Global Settlement Warrants Preliminary Approval ....... 14

         1.      The Global Settlement is Entitled to the Presumption of Fairness as
Being the Result of Non-Collusive, Informed, Arm's-Length
Negotiations. ...................................................................... 16

         2.      The Global Settlement Does Not Suffer from Any Obvious
Deficiencies. ...................................................................... 18

3. The Global Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class. ............... 20

4. The Global Settlement Falls Within the Range of Possible Approval. ....................................................................................... 20

B. The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23. ..................................... 21

1. The Rule 23(a) Requirements Are Met. .................................................. 22

2. The Requirements of Rule 23(b)(3) Are Met. ........................................... 26

C. The Proposed Plan of Allocation is Fair and Reasonable. .................................... 29

D. The Proposed Claims Administrator Should be Approved. ................................. 30

E. The Form and Method of Notice Should be Approved. ...................................... 30

F. The Court Should Appoint Class Counsel. ........................................................ 32

VII. CONCLUSION ................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................. 27

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) .................................................................................................. 27

*Bell v. Consumer Cellular, Inc.*,
    2017 WL 2672073 (D. Or. June 21, 2017) ........................................................ 17, 18

*Bickley v. Schneider Nat'l Inc.*,
    2016 WL 4157355 (N.D. Cal. Apr. 25, 2016) ......................................................... 15

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................. 22, 28

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .................................................................................... 31

*Collins v. Cargill Meat Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ............................................................................. 15

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................................................... 27

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ............................................................................ 25

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................................................. 16

*Couser v. Comenity Bank*,
    125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ......................................................................... 23, 24, 26

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .......................................................... 1

*Facciola v. Greenberg Traurig, LLP*,
    281 F.R.D. 363 (D. Ariz. 2012) ............................................................................... 28

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) .................................................................................... 32

*Fraley v. Facebook, Inc.*,
   2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ......................................................................... 15

*Fraser v. ASUS Computer Int'l*,
   2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ......................................................................... 19

*Freedman v. Louisiana-Pacific Corp.*,
   922 F. Supp. 377 (D. Or. 1996) ................................................................................................ 24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 25, 26, 27

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................................................. 24, 25

*Haralson v. U.S. Aviation Servs. Corp.*,
   2019 WL 2413545 (N.D. Cal. June 7, 2019) ........................................................................... 16

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................... 15, 16

*Hurst v. First Student, Inc.*,
   2015 WL 6437196 (D. Or. Oct. 22, 2015) ............................................................................... 24

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ............................................................................................. 25

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................. 17, 18

*In re Computer Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) ............................................................................................ 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................. 29

*In re Hyundai and Kia Fuel Economy Litig.*,
   --F.3d--, 2019 WL 2376831 (9th Cir. June 6, 2019) ........................................................ 22, 28

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................................... 32

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................................. 17, 20

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................. 30

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ 29

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ........................................................ 29

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................ 16

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................................... 32

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................ 14

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................... 15, 20

*In re Zynga Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...................................................... 20

*Jensen v. Fiserv Trust Co.*,
   256 F. App'x 924 (9th Cir. 2007) ....................................................................... 28

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ....................................................................... 23, 24

*Lane v. Brown*,
   166 F. Supp. 3d 1180 (D. Or. 2016) .................................................................... 14

*Medearis v. Or. Teamster Emplrs. Tr.*,
   2009 WL 1788183 (D. Or. June 19, 2009) ........................................................... 16

*Moss v. U.S. Secret Serv.*,
   2015 WL 5705126 (D. Or. Sept. 28, 2015) ............................................... 22, 23, 27

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 16

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................................................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................... 14, 20

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................ 31

*Pecover v. Elec. Arts Inc.*,
  2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ...................................................... 23

*Pokorny v. Quixtar Inc.*,
  2011 WL 2912864 (N.D. Cal. July 20, 2011) ...................................................... 19

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................................................ 32

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 16

*Schueneman v. Arena Pharms., Inc.*,
  2018 WL 1757512 (S.D. Cal. Apr. 12, 2018) ..................................................... 30

*Scott v. ZST Digital Networks, Inc.*,
  2013 WL 12126744 (C.D. Cal. Aug. 5, 2013) .................................................... 29

*Shin v. Plantronics, Inc.*,
  2019 WL 2515827 (N.D. Cal. June 17, 2019) .................................................... 16

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ................................................................... 31, 32

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) .................................................................... 25

*Smith v. Am. Greetings Corp.*,
  2015 WL 4498571 (N.D. Cal. July 23, 2015) .............................................. 15, 16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................... 14

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011*)* ...................................................................... 27

*Sullivan v. Kelly Servs.*,
  268 F.R.D. 356 (N.D. Cal. 2010) .................................................................... 25

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................ 27

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................................. 27

*Viceral v. Mistras Grp., Inc.*,
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................................................... 20

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
    319 F.R.D. 307 (D. Or. 2017) ................................................................ 22, 23

*Villanueva v. Morpho Detection, Inc.*,
    2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ............................................ 18

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................. 23

*Walsh v. CorePower Yoga LLC*,
    2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ............................................. 18

*Walter v. Hughes Commc'ns, Inc.*,
    2011 WL 2650711 (N.D. Cal. July 6, 2011) .............................................. 19

*West v. Circle K Stores, Inc.*,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ............................................ 19

*Zepeda v. PayPal, Inc.*,
    2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ............................................. 15

## **Statutes**

28 U.S.C. § 636 ....................................................................................... 5

ORS § 59.115 ................................................................................... 7, 19

## **Rules**

Fed. R. Civ. P. 23 ............................................................................ *passim*

Fed. R. Civ. P. 30 .................................................................................. 9

Fed. R. Civ. P. 72 .................................................................................. 5

## **Other Authorities**

4 Newberg on Class Actions (5th ed. 2011) ...................................... 15, 18, 19

Manual for Complex Litigation (Fourth) (2004) ....................................... 14

**CERTIFICATION OF COMPLIANCE WITH LR 7-1**

Counsel for all parties conferred and this motion is not opposed.

**MOTION**

Pursuant to Fed R. Civ. P. 23(e), Plaintiffs Lawrence P. Ciuffitelli (on behalf of himself and as Trustee of the Ciuffitelli Revocable Trust); Greg and Angela Julien (as co-Trustees of the Gregory and Angela Julien Revocable Trust U/A 7/2/2012); R.F. MacDonald Co.; James and Susan MacDonald (as co-Trustees of the MacDonald Family Trust U/A 12/05/2000); William Ramstein; Greg Warrick (on behalf of himself and as co-Trustee of the Warrick Family Trust); and Susan Warrick (as co-Trustee of the Warrick Family Trust) (collectively, the "Class Representatives" or "Plaintiffs"),[1] through their legal counsel, move the Court for the following relief:

1.        Preliminary approval of a proposed class action settlement (the "Global Settlement") with Defendants Deloitte & Touche LLP ("Deloitte"); EisnerAmper LLP ("EisnerAmper"); Sidley Austin LLP ("Sidley"); TD Ameritrade, Inc. ("Ameritrade"); and Duff & Phelps, LLC ("Duff") (collectively, the "Global Settling Defendants") (Plaintiffs and Global Settling Defendants, collectively "the Global Settling Parties") on the terms set forth in the Stipulation and Agreement of Settlement dated July 8, 2019 (the "Stipulation");[2]

---

[1] Plaintiff Andrew Nowak has filed a motion [ECF No. 463] for leave to voluntarily dismiss his claims without prejudice, and to become an ordinary member of any class that is certified, rather than to serve as a class representative. That motion is fully briefed and pending and is no longer opposed.

[2] A true and correct copy of the Stipulation and Agreement of Compromise, Settlement and Release, dated July 8, 2019 (the "Stipulation"), is attached as Ex. A to the DeJong Decl. Not filed with the Stipulation is a confidential addendum addressing the threshold to trigger Defendants' options to terminate the Settlement if Class members with more than a certain aggregate amount of losses validly request exclusion from the Settlement Class. This confidential addendum is addressed in paragraph 36 of the Stipulation. *See* Fed. R. Civ. P 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (noting that a stipulation of

PAGE 1 -    **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

2.      Provisionally certifying a settlement class (the "Global Settlement Class")

consisting of:

>   All persons who purchased "Covered Aequitas Securities" on or after June 9,
>   2010, and had an account balance as of March 31, 2016. The Covered Aequitas
>   Securities are those issued by the following entities: (1) Aequitas Commercial
>   Finance, LLC ("ACF"); (2) Aequitas Income Opportunity Fund, LLC ("AIOF");
>   (3) Aequitas Income Opportunity Fund II, LLC ("AIOF-II"); (4) Aequitas Capital
>   Opportunities Fund, LP ("ACOF"); (5) Aequitas Income Protection Fund, LLC
>   ("AIPF"); (6) Aequitas Enhanced Income Fund, LLC ("AEIF"); (7) Aequitas
>   ETC Founders Fund, LLC ("AETC"); and (8) MotoLease Financial, LLC
>   ("AMLF").
>
>   Excluded are: (a) Defendants; (b) past and present officers and directors of the
>   Aequitas affiliated companies, including Robert Jesenik, Brian Oliver, Craig
>   Froude, Scott Gillis, Andrew MacRitchie, Olaf Janke, Brian Rice, William Ruh,
>   Steve Hedberg, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith
>   Brown, Tom Goila, Patricia Brown, Bill Malloy, and
>   Thomas Szabo, and their families and affiliates; (c) the past and present members
>   of the Aequitas Advisory Board, including William McCormick, L. Martin
>   Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith
>   Barnes, Bob Zukis, and their families and affiliates; (d) registered investment
>   advisors and investment advisor representatives; (e) any investor who received
>   finder's fees or other consideration from Aequitas in connection with referring
>   investors to Aequitas; and (f) the Individual Plaintiffs in the Individual Actions.

3.      Preliminarily approving the Plan of Allocation;[3]

4.      Approving the retention of the proposed Claims Administrator, Epiq Class Action

& Claim Solutions, Inc. ("Epiq");

5.      Approving the form and method for providing notice of the Global Settlement to

the Global Settlement Class;

6.      Preliminarily approving counsel for the Class Representatives as Global

Settlement Class Counsel; and

7.      Scheduling a hearing at which the Court will consider (a) final approval of the

Global Settlement; (b) certification of the Global Settlement Class; (c) approval of the Plan of

---

settlement disclosing the terms of an agreement and describing a confidential agreement satisfied
Fed. R. Civ. P 23(e)(3)'s requirements).

[3] A true and correct copy of the Plan of Allocation is attached as Ex. B to the DeJong Decl.

**PAGE 2 -    PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

Allocation; (d) Class Counsel's request for fees and expenses; (e) entry of a Judgment as to the Global Settling Defendants; and (f) rule upon such other matters as the Court may deem appropriate.

This motion is supported by the Declarations of Timothy S. DeJong ("DeJong Decl."), Steve W. Berman ("Berman Decl."), Hon. Daniel Weinstein (Ret.) ("Weinstein Decl."), Cameron R. Azari ("Azari Decl.") and Larissa Gotguelf ("Gotguelf Decl.") filed herewith.

## MEMORANDUM IN SUPPORT

## I.   INTRODUCTION

Plaintiffs have now reached settlements with all Defendants in this action.  Plaintiffs previously obtained preliminary approval of a $12.9 million settlement with Tonkon (the "Tonkon Settlement").  Plaintiffs' motion for preliminary approval of a $1.7 million settlement with Integrity (the "Integrity Settlement") is pending.  After a lengthy mediation, Plaintiffs and all remaining Defendants (the "Global Settling Defendants") reached the present Global Settlement for $220 million.  **This is believed to be the largest settlement in a securities case in Oregon history**.

If all settlements are approved, Plaintiffs will have recovered **$234.6 million** total settlement proceeds on behalf of the Class.[4]  In addition, the Receiver estimates that the Class will receive total distributions of $64-77 million from the liquidated assets of the Receivership Estate.  Gotguelf Decl., ¶ 3.  When the litigation settlements and estimated Receivership distributions are combined, the gross recovery by the Class will be **$298.6 to $311.6 million**. Based upon investment records provided by the Receiver, Class Counsel estimates that the total aggregate "out-of-pocket" losses (principal investments less payments of principal and interest) of the Class are **$263.8 million**.  By any standard, this recovery by the Class—which exceeds, on

---

[4] The gross recovery will be reduced by attorney's fees and expenses awarded by the Court.

PAGE 3 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

a gross basis, the total out-of-pocket loss—is extraordinary.  Considering the Receiver's conclusion following a forensic investigation that Aequitas operated as a Ponzi scheme, the recovery is remarkable.

Preliminary approval of the Global Settlement is not opposed.  Furthermore, in light of the pending Settlements of all claims as to all Defendants, the parties seek to have all of the pending Settlements resolved in a unified proceeding.  Upon preliminary approval of the present Global Settlement, the objections asserted by some Defendants to the Tonkon Settlement and Integrity Settlement will be withdrawn.  *See* Stipulation, ¶ 43.  Accordingly, Plaintiffs request that preliminary approval be given to both the $220 million Global Settlement and the Integrity Settlement without delay, and that the Order preliminarily approving the Tonkon Settlement also be entered. Plaintiffs further propose to schedule a single final approval hearing for all pending Settlements and to combine notice of all three Settlements for purposes of clarity, economy and efficiency.  *See* Section III(D), *infra*.  The final approval hearing should be scheduled for approximately four months after the preliminary approval order is entered, to allow sufficient time for providing notice to Class Members, and allowing them to object or exclude themselves from the Class, as well as sufficient time for the Class Representatives to review any objections and to file a motion for final approval.

Plaintiffs and proposed Class Counsel recommend this Global Settlement, which meets the standard for preliminary approval.  *See* Section VI(A), *infra*.  Further, because all the requirements for class certification are met, the Court should certify the Settlement Class.  *See* Section VI(B), infra.  The Court should also grant preliminary approval of the proposed Plan of Allocation, which is identical to the plan of allocation preliminarily approved for the Tonkon Settlement.  Plaintiffs propose to disburse the settlement funds to Settlement Class members based on their proportionate losses.  *See* Section VI(C), *infra*.

**PAGE 4 -    PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

The Court should also approve the proposed Notice and method of notice to Class Members because the Notice complies with the requirements of Rule 23(c)(2)(B), and the proposed method of notice satisfies the requirements of Rule 23 and due process.  *See* Section VI(E), *infra*.  Epiq should be approved as Claims Administrator to administer the method of notice and administration of the settlement proceeds.[5]  *See* Section VI(D), *infra*.  Additionally, the Court should appoint counsel for the Class Representatives as Class Counsel.  *See* Section VI(F), *infra*.

## II.     OUTLINE OF UNIFIED SETTLEMENT PROCEEDING AND RELIEF REQUESTED

Plaintiffs propose the following unified proceeding for final approval of all three pending Settlements:

1.     Select a date for the final approval hearing (the "Fairness Hearing") (approximately four months following preliminary approval of the Global Settlement);

2.     Enter the Order Preliminarily Approving Global Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to this motion;[6]

3.     Enter the Order approving Tonkon Settlement, which is attached as Exhibit B to this motion;

---

[5] The Garden City Group, LLC, which was approved as Claims Administrator for the Tonkon Settlement, was recently acquired by Epiq.  Epiq has also been retained by the Receiver to process claims of investors in the Receivership proceeding.  Using Epiq to process payments to investors in both proceedings will be efficient and economical.

[6] The Global Settling Parties and the parties to the Integrity Settlement have agreed that, if the Global Settlement and the Integrity Settlement as presented are approved without modification, the Court may consider the Global Preliminary Approval Order immediately and without waiting for the objection period of FRCP 72(b)(2) and 28 U.S.C. § 636(b)(1) to expire, because there will be no objections.

PAGE 5 -    **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

4.      Enter the Order approving Integrity Settlement, which is attached as Exhibit C to this motion;

5.      Establish settlement website and post basic settlement documents (not later than 28 days following preliminary approval);

6.      Mail the Notice, which is annexed as Exhibit A-1 to the Global Preliminary Approval Order, by first class mail to all Class members who can be identified with reasonable effort (not later than 28 days following preliminary approval)[7];

7.      Publish the Summary Notice, which is annexed as Exhibit A-2 to the Global Preliminary Approval Order, in *The Wall Street Journal* and *The Oregonian* (not later than 35 days following preliminary approval);

8.      Class Counsel to file Proof of Mailing and Publishing by declaration of Claims Administrator (not later than 42 days following preliminary approval);

9.      Class Counsel to file papers in support of final approval of all three Settlements and in support of a request for an award of attorneys' fees and expenses (not later than 42 days following preliminary approval);

10.     Set deadline for delivery of requests for exclusion (at least 28 days prior to Fairness Hearing);

11.     Set deadline for delivery and filing of objections and intents to appear at Fairness Hearing (at least 28 days prior to Fairness Hearing); and

---

[7] As discussed in the Notice (at footnote 2), the composition of the Class is identical for the Tonkon, Integrity, and Global Settlements, except for a handful of "Partially Covered Class Members" who are excluded from one or more (but not all) of the three Settlements as the result of individual actions filed by these Partially Covered Class Members. The Partially Covered Class Members are: (1) plaintiffs in *Royal Fund LP, et al. v. Deloitte & Touche, et al.*, Case No. 19CV22914, Multnomah County Circuit Court, (2) Jeanette Lao, as trustee of the Jeanette Lao Rollover IRA, (3) Claire Lin, as trustee of Claire Yan Lin Roth IRA, and (4) Calmar Optcom, Inc. The Partially Covered Class Members will receive the Notice, and will have the opportunity to participate in any of the three Settlements from which they are not excluded (as further discussed in the footnotes to the Notice).

**PAGE 6 -    PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

12.     Class Counsel to file reply papers, if any, in support of final approval of the
settlements and request for an award of attorneys' fees and expenses at least 14
days prior to Fairness Hearing).

Following final approval of all three settlements, the Claims Administrator will send to each member of the Class a notice of calculation of the Class member's Net Loss, pursuant to the formula described in the Plan of Allocation. Class members will have an opportunity to identify any errors in the Net Loss calculations. Class Counsel will then seek a distribution order.

## III.    BACKGROUND

### A.    Aequitas Investors' Claims Against Settling Defendants

The Court is very familiar with the allegations of this lawsuit, having considered Plaintiffs' claims against Defendants numerous times. The Aequitas companies sold hundreds of millions of dollars of unregistered securities to members of the Class in violation of the Oregon Securities Law, specifically ORS § 59.115(1)(a) and (b). Plaintiffs do not allege any wrongdoing by any Defendant. Rather, Plaintiffs allege that Defendants are statutorily liable for Aequitas' unlawful securities sales and liable pursuant to ORS § 59.115(3) for participating and materially aiding in those sales. Defendants dispute that Aequitas committed the asserted primary violations or that Defendants participated or materially aided in Aequitas' sales. Defendants further assert a statutory affirmative defense that they did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based. Defendants further assert that the claims of some or all members of the Class are barred by the statute of limitations in ORS § 59.115(6).

### B.    Procedural Background

On April 4, 2016, Plaintiffs filed their initial Complaint in this Action [ECF No. 1], alleging violations of the Oregon Securities Law by Deloitte, Sidley, EisnerAmper, and Tonkon in connection with their roles in participating in and materially aiding the sales of Aequitas

PAGE 7 -    **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

Securities.  On May 19, 2016, Plaintiffs filed an Amended Complaint [ECF No. 57], adding by amendment claims against Ameritrade and Integrity.

The First Amended Complaint was challenged by motions to dismiss.  After extensive briefing and oral argument, on April 10, 2017, the Court issued Amended Findings and Recommendations [ECF No. 242] resolving Defendants' motions to dismiss and granting Plaintiffs an opportunity to amend their complaint to address certain issues identified by the Court.  Defendants objected to the Amended Findings and Recommendations.  Judge Mosman adopted the Amended Findings and Recommendations on July 5, 2017 [ECF No. 250].

On September 8, 2017, Plaintiffs filed their Second Amended Complaint [ECF No. 257], addressing the issues identified by the Court and adding claims against Duff.  Defendants challenged the Second Amended Complaint in a second round of motions to dismiss, which also resulted in extensive briefing and oral argument.  The Court issued its Findings and Recommendations on Defendants' Motions to Dismiss on August 1, 2018 [ECF No. 340].  Judge Mosman adopted the Findings and Recommendations on September 21, 2018 [ECF No. 368].

In the related state court Individual Actions, defendant Ameritrade sought to dismiss claims of all Aequitas investors who were not customers of Ameritrade.  *See* DeJong Decl., Ex. C [ECF No. 538] ("2/28/18 Judge Dailey Opinion").  In a February 28, 2018 written Opinion and Order Re: Motions to Dismiss, Judge Dailey held that claims of non-customers could go forward for the reasons articulated in her opinion.  *Id.* at 14.  Plaintiffs asserted in this case that the same reasoning set forth in Judge Dailey's opinion applies to Plaintiffs' claims against Ameritrade and others.

There has been extensive discovery in this case.  Plaintiffs' Counsel have reviewed in excess of 3 million pages of documents that were produced in discovery in this case.  DeJong Decl., ¶ 5.  The Court resolved a number of discovery disputes between the parties [e.g., ECF

PAGE 8 -    **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

Nos. 174, 213, 265, 421, 448].  Each of the proposed Class Representatives[8] sat for depositions

by Defendants.  DeJong Decl., ¶ 6.

The court-appointed Receiver for Aequitas filed a "Report Regarding the Investigation of

the Receivership Entity's Business Conduct" on November 21, 2018.  *Sec. & Exch. Comm'n v.*

*Aequitas Mgmt., LLC*, No. 3:16-cv-00438-JR (D. Or.) [ECF No. 663] ("Receiver's Report").

The Receiver investigated the time period January 1, 2014 through March 10, 2016.  Receiver's

Report at 7.[9]  Based upon his findings, the Receiver expressed his "intention to seek the

designation of a Ponzi scheme as it relates to the Receivership Entity."  *Id.* at 9.  Among his

findings, the Receiver found that Aequitas was "dependent on continued infusion of new

Investor money to pay operating expenses and returns to Investors," "[d]id not use Investor

money for the stated purposes," "[u]sed a significant portion of new Investor money to pay

returns and principal to earlier Investors," "[d]id not generate sufficient (any) profits to pay the

promised returns to Investors," "[w]as insolvent from at least July 3, 2014 onward," and that

Aequitas' accounting records did not "reflect appropriate reserves for uncollectable assets and …

include[d] inflated 'mark-ups' to asset valuations, both of which result[ed] in a misrepresentation

of Aequitas' income generated and assets available (and net worth)."  *Id.* at 10.  The Receiver

noted that, "[w]hile Aequitas was likely insolvent substantially prior to July 3, 2014, the

Receiver has not considered it a beneficial use of Receivership resources to undertake the

extensive analysis necessary to support or refute a hypothesis of insolvency prior to July 2014

(however, if such need becomes apparent, this analysis can be performed)."  *Id.* at 11.

---

[8] R.F. MacDonald Co. was not deposed pursuant to Fed. R. Civ. P. 30(b)(6).  However, its
chief executive and co-owner, James MacDonald, was deposed and was questioned about R.F.
MacDonald Co.'s Aequitas investments.

[9] Due to a discrepancy in page numbering between the ECF-filed document and the report
itself, Plaintiffs cite to the ECF page number.  For example, this citation is to page 7 of 174.

**PAGE 9 -    PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

On March 19, 2019, the Court issued its Findings and Recommendations to give preliminary approval to Plaintiffs' settlement with Tonkon [ECF No. 481]. The Court held that *pro tanto* judgment reduction is available for a bar of contribution claims under the Oregon Securities Law. *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, at *10 (D. Or. March 19, 2019) ("Tonkon F&R"). The Court also provisionally certified a settlement class for the Tonkon Settlement that is identical to the Integrity Settlement and Global Settlement Classes. *Id.* at *20.[10] Over Defendants' objections, Judge Hernandez adopted the Findings and Recommendations. Order [ECF No. 566].

On May 6, 2019, Plaintiffs filed a motion for preliminary approval of their settlement with Integrity [ECF No. 538]. Defendants were given extensions of time to respond to that motion and no responses have been filed. [ECF Nos. 555, 571].

On April 26, 2019, Plaintiffs filed a motion for certification of a litigation class for Plaintiffs' remaining claims [ECF No. 522]. Plaintiffs incorporate by this reference their submissions in connection with that motion for class certification.

### C.    The Mediation/Settlement Process

The Global Settlement was the product of serious, informed, non-collusive negotiations. DeJong Decl., ¶ 9; Weinstein Decl., ¶ 7. The Global Settling Parties and the Receiver retained Hon. Daniel Weinstein (Ret.) of JAMS as mediator. DeJong Decl., ¶ 7. Judge Weinstein is one of the nation's preeminent mediators of complex civil disputes and has mediated numerous securities cases. Because of the complexity of this particular mediation—involving Plaintiffs, the Receiver and the five Global Settling Defendants and their insurers—Judge Weinstein was assisted by co-mediator David Carden, Esq. Weinstein Decl., ¶ 3. The mediator conducted pre-mediation telephone calls with all participating parties. *Id.* ¶ 4. The Global Settling Parties

---

[10] *See* footnote 7, *supra*, regarding certain Partially Covered Class Members who are excluded from some, but not all, of the three Settlements.

**PAGE 10 -    PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

participated in a four-day in-person mediation from May 20-23, 2019.  *Id.* ¶ 5.  The in-person

mediation was not successful, and the mediation continued by telephone and email until a

settlement in principle was reached on June 5, 2019.  *Id.* ¶ 8.  Even then, a number of non-

monetary terms of the settlement remained unresolved.  *Id.*  The Global Settling Parties agreed to

negotiate those terms and to present any unresolved issues to Judge Weinstein for binding

resolution.  *Id.*  The Parties were unable to resolve several non-monetary terms, and the parties

subsequently resolved the remaining terms with the assistance of Judge Weinstein and through

additional negotiations.  *Id.*

### D. The Parties Intend to Coordinate All Pending Settlements

For economy and efficiency, and to minimize the potential for confusion by Class

members, all parties to this case agree that the approval, notice and distribution process for the

three pending Settlements should be coordinated in a single proceeding.  *See* Stipulation, ¶ 47.

The parties intend that a single Notice to the Class address all three Settlements, and that a single

hearing be scheduled to address final approval of all three Settlements.  *Id.*

## IV. SUMMARY OF KEY GLOBAL SETTLEMENT TERMS

### A. The Class Definition

The proposed settlement class (the "Global Settlement Class") includes:

> All persons who purchased "Aequitas Securities" on or after June 9, 2010,
> and had an account balance as of March 31, 2016. The Aequitas Securities
> are those issued by the following entities: (1) Aequitas Commercial
> Finance, LLC ("ACF"); (2) Aequitas Income Opportunity Fund, LLC
> ("AIOF"); (3) Aequitas Income Opportunity Fund II, LLC ("AI OF-II");
> (4) Aequitas Capital Opportunities Fund, LP ("ACOF"); (5) Aequitas
> Income Protection Fund, LLC ("AIPF"); (6) Aequitas Enhanced Income
> Fund, LLC ("AEIF"); (7) Aequitas ETC Founders Fund, LLC ("AETC");
> and (8) MotoLease Financial, LLC ("AMLF").

> Excluded are: (a) Defendants; (b) the past and present officers and
> directors of the Aequitas affiliated companies, including without limitation
> Robert Jesenik, Brian Oliver, Craig Froude, Scott Gillis, Andrew

PAGE 11 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

MacRitchie, Olaf Janke, Brian Rice, William Ruh, Steve Hedberg, Brett Brown, Tom Goila, Patricia Brown, Bill Malloy, and Thomas Szabo, and their respective families and affiliates; (c) the past and present members of the Aequitas Advisory Board, including without limitation William McCormick, L. Martin Brantley, Patrick Terrell, Edmund Jensen, Donna Miles, William Glasgow, Keith Barnes, Bob Zukis, and their families and affiliates; (d) registered investment advisors and investment advisor representatives; (e) any investor who received finder's fees or other consideration from Aequitas in connection with referring investors to Aequitas; and (f) the Individual Plaintiffs in the Individual Actions.

Stipulation, ¶ 1(d), (f).

### B.    The Settlement Consideration

The total Global Settlement amount to be paid by the Global Settling Defendants and their insurers to the Global Settlement Class is $220 million.  Stipulation, ¶ 4.

### C.    Release of Claims

Once the Global Settlement is effective, the Class Representatives and Class Members who have not opted out will provide a broad release of all claims, known and unknown, that are based upon, arise out of, or are related to (1) the conduct, transactions, or occurrences set forth in any pleading in this Action; (2) this Action; (3) the purchase, issuance, sale, or solicitation of the sale of securities of any Aequitas entity; and (4) Defendants' provision of services to any Aequitas entity.[11]  Stipulation, ¶¶ 1(x), 17.  Defendants will provide a reciprocal release. Stipulation, ¶¶ 1(x), 18.

### D.    Contribution Claims Bar

The Global Settling Parties have agreed to jointly seek an injunction barring contribution claims, or "claims bar," against the Global Settling Defendants in this action (Stipulation, ¶ 21). However, the Global Settlement is not conditioned on entry of a claims bar.  The parties will not

---

[11] This is a summary of the release, the full terms of which are specified at paragraphs 1(x) and 16–21 of the Stipulation.

PAGE 12 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

be asking the Court to determine any contribution credit, because the pending Settlements resolve all claims in this lawsuit.

### E.    Withdrawal of Objections to Prior Settlements

As a condition of the Global Settlement, the Global Settling Defendants have agreed, upon preliminary approval of the present Global Settlement, to withdraw all objections to the Tonkon Settlement and Integrity Settlement.[12]  Stipulation ¶ 43.  Accordingly, if this Global Settlement is preliminarily approved, Plaintiffs' pending motion for preliminary approval of the Integrity Settlement [ECF No. 537] may now be treated as unopposed.  The Court has already preliminarily approved the Tonkon Settlement, but the preliminary approval order has not been entered as to that settlement.  Revised and updated copies of the preliminary approval orders for the Tonkon Settlement and the Integrity Settlement are attached hereto as Exhibits B & C.[13]

## V.    NOTICE OF THE SETTLEMENT

The [Proposed] Order Preliminarily Approving Global Settlement and Providing for Notice ("Global Preliminary Approval Order"), which is attached as Exhibit A to this motion, mandates that within twenty-eight (28) calendar days of the Court's order preliminarily approving the Global Settlement, Class Counsel shall provide notice to Class Members through mailing to all identifiable Class Members as identified by the Receiver the proposed Notice of Pendency and Settlement of Class Action (the "Notice") (substantially in the form annexed as Exhibit A-1 to the Global Preliminary Approval Order).  The Notice is similar to the notice approved in connection with the Tonkon Settlement, but is expanded to address all three pending

---

[12] The withdrawals of objections are without prejudice to renew such objections in the event the Global Settlement is not finally approved.

[13] The Tonkon and Integrity preliminary approval orders were updated to eliminate reference to Aequitas Private Client Fund LLC as a Covered Aequitas Security, because, since the date of those settlements, the Receiver informed Class Counsel that no eligible Class Members purchased such securities.

PAGE 13 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

Settlements.  Plaintiffs request that the same form of Notice be approved for each of the three

pending Settlements, so that a single, omnibus Notice can be issued.

Additionally, within thirty-five (35) calendar days after entry of the Global Preliminary

Approval Order, Class Counsel shall cause a Summary Notice, substantially in the form annexed

as Exhibit A-2 to the Global Preliminary Approval Order, to be published in *The Wall Street

Journal* and *The Oregonian* and to be distributed over a national newswire service.  As with the

Notice, the parties request that the same form of Summary Notice be approved for each of the

three pending Settlements, so that a single, omnibus Summary Notice can be issued.

## VI.    ARGUMENT

### A.    The Proposed Global Settlement Warrants Preliminary Approval.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

settlement of class action claims.  "[T]here is a strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned."  *Lane v. Brown*, 166 F. Supp. 3d

1180, 1188 (D. Or. 2016) (quoting *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir.

2008)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

("voluntary conciliation and settlement are the preferred means of dispute resolution …

especially … in complex class action litigation").  Approval of a settlement is a multi-step

process, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the

class and objections to be filed, after which there is (iii) a motion for final approval and fairness

hearing.  *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003); Manual for Complex

Litigation (Fourth) § 21.632, at 320–21 (2004).  Preliminary approval is thus not a dispositive

assessment of the fairness of the proposed settlement, but rather determines whether it falls

within the "range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Collins v. Cargill

Meat Sols. Corp*., 274 F.R.D. 294, 301–02 (E.D. Cal. 2011).  The Court's primary objective is to

PAGE 14 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.  4 Newberg on Class Actions § 13:10 (5th ed. 2011).  Preliminary approval establishes an "initial presumption" of fairness such that notice may be given to the class.  *Tableware*, 484 F. Supp. 2d at 1079 (internal quotation marks and citation omitted); *see also Smith v. Am. Greetings Corp.*, No. 14–cv–02577–JST, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same).

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.  *Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, No. C 11–1726 RS, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware*, 484 F. Supp. 2d at 1079; *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2011).[14]  All factors weigh in favor of preliminary approval here.

---

[14] The 2018 amendments to Fed. R. Civ. P 23(e)(2) state that in approving settlements, courts should consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." However, these amendments were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment). Therefore, courts have continued to use prior circuit precedent to analyze preliminary approval orders since the 2018 amendments. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *4 (analyzing preliminary approval using prior circuit precedent); *Shin v. Plantronics, Inc.*, No. 18-CV-05626-NC, 2019 WL 2515827, at *4 (N.D. Cal. June 17, 2019) (same); *Haralson v. U.S. Aviation Servs. Corp.*, No. 16-CV-05207-JST, 2019 WL 2413545, at *4 n. 4 (N.D. Cal. June 7, 2019) (same). Plaintiffs accordingly offer

**PAGE 15 -   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

      **1.**      **The Global Settlement is Entitled to the Presumption of Fairness as Being the Result of Non-Collusive, Informed, Arm's-Length Negotiations.**

As the Ninth Circuit has stated, "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Medearis v. Or. Teamster Emplrs. Tr.*, No. CV. 07–723–PK, 2009 WL 1788183, at *3 (D. Or. June 19, 2009) (quoting *Rodriguez*). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Pac. Enters.*). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)) (other citations omitted). Accordingly, as is the case here, when proposed counsel are experienced and support the settlement, which was the result of arm's-length negotiations and relevant discovery has been conducted, there is an initial "presumption that the agreement is fair." *Smith*, 2015 WL 4498571, at *6; *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009).

The proposed Global Settlement arises out of extended, informed, arm's-length negotiations between experienced counsel for the Global Settling Parties. *See* Weinstein Decl. ¶ 7. Here, the Global Settling Parties have engaged in three years of litigation, including extensive document discovery. The Global Settling Parties were further informed by the findings of the Receiver's forensic investigation. This "significant investigation, discovery and research" weighs in favor of finding the Global Settlement was adequately informed. *See, e.g.*,

---

an analysis based on prior precedent, which is "substantially similar to those [factors] articulated in the 2018 amendments to Rule 23(e)." *Haralson*, 2019 WL 2413545, at *4 n. 4.

**PAGE 16 -**  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement"). Further, Plaintiffs' counsel are experienced and recognized nationally for competently handling large-scale, financial fraud and class action litigation.  Berman Decl., Ex. A; DeJong Decl., Ex. C.

There is no evidence of conflicts of interest or collusion among the Global Settling Parties in crafting the Global Settlement.  Courts considering a pre-class certification settlement must examine whether the settlement was the result of good faith, arm's-length negotiations or the result of fraud and collusion.  *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017).  The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund.  *Id.* (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  None of those things is present here.

First, the proposed Global Settlement does not bear any of the characteristics of collusion, the Plan of Allocation provides that the Class Representatives will recover the same *pro rata* share as all other Class Members, and Class Counsel's fees must be approved by this Court.  *See* DeJong Decl., Ex. B.  Second, there is no "clear sailing" provision, and any fees awarded by this Court will be paid from the Global Settlement fund.  Third, there is no reversion of any of the settlement amount to any Global Settling Defendant.

In addition, the Global Settling Parties were assisted by mediators Hon. Daniel Weinstein (Ret.) and David Carden in their settlement negotiations, which is a "factor weighing in favor of

**PAGE 17 -**  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948; *see also* 4 Newberg on Class Actions § 13:14 (5th ed. 2011).  The presence of counsel for the Receiver in the negotiations further underscores the lack of collusion between the Class Representatives and Global Settling Defendants.  DeJong Decl., ¶ 7.

The Global Settlement is the result of informed, non-collusive and hard-fought negotiations.  Plaintiffs and their counsel recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class Members.  Berman Decl., ¶ 3; DeJong Decl., ¶ 9. "Great weight" should be accorded to this recommendation of Class Counsel.  *Bell*, 2017 WL 2672073, at *6 (citations omitted); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (citation omitted).  Accordingly, the Court should give an initial "presumption of fairness" to the Global Settlement.  *Villanueva v. Morpho Detection, Inc*., No. 13–cv–05390– HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted); *see also Walsh v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) ("[S]ettlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel.") (citation omitted).

### 2.    The Global Settlement Does Not Suffer from Any Obvious Deficiencies.

The Global Settlement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case, and the benefit to the Class of obtaining a substantial recovery without further delay and risk.  The Parties have litigated this case for three years, during which time the Class Representatives conducted extensive document discovery. The Receiver waived applicable attorney-client privileges, allowing an unfettered look into the relevant documents.  The Receiver produced a massive database containing Aequitas' documents, and more than 5.7 million pages of documents were produced by Defendants and third parties other than the Receiver.  DeJong Decl., ¶ 4.  The Court has made numerous legal

PAGE 18 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

rulings on material issues of Oregon Securities Law.  Had there not been a settlement, Defendants would have contested Plaintiffs' claims, including by asserting the statutory "due diligence" defense to a claim for secondary liability under ORS § 59.115(3).  Defendants almost certainly would have challenged Plaintiffs' claims by motions for summary judgment.  No trial has been scheduled and was unlikely to take place until 2021.  Any judgments following trial would be subject to appeals and years of additional delay and risk.  Accordingly, the Global Settlement reflects the Class Representatives' informed assessment of the risks generally inherent in litigation, and the specific litigation risks present in this action in particular. Weighing the benefits of the Global Settlement with the risks that the Class Representatives faced in this Action, there are no obvious deficiencies in the Global Settlement.

Further, the Global Settlement contains no obvious defects of the types that courts have found to preclude preliminary approval such as:  unreasonably high attorneys' fees; preferential treatment of class representatives; deficient notice plan; burdensome claims procedure; or a plainly unfair allocation scheme or overly broad releases of liability.  *See* 4 Newberg on Class Actions § 13:15 (5th ed. 2011) (citing, *inter alia*, *Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011) (fee concerns); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (preferential treatment of class representatives); *Walter v. Hughes Commc'ns, Inc.*, No. 09–2136 SC, 2011 WL 2650711, at *15-16 (N.D. Cal. July 6, 2011) (deficient notice); *Fraser v. ASUS Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012) (overly broad releases)).  The lack of any obvious deficiencies in the Settlement weighs in favor of preliminary approval.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

3. **The Global Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class.**

The third factor to consider is whether the Global Settlement grants preferential treatment to Class Representatives or segments of the Global Settlement Class. The Global Settlement does not. The Plan of Allocation is designed to compensate all Class Members on a *pro rata* basis according to their losses. DeJong Decl., Ex. B. Therefore, there is no preferential treatment where the Class Representatives will receive the same *pro rata* distribution based on their losses that is applicable to all class members. *In re Zynga Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015). The lack of preferential treatment for the Class Representatives also weighs in favor of preliminary approval.

4. **The Global Settlement Falls Within the Range of Possible Approval.**

To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement." *Tableware*, 484 F. Supp. 2d at 1079–80. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Officers for Justice*, 688 F.2d at 628). The adequacy of the amount offered in settlement "cannot be assessed in a vacuum. Rather, it must be considered in light of 'the strength of the plaintiff's case' and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.") (citing *In re Mego Fin. Corp.*, 213 F.3d at 459).

Here, of course, the settlement payment of $220 million is not a mere fraction of the potential recovery. The total recovery from the three Class settlements and the estimated

PAGE 20 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

distribution from the Receiver exceed—on a gross basis before Court-awarded attorney's fees and costs—the total out-of-pocket losses of the Class.

The Global Settlement provides the substantial benefit of $220 million without further risk to the Class, including risks presented by additional motion practice that could impact the Class claims, trial and appeal.  No litigation class has been certified, and, in the absence of the Global Settlement, Plaintiffs' pending motion for class certification would have been vigorously contested.  Some or all Defendants likely would have filed motions for summary judgment or partial summary judgment.  Although the Receiver concluded that Aequitas was insolvent during part of the proposed class period, Defendants contested the Receiver's conclusion.  Furthermore, Plaintiffs would have been required to prove that Aequitas was insolvent for several years prior to the time period examined by the Receiver.  Two Aequitas executives have pleaded guilty to federal crimes and have admitted that they lied to Aequitas' auditors and lawyers.  Thus, although Plaintiffs believe strongly in their case, the risks of litigation and an adverse outcome are substantial.

In addition, this Global Settlement provides substantial relief to the Class now, without years of further delay and expense.  The parties have been engaged in heavy litigation for three years, and no trial date has yet been scheduled.

For these reasons, the amount of the Global Settlement is very much within the "range of possible approval."

> **B.    The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23.**

The standards for provisional class certification are set forth in the Court's Findings & Recommendation [ECF No. 481] preliminarily approving the Tonkon Settlement.  *See Tonkon F&R*, 2019 WL 1441634, at *11.  Courts within the Ninth Circuit have taken a liberal view of class certification in cases such as this, recognizing that "securities litigation is particularly well

PAGE 21 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

suited for class action treatment." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 902–04 (9th Cir. 1975)).  To certify the proposed Class, the Class Representatives must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b).  *In re Hyundai and Kia Fuel Economy Litig.*, --F.3d--, 2019 WL 2376831, *4-5 (9th Cir. June 6, 2019) (en banc).[15]

In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3).  As described below, each of these requirements is met in this case.

### 1.    The Rule 23(a) Requirements Are Met.

#### a.    The Class Is So Numerous that Joinder Is Impracticable.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) (citations omitted).  "Plaintiffs need not provide an exact number of class members, 'so long as there are enough to make joinder impracticable.'"  *Moss v. U.S. Secret Serv*., No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015) (citation omitted).  This Court previously found that "Plaintiffs readily satisfy the requirement as they have alleged a class of approximately 1,500 members."  Tonkon F&R, 2019 WL 1441634, at *12; *see* SAC ¶ 204.

#### b.    Numerous Common Issues Exist.

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." *Villanueva*, 319 F.R.D. at 315.  The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir.

---

[15] The Court will recall that the Global Settling Defendants asserted that preliminary approval of the Tonkon Settlement should await the decision of the *en banc* Ninth Circuit in *Hyundai*.  That decision has now issued and supports approval of the present Global Settlement.

PAGE 22 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

2011); *Moss*, 2015 WL 5705126, at *3.  Accordingly, commonality is "a low hurdle easily surmounted."  *Pecover v. Elec. Arts Inc*., No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010) (citation omitted).  "All questions of fact and law need not be common to satisfy the rule."  *Ellis*, 657 F.3d at 981 (internal quotation marks and citation omitted).  Rather, commonality requires the existence of even a *single* common contention that is capable of class-wide resolution.  *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).  However, the common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation."  *Id*. (citation omitted).  As this Court recognized in certifying the Tonkon Settlement class, "in securities class action cases 'where putative class members have been injured by the same material misrepresentations and omissions, the commonality requirement [is] satisfied.'"  Tonkon F&R, 2019 WL 1441634, at *12 (citations omitted).

Here, the SAC identifies numerous common issues of fact and law, each of which are amenable to class-wide proof, including, without limitation, the following:

- whether the Aequitas Securities were sold to Class Members in violation of the registration requirements of the Oregon Securities Law;
- whether the Aequitas Securities were sold by means of false statements of fact or omissions of material fact; and
- whether the Global Settling Defendants participated or materially aided in the unlawful sales of Aequitas Securities.

SAC ¶ 206.  The determination of these common issues would resolve the allegations for the entire Class "in one stroke."  *Hurst v. First Student, Inc.*, No. 3:15–cv–00021–HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165).  As such, the commonality requirement is satisfied.

PAGE 23 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

The Court has already found that "Plaintiffs have identified numerous common issues of law and fact that are susceptible to class-wide determination."  Tonkon F&R, 2019 WL 1441634, at *12.  As the Court noted:

> The common answers to these questions are "apt to drive the resolution" of the legal issues in this case.  Indeed, the answer to whether the Covered Securities were required to be registered or were sold by means of false statements or material omissions are common questions of liability and clearly will "drive the resolution" of this litigation.  Therefore, the court readily finds the commonality requirement is satisfied.

*Id.* (citations omitted).  The same analysis applies here.

### c.    The Class Representatives' Claims Are Typical of Those of Other Class Members.

The third requirement is that the "claims … of the representative parties are typical of the claims … of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific Corp*., 922 F. Supp. 377, 399 (D. Or. 1996).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).  Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Sullivan v. Kelly Servs.,* 268 F.R.D. 356, 363 (N.D. Cal. 2010).  The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."  *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting

PAGE 24 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).  This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.  In a securities class action, the claims and nature of evidence "are generally considered sufficient to satisfy the typicality requirement."  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

This Court previously rejected Global Settling Defendants' argument that Plaintiffs' claims are not typical because they "did not purchase the identical securities as those purchased by Class Members.  . . .  According to Non-Settling Defendants, Plaintiffs ignore fundamental differences among the various Aequitas entities and the securities they sold, and that Plaintiffs' claims are not typical of Class Members' claims who have purchased different securities from different entities."  Tonkon F&R, 2019 WL 1441634, at *13.  This Court found typicality based on the fact that "[e]ach named Plaintiff has purchased at least one of the nine Aequitas securities defined in the class.  The fact that Class Members may have purchased different Covered Aequitas Securities does not defeat typicality.  In this action, Aequitas is alleged to have engaged in a course of conduct that is not unique to Plaintiffs."  *Id.*

Similarly, Judge Hernandez certified a settlement class consisting of all persons who purchased securities issued by 44 different Aequitas entities.  *Brown v. Price*, No. 3:17-cv-00869-HZ (D. Or.).  "In approving the class settlement, Judge Hernandez determined that the claims of the six named plaintiffs were typical of the class claims without regard to whether each named plaintiff invested in each of the 44 Aequitas entities/funds."  Tonkon F&R, 2019 WL 1441634, at *13.

Plaintiffs' claims here arise from the same events or course of conduct that give rise to claims of other Class Members, and the claims asserted are based on the same legal theories. Plaintiffs allege that all Class Members purchased Aequitas Covered Securities which were sold

**PAGE 25 -   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

in violation of Oregon Securities Laws and that the Defendants participated and aided in the unlawful sales of the Aequitas Covered Securities. And Plaintiffs are not subject to any unique defenses that could make them atypical of Class Members. Therefore, the Class Representatives' claims are typical.

> ### d.   The Class Representatives and Their Counsel Adequately Represent the Interests of the Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the Class. The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). This Court previously found that the Class Representatives and Class Counsel are adequate. Tonkon F&R, 2019 WL 1441634, at *14.

> ## 2.   The Requirements of Rule 23(b)(3) Are Met.

A class may be certified under Rule 23(b)(3) when: a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and b) the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied in this case. Indeed, this Court has already found that these requirements are satisfied. Tonkon F&R, 2019 WL 1441634, at *14–16.

> ### a.   Common Questions of Fact or Law Predominate.

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011*)* (citation omitted), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). "The focus is on the relationship between the common and individual

**PAGE 26 -   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

issues." *Id.* (internal quotation marks and citation omitted).  To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.").  "Predominance exists 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Moss*, 2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.").  Predominance does not require a plaintiff to show a complete absence of individual issues.  Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted).  Predominance is not a matter of "nose-counting," but "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

This Court previously found that common questions predominate Plaintiffs' claims and rejected Global Settling Defendants' arguments to the contrary.  Tonkon F&R, 2019 WL 1441634, at *14–15.  "Courts readily find predominance in securities cases alleging a common scheme accomplished through misrepresentations and omissions similar to those alleged here." *Id*. at *15; *see Hyundai*, 2019 WL 2376831 at *8 ("We have held that these types of common

**PAGE 27 -  PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions."). This Court relied upon the Ninth Circuit's decision in *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975). "Although *Blackie* involved a 10b-5 case based on stocks traded in an open market, the court noted that the 'class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations.'" Tonkon F&R, 2019 WL 1441634, at *15 (quoting *Blackie*, 524 F.2d at 904 n.19). This Court also analogized Plaintiffs' claims to those at issue in *Facciola v. Greenberg Traurig, LLP*, 281 F.R.D. 363 (D. Ariz. 2012). There, the district court certified a class over defendants' arguments that "class members invested at different times, for different periods, with different offerings, based on different knowledge." *Id*. at 371.

Common issues predominate Plaintiffs' claims. "If Plaintiffs are unable to prove that the securities were required to be registered, or that false statements of material fact were made, all class members' claims will fail, regardless of when the statements were made or in which particular PPM they occurred. Additionally, if Plaintiffs are unable to establish [Global Settling Defendants'] participation and material aid, all the class claims will fail. Without favorable findings on these critical issues, none of the class claims can succeed." *See Tonkon F&R*, 2019 WL 1441634, at *15; *see also Jensen v. Fiserv Trust Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (unpublished) (class certification upheld because the "center of gravity" of the fraudulent "Ponzi scheme itself would have to be proved or controverted over and over were the case not to proceed as a class action").

>    **b.    The Class Action Mechanism is Superior to Any Other Method of Adjudication.**

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "Here, the alternative method of resolving this matter would be to pursue approximately 1,500 individual lawsuits (or 1,500 individual settlements). Thus, the

PAGE 28 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

court readily finds that the class action format is superior in this circumstance." Tonkon F&R, 2019 WL 1441634, at *16.

For these reasons, the proposed Global Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and the Court should grant provisional certification for purposes of effecting the proposed Global Settlement.

### C.    The Proposed Plan of Allocation is Fair and Reasonable.

Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards as the settlement as a whole – the plan of allocation must be fair, reasonable and adequate. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2007). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc*., No. CV 11-3531 GAF (JCx), 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).

The proposed Plan of Allocation is described in the Notice, and seeks to disburse the net Global Settlement funds on a *pro rata* basis according to the proportionate losses that were suffered by each Class Member. Notice, Ex. A-1 at 6–7; DeJong Decl., Ex. B. The Class Representatives will receive no special treatment or different allocation than any other Class member under the Plan.

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig*., No. C–90–0931–VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *In re Merrill Lynch Tyco Research Sec. Litig*., 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."). Because it

PAGE 29 -  **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

has a reasonable and rational basis (and treats all Class Members fairly and equally), the

proposed Plan of Allocation should be granted preliminary approval.  *See Schueneman v. Arena*

*Pharms., Inc*., No.: 3:10-CV-01959-CAB-(BLM), 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12,

2018).

### D.    The Proposed Claims Administrator Should be Approved.

The Class Representatives also respectfully request the appointment of Epiq, an

experienced and diligent administrator, as Claims Administrator.  As Claims Administrator, Epiq

will be responsible for, among other things, mailing the notices to the Class, calculating and

providing Class Member Net Loss calculations and reviewing and responding to any Class

Member disputes to these calculations, claims administration, and distributing settlement benefits

to eligible Class Members. Azari Decl., ¶¶ 9–14.  Indeed, the court-appointed Receiver for

Aequitas has also retained Epiq to administer the Receiver's claims process.  *See Sec. & Exch.*

*Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-JR (D. Or.) [ECF No. 683], ¶ 3. Using

Epiq for both purposes will be efficient and cost effective.

### E.    The Form and Method of Notice Should be Approved.

For any class certified under Rule 23(b)(3), the court must direct to class members the

*best notice that is practicable under the circumstances*, including individual notice to all

members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B)

(emphasis added).  Similarly, Rule 23(e)(1)(B) requires that a court approving a class action

settlement "direct notice in a *reasonable manner* to all class members who would be bound by

the proposal."  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).  "Although that notice must be

'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not

required."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*,

18 F.3d 1449, 1454 (9th Cir. 1994)).  The form and method of notice proposed by the Class

Representatives in Section V, *supra*, are appropriate because the *form* of the Notice complies

**PAGE 30 -   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

with the requirements of Rule 23(c)(2)(B)(i)-(vii); and the *method* of notice complies with Rule 23(c)(2)(B) and due process requirements by providing the "best notice that is practicable under the circumstances."

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice). Here, the content of the proposed Notice complies with the specific requirements of Rule 23(c)(2)(B) because it clearly and concisely states in plain, easily understood language: (i) the nature of the action (Notice, Ex. A-1 at 5); (ii) the class definition (Notice, Ex. A-1 at 1–2); (iii) the claims, issues, and defenses (Notice, Ex. A-1 at 2, 5), (iv) that a Class Member may enter an appearance through an attorney (Notice, Ex. A-1 at 11); (v) Class Members' right to exclude themselves from the class (Notice, Ex. A-1 at 10); (vi) the time and manner for requesting exclusion (Notice, Ex. A-1 at 10); and (vii) the binding effect of a class judgment on all Class Members who do not request exclusion (Notice, Ex. A-1 at 8, 10). *See Churchill Vill.*, 361 F.3d at 575.

Likewise, Plaintiffs' proposed method for providing notice to Class Members constitutes the best practicable notice under the circumstances. Plaintiffs propose to mail, by first class mail, individual copies of the Notice of Proposed Settlement (the "Notice") to all potential Class Members at the address of each such person as set forth in Aequitas records or who otherwise may be identified through further reasonable effort. In addition, a summary notice (the "Summary Notice") will be published in *The Wall Street Journal* and *The Oregonian* and disseminated over a national newswire service. Epiq will also maintain a settlement website, a toll-free number and an email address dedicated to this Settlement. Azari Decl., ¶¶ 14–15. Courts regularly approve similar notice plans in securities class actions. *See, e.g.*, *Fidel v.*

**PAGE 31 - PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

*Farley*, 534 F.3d 508, 511 (6th Cir. 2008) (adequate notice provided by publication of notice in Investor's Business Daily and mailing notice to potential class members); *Rieckborn v. Velti PLC*, No. 13–cv–03889–WHO, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (similar); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (similar); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (mailed and published notices satisfy Rule 23(c)(2)(b)).

The Court should approve both the proposed form and method of Notice because they both comply with the requirements of Rule 23 and due process, and represent the best practicable notice under the circumstances. *Silber*, 18 F.3d at 1454.

### F.    The Court Should Appoint Class Counsel.

Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider, *inter alia*, counsel's (i) work in identifying or investigating potential claims; (ii) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (iii) knowledge of the applicable law; and (iv) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Shlachter P.C. seek to be appointed Class Co-Lead Counsel.  Both Hagens Berman and Stoll Berne have extensive experience in handling complex class actions, including securities class actions.  Berman Decl., Ex. A; DeJong Decl., Ex. C.  Moreover, both firms have vigorously investigated and prosecuted this case.  Thus, the Court should appoint Hagens Berman Sobol Shapiro LLP and Stoll Stoll Berne Lokting & Shlachter, P.C. as Class Co-Lead Counsel.

## VII.    CONCLUSION

Counsel for the Parties reached this Global Settlement following extensive discussions and arm's-length negotiations, and after significant discovery and motions practice.  Plaintiffs

**PAGE 32 -   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

submit that they have obtained an extraordinary result on behalf of the Class. The Court is asked to grant preliminary approval of the proposed Global Settlement so that notice of the terms of the Settlement may be sent to the Class, and to schedule a hearing to consider: i) final approval of the three pending Settlements; ii) certification of the settlement Class; iii) approval of the Plan of Allocation; iv) Class Counsel's request for fees and expenses; v) entry of the Final Judgment and Order; and vi) other matters as the Court may deem appropriate.

DATED this 9th day of July, 2019.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/Timothy S. DeJong
**Keith A. Ketterling**, OSB No. 913368
**Timothy S. DeJong**, OSB No. 940662
**Jennifer S. Wagner**, OSB No. 024470
**Nadia H. Dahab**, OSB No. 125630
**Lydia Anderson-Dana**, OSB No. 166167

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Email:      kketterling@stollberne.com
            tdejong@stollberne.com
            jwagner@stollberne.com
            ndahab@stollberne.com
            landersondana@stollberne.com

-And-

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Jeniphr Breckenridge** (admitted *pro hac vice*)
Email: jeniphr@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

-And-

PAGE 33 -   **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bob@bankslawoffice.com
BANKS LAW OFFICE, P.C.
1001 SW Fifth Avenue, Suite 1100
Portland, OR 97204
Telephone: (503) 222-7475

**Attorneys for Plaintiffs**

PAGE 34 - **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AND MEMORANDUM IN SUPPORT**