**Keith A. Ketterling**, OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Steve W. Berman** (*pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (*pro hac vice*)
Email: karlb@hbsslaw.com
**Dawn D. Cornelius** (*pro hac vice*)
Email: dawn@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone:     (206) 623-7292
Facsimile:     (206) 623-0594

*Attorneys For Plaintiffs*
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the | Case No. 3:16-cv-00580-AC<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS; MEMORANDUM IN SUPPORT** |

ANDREW NOWAK REVOCABLE LIVING
TRUST U/A 2/20/2002; WILLIAM
RAMSTEIN; and GREG WARRICK, for
himself and, with SUSAN WARRICK, as Co-
Trustees of the WARRICK FAMILY TRUST,
individually and on behalf of all others
similarly situated,

              Plaintiffs,

    v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; and DUFF & PHELPS, LLC,

              Defendants.

# TABLE OF CONTENTS

**Page**

I.   MOTIONS ................................................................................................1

II.  INTRODUCTION .....................................................................................1

III. STATEMENT OF RELEVANT FACTS ..................................................3

    A.   The Terms of the Settlements ..........................................................3

    B.   Allegations and Procedural Posture of the Action ...........................4

    C.   The Settlement Process ....................................................................5

    D.   Administration of Notice .................................................................7

    E.   Response of Class Members to the Notice .......................................8

IV.  ARGUMENT .............................................................................................8

    A.   The Settlement Class Should Be Finally Certified ..........................8

        1.   The Class Satisfies the Rules 23(a) and (b)(3) Requirements for Certification ........................................................8

        2.   The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented..................................9

    B.   The Settlements Are "Fair, Adequate and Reasonable" and Should Be Finally Approved ........................................................10

        1.   The Settlements Have No Indicia of Collusion and are the Result of Hard-Fought Negotiations Before Experienced Mediators ..................12

        2.   The Settlements are Fair, Reasonable and Adequate Under the *Hanlon* Factors .........................................................13

            a.   The Strength of the Plaintiffs' Case...............................14

            b.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................................15

            c.   The Risk of Maintaining Class Action Status Throughout the Trial ...................................................16

            d.   The Amount Offered in Settlement...............................17

010594-11/1199452 V1

e.    The Extent of Discovery Completed and the Stage of the Proceeding ........................................................................................19

f.    The Experience and Views of Counsel ..........................................21

g.    The Reaction of the Class Members to the Settlements ...............22

3.    The Settlements are Fair, Reasonable and Adequate Under the Newly Amended Rule 23(e)(2) Factors ....................................................23

a.    The Class Representatives and Class Counsel Have Adequately Represented the Class ..................................................24

b.    The Proposal Was Negotiated at Arm's Length ...........................25

c.    The Relief Provided for the Class is Adequate .............................25

d.    The Proposal Treats Class Members Equitably Relative to Each Other ....................................................................................27

C.    The Plan of Allocation Should Be Finally Approved ...........................................27

V.    CONCLUSION ....................................................................................................29

010594-11/1199452 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ...........................................................................13

*Arnett v. Bank of Am., N.A.*,
    No. 3:11-cv-1372-SI, 2014 WL 4672458 (D. Or. Sept. 18, 2014) .........................22

*Bell v. Consumer Cellular, Inc.*,
    No. 3:15-CV-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ...........................22

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ..............19

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..................................................................................12

*Chambers v. Whirlpool Corp.*,
    No. CV 11-1733 FMO, 2016 WL 5922456 (C.D. Cal. 2016) .................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..................................................................................13

*Ciuffitelli v. Deloitte & Touche LLP*,
    No. 3:16-CV-00580-AC, 2018 WL 4568737 (D. Or. Aug. 1, 2018)......................14

*Ciuffitelli v. Deloitte & Touche LLP*,
    No. 3:16-CV-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019)......................9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .........................................................................10, 27

*Demmings v. KKW Trucking, Inc.*,
    No. 3:14-CV-0494-SI, 2018 WL 4495461 (D. Or. Sept. 19, 2018) .....................12, 15, 20, 22

*Destefano v. Zynga, Inc.*,
    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................17

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019).....................14, 15, 24

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)...................................................................14

010594-11/1199452 V1

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-CV-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................... *passim*

*Hartless v. Clorox Co.*,
  273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*,
  473 F. App'x 716 (9th Cir. 2012) ............................................................................16

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...........................23, 28

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .........................19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................................17

*Lane v. Brown*,
  166 F. Supp. 3d 1180 (D. Or. 2016) ....................................................................20, 22

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...............................................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)........................................................................20, 21

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................13

*Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6,
  2014) ................................................................................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................16, 17, 27, 28

*In re Oracle Sec. Litig.*,
   No. C–90–0931–VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ...................................28

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................21

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ..............................................................................24

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA, 2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................14

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................17

*S.E.C. v. Infinity Grp. Co.*,
   No. CIV.A.97-5458, 2004 WL 1126275 (E.D. Pa. May 19, 2004) .........................................19

*Scott v. ZST Digital Networks, Inc.*,
   No. CV 11-3531 GAF, 2013 WL 12126744 (C.D. Cal. Aug. 5, 2013).....................................27

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................13

## STATUTES

ORS § 59.115..............................................................................................................4, 18

Fed. R. Civ. P. 23.........................................................................................................9, 11

# I.    MOTIONS

Pursuant to the Court's Order Preliminarily Approving Global Settlement and Providing For Notice dated August 7, 2019 (Dkt. No. 586) ("Preliminary Approval Order") and Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs move the Court for Orders granting final approval of the settlement and plan of allocation and granting final certification of the settlement class in each of: 1) the Tonkon Settlement; 2) the Integrity Settlement; and 3) the Global Settlement.  Copies of [Proposed] Final Orders are submitted herewith in substantially the form that the Class Representatives will request the Court to enter.

This motion is supported by the Declaration of Jordan Broker Regarding Notice Dissemination, Publication, and Requests for Exclusion Received ("Broker Decl."); the Declaration of Keith A. Ketterling in Support of: 1) Class Counsel's Motion for Award of Attorney Fees and Costs; and 2) Plaintiffs' Motion for Final Approval of Class Action Settlements (the "Ketterling Decl."); and the Declaration of Steve W. Berman in Support of: 1) Class Counsel's Motion for Award of Attorney Fees and Costs; and 2) Plaintiffs' Motion for Final Approval of Class Action Settlements (the "Berman Decl."), filed herewith, and the records of this case.

# II.    INTRODUCTION

After three-and-a-half years of protracted litigation, the review of more than three million pages of discovery and numerous settlement mediations with experienced mediators and a U.S. District Court judge, Plaintiffs reached three separate Settlements with all of the Defendants in this action that will recover a total of $234,613,000 in cash for the benefit of the Class.  If approved, this is believed to be the largest settlement in a securities case in Oregon history.

**PAGE 1 -  PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

Such a result is remarkable in light of the fact that the securities issuer, Aequitas, was placed into receivership with the Court-appointed Receiver concluding that it operated as a Ponzi scheme. Unable to collect from an insolvent issuer, Plaintiffs were able to breach the significant risks associated with recovery from third parties under principles of secondary liability. As explained herein, the Settlements represent 112.7% of the effective net out-of-pocket losses suffered by the Class, without further risk or delay. If the Settlements and the Receiver's distribution plan are approved, the Class will recover as much as 89% of its aggregate net out-of-pocket loss after payment of all attorney fees and costs of Class Counsel and the Receiver.

The Settlements were granted preliminary approval by the Court, and Notice was disseminated to 1,865 Class Members pursuant to the Court's Orders. It is a telling testament to the success of the Settlement that, to date, *not a single Class Member has objected to or excluded itself from the Settlements*.

The Class Representatives now move the Court for an Order: 1) finally certifying the settlement class for the purposes of the Settlements; 2) granting final approval of the Settlements; and 3) granting final approval of the Plan of Allocation.

The Class should be finally certified because it satisfies the requirements for certification under Rules 23(a) and (b)(3), and the Court-approved notice program satisfies the Rule 23 and due process requirements and has been fully implemented. *See* Section IV(A), *infra*.

The Settlements should be granted final approval as "fair, reasonable and adequate." Analyzing the Settlements under either the framework of the *Hanlon* factors traditionally employed by the Ninth Circuit, or the newly promulgated factors set forth in the recently

PAGE 2 - **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

amended Rule 23(e)(2) demonstrates that the Settlements are fair, reasonable and adequate, and should be finally approved.  *See* Section IV(B), *infra*.

The Court should also grant final approval to the proposed Plan of Allocation subject to the same "fair, reasonable and adequate" standard because it compensates Class Members on a *pro rata* basis according to the proportionate losses that were suffered by each Class Member without granting special treatment to the Class Representatives or any other group. *See* Section IV(D), *infra*.

### III.    STATEMENT OF RELEVANT FACTS

**A.    The Terms of the Settlements**

The Court has granted preliminary approval of settlements totaling $234,613,000 (the "Settlements"), comprised of: 1) a $12,913,000 million settlement with Tonkon Torp LLP (the "Tonkon Settlement"); 2) a $1.7 million settlement with Integrity Bank & Trust (the "Integrity Settlement"); and 3) a $220 million settlement with Deloitte & Touche LLP; EisnerAmper LLP; Sidley Austin LLP; TD Ameritrade, Inc., and Duff & Phelps, LLC (the "Global Settlement"). The full terms of the Settlements are set forth in the three Stipulations of Settlement.  [ECF Nos. 334-1, 538, 574-1].[1]

The Class that has been preliminarily certified consists of all persons who purchased Covered Aequitas Securities on or after June 9, 2010, and who had an account balance related to any Covered Aequitas Securities as of March 31, 2016, with specified exclusions.  The "Covered Aequitas Securities" are the securities issued by: 1) Aequitas Commercial Finance, LLC; 2) Aequitas Income Opportunity Fund, LLC; 3) Aequitas Income Opportunity Fund II, LLC; 4)

---

[1] The Tonkon Settlement was amended three times.  See ECF Nos. 351-1, 389-1 and 590-1.

PAGE 3 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

Aequitas Capital Opportunities Fund, LP; 5) Aequitas Income Protection Fund, LLC; 6)

Aequitas Enhanced Income Fund, LLC; 7) Aequitas ETC Founders Fund, LLC; and 8)

MotoLease Financial, LLC.

**B.      Allegations and Procedural Posture of the Action**

The Aequitas companies sold hundreds of millions of dollars of unregistered securities to

Class Members in violation of the Oregon Securities Law.  Plaintiffs allege that each of the

Defendants is liable pursuant to Or. Rev. Stat. § 59.115(3) for participating and materially aiding

in Aequitas' unlawful sales of securities.  Plaintiffs filed their initial Complaint in this Action

[ECF No. 1] on April 4, 2016, alleging violations of the Oregon Securities Law by Deloitte,

Sidley, EisnerAmper, and Tonkon in connection with their roles in participating in and

materially aiding the sales of Aequitas Securities. On May 19, 2016, Plaintiffs filed an Amended

Complaint [ECF No. 57], adding by amendment claims against Ameritrade and Integrity.  On

September 8, 2017, Plaintiffs filed their Second Amended Complaint [ECF No. 257], adding

claims against Duff.

Plaintiffs have overcome multiple challenges to the legal sufficiency of their complaints,

and have engaged in extensive motions practice during the pendency of this action, including

contested motions for approval of the Tonkon Settlement and a motion for class certification.  A

more detailed description of the procedural background in this action is set forth in the

contemporaneously-filed Ketterling Decl.

Class Counsel has reviewed in excess of 3 million pages of documents that were

produced in discovery in this case, and have prepared timelines and outlines of the Defendants'

conduct from these documents in preparation for depositions.  Class Counsel's analysis of the

documents were also used to develop a detailed mediation statement demonstrating Class

PAGE 4 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

Counsel's extensive knowledge of the facts underlying the case that was instrumental in achieving the Settlement.  Ketterling Decl. ¶¶ 15, 23.

C.      **The Settlement Process**

Each of the three Settlements was obtained through hard-fought and contentious settlement negotiations assisted by experienced mediators, as described below:

**The Tonkon Settlement**.  On March 17, 2017, Class Counsel and Tonkon's Counsel and insurer met with U.S. District Court Judge Michael H. Simon, who acted as settlement judge for a confidential mediation process.  After negotiations, the Class Representatives and Tonkon reached agreement as to the financial component of a potential settlement.  DeJong Decl. [ECF No. 352] ¶ 2.  Following the initial mediation session, there were extensive negotiations between Plaintiffs and Tonkon to finalize the terms of a settlement.  *Id*.  On March 27, 2017, the Class Representatives and Tonkon executed a "Term Sheet" memorializing the basic terms of the Settlement.  *See id.*, Ex. A.

However, the Settlement could not be completed on the terms contemplated by the March 27, 2017 Term Sheet, which specified a settlement class that included all named plaintiffs in related, non-class cases filed by groups of individual Aequitas investors (the "Individual Actions").  DeJong Decl. [ECF No. 352] ¶ 3.  The Individual Plaintiffs declined to participate in a class settlement.  *Id*.  Furthermore, the various interested investor groups disagreed about how to allocate the negotiated total settlement payment among them.  *Id*.  Extensive negotiations followed over the course of a year, including an unsuccessful mediation session with Judge Simon.  *Id*. ¶ 4.  Ultimately, the investors agreed to an allocation formula proposed by the court-appointed Receiver for Aequitas.  Thereafter, Plaintiffs overcame substantial objections by Defendants to obtain preliminary approval of the Tonkon Settlement.

PAGE 5 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

**The Integrity Settlement**.  Plaintiffs, Integrity, the Aequitas Receiver, and counsel in the Individual Actions retained the services of mediator Louis D. Peterson for a "global" mediation of all Aequitas investors' pending claims against Integrity.  DeJong Decl. [ECF No. 538] ¶ 7. The mediator conducted pre-mediation telephone calls with all participating parties in early June 2018.  *Id.*  On June 12, 2018, Mr. Peterson conducted an all-day mediation with all parties— including Integrity's insurers—attending in person.  *Id.*  Although substantial progress was made during the in-person mediation, substantial additional mediation, in the form of telephone calls and emails, was required after June 12.  *Id.*  Ultimately, all parties reached a settlement in principle on July 19, 2018.  *Id.*

**The Global Settlement**.  The Global Settling Parties and the Receiver retained Hon. Daniel Weinstein (Ret.) of JAMS as mediator. DeJong Decl. [ECF No. 574] ¶ 7. Judge Weinstein is one of the nation's preeminent mediators of complex civil disputes and has mediated numerous securities cases.  Because of the complexity of this particular mediation— involving Plaintiffs, the Receiver and the five Global Settling Defendants and their insurers— Judge Weinstein was assisted by co-mediator David Carden.  Weinstein Decl. [ECF No. 576] ¶ 3. The mediators conducted pre-mediation telephone calls with all participating parties.  *Id.* ¶ 4. The Global Settling Parties participated in a four-day, in-person mediation from May 20-23, 2019.  *Id.* ¶ 5.  The in-person mediation was not successful, and the mediation continued by telephone and email until a settlement in principle was reached on June 5, 2019.  *Id.* ¶ 8.  Even then, a number of nonmonetary terms of the settlement remained unresolved.  *Id.*  The Global Settling Parties agreed to negotiate those terms and to present any unresolved issues to Judge Weinstein for binding resolution.  *Id.*  The Parties were unable to resolve several non-monetary

PAGE 6 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

terms, and the parties subsequently resolved the remaining terms on July 8, 2019, with the

assistance of Judge Weinstein and through additional negotiations.  *Id*.

D.      **Administration of Notice**

Paragraph 10 of the Preliminary Approval Order set forth the requirements for

administration of notice to Class Members.  ECF No. 586.  The administration of notice was

implemented by the Claims Administrator, Epiq Systems, Inc. ("Epiq"), as follows:

**Preliminary Approval Order ¶ 10(a)**.  On September 4, 2019, Epiq established the

settlement website ([www.AequitasSettlements.com](www.AequitasSettlements.com)), where Class Members can view and print

the Notice, the stipulation and agreements of each of the settlements, the Order granting

preliminary approval of the Settlements, and the Proof of Claim form.  Broker Decl. ¶ 9.

**Preliminary Approval Order ¶ 10(b)**.  Epiq printed and sent copies of the Notice

through the U.S. Mail to 1,849 potential Class Members on September 4, 2019.  Broker Decl.

¶ 6.  For Notice Packets that were returned as undeliverable, Epiq attempted to locate updated

addresses by processing the names and addresses through the National Change of Address

Database. *Id*.  Epiq located updated addresses for and re-mailed 16 records that were returned as

undeliverable. Broker Decl. ¶ 6. In total, Epiq caused a total of 1,865 Notice Packets to be

printed and mailed.

**Preliminary Approval Order ¶ 10(c)**.   On September 11, 2019, Epiq caused the

Summary Notice to be published in both *The Wall Street Journal* and *The Oregonian* and

transmitted over the *Business Wire*.  Broker Decl. ¶ 7.

**Preliminary Approval Order ¶ 10(d).**  Contemporaneously with this motion, Class

Counsel is filing the Declaration of Jordan Broker, a Project Manager for Epiq, the Court-

PAGE 7 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

appointed Claims Administrator in this Action, attesting to satisfaction of the mailing and

publishing requirements.

**E.      Response of Class Members to the Notice**

Through the time of the filing of this motion, no objections or requests for exclusion from

the Class has been received by either Class Counsel or the Claims Administrator.  Berman Decl.

¶ 2; Ketterling Decl. ¶ 25; Broker Decl. ¶¶ 10-11.

## IV.      ARGUMENT

**A.      The Settlement Class Should Be Finally Certified**

The Class Representatives respectfully request that the Court grant final certification of

the Class as a settlement class, because: 1) the Class satisfies the requirements of Rule 23(a) and

(b)(3); and 2) the Court-approved notice program satisfies Rule 23 and due process requirements,

and has been fully implemented pursuant to the Court's requirements.

### 1.      The Class Satisfies the Rules 23(a) and (b)(3) Requirements for Certification

The Court completed the first step in the settlement approval process when it granted

preliminary approval of the three Settlements and provisionally certified three corresponding

settlement classes.  [ECF No. 586] ¶ 2 (Global); [ECF No. 587] ¶ 2 (Integrity) and [ECF No.

588] ¶ 2 (Tonkon).  The Court's March 19, 2019 Order made specific findings that the Class

meets each of the four Rule 23(a) requirements of: numerosity, commonality, typicality, and

adequacy.  *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2019 WL 1441634, at

*12-14 (D. Or. Mar. 19, 2019), *report and recommendation adopted*, No. 3:16-CV-00580-AC,

2019 WL 2288432 (D. Or. May 29, 2019).  Likewise, the Court found that the Class met each of

the Rule 23(b)(3) requirements that questions of law and fact common to the members of the

class predominate over any "questions affecting only individual members," and that a class

PAGE 8 -  **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

action is superior to other available methods.  *Id.* at *14-16.  Plaintiffs respectfully submit that nothing has changed since these findings were made and they remain accurate.

>    **2.**    **The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented**

The notice provided to a class certified under Rule 23(b)(3) must satisfy Rule 23(c)(2), which requires "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The Court's August 7, 2019 Order Preliminarily Approving Global Settlement and Providing for Notice [ECF No. 586] approved the forms of Plaintiffs' Notice and Summary Notice, finding that they complied with the requirements of Rule 23 and due process.  [ECF No. 586] ¶ 8.  The Court also approved Plaintiffs' proposed manner of distribution of the Notice and Summary Notice as compliant with the requirements of Rule 23 and due process, ordering the Claims Administrator to: a) establish a settlement website and post the basic documents related to the Settlement by September 4, 2019; b) cause a copy of the Notice to be mailed by first class mail no later than September 4, 2019, to all potential Class Members that can be identified with reasonable effort; and c) cause the Summary Notice to be published in *The Wall Street Journal*, *The Oregonian* and for international distribution over a national newswire service not later than September 11, 2019.  The Court further ordered Class Counsel to file with this Court proof of compliance with these mailing and publishing requirements no later than October 15, 2019. [ECF No. 586] ¶ 10.  The contemporaneously-filed Broker Declaration fulfills Class Counsel's obligation by demonstrating the Claims Administrator's compliance with the above-noted requirements regarding mailing the Notice and publishing the Summary Notice.

Because the Court's Order previously found that the form of the Notice and Summary Notice and the Administration of Notice plan each complied with Rule 23 and due process

**PAGE 9 -  PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

requirements, and because the Claims Administrator complied with the Order regarding

Administration of Notice, notice to the Class complied with Rule 23 and due process

requirements, fairly apprises Class Members of their rights with respect to the Settlements, and is

the best notice practicable under the circumstances.

Accordingly, because the Class meets the requirements of 23(a) and (b)(3) and because

notice to Class Members complied with Rule 23 and due process requirements, the Court should

grant final certification of the Class as a settlement class.

**B.      The Settlements Are "Fair, Adequate and Reasonable" and Should Be Finally Approved**

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly

where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095,

1101 (9th Cir. 2008); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

Cir. 1982) ("it must not be overlooked that voluntary conciliation and settlement are the

preferred means of dispute resolution. This is especially true in complex class action

litigation  . . . .").  A settlement hearing should "not to be turned into a trial or rehearsal for trial

on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625.  The court need not

"reach any ultimate conclusions on the contested issues of fact and law which underlie the merits

of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful

and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*,

955 F.2d 1268, 1291 (9th Cir. 1992).  Nor should a proposed settlement be "judged against a

hypothetical or speculative measure of what might have been achieved by the negotiators."

*Officers for Justice*, 688 F.2d at 625.  The appropriate standard is "is not whether the final

PAGE 10 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Where a settlement is binding on class members (as this one is), the Court may approve it only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Prior to the December 2018 amendment of Rule 23(e), the rule provided no guidance on how to make this assessment, leading the Ninth Circuit to develop a two-step process whereby a court would (if the settlement was obtained prior to certification of the class) scrutinize the settlement itself and the process leading to the settlement for evidence of procedural unfairness or collusion. If no indicia of collusion is found, the court would next analyze the substantive fairness of the settlement pursuant to the *Hanlon* factors. As described below, there are no indicia of collusion. To the contrary, the hard-fought nature of the litigation and settlement negotiations, along with the assistance of experienced mediators in the settlement negotiations demonstrates the lack of collusion. Further, analysis of the *Hanlon* factors confirms that the Settlements are substantively fair to the Class. Accordingly, the Court should find the Settlements to be fair, reasonable and adequate and grant final approval of them.

In December 2018, Rule 23(e)(2) was amended to provide a list of factors, somewhat similar to the *Hanlon* factors, for a court to consider when analyzing the fairness of a settlement. Although it is unclear whether these new Rule 23(e)(2) factors should be considered in this motion, analysis of these factors also demonstrates that the Settlements are fair, reasonable and adequate and should be granted final approval.

PAGE 11 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

1.      **The Settlements Have No Indicia of Collusion and are the Result of Hard-Fought Negotiations Before Experienced Mediators**

The Ninth Circuit recognizes that approval of a settlement that takes place prior to formal class certification presents risks of conflict of interests between Class Counsel and the Class, and this requires the court to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *Demmings v. KKW Trucking, Inc*., No. 3:14-CV-0494-SI, 2018 WL 4495461, at *7 (D. Or. Sept. 19, 2018).  The Ninth Circuit recognized that "[c]ollusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947. However, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit such as: i) a disproportionate requested attorneys' fee; ii) a "clear sailing" fee agreement; or iii) the reversion of unpaid fees to the defendant.  *Id*. at 947.

Indeed, the Settlements should be presumed to be fair and free of collusion because they were the product of extensive arm's-length negotiations between highly experienced and capable counsel in formal mediation processes overseen by: the Honorable Michael H. Simon (Tonkon Settlement); Hon. Daniel Weinstein (ret.) (Global Settlement); and Louis D. Peterson (Integrity Settlement).  Each of the Settlements was obtained only after hard-fought and contentious negotiations, as described in Section III, *infra*.  The fact that the parties reached the Settlements with the assistance of neutral mediators is a "factor weighing in favor of a finding of non-collusiveness."  *In re Bluetooth*, 654 F.3d at 948.  Courts within the Ninth Circuit "have afforded

PAGE 12 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-1365-CW, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

None of the indicia of collusion identified in *In re Bluetooth* are present in this Action. To the contrary, the Settlements were only obtained in hard-fought negotiations with the assistance of an independent mediator, confirming the procedural fairness and lack of collusion between the parties. Accordingly, whether the Settlements are fair, reasonable and adequate should be determined by reference to the *Hanlon* factors.

2.    **The Settlements are Fair, Reasonable and Adequate Under the *Hanlon* Factors**

To evaluate the fairness of a settlement, the Ninth Circuit considers the following *Hanlon* factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill.,*

PAGE 13 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

*L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

### a.    The Strength of the Plaintiffs' Case

In considering whether to enter into the Settlement, the Class Representatives, represented by counsel experienced in securities and class action litigation, weighed the risks in establishing the elements of their claims. "Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013). Securities class actions "are often long, hard-fought, complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018) (securities litigation is "highly complex," "notably difficult and notoriously uncertain").

The Class Representatives' claims under ORS § 59.115(3) require them to prove: 1) an underlying violation of Oregon securities law by the Aequitas entity issuing the securities; and 2) that the Defendant "participated or materially" aided in the sale of the affected securities. *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2018 WL 4568737, at *1 (D. Or. Aug. 1, 2018). Defendants challenged virtually every aspect of Plaintiffs' claims, and would have continued to do so in the absence of the Settlements.

Although the Class Representatives are confident in the strength of their claims, they faced significant legal and factual defenses at summary judgment and trial. It was far from certain that Plaintiffs could prove false and misleading statements for each Covered Security over a five-year period, and that one or more Defendants participated or materially aided the

PAGE 14 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

sales.  Likewise, Defendants' affirmative defense that they did not know, and in the exercise of

reasonable care could not have known, of the existence of facts on which the primary liability of

Aequitas is based also added difficulty and risk to the case.  Such a defense would invariably

require a "battle of experts" regarding the appropriate conduct constituting "reasonable care" for

each of the Defendants, and whether Aequitas' fraud would have been known by the Defendants

had they exercised reasonable care.  As courts have long recognized, such a "battle of the

experts" presents substantial litigation risk.  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL

3290770, at *8.  Even if the Plaintiffs survived summary judgment and prevailed at trial, they

would face significant issues on appeal, including the reach of ORS § 59.115(3)'s secondary

liability to lawyers, accountants, and other professionals.  The difficulties that would be faced by

Plaintiffs at summary judgment, trial, and appeal supports a finding that the Settlements are fair,

reasonable and adequate.

> **b.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The central consideration for this factor is the expense of litigation.  *Demmings*, 2018 WL

4495461, at *8.  Generally, "unless the settlement is clearly inadequate, its acceptance and

approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).  The

Defendants in this action have spared no expense in contesting virtually every point, as

demonstrated by the 590 entries on the docket sheet for this action to date.

Continuing litigation through the conclusion of fact discovery, expert discovery, class

certification, summary judgment, trial, and appeals would have been extremely expensive and

would delay recovery for Class Members for years.  And during this period, significant expenses

PAGE 15 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

for travel, expert witness fees, deposition reporting and transcripts, electronic document review, and other litigation expenses would continue to escalate.

Without the Settlements, there is no question that the resolution of this case would take many years and require significant litigation expenses, with the end result far from certain. *Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members, including full relief for property damage or the reimbursement of the cost of the product favors settlement of this action."). The present value of a very significant settlement right now, as opposed to the *possibility* that a better result might be obtained after a trial and appeal many years in the future supports approval of the Settlements. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008).

c.       **The Risk of Maintaining Class Action Status Throughout the Trial**

At the time that the Global Settlement was reached, Plaintiffs had moved for class certification, but none of the Defendants had filed their opposition briefs. The Class consists of purchasers of securities issued by eight different entities over a five-and-a-half year period pursuant to at least twenty-one different offering memoranda. ECF No. 522-1. While the Plaintiffs believe that this case is well-suited for class action treatment, if the Settlements had not stopped the litigation, the Defendants had expressed their intentions to mount vigorous challenges to certification of the Class, including arguments that individual issues regarding the eight different issuers and twenty-one different offering memoranda disclosing similar (but not identical) misrepresentations predominate over common issues and that a class action was not the superior method to litigate these claims. *Chambers v. Whirlpool Corp.*, No. CV 11-1733 FMO (JCGx), 2016 WL 5922456, at *6 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a

PAGE 16 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

motion for class certification, there was a risk that the class would not be certified.").  The

lengthy class period would heighten such risks.  *See In re Immune Response Sec. Litig.*, 497 F.

Supp. 2d 1166, 1172 (S.D. Cal. 2007).

Even assuming Plaintiffs obtained certification of the Class throughout the entire Class

Period, the Ninth Circuit recognizes the inherent risk that a district court "may decertify a class

at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *In re Omnivision*

*Techs.*, 559 F. Supp. 2d at 1041 ("Even if the Court were to certify the class, there is no

guarantee the certification would survive through trial, as Defendants might have sought

decertification or modification of the class.").  Accordingly, the risk and uncertainty surrounding

certification of the Class also support approval of the Settlements.

### d.    The Amount Offered in Settlement

The amount of a settlement "is generally considered the most important, because the

critical component of any settlement is the amount of relief obtained by the class." *Destefano v.*

*Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).  The

settlement should be judged in the context of how it compares to the amount that could be

recovered at trial, adjusted for the risk, expense, and delay of actually going to trial.  Thus, "[i]t

is well-settled law that a cash settlement amounting to only a fraction of the potential recovery

does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*,

213 F.3d 454, 459 (9th Cir. 2000).

Here, the Settlements provide for a total of more than $234.6 million.  *See* Section III(A),

*supra*.  This is a significant total recovery, and is believed by Class Counsel to be the largest

settlement in a securities case in Oregon history.

PAGE 17 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

The result is equally impressive when viewed as a percentage of Class-wide damages. The total Class Member Net Losses (the total amount of Covered Aequitas Securities purchased during the Class Period, minus any principal or interest payments received on those securities), has been preliminarily determined by the Claims Administrator to be approximately $285.0 million.[2]  The $234.6 million recovery contemplated by the Settlements comprises a very significant recovery of approximately 82.3% of the total Class Member Net Losses.

However, in addition to the Settlements, the Receiver has estimated that the Class will receive total distributions of between $64 million and $77 million from the liquidated assets of the Receivership Estate.  Gotguelf Decl. [ECF No. 578] ¶ 3.   The Receiver's distribution will offset some of the Net Loss, and would have reduced Plaintiffs' potential recovery at trial.  *See* ORS § 59.115(2)(a) (measure of recovery is consideration paid for the security, plus interest, "less any amount received on the security").  Assuming the high end of the range disclosed by the Receiver and deducting that amount from the total Class Member Net Losses, the effective net loss of the Class as a whole will be approximately $208 million.  Considered in this light, the Settlements represent 112.7% of the Class-wide effective net loss.  Even after deduction of Class Counsel's requested fees and expenses of $58.1 million, the net recovery for the Class of $176.5 million represents approximately 84.9% of the effective net loss.[3]

---

[2] "Net Loss" represents the total amount of "out of pocket" losses, and includes all cash purchases of Covered Aequitas Securities, less any redemptions and cash dividends received by the Class Member.  It is not an approximation of damages that might be awarded at trial, which might include other factors such as interest and attorneys' fees.

[3] From another perspective, the combined recoveries from the Settlements (net of requested attorneys' fees and expenses) added to the money recovered by the Receiver will return a total of $253.3 million, or 88.9% of Class-wide Net Loss.

**PAGE 18 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

This recovery percentage greatly exceeds the median securities class action settlement recovery percentage for cases in this size range of 4.2% in 2018.  *See* Laarni T. Bulan et al., *Securities Class Action Settlements: 2018 Review & Analysis* 6, CORNERSTONE RESEARCH (2019).[4]  The recovery here is far higher than settlements that are routinely granted final approval.  *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (granting final approval and finding that a recovery of 8% of damages "equals or surpasses the recovery in many other securities class actions"); *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014) (granting final approval, finding a settlement representing 25.8% of damages to be "an excellent recovery" and "a higher percentage of recovery than several other approved securities fraud settlements in this Circuit"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (noting that median recovery of investor losses in class action securities settlements was 2.7% in 2002 and 2.8% in 2003).  One court characterized the recovery of 55% of investor losses in a Ponzi scheme as "something of a miracle for this large group of victims."  *S.E.C. v. Infinity Grp. Co.*, 2004 WL 1126275, at *1 n.3 (E.D. Pa. May 19, 2004).  By any measure, the amount of the Settlements is fair, reasonable and adequate.

       **e.**      **The Extent of Discovery Completed and the Stage of the Proceeding**

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*,

---

[4] Available at:  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis (last visited Oct. 10, 2019).

PAGE 19 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

151 F.3d 1234, 1239 (9th Cir. 1998). Specifically, a "settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV, Inc.*, 221 F.R.D. at 528.

This case was aggressively litigated for three-and-a-half years, during which time Plaintiffs' legal theories have been challenged and refined by multiple motions to dismiss and extensive fact discovery has been taken. Class Counsel has reviewed more than 3 million pages of documents that were produced in discovery in this case. From this information, Class Counsel prepared timelines and outlines of the Defendants' conduct in preparation for depositions, which were used to develop a highly detailed mediation statement demonstrating Class Counsel's extensive knowledge of the case that was instrumental in achieving the Settlements. Ketterling Decl. ¶ 23. Typically, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016).

Further, the Plaintiffs may rely also upon facts developed in prior or related proceedings in gathering their sufficient information to make an informed decision regarding settlement. *Demmings*, 2018 WL 4495461, at *9 (citing *Linney*, 151 F.3d at 1239-40). Aequitas was also the subject of a lawsuit brought by the U.S. Securities & Exchange Commission, which resulted in the imposition of a Court-appointed receivership over numerous Aequitas-related entities. The Receiver in that action had access to all Aequitas documents, and performed a thorough investigation of Aequitas, concluding with his filing of a "*Report Regarding the Investigation of the Receivership Entity's Business Conduct*" on November 21, 2018. *Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-cv-00438-JR (D. Or.) [ECF No. 663] ("Receiver's Report").

**PAGE 20 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

Based upon his findings, the Receiver expressed his "intention to seek the designation of a Ponzi scheme as it relates to the Receivership Entity." *Id*. at 9.  Among his findings, the Receiver found that Aequitas was "dependent on continued infusion of new Investor money to pay operating expenses and returns to Investors," "[d]id not use Investor money for the stated purposes," "[u]sed a significant portion of new Investor money to pay returns and principal to earlier Investors," "[d]id not generate sufficient (any) profits to pay the promised returns to Investors," "[w]as insolvent from at least July 3, 2014 onward," and that Aequitas' accounting records did not "reflect appropriate reserves for uncollectable assets and . . . include[d] inflated 'mark-ups' to asset valuations, both of which result[ed] in a misrepresentation of Aequitas' income generated and assets available (and net worth)." *Id*. at 10.

Thus, the Settlement was achieved after multiple challenges to Plaintiffs' legal theories, Class Counsel's review of more than 3 million pages of discovery (including deposition transcripts from individual actions making similar allegations against the same defendants in other forums) and careful review of the Receiver's highly detailed report regarding Aequitas' misconduct.  As a result, "the proposed settlement was reached only after the parties had exhaustively examined the factual and legal bases of the disputed claims. This fact strongly militates in favor of the Court's approval of the settlement." *DIRECTV, Inc*., 221 F.R.D. at 528.

### f.    The Experience and Views of Counsel

Class Counsel are experienced class action litigators, and recommend the Settlements as being fair, reasonable and adequate and in the best interests of the Class Members.  Berman Decl. ¶ 3; Ketterling Decl. ¶ 23.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Accordingly,

PAGE 21 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

"'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, at *6 (D. Or. June 21, 2017) (quoting *DIRECTV, Inc*., 221 F.R.D. at 528). "Absent fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings*, 2018 WL 4495461, at *9.  Thus, the recommendations of experienced Class Counsel in this Action that the Settlements are fair, reasonable and adequate "strongly favor" approval. *Lane*, 166 F. Supp. 3d at 1191.

g.      **The Reaction of the Class Members to the Settlements**

The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191.

As of October 14, 2019, the Claims Administrator has mailed copies of the Notice to 1,849 potential Class Members.  In addition, Summary Notice was published in both *The Wall Street Journal* and *The Oregonian* and disseminated over the Business Wire on September 11, 2019.  Through the date of this filing, *not a single member of the Settlement Class has objected or excluded themselves from the Settlements*.  Such overwhelming support is compelling evidence that the Settlements are fair and reasonable. *Arnett v. Bank of Am., N.A*., No. 3:11-cv-1372-SI, 2014 WL 4672458, at *10 (D. Or. Sept. 18, 2014) (citing *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011) ("[N]ear unanimous approval of the proposed settlements] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements.")); *see also DIRECTV, Inc*., 221 F.R.D. at 529

PAGE 22 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to . . . class members.").

### 3. The Settlements are Fair, Reasonable and Adequate Under the Newly Amended Rule 23(e)(2) Factors

Rule 23(e)(2) was recently amended to require the Court to consider a list of factors, providing that the Court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether": (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other.

It is unclear whether the amended Rule 23(e)(2) factors apply in this Action. After promulgating the amendment, the Supreme Court transmitted them to Congress with the instruction that the amendments "shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018). Because this Action was commenced prior to December 1, 2018, the new Rule 23(e)(2) factors do not automatically govern this motion, and should only be applied should the Court consider it "just and practicable" to do so. Regardless,

PAGE 23 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

as described below, there is significant overlap and the Settlements should be adjudged fair, reasonable and adequate under either the new Rule 23(e)(2) factors or the *Hanlon* factors.[5]

### a.    The Class Representatives and Class Counsel Have Adequately Represented the Class

Plaintiffs and Class Counsel have adequately represented the Class in connection with both the litigation and the Settlements.  The Class Representatives have claims that are typical of and coextensive with those of the Class and have no interest that are antagonistic to other members of the Class.  *Hanlon*, 150 F.3d at 1020.  Indeed, the Class Representatives share the primary goal of obtaining the largest possible recovery from the Defendants.  *In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").  The Class Representatives played a very active role throughout the litigation, including sitting for depositions, and actively participating in the negotiations leading to the Settlements.  They also retained counsel to assist them that are highly experienced in class action and securities litigation.

Class Counsel has diligently represented the Class throughout the course of this protracted litigation.[6]  This case was complex and hard fought.  The claims asserted required

---

[5] Indeed, the Advisory Committee acknowledged the factors such as *Hanlon* that had been employed by the various circuits, explaining that the new Rule 23(e)(2) factors were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Accordingly, the small number of courts in this Circuit that have relied upon the Rule 23(e)(2) factors have done so in conjunction with the existing *Hanlon* factors.  *In re Extreme Networks, Inc. Sec. Litig*., 2019 WL 3290770, at *6 (applying the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent); *Hefler*, 2018 WL 6619983, at *4.

[6] Class Counsel's efforts are described in more detail in the contemporaneously filed *Class Counsel's Motion for Award of Attorney Fees and Costs*.

PAGE 24 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WASHINGTON 98101
TEL. (206) 623-7292   FAX (206) 623-0594

Plaintiffs to prove both primary liability of Aequitas and secondary liability of seven defendants with respect to eight securities over a period of more than five years.  Forty-seven attorneys appeared on behalf of Defendants in this case.  At a November 4, 2016 hearing in this matter, this Court recognized that, "[t]his case, by its very nature, is complicated.  The number of lawyers in the room proves the fact that there are a lot of parties and a lot of moving parts, both legally and factually . . . ."  [ECF. No. 207], Tr. at 32:12-15.  Class Counsel fought Defendants and the mass of defense attorneys at every stage.  Class Counsel were highly successful in the extensive motion practice before this Court.  Millions of pages of documents were produced, including Defendants' records and a massive database of Aequitas' internal records that Class Counsel had to navigate and distill.  Class Counsel were also successful in demonstrating the strength of Plaintiffs' case and impressing upon Defendants the risks of further litigation. Because of these efforts, Class Counsel was able to negotiate massive settlements.  By any measure, Class Counsel's efforts constitute adequate representation of the Class.

        **b.**      **The Proposal Was Negotiated at Arm's Length**

As discussed in Sections III(C) and IV(B)(1), *supra*, the Settlements were only reached after lengthy negotiations between experienced counsel at mediation sessions overseen by either highly experienced mediators or a respected federal judge currently sitting in the District of Oregon.  For the same reasons described in Section IV(B)(1), *supra*, this factor strongly supports approval of the Settlements.

        **c.**      **The Relief Provided for the Class is Adequate**

This factor encompasses the analysis of the same information as the *Hanlon* factors concerning: the strength of Plaintiffs' case (Section IV(B)(2)(a)); the risk, expense, complexity and likely duration of further litigation (Section IV(B)(2)(b)); the risk of maintaining class action

PAGE 25 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

status throughout the trial (Section IV(B)(2)(c)); and the amount offered in settlement (Section IV(B)(2)(d)).  In addition to these previously described *Hanlon* factors, this Rule 23(e)(2) factor also requires consideration of several other issues, the first of which is "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Here, the proceeds of the Settlements will be allocated to Class Members by the Claims Administrator based upon the Class Members' *pro rata* share of losses.  The *pro rata* share of losses for each Class Member will be determined from the books and records of Aequitas, as provided by the Receiver.  Prior to distribution, each Class Member will receive a statement of their losses from the Claims Administrator, and will have an opportunity to correct any deficiencies in the calculation.  This method will provide for the most efficient distribution process while minimizing the inconvenience to the Class.  The second additional item is "the terms of any proposed award of attorney's fees, including timing of payment."  The fee award in this case will be set by the Court.  The reasonableness of the requested award is described in detail in the contemporaneously filed *Class Counsel's Motion for Award of Attorney Fees and Costs*.  Lastly, this factor requires consideration of "any agreement required to be identified under Rule 23(e)(3)."  Here, the only such agreement is the Parties' confidential Supplemental Agreements, which set forth the conditions under which the Defendants would be entitled to terminate the Settlements in the event that the number of Class Members who request exclusion reaches a certain threshold.  This type of agreement is a standard provision in a securities class action settlement and has no impact upon the fairness of the Settlements.  For the same reasons as described herein regarding the identified *Hanlon* factors, in conjunction with the three

PAGE 26 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

additional elements identified above, this factor supports a finding that the Settlements are fair, reasonable and adequate.

> **d.      The Proposal Treats Class Members Equitably Relative to Each Other**

The Settlements treats Class Members equitably relative to each other.  As discussed in Section IV(C), *infra*, eligible claimants approved for payment by the Court will simply receive their *pro rata* share of the total recovery.  The Plaintiffs will receive precisely the same level of *pro rata* recovery as the absent Class Members.  Because the Plan of Allocation treats all Class Members equitably, this factor also supports a finding that the Settlements are fair, reasonable and adequate.

**C.      The Plan of Allocation Should Be Finally Approved**

In addition to seeking approval of the Settlements, Plaintiffs also seek approval of the proposed plan for allocating the proceeds of the Settlements (the "Plan of Allocation").  A plan of allocation of class settlement funds is subject to the same "fair, reasonable and adequate" standard that applies to approval of class settlements.  *Class Plaintiffs*, 955 F.2d at 1284-85; *In re Omnivision Techs.*, 559 F. Supp. 2d at 1045.  A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'"  *Scott v. ZST Digital Networks, Inc.*, No. CV 11-3531 GAF (JCx), 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).

The proposed Plan of Allocation is described in the Notice, and seeks to disburse the net Settlement funds on a *pro rata* basis according to the proportionate losses that were suffered by

**PAGE 27 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

each Class Member.  Each Class Member's "Net Loss" will be calculated based upon the amount of Covered Aequitas Securities purchased during the Class Period, less any redemptions, dividends, or interest received.  [ECF No. 538-2].  Based upon the records received from the Receiver, the Claims Administrator will notify each Class Member of its "Net Loss" as calculated by the Claims Administrator.  If the Class Member agrees with the calculation, it does not need to take any additional action to receive its *pro rata* payment.  If the Class Member disagrees with the calculation, the Class Member may provide the Claims Administrator with evidence of its transactions that differ from the statement received from the Claims Administrator for possible revision of the Class Member's "Net Loss" calculation.  The Claims Administrator will pay each Class Member on a proportional basis calculated by determining each Class Member's Net Loss as a percentage of the total Net Losses of all Class Members.  The Class Representatives will receive no special treatment or different allocation than any other Class Member under the Plan.  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."); *Hefler*, 2018 WL 6619983, at *12 ("*[P]ro rata* distribution has frequently been determined to be fair, adequate, and reasonable").  Because the Plan of Allocation is fair, reasonable and adequate, it should be finally approved.

**PAGE 28 -PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

## V.    CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court should enter the orders granting final approval of the Settlements and final judgments of dismissal with prejudice as to the Settling Defendants submitted herewith.

Dated: October 15, 2019.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Steve W. Berman*
  **Steve W. Berman** (admitted *pro hac vice*)
  **Karl P. Barth** (admitted *pro hac vice*)
  **Dawn D. Cornelius** (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
   karlb@hbsslaw.com
   dawn@hbsslaw.com

   -And-

**Keith A. Ketterling**, OSB No. 913368
kketterling@stollberne.com
**Timothy S. DeJong**, OSB No. 940662
tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840

   -And-

PAGE 29 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bbanks@SamuelsLaw.com
**Darlene D. Pasieczny,** OSB No. 124172
Email: darlenep@SamuelsLaw.com
SAMUELS YOELIN KANTOR LLP
Attorneys at Law
111 SW 5th Avenue, Suite 3800
Portland, OR 97204-3642
Telephone:  (503) 226-2966
Facsimile:   (503) 222-2937

**Attorneys For Plaintiffs**

PAGE 30 -**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS**