**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email: jwagner@stollberne.com
**Nadia H. Dahab,** OSB No. 125630
Email:ndahab@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone:  (503) 227-1600
Facsimile:   (503) 227-6840

**Steve W. Berman** (admitted *pro hac vice*)
Email: steve@hbsslaw.com
**Karl P. Barth** (admitted *pro hac vice*)
Email: karlb@hbsslaw.com
**Jeniphr Breckenridge** (admitted *pro hac vice*)
Email: jeniphr@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

**Attorneys For Plaintiffs**
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as Trustee of CIUFFITELLI REVOCABLE TRUST; GREG and ANGELA JULIEN; JAMES and SUSAN MACDONALD, as Co-Trustees of the MACDONALD FAMILY TRUST; R.F. MACDONALD CO.; ANDREW NOWAK, for himself and as Trustee of the ANDREW NOWAK REVOCABLE LIVING TRUST U/A 2/20/2002; WILLIAM RAMSTEIN; and | Case No. 3:16-cv-00580-AC<br><br><br>**CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**<br><br>**HEARING SCHEDULED**<br>**November 26, 2019 at 9:00 a.m.** |

GREG WARRICK, for himself and, with
SUSAN WARRICK, as Co-Trustees of the
WARRICK FAMILY TRUST, individually
and on behalf of all others similarly situated,

        Plaintiffs,

  v.

DELOITTE & TOUCHE LLP;
EISNERAMPER LLP; SIDLEY AUSTIN
LLP; TONKON TORP LLP; TD
AMERITRADE, INC.; INTEGRITY BANK &
TRUST; and DUFF & PHELPS, LLC,

        Defendants.

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 2

II.     THE REQUESTED ATTORNEY FEES ARE REASONABLE ....................................... 4

        A.      The Requested Percentage Fees Are Reasonable Under Oregon
                Law.................................................................................................................5

        B.      Consideration of ORS § 20.075 Factors Confirms the Reasonableness
                of the Requested Fee......................................................................................7

                1.      The time and labor required in the proceeding, the novelty
                        and difficulty of the questions involved in the proceeding
                        and the skill needed to properly perform the legal services
                        (ORS § 20.075(2)(a)). ................................................................... 9

                2.      The amount involved in the controversy and the results
                        obtained (ORS § 20.075(2)(d)). .................................................. 13

                3.      The experience, reputation and ability of the attorney
                        performing the services (ORS § 20.075(2)(g))................................. 14

                4.      Whether the fee of the attorney is fixed or contingent
                        (ORS § 20.075(2)(h)). ................................................................ 16

                5.      ORS § 20.075(2)(b), (c), (e), and (f). ............................................ 17

        C.      If the Court Performs a Cross-Check, Class Counsel's Fee Request is
                Reasonable Under the Lodestar Method................................................... 18

III.    CLASS COUNSEL'S TOTAL COSTS OF $199,779.20 ARE
        REASONABLE AND SHOULD BE REIMBURSED .................................................. 20

IV.     SERVICE AWARDS FOR THE CLASS REPRESENTATIVES
        ARE APPROPRIATE.......................................................................................... 21

V.      CONCLUSION.................................................................................................. 23

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Bank of New York Mellon*, No.
    12 MD 2335 (S.D.N.Y.) ................................................................................... 15

*Carlin v. DairyAmerica, Inc.*
    380 F. Supp. 3d 998 (E.D. Cal. 2019) .......................................................... 19

*Champion Produce, Inc. v. Ruby Robinson Co.*
    342 F.3d 1016 (9th Cir. 2003) ......................................................................... 20

*Craft v. Cty. of San Bernardino*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................... 19

*Core Bond Fund*
    2011 U.S. Dist. LEXIS 112949 (D. Colo. Sept. 30, 2011) .......................... 16

*Dickerson v. Cable Commc'ns, Inc.*
    No. 3:12-CV-00012-PK, 2013 WL 6178460 (D. Or. Nov. 25, 2013) ............... 21, 22

*Freedman v. Louisiana-Pacific Corp.*
    No. 95-707-JO (D. Or.) ..................................................................................... 15

*In re Assisted Living Concepts Securities Litigation*
    No. 99-167-AA (D. Or.) ..................................................................................... 15

*In re Bluetooth Headset Prod. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ........................................................................... 5, 6

*In re Boeing Securities Litigation*
    No. C97-1715Z (W.D. Wash.) ......................................................................... 16

*In re Charles Schwab Sec. Litig.*
    No. 08-CV-1510 (N.D. Cal.) ............................................................................. 16

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*
    MDL No. 1446 (S.D. Tex.) ............................................................................... 16

*In re JP Morgan Chase & Co. Securities Litigation*
    No. 12-cv-3852 (S.D.N.Y.) ............................................................................... 15

*In re Louisiana-Pacific Corp. Sec. Litig.*
    No. 95-707-JO (D. Or. February 12, 1997) ..................................................... 17

*In re Melridge*
    No. 87-1426-FR (D. Or.) ................................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015) ........................................................................... 22

*In re Oppenheimer Champion Income Fund Securities Fraud Class* Action
   No. 09-cv-386-JLK-KMT (D. Colo.) ................................................................. 16

*In re Rentrak Corp. S'holder Litig.,*
   No. 15CV27429 (Mult. Co. Cir. Ct. Sept. 12, 2017) ........................................ 6

*In re Southern Pacific Funding Corp. Securities Litigation*
   No. 98-01239-MA  (D. Or.) ............................................................................ 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*
   No. 8:10-ML-2151 JVS (FMOx) (C.D. Cal.) ..................................................... 15

*In re Visa Check/MasterCard Antitrust Litig.*
   96-CV-5238 (E.D.N.Y.) .................................................................................. 15

*In re Wash. Public Power Supply Sys. Secs. Litig.*
   19 F. 3d 1291 (9th Cir. 1994) ........................................................................ 20

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. 1975) ............................................................................ 9

*Kollman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*
   No. 1:04-CV-3106-PA, 2015 WL 5008840 (D. Or. Aug. 20, 2015) ................... 8

*Lloyd v. Navy Federal Credit Union*
   2019 WL 2269958 (S.D. Cal., May 28, 2019) ................................................ 19

*Media Vision Tech. Sec. Litig.*
   913 F. Supp. 1362 (N.D. Cal. 1996) .............................................................. 21

*Moro v. State*
   360 Or. 467 (2016) ...................................................................................... 20

*Murphy v. Hollywood Entertainment Corp.*
   No. 95-1926-MA (D. Or.) ............................................................................. 15

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*
   No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016) ....................... 5

*Powell v. Sys. Transp., Inc.*
   83 F. Supp. 3d 1016 (D. Or. 2015) ................................................................ 13

*Radcliffe v. Experian Info. Sols. Inc.*
   715 F.3d 1157 (9th Cir. 2013) ....................................................................... 22

*Resurrection Bay Conservation All. v. City of Seward, Alaska*
   640 F.3d 1087 (9th Cir. 2011) ......................................................................... 9

*Rodriguez v. W. Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ......................................................................... 22

*S.E.C. v. Infinity Grp. Co.*
   2004 WL 1126275 n. 3 (E.D. Pa. May 19, 2004) ............................................ 14

iii

*Shapiro v. JPMorgan Chase & Co.*
No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 16

*State of Washington v. American Tobacco Co., et al.*
No. 96-2-15056-8 SEA (King Cnty. Sup. Ct.). ........................................ 15

*Steiner v. Am. Broad. Co.*
248 F. App'x 780 (9th Cir. 2007) ........................................ 19

*Strawn v. Farmers Ins. Co. of Or.*
353 Or. 210, 297 P.3d 439 (2013) ........................................ passim

*Strunk v. Pub. Employees Ret. Bd.*
343 Or. 226, 169 P.3d 1242 (2007) ........................................ 6, 13

*Vizcaino v. Microsoft Corp.*
290 F.3d 1043 (9th Cir. 2002) ........................................ 5, 9, 19

*Wininger v. SI Mgmt. L.P.*
301 F.3d 1115 (9th Cir. 2002) ........................................ 21

*Wurster, et al. v. Deloitte & Touche LLP, et al.*
Case No. 16CV25920 (Mult. Co. Cir. Ct.) ........................................ 18


Statutes

ORS 20.190 ........................................ 8

ORS § 20.075(1) ........................................ 7, 8

ORS § 20.075(2) ........................................ passim

ORS § 59.115(2) ........................................ 3, 11

Rules

Fed. R. Civ. P. 23(h) ........................................ 1, 5, 21

Fed. R. Civ. P. 54(d) ........................................ 21

Other Authorities

4 Newberg on Class Actions § 14:2 ........................................ 5

Laarni T. Bulan et al., *Securities Class Action Settlements:*
2018 *Review & Analysis, Cornerstone Research* (2019) ........................................ 14

# MOTIONS

Pursuant to the Court's Order Preliminarily Approving Global Settlement and Providing For Notice dated August 7, 2019 (Dkt. No. 586) ("Preliminary Approval Order") and Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel move the Court for an order awarding total attorney fees on a percentage-of-recovery basis of (1) 25% of the amount of the approved Stipulation and Agreement of Settlement, dated July 8, 2019 and entered into with Defendants Deloitte & Touche LLP ("Deloitte"); EisnerAmper LLP ("EisnerAmper"); Sidley Austin LLP ("Sidley"); TD Ameritrade, Inc. ("Ameritrade"); and Duff & Phelps, LLC ("Duff"), that provides for $220,000,000 in cash (the "Global Settlement"); (2) 20% of the amount of the approved Stipulation and Agreement of Compromise, Settlement and Release, dated May 31, 2018 and entered into with Defendant Tonkon Torp LLP ("Tonkon"), that provides for $12,913,000 in cash (the "Tonkon Settlement"); and (3) 20% of the amount of the approved Stipulation and Agreement of Compromise, Settlement and Release, dated April 24, 2019 and entered into with Defendant Integrity Bank & Trust ("Integrity"), that provides for $1,700,000 in cash (the "Integrity Settlement"),[1] for a total award of $57,922,600.00.

Pursuant to Federal Rules of Civil Procedure 54(d) and 23(h), Class Counsel move for an award reimbursing costs in the amount of $199,779.20.

Class Counsel also move for an order allowing payment of service awards of $10,000 to each of the eight individual Class Representatives, for a total of $80,000 in service awards.

---

[1] The Global, Tonkon, and Integrity Settlements are collectively referenced herein as the "Settlements."

PAGE 1 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

These motions are based on the below Memorandum and the Declarations of Keith A. Ketterling, Steven Berman and Robert S. Banks filed herewith, and the pleadings and record of this proceeding.

## MEMORANDUM

## I.    INTRODUCTION

Class Counsel undertook a substantial risk to pursue this case and have litigated this case for more than three years without compensation.  Over those three years, Class Counsel dedicated significant resources to investigate and pursue complex claims against seven sophisticated defendants with substantial litigation resources.  Class Counsel were highly successful and ultimately negotiated $234,613,000 in total settlements for the benefit of the Class.  As explained in detail herein, the total settlement amount is estimated to *exceed* the estimated aggregate, net out-of-pocket losses of the Class after projected forthcoming payments from the Receiver are deducted.  This is an extraordinary result for investors in a Ponzi scheme. For this extraordinary result, Class Counsel request a fee award equal to 24.6% of the total settlement funds.  The requested fee is less than the approved "benchmark" of 25% of the total common fund.

This case was complex and hard-fought.  The claims asserted required Plaintiffs to prove both primary liability of Aequitas and secondary liability of seven defendants with respect to eight securities over a period of more than five years.  Forty-seven attorneys appeared on behalf of Defendants in this case.  At a November 4, 2016, hearing in this matter, this Court recognized that, "[t]his case, by its very nature, is complicated.  The number of lawyers in the room proves the fact that there are a lot of parties and a lot of moving parts, both legally and factually. …"

PAGE 2 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

(Dkt. No. 207, Tr. at 32:12-15).  Class Counsel fought Defendants and the mass of defense attorneys at every stage.  Class Counsel were highly successful in the extensive motion practice before this Court.  Millions of pages of documents were produced, including Defendants' records and a massive database of Aequitas' internal records, that Class Counsel had to navigate and distill.  Class Counsel were also successful in demonstrating the strength of Plaintiffs' case and impressing upon defendants the risks of further litigation.  Because of these efforts, Class Counsel was able to negotiate massive settlements.

The result of this effort is exceptional.  At the commencement of the Receivership, the Class had total aggregate Class Member Net Losses (principal investments less payments of principal and interest) of $285 million from their investments in Covered Aequitas Securities. The total gross settlement funds of $234,613,000 constitutes a significant recovery of approximately 82.3% of the total aggregate Class Member Net Losses.

However, Aequitas, through the Receiver, has estimated that it will return $64-77 million to the Class as a distribution from the liquidated estate.  Decl. of Larissa Gotguelf [ECF No. 578], ¶ 3.  That distribution will have the effect of reducing the Class losses.  Deducting the Receiver's high estimate from the Class Member Net Losses leaves effective net aggregate losses of $208 million.  Thus, the total gross settlement funds of $234,613,000 *exceed* the Class effective net loss.[2]  Even after deducting Class Counsel's requested fees and expenses of $58.1 million, the net recovery for the class is $176.5 million represents 84.9% of the effective net

---

[2] Net losses do not reflect interest owed pursuant to the terms of the investments but not paid, or statutory interest that might be recovered pursuant to ORS § 59.115(2).

**PAGE 3 -**    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

loss.[3]  Class Counsel are not aware of any comparable recovery in a securities action arising out of a Ponzi scheme.  It is believed to be the largest settlement of a securities case in Oregon history.

For this extraordinary result, Class Counsel seek a fee award that is less than the "benchmark" percentage fee award of 25%.  Class Counsel are requesting 25% of the Global Settlement amount of $220 million and 20% of the Tonkon and Integrity Settlement amounts totaling $14,613,000, which equals 24.6% of the total settlement amount of $234,613,000.  It is reasonable for the Class to pay slightly below the benchmark percentage fee of 25% for the exceptional recovery Class Counsel obtained on their behalf, after a very substantial investment by Class Counsel without any assurance of compensation.

Class Counsel also request reimbursement of $199,779.20 in out-of-pocket expenses incurred so far in this litigation.  Finally, Class Counsel request $10,000 service awards for each of the eight individual Class Representatives, each of whom reviewed pleadings, produced documents, provided information, sat for deposition, participated in settlement decisions and spent other time and energy monitoring and supporting the Class claims.

## II.    THE REQUESTED ATTORNEY FEES ARE REASONABLE

Class Counsel request attorney fees on a percentage-of-recovery basis, as follows: (1) 25% of the $220,000,000 Global Settlement amount; (2) 20% of the $12,913,000 Tonkon Settlement amount; and (3) 20% of the $1,700,000 Integrity Settlement amount.  On a combined

---

[3] In other words, after deducting the requested fees and expenses of $58.1 million from the combined recovery of $311.6 million from the Settlements ($234.6 million) and the Receiver ($77 million), the Class will receive $253.3 million total after fees, or 88.9% of the Class Member Net Loss of $285 million.

PAGE 4 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

basis, the requested fee of $57,922,600 is 24.6% of the $234,613,000 total recovery.  The request is reasonable and consistent with applicable law.

A.    **The Requested Percentage Fees Are Reasonable Under Oregon Law.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Because Oregon law governed the claims in this case, it also governs the award of fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Oregon law allows for the award of attorney fees under the "common-fund doctrine," which "permits the burden of those expenses to be shared among those who benefitted from the litigant's efforts by allowing plaintiff's lawyers to be paid from the common fund created or preserved by the litigation."[4]  *Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 216, 297 P.3d 439, 444 (2013).  "In the context of class-action litigation specifically, the common-fund doctrine permits attorney fee awards from a monetary judgment that benefits the class." *Id.*; *see* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 14:2, 512 (4th ed. 2002) ("When the class action successfully recovers a fund for the benefit of a class, it is long settled that the attorneys who created that class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorney's fees." (as cited in *Strawn*)).

---

[4] Although Oregon law governs attorney fees in this case, courts in the Ninth Circuit have also sanctioned the common-fund doctrine. *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (applying common-fund doctrine to variety of state-law claims); *Vizcaino*, 290 F.3d at 1047 (applying common-fund doctrine to claims under Washington law); *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, No. 3:14-CV-00645-ST, 2016 WL 54678, at *2 (D. Or. Jan. 5, 2016) (applying common-fund doctrine to claims under federal law). Application of Ninth Circuit law would not change the outcome of the analysis herein.

PAGE 5 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

"[I]n both state and federal courts, the percent-of-fund method has been the prevalent means of calculating the reasonable fee award in common fund cases." *Strawn*, 353 Or. at 217. Under the "percentage" method (also called the "percent-of-fund" or "percentage-of-recovery" method), a court "sets the fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery." *Id*. The "percent-of-fund method more directly reflects the result achieved" and is therefore preferable in common-fund cases. *Id.*; *see also id.* at 221 (concluding that the "percent-of-fund methodology fits with the nature of the relief that plaintiff and the class recovered" in a class action resulting in "a significant common-fund award"); *Strunk v. Pub. Employees Ret. Bd.*, 343 Or. 226, 246, 169 P.3d 1242, 1254 (2007) ("[I]n common fund cases, the preserved fund itself is a primary measure of success."); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.").

Typically, courts view 25% of the recovery as a benchmark for a reasonable fee. *Strawn*, 353 Or. at 230 ("The median of the usual range—25 percent—is used by many courts as a reasonable starting point for common-fund awards in class actions, with deviations made based on circumstances justifying an upward or downward adjustment.") (approving fee request of 42% of common fund); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 ("Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *In re Rentrak Corp. S'holder Litig.*, No. 15CV27429,

PAGE 6 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

Order Granting Final Approval of Class Action Settlement ¶ 7 (Mult. Co. Cir. Ct. Sept. 12, 2017) (approving fee request of 33% of common fund) (Ketterling Decl., Ex. A).

A percentage-of-the-fund award is appropriate here. Class Counsel created a very substantial common fund of $234,613,000 from the three Settlements. Considered separately or in combination, the requested percentage fees are equal to or less than the benchmark. Class Counsel requests the benchmark 25% of the Global Settlement; and 20% of the Tonkon and Integrity Settlements, which is less than the benchmark.[5] On a combined basis, the overall percentage of the total common fund requested is 24.6%, which is below the benchmark. There are no special circumstances that would warrant a downward departure from the requested percentages.

## B.   Consideration of ORS § 20.075 Factors Confirms the Reasonableness of the Requested Fee.

"ORS 20.075 sets out criteria to assess the reasonableness of all court-awarded attorney fees" under Oregon law, including in common-fund cases. *Strawn*, 353 Or. at 221 n. 7. As is particularly relevant here, ORS § 20.075(2) states that:

> (2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:
>
> > (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

---

[5] The Tonkon and Integrity Settlements were relatively small and were negotiated relatively early in the litigation. At the time Class Counsel agreed to request only 20% of the Tonkon and Integrity Settlements, Class Counsel did not anticipate the substantial litigation that ultimately was required to obtain approval of those settlements.

PAGE 7 - **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

Below, Class Counsel address all factors under ORS § 20.075(2).[6]  However, the four factors in

subsections (a), (d), (g), and (h) are most pertinent under the circumstances of this case.[7]

---

[6] ORS § 20.075(1) requires courts to look at the following factors:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
(b) The objective reasonableness of the claims and defenses asserted by the parties.
(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
(h) Such other factors as the court may consider appropriate under the circumstances of the case.

Because "[s]ubsection 20.075(1) is intended to guide courts when deciding whether to award fees," it is not as helpful "in determining a reasonable amount of fees."  *Kollman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:04-CV-3106-PA, 2015 WL 5008840, at *3 (D. Or. Aug.

PAGE 8 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

1.    **The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services (ORS § 20.075(2)(a)).**

ORS § 20.075(2)(a) "does not specify any particular methodology for the award, but it does instruct the court to consider the amount of time required by the case, given the difficulty of the questions involved and the skill necessary." *Strawn*, 353 Or. at 221 n. 7. These factors weigh in favor of the fee requested here.

The amount of time required for the case weighs in favor of the requested award. This case was litigated aggressively for more than three years. Plaintiffs filed this case on April 4, 2016. Complaint [ECF No. 1]. The principal terms of the $220 million Global Settlement, which represents 93.7% of the total settlement funds, were agreed to on June 5, 2019, with substantial additional time required to document the parties' agreement. Plaintiffs' counsel invested a total of 38,710.6 hours of attorney time.

The substantial time required reflects the difficulty and complexity of the case. Aequitas' wrongdoing, and the details thereof, had not been fully disclosed at the time this case was filed.

20, 2015). For this reason, Class Counsel believes that the factors under ORS § 20.075(2) are more pertinent to this litigation and thus, has chosen to focus on those factors.

[7] Courts in the Ninth Circuit consider similar factors, such as "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Resurrection Bay Conservation All. v. City of Seward, Alaska*, 640 F.3d 1087, 1095 n. 5 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)) (noting the contingent nature of a fee and a case's "desirability" may not be applicable in all cases). In common fund cases, courts in the Ninth Circuit often focus on "the complexity of th[e] case, the risks involved and the length of the litigation." *Vizcaino*, 290 F.3d at 1051 (citations omitted).

PAGE 9 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

Class Counsel were required to investigate potential claims informally and without the benefit of discovery, to uncover sufficient facts to state claims to satisfy Rule 9(b). Aequitas sold numerous different securities over a long period of time. Most of the securities offerings had multiple private placement memorandums ("PPMs"). Some of Defendants' roles were documented in the PPMs, whereas others were not. Although the SEC filed its own action during Class Counsel's pre-filing investigation, the SEC action did not assert claims against any of the Defendants in the present case, did not state claims on a security-by-security basis, and alleged violations by Aequitas only for the time period starting in 2014—a distinction that Defendants raised to argue that Plaintiffs' claims as to earlier securities sales lacked merit.

After the initial investigation and pleading, Class Counsel had to defend the Complaint against a joint motion to dismiss and a separate motion to dismiss from every Defendant. The Court largely upheld Plaintiffs' claims, but required Class Counsel to plead substantial additional detail at a time at which Class Counsel had access to only minimal discovery relating to limited aspects of Defendants' services for Aequitas. Class Counsel supplemented Plaintiffs' pleading and overcame a second round of multiple motions to dismiss. The motions to dismiss presented numerous complex issues. This Court's Findings & Recommendations on the two rounds of motions to dismiss total 137 pages. [ECF Nos. 242, 340]. The Defendants filed at least 13 sets of objections to the Court's rulings, requiring substantial additional briefing, and each of those rulings was affirmed.

Class Counsel also had to prove Plaintiffs' claims. Defendants resisted Plaintiffs' discovery efforts, requiring extensive conferrals and motion practice. Defendants and third parties other than the Receiver ultimately produced more than 5.7 million pages of documents.

**PAGE 10 - CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

DeJong Decl., ¶ 4 [ECF No. 574].  The Receiver also produced a massive database containing nearly all of Aequitas' electronic records.  Class Counsel devised a strategy to identify and review the most relevant documents.  Document review required approximately 18,000 hours of attorney time.  At the time of the Global Settlement, Class Counsel were in the process of scheduling and preparing to take approximately 75 depositions, and to participate in many more depositions by Defendants.

In addition to document review, a substantial amount of Class Counsel's time was required to identify the documents that would prove Plaintiffs' claims and to identify facts to establish through deposition discovery.  ORS § 59.115(3) requires Plaintiffs to prove each Defendants' participation or material aid in the unlawful sales.  Class Counsel did extensive research and analysis of the documents produced to identify and define the specifics of Defendants' participation and aid.  Some of the issues were very complex and required expertise to identify, including understanding auditing processes, the Investment Company Act of 1940, securities regulation and the extraordinarily complex Aequitas entity structure.  Class Counsel also spent many hours to develop the facts necessary to rebut each Defendant's statutory defense that it did not know, and in the exercise of reasonable care could not have known, of the existence of facts on which the liability is based.  Class Counsel exhaustively identified the facts on which Aequitas' primary liability was based, and identified documents showing that Defendants knew of the existence of those underlying facts.  This work was critical to preparing for Defendants' summary judgment motions, for settlement negotiations and, ultimately, for trial.

Many class actions are relatively anonymous, in that the class members are not known (because, for example, the security in question is publicly traded) and class members are not

PAGE 11 -   **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

acutely aware of the litigation and monitoring it.  This case was different.  A large number of

Aequitas investors contacted Class Counsel for representation, and Class Counsel investigated

their claims and continued to communicate with them periodically.  All Class Members were

identified in the Receivership proceeding and received regular communications and reports from

the Receiver.  Class Members invested hundreds of thousands or millions of dollars.  Under

these circumstances, Class Counsel had extensive and frequent communications from Class

Members, which required time and attention.

   In addition to attempting to eliminate or limit Plaintiffs' claims through motions to

dismiss and for summary judgment, one of Defendants' primary pre-settlement strategies was to

defeat class certification.  Defendants served document requests and required Class Counsel to

work with each Class Representative to document every Aequitas transaction, including every

payment to Aequitas and every receipt of funds from Aequitas.  Defendants took depositions of

each individual Class Representative, and Class Counsel prepared the Class Representatives for

those depositions and defended them.  Class Counsel also invested substantial time in

formulating a sound class certification strategy and, ultimately, preparing a strong motion for

class certification.

   Settlement also required substantial time and attention.  Because most civil cases,

particularly of this magnitude, are decided through mediation rather than trial, Class Counsel

appropriately invested substantial resources to mediation efforts.  Class Counsel participated in

multiple mediation sessions relating to each of the three Settlements.  The Court is very familiar

with the proceedings relating to the Tonkon Settlement, which first required "global peace" for

Tonkon—resolving all claims by Plaintiffs, all investor-plaintiffs in other non-class actions, and

**PAGE 12 -  CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND
COSTS; MEMORANDUM IN SUPPORT**

the Receiver—and second required court approval, including approval of a *pro tanto* contribution claims credit.  This Court's rulings in Plaintiffs' favor that the Tonkon Settlement should be preliminarily approved, and that a *pro tanto* bar order is appropriate under the circumstances, was a substantial victory with ramifications for class certification.  The Court's analysis for preliminary certification of the Tonkon Settlement Class was the same analysis that would govern class certification of Plaintiffs' remaining claims.  The amount of the Global Settlement—$220 million—speaks to the work required and the strong showing that Class Counsel made to persuade Defendants and the mediators of Defendants' substantial exposure.

Among other specialized knowledge, Class Counsel are very familiar with accounting and auditing issues.  For example, Hagens Berman attorney Karl Barth is a certified public accountant, certified fraud examiner, and certified in financial forensics.  Mr. Barth's expertise resulted in very substantial savings to the Class, allowing Class Counsel to perform accounting and forensic financial analysis and postpone substantial expert witness expenses that would have diluted the recovery.

> ## 2.    The amount involved in the controversy and the results obtained (ORS § 20.075(2)(d)).

"Courts are required to evaluate an award of attorney's fees in light of the success achieved for the attorney's client."  *Powell v. Sys. Transp., Inc.*, 83 F. Supp. 3d 1016, 1030 (D. Or. 2015). "[I]n common fund cases, the preserved fund itself is a primary measure of success." *Strunk*, 343 Or. at 246.  The amount in controversy and the results obtained also support the requested fee.

PAGE 13 -   **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

The $234,613,000 common fund created in this case reflects extraordinary success. The common fund represents 82% of the total Class Member Net Losses of $285 million. The total common fund *exceeds* the Class losses after accounting for the projected $64-77 million in principal to be returned by the Receiver. The common fund is believed to represent the largest settlement of a securities case in Oregon history. Class Counsel are not aware of any Ponzi scheme class action that resulted in a recovery comparable to this one. *See* Laarni T. Bulan et al., *Securities Class Action Settlements: 2018 Review & Analysis, Cornerstone Research*, at 6 (2019) (median securities class action settlement recovery percentage for comparably sized cases was 4.2% in 2018). One district court characterized a 55% recovery in a Ponzi case as "something of a miracle." *S.E.C. v. Infinity Grp. Co*., 2004 WL 1126275, at *1 n. 3 (E.D. Pa. May 19, 2004). The results obtained strongly support the requested award, which is slightly less than the benchmark fee award.

### 3.    The experience, reputation and ability of the attorney performing the services (ORS § 20.075(2)(g)).

Both Lead Counsel firms have extensive experience, acknowledged ability and strong reputations. These factors also weigh in favor of Class Counsel's requested fee.

Stoll Berne has perhaps more experience with Oregon Securities Law cases than any other firm. For example, Keith Ketterling and Tim DeJong have been litigating Oregon Securities Law claims for 28 and 25 years, respectively. Stoll Berne also has substantial experience and success litigating securities class actions under the federal securities laws, including on behalf of the Oregon Public Employees' Retirement System. As lead or co-lead counsel, the firm has obtained a number of notable results in securities class actions, including:

PAGE 14 -  **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

- *Bank of New York Mellon*, No. 12 MD 2335 (S.D.N.Y.) ($180 million settlement);

- *In re JP Morgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million settlement);

- *In re Melridge*, No. 87-1426-FR (D. Or.) ($88 million jury verdict);

- *Freedman v. Louisiana-Pacific Corp.*, No. 95-707-JO  (D. Or.) ($65 million settlement);

- *In re Assisted Living Concepts Securities Litigation*, No. 99-167-AA (D. Or.) ($43.5 million total settlements);

- *In re Southern Pacific Funding Corp. Securities Litigation*, No. 98-01239-MA (D. Or.) (total settlements exceeding $20 million); and

- *Murphy v. Hollywood Entertainment Corp.*, No. 95-1926-MA (D. Or.) ($15 million settlement).

Hagens Berman is a national law firm focused on representing plaintiffs in a broad spectrum of complex and class action cases, including obtaining a $1.6 billion settlement as co-lead counsel in a class action against *Toyota*,[8] obtaining $3.25 billion as co-lead counsel in the *Visa* antitrust litigation,[9] and representing 13 state attorneys general in the Tobacco Litigation, which resulted in the largest recovery in the history of litigation ($206 billion).[10]  As one court recognized:

---

[8] *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151 JVS (FMOx) (C.D. Cal.).

[9] *In re Visa Check/MasterCard Antitrust Litig.*, 96-CV-5238 (E.D.N.Y.).

[10] *State of Washington v. American Tobacco Co., et al.*, No. 96-2-15056-8 SEA (King Cnty. Sup. Ct.).

PAGE 15 - **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

> Hagens Berman is one of the premier law firms in the United States dedicated to the representation of plaintiffs in complex litigation.  Hagens Berman collectively possesses hundreds of years of experience in complex litigation of all sorts, including class actions, having successfully prosecuted some of the largest and highest-profile class actions in history.  As sole or co-lead counsel in class actions, Hagens Berman has obtained billions of dollars in recoveries on behalf of defrauded class members.[11]

Hagens Berman has extensive experience in securities fraud class action litigation, including overseeing class actions involving the following representative cases:

- *In re Charles Schwab Sec. Litig*., No. 08-CV-1510 (N.D. Cal.) (sole lead counsel in a $235 million recovery);

- *In re Oppenheimer Champion Income Fund Securities Fraud Class* Action, No. 09-cv-386-JLK-KMT (D. Colo.) and *In re Core Bond Fund*, No. 09-cv-JLKL-KMT (D. Colo.) (co-lead counsel in a $100 million recovery);[12]

- *In re Boeing Securities Litigation*, No. C97-1715Z (W.D. Wash.) (co-lead counsel in $92.5 million recovery);

- *In re Enron Corp. Sec. Derivative & "ERISA" Litig*., MDL No. 1446 (S.D.Tex.) (co-lead counsel; over $250 million recovered); and

- *Shapiro v. J.P. Morgan Chase Bank, N.A.*, No. 11-civ-7961 (CM) (co-lead counsel in $218 million settlement).

Thus, the experience, reputation and ability of Class Counsel also supports the requested award.

### 4.    Whether the fee of the attorney is fixed or contingent (ORS § 20.075(2)(h)).

Class Counsel undertook this effort on a contingent fee basis.  Class Counsel has not received any compensation to date, and assumed the entire risk of their attorney time and also advanced costs.  Thus, this factor also weighs in favor of the requested award.

---

[11] *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV 7961 CM, 2014 WL 1224666, at *23 (S.D.N.Y. Mar. 24, 2014).

[12] *See In re Core Bond Fund*, 2011 U.S. Dist. LEXIS 112949, at *6-7 (D. Colo. Sept. 30, 2011) (noting that Hagens Berman attorneys are "very experienced and skilled practitioners in the securities litigation field," and "have considerable experience and capabilities as class action specialists").

PAGE 16 - **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

**5.     ORS § 20.075(2)(b), (c), (e), and (f).**

ORS § 20.075(2)(b), (c), (e), and (f) require a court to analyze:

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
(c) The fee customarily charged in the locality for similar legal services.
(e) The time limitations imposed by the client or the circumstances of the case.
(f) The nature and length of the attorney's professional relationship with the client.

To the extent these factors are applicable to a class action case such as this, they weigh in support of the requested fee.

This case consumed a large percentage of the primary litigation team's capacity to take on other cases.

Regarding the fee customarily charged in Portland for similar cases, a 25% award is consistent with, or less than, awards by the District of Oregon and Multnomah County Circuit Court in other class actions litigated by Stoll Berne.  For example:

- 30% of $43.5 million common fund.  *In re Assisted Living Concepts, Inc. Sec. Litig*., No. 99-167-AA (D. Or.) (May 23, 2002 Order Regarding Fees & Costs, Dkt. No. 295).

- 33% of $15 million common fund.  *Murphy v. Hollywood Ent. Corp.*, No. 95-1926-MA (D. Or. August 15, 1997).

- 33% of $19 million.  *In re Rentrak Corp. S'holder Litig.*, No. 15CV27429 (Mult. Co. Cir. Ct. Sept. 12, 2017).

- 25% of $65.1 million.  *In re Louisiana-Pacific Corp. Sec. Litig.*, No. 95-707-JO (D. Or. February 12, 1997).

PAGE 17 -   **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

Although this case did not present explicit time limitations, such as a requirement to obtain an injunction, Class Counsel were required to move quickly.  The SEC filed a related lawsuit and placed Aequitas into receivership very quickly after Aequitas collapsed.  Whereas the SEC had the benefit of access to documents and Aequitas personnel, Class Counsel's resources were far more limited.  Furthermore, because the SEC lawsuit was not directed to recovering investors' losses, it lacked the incentive to pursue relief for all affected investors and asserted only the most recent violations of federal securities laws.  Adding to this pressure, the SEC obtained a litigation stay that, on its face, prevented investors from pursuing these claims.  Class Counsel worked expeditiously to identify the factual basis for claims on behalf of a broad class of investors, reaching back to 2010 (whereas the starting date for the SEC's claims is January 1, 2014).  Class Counsel then met with the Receiver and the SEC and obtained their consent to lift the stay to allow investors to pursue their claims against non-Aequitas parties.  Class Counsel filed the first investor lawsuit on April 4, 2016.  Although other investors later filed non-class cases, the first such case was not filed until months later, on August 11, 2016.  *Wurster, et al. v. Deloitte & Touche LLP, et al.*, Case No. 16CV25920, Multnomah County Circuit Court.

Class Counsel did not have any prior relationship with the Class Representatives.  This factor is not material in the context of this motion.

### C.    <u>If the Court Performs a Cross-Check, Class Counsel's Fee Request is Reasonable Under the Lodestar Method</u>.

Oregon and federal cases contemplate that the Court may (but is not required to) review the lodestar as a cross-check on the reasonableness of a percentage award.  *Strawn*, 353 Or. at

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

220 (noting discretion of courts to use "blended approach" involving cross-check); *Vizcaino*, 290 F.3d at 1050 (noting that courts in the Ninth Circuit have discretion to use a lodestar cross-check). Under the "lodestar" method, "the attorney is awarded a fee based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case, with certain adjustments potentially made to that amount for factors such as the risk of loss and the quality of the attorney's work." *Strawn*, 353 Or. at 217.

"Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (unpublished) (approving fee award of 25% of class fund, which equated to a 6.85 multiplier, noting the multiplier fell "well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (concluding a 3.65 multiplier was appropriate in a common-fund case, given "the substantial risk class counsel faced, compounded by the litigation's duration and complexity"); *id.* at 1052 app. (citing cases with multipliers up to 19.6); *Lloyd v. Navy Federal Credit Union*, 2019 WL 2269958, at *13 (S.D. Cal., May 28, 2019) (noting that requests at or below the 25% benchmark are presumptively reasonable and approving a 10.96 multiplier); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (approving fee award of 25% of class fund, which equated to a 5.2 multiplier).

PAGE 19 -  **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

The combined lodestar for Class Counsel here is $15,434,318.10.[13]  *See*
Ketterling Decl., ¶ 26; Berman Decl., ¶ 4; Banks Decl., ¶ 5.  The requested fee represents
a 3.75 multiplier of the lodestar.

Although the lodestar multiplier is within the commonly approved range of 3–4
for complex and lengthy class action litigation, it bears pointing out that the Oregon
Supreme Court has authorized enhanced hourly rates that exceed a law firm's normal
hourly rates in appropriate circumstances.  *See Moro v. State*, 360 Or. 467, 484–85
(2016) (approving $500/hour rate for attorney with normal hourly rate of $315).  In this
case, the well-resourced Defendants retained primary litigation counsel in San Francisco;
Chicago and Washington, D.C., rather than Portland.  Those law firms almost certainly
charged hourly rates much higher than Stoll Berne's rates.  For example, the hourly rates
of the lead Stoll Berne attorneys, Keith Ketterling and Tim DeJong, are $530 and $515,
respectively.  Thus, it would be reasonable to enhance Stoll Berne's rates to reflect the
higher rates of attorneys for other parties in this litigation with similar skills, which
would result in a higher lodestar and lower multiplier.

## III.    CLASS COUNSEL'S TOTAL COSTS OF $199,779.20 ARE REASONABLE AND SHOULD BE REIMBURSED

Federal law governs the award of costs in federal district courts, "even in diversity
cases."  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003).  As
is relevant here, "[i]n a certified class action, the court may award reasonable attorney's fees and

---

[13] Class Counsel applied current hourly rates to all time expended in the case.  *See In re Wash.
Public Power Supply Sys. Secs. Litig.*, 19 F. 3d 1291, 1305 (9th Cir. 1994) ("The district court
has discretion to compensate delay in payment in one of two ways: (1) by applying the attorney's
current rates to all hours billed during the course of the litigation; or (2) by using the attorney's
historical rates and adding a prime rate enhancement.").

PAGE 20 -  **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND
COSTS; MEMORANDUM IN SUPPORT**

nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). "[J]urisdiction over a [common] fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit."  *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120–21 (9th Cir. 2002); *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."); *Dickerson v. Cable Commc'ns, Inc.*, No. 3:12-CV-00012-PK, 2013 WL 6178460, at *5 (D. Or. Nov. 25, 2013) (same) (quoting *In re Media Vision Tech.*) (noting costs such as "litigation costs, including legal research, investigation, discovery, travel, mediation fees, and administrative costs" and "claim administration expenses" are recoverable from a common fund).

Here, Class Counsel ask for $199,779.20 in litigation and administrative costs.[14]  *See* Ketterling Decl., ¶ 27; Berman Decl., ¶ 5.  As in *Dickerson*, "these expenses have been reasonably and necessarily incurred and are recoverable from the proceeds of the common fund." *Dickerson*, 2013 WL 6178460, at *5.  The costs expended are remarkably low for litigation of this magnitude.

## IV.    SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE APPROPRIATE

---

[14] Class Counsel expects to apply for reimbursement at a later date of additional costs in connection with settlement administration and distribution.

PAGE 21 -  **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*,

563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary . . . and are intended to

compensate class representatives for work done on behalf of the class, to make up for financial

or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

willingness to act as a private attorney general." *Id.* at 958–59 (citations omitted).  Incentive

awards are appropriate if they do not "undermine the adequacy of the class representatives."

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  For example, this

Court has approved incentive awards where they are not "contingent on the named

representatives approving the class settlement" or "disproportionately large."  *Dickerson*, 2013

WL 6178460, at *4.

Class Counsel request payment of service awards of $10,000 to each of the eight

individual Class Representatives (Lawrence P. Ciuffitelli, Greg Julien, Angela Julien, James

MacDonald, Susan MacDonald, William Ramstein, Greg Warrick, and Susan Warrick), for a

total of $80,000 in service awards.  Each of the Class Representatives spent many hours

reviewing and producing documents; preparing for, traveling to, and undergoing depositions; and

reviewing and providing input on Class Counsel's litigation and settlement decisions.  The Class

Representatives were not promised any compensation for their services.  In fact, Class Counsel

did not mention service awards to the Class Representatives until after all Settlements were

finalized.  Ketterling Decl., ¶ 28.  The requested awards represent 0.0003% of the total

settlement fund and are not disproportionately large.  *See In re Online DVD-Rental Antitrust

Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving incentive awards because the total equated

**PAGE 22 -   CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND
COSTS; MEMORANDUM IN SUPPORT**

to "a mere .17% of the total settlement fund"). Thus, awards of $10,000, for a total of $80,000, are appropriate here.

## V.    CONCLUSION

The requested fee award is reasonable in light of the exceptional recovery and substantial, uncompensated investment by Class Counsel in this case. Even after paying the requested fee, the net recovery by the Class is estimated to be 89% of the Class net out-of-pocket loss. The costs incurred were reasonable and necessary and should be reimbursed. Finally, the requested Class Representative service awards are appropriate compensation for their services.

DATED this 15th day of October, 2019.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/ Timothy S. DeJong
    **Keith A. Ketterling**, OSB No. 913368
    **Timothy S. DeJong**, OSB No. 940662
    **Jennifer S. Wagner**, OSB No. 024470
    **Nadia H. Dahab,** OSB No. 125630
    **Lydia Anderson-Dana**, OSB No. 166167

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600

Email:    kketterling@stollberne.com
            tdejong@stollberne.com
            jwagner@stollberne.com
            ndahab@stollberne.com
            landersondana@stollberne.com

-And-

PAGE 23 -    **CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM IN SUPPORT**

**Steve W. Berman** (admitted *pro hac vice*)
**Karl P. Barth** (admitted *pro hac vice*)
**Jeniphr Breckenridge** (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Email: steve@hbsslaw.com; karlb@hbsslaw.com
jeniphr@hbsslaw.com
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

-And-

**Robert S. Banks, Jr.**, OSB No. 821862
Email: bob@bankslawoffice.com
Robert S. Banks, Jr.
Banks Law Office, P.C.
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
Telephone: (503) 222-7475

**Attorneys for Plaintiffs**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840