Cody M. Weston, OSB No. 984290
CWeston@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

RICHARDS KIBBE & ORBE LLP
H. Rowan Gaither (admitted *pro hac vice*)
rgaither@rkollp.com
Andrew Podolin (admitted *pro hac vice*)
apodolin@rkollp.com
200 Liberty Street
New York, NY 10281-1003
Telephone: 212.530.1800
Facsimile: 212.530.1801

Attorneys for *OL Group Ltd*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| LAWRENCE P. CIUFFITELLI, for himself and as a Trustee of CIUFFITELLI REVOCABLE TRUST, et al.,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE & TOUCHE LLP, et al.,<br><br>Defendant. | No. 3:16-cv-00580-AC<br><br>**DECLARATION OF DAVID THOMPSON** |

DAVID THOMPSON declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I submit this declaration in support of the Response of OL Group Ltd ("OL Group") to the Settlement Class' Motion for Determination of Appropriate Party to Receive a Pro-rata Distribution from the Settlements in the above-referenced action.

1-   DECLARATION OF DAVID THOMPSON

139387-0001/149138644.1

2.      I am a Senior Portfolio Manager at VR Advisory Services Ltd (together with its affiliates, "VR").  VR serves as the investment advisor to OL Group, an exempted company incorporated in the Cayman Islands.  OL Group is an investment holding company.

3.      I have personal knowledge of the matters set forth in this Declaration, except as to those matters based on my review of certain identified documents, and if called as a witness, could and would competently testify to the same.  I have reviewed the representations in OL Group's response and believe them to be true and correct to the best of my knowledge.

## I.      Background on VR and OL Group

4.      VR is an alternative asset manager focused on distressed securities and event-driven and special situations investments.  Distressed securities are bonds, shares and other financial claims on companies that are in, or about to enter or exit, bankruptcy or other forms of financial distress.  Private and institutional investors will often sell a distressed company's securities at discount prices either because they are not prepared to bear the financial risks involved in holding the securities or because they are constrained against holding low investment credits in their portfolios.  VR is in the business of buying distressed securities at those discount prices with the hope that the securities will recover in value, resulting in a profit for VR's investor clients.

5.      When the investment vehicles that VR advises acquire distressed securities, they often acquire any litigation claims and rights of recovery that arise under or are connected to the securities.  In some instances, the securities are distressed because the companies that issued the securities have made material misrepresentations or omissions in violation of federal and state securities laws.  VR will pursue recoveries on those securities law claims as part of its investment thesis in regards to the securities.

2-   DECLARATION OF DAVID THOMPSON

139387-0001/149138644.1

II.    **OL Group's Investment Thesis Regarding the Aequitas Subordinated Notes**

6.    From 2013 through 2015, Aequitas Commercial Finance, LLC ("Aequitas")
issued Secured Subordinated Promissory Notes ("Subordinated Notes") to certain investors,
including Granite Harbor Tactical Fund and Granite Harbor Alternative Fund (the "Granite
Funds") and IMS Strategic Income Fund ("IMS").  The six Subordinated Notes relevant to OL
Group's response are attached hereto as **Exhibit 1 (Six Subordinated Notes Purchased by the
Granite Funds and IMS)**.  The Subordinated Notes were marketed and sold pursuant to a series
of private placement memoranda ("PPMs").  A PPM is a disclosure document that is designed to
fully inform the prospective investor about all aspects of the company, including its
management, prior financial performance, and future prospects, as well as the risks involved in
the investment.

7.    Under the Subordinated Notes, investors such as the Granite Funds and IMS
provided Aequitas with capital and in exchange Aequitas agreed to repay the investors the
principal of their investment, plus interest, at a fixed time in the future.

8.    Plaintiffs in this action have alleged that on February 2, 2016, Aequitas informed
its investors that it had failed to meet redemption requests since November 2015 and was
preparing to liquidate its assets.  On February 8, Aequitas further disclosed that it had retained
FTI Consulting to take over management control of its portfolio and to provide advice on a
possible restructuring.  Thus, by the end of February 2016, it was publicly known that Aequitas
was in severe distress.

9.    On March 10, 2016, the U.S. Securities and Exchange Commission (the "SEC")
filed a complaint in the U.S. District Court for the District of Oregon against Aequitas and its
corporate affiliates and principals captioned SEC v. Aequitas Management, LLC, et al., Case No.
16-cv-00438-JR, alleging that Aequitas and certain affiliated entities and officers had violated
the antifraud provisions of the federal securities laws in connection with the offer and sale of

3-    DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1

securities issued by Aequitas, including the Subordinated Notes ("the SEC Action"). The complaint revealed that Aequitas and affiliated entities were engaged in a Ponzi-like scheme where they were using new investor money to pay off older obligations.

10.    The SEC Action further revealed that many of the representations made in the offering documents for the Aequitas securities, including the PPMs pursuant to which the Subordinated Notes were issued, were false and that the PPMs and other offering documents contained material omissions. Thus, owners of the Subordinated Notes were aware, as of March 10, 2016, at the latest, that they were likely the victims of securities fraud and that they held potential private rights of action under federal and state laws against Aequitas, its principals, and its advisors.

11.    Ronald Greenspan of FTI Consulting was appointed as Aequitas's Receiver shortly after the SEC filed its complaint. As Receiver, Mr. Greenspan was tasked with liquidating Aequitas's assets and returning to investors and lenders at least some of the large sums of money that they had lost through Aequitas's fraud when they purchased promissory notes or otherwise invested in the company.

12.    This litigation was initiated on April 4, 2016 against certain of Aequitas's auditors and professional advisors that are alleged to have participated in and aided Aequitas's fraud in violation of Oregon's Blue Sky laws. Significantly, the original complaint alleged multiple false statements and material omissions in the PPMs pursuant to which the Subordinated Notes were marketed and sold.

13.    After Aequitas's dire financial condition and alleged widespread securities fraud was revealed, the Subordinated Notes were worth substantially less than their par value.

14.    VR saw an investment opportunity in the distressed Subordinated Notes. I was the portfolio manager who was principally responsible for analyzing the investment opportunity in the Subordinated Notes and for executing the investment strategy on behalf of OL Group. The

4-    DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1

notes could be purchased and the holders thereof could subsequently seek two potential avenues of recovery: (1) payment under the notes by the Receiver after the liquidation of Aequitas's assets; and (2) legal recoveries associated with the notes, such as damages paid by the defendants in connection with the Oregon securities-law claims brought in this lawsuit.

15.    As OL Group began contemplating an investment in the Subordinated Notes, I joined conference calls with Aequitas investors and lenders during which Mr. Greenspan discussed these same two avenues of recouping their losses – asset recoveries and legal recoveries.  Mr. Greenspan emphasized on several of these phone calls that the legal recoveries avenue would likely yield the larger of the two pots of money available to pay back the investors and lenders.  Indeed, on some of these conference calls, Mr. Greenspan said that he expected that there would be meaningfully more funds from legal recoveries as opposed to asset recoveries. Accordingly, the potential legal recoveries associated with the Subordinated Notes were central to OL Group's investment thesis.

### III.    OL Group Enters Into A&As with the Granite Funds and IMS that Assign Subordinated Notes and the Litigation Rights Associated with the Notes to OL Group

16.    OL Group used a broker to locate interested sellers of Aequitas Subordinated Notes.  The broker put me in touch with Peter DeCaprio, a representative of Crow Point Partners, LLC, who I understood to be an advisor or agent of the end sellers, the Granite Funds, which were two entities interested in selling five Aequitas Subordinated Notes with a principal amount of $8.8 million (the "Granite Funds Subordinated Notes").[1]  Mr. DeCaprio informed me that the Granite Funds were winding down their operations.  He also told me that the Subordinated Notes were the only asset the Granite Funds had left, and they were eager to sell the notes quickly so that they could wrap up their funds.  Mr. DeCaprio joined some of the conference calls held by

---

[1] Although the Granite Funds Subordinated Notes found in Exhibit 1 have a notional amount of $9.8 million, the Granite Funds had already redeemed $500,000 each from two notes, rendering the principal amount subject to the assignment to be $8.8 million.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Mr. Greenspan and afterwards Mr. DeCaprio and I discussed Mr. Greenspan's view that the legal recoveries on the notes would be larger than the asset recoveries.

17.     I also worked with Michael Dubinsky of Genesis LLC, who I understood to be another advisor or agent to the Granite Funds, to complete the necessary documentation to transfer the Granite Funds Subordinated Notes from the Granite Funds to OL Group. Because the Granite Funds Subordinated Notes could not be transferred without the consent of Aequitas, Mr. Dubinsky put pressure on both Aequitas and me to close the settlement process for the Granite Funds Subordinated Notes promptly. Mr. Dubinsky reiterated to me that the Granite Funds were keen to sell OL Group the Granite Funds Subordinated Notes quickly because the notes were the only asset the funds had left to sell before they shut down.

18.     On April 13, 2016, the parties executed two Assignment and Assumption of Secured Subordinated Promissory Note agreements whereby OL Group purchased the Granite Funds Subordinated Notes and all rights and interests in and to the notes, including rights and remedies thereunder, from the Granite Funds (the "Granite Funds A&As"). The Granite Funds A&As are attached hereto as **Exhibit 2 (4.13.16 Granite Funds A&As)**. Mr. Greenspan signed the Granite Funds A&As on behalf of Aequitas. In connection with the assignment, OL Group paid the Granite Funds $968,000 (11% of the $8.8 million face value of the Granite Funds Subordinated Notes). As far as I am aware, neither I nor anyone else associated with OL Group or VR had any interaction with Andrew Rogers or Richard Malinowski of Northern Lights Fund Trust, the Granite Funds' parent entity, during the negotiation or execution of the Granite Funds A&As. I recently searched for communications between myself and Mr. Rogers or Mr. Malinowski and found none.

19.     OL Group remained interested in making additional investments in distressed Aequitas securities. In November 2017, I communicated with Carl Marker, a portfolio manager of a separate investment fund, IMS, and his colleague, Don Shute, about acquiring a $750,000

6-   DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Aequitas Subordinated Note, which IMS held (the "IMS Subordinated Note").  We agreed to a price of 10% of the face amount of the note ($75,000), and OL Group and IMS executed an Assignment and Assumption of Secured Subordinated Promissory Note agreement whereby OL Group purchased the IMS Subordinated Note and all rights and interests in and to the note, including rights and remedies thereunder, from IMS (the "IMS A&A").  The IMS A&A is attached hereto as **Exhibit 3 (11.15.2017 IMS A&A)**.  Mr. Greenspan signed the IMS A&A on behalf of Aequitas.  The Granite Funds A&As and the IMS A&A are essentially identical and will be referred to collectively herein as the "A&As."

20.     The A&As include a "Whereas" clause that state that the "Subordinated Notes were issued pursuant to that certain Private Placement Memorandum of [Aequitas], as amended from time to time (the 'PPM')."  The relevant language concerning the scope of the assignment is contained in Section 1(a) of the A&As:

> As of the Effective Date (as such term is defined in Section 2 below), the Assignor hereby transfers, conveys and assigns to the Assignee all of its right, title and interest in and to the Subordinated Note, including, without limitation, all (i) rights to receive moneys due and to become due under or pursuant to the Subordinated Note, and (ii) rights to perform thereunder and to compel performance, and otherwise exercise all rights and remedies thereunder.

21.     It was my understanding and intention that, in executing the A&As, the Granite Funds and IMS assigned to OL Group, and OL Group acquired, all of their rights arising under or related to their Subordinated Notes, including all remedies, claims, and causes of action associated with the notes, such as the causes of action against the defendants in this lawsuit (the "Litigation Rights").  It was and still is my understanding and belief that the A&As accomplished that outcome.

22.     In connection with executing the A&As, OL Group had to acknowledge in Section 2(iv) that Aequitas timely provided its consent for the assignment and "that the consent provided in no way constitutes an endorsement, confirmation, affirmation, representation,

7-   DECLARATION OF DAVID THOMPSON

139387-0001/149138644.1

warranty or covenant by the Receiver or [Aequitas] as to the accuracy of the PPM or any other statements, financial or otherwise, previously made by or on behalf of [Aequitas]."

### IV.    OL Group Outreach to Class Counsel

23.    On or about November 13, 2018, I spoke with Timothy DeJong of Stoll Berne, co-lead counsel to this class action, to inquire about the status of the litigation and other issues. Mr. DeJong wrote by email after our call and asked me to "respond with the details of VR Capital's Aequitas holdings, so that we can enter you into the class member database." In response, I sent Mr. DeJong the A&As and related documentation and informed him that "we are clearly a part of the class." The email chain between Mr. DeJong and me and the attachments thereto are attached hereto as **Exhibit 4 (11.13.18-11.14.18 DeJong-Thompson emails with attachments)**.

### V.    Class Counsel Writes That All Indications Point to OL Group Being Included in the Class

24.    On August 8, 2019, I wrote to Mr. DeJong by email after learning that the class action parties had reached a settlement. I wanted to make sure there was nothing OL Group needed to do in order to receive its share of the settlement funds. I later asked if there was anything OL Group needed to do in order to ensure that it was considered part of the class. Mr. DeJong asked if OL Group had received proof of claim papers from the Receiver. I replied that OL Group had received the Receiver's notice several months before and that because OL Group agreed with the information and amounts contained in the notice, no further action was taken. On August 12, 2019, Mr. DeJong replied, "[A]ll indications are that you are in the Class." The email chain between myself and Mr. DeJong is attached hereto as **Exhibit 5 (8.8.19-8.12.19 Thompson-DeJong emails)**.

25.    Over the next few months, I continued to have periodic communications with Mr. DeJong and the Claims Administrator, mostly to discuss logistical issues in anticipation of OL Group receiving a portion of the settlement funds.

8-    DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1

26.    On October 16, 2019, OL Group received notices from the Claims Administrator by mail.  However, the three notices contained the names of the assignors to the A&As – the Granite Funds and IMS.  I reached out to Mr. DeJong to inform him about the entity name issue and that any checks issued in connection with the distribution of the settlement funds would need to be made out to OL Group.  Mr. DeJong responded, "I assume the payee issue is because OL Group purchased [the assignors'] interest?  Can you send us proof of purchase and ownership?"  The email chain between myself and Mr. DeJong is attached hereto as **Exhibit 6 (9.10.19-12.13.19 Thompson-DeJong emails)**.

27.    In response to this email, I forwarded Mr. DeJong the same transaction documents that I had sent him almost a year earlier, including the A&As, and asked him to confirm that they sufficed to ensure that the checks would be made out to OL Group.  My email to Mr. DeJong and the attachments thereto are attached hereto as **Exhibit 7 (10.16.19 Thompson email with attachments)**.

28.    I received no response from Mr. DeJong, so I followed-up with him by email one week later and asked him to confirm that the documents established proof of purchase and ownership of the claims.  Exhibit 6.  Mr. DeJong responded that he had forwarded the information I provided to the Claims Administrator and would let me know if additional information was required.  *Id.*

29.    On December 3, 2019, the Claims Administrator informed me that they had changed the name of the checks to be issued to OL Group.

30.    I emailed Mr. DeJong and informed him that the entity name issue was resolved.  *Id.*  I also inquired about when initial determinations of loss under the Subordinated Notes would be sent out.  *Id.*

9-    DECLARATION OF DAVID THOMPSON

**VI.    Class Counsel Backtracks from Their Earlier Statement that OL Group Was Likely Included in the Class and OL Group Learns of a Subsequent Purported Sale of the Litigation Rights by the Granite Funds**

31.    Mr. DeJong could not answer my question about the timing of determinations of loss, so I reached out to the Claims Administrator for an answer.  I spoke with the Claims Administrator on or about February 24, 2020.  The Claims Administrator told me on this telephone call that Class Counsel believed that the Litigation Rights had not been assigned in connection with two of the three A&As.  This was the first time I had heard anything calling into doubt OL Group's ownership of any of the Litigation Rights.

32.    After the call with the Claims Administrator, I e-mailed Mr. DeJong immediately to inform him of the conversation, writing: "I was just called by the claims administrator who seemed to say that on two of our three claims class counsel is of the opinion that while the notes were transferred to us, the claims of mis-representation were not so transferred.  I was hoping to speak to you in person at your earliest convenience to understand this in more detail as it seems to be in direct conflict with the transfer agreement we signed with the seller[s] and Aequitas."  My February 24, 2020 email to Mr. DeJong is attached hereto as **Exhibit 8 (2.24.2020 Thompson email)**.

33.    Later that day, I spoke with Karl Barth of Hagens Berman Sobol Shapiro LLP, the other law firm serving as co-lead counsel, in order to get some clarity regarding what the Claims Administrator had communicated to me.  Mr. Barth informed me on this phone call that after executing the Granite Funds A&As, the Granite Funds purported to sell the Litigation Rights to a separate buyer (I have subsequently learned that the separate buyer is Lake Avenue Funding EC V, LLC ("Lake Avenue")).  Mr. Barth further disclosed that the subsequent sale was done between the two parties without acknowledgement of the Receiver.  Mr. Barth did not discuss why the Receiver was not given notice of the subsequent sale.  According to Mr. Barth, it was the conclusion of Class Counsel that the A&As did not convey the claims at issue in this lawsuit

10-  DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1

to OL Group.  I have since learned from a July 2020 letter from counsel to Lake Avenue that Lake Avenue made submissions to the Claims Administrator in November 2019 and again in January 2020 in an attempt to establish its standing as a class member, which to me explains Class Counsel's about-face in their position regarding OL Group's inclusion in the class around this time.  Had Lake Avenue not come to Class Counsel's attention, I firmly believe that Class Counsel would have treated OL Group as the owner of the Litigation Rights connected to the Granite Funds Subordinated Notes.

34.     The February 24, 2020 call with Mr. Barth was the first time that I had heard anything about a subsequent transfer of the Litigation Rights.  I did not understand how the Granite Funds could have purported to re-sell the same asset that was assigned to OL Group.  It was conveyed to me multiple times in 2016 that the Granite Funds considered the Subordinated Notes to be the only assets that remained to sell before winding down their operations. Accordingly, it was my understanding that the Granite Funds considered the Subordinated Notes and their incident Litigation Rights as one and the same and a package deal.  The Granite Funds' purported sale of the Litigation Rights after the execution of the Granite Funds A&As is completely inconsistent with Mr. DeCaprio's and Mr. Dubinsky's statements indicating that OL Group would be receiving the Granite Funds' only remaining assets.

35.     Shortly after the call with Mr. Barth, I received a letter from him, which reiterated what he conveyed to me over the phone.  The letter made clear that Class Counsel was taking the position that neither the Granite Funds A&As nor the IMS A&A conveyed Litigation Rights. This seemed to me to be another change in position by Class Counsel, as the Claims Administrator had informed me earlier that day that the potential issue with respect to the ownership of the Litigation Rights only applied to two of the three A&As (presumably the Granite Funds A&As).

11-  DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

36.     On March 11, 2020, I spoke to Mr. Barth again by telephone to discuss the letter he had sent me.  Mr. Barth stated on this call that OL Group would have every opportunity to object to the motion for distribution and that he was "not unsympathetic" to OL Group's position.

37.     Later on March 11, 2020, Mr. Barth emailed me, stating: "As we discussed, Granite Harbor purported to sell its 'litigation rights' to a third party subsequently to the sale of the Notes to OL Group, Ltd."  The email from Mr. Barth is attached hereto as **Exhibit 9 (3.11.2020 Barth email)**.

38.     Since I had not received any indication from Class Counsel that IMS had also purported to sell the Litigation Rights to a third party, I reached out to Mr. Marker of IMS to confirm that it was IMS's understanding that it had transferred the Litigation Rights connected to the IMS Subordinated Note to OL Group upon the execution of the IMS A&A.  I spoke with Mr. Marker and his colleague, Don Shute, and told them that OL Group had received a letter from Class Counsel saying that IMS had not sold OL Group the Litigation Rights.  I was forthright with Mr. Marker and Mr. Shute and informed them that because of Class Counsel's position, IMS could potentially receive a windfall of as much as $500,000 should IMS choose to agree with Class Counsel's position.  I inquired if IMS was intending to claim the money associated with the Litigation Rights connected to the IMS Subordinated Note.  Mr. Marker and Mr. Shute informed me that the IMS A&A was clear that IMS agreed to sell to OL Group the Litigation Rights connected to the IMS Subordinated Note when it executed the IMS A&A and that OL Group owns the Litigation Rights.  Accordingly, Mr. Marker and Mr. Shute conveyed to me that IMS would not be taking the position that it owned the Litigation Rights or that it was entitled to any settlement funds associated with the rights.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1

39.     OL Group, through its attorneys, informed Mr. Barth about IMS's position and Mr. Barth is now treating OL Group as the owner of the Litigation Rights with respect to the IMS Subordinated Note.

40.     I continue to be primarily responsible for OL Group's investment in the Litigation Rights.

41.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:   August 7, 2020

_____
                        David Thompson

13- DECLARATION OF DAVID THOMPSON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

139387-0001/149138644.1